1 GEORGE C. WEBSTER II (CA Bar No. 82870)
DRINKER BIDDLE & REATH LLP
2 1800 Century Park East, Ste. 1500
Los Angeles, CA 90067-1517
3 (310) 203-4000/Telephone
(310) 229-1285/Facsimile
4 Attorneys for MediaShift Holdings, Inc.

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA-LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>MEDIASHIFT, INC.,<br><br>  Debtor.<br><br>In re:<br><br>AD-VANTAGE NETWORKS, INC.,<br><br>  Debtor.<br><br>☒ Affects All Debtors<br>☐ Affects MediaShift, Inc. Only<br>☐ Affects Ad-Vantage Networks, Inc. Only | LEAD CASE NO.  2:15-bk-25024-SK<br><br>JOINTLY ADMINISTERED WITH:<br>CASE NO. 2:15-bk-25030-SK<br><br>Chapter 11<br><br>**OBJECTION TO AND REQUEST FOR HEARING ON DEBTORS' APPLICATION TO EMPLOY HOULIHAN LOKEY CAPITAL, INC. AS FINANCIAL ADVISOR AND INVESTMENT BANKER PURSUANT TO 11 U.S.C. § 327(a) WITH COMPENSATION TO BE DETERMINED AND PAID PURSUANT TO 11 U.S.C. § 328(a)**<br><br>Hearing Requested |

TO:    THE HONORABLE SANDRA R. KLEIN
       UNITED STATES BANKRUPTCY JUDGE

MediaShift Holdings, Inc. ("Holdings"), by and through its undersigned attorneys, hereby files this limited objection (the "Limited Objection") to, and requests a hearing on, *Debtors' Application to Employ Houlihan Lokey Capital, Inc. as Financial Advisor and Investment Banker Pursuant to 11 U.S.C. § 327(a) With Compensation to be Determined and Paid Pursuant to 11 U.S.C. § 327(a)* [Docket No. 41] (the "Application"), and respectfully states as follows:

83534076.4

## FACTUAL AND PROCEDURAL BACKGROUND

1. On September 30, 2015, MediaShift, Inc. ("MediaShift") and Ad-Vantage Networks, Inc. ("Ad-Vantage" and together with MediaShift, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Central District of California.

2. On November 4, 2015, the Debtors filed the Application, seeking to employ and compensate Houlihan Lokey Capital, Inc. ("Houlihan") in accordance with the terms described more fully in an engagement letter, as amended, a copy of which is attached to the Application as Exhibit 1 (the "Engagement Letter"). Specifically, "the Debtors engaged Houlihan as their financial advisor and investment banker to assist in the marketing and sale of the Debtors' assets (and to potentially facilitate financing transactions)." Application, ¶ 8.

3. Holdings is a senior secured creditor with a claim of at least $6,333,259.70. Holdings is by far the Debtors' largest secured creditor.

4. Holdings has a lien on virtually all of the assets of the Debtors' estates. Thus, its collateral falls within the mandate of Houlihan described in the Application.

## OBJECTION

5. If the Application is approved by the Court as requested, Houlihan could be paid the following compensation for their services: (1) Sale Transaction Fee[1]; (2) Financing Transaction Fee[2]; and (3) out-of-pocket expenses incurred in connection with the rendering of

---

[1] Houlihan will be paid a cash "Sale Transaction Fee" based upon the Aggregate Gross Consideration ("AGC"). In the event of a Sale Transaction (as defined) for AGC from $10 million to $15 million, the Sale Transaction Fee will be $250,000; for AGC from $15 million to $22 million, the Sale Transaction Fee will be $500,000; for AGC in excess of $22 million, the Sale Transaction Fee will be 4% of AGC. Application, ¶ 19 and Ex. 1 ¶ 3(a).

[2] In the event that the Debtors move forward with a Financing Transaction (as defined), rather than a sale, upon the closing of such a Financing Transaction, Houlihan will be paid a cash fee equal to seven percent (7%) of the gross proceeds of all equity or equity-linked securities placed or committed. Application, ¶ 20 and Ex. 1 ¶ 3(b).

83534076.4                                              - 2 -

services to the Debtors. The Application makes clear that in the event of a conflict, the Engagement Letter[3] controls. Application, n. 1.

6. For the reasons set forth more fully herein, the two principal components of Houlihan's compensation – the Sale Transaction Fee and the Financing Transaction Fee – are inappropriate as currently structured.

7. First, neither the Sale Transaction Fee nor the Financing Transaction Fee requires payment to secured creditors before it is made; the payment to Houlihan come directly from the proceeds  As written, the Engagement Letter permits Houlihan to be paid *in cash* from the proceeds of a sale of the Collateral – ostensibly first dollar proceeds. Accordingly, the Application is an inappropriate attempt by the Debtors: (a) to effectively grant Houlihan a senior lien or some sort of superpriority for fees without compliance with section 364(c) and (d) of the Bankruptcy Code, Federal Rule of Bankruptcy Procedure 4001, and Local Bankruptcy Rule 4001-2; and/or (b) to secure an order under section 506(c) of the Bankruptcy Code without any effort to comply with the requirements of that provision.

8. In addition, while it is certainly implied that if the sale price of the applicable assets is less than $10 million, Houlihan would not be entitled to a Sale Transaction Fee, the Engagement Letter muddies the waters on that point. Specifically, the Engagement Letter provides that in the event that any assets of the Debtors are not sold, those assets "retained by any entity comprising the Company after the closing of the Sale Transaction, the AGC will be increased to reflect the . . . fair market value of any such assets." Application, Ex. 1 (Engagement Letter), ¶ 6. Such terms enable Houlihan to receive a fee for assets never sold. It is difficult to imagine why Houlihan should be entitled to a Sale Transaction Fee, for example, for a sale of $1

---

[3] Indeed, the Debtors make clear that the Application "is qualified in its entirety by [ ] the Engagement Letter." Application, n. 1.

83534076.4                                                    - 3 -

million of assets while $9 million are retained, yet the Engagement Letter appears to mandate such a result.

9. Further, Houlihan's retention may result in a double liability to the estate. For example, the Engagement Letter provides for a "tail period" whereby, in the event that any asset sale or financing transaction described in the Engagement Letter is closed within twelve (12) months after termination of the Engagement Letter, Houlihan remains entitled to the Sale Transaction Fee and the Financing Transaction Fee. Application, ¶ 16 and Ex. 1 (Engagement Letter) at ¶ 4. The same problem may exist with respect to a sale prior to the tail period. The Debtors have not disclosed whether there is a prior loan broker, investment bank, or agent who might assert a claim for a fee in connection with one of the contemplated transactions. Similarly problematic is the right of first refusal granted to Houlihan to act as exclusive placement agent or financial advisor in connection with any transaction not already contemplated in the Engagement Letter, which will be in effect for an additional eighteen (18) months from its termination or expiration of the agreement. It is important to note that the Engagement Letter purports to be binding on a chapter 11 or chapter 7 trustee. Application, Ex. 1 (Engagement Letter) at ¶ 21.

10. Finally, Houlihan's request for indemnification and the estate's waiver of negligence claims are inappropriate. Application, Ex. 1 (Engagement Letter) at ¶ 20. Published opinions from courts in the Ninth Circuit carefully scrutinize and are generally resistant to indemnity and exculpation provisions sought by financial advisors that are similar to those sought by Houlihan in this case, particularly if, as is the case here, no evidence is offered as to the reasonableness and necessity of such provision. *See In re Metricom, Inc.*, 275 B.R. 364, 372-75 (Bankr. N.D. Cal. 2002) (denying Houlihan application where applicant did not meet its burden to show the reasonableness of indemnity and exculpation provisions); *In re Mortg. & Realty Trust*, 123 B.R. 626, 628-32 (Bankr. C.D. Cal. 1991) (declining to approve indemnification provision for investment advisors).

83534076.4                                              - 4 -

11. Accordingly, Holdings respectfully requests a hearing on the Application and that any order approving Houlihan's retention and compensation make clear that: (a) such fees may be satisfied from sale proceeds only after secured creditors are paid in full; (b) Houlihan is entitled to no Sale Transaction Fee in the event that the sale price of the applicable assets is less than $10 million; and (c) there is no existing or future claim for a fee by any other loan broker, investment banker, financial advisor, or other agent with respect to any assets subject to a Sale Transaction Fee or Financing Transaction Fee.

Dated: November 17, 2015  DRINKER BIDDLE & REATH LLP

By: */s/    George C. Webster II*
George C. Webster II

Attorneys for MediaShift Holdings, Inc.

83534076.4                                          - 5 -

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
Drinker Biddle & Reath LLP, One Logan Square, Ste. 2000, Philadelphia, PA 19103

A true and correct copy of the foregoing document entitled (*specify*): **OBJECTION TO AND REQUEST FOR HEARING ON DEBTORS' APPLICATION TO EMPLOY HOULIHAN LOKEY CAPITAL, INC. AS FINANCIAL ADVISOR AND INVESTMENT BANKER PURSUANT TO 11 U.S.C. § 327(a) WITH COMPENSATION TO BE DETERMINED AND PAID PURSUANT TO 11 U.S.C. § 328(a)**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 11-17-15, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Todd M Arnold tma@lnbyb.com
Ron Bender  rb@lnbyb.com
Stephen L Burton  steveburtonlaw@aol.com
Stephen L. Burton, Esq. steveburtonlaw@aol.com

Cathrine M Castaldi ccastaldi@brownrudnick.com
Michael I Gottfried mgottfried@lgbfirm.com
Dare Law dare.law@usdoj.gov;
ustpregion16.la.ecf@usdoj.gov
Aleksandra Zimonjic azimonjic@lgbfirm.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 11-17-15, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

The Honorable Sandra R. Klein
United States Bankruptcy Court
Ctrm 1575
255 E. Temple Street
Los Angeles, CA 90012

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 11-17-15 | Jane L. Gorman | */s/ Jane L. Gorman* |
|---|---|---|
| Date | Printed Name | Signature |

*June 2012*
83550096.1

**F 9013-3.1.PROOF.SERVICE**