RON BENDER (SBN 143364)
TODD M. ARNOLD (SBN 221868)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email:   rb@lnbyb.com; tma@lnbyb.com

Attorneys for Chapter 11 Debtors and Debtors in Possession

UZZI O. RAANAN (SBN 162747)
ZEV SHECHTMAN (SBN 266280)
DANNING, GILL, DIAMOND & KOLLITZ, LLP
1900 Avenue of the Stars, 11th Floor
Los Angeles, California 90067
Telephone:  (310) 277-0077
Facsimile:  (310) 277-5735
Email:   uraanan@dgdk.com, zshechtman@dgdk.com

Attorneys for Official Committee of Unsecured Creditors

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>MediaShift, Inc.,<br><br>　　　　Debtor and Debtor in Possession.<br>_____<br><br>In re:<br><br>Ad-Vantage Networks, Inc.,<br><br>　　　　Debtor and Debtor in Possession.<br>_____<br><br>☒　Affects Both Debtors<br><br>☐ Affects MediaShift, Inc.  Only<br><br>☐ Affects Ad-Vantage Networks, Inc. Only | Lead Case No.: 2:15-bk-25024-SK<br>(Jointly administered with: 2:15-bk-25030-SK)<br><br>Chapter 11 Cases<br><br>**DEBTORS' AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION FOR AN ORDER (A) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS; AND (C) GRANTING RELATED RELIEF**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION IN SUPPORT THEREOF**<br><br>Hearing:<br>Date:   January 27, 2016<br>Time:  8:30 a.m.<br>Place:  Courtroom 1575<br>　　　　255 East Temple Street<br>　　　　Los Angeles, CA 90012 |

1

MediaShift, Inc. ("MediaShift") and Ad-Vantage Networks, Inc. ("Ad-Vantage"), Chapter 11 debtors and debtors in possession (collectively, the "Debtors") in the above-captioned, jointly-administered, Chapter 11 bankruptcy cases (the "Cases") (collectively, the "Debtors"), and the Official Committee of Unsecured Creditors in the Cases (the "Committee"), hereby move the Court, by way of this motion (the "Sale Motion"), for an order:

(1)    granting the Sale Motion;

(2)    approving the sale of substantially all of the Debtors' assets, defined as the Purchased Assets in the Asset Purchase Agreement (the "APA")[1] attached hereto as **Exhibit "1,"** and sometimes referred to herein as the Assets, which Purchased Assets do not include the Excluded Assets, consisting of, among other things, cash, Avoidance Actions under chapter 5 of title 11 of the United States Code §§ 101, et seq., as amended (the "Bankruptcy Code"),[2] except for any such Avoidance Actions to the extent relating to any Assigned Contracts, and any claims the Debtors or their estates may have against the Debtors officers or directors and any proceeds thereof, to MediaShift Holdings, Inc. or its assignee (the "Buyer") for a purchase price of $11,767,000 that consists of (a) a credit bid pursuant to Section 363(k) of Buyer's allowed Secured Pre-Petition Claim, DIP Claim, and the Other Secured Claims in an amount up to $11,067,000.00, plus (b) cash in the amount of $700,000, or to any Qualified Bidder (as defined below) that makes a higher and better Qualified Bid (as defined below) for the Purchased Assets (or a portion thereof) that the Debtors and the Committee jointly determine to have submitted the highest and best offer for the Assets (the "Successful Bidder"), free and clear of all liens, claims, interests, and encumbrances, pursuant to Section 363(f), on the terms set forth herein and in the APA;

(3)    finding that the Buyer or Successful Bidder, as applicable, is a good faith purchaser under Section 363(m) and entitled to the protections under Section 363(m);

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the APA.

[2] Unless otherwise stated, all Section references herein are to the Bankruptcy Code.

(4)    approving the Debtors' assumption of the Assigned Contracts and any other potentially Assigned Contracts, and the assignment thereof to the Buyer or any accepted Qualified Bidder pursuant to Section 365;

(5)    approving the Cure Amounts for the Assigned Contracts and deeming the failure of a counter-party to a particular Assigned Contract to object to the proposed Cure Amount and assumption and assignment to be a waiver of such objection;

(6)    waiving the 14-day stay periods set forth in Federal Rules of Bankruptcy Procedure ("FRBP") 6004(h) and 6006(d);

(7)    authorizing the Debtors, Buyer, or any accepted Qualified Bidder, and all other parties in interest to take any and all necessary actions required to consummate the sale of the Purchased Assets as contemplated by the APA, including, but not limited to, the assumption and assignment of the Assigned Contracts; and

(8)    granting such other relief as is just and proper under the circumstances.

Dated: January 6, 2016

**MEDIASHIFT, INC. AND
AD-VANTAGE NETWORKS, INC.**

By:   */s/ Todd M. Arnold*
       RON BENDER
       TODD M. ARNOLD
LEVENE, NEALE, BENDER, YOO
   & BRILL L.L.P.
Attorneys for Debtors and Debtors in Possession

Dated: January 6, 2016

**OFFICIAL COMMITTEE OF UNSECURED
CREDITORS**

By:   
       UZZI O. RAANAN
DANNING, GILL, DIAMOND & KOLLITZ, LLP
Attorneys for the Official Committee of
Unsecured Creditors

## **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 4

I. STATEMENT OF FACTS ............................................................................ 4

    A.    BACKGROUND, THE DEBTORS' BUSINESS, EVENTS LEADING
        TO THE FILING OF THE DEBTORS' CHAPTER 11 BANKRUPTCY
        CASES AND ANTICIPATED EXIT STRATEGY ................................. 4

    B.    PARTIES WITH AN INTEREST OR ALLEGED INTEREST IN THE
        ASSETS TO BE SOLD ................................................................. 6

    C.    GENERAL INFORMATION REGARDING THE DIP CREDIT
        AGREEMENT AND APA BETWEEN THE DEBTORS AND THE
        BUYER ....................................................................................... 9

    D.    SPECIFIC INFORMATION REGARDING THE PRINCIPAL TERMS
        OF THE APA .............................................................................. 12

    E.    EFFORTS TO MARKET AND SELL THE DEBTORS' ASSETS FOR
        THE HIGHEST AND BEST PRICE ................................................ 15

        1.    HOULIHAN LOKEY ............................................................ 15

        2.    THE BIDDING PROCEDURES AND NOTICE TO PARTIES IN
            INTEREST ....................................................................... 16

    F.    THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND
        RELATED CURE AMOUNTS. .................................................... 19

II. DISCUSSION ..................................................................................... 21

    A.    THE DEBTORS SHOULD BE AUTHORIZED TO SELL THE
        PURCHASED ASSETS FREE AND CLEAR OF ALL LIENS,
        CLAIMS, INTERESTS AND ENCUMBRANCES PURSUANT TO 11
        U.S.C. § 363 AND THE TERMS OF THE APA ................................ 21

        1.    THE DEBTORS SHOULD BE AUTHORIZED TO SELL THE
            ASSETS .......................................................................... 21

        2.    THE DEBTORS SHOULD BE AUTHORIZED TO SELL THE
            PURCHASED ASSETS FREE AND CLEAR OF LIENS, CLAIMS,
            INTERESTS, AND ENCUMBRANCES. ............................... 26

    B.    THE DEBTORS SHOULD BE AUTHORIZED TO ASSUME AND
        ASSIGN THE ASSIGNED CONTRACTS ...................................... 28

i

C.   THE COURT SHOULD WAIVE THE FOURTEEN-DAY WAITING
PERIODS SET FORTH IN BANKRUPTCY RULES 6004(h) AND
6006(d). ........................................................................................................29

III. CONCLUSION ............................................................................................. 30

DECLARATION OF RICK BARAN ..................................................................... 32

DECLARATION OF RAJ DAYALAN.................................................................... 44

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

In re Abbotts Dairies of Pennsylvania, Inc.,
    788 F.2d 143 (3d Cir. 1986) ............................................................ 21, 25

In re Alpha Industries, Inc.,
    84 B.R. 703 (Bankr. Mont. 1988) .................................................... 23, 25

In re Apex Oil Co.,
    92 B.R. 847 (Bankr. E.D.Mo. 1988) ..................................................... 25

Big Shanty Land Corp. v. Comer Properties, Inc.,
    61 B.R. 272 (Bankr. N.D. Ga. 1985) .................................................... 23

In re Canyon Partnership,
    55 B.R. 520 (Bankr. S.D. Cal. 1985) .................................................... 23

In re Central Fla. Metal Fabrication, Inc.,
    190 B.R. 119 (Bankr. N.D. Fla. 1995) .................................................. 28

Cmty. Thrift & Loan v. Suchy (In re Suchy),
    786 F.2d 900 (9th Cir. 1986) ............................................................... 26

In re Continental Country Club, Inc.,
    114 B.R. 763 (Bankr. M.D. Fla. 1990) ................................................. 28

In re Delaware and Hudson Ry. Co.,
    124 B.R. 169 (D. Del. 1991) ................................................................ 21

In re Gucci,
    193 B.R. 411 (S.D.N.Y. 1996) ............................................................. 28

In re Huntington, Ltd.,
    654 F.2d 578 (9th Cir. 1981) ............................................................... 21

In re Industrial Valley Refrigeration and Air Conditioning Supplies, Inc.,
    77 B.R. 15 (Bankr. E.D. Pa. 1987) ....................................................... 25

In re Klein Sleep Products, Inc.,
    78 F.3d 18 (2d. Cir. 1996) ................................................................... 28

In re The Landing,
    156 B.R. 246 (Bankr. E.D. Mo. 1993) ................................................. 22

In re Lionel Corp.,
    722 F.2d 1063 (2d Cir. 1983) .............................................................. 21

In re Mama's Original Foods, Inc.,
    234 B.R. 500 (C.D. Cal. 1999) ............................................................. 22

In re Martin (Myers v. Martin),
    91 F.3d 389 (3d Cir. 1996) .................................................................. 21

In re Prime Motors Inns,
    124 B.R. 378 (Bankr. S.D. Fla. 1991) ................................................ 28

In re Rock Indus. Mach. Corp.,
    572 F.2d 1195 (7th Cir. 1978) ............................................................ 25

Walter v. Sunwest Bank (In re Walter),
    83 B.R. 14 (9th Cir. BAP 1988) .................................................... 21, 22

In re Wilde Horse Enterprises, Inc.,
    136 B.R. 830 (Bankr. C.D. Cal. 1991) ...................................... 22, 23, 25

**Federal Statutes**

11 U.S.C.

    § 101(31)(B) ....................................................................................... 25
    § 363 ............................................................................................ 21, 27
    § 363(b) ........................................................................... 21, 22, 23, 26
    § 363(b)(1) ......................................................................................... 25
    §§ 363(b)(1) and 1107(a) ................................................................... 21
    § 363(f) ..................................................................................... 10, 26, 30
    § 363(f)(2) .......................................................................................... 27
    § 363(f)(3) .......................................................................................... 27
    § 363(f)(4) .......................................................................................... 27
    § 363(k) ..................................................................................... 13, 27, 30
    § 363(m) .................................................................................... 26, 30
    § 365 ........................................................................................... 19, 30
    § 365(a) .............................................................................................. 28
    § 365(a), (b), (f) ................................................................................. 29
    § 365(b)(2) .......................................................................................... 28
    §§ 503(b)(1)(A) and 507(a)(2) ........................................................... 15
    §§ 506, 544, 547, 548, 550 ................................................................ 11
    §§ 1107 and 1108 ................................................................................ 4
    § 1129 ................................................................................................ 25

**California Statutes**

Cal. Civ. Proc. Code
    § 339 .................................................................................................... 9

iv

1

**Other Authorities**

Bankruptcy Rule 6006(d) ........................................................................................... 29

Bankruptcy Rules 6004(h) and 6006(d) ................................................................. 29, 30

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES[3]

2

### I.

3

### STATEMENT OF FACTS

4

**A.    BACKGROUND, THE DEBTORS' BUSINESS, EVENTS LEADING TO THE**
5
**FILING OF THE DEBTORS' CHAPTER 11 BANKRUPTCY CASES AND**
**ANTICIPATED EXIT STRATEGY**

6

On September 30, 2015 (the "Petition Date"), the Debtors each filed a voluntary petition
7
under Chapter 11 of the Bankruptcy Code.  The Debtors continue to manage their financial affairs
8
and operate their bankruptcy estates as debtors in possession pursuant to Sections 1107 and 1108
9
of the Bankruptcy Code.  On October 1, 2015, the Court entered orders granting the Debtors'
10
motions for joint administration of their Chapter 11 cases, with the MediaShift, Inc. case serving
11
as the lead case.  On November 6, 2015, the UST appointed the Committee now consisting of
12
Essenture Incorporated, Glenn Lebowitz, Winthrop Couchot, PC, and Eastward Capital Partners
13
Venture, LP.

14
Ad-Vantage is a wholly owned subsidiary of MediaShift.  MediaShift is a public
15
company.  However, in February 2014, MediaShift filed a Form 15 with the Securities and
16
Exchange Commission and, as a result, is no longer subject to the Securities and Exchange
17
Commission's reporting requirements and experiences very little trading of its stock.   The
18
Debtors have the same officers and directors.

19
The Assets the Debtors are seeking to sell pursuant to the Sale Motion include numerous
20
patents and related computer software (defined as the Owned IP in the APA) and other assets
21
owned by the Debtor related to internet advertising.  With the Owned IP, the Debtors can enable
22
the owners of wi-fi networks to monetize their networks through the placement of internet
23
advertising both during the login to the wi-fi network and during sessions on the wi-fi network.
24
The Owned IP overrides advertising that would normally appear on web pages accessed through
25
the wi-fi network so that the advertising space can be sold.  The Debtors and affiliates sell the

26

27

28
[3] All capitalized terms herein have the same meanings as in the preceding Sale Motion.

advertising space, place the advertising on pages accessed by users on the wi-fi network, and share the advertising revenue with the owner of the wi-fi network.

The Debtors, generally contracting through MediaShift, have contracts with, among others, JetBlue, MGM Las Vegas, and Hotel International Services, whereby the Debtors sell and place advertising that appears during login and sessions on the wi-fi networks operated by the foregoing entities.  Google is one of the Debtors' largest purchasers of advertising space.  The Debtors were in a position to contract with other wi-fi network providers and to expand their advertising placement footprint, and therefore their advertising sharing revenue.  However, the Debtors needed additional funds to do so, as many parties interested in contracting with the Debtors require the Debtors to pay a guaranteed advertising sharing amount before they will allow the Debtors to place advertising on their wi-fi networks.

In order to fund operations, the development of its Owned IP and platform, the implementation of its platform, and the expansion of its advertising footprint, the Debtors obtained various rounds of equity and other financing, including the financing provided by the Buyer, which is secured by liens on the Debtors' Assets, and the financing from the Other Secured Claimants.[4]  Unfortunately, due to various complications, the Debtors were not able to get all of the financing they needed to enable them to fund their operations, their efforts to expand their advertising placement, and their debt obligations.

In light of the foregoing, in or about April 2015, the Debtors engaged Houlihan Lokey Capital, Inc. ("Houlihan Lokey") as their investment banker to assist in the marketing and sale of the Debtors' Assets.  The Debtors were pursuing such a sale and intend to continue pursuing a sale in bankruptcy.  However, on August 3, 2015, before the Debtors could fully market their Assets to obtain the highest and best price for them and consummate a sale of their Assets, the Buyer called a default on its secured loans to the Debtors and started to initiate efforts to foreclose on the Debtors' Assets, including the highly valuable Owned IP.

---

[4] The Other Secured Claimants and their Other Secured Claims are listed in Schedule A to the APA.

5

As a result of the foregoing, and in an effort to protect the value of the Debtors' Assets for the benefit of all creditors and interest holders, the Debtors decided to file for bankruptcy protection.

**B.    PARTIES WITH AN INTEREST OR ALLEGED INTEREST IN THE ASSETS TO BE SOLD**

Prior to the Petition Date, on September 17, 2015, MediaShift obtained a report (the "MS UCC Report") listing the UCC-1 Financing Statements filed against MediaShift and the status of each such UCC-1 Financing Statement.  The MS UCC Report includes as attachments copies of all UCC-1 Financing Statements filed against MediaShift.  A true and correct copy of the MS UCC Report is attached hereto as **Exhibit "2."**

Prior to the Petition Date, on September 28, 2015, Ad-Vantage obtained a report (the "Ad-Vantage UCC Report" and together with the MS UCC Report, the "UCC Reports") listing the UCC-1 Financing Statements filed against Ad-Vantage and the status of each such UCC-1 Financing Statement.  The Ad-Vantage UCC Report includes as attachments copies of all UCC-1 Financing Statements filed against MediaShift.  A true and correct copy of the Ad-Vantage UCC Report is attached hereto as **Exhibit "3."**

Based on a review of UCC Reports, the Debtors believe that the Buyer and the Other Secured Claimants are the only entities and individuals that may have a lien on or security interest in the Debtors' Assets (for definitional purposes only, the "Secured Creditors").

In addition, on November 25, 2015, Kensel & Co., LLC ("Kensel LLC") initiated adversary proceeding 2:15-ap-01646-SK by filing its Complaint for Injunctive and Declaratory Relief (the "Complaint") seeking, among other things, a determination by this Court that Kensel LLC owns certain trademarks, domain names and related assets (the "MS IP Assets")[5] and an

---

[5] The MS IP Assets allegedly include:

DOMAINS

| Domain Name | Expires | | Status |
|---|---|---|---|
| • MEDIASHIFT.BIZ | 4/2/18 | Active - | Locked |
| • MEDIASHIFT.CO | 4/3/18 | Active - | Locked |
| • MEDIASHIFT.CO.UK | 3/7/18 | Active - | Locked |
| • MEDIASHIFT.COM | 3/1/18 | Active - | Locked |
| • MEDIASHIFT.ME | 4/4/18 | Active - | Locked |
| • MEDIASHIFT.MOBI | 3/1/18 | Active - | Locked |

6

1   injunction requiring MediaShift to transfer the MS IP Assets back to Kensel LLC and prohibiting

2   MediaShift from selling the MS IP Assets.  A true and correct copy of the Complaint is attached

3   hereto as **Exhibit "9."**  The Debtors are informed and believe that Kensel LLC plans to file a

4   motion to enjoin the sale of the MS IP Assets to the Buyer or any other Qualified Bidder and set it

5   for hearing on the same date as the Sale Motion.

6          The Complaint and any injunction motion are an effort by Kensel LLC and its purported

7   owner Brendon Kensel ("Kensel"), **the disgruntled former President of the Debtors,**[6] to extort

8   payment from the Debtors by threatening the sale.  Rather than challenging ownership, the

9   Complaint makes clear that the MS IP Assets were transferred to and owned by the Debtors.

10  Indeed, in the Complaint and the exhibits attached thereto, **Kensel, LLC itself admits that it**

11  **transferred the MS IP Assets to MediaShift.**  At most, the Complaint alleges a breach of

12  contract claim for amounts allegedly owed to Kensel LLC in connection with the transfer of the

13  MS IP Assets to the Debtors.

14         In the Complaint, Kensel LLC makes the following material admissions about the prior

15  transfer of the MS IP Assets to MediaShift:

16

17  - MEDIASHIFT.NET    5/22/15 Active -    Locked
18  - MEDIASHIFT.TV     3/1/18 Active -     Locked
    - MEDIASHIFT.US     4/3/18 Active -     Locked

19  TRADEMARKS & COPYRIGHTS
20  - All of the previous trademark filings and copyrights for the Purchased Assets and all supporting
    research and documentation for such filings.

21  CREATIVE ASSETS
    All of the creative assets relating to the Purchased Assets, including, without limitation, the
22  following:
23  - MediaShift Logo
    - MediaShift Icon
24  - MediaShift Brand Style Guide
    - MediaShift Business Card Template
25  - MediaShift Letterhead and Envelope Template
    - MediaShift Powerpoint Template

26  *See* Complaint, Exhibit 20.

27

28  [6] Complaint, ¶ 17.

- Kensel LLC was going to acquire the MS IP Assets from Randy Taylor but could not pay the required amount. (Complaint, ¶¶ 6, 8, 9, 13, 21)  Instead, the Debtors paid the required amount for the MS IP Assets on behalf of Kensel, LLC. (Complaint, ¶ 29 and Exhibit 16, Letter to Randy Taylor, at ¶ 1(d))*;*

- Kensel LLC transferred the MS IP Assets to the Debtors.  (Complaint, ¶¶ 22 – 25, 28, 29);

- On February 14, 2013, Kensel LLC, "completed Kensel LLC's delivery of the [Disputed] Assets to [MediaShift]. (Complaint, ¶ 28);

- The trademark applications pertaining to the MS IP Assets were filed by MediaShift (not Kensel, LLC) with Kensel's assistance, which is appropriate because he was the President of the Debtors at the time and owner of Kensel, LLC, former alleged owner of the trademarks. (Complaint, ¶¶ 17, 23, 31, 32);

- "Kensel made numerous requests to MediaShift for payment for the [MS IP] Assets.  One such request is reflected in Kensel's May 22, 2015 letter to Grant.  A copy of that letter is attached to the Complaint as Exhibit 21."  (Complaint, ¶ 38) In that letter, Kensel states,

> ***In February 2013, Kensel & Co., LLC ("Kensel & Co")*** *<u>transferred</u> the MediaShift name, URL's, trademarks, logo and icon, and other assets to JMG Exploration, Inc., now operating as MediaShift, Inc. (collectively, the "Company"). This transfer <u>occurred</u>* in good faith after you and I had agreed that in consideration for this asset transfer the Company would execute an amendment to my offer letter to add a six (6) month severance agreement (the "Amendment"). The value of a six (6) month severance agreement factoring in base compensation only would have been $105,000, and this does not include any other forms of compensations. On March 12, 2013 the Company publically announced its name change to MediaShift.
> ...
> It is now 27 months past the original ***transfer date*** of these MediaShift assets that was made in good faith.

(Complaint, Exhibit "21," emphasis added.)

Likewise, in an email sent on July 27, 2014 from Kensel to Rick Baran, the Debtors' President (who replaced Kensel), a true and correct copy of which is attached hereto as **Exhibit "10,"** Kensel admits:

> ***Also, let's wrap up the outstanding item of the MediaShift assets. The BOD's idea to transfer the assets <u>back</u> to [sic] back to me works well.***
> …
> ***I <u>transferred</u> the MediaShift name, URL's trademarks, logo's and other assets in late Jan. 2013/early Feb. 2013*** in good faith in exchange for a six month severance added to my offer letter as discussed with Dave G. at the time.
> ...
> As you mentioned, in last week's BOD meeting the board discussed ***transferring the MediaShift name and related assets <u>back</u> to me and using an alternative name.*** This is an acceptable solution and I am happy to assist with a smooth brand transition. We need to resolve this before my last day with the company.

(July 27, 2014 email, Exhibit "10" hereto, emphasis added.)

Based on Kensel's admissions, there can be no dispute, and the Court should find, that the Debtors own the MS IP Assets and, at most, Kensel LLC is entitled to assert a breach of oral contract claim, which is disputed by the Debtors. For example, in the quoted section of the May 22, 2015 letter above, Kensel admits that it has been over two years since the asset transfer. Kensel has not provided any written agreement executed by the Debtors. As such, Kensel, LLC can only assert breach of an oral contract, which under California law would likely be barred by the 2-year statute of limitations. *See* Cal. Civ. Proc. Code § 339. This may explain why, in the May 22, 2015 letter, Kensel LLC was seeking payment of the amount allegedly owed for the MS IP Assets "transferred" by Kensel LLC to the Debtors (*i.e.*, a breach of contract claim), but is now seeking a return of the MS IP Assets. The Debtors have other defenses to the Complaint and all such defenses are preserved.

**C.    GENERAL INFORMATION REGARDING THE DIP CREDIT AGREEMENT AND APA BETWEEN THE DEBTORS AND THE BUYER**

As of the Petition Date, the Debtors had approximately $12,000 of cash on hand which constituted the cash collateral of the Debtors' secured creditors. The Debtors filed a motion and

obtained Court authority to use such cash collateral.  After the use of such cash collateral, the Debtors obtained approximately $15,000 of additional funds from the payment of old, pre-Petition Date accounts receivable.  On December 14, 2015, the Debtors filed a motion (the "Cash Collateral Motion") to approve a stipulation with the Buyer, the Other Secured Claimants, and the Committee providing consent to use the foregoing additional cash collateral to fund the payment of expenses that, if not paid, would result in immediate and irreparable harm to the Debtors.  At a hearing held on December 16, 2015, the Court granted the Cash Collateral Motion on an interim basis and set final hearing for December 30, 2015.

Due to the Debtors' lack of funds to continue operating and pursue and close a sale of their Assets, the Debtors needed to obtain a post-Petition Date loan.  The Debtors obtained a commitment from Smith Micro Computing, subject to Court approval, to provide a loan to the Debtors and the Debtors filed a motion to approve the loan, but there were oppositions from, among others, the Buyer and the Other Secured Claimants.

Therefore, the Debtors, the Buyer, the Other Secured Claimants, and the Committee negotiated in good faith regarding, among other things, (1) the sale of substantially all of the Debtors' Assets to the Buyer (and indirectly the Other Secured Claimants)[7] or any Successful Bidder, free and clear of all liens, claims, interests, and encumbrances, pursuant to Section 363(f), on the terms set forth herein and in the APA, a true and correct copy of which is attached hereto as **Exhibit "1,"** and (2) a DIP Loan Facility from the Buyer, which the Debtors obtained Court approval for by way of a motion (the "Financing Motion") [Dkt. 128] and the entry of an order thereon (the "Final DIP Order") [Dkt. 152].

On December 15, 2015, after protracted, good faith, arms-length negotiations, the Debtors, the Committee, and the Buyer were able to document the proposed DIP Loan Facility from the Buyer pursuant to the DIP Credit Agreement (and the related other loan documents) and the sale of substantially all of the Debtors' Assets to the Buyer (and indirectly the Other Secured Claimants) pursuant to the APA (and related documents).

---

[7] The Debtors are informed by the Buyer that the Buyer has the right to credit bid the Other Secured Claims which are included in the Total Consideration offered by the Buyer for the Purchased Assets under the APA.

In conjunction with negotiating and documentation of the DIP Credit Agreement and APA, the Debtors and the Committee undertook an analysis of the secured claims asserted by the Buyer and the Other Secured Claimants and came to agreement regarding the allowance of such claims for certain purposes.  The Debtors and the Committee inquired about possible claims or causes of action against the Buyer.  The Debtors and the Committee determined that it was not in the Debtors' or their creditors' best interest to pursue such claims or causes of action against the Buyer, including claims in the nature of a setoff, counterclaim or defenses to the Buyer's Secured Claim, including, but not limited to, those under Sections 506, 544, 547, 548, 550 and/or 552.  In the Final DIP Order, the Buyer's Secured Claim was allowed as of the Petition Date in the amount of $6.4 million.  By way of the Final DIP Order, the Bidding Procedures Order [Dkt. 153], and the terms of the APA, the Buyer is entitled to credit bid the allowed Pre-Petition Secured Claim in the amount of $6,400,000, together with interest thereon after the Petition Date at 12% per annum, for a total amount of $6,658,000.  *See* APA § 3.4(c).

Similarly, the Final DIP Order, the Bidding Procedures Order, and the terms of the APA allow the Other Secured Claims of the Other Secured Claimants listed in Schedule A to the APA, in the aggregate amount of $3,402,500, as of the Petition Date, together with interest thereon after the Petition Date at 12% per annum, for a total amount of $3,978,000, solely for the purpose of allowing them to be included in the Credit Bid Amount to be provided by the Buyer under the APA, and without prejudice to the rights of the Debtors, the Committee, and any other party in interest to object to the Other Secured Claims, on any ground, and without being bound, or prejudiced by, any statements in the APA, herein, or in related documents, regarding the amounts of the Other Secured Claims or any security for the Other Secured Claims, if they are not included in the Credit Bid Amount and the parties do not consummate the closing of the sale contemplated herein and by the APA.  *See* APA § 3.4(k).

In the interests of full disclosure, the Debtors note that certain of the Other Secured Claimants held, or appointed people to hold, seats on the Debtors' Boards of Directors.  No such person has held a seat on the Debtors' Board of Directors since approximately July 2014.  Thus, none of the Board Members considering and approving the APA, which consisted of David Grant,

the Debtors' Founder and Chairman of the Board, and Rick Baran, the Debtors' President and Board Member, are included in the group of the Other Secured Claimants. Additionally, while the Other Secured Claimants had some involvement in negotiating the terms of the APA and will indirectly acquire an interest in the Purchased Assets by assigning their Other Secured Claims to the Buyer in exchange for minority equity interest in the acquiring entity, they are not parties to the APA and the terms of the APA were principally negotiated by the Debtors, the Buyer, and the Committee, which is an independent fiduciary of the Debtors' estates and general unsecured creditors. Based on the foregoing, the Debtors submit that the proposed transaction under the APA is not an insider transaction requiring heightened scrutiny.

**D.    SPECIFIC INFORMATION REGARDING THE PRINCIPAL TERMS OF THE APA**

A summary of the principal terms of the APA are as follows:[8]

1.    Purchased Assets.  The Debtors will sell substantially all of their assets, as described and enumerated in the APA and Exhibit "1" and Schedules 2.1(b), 2.1(c), 5.6, 5.11, 5.12, and 5.13 (aka the Purchased Assets), which generally includes the assets necessary to operate the Debtors' Business, including the Owned IP, and certain related assets, to the Buyer.  (APA, § 2.1)

2.    Excluded Assets.  The Debtors will **not** sell and will retain certain assets, as described and enumerated in the APA (aka the Excluded Assets), including, among other things, cash, Avoidance Actions under chapter 5 the Bankruptcy Code, except for any such Avoidance Actions to the extent relating to any Assigned Contracts, and  any claims the Debtors or their estates may have against the Debtors officers or directors and any proceeds thereof.  (APA, § 2.1)

3.    Assumed Liabilities.  Except for (a) Liabilities arising under the Assigned Contracts, to the extent attributable to periods from and after the Closing Date, (b) the obligation to pay any Cure Amounts with respect to the Assigned Contracts, if any; and

---

[8] The following is a summary only and nothing contained herein changes the terms of the APA.  In the event of a conflict between this summary and the APA, the APA shall control.  **Interested parties should read the entire APA.**

(c) if Buyer, in its sole discretion, elects to assume all or any part of the Credit Bid Claims in lieu of releasing or procuring the release of such obligation pursuant to Section 3.3(c) of the APA, then any such obligation so assumed shall constitute an Assumed Liability under the APA, to the extent so assumed, the Buyer will not assume any of the Debtors' liabilities. (APA, §§ 2.3, 2.4)

4.    <u>Assigned Contracts and Cure Amounts.</u>    The Assigned Contracts, and potentially Assigned Contracts that may be designated by the Buyer (or a Successful Bidder) for inclusion in the Assigned Contracts,[9] are listed in Schedule 2.1(c) and 5.11 of the APA. (APA, §§ 2.1, 2.3, 2.4)  The related Cure Amounts for the Assigned Contracts, and potentially Assigned Contracts, which must be paid by the Buyer (or a Successful Bidder), were set forth in the Notice to Counterparties to Executory Contracts and Unexpired Leases that May Be Assumed and Assigned, which was approved by the Court, and served on counterparties to the Assigned Contracts, and potentially Assigned Contracts, pursuant to the Court's Bidding Procedures Order.  A copy of the foregoing notice, and proof of service thereof, is attached hereto as **Exhibit "5."**   For ease of reference the Cure Amounts included in the foregoing notice are set forth below in the Section regarding the assumption and assignment of the Assigned Contracts.  The order approving the sale of the Assigned Assets shall include a finding that the Cure Amounts set forth in the foregoing notice and paragraph I.F hereof are the only amounts or other consideration required to cure any defaults under each Assigned Contract.

5.    <u>Total Consideration for Purchased Assets.</u>    In addition to the Cure Amounts to be paid by the Buyer, the Total Consideration for Purchased Assets totals approximately $11,767,000.00, comprised of (a) a credit bid pursuant to the Final DIP Order, the Bidding Procedures Order, and the terms of the APA and Section 363(k) equal to the Buyer's Secured Claim (~$6,658,000) and DIP Claim (~$431,000) and the Other

---

[9] Pursuant to Section 2.1(m) of the APA and subject to the limitations therein, the Buyer may, in its sole and absolute discretion, at any time on or before the third Business Day preceding the Closing Date, amend the definition of the Purchased Assets to exclude any Assigned Contract and/or to include any additional Contract(s) as an Assigned Contract.

Secured Claims (~$3,978,000) for a total amount of up to $11,067,000.00, plus (b) cash in the amount of $700,000. (APA, §§ 3.1-3.5)

If the Buyer purchases the Assets pursuant to the APA and there is no overbid, the Buyer's Secured Claim, DIP Claim and Other Secured Claims will be discharged, and the Debtors will hold $700,000 in unencumbered cash, plus the proceeds of the $425,000 DIP loan, which funds are being used to pay administrative expenses and, therefore, reduce the claims that will have to be paid from the $700,000 before funds are available for allowed priority and general unsecured claims.

If there is a Successful Bidder, the Bidding Procedures require that the initial overbid include a minimum cash purchase price that exceeds the Total Consideration for Purchased Assets offered by the Buyer by at least $500,000. In that case, and all other things remaining equal, after deducting the $300,000 fee payable to Houlihan Lokey and paying the Buyer's Secured Claim (~$6,658,000) and DIP Claim (~$431,000) and reserving for or paying an agreed amount to the Other Secured Claimants' Other Secured Claims (~$3,978,000), the estates would net an additional $200,000, plus the portion of the $3,978,000 not paid to the Other Secured Claimants. Any subsequent overbids would only increase the net cash received by the estates.

6. <u>Closing.</u> In order to avoid a default under the DIP Loan Facility, subject to the satisfaction of the conditions in the APA, the Debtors are seeking to have a sale approved by the Court and closed by January 31, 2016, the maturity date of the DIP Loan Facility. If the Court has approved a sale before January 31, 2016, the closing can be extended by the Debtors for up to 30 days, subject to payment of interest on the DIP Claim. (APA, §§ 4.1 - 4.4)

7. <u>Representations and Warranties and Conditions.</u> The APA is subject to representations and warranties by the Debtors and the Buyer and conditions to the performance of each. (APA, Articles VI - VIII2)

8. <u>No Break-Up Fee or Reimbursement of Expenses Except Under Certain Circumstances.</u> Pursuant to the APA and DIP Financing Agreement, the Debtors agreed

14

to reimburse the Buyer for reasonable and documented out-of-pocket attorneys' fees and expenses not to exceed Two-Hundred Thousand Dollars ($200,000) incurred in connection with the transaction contemplated by the APA and DIP Financing Agreement (defined as the "Expense Reimbursement" in the APA), but only in the event the winning bid for the Debtors' Assets exceeds the Buyers' bid in the APA by at least Five Million Dollars ($5,000,000). Pursuant to the Bidding Procedures Order, the Court granted and allowed the Buyer the Expense Reimbursement claim with administrative expense priority under Sections 503(b)(1)(A) and 507(a)(2), if the required conditions are met. (APA, §§ 9.3, Bidding Procedures Order, ¶¶ E, 7, 8)

After considering the terms of, and benefits derived from, the DIP Credit Agreement and the APA, which were mutually contingent, and having no other bona fide offers to serve as a stalking horse for the acquisition of substantially all of the Debtors' Assets and not having the funds necessary to operate and conduct and orderly sale process, the Debtors determined, in an exercise of their business judgment, and in consultation with the Committee, that the proposed sale under the APA, together with the related loan under the DIP Credit Agreement, are in the best interests of the Debtors, their estates, their creditors, and other parties in interest. Together, the DIP Credit Agreement and APA (1) provide the Debtors with the funds they need to pursue and close a sale of the Assets, (2) provide a baseline bid for the Assets, and (3) should result in the Debtors obtaining the highest and best price for the Assets, which will benefit all parties in interest. The Committee, which is a joint movant on the Sale Motion, is in agreement and supports the proposed sale under the APA.

## E.    EFFORTS TO MARKET AND SELL THE DEBTORS' ASSETS FOR THE HIGHEST AND BEST PRICE

### 1.    HOULIHAN LOKEY

On November 4, 2015, the Debtors filed an application to employ Houlihan Lokey as their investment banker in their Cases to assist the Debtors with their continued efforts to market and sell the Debtors' Assets for the most money possible. [Dkt. 41 and 42] The application, with certain revisions based on stipulations and orders thereon resolving oppositions by the Buyer and

another purported creditor, and a stipulation and order thereon adjusting Houlihan Lokey's compensation structure, was approved by an order of the Court.  [Dkt. 126]

Houlihan Lokey has been marketing the Debtors' Assets for sale since April 2015.  In order to do so, Houlihan Lokey, among other things, (1) contacted approximately 60 parties identified by the Debtors and Houlihan Lokey as potentially being interested in the Debtors' Assets (the "Potential Bidders") regarding the potential purchase of all or substantially all of the Debtors' Assets, (2) set up a document room with key documents regarding the Debtors' Assets to facilitate due diligence by Potential Bidders, and (3) communicated with Potential Bidders regarding the assets and facilitated due diligence.  A list of Potential Bidders contacted by Houlihan Lokey is attached hereto as Exhibit "8."

**2.    THE BIDDING PROCEDURES AND NOTICE TO PARTIES IN INTEREST**

In conjunction with negotiating the terms of the DIP Credit Agreement and APA, the Debtor, the Buyer, and the Committee also negotiated terms for procedures (the "Bidding Procedures") that would govern the sale of the Debtors' Assets.  The Bidding Procedures were part of the overall negotiated terms of, and consideration for, the DIP Credit Agreement and APA.

On December 21, 2015, the Debtors and the Committee filed their joint motion (the "Bidding Procedures Motion") [Dkt. 140] seeking among other things, approval of the Bidding Procedures governing the process, procedures, and notices to be provided regarding the sale of the Debtors' Assets and assumption and assignment of designated contracts.  The Bidding Procedures are summarized in detail in the Bidding Procedures Motion and not repeated here.

On December 30, 2015, the Court entered its Bidding Procedures Order granting the Bidding Procedures Motion and approving the Bidding Procedures and forms of notices to be provided to parties in interest (collectively, the "Auction and Sale Notices").  [Dkt 153]  A true and correct copy of the Bidding Procedures Order is attached hereto as **Exhibit "4,"** together with the following Auction and Sale Notices referenced in, and approved pursuant to, the Bidding Procedures Order, that were separately lodged with the Court:

16

- The Bidding Procedures – Exhibit "1" to Bidding Procedures Order;

- The Notice of Bidding Procedures, Auction Date and Sale Hearing – Exhibit "2" to Bidding Procedures Order, which includes the Bidding Procedures as an attachment;

- Notice of Auction and Hearing on Joint Motion Authorizing a Sale Of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests – Exhibit "3" to Bidding Procedures Order; and

- Notice to Counterparties to Executory Contracts and Unexpired Leases that May Be Assumed and Assigned – Exhibit "4" to Bidding Procedures Order.

In addition to approving the Bidding Procedures and Auction and Sale Notices, pursuant to the Bidding Procedures Order, the Court also, among other things:

- Found that the Bidding Procedures "are reasonable and appropriate under the circumstances of the Debtors chapter 11 cases" [Bidding Procedures Order, ¶ C];

- Found that the Auction and Sale Notices "are each calculated to provide adequate notice concerning the proposed sale of the Assets and the proposed assumption and assignment of the [Assigned Contracts], as contemplated in the [Buyer] APA, and are intended to provide due and adequate notice of the relief sought in the Sale Motion" [*Id.*, ¶ D; *see also*, ¶ 13];

- Found that the entry of the Bidding Procedures Order was "in the best interests of the Debtors, their estates, their creditors, and other parties in interest" [*Id.*, ¶ F; *see also*, ¶ 13];

- Allowed Buyer's Secured Claim for all purposes, and the Other Secured Claims of the Other Secured Claimants for purposes of the Buyer credit bidding them in the APA [*Id.*, ¶¶ 4-5; *see also*, ¶ 13];

- Set December 4, 2015 as the deadline for the Debtors to serve the Auction and Sale Notices on (1) the UST; (2) counsel to the Committee; (3) counsel to the Buyer; (4) counsel to Other Secured Claimants; (5) all parties known to be asserting a lien on any of the Assets and who would appear as potentially holding a

lien based on any search conducted to determine who asserts a lien on the Debtors'
assets; (6) all known counterparties to the Purchased Contracts; (7) the Potential
Bidders; (8) the state taxing authorities where the Debtors' operate; (9) the District
Director of Internal Revenue; (10) all known creditors of the Debtors; and (11) all
other parties that filed a request for special notice [*Id.*, at ¶ 14-18];

- Set January 6, 2016 as the deadline for the Debtors and the Committee to file the Sale Motion;

- Set January 13, 2016 as the deadline for the parties to object to the Sale Motion and any proposed assumption and assignment of the Purchased Contracts and related Cure Amounts

- Set a deadline of January 21, 2016 for the submission of Qualified Bids;

- Set an auction for the Assets on January 25, 2016 if one or more Qualified Bids, other than the Qualified Bid by the Buyer, are received;

- Set January 27, 2016 for the hearing on the Sale Motion;

- Found that "compliance with the foregoing notice provisions [of the Bidding Procures Order] shall constitute sufficient notice of the Debtors' proposed sale of the Assets free and clear of all liens, claims, interests and encumbrances (all as set forth in the Sale Motion to be filed by the Debtors and the Committee by no later than January 6, 2016), the contemplated assumption and assignment of each Purchased Contract and the proposed amount of Cure Costs with respect to each such Purchased Contract, and except as set forth in paragraphs 12 and 13 of this Order, **no other or further notice of the sale shall be required to be provided by the Debtors**" [*Id.*, at ¶ 14-18].

As can be seen from the final forms of the Auction and Sale Notices, and the proofs of service thereon, true and correct copies of which are attached hereto as **Exhibits "5" – "7,"** the Debtors complied with the notice requirements set forth in the Bidding Procedures Order regarding notice of the Bidding Procedures, notice of the hearing on this Sale Motion, and notice

18

of the proposed assumption and assignment of the Purchased Contracts or any other contracts that

may be later designated by the Buyer or any successful Qualified Bidder.  Notwithstanding the

foregoing, in order to provide maximum notice and potential for the Debtors to obtain the highest

and best price for the Assets, concurrently herewith, the Debtors will also file with the Clerk of

the Court the Notice of Sale of Estate Property pursuant to LBR 6004-1(f).

## F. THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND RELATED CURE AMOUNTS.

As discussed above, pursuant to the Sale Motion, the Debtors are seeking, inter alia, an

order approving (1) the Debtors' assumption of the Assigned Contracts, and possibly the

potentially Assigned Contracts that may be designated by the Buyer (or a successful Qualified

Bidder) for inclusion in the Assigned Contracts listed in Schedule 2.1(c) and 5.11 of the APA

and (2) the related Cure Amounts for the Assigned Contracts, and potentially Assigned

Contracts set forth in the Notice to Counterparties to Executory Contracts and Unexpired Leases

that May Be Assumed and Assigned.

The APA and Notice to Counterparties to Executory Contracts and Unexpired Leases

that May Be Assumed and Assigned list the following Assigned Contracts, and potentially

Assigned Contracts, and related cure amounts:[10]

**ASSIGNED CONTRACTS LIST**

| Other Party | Cure Amount as of the Petition Date of September 30, 2015 | Cure Amount as of the Date of December 31, 2015 |
|---|---|---|
| Amazon Web Services (AWS) | $88,684.27 | $127,774.72 |
| Hotel Internet Services (HIS) | $29,366.27 | $29,366.27 |
| JetBlue Airways | $26.04 | $26.04 |
| Mobilitie Investments III, LLC, | $4,355.64 | $4,355.64 |
| Outfront Media Inc. | $0 | $0 |
| Ovation Networks, Inc. | $51,342.89 | $51,342.89 |
| Panasonic Avionics Corporation | $0 | $0 |

---

[10] The listing of the Assigned Contracts, and potentially Assigned Contracts, below does not constitute an admission by the Debtors or the Committee that your agreement actually constitutes an executory contract or unexpired lease under Section 365, and the Debtors and Committee expressly reserve the right to challenge the status of any agreement and remove any Assigned Contract.

**POTENTIALLY ASSIGNED CONTRACTS LIST**

| Other Party | Cure Amount as of the Petition Date of September 30, 2015 | Cure Amount as of the Date of December 31, 2015 |
|---|---|---|
| Adap.tv, Inc. | $0 | $0 |
| Alliance Data Services | $237.35 | $237.35 |
| Eclipse Capital Partners LLC | $0 | $0 |
| GenesisMedia, LLC | $0 | $0 |
| Houlihan Lokey Howard & Zukin | Contingent on sale results | Contingent on sale results |
| ipCapital Licensing Co. I, LLC

ipCapital Group | $0 | $0 |
| Jensen Capital Partners, LLC | $0 | $0 |
| Practics Inc. | $0 | $0 |
| Public Storage #21106 | $150 | $150 |
| Skyline Partners, Intl., LLC | $0 | $05 |
| 5 Net Solutions | $0 | $0 |
| Access Media 3, Inc. | $10,186.64 | $10,186.64 |
| Advanced Wireless Group, LLC (aka Boingo Wireless, Inc.) | $96,936.89 | $96,936.89 |
| Deep Blue Communications, LLC | $316.66 | $316.66 |
| Direct Video Entertainment | $0 | $0 |
| Docomo Intertouch Pte Ltd

Intertouch Holdings LLC | $0 | $0 |
| Double Click For Publishers Google | $0 | $0 |
| Essenture Incorporated | $75,595.56 | $75,595.56 |
| Federal Realty Investment Trust | $13.36 | $13.36 |
| Hill Companies | $0 | $0 |
| Intermedia Cable Communications | $0 | $0 |
| Pacific Telemanagement Services | $3.06 | $3.06 |
| Peterson Communications Group | $0 | $0 |
| Pure Pages | $656.48 | $656.48 |
| Social Wi-Fi Marketing | $82.12 | $82.12 |
| SWS Realty | $42,614.64 | $42,614.64 |
| TelePacific | $0 | $0 |
| The Network Operations Company | $0 | $0 |
| Uniguest, Inc. | $1,022.68 | $1,022.68 |
| United Solution LLC | $240.46 | $240.46 |
| Wi-Fi Guys, LLC | $225.06 | $225.06 |

## II.

### DISCUSSION

**A.    THE DEBTORS SHOULD BE AUTHORIZED TO SELL THE PURCHASED ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES PURSUANT TO 11 U.S.C. § 363 AND THE TERMS OF THE APA**

**1.    THE DEBTORS SHOULD BE AUTHORIZED TO SELL THE ASSETS.**

Pursuant to Sections 363(b)(1) and 1107(a), "[The debtor in possession], after notice and a hearing, may . . . sell . . . other than in the ordinary course of business, property of the estate." 11 U.S.C. §§ 363(b)(1) and 1107(a).   As a general matter, a court determining a Section 363(b) motion to sell property of the estate should determine, based on the evidence presented, that there is a "sound business reason" to grant such motion.   In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983).   In re Martin (Myers v. Martin), 91 F.3d 389, 395 (3d Cir. 1996) citing In re Schipper (Fulton State Bank v. Schipper), 933 F.2d 513, 515 (7th Cir. 1991); In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143 (3d Cir. 1986) (implicitly adopting test of Lionel Corp. and requiring good faith); In re Delaware and Hudson Ry. Co., 124 B.R. 169 (D. Del. 1991) (concluding that the Third Circuit adopted the "sound business judgment" test in the Abbotts Dairies decision).

In the Ninth Circuit, "cause" exists for authorizing a sale of estate assets if it is in the best interest of the estate, and a business justification exists for authorizing the sale.   In re Huntington, Ltd., 654 F.2d 578 (9th Cir. 1981); Walter v. Sunwest Bank (In re Walter), 83 B.R. 14, 19-20 (9th Cir. BAP 1988).   In addition, the court must further find it is in the best interest of the estate.   To make this determination, the court should consider whether:

(1)    the sale is fair and reasonable, i.e., the price to be paid is adequate;
(2)    the property has been given adequate marketing;
(3)    the sale is in good faith, i.e., there is an absence of any lucrative deals with insiders, and
(4)    adequate notice has been provided to creditors.

In re Wilde Horse Enterprises, Inc., 136 B.R. 830, 841-42 (Bankr. C.D. Cal. 1991); In re The
Landing, 156 B.R. 246, 249 (Bankr. E.D. Mo. 1993); In re Mama's Original Foods, Inc., 234 B.R.
500, 502-505 (C.D. Cal. 1999).  As described in detail below, the Debtors' proposed sale of the
Assets to the Buyer, subject to overbid, is appropriate and should be approved by the Court.

**a.**      **SOUND BUSINESS REASON/JUSTIFICATION.**

In In re Walter, the Ninth Circuit Bankruptcy Appellate Panel adopted a flexible case-by-
case test to determine whether the business purpose for a proposed sale justifies disposition of
property of the estate under Section 363(b).  In re Walter, 83 B.R. at 19.  The facts pertaining to
the Debtors' proposed sale of the Purchased Assets amply substantiate the Debtors' business
decision that proceeding with such sale is in the best interest of their estates and merits the
approval of this Court.

As discussed above, soon after the Petition Date, the Debtors had nearly no cash and
certainly not enough funds to maintain operations while the Debtors pursued an orderly sale of the
Assets.  The Debtors, therefore, sought approval of a post-Petition Date Loan from Smith, to pay
expenses necessary to maintain operations and the Cases pending a sale of the Assets.  The Smith
loan, though, did not include a stalking horse bid.

Pursuant to the DIP Credit Agreement and the APA, the Debtors obtained from Buyer a
loan and a stalking horse bid for the Assets.  The DIP loan will fund operations pending the close
of a sale.  Moreover, Buyer's bona fide stalking horse offer sets a floor for overbidders to bid on
the Purchased Assets and allows the Debtors to seek higher and better offers.

Without the DIP Loan Facility and APA provided by the Buyer, the Debtors would likely
have not been able to effectuate an orderly and competitive auction for the Assets, and would
have had to seek to convert or dismiss the Cases.  This would have likely resulted in less value
obtained for the Purchased Assets.

In consideration of the foregoing, the Debtors and the Committee submit that there is a
sound business reason for selling the Purchased Assets pursuant to the APA (or to an alternative
Qualified Bidder under a substantially similar APA).

**b.    FAIR AND REASONABLE PRICE.**

In order for a sale to be approved under Section 363(b), the purchase price must be fair and reasonable.  See generally, In re Canyon Partnership, 55 B.R. 520 (Bankr. S.D. Cal. 1985).  The trustee (or debtor in possession) is given substantial discretion in this regard.  Id.  In addition, courts have broad discretion with respect to matters under section 363(b).  See Big Shanty Land Corp. v. Comer Properties, Inc., 61 B.R. 272, 278 (Bankr. N.D. Ga. 1985).  In any sale of estate assets, the ultimate purpose is to obtain the highest price for the property sold.  Wilde Horse Enterprises, Inc., 136 B.R. at 841 (citing In re Chung King, Inc., 753 F.2d 547 (7th Cir. 1985)), In re Alpha Industries, Inc., 84 B.R. 703, 705 (Bankr. Mont. 1988).

In this case, there is substantial evidence that the Debtors will obtain a fair and reasonable price for the Purchased Assets under the circumstances.  Since April 2015, Houlihan Lokey, which has considerable experience in selling intellectual property and other assets, substantially marketed the Debtors' Assets for sale and contacted approximately 60 Potential Bidders specifically identified as potential buyers for the Purchased Assets.  Houlihan Lokey set up a document room with key documents regarding the Debtors' Assets to facilitate due diligence by Potential Bidders.  Additionally, Houlihan Lokey communicated with Potential Bidders regarding the Assets and facilitated due diligence.

The Debtors ultimately entered into the APA with their primary secured lender.  The APA is the result of protracted, arms-length negotiations by and among the Debtors, the Buyer and, the Committee.  The APA is subject to, among other things, potential overbids by Qualified Bidders at the auction of the Purchased Assets to be conducted in advance of the hearing on this Sale Motion.  As required by the Bidding Procedures Order, the Debtors served the Auction and Sale Notices on all of the Potential Bidders so that they would be informed off the Bidding Procedures and have an opportunity to submit higher and better offers for the Assets.

Under the foregoing conditions, the Debtors and the Committee believe that the Debtors will obtain the highest and best price for the Assets under the circumstances.

### c.     ADEQUATE MARKETING.

As discussed in detail above, the Debtors' Assets were marketed for approximately 9 months by Houlihan Lokey, which contacted approximately 60 specially-identified Potential Bidders for the Assets.  In consideration of the length of time the Debtors' Assets were marketed, the unique nature of the Assets, and the number of Potential Bidders contacted by Houlihan Lokey, the Debtors and the Committee submit that the marketing of the Assets was more than adequate.

### d.     ACCURATE AND REASONABLE NOTICE.

By way of the Bidding Procedures Order, the Court (1) approved the form of the Auction and Sale Notices and (2) found, among other things, that the Auction and Sale Notices "are each calculated to provide adequate notice concerning the proposed sale of the Assets and the proposed assumption and assignment of the [Assigned Contracts], as contemplated in the [Buyer] APA, and are intended to provide due and adequate notice of the relief sought in the Sale Motion" and "compliance with the … notice provisions [of the Bidding Procures Order] shall constitute sufficient notice of the Debtors' proposed sale of the Assets free and clear of all liens, claims, interests and encumbrances (all as set forth in the Sale Motion to be filed by the Debtors and the Committee by no later than January 6, 2016), the contemplated assumption and assignment of each Purchased Contract and the proposed amount of Cure Costs with respect to each such Purchased Contract."

As discussed above, the Debtors complied with the notice requirements set forth in the Bidding Procedures Order by timely serving the Court-approved Auction and Sale Notices on parties identified by the Court in the Bidding Procedures Order.  While no further or additional notice of the Sale Motion and the relief requested therein is required by the Bidding Procedures Order, concurrently herewith, the Debtors will also file with the Clerk of the Court the Notice of Sale of Estate Property pursuant to LBR 6004-1(f).

Based on the foregoing, the Debtors and the Committee submit that they provided accurate and reasonable notice of the proposed transactions of under the APA and the relief requested in the Sale Motion to all parties in interest.

### e.    **GOOD FAITH.**

When a bankruptcy court authorizes a sale of assets pursuant to Section 363(b)(1), it is required to make a finding with respect to the "good faith" of the purchaser.  <u>Abbotts</u>, 788 F.2d at 149.  Such a procedure ensures that Section 363(b)(1) will not be employed to circumvent the creditor protections of Chapter 11, and, as such, it mirrors the requirement of Section 1129 that the Court independently scrutinize the proposed sale and makes a finding that it has been proposed in good faith.  <u>Id.</u> at 150.

"Good faith" encompasses fair value, and further speaks to the integrity of the transaction. <u>Wilde Horse</u>, 136 B.R. at 842.  With respect to the debtor's conduct in conjunction with the sale, the good faith requirement "focuses principally on the element of special treatment of the debtor's insiders in the sale transaction."  <u>See</u> <u>In re Industrial Valley Refrigeration and Air Conditioning Supplies, Inc.</u>, 77 B.R. 15, 17 (Bankr. E.D. Pa. 1987).  With respect to the buyer's conduct, this Court should consider whether there is any evidence of "fraud, collusion between the purchaser and other bidders or the [debtor], or an attempt to take grossly unfair advantage of other bidders." <u>Abbotts Dairies</u>, 788 F.2d at 147, <u>In re Rock Indus. Mach. Corp.</u>, 572 F.2d 1195, 1198 (7th Cir. 1978); <u>see</u> <u>Wilde Horse</u>, 136 B.R. at 842; <u>In re Alpha Industries, Inc.</u>, 84 B.R. 703, 706 (Bankr. D. Mont. 1988).  In short, "[l]ack of good faith is generally determined by fraudulent conduct during the sale proceedings."  <u>In re Apex Oil Co.</u>, 92 B.R. 847, 869 (Bankr. E.D.Mo. 1988) (citing <u>In re Exennium, Inc.</u>, 715 F.2d 1401, 1404-05 (9th Cir. 1983)).

The Debtors and the Committee submit that the proposed sale of the Assets has been, and will be, conducted in good faith.  As set forth herein above and below, the APA was negotiated at arms-length over a protracted period of time by and among the Debtors, the Buyer, which is not an "insider" of the Debtors, as defined by Section 101(31)(B), and the Committee, which is wholly independent of the Debtors, with limited involvement from the Other Secured Claimants which are not even parties to the APA.  In addition, the Buyer's offer for the for the Purchased Assets is still subject to higher and better bids pursuant to the Court-approved Bidding Procedures.  In consideration of the foregoing, the Debtors and the Committee submit that the

Buyer, or any successful accepted Successful Bidder, is entitled to a good faith finding pursuant to Section 363(m), which is a requirement under the terms of the APA.

Section 363(m) provides that "[t]he reversal or modification on appeal of an authorization under [section 363(b) or (c)] of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith." 11 U.S.C. § 363(m).  In making a good faith determination, the Ninth Circuit Court of Appeals has indicated that this requirement speaks to the integrity of the purchaser's conduct in the course of the sale proceedings.  See Cmty. Thrift & Loan v. Suchy (In re Suchy), 786 F.2d 900, 902 (9th Cir. 1986) (internal quotation marks and citations omitted).  In making a good faith determination, courts generally consider whether there is any evidence of fraud, collusion, or interested dealing and whether the purchaser attempted "to take grossly unfair advantage of other bidders." Id.

As set forth above, the Debtors and Committee believe the Buyer (or any Successful Bidder) is a good faith purchaser entitled to the protections afforded by Section 363(m).

**2.    THE DEBTORS SHOULD BE AUTHORIZED TO SELL THE PURCHASED ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES.**

Section 363(f) provides, in relevant part, as follows:

> The [debtor in possession] may sell property under subsection (b) . . . of this section free and clear of any interest in such property of an entity other than the estate, only if—
>
> (1)    applicable non-bankruptcy law permits the sale of such property free and clear of such interest;
> (2)    such entity consents;
> (3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4)    such interest is in bona fide dispute; or
> (5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. §363(f).

Section 363(f) was drafted in the disjunctive.  Thus, the Debtors and the Committee need to satisfy only one of the five subsections of Section 363(f) in order for the sale of the Purchased

Assets to be free and clear of all interests.  In this case, Section 363 is satisfied with respect to each creditor asserting an alleged lien, claim, interest, or encumbrance against any of the Assets. **First,** based on a review of UCC Reports, the Debtors and the Committee believe that the Buyer and the Other Secured Claimants are the only entities and individuals that may have an interest in the Debtors' Assets.  The Buyer obviously consents to the free and clear sale because it is a party to the APA and the entity seeking to acquire the Purchased Assets.  Further, the Debtors are informed that the Other Secured Claimants also consent to the proposed free and clear sale of the Purchased Assets, and, in the absence of any objection to the Sale Motion, should be deemed to have consented to the sale of the Assets.  In that case, Section 363(f)(2) would be satisfied.

**Second,** as discussed, the Buyer's allowed Buyer's Secured Claim and DIP Claim total approximately $7,089,000, and the Other Secured Claimants' Other Secured Claims total approximately $3,978,000, for a total of $11,067,000 in claims allowed to credit bid under Section 363(k).  Under the Bidding Procedures, any Qualified Overbid would have to include cash consideration totaling at least $12,267,000 (*i.e.*, the Total Consideration of $11,767,000 (consisting of the $11,067,000 in credit bid claims, plus $700,000 in cash), plus the initial overbid amount of $500,000).  This amount would be sufficient to pay Buyer's Secured Claim and DIP Claim and to reserve for the full amount of the Other Secured Claimants' Other Secured Claims.  Thus, the sale price for the Purchased Assets greatly exceeds the value of all liens on the Assets and Section 363(f)(3) is satisfied.

**Third,** as discussed Kensel LLC has asserted an interest in the MS IP Assets included in the Purchased Assets.  However, based on Kensel's admissions in its Complaint that it previously transferred the MS IP Assets to the Debtors, there is a bona fide dispute regarding Kensel's alleged interest in the MS IP Assets.  At most, Kensel LLC has a claim for a breach of an alleged oral contract (which is disputed).  To the extent Kensel, LLC is successful on such a claim, its purported damages appear to be no higher than $105,000.  Complaint, ¶¶ 12, 34, 36, Exhibit "21" thereto at the last paragraph).  The cash the Debtors expect to receive as a result of a sale will be sufficient to pay such a claim, should it be successful.  Thus, pursuant to Section 363(f)(4), the

Court can order a sale of the MS IP Assets included in the Purchased Assets free and clear of Kensel LLC's alleged interest therein.

**B.**    **THE DEBTORS SHOULD BE AUTHORIZED TO ASSUME AND ASSIGN THE ASSIGNED CONTRACTS**

Barring exceptions not herein relevant, Section 365(a) authorizes a debtor in possession, "subject to the court's approval, ... [to] assume or reject any executory contract or unexpired lease of the debtor." If there has been a default on any executory contract or unexpired lease, a debtor cannot assume such contract or lease, unless the debtor (1) cures, or provides adequate assurance that the debtor will promptly cure, such default; (2) compensates, or provides adequate assurance that the debtor will promptly compensate a party for any actual pecuniary loss to such party resulting from such default; and (3) provides adequate assurance of future performance under such contract or lease. 11 U.S.C. § 365(b)(2).

A debtor in possession may assume or reject executory contracts for the benefit of the estate. In re Klein Sleep Products, Inc., 78 F.3d 18, 25 (2d. Cir. 1996); In re Central Fla. Metal Fabrication, Inc., 190 B.R. 119, 124 (Bankr. N.D. Fla. 1995); In re Gucci, 193 B.R. 411, 415 (S.D.N.Y. 1996). In reviewing a debtor in possession's decision to assume or reject an executory contract, a bankruptcy court should apply the "business judgment test" to determine whether it would be beneficial to the estate to assume it. In re Continental Country Club, Inc., 114 B.R. 763, 767 (Bankr. M.D. Fla. 1990); see also In re Gucci, supra, 193 B.R. at 415. The business judgment standard requires that the court follow the business judgment of the debtor unless that judgment is the product of bad faith, whim, or caprice. In re Prime Motors Inns, 124 B.R. 378, 381 (Bankr. S.D. Fla. 1991), citing Lubrizol Enterprises v. Richmond Metal Finishers, 756 F.2d 1043, 1047 (4th Cir. 1985), cert. denied, 475 U.S. 1057, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986).

In this case, all of the foregoing requirements have been met. As discussed above, the Debtors are potentially seeking to assume all of the Assigned Contracts enumerated above in paragraph I.F and to assign such Assigned Contracts to the Buyer. The assumption and assignment of the Assigned Contracts, many of which are integral to the continued operation of the Debtors' business, is a requirement of the APA. Furthermore, the assumption and assignment

of the Assigned Contracts will eliminate damages that would arise if the Assigned Contracts were rejected and reduce claims against the estate and preserve funds to be used to pay allowed claims, because the Buyer will have to pay related Cure Amounts.  Therefore, the Debtors and the Committee submit that the "business judgment test" has been satisfied.

In addition, as a prerequisite to the assumption and assignment of any of the Assigned Contracts designated by the Buyer, any payment or other defaults arising under the Assigned Contracts must be cured or there must be adequate assurance of prompt cure for such defaults. The Cure Amounts were set forth in the Notice to Counterparties to Executory Contracts and Unexpired Leases that May Be Assumed and Assigned, which was approved by the Court, and served on counterparties to the Assigned Contracts, and potentially Assigned Contracts, pursuant to the Court's Bidding Procedures Order.  Those Cure Amounts are also set forth in paragraph I.F above.  The Debtors believe that the payment of the Cure Amounts is all that is required to cure any payment or other defaults that may have arisen under the Assigned Contracts, and potentially Assigned Contracts.

To the extent any party to an Assigned Contract asserts that the Debtors or the Buyer need to provide evidence of adequate assurance of future performance by the Buyer, such information will be provided to the Court and other parties in interest by way of supplemental declarations.

Based on the foregoing, the Debtors and the Committee submit that the requirements of Section 365(a), (b), (f) for the assumption and assignment of the Assigned Contracts have been, or will be, satisfied.

## C. THE COURT SHOULD WAIVE THE FOURTEEN-DAY WAITING PERIODS SET FORTH IN BANKRUPTCY RULES 6004(h) AND 6006(d).

FRBP 6004(h) provides, among other things, that an order authorizing the sale of property other than cash collateral is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise.  Bankruptcy Rule 6006(d) has a similar provision with respect to an order approving of a debtor's assumption and assignment of unexpired leases and executory contracts.

In these Cases, it is extremely important that the Debtors close the sale of the Purchased Assets before the January 31, 2016 maturity date of the DIP Loan.  In consideration of the foregoing, and in order to have sufficient time for any unforeseen issues that arise regarding a close of the sale of the Assets, the Debtors and the Committee request that the Court waive the fourteen (14) day waiting periods of Bankruptcy Rules 6004(h) and 6006(d).

## III.

## CONCLUSION

**WHEREFORE**, based on the foregoing, the Debtors and the Committee respectfully request that the Court enter an order:

(1)     granting the Sale Motion;

(2)     approving the sale of substantially all of the Debtors' assets, defined as the Purchased Assets in the APA attached hereto as **Exhibit "1,"** and sometimes referred to herein as the Assets, which Purchased Assets do not include the Excluded Assets, consisting of, among other things, cash, Avoidance Actions under chapter 5 of the Bankruptcy Code, except for any such Avoidance Actions to the extent relating to any Assigned Contracts, and  any claims the Debtors or their estates may have against the Debtors officers or directors and any proceeds thereof, to  the Buyer for a purchase price of $11,767,000 that consists of (a) a credit bid pursuant to Section 363(k) of Buyer's allowed Secured Pre-Petition Claim, DIP Claim, and the Other Secured Claims in an amount up to $11,067,000.00, plus (b) cash in the amount of $700,000, or to any Successful Bidder, free and clear of all liens, claims, interests, and encumbrances, pursuant to Section 363(f), on the terms set forth herein and in the APA;

(3)     finding that the Buyer or Successful Bidder, as applicable, is a good faith purchaser under Section 363(m) and entitled to the protections under Section 363(m);

(4)     approving the Debtors' assumption of the Assigned Contracts and any other potentially and the assignment thereof to the Buyer or any Successful Bidder pursuant to Section 365;

30

  (5) approving the Cure Amounts for the Assigned Contracts and deeming the failure of a counter-party to a particular Assigned Contract to object to the proposed Cure Amount and assumption and assignment to be a waiver of such objection;

  (6) waiving the 14-day stay periods set forth in FRBP 6004(h) and 6006(d);

  (7) authorizing the Debtors, the Buyer or any Successful Bidder, and all other parties in interest to take any and all necessary action required to consummate the sale of the Purchased Assets as contemplated by the APA, including, but not limited to, the assumption and assignment of the Assigned Contracts; and

  (8) granting such other relief as is just and proper under the circumstances.

Dated: January 6, 2016

**MEDIASHIFT, INC. AND
AD-VANTAGE NETWORKS, INC.**

By: _/s/ Todd M. Arnold_
   RON BENDER
   TODD M. ARNOLD
  LEVENE, NEALE, BENDER, YOO
   & BRILL L.L.P.
  Attorneys for Debtors and Debtors in Possession

Dated: January 6, 2016

**OFFICIAL COMMITTEE OF UNSECURED
CREDITORS**

By: _Uzzi Raanan_
   UZZI O. RAANAN
  DANNING, GILL, DIAMOND & KOLLITZ, LLP
  Attorneys for the Official Committee of
  Unsecured Creditors

## DECLARATION OF RICK BARAN

I, Rick Baran, hereby declare as follows:

1.     I am over 18 years of age.  Except where otherwise stated, I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2.     I make this declaration in support of the Sale Motion to which this declaration is attached.  Unless otherwise stated, capitalized terms herein have the same meanings as in the Sale Motion.

3.     I am the President, Chief Financial Officer, and Chief Executive Officer of the Debtors.  I have served as the Chief Financial Officer of the Debtors since May 2013.  I have served as the President and Chief Executive Officer of the Debtors since July 2014.  Based on my positions with the Debtors, I have access to the Debtors' books and records and am familiar with them.  The Debtors' books and records forming the basis for any statements in this declaration constitute writings taken, made, or maintained in the regular or ordinary course of the Debtors' businesses at or near the time of act, condition or event to which they relate by persons employed by the Debtors who had a business duty to the Debtors to accurately and completely take, make, and maintain such records and documents.  Based on my positions with the Debtors, I am also familiar with the history, organization, operations, and financial condition of the Debtors.

4.     On September 30, 2015 (the "Petition Date"), the Debtors each filed a voluntary petition under Chapter 11 of the Bankruptcy Code.  The Debtors continue to manage their financial affairs and operate their bankruptcy estates as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  On October 1, 2015, the Court entered orders granting the Debtors' motions for joint administration of their Chapter 11 cases, with the MediaShift, Inc. case serving as the lead case.  On November 6, 2015, the UST appointed the Committee now consisting of Essenture Incorporated, Glenn Lebowitz, Winthrop Couchot, PC, and Eastward Capital Partners Venture, LP.

5.    Ad-Vantage is a wholly owned subsidiary of MediaShift. MediaShift is a public company. However, in February 2014, MediaShift filed a Form 15 with the Securities and Exchange Commission and, as a result, is no longer subject to the Securities and Exchange Commission's reporting requirements and experiences very little trading of its stock. The Debtors have the same officers and directors.

6.    The Assets the Debtors are seeking to sell pursuant to the Sale Motion include numerous patents and related computer software (defined as the Owned IP in the APA) and other assets owned by the Debtor related to internet advertising. With the Owned IP, the Debtors can enable the owners of wi-fi networks to monetize their networks through the placement of internet advertising both during the login to the wi-fi network and during sessions on the wi-fi network. The Owned IP overrides advertising that would normally appear on web pages accessed through the wi-fi network so that the advertising space can be sold. The Debtors and affiliates sell the advertising space, place the advertising on pages accessed by users on the wi-fi network, and share the advertising revenue with the owner of the wi-fi network.

7.    The Debtors, generally contracting through MediaShift, have contracts with, among others, JetBlue, MGM Las Vegas, and Hotel International Services, whereby the Debtors sell and place advertising that appears during login and sessions on the wi-fi networks operated by the foregoing entities. Google is one of the Debtors' largest purchasers of advertising space. The Debtors were in a position to contract with other wi-fi network providers and to expand their advertising placement footprint, and therefore their advertising sharing revenue. However, the Debtors needed additional funds to do so, as many parties interested in contracting with the Debtors require the Debtors to pay a guaranteed advertising sharing amount before they will allow the Debtors to place advertising on their wi-fi networks.

8.    In order to fund operations, the development of its Owned IP and platform, the implementation of its platform, and the expansion of its advertising footprint, the Debtors obtained various rounds of equity and other financing, including the financing provided by the Buyer, which is secured by liens on the Debtors' Assets, and the financing from the Other Secured Claimants. The Other Secured Claimants and their Other Secured Claims are listed in

Schedule A to the APA.  Unfortunately, due to various complications, the Debtors were not able to get all of the financing they needed to enable them to fund their operations, their efforts to expand their advertising placement, and their debt obligations.

9.    In light of the foregoing, in or about April 2015, the Debtors engaged Houlihan Lokey Capital, Inc. ("Houlihan Lokey") as their investment banker to assist in the marketing and sale of the Debtors' Assets.  The Debtors were pursuing such a sale and intend to continue pursuing a sale in bankruptcy.  However, on August 3, 2015, before the Debtors could fully market their Assets to obtain the highest and best price for them and consummate a sale of their Assets, the Buyer called a default on its secured loans to the Debtors and started to initiate efforts to foreclose on the Debtors' Assets, including the highly valuable Owned IP.

10.    As a result of the foregoing, and in an effort to protect the value of the Debtors' Assets for the benefit of all creditors and interest holders, the Debtors decided to file for bankruptcy protection.

11.    Prior to the Petition Date, on September 17, 2015, MediaShift, through its counsel, obtained a report (the "MS UCC Report") listing the UCC-1 Financing Statements filed against MediaShift and the status of each such UCC-1 Financing Statement.  The MS UCC Report includes as attachments copies of all UCC-1 Financing Statements filed against MediaShift.  A true and correct copy of the MS UCC Report is attached hereto as **Exhibit "2."**

12.    Prior to the Petition Date, on September 28, 2015, Ad-Vantage, through its counsel, obtained a report (the "Ad-Vantage UCC Report" and together with the MS UCC Report, the "UCC Reports") listing the UCC-1 Financing Statements filed against Ad-Vantage and the status of each such UCC-1 Financing Statement.  The Ad-Vantage UCC Report includes as attachments copies of all UCC-1 Financing Statements filed against MediaShift.  A true and correct copy of the Ad-Vantage UCC Report is attached hereto as **Exhibit "3."**

13.    Based on a review of UCC Reports, I believe that the Buyer and the Other Secured Claimants are the only entities and individuals that may have a lien on or security interest in the Debtors' Assets (for definitional purposes only, the "Secured Creditors").

14.    In addition, on November 25, 2015, Kensel & Co., LLC ("Kensel LLC") initiated adversary proceeding 2:15-ap-01646-SK by filing its Complaint for Injunctive and Declaratory Relief (the "Complaint") seeking, among other things, a determination by this Court that Kensel LLC owns certain trademarks, domain names and related assets (the "MS IP Assets") and an injunction requiring MediaShift to transfer the MS IP Assets back to Kensel LLC and prohibiting MediaShift from selling the MS IP Assets.  A true and correct copy of the Complaint is attached hereto as **Exhibit "9."**  I am informed and believe that Kensel LLC plans to file a motion to enjoin the sale of the MS IP Assets to the Buyer or any other Qualified Bidder and set it for hearing on the same date as the Sale Motion.

15.    On July 27, 2014, Kensel sent an email to me.  A true and correct copy of the email is attached hereto as **Exhibit "10."**

16.    As of the Petition Date, the Debtors had approximately $12,000 of cash on hand which constituted the cash collateral of the Debtors' secured creditors.  The Debtors filed a motion and obtained Court authority to use such cash collateral.  After the use of such cash collateral, the Debtors obtained approximately $15,000 of additional funds from the payment of old, pre-Petition Date accounts receivable.  On December 14, 2015, the Debtors filed a motion (the "Cash Collateral Motion") to approve a stipulation with the Buyer, the Other Secured Claimants, and the Committee providing consent to use the foregoing additional cash collateral to fund the payment of expenses that, if not paid, would result in immediate and irreparable harm to the Debtors.  At a hearing held on December 16, 2015, the Court granted the Cash Collateral Motion on an interim basis and set final hearing for December 30, 2015.

17.    Due to the Debtors' lack of funds to continue operating and pursue and close a sale of their Assets, the Debtors needed to obtain a post-Petition Date loan.  The Debtors obtained a commitment from Smith Micro Computing, subject to Court approval, to provide a loan to the Debtors, and the Debtors filed a motion to approve the loan, but there were oppositions from, among others, the Buyer and the Other Secured Claimants.

18.    Therefore, the Debtors, the Buyer, the Other Secured Claimants, and the Committee negotiated in good faith regarding, among other things, (1) the sale of substantially all

of the Debtors' Assets to the Buyer (and indirectly the Other Secured Claimants) or any Successful Bidder, free and clear of all liens, claims, interests, and encumbrances, pursuant to Section 363(f), on the terms set forth herein and in the APA, a true and correct copy of which is attached hereto as **Exhibit "1,"** and (2) a DIP Loan Facility from the Buyer, which the Debtors obtained Court approval for by way of a motion (the "<u>Financing Motion</u>") [Dkt. 128] and the entry of an order thereon (the "<u>Final DIP Order</u>") [Dkt. 152]. I am informed and believe that the Buyer has the right to credit bid the Other Secured Claims which are included in the Total Consideration offered by the Buyer for the Purchased Assets under the APA.

19.    On December 15, 2015, after protracted, good faith, arms-length negotiations, the Debtors, the Committee, and the Buyer were able to document the proposed DIP Loan Facility from the Buyer pursuant to the DIP Credit Agreement (and the related other loan documents) and the sale of substantially all of the Debtors' Assets to the Buyer (and indirectly the Other Secured Claimants) pursuant to the APA (and related documents).

20.    In conjunction with negotiating and documentation of the DIP Credit Agreement and APA, the Debtors and the Committee undertook an analysis of the secured claims asserted by the Buyer and the Other Secured Claimants and came to agreement regarding the allowance of such claims for certain purposes.  The Debtors and the Committee inquired about possible claims or causes of action against the Buyer.  The Debtors and the Committee determined that it was not in the Debtors' or their creditors' best interest to pursue such claims or causes of action against the Buyer, including claims in the nature of a setoff, counterclaim or defenses to the Buyer's Secured Claim, including, but not limited to, those under Sections 506, 544, 547, 548, 550 and/or 552.  In the Final DIP Order, the Buyer's Secured Claim was allowed as of the Petition Date in the amount of $6.4 million.  By way of the Final DIP Order, the Bidding Procedures Order [Dkt. 153], and the terms of the APA, the Buyer is entitled to credit bid the allowed Pre-Petition Secured Claim in the amount of $6,400,000, together with interest thereon after the Petition Date at 12% per annum, for a total amount of $6,658,000.  *See* APA § 3.4(c).

21.    Similarly, the Final DIP Order, the Bidding Procedures Order, and the terms of the APA allow the Other Secured Claims of the Other Secured Claimants listed in Schedule A to the

APA, in the aggregate amount of $3,402,500, as of the Petition Date, together with interest thereon after the Petition Date at 12% per annum, for a total amount of $3,978,000, solely for the purpose of allowing them to be included in the Credit Bid Amount to be provided by the Buyer under the APA, and without prejudice to the rights of the Debtors, the Committee, and any other party in interest to object to the Other Secured Claims, on any ground, and without being bound, or prejudiced by, any statements in the APA, herein, or in related documents, regarding the amounts of the Other Secured Claims or any security for the Other Secured Claims, if they are not included in the Credit Bid Amount and the parties do not consummate the closing of the sale contemplated herein and by the APA. *See* APA § 3.4(k).

22.    In the interests of full disclosure, I note that certain of the Other Secured Claimants held, or appointed people to hold, seats on the Debtors' Boards of Directors. No such person has held a seat on the Debtors' Board of Directors since approximately July 2014. Thus, none of the Board Members considering and approving the APA, which consisted of David Grant, the Debtors' Founder and Chairman of the Board, and me, are included in the group of the Other Secured Claimants. Additionally, while the Other Secured Claimants had some involvement in negotiating the terms of the APA and will indirectly acquire an interest in the Purchased Assets by assigning their Other Secured Claims to the Buyer in exchange for minority equity interest in the acquiring entity, they are not parties to the APA and the terms of the APA were principally negotiated by the Debtors, the Buyer, and the Committee, which is an independent fiduciary of the Debtors' estates and general unsecured creditors. Based on the foregoing, the Debtors submit that the proposed transaction under the APA is not an insider transaction requiring heightened scrutiny.

23.    After considering the terms of, and benefits derived from, the DIP Credit Agreement and the APA, which were mutually contingent, and having no other bona fide offers to serve as a stalking horse for the acquisition of substantially all of the Debtors' Assets and not having the funds necessary to operate and conduct and orderly sale process, I determined, in an exercise of my business judgment, and in consultation with the Committee through its counsel and the Debtors' counsel, that the proposed sale under the APA, together with the related loan

under the DIP Credit Agreement, are in the best interests of the Debtors, their estates, their creditors, and other parties in interest. Together, the DIP Credit Agreement and APA (1) provide the Debtors with the funds they need to pursue and close a sale of the Assets, (2) provide a baseline bid for the Assets, and (3) should result in the Debtors obtaining the highest and best price for the Assets, which will benefit all parties in interest. I am informed and believe that the Committee, which is a joint movant on the Sale Motion, is in agreement and supports the proposed sale under the APA.

24.    On November 4, 2015, the Debtors filed an application to employ Houlihan Lokey as their investment banker in their Cases to assist the Debtors with their continued efforts to market and sell the Debtors' Assets for the most money possible. [Dkt. 41 and 42] The application, with certain revisions based on stipulations and orders thereon resolving oppositions by the Buyer and another purported creditor, and a stipulation and order thereon adjusting Houlihan Lokey's compensation structure, was approved by an order of the Court. [Dkt. 126]

25.    Houlihan Lokey has been marketing the Debtors' Assets for sale since April 2015. In order to do so, Houlihan Lokey, among other things, (1) as I am informed and believe, contacted approximately 60 parties identified by the Debtors and Houlihan Lokey as potentially being interested in the Debtors' Assets (the "Potential Bidders") regarding the potential purchase of all or substantially all of the Debtors' Assets, (2) set up a document room with key documents regarding the Debtors' Assets to facilitate due diligence by Potential Bidders, and (3) as I am informed and believe, communicated with Potential Bidders regarding the assets and facilitated due diligence.

26.    In conjunction with negotiating the terms of the DIP Credit Agreement and APA, the Debtor, the Buyer, and the Committee also negotiated terms for procedures (the "Bidding Procedures") that would govern the sale of the Debtors' Assets. The Bidding Procedures were part of the overall negotiated terms of, and consideration for, the DIP Credit Agreement and APA.

27.    On December 21, 2015, the Debtors and the Committee filed their joint motion (the "Bidding Procedures Motion") [Dkt. 140] seeking among other things, approval of the Bidding Procedures governing the process, procedures, and notices to be provided regarding the

sale of the Debtors' Assets and assumption and assignment of designated contracts. The Bidding Procedures are summarized in detail in the Bidding Procedures Motion and not repeated here.

28.    On December 30, 2015, the Court entered its Bidding Procedures Order granting the Bidding Procedures Motion and approving the Bidding Procedures and forms of notices to be provided to parties in interest (collectively, the "<u>Auction and Sale Notices</u>"). [Dkt 153] A true and correct copy of the Bidding Procedures Order is attached hereto as **Exhibit "4,"** together with the following Auction and Sale Notices referenced in, and approved pursuant to, the Bidding Procedures Order, that were separately lodged with the Court:

- The Bidding Procedures – Exhibit "1" to Bidding Procedures Order;

- The Notice of Bidding Procedures, Auction Date and Sale Hearing – Exhibit "2" to Bidding Procedures Order, which includes the Bidding Procedures as an attachment;

- Notice of Auction and Hearing on Joint Motion Authorizing a Sale Of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests – Exhibit "3" to Bidding Procedures Order; and

- Notice to Counterparties to Executory Contracts and Unexpired Leases that May Be Assumed and Assigned – Exhibit "4" to Bidding Procedures Order.

29.    As can be seen from the final forms of the Auction and Sale Notices, and the proofs of service thereon, true and correct copies of which are attached hereto as **Exhibits "5" – "7,"** the Debtors complied with the notice requirements set forth in the Bidding Procedures Order regarding notice of the Bidding Procedures, notice of the hearing on this Sale Motion, and notice of the proposed assumption and assignment of the Purchased Contracts or any other contracts that may be later designated by the Buyer or any successful Qualified Bidder. Notwithstanding the foregoing, in order to provide maximum notice and potential for the Debtors to obtain the highest and best price for the Assets, concurrently herewith, the Debtors will also file with the Clerk of the Court the Notice of Sale of Estate Property pursuant to LBR 6004-1(f).

30.    As discussed above, pursuant to the Sale Motion, the Debtors are seeking, <u>inter alia</u>, an order approving (1) the Debtors' assumption of the Assigned Contracts, and possibly the

potentially Assigned Contracts that may be designated by the Buyer (or a successful Qualified Bidder) for inclusion in the Assigned Contracts listed in Schedule 2.1(c) and 5.11 of the APA and (2) the related Cure Amounts for the Assigned Contracts, and potentially Assigned Contracts set forth in the Notice to Counterparties to Executory Contracts and Unexpired Leases that May Be Assumed and Assigned.

31.    The APA and Notice to Counterparties to Executory Contracts and Unexpired Leases that May Be Assumed and Assigned list the following Assigned Contracts, and potentially Assigned Contracts, and related cure amounts:

**ASSIGNED CONTRACTS LIST**

| Other Party | Cure Amount as of the Petition Date of September 30, 2015 | Cure Amount as of the Date of December 31, 2015 |
| --- | --- | --- |
| Amazon Web Services (AWS) | $88,684.27 | $127,774.72 |
| Hotel Internet Services (HIS) | $29,366.27 | $29,366.27 |
| JetBlue Airways | $26.04 | $26.04 |
| Mobilitie Investments III, LLC, | $4,355.64 | $4,355.64 |
| Outfront Media Inc. | $0 | $0 |
| Ovation Networks, Inc. | $51,342.89 | $51,342.89 |
| Panasonic Avionics Corporation | $0 | $0 |

**POTENTIALLY ASSIGNED CONTRACTS LIST**

| Other Party | Cure Amount as of the Petition Date of September 30, 2015 | Cure Amount as of the Date of December 31, 2015 |
| --- | --- | --- |
| Adap.tv, Inc. | $0 | $0 |
| Alliance Data Services | $237.35 | $237.35 |
| Eclipse Capital Partners LLC | $0 | $0 |
| GenesisMedia, LLC | $0 | $0 |
| Houlihan Lokey Howard & Zukin | Contingent on sale results | Contingent on sale results |
| ipCapital Licensing Co. I, LLC  ipCapital Group | $0 | $0 |
| Jensen Capital Partners, LLC | $0 | $0 |
| Practics Inc. | $0 | $0 |
| Public Storage #21106 | $150 | $150 |
| Skyline Partners, Intl., LLC | $0 | $05 |
| 5 Net Solutions | $0 | $0 |
| Access Media 3, Inc. | $10,186.64 | $10,186.64 |
| Advanced Wireless Group, LLC (aka Boingo Wireless, Inc.) | $96,936.89 | $96,936.89 |

| Other Party | Cure Amount as of the Petition Date of September 30, 2015 | Cure Amount as of the Date of December 31, 2015 |
|---|---|---|
| Deep Blue Communications, LLC | $316.66 | $316.66 |
| Direct Video Entertainment | $0 | $0 |
| Docomo Intertouch Pte Ltd<br><br>Intertouch Holdings LLC | $0 | $0 |
| Double Click For Publishers Google | $0 | $0 |
| Essenture Incorporated | $75,595.56 | $75,595.56 |
| Federal Realty Investment Trust | $13.36 | $13.36 |
| Hill Companies | $0 | $0 |
| Intermedia Cable Communications | $0 | $0 |
| Pacific Telemanagement Services | $3.06 | $3.06 |
| Peterson Communications Group | $0 | $0 |
| Pure Pages | $656.48 | $656.48 |
| Social Wi-Fi Marketing | $82.12 | $82.12 |
| SWS Realty | $42,614.64 | $42,614.64 |
| TelePacific | $0 | $0 |
| The Network Operations Company | $0 | $0 |
| Uniguest, Inc. | $1,022.68 | $1,022.68 |
| United Solution LLC | $240.46 | $240.46 |
| Wi-Fi Guys, LLC | $225.06 | $225.06 |

32.     As discussed above, soon after the Petition Date, the Debtors had nearly no cash and certainly not enough funds to maintain operations while the Debtors pursued an orderly sale of the Assets.  The Debtors, therefore, sought approval of a post-Petition Date Loan from Smith, to pay expenses necessary to maintain operations and the Cases pending a sale of the Assets. The Smith loan, though, did not include a stalking horse bid.

33.     Pursuant to the DIP Credit Agreement and the APA, the Debtors obtained from Buyer a loan and a stalking horse bid for the Assets.  The DIP loan will fund operations pending the close of a sale.  Moreover, Buyer's bona fide stalking horse offer sets a floor for overbidders to bid on the Purchased Assets and allows the Debtors to seek higher and better offers.

34.     Without the DIP Loan Facility and APA provided by the Buyer, the Debtors would likely have not been able to effectuate an orderly and competitive auction for the Assets, and would have had to seek to convert or dismiss the Cases.  In my opinion, this would have likely resulted in less value obtained for the Purchased Assets.

35.    In consideration of the foregoing, I submit that there is a sound business reason for selling the Purchased Assets pursuant to the APA (or to an alternative Qualified Bidder under a substantially similar APA).

36.    The Debtors are potentially seeking to assume all of the Assigned Contracts enumerated above in paragraph I.F and to assign such Assigned Contracts to the Buyer.    The assumption and assignment of the Assigned Contracts, many of which are integral to the continued operation of the Debtors' business, is a requirement of the APA.    Furthermore, the assumption and assignment of the Assigned Contracts will eliminate damages that would arise if the Assigned Contracts were rejected and reduce claims against the estate and preserve funds to be used to pay allowed claims, because the Buyer will have to pay related Cure Amounts. Therefore, I, in an exercise of my business judgment, determined that the proposed assumption and assignment of the Assigned Contracts serves the best interests of the Debtors, their estates, and their creditors.    Accordingly, I submit that the "business judgment test" has been satisfied regarding assumption and assignment of the Assigned Contracts.

37.    In addition, as a prerequisite to the assumption and assignment of any of the Assigned Contracts designated by the Buyer, any payment or other defaults arising under the Assigned Contracts must be cured or there must be adequate assurance of prompt cure for such defaults.    The Cure Amounts were set forth in the Notice to Counterparties to Executory Contracts and Unexpired Leases that May Be Assumed and Assigned, which was approved by the Court, and served on counterparties to the Assigned Contracts, and potentially Assigned Contracts, pursuant to the Court's Bidding Procedures Order.    Those Cure Amounts are also set forth in paragraph I.F above.    I believe that the payment of the Cure Amounts is all that is required to cure any payment or other defaults that may have arisen under the Assigned Contracts, and potentially Assigned Contracts.

/ / /

/ / /

38.    It is extremely important that the Debtors close the sale of the Purchased Assets before the January 31, 2016 maturity date of the DIP Loan.

I declare and verify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on this 6th day of January 2016, at Los Angeles, California.

_____

RICK BARAN

43

1

2
## DECLARATION OF RAJ DAYALAN

3
I, Raj Dayalan, hereby declare as follows:

4
1.      I am over 18 years of age.  Except where otherwise stated, I have personal

5
knowledge of the facts set forth below and, if called to testify, would and could competently

6
testify thereto.

7
2.      I make this declaration in support of the Sale Motion to which this declaration is

8
attached.  Unless otherwise stated, capitalized terms herein have the same meanings as in the

9
Sale Motion.

10
3.      I am a Director in Houlihan Lokey's Technology, Media & Telecom Group, and

11
am duly authorized to execute this Declaration on behalf of Houlihan Lokey.  I focus primarily on

12
providing strategic advisory services for companies in the Internet sector.  I am based in the

13
firm's Los Angeles office.  Prior to joining Houlihan Lokey, I was an Executive Director at UBS

14
overseeing the Internet investment banking practice within the firm's Global TMT Group.  Prior

15
to UBS, I worked as an Internet entrepreneur and as a principal investor. Earlier in my career, I

16
was a member of Deutsche Bank's Technology Group and Salomon Brothers' Media & Telecom

17
practice, where I began my career.  I hold a B.A. in Economics and Political Science from the

18
University of California, Irvine, and an MBA from the UCLA Anderson School of Management.

19
I am included among the team at Houlihan Lokey principally involved in efforts to market and

20
sell the Debtors' Owned IP and other assets.

21
4.      On November 4, 2015, the Debtors filed an application to employ Houlihan Lokey

22
as their investment banker in their Cases to assist the Debtors with their continued efforts to

23
market and sell the Debtors' Assets for the most money possible.  [Dkt. 41 and 42]  The

24
application, with certain revisions based on stipulations and orders thereon resolving oppositions

25
by the Buyer and another purported creditor, and a stipulation and order thereon adjusting

26
Houlihan Lokey's compensation structure, was approved by an order of the Court.  [Dkt. 126]

27
5.      Houlihan Lokey has been marketing the Debtors' Assets for sale since April 2015.

28
In order to do so, Houlihan Lokey, among other things, (a) contacted approximately 60 parties

identified by the Debtors and Houlihan Lokey as potentially being interested in the Debtors' Assets (the "Potential Bidders") regarding the potential purchase of all or substantially all of the Debtors' Assets, (b) set up a document room with key documents regarding the Debtors' Assets to facilitate due diligence by Potential Bidders, and (c) communicated with the Potential Bidders regarding the assets and facilitated due diligence. A list of Potential Bidders contacted by Houlihan Lokey is attached hereto as Exhibit "8."

I declare and verify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on this 6th day of January 2016, at Los Angeles, California.

_____

RAJ DAYALAN

# EXHIBIT "1"

*Execution Version*

# ASSET PURCHASE AGREEMENT

*by and among*

## MEDIASHIFT, INC.

*and*

## AD-VANTAGE NETWORKS, INC.

*as Sellers;*

*and*

## MEDIASHIFT HOLDINGS, INC.

*as Buyer*

## DATED AS OF DECEMBER 14, 2015

83691923.7

# TABLE OF CONTENTS

**Page**

ARTICLE I         DEFINITIONS ...................................................................................2
    Section 1.1.         Definitions................................................................2
ARTICLE II        SALE AND PURCHASE OF ASSETS ..............................................10
    Section 2.1.         Purchased Assets...................................................10
    Section 2.2.         Excluded Assets ...................................................12
    Section 2.3.         Assumed Liabilities..............................................13
    Section 2.4.         Retained Liabilities ..............................................13
    Section 2.5.         Buyer's Designees.................................................14
ARTICLE III       CONSIDERATION ...........................................................................14
    Section 3.1.         Definitions.............................................................14
    Section 3.2.         Total Consideration...............................................16
    Section 3.3.         Credit Bid Procedures and Releases......................16
    Section 3.4.         Allocation of Total Consideration.........................17
    Section 3.5.         Mutual Indemnification.........................................18
ARTICLE IV        CLOSING AND CLOSING DELIVERIES .......................................18
    Section 4.1.         Closing ..................................................................18
    Section 4.2.         Buyer Deliveries....................................................18
    Section 4.3.         Seller Deliveries ...................................................18
    Section 4.4.         Purchased Assets Taken Free and Clear ...............19
ARTICLE V         REPRESENTATIONS AND WARRANTIES OF SELLERS ............19
    Section 5.1.         Corporate Organization, Good Standing and Qualification ..................19
    Section 5.2.         Authority, Validity and Effect...............................20
    Section 5.3.         No Conflict; Required Filings and Consents.........20
    Section 5.4.         Subsidiaries...........................................................20
    Section 5.5.         [Intentionally Omitted]..........................................20
    Section 5.6.         Purchased Assets...................................................20
    Section 5.7.         Financial Information; No Undisclosed Liabilities................21
    Section 5.8.         [Intentionally Omitted]..........................................22
    Section 5.9.         [Intentionally Omitted]..........................................22
    Section 5.10.        [Intentionally Omitted]..........................................22
    Section 5.11.        Assigned Contracts................................................22
    Section 5.12.        Litigation ..............................................................22
    Section 5.13.        Proprietary Rights ................................................23
    Section 5.14.        Taxes .....................................................................24
    Section 5.15.        Brokers' Fees ........................................................24
    Section 5.16.        [Intentionally Omitted]..........................................25
    Section 5.17.        Employees..............................................................25
    Section 5.18.        [Intentionally Omitted]..........................................25
    Section 5.19.        Insurance ...............................................................25
    Section 5.20.        [Intentionally Omitted]..........................................25
    Section 5.21.        [Intentionally Omitted]..........................................25
    Section 5.22.        Compliance with Laws..........................................26
    Section 5.23.        [Intentionally Omitted]..........................................26
    Section 5.24.        [Intentionally Omitted]..........................................26
    Section 5.25.        [Intentionally Omitted]..........................................26

# TABLE OF CONTENTS

(continued)

Page

| | | |
|---|---|---|
| Section 5.26. | Compliance with the Foreign Corrupt Practices Act and Export Control and Anti-Boycott Laws | 26 |
| Section 5.27. | [Intentionally Omitted] | 26 |
| Section 5.28. | Full Disclosure | 26 |
| ARTICLE VI | REPRESENTATIONS AND WARRANTIES OF BUYER | 27 |
| Section 6.1. | Corporate Organization and Qualification | 27 |
| Section 6.2. | Authority, Validity and Effect | 27 |
| Section 6.3. | No Conflict; Required Filings and Consents | 27 |
| Section 6.4. | Brokers' Fees | 28 |
| ARTICLE VII | COVENANTS | 28 |
| Section 7.1. | Bankruptcy Court Filings | 28 |
| Section 7.2. | Commercially Reasonable Efforts to Satisfy Conditions | 28 |
| Section 7.3. | Operation of the Business Prior to Closing | 29 |
| Section 7.4. | Access to Information | 30 |
| Section 7.5. | Confidentiality | 31 |
| Section 7.6. | Certain Tax Matters | 31 |
| Section 7.7. | Employment | 32 |
| Section 7.8. | Personally Identifiable Information | 33 |
| Section 7.9. | Certain Adequate Assurances | 33 |
| Section 7.10. | Notification of Certain Matters | 33 |
| Section 7.11. | Further Assurances | 33 |
| Section 7.12. | Publicity | 34 |
| Section 7.13. | Name Change | 34 |
| Section 7.14. | No Control of Other Party's Business; Other Actions | 34 |
| Section 7.15. | Remittance of Payments | 34 |
| Section 7.16. | Asserted Broker Claims | 34 |
| ARTICLE VIII | CONDITIONS TO CLOSING | 34 |
| Section 8.1. | Conditions to Buyer's Obligations | 34 |
| Section 8.2. | Conditions to Sellers' Obligations | 35 |
| ARTICLE IX | TERMINATION | 36 |
| Section 9.1. | Termination of Agreement | 36 |
| Section 9.2. | Effect of Termination | 38 |
| Section 9.3. | Expense Reimbursement | 39 |
| ARTICLE X | MISCELLANEOUS | 39 |
| Section 10.1. | Survival | 39 |
| Section 10.2. | Rules of Construction | 39 |
| Section 10.3. | Expenses | 40 |
| Section 10.4. | Amendment and Waiver | 40 |
| Section 10.5. | Notices | 40 |
| Section 10.6. | Binding Agreement; Assignment | 41 |
| Section 10.7. | Severability | 41 |
| Section 10.8. | Entire Agreement | 41 |
| Section 10.9. | Counterparts | 41 |
| Section 10.10. | Governing Law | 41 |
| Section 10.11. | Submission to Jurisdiction; Consent to Service of Process | 42 |

**TABLE OF CONTENTS**
(continued)

                                                                          **Page**

Section 10.12.    Waiver of Right to Trial by Jury ............................................................42
Section 10.13.    Parties in Interest................................................................................42
Section 10.14.    Descriptive Headings .........................................................................42
Section 10.15.    Incorporation of Schedules.................................................................42

**Schedules**

Schedule A          Promissory Notes
Schedule B          Bidding Procedures Order

Schedule 2.1(b)     Fixed Asset Schedule
Schedule 2.1(c)     Assigned Contracts
Schedule 2.2        Excluded Assets

## ASSET PURCHASE AGREEMENT

**THIS ASSET PURCHASE AGREEMENT** (this "Agreement"), dated as of December 14, 2015, is made by and among MEDIASHIFT, INC., a Nevada corporation ("MediaShift"), AD-VANTAGE NETWORKS, INC., a Delaware corporation and wholly owned subsidiary of MediaShift ("AdVantage"), jointly and severally (each, a "Seller" and, collectively, "Sellers"), and MEDIASHIFT HOLDINGS, INC., a Delaware corporation ("Buyer"). Buyer and Sellers are sometimes referred to herein each as a "Party" and, collectively, as the "Parties".

## RECITALS

**WHEREAS**, Sellers operate a digital advertising technology and services business under the MediaShift name (the "Business"), using technology owned by MediaShift and/or AdVantage, including the MediaShift Monetization Platform (as described in MediaShift's website at www.mediashift.com);

**WHEREAS**, the business (the "Excluded Business") previously operated by Travora Networks, Inc., a Delaware corporation and wholly owned subsidiary of MediaShift ("Travora"), is not included within the Business, and those assets of Travora used exclusively in the Excluded Business, including the name and trademark "Travora" and certain specified Internet domains, are not included in the Purchased Assets;

**WHEREAS**, on September 30, 2015, Sellers commenced cases (the "Bankruptcy Cases") under Chapter 11 of Title 11 of the United States Code (as it may be amended from time to time as applicable to the Bankruptcy Cases, the "Bankruptcy Code") in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court") (the date of such commencement being referred to as the "Petition Date");

**WHEREAS**, Sellers continue in possession of their assets and are authorized under the Bankruptcy Code to continue the operation of the Business as debtors-in-possession;

**WHEREAS**, on and subject to the terms and conditions set forth in this Agreement, Sellers desire to sell, transfer and assign to Buyer, and Buyer desires to acquire and assume from Sellers, pursuant to Sections 363 and 365 of the Bankruptcy Code, the Purchased Assets and Assumed Liabilities, in exchange for the Total Consideration (each as defined below), all as more specifically provided herein;

**WHEREAS**, the board of directors of each Seller has determined, based on an exercise of business judgment, that it is advisable and in the best interests of their respective estates and the beneficiaries of such estates to consummate the transactions provided for herein pursuant to the Bidding Procedures Order and the Sale Order (each as defined below) and has approved this Agreement; and

**WHEREAS**, the transactions contemplated by this Agreement are subject to the approval of the Bankruptcy Court and will be consummated only pursuant to the Sale Order to be entered in the Bankruptcy Cases;

**NOW**, **THEREFORE**, in consideration of the foregoing, the mutual representations, warranties, covenants and agreements hereinafter set forth, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto hereby agree as follows:

ARTICLE I

<u>DEFINITIONS</u>

**Section 1.1.    Definitions.** As used in this Agreement, the following terms have the corresponding meanings:

"<u>Affiliate</u>" of any Person means any other Person controlling, controlled by, or under common control with such first Person, where "control" means the possession, directly or indirectly, of the power to direct the management and policies of a Person whether through the ownership of voting securities, by Contract, or otherwise.

"<u>Agreement</u>" is defined in the preamble.

"<u>Alternative Proposal</u>" means any agreement to which the Sellers or any of them is a party, providing for the direct or indirect sale of all or any substantial part of the Purchased Assets or the Business, whether in the form of a merger, stock sale, asset sale, recapitalization, reorganization, joint venture, or other transaction, other than this Agreement or any other agreement to which Buyer or any of its Affiliates or designees is a party.

"<u>Ancillary Agreements</u>" means the Assignment and Assumption Agreement, Bill of Sale, Proprietary Rights Assignments, and each other document and instrument required to be delivered in connection with the transactions contemplated by this Agreement.

"<u>Assigned Contracts</u>" is defined in <u>Section 2.1(c)</u>.

"<u>Assignment and Assumption Agreement</u>" is defined in <u>Section 4.2</u>.

"<u>Assumed Liabilities</u>" is defined in <u>Section 2.3</u>.

"<u>Avoidance Actions</u>" means causes of action under Chapter 5 of the Bankruptcy Code, including Sections 502(d), 544, 545, 547, 548, 549 and 550, or any other avoidance actions under the Bankruptcy Code belonging to Sellers and their estates.

"<u>Bankruptcy Cases</u>" are defined in the recitals.

"<u>Bankruptcy Code</u>" is defined in the recitals.

"<u>Bankruptcy Court</u>" is defined in the recitals.

"<u>Bidding Procedures Order</u>" means a Final Order of the Bankruptcy Court, substantially in the form attached hereto as <u>Schedule B</u> or as otherwise approved by Buyer in its sole and absolute discretion.

83691923.7

"<u>Bill of Sale</u>" is defined in <u>Section 4.3</u>.

"<u>Books</u>" is defined in <u>Section 2.1(l)</u>.

"<u>Bridge Loan Agreement</u>" is defined in <u>Section 3.1(a)</u>.

"<u>Business</u>" is defined in the recitals.

"<u>Business Day</u>" means each day other than a Saturday, Sunday or other day on which commercial banks in California are authorized or required by Law to close.

"<u>Buyer</u>" is defined in the preamble.

"<u>Buyer Representatives</u>" is defined in <u>Section 7.4(a)</u>.

"<u>Buyer's Other Secured Notes</u>" is defined in <u>Section 3.1(b)</u>.

"<u>Buyer's Secured Claim</u>" is defined in <u>Section 3.1(c)</u>.

"<u>Cash Increment</u>" is defined in <u>Section 3.1(d)</u>.

"<u>Claim</u>" has the meaning given to such term in Section 101(5) of the Bankruptcy Code.

"<u>Closing</u>" is defined in <u>Section 4.1</u>.

"<u>Closing Date</u>" is defined in <u>Section 4.1</u>.

"<u>Credit Bid Amount</u>" is defined in <u>Section 3.1(e)</u>.

"<u>Credit Bid Claims</u>" is defined in <u>Section 3.1(f)</u>.

"<u>Code</u>" means the Internal Revenue Code of 1986, as amended, and any reference to any particular Code section shall be interpreted to include any revision of or successor to that section regardless of how numbered or classified.

"<u>Committee</u>" is defined in <u>Section 2.1(l)</u>.

"<u>Confidential Information</u>" is defined in <u>Section 7.5(a)</u>.

"<u>Consent</u>" means any consent, approval, authorization, clearance, exemption, waiver, ratification or similar affirmation by, or filing with or notification to, any Governmental Entity or other Person.

"<u>Contract</u>" means any written or oral agreement, arrangement, commitment, contract, indenture, instrument, lease, license, promise, undertaking or other obligation of any kind or character, or other obligation that is binding on any Person or its properties or business.

83691923.7

"Cure Amounts" means any and all amounts required, as a condition to assumption and assignment, to be paid to a non-debtor party to an Assigned Contract pursuant to Section 365(b) of the Bankruptcy Code.

"Delphi" means Delphi Media Holdings, LLC, a Delaware limited liability company and indirect wholly owned subsidiary of MediaShift.

"DIP Claim" is defined in Section 3.1(g).

"DIP Lender" is defined in Section 3.1(h).

"DIP Loan Facility" is defined in Section 3.1(i).

"Disclosure Schedule" is defined in the preamble to Article V.

"Employee" means (i) any employee, co-employee, shared employee, or independent contractor engaged or employed (or at any relevant time engaged or employed) by or for the Sellers, or either of them, or (ii) any such person at any relevant time engaged or employed by any Affiliate of a Seller, to the extent such person was in engaged or employed in connection with, or working in whole or in part for, the Business.

"Employee Claim" means any Claim, demand, action, or cause of action made or brought by any Employee, including any Claim made pursuant to any applicable Laws relating to employment standards, occupational health and safety, labor relations, workers compensation, pay equity, employment equity, minimum wage, overtime, tip credit, the Consolidated Omnibus Budget Reconciliation Act, WARN Act, the Americans with Disabilities Act, the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act of 1967, the Older Workers Benefit Protection Act, the Family and Medical Leave Act or the Fair Labor Standards Act or any other federal, state or local, statutory or decisional Law regarding employment discrimination or employee benefits, and any , damage, loss, cost, Liability or expense, including legal costs, relating thereto or resulting therefrom.

"Employee Obligations" means all wages, bonuses, incentive, equity, equity-based or similar compensation obligations, deferred compensation arrangements, vacation pay, sick time, pension payments, overtime pay, change of control payments, severance pay and any other termination or severance obligations and any other compensation or obligation which may be due by statute, contract or Law relating to any engagement or employment of Employees.

"Excluded Assets" is defined in Section 2.2.

"Excluded Business" is defined in the recitals.

"Final Order" means an Order, judgment, or other decree of the Bankruptcy Court or other Governmental Entity that has not been vacated, reversed, modified, amended, or stayed, and for which the time to further appeal or seek review or rehearing has expired with no appeal, review or rehearing having been filed or sought.

"Financial Statements" is defined in Section 5.7(a).

"GAAP" means generally accepted accounting principles of the United States, consistently applied.

"Glendale Office Lease" means that certain Rental Agreement by and between MediaShift and SWS Realty, LLC dated January 10, 2012, relating to the Glendale Office Property, in the form provided to Buyer prior to the execution and delivery of this Agreement.

"Glendale Office Property" means the real property leased by MediaShift at 600 North Brand Blvd., Suite 230, Glendale, California 91203.

"Governmental Entity" shall mean any United States or foreign court, administrative or regulatory agency or commission or other United States or foreign, federal, state, county or local governmental authority, instrumentality, agency or commission.

"Indebtedness" of any Person means, without duplication, (i) the principal and interest of, and premium (if any) in respect of, (A) indebtedness of such Person for money borrowed and (B) indebtedness evidenced by notes, debentures, bonds or other similar instruments for the payment of which such Person is responsible or liable; (ii) all obligations of such Person issued or assumed as the deferred purchase price of property, all conditional sale obligations of such Person and all obligations of such Person under any title retention agreement (but excluding trade accounts payable and other accrued liabilities arising in the Ordinary Course of Business); (iii) all obligations of such Person under leases required to be capitalized in accordance with GAAP; (iv) all obligations of such Person for the reimbursement of any obligor on any letter of credit, banker's acceptance or similar credit transaction; (v) all obligations of the type referred to in clauses (i) through (iv) of other Persons for the payment of which such Person is responsible or liable, directly or indirectly, as obligor, guarantor or otherwise, including guarantees of such obligations; and (vi) all obligations of the type referred to in clauses (i) through (v) of other Persons secured by any Lien on any property or asset of such Person (whether or not such obligation is assumed by such Person).

"Knowledge" A Person will be deemed to have "Knowledge" of a particular fact or other matter, if a prudent Person would be expected to learn of such fact or matter in the course of conducting a reasonable investigation into the accuracy of the representations and warranties contained in this Agreement.  The "Knowledge" of Sellers shall be deemed to be the Knowledge of the Named Individuals.

"Law" means any federal, state, local or foreign law, statute, ordinance, rule, regulation, Order, and any other executive or legislative proclamation.

"Liability" means, with respect to any Person, any liability or obligation of any kind, whether known or unknown, absolute or contingent, asserted or unasserted, accrued or unaccrued, disputed or undisputed, liquidated or unliquidated, secured or unsecured, joint or several, due or to become due, vested or unvested, executory, determined or determinable and regardless of whether the same is required to be disclosed on the financial statements of such Person.

"Lien" means, with respect to any asset or other property interest, any and all liens (whether contractual, statutory or otherwise), hypothecations, encumbrances, security interests,

- 5 -

mortgages, pledges, restrictions, charges, claims, instruments, licenses, preferences, priorities, security agreements, easements, covenants, encroachments, reservations, defects of title, options, warrants, trusts or deemed trusts (whether contractual, statutory or otherwise), obligations, liabilities, demands, guarantees, restrictions, contractual commitments, rights, or other interest in the subject property, including without limitation any right of recovery, Tax (including foreign, federal, state and local Tax), order of any Governmental Entity, rights of first refusal and rights of set-off, executions, levies, penalties, charges, or other financial or monetary claims, adverse claims, rights of use, or other Claim there against or therein, of any kind or nature (including (a) any conditional sale or other title retention agreement and any lease having substantially the same effect as any of the foregoing, (b) any assignment , deposit or other arrangement in the nature of a security device, (c) any claims based on any theory that Buyer is a successor, transferee or continuation of Sellers or the Purchased Assets, and (d) any leasehold interest, license or other right, in favor of a person other than Buyer, to use any portion of the Purchased Assets), whether arising prior to or subsequent to the commencement of Sellers' chapter 11 cases, whether or not they have attached or been perfected, registered or filed and whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, known or unknown, legal, equitable, possessory or otherwise, actual or threatened civil, criminal, administrative, regulatory, arbitral or investigative inquiry, action, complaint, suit, investigation, dispute, petition or proceeding by or before any Governmental Entity or Person at law or in equity whether imposed by agreement, understanding, law, equity or otherwise, and any claim or demand resulting therefrom respect of such asset or property interest.

"Litigation" means any suit, action, arbitration, cause of action, claim, complaint, criminal prosecution, investigation, demand letter, governmental or other administrative proceeding, whether at law or at equity.

"Material Adverse Effect" means, with respect to any Person, any change, effect, or circumstance after the date hereof that (a) has or would reasonably be expected to have a material adverse effect on the business, operations, prospects, assets, results of operations or condition (financial or other) of such Person and its Subsidiaries, taken as a whole, other than such changes, effects or circumstances demonstrably attributable to: (i) economic conditions generally in the United States, or conditions in general in the industry and markets in which such Person conducts its businesses, except to the extent such changes materially and disproportionately affect, in an adverse manner, such Person and its Subsidiaries considered as a whole, (ii) any change in the Laws or regulations generally applicable to the industry or markets in which such Person and its Subsidiaries operate, except to the extent such changes materially and disproportionately affect, in an adverse manner, such Person and its Subsidiaries considered as a whole, or (iii) the entry into and consummation of this Agreement or any of the Ancillary Agreements; or (b) prevents Sellers or Buyer, as applicable, from consummating the transactions contemplated hereby in spite of the use of all commercially reasonable efforts to consummate such transactions.

"Named Individuals" means David Grant, Rick Baran, and Mike Spalter.

"Negated Credit Bid Amount" is defined in Section 3.3(b).

"Order" means any administrative decision or award, decree, injunction, judgment, order, quasi-judicial decision or award, ruling, or writ of any federal, state, local or foreign or other court, arbitrator, mediator, tribunal, administrative agency or authority.

"Ordinary Course of Business" means actions that are consistent in nature, scope and magnitude with the past practices of Sellers relating to the Business, taken in the ordinary course of the normal day-to-day operations of such Party.

"Other Secured Claimant" is defined in Section 3.1(j).

"Other Secured Claims" is defined in Section 3.1(k).

"Owned IP" means any and all Proprietary Rights owned or purported to be owned by the Sellers, or in which the Sellers have an ownership interest, including all Proprietary Rights registered to any of the Sellers.

"Party" and "Parties" have the respective meanings ascribed thereto in the preamble.

"Permit" means all permits, licenses, franchises, approvals, certificates, consents, waivers, concessions, exemptions, orders, registrations, notices or other authorizations of any Governmental Entity necessary for the ownership, lease and/or operation of the Purchased Assets and the carrying on of the Business as currently conducted by Sellers.

"Permitted Exceptions" means (i) statutory Liens for current Taxes, assessments or other governmental charges not yet delinquent; (ii) mechanics', carriers', workers', repairers' and similar Liens arising or incurred in the Ordinary Course of Business; (iii) in the case of any Purchased Asset that constitutes a leasehold interest in personal property, the title of the lessor of such property under the applicable lease; and (iv) any Liens associated with or arising in connection with any Assumed Liabilities.

"Person" means any individual, partnership, joint venture, limited liability company, corporation, trust, unincorporated organization, group, or government or other department or agency thereof, or other entity.

"Petition Date" is defined in the recitals.

"Property Tax Returns" is defined in Section 7.6(a).

"Proprietary Rights" means all registered and unregistered intellectual property rights and related priority rights, including all of the following items along with all income, royalties, damages, equitable relief and payments due or payable prior to or at the Closing or thereafter (including damages, equitable relief and payments for past, present or future infringements or misappropriations thereof, the right to sue and recover for past infringements or misappropriations thereof and any and all corresponding rights that, now or hereafter, may be secured throughout the world): (i) patents, patent applications, patent disclosures and inventions (whether or not patentable and whether or not reduced to practice) and any reissue, continuation, continuation-in-part, division, revision, extension or reexamination thereof; (ii) trademarks, service marks, industrial designs, trade dress, internet domain names and web sites, logos,

- 7 -

topographies, trade names and corporate names, including the names "MediaShift" and "Ad-Vantage," together with all goodwill associated therewith; (iii) registered and unregistered copyrights, copyrightable works and mask works; (iv) trade secrets and confidential or proprietary information (including ideas, formulae, compositions, know-how, manufacturing and production processes and techniques, research and development information, drawings, specifications, designs, plans, proposals, technical data, financial, business and marketing plans, and customer and supplier lists, pricing and cost information, business and marking plans and proposals, and related information); (v) Software and Software systems (including data, databases and related documentation) owned and/or used by a party; (vi) licenses or other agreements to or from third parties regarding the foregoing; (vii) all copies and tangible embodiments of the foregoing (in whatever form or medium); and (viii) any and all registrations, applications or renewals of, or rights to use or exploit, any of the foregoing, including, in each case, all such Proprietary Rights relating to the Technology and the Software.

"Proprietary Rights Assignment" is defined in Section 4.3.

"Public Software" means any software that contains, or is derived in any manner (in whole or in part) from, any software that is distributed as free software, open source software (e.g., Linux) or similar licensing or distribution models, including software licensed or distributed under any of the following licenses or distribution models, or licenses or distribution models similar to any of the following: (a) GNU's General Public License (GPL) or Lesser/Library GPL (LGPL); (b) the Artistic License (e.g., PERL); (c) the Mozilla Public License; (d) the Netscape Public License; (e) the Sun Community Source License (SCSL); (f) the Sun Industry Standards License (SISL); (g) the BSD License; and (h) the Apache License.

"Purchased Assets" is defined in Section 2.1.

"Reimbursable Expenses" is defined in Section 9.3.

"Retained Liabilities" is defined in Section 2.4.

"Sale Order" means an Order of the Bankruptcy Court, consistent with the terms of this Agreement and as approved by Buyer in its sole and absolute discretion, approving this Agreement and all of the terms and conditions hereof, approving the sale and assignment to Buyer of all of the Purchased Assets, and approving and authorizing Sellers to consummate the transactions contemplated hereby.

"Seller" and "Sellers" have the respective meanings ascribed thereto in the Preamble.

"Software" means any and all (i) computer programs, including any and all software implementations of algorithms, models and methodologies, whether in source code or object code, and all data, databases, and collections of data, (ii) descriptions, flow-charts and other work product used to design, plan, organize and develop any of the foregoing, screens, user interfaces, report formats, firmware, development tools, templates, menus, buttons and icons and (iii) all documentation including user manuals and other training documentation related to any of the foregoing.

"Straddle Period" is defined in Section 7.6(a).

83691923.7

"Subsidiary" means, with respect to a specified Person: (a) any entity in which the specified Person directly or indirectly owns, beneficially or of record:  (i) an amount of voting securities or other interests of such entity that is sufficient to enable such Person to elect a majority of the members of such entity's board of directors or other governing body, or (ii) a majority of the outstanding equity or financial interests of such entity; (b) any entity with respect to which the specified Person or any Subsidiary thereof acts as the sole general partner, manager, managing member or trustee (or Person performing similar functions); or (c) any Subsidiary of a Subsidiary of such specified Person.

"Tax" or "Taxes" means all taxes, including all federal, state, local and foreign income, gross receipts, ad valorem, value-added, excise, real or personal property (tangible or intangible), sales, use, transfer, capital stock, franchise, goods and services, registration, payroll/wage withholding, employment, unemployment, disability, insurance, social security (or similar), business license, business organization, environmental, workers compensation, profits, license, lease, service, service use, severance, stamp, occupation, premium, windfall profits, customs, duties, escheat obligation, alternative, add-on minimum, estimated and other taxes imposed by any Governmental Entity, and any interest, penalties, assessments or additions to tax resulting from, attributable to or incurred in connection with any tax or any contest or dispute thereof, and including any Liability for the Taxes of another Person.

"Tax Return" means returns, declarations, reports, claims for refund, information returns or other documents (including any related or supporting schedules, statements, or information) filed or required to be filed in connection with the determination, assessment, or collection of Taxes of any Person or the administration of any Laws, regulations, or administrative requirements relating to any Taxes.

"Technology" means, collectively, all designs, formulae, algorithms, procedures, methods, techniques, ideas, know-how, research and development, technical data, programs, subroutines, tools, materials, specifications, processes, inventions (whether patentable or unpatentable and whether or not reduced to practice), apparatus, creations, improvements, works of authorship and other similar materials, and all recordings, graphs, drawings, reports, analyses (including data, databases, collections of data, data summaries, and data analysis), and other writings, and other tangible embodiments of the foregoing, in any form whether or not specifically listed herein, and all related technology, that are used in, incorporated in, embodied in, displayed by or relate to, or are used or useful in the Business, including the MediaShift Monetization Platform (as described in MediaShift's website at www.mediashift.com).

"Termination Day" is defined in Section 9.1(c)(vi).

"Total Consideration" is defined in Section 3.1(l).

"Transfer Taxes" means any sales, use, stamp, documentary stamp, recording, transfer, excise, or similar fees or Taxes or governmental charges (including any interest and penalty thereon) payable in connection with Sellers' transfer of the Purchased Assets to Buyer, and/or Buyer's assumption of the Assumed Liabilities, pursuant to this Agreement.

"Transferred Employee" is defined in Section 7.7(b).

- 9 -

"TravelSpike Litigation" means the Litigation between Travel Spike, LLC and Travora, captioned *Travel Spike, LLC v. Travora Media, f/k/a Travel Ad Network, Inc.*, described on Schedule 5.12 of the Disclosure Schedule.

"TravelSpike Litigation II" means the Litigation between Travel Spike, LLC and Travora and MediaShift, captioned *Travel Spike, LLC v. Travora Media Networks, Inc.; MediaShift Inc.*, described on Schedule 5.12 of the Disclosure Schedule.

"Travora" is defined in the recitals.

"WARN Act" means the Worker Adjustment and Retraining Notification Act of 1988, as amended, and any similar state Law related thereto.

## ARTICLE II

## SALE AND PURCHASE OF ASSETS

**Section 2.1.    Purchased Assets.**  On the terms and subject to the conditions set forth in this Agreement, at the Closing, Buyer shall purchase, acquire and accept from Sellers, and Sellers shall sell, transfer, assign, convey and deliver to Buyer, the Purchased Assets. "Purchased Assets" shall mean all right, title and interest of Sellers (or of any Subsidiary of Sellers) in, to and under all the following assets, wherever located (but excluding Excluded Assets):

(a)    All Proprietary Rights of the Sellers, including the registered patents, patent applications, registered trademarks and other Proprietary Rights of Sellers set forth on Schedule 5.13 of the Disclosure Schedule, together with any Proprietary Rights owned by any Subsidiaries of the Sellers to the extent relating to, used in, or held for use in the Business (and excluding, for the avoidance of doubt, the name and trademark "Travora" and certain Internet domains registered by or for Travora, which are not included in the Purchased Assets), including, in each case, all right, title, and interest in the Owned IP, the Software and the Technology and all documentation, usernames, passwords and other credentials (including administrative and system level credentials) relating thereto;

(b)    All tangible personal property used in, held for use in, or required for the operation of the Business, wherever located, including all servers and other computer hardware on which any Software or Technology is stored and/or implemented, and any related peripherals (all of which servers, other computer hardware and peripherals shall be in good working order and operating condition at the time of delivery to Buyer and which shall be movable in the United States while remaining in good working order and operating condition), and all tangible personal property identified in the fixed asset schedule attached hereto as Schedule 2.1(b), with all assets set forth on the fixed asset schedule located at the Glendale Office Property unless otherwise identified therein;

(c)    All rights and interests of Sellers under the Contracts identified on Schedule 2.1(c) attached hereto, as such Schedule may be amended from time to time in accordance with this Agreement (collectively, the "Assigned Contracts"), including all accounts receivable payable to any Seller under or in respect of any Assigned Contracts or any goods or services provided thereunder;

- 10 -

(d)    All deposits (including customer deposits and security deposits, but excluding deposits that are not transferable to Buyer or that pertain exclusively to any Excluded Assets) and other prepaid charges and expenses of Sellers;

(e)    All insurance benefits, including rights and proceeds, arising from or relating to the Business, the Purchased Assets, or the Assumed Liabilities, but excluding any insurance benefits (including rights and proceeds) arising from or relating to the Excluded Assets;

(f)    All other Claims and causes of action relating to the Business, the Purchased Assets, or the Assumed Liabilities, whether choate or inchoate, known or unknown, contingent or non-contingent, including any Avoidance Actions to the extent relating to the Assigned Contracts (but excluding any Avoidance Actions listed as, or pertaining exclusively to, any Excluded Assets);

(g)    To the extent transferable, all Permits required under any Laws applicable to or affecting the Business, the Purchased Assets, or the Assumed Liabilities;

(h)    All rights  under non-disclosure or confidentiality, non-compete, or non-solicitation agreements with Employees and agents engaged in whole or in part in connection with the Business, the Purchased Assets, or the Assumed Liabilities, or with third parties to the extent relating to the Business, the Purchased Assets, or the Assumed Liabilities;

(i)    All rights under or pursuant to all warranties, representations and guarantees made by suppliers, manufacturers and contractors if and to the extent that such rights are assignable by operation of Law and to the extent affecting any Purchased Assets, other than any warranties, representations and guarantees pertaining exclusively to any Excluded Assets;

(j)    Subject to the provisions of Section 363(b)(1)(A) of the Bankruptcy Code, all goodwill and other intangible assets associated with the Business and/or the Purchased Assets, including customer and supplier lists and the goodwill associated with all Proprietary Rights within the definition of Purchased Assets;

(k)    Subject to the provisions of Section 363(b)(1)(A) of the Bankruptcy Code, all rights to the telephone and facsimile numbers and e-mail addresses used by Sellers in connection with the Business, the Purchased Assets, or the Assumed Liabilities, as well as rights to receive mail and other communications addressed to Sellers (including mail and communications from customers, suppliers, distributors and agents), provided that any such mail and other communications shall be forwarded to the Sellers to the extent relating to any matter other than the Business, the Purchased Assets, or the Assumed Liabilities;

(l)    With the exception of confidential personnel records regarding employees (except as may be waived in writing by any affected employee) and the minute book, stock transfer record, and similar corporate records of Sellers, all books and records relating to or used in connection with the operation of the Business or pertaining to the Purchased Assets or Assumed Liabilities (collectively, the "Books"), but excluding any attorney-client privileged documents, and provided that Sellers, the estates, any trustee appointed in the Bankruptcy Cases and the Official Committee of Unsecured Creditors appointed in the Bankruptcy Cases (the

"Committee") shall have the right upon reasonable prior written notice to access the Books and make copies thereof for two years following the Closing Date, and until the two year anniversary of the Closing Date, Buyer shall use reasonable efforts to preserve the Books intact, and shall provide Sellers and the Committee with notice at least 30 days before intentionally destroying any part of the Books; and

(m)    All proceeds of any Purchased Assets.

For the avoidance of doubt, Buyer understands that certain employees and contractors of Sellers may work, and in the past may have worked, remotely from homes and other locations, and may have used their own personal property, such as laptop and desktop personal computers, printers, modems, Wi-Fi routers, telephones, and mobile devices, to perform services for the Sellers. Buyer acknowledges that such personal property is the personal property of such employees and contractors, and ***shall not constitute*** Purchased Assets. However, any and all Software and Technology that may be stored, loaded, installed, implemented, or accessed on any such personal property, which Software and Technology is used in, held for use in, or required to be used in the Business (other than off-the-shelf software licenses of a type generally available to the public on commercially reasonable terms at an aggregate cost of less than $1,000 per person per year), is the property of Sellers and ***shall constitute*** Purchased Assets for all purposes hereof.

Notwithstanding anything herein to the contrary, Buyer may, in its sole and absolute discretion, exercisable by written notice to Sellers given at any time and from time to time on or before 5:00 p.m. Pacific time on the third Business Day preceding the Closing Date, amend the definition of the Purchased Assets hereunder so as to exclude any Contract or other asset, and/or to include any additional Contract(s) or other asset(s) relating to the Business then owned, held, or controlled by Sellers (except that Buyer may not add as a Purchased Asset anything specifically identified in clauses (iii), (iv), (v), (vi), (vii), (viii), (ix) or (x) of Section 2.2)), provided that: (i) no such exclusion of a Purchased Assets shall entitle Buyer to any reduction in the aggregate consideration payable hereunder; (ii) Buyer shall assume Seller's obligation to pay the Cure Amount for any Contract designated as an Assigned Contract; and (iii) except as provided in clause (ii) of this paragraph, no such addition to the Purchased Assets shall require any additional consideration by Buyer hereunder.

**Section 2.2.    Excluded Assets.** Notwithstanding anything contained in Section 2.1 to the contrary (except the last paragraph of Section 2.1, which shall control), the Purchased Assets shall not include, and Buyer shall not purchase and shall not acquire any rights, title, or interests in, and shall not assume any liabilities or obligations under or in respect of: (i) any real property owned or leased by any of the Sellers, or any of their respective current or former Affiliates, including all rights, titles and interests of Sellers under the Glendale Office Lease; (ii) any right, title or interest, in, to, or under any oil, gas, mineral, or metal deposits or ores, or any concession, lease, or other rights to prospect, develop, or otherwise commercially exploit any such deposits or ores; (iii) all equity, voting and other securities of any direct or indirect Subsidiary of any Seller; (iv) all the outstanding stock and/or other equity interests in Travora, and all the assets of Travora related to or used in connection with the operation of the Excluded Business; (v) the rights of Sellers under the DIP Loan Facility and this Agreement, including all proceeds thereof; (vi) Sellers' cash on hand and any funds from the DIP Loan Facility held in escrow or otherwise for the payment of fees and expenses incurred by professionals employed by Sellers' estates;

- 12 -

(vii) Sellers' contracts with Houlihan Lokey Capital, Inc., pursuant to which it was employed by Sellers' estates; (viii) all Avoidance Actions and any proceeds thereof, except for any such Avoidance Actions to the extent relating to any Assigned Contract; (ix) any claims Sellers or their estates may have against Sellers' officers or directors and any proceeds thereof, including any insurance proceeds paid on such claims; (x) any claims or causes of action for any breach or damages relating to this Agreement or the DIP Loan Facility; and (xi) any other property or asset of Sellers described on Schedule 2.2, as such Schedule may be amended from time to time in accordance with this Agreement (collectively, the "Excluded Assets"), all of which shall be retained by Sellers, to the extent of their respective interests therein.

Section 2.3.    **Assumed Liabilities.**  On the terms and subject to the conditions set forth in this Agreement, on the Closing Date, Buyer shall assume, and from and after the Closing Date Buyer shall pay, perform, fulfill and discharge in the ordinary course all the following (and only the following) Liabilities (collectively, the "Assumed Liabilities"):

(a)    Liabilities arising under the Assigned Contracts, to the extent attributable to periods from and after the Closing Date;

(b)    The obligation to pay any Cure Amounts with respect to the Assigned Contracts, if any; and

(c)    If Buyer, in its sole discretion, elects to assume all or any part of the Credit Bid Claims in lieu of releasing or procuring the release of such obligation pursuant to Section 3.3(c), then any such obligation so assumed shall constitute an Assumed Liability hereunder, to the extent so assumed.

Section 2.4.    **Retained Liabilities.** Buyer shall not assume any Liabilities of Sellers whatsoever that are not Assumed Liabilities, including any Liabilities relating to the Excluded Assets and any Liabilities arising out of, relating to, or in connection with the operation of the Business or ownership or use of the Purchased Assets prior to the Closing Date (collectively, the "Retained Liabilities"). Sellers shall retain all Retained Liabilities and Buyer shall have no obligation to pay, perform, fulfill or discharge any Retained Liabilities. Without limiting the generality of the foregoing, the term Retained Liabilities shall include each of (and Buyer shall in no event be responsible for any of) the following:

(a)    Taxes (i) imposed on any Seller for any period (including, for the avoidance of doubt, Transfer Taxes), or (ii) arising out of or related to the Business or the Purchased Assets for all Tax periods (or portions thereof) ending prior to the Closing;

(b)    any costs or expenses incurred in connection with, or related to, the administration of the Bankruptcy Cases, including any accrued professional fees and expenses of attorneys, accountants, financial advisors and other professional advisors related to the Bankruptcy Cases;

(c)    all Liabilities to the extent arising out of or related to the Excluded Assets, including the TravelSpike Litigation, the TravelSpike II Litigation and/or all other Liabilities of Travora or otherwise relating to the Excluded Business;

- 13 -

(d)    all Liabilities of Sellers under this Agreement or any Ancillary Agreements delivered by Sellers hereunder;

(e)    all Liabilities which may become due or owing under the Assigned Contracts (i) with respect to the period prior to the Closing (other than the Cure Amounts) or (ii) after the Closing but which arise out of or relate to any breach that occurred prior to the Closing (other than the Cure Amounts);

(f)    all Indebtedness owed by any Seller or any predecessor of any Seller except as expressly provided in Article III hereof;

(g)    any Employee Obligations to any Employee arising out of such Employee's employment by Sellers;

(h)    any Employee Claim of any Employee arising out of such Employee's employment by Sellers;

(i)    any WARN Act Liabilities arising on or prior to the Closing Date;

(j)    any Claim arising prior to Closing and not expressly assumed pursuant to this Agreement;

(k)    any Liability to any stockholder or other equity holder of any Seller or any predecessor of any Seller;

(l)    any Liability arising out of or related to any Litigation commenced or threatened against any Seller or any predecessor of any Seller;

(m)    any Liability for infringement or misappropriation of any intellectual property arising out of or related to any conduct of any Seller or operation of the Business on or before the Closing; and

(n)    any Liability of any Seller based upon any Seller's acts or omissions occurring before or after the Closing unless expressly assumed by Buyer.

Section 2.5.    **Buyer's Designees.**  Buyer may designate any Affiliate of the Buyer to receive and hold all or any portion of the Purchased Assets and/or to assume any Assigned Contract.  Notwithstanding anything to the contrary contained in this Section 2.5, prior to Closing, Buyer shall remain liable for any and all of Buyer's obligations arising under, or in connection with, this Agreement.

## ARTICLE III

## CONSIDERATION

Section 3.1.    **Definitions**.  As used in this Agreement, the following terms relating to the payment of consideration for the Purchased Assets have the corresponding meanings:

- 14 -

(a) "Bridge Loan Agreement" means that certain Note and Bridge Loan Agreement dated as of October 31, 2014, by and between MediaShift, AdVantage, Travora, and Delphi, jointly and severally, as borrowers, and Buyer, as lender.

(b) "Buyer's Other Secured Notes" means (i) that certain promissory note dated May 14, 2014, in the principal amount of $50,000, by and between MediaShift, as borrower, and Fisk Investments, LLC, as lender, and (ii) that certain promissory note dated May 28, 2014, in the principal amount of $50,000, by and between MediaShift, as borrower, and Fisk Investments, LLC, as lender, which promissory notes have previously been assigned to Buyer.

(c) "Buyer's Secured Claim" means all Claims of Buyer under the Bridge Loan Agreement and Buyer's Other Secured Notes at the Closing, including, but not limited to, the aggregate principal amount of, accrued unpaid interest on (including post-petition interest), and premium payable with respect to all loans outstanding thereunder, together with costs of collection under the Bridge Loan Agreement in accordance with the terms thereof, in each case to the extent such Claims are allowed as secured Claims against the Sellers in the Bankruptcy Cases, as set forth in the Bidding Procedures Order. As of the Petition Date, Buyer's Secured Claim is deemed for all purposes of this Agreement and the Bankruptcy Cases to be in the aggregate amount of **$6,400,000**, and Buyer and Sellers shall use their respective best efforts to cause the Bidding Procedures Order to allow Buyer's Secured Claim as a secured Claim in such amount, plus simple interest at 12% per annum from the Petition Date through Closing.

(d) "Cash Increment" means an amount equal to the excess of **$1,125,000** over the aggregate original principal amount of all loans and advances made by the DIP Lender to Sellers under the DIP Loan Facility (but not less than $700,000).

(e) "Credit Bid Amount" means the aggregate amount of Buyer's Secured Claim, the DIP Claim, and the Other Secured Claims.

(f) "Credit Bid Claims" means and includes each of the Bridge Loan Agreement, Buyer's Other Secured Notes, the DIP Loan Facility (including any promissory note(s) made by Sellers thereunder) and each of the promissory notes of the Sellers, or any of them, set forth on Schedule A hereto underlying the Other Secured Claims.

(g) "DIP Claim" means all Claims of the DIP Lender under the DIP Loan Facility at the Closing, including the aggregate outstanding principal amount of, and accrued unpaid interest on, all loans and advances made thereunder and any and all other amounts payable in respect thereof.

(h) "DIP Lender" means Buyer or its designee, as lender under the DIP Loan Facility.

(i) "DIP Loan Facility" means that certain Post-Petition Debtor-in-Possession Credit Facility dated as of the date hereof, by and between MediaShift and AdVantage, jointly and severally, as borrowers, and Buyer, as lender.

- 15 -

(j)    "<u>Other Secured Claimant</u>" means, with respect to each of the promissory notes set forth on <u>Schedule A</u>, the Persons identified thereon as original payee of such note.

(k)    "<u>Other Secured Claims</u>" means all Claims against Sellers under each of the promissory notes set forth on <u>Schedule A</u> hereto, including, but not limited to, the aggregate outstanding principal amount of, accrued unpaid interest on, and any and all other amounts payable in respect of, such promissory notes, in each case to the extent such Claims are allowed as secured Claims against the Sellers in the Bankruptcy Cases, as set forth in the Bidding Procedures Order.  The aggregate original principal amount of the promissory notes set forth on <u>Schedule A</u> is **$3,402,500**, and Buyer and Sellers shall use their respective best efforts to cause the Bidding Procedures Order to allow the Other Secured Claims as secured Claims in such aggregate principal amount, plus simple interest at 12% per annum on each promissory note from the date thereof set forth on <u>Schedule A</u> through Closing, solely for the purposes of this Agreement and the purchase and sale of the Purchased Assets contemplated hereby. Notwithstanding any provision of this Agreement and any related documents, the efforts to have the Other Secured Claims allowed as set forth herein is solely for the purpose of allowing them to be included in the Credit Bid Amount, and without prejudice to the rights of Sellers, the Committee, and any other party in interest to object to the Other Secured Claims, on any ground, and without being bound, or prejudiced by, any statements herein or in related documents, regarding the amounts of the Other Secured Claims or any security for the Other Secured Claims if they are not included in the Credit Bid Amount and the Parties do not consummate the Closing and the purchase and sale of the Purchased Assets contemplated herein.

(l)    "<u>Total Consideration</u>" means the Credit Bid Amount, payable in accordance with and subject to <u>Section 3.3</u>, together with the Cash Increment, payable by wire transfer of immediately available funds to an account designated in accordance with the Bidding Procedures Order.

Section 3.2.    **Total Consideration.**  In consideration of the transfer of the Purchased Assets and the assumption of the Assumed Liabilities, upon the Closing, Buyer shall pay and deliver, or cause to be paid and delivered, the Total Consideration, as provided in this Agreement.

Section 3.3.    **Credit Bid Procedures and Releases.**

(a)    At the Closing, the Credit Bid Amount will be paid in full by delivery to Sellers of a release and waiver in proper form reasonably acceptable to Sellers to fully discharge Sellers (and, in the case of Buyer's Secured Claim, to fully discharge Travora and Delphi) from each of the Credit Bid Claims, in each case duly executed and delivered by the holder of such Credit Bid Claim (and, in the case of the Other Secured Claims, accompanied by proper evidence that each of the promissory notes set forth on <u>Schedule A</u> has been duly transferred and assigned to Buyer by the Other Secured Claimant with respect thereto).

(b)    (i)    In the event Buyer consummates the transactions contemplated by this Agreement, upon the consummation of the Closing, (A) the Credit Bid Claims, including any and all interest, attorney's fees and costs, and other related amounts purportedly owed to Buyer and the Other Secured Claimants, and any other Claims of Buyer and the Other Secured

- 16 -

Claimants against the Sellers and their bankruptcy estates shall be deemed satisfied in full and released, and (B) Sellers and Buyer shall exchange mutual releases of any and all claims between them, their respective Affiliates and Subsidiaries, and their respective officers, directors, representatives, and agents (provided that such mutual releases shall not extend to, and shall exclude, (x) any Claims between Sellers and the Other Secured Claimants, and their respective officers, directors, representatives, and agents, except to the extent released pursuant to clause (A) of this sentence, and (y) any claims Sellers or their estates may have against Sellers' officers or directors), in each case except for any Claims arising under or in connection with this Agreement or the DIP Loan Facility.

(ii)   In the event Buyer does not consummate the transactions contemplated by this Agreement, the Other Secured Claims shall be entitled to whatever rights and remedies that they held against Sellers and their bankruptcy estates, and be subject to enforcement by the Other Secured Claimants, and challenge by the Sellers, the Committee, and/or any party in interest, on any basis.

(c)   Notwithstanding anything to the contrary contained herein, at the Closing, in lieu of discharging any of the Credit Bid Claims or any portion thereof, Buyer may assume, or cause its designee to assume, such Credit Bid Claim or portion thereof; provided, however, that (i) the holder of such Credit Bid Claim or portion thereof consents to such assumption; and (ii) it shall nevertheless be a condition of any such assumption that Sellers receive executed releases and waivers from each such holder, providing for the release and waiver of all Credit Bid Claims against Sellers (and, as applicable, Travora and Delphi), to the same extent otherwise provided in Sections 3.3(a) and (b).

(d)   Notwithstanding anything to the contrary herein, under no circumstances shall any portion of the Credit Bid Amount be converted into or otherwise require a cash payment. If, for any reason, Buyer's ability to credit bid all or any portion of the Credit Bid Amount pursuant to Section 363(k) of the Bankruptcy Code is not allowed by the Bankruptcy Court (such portion, a "Negated Credit Bid Amount"), the obligation of Buyer to deliver the portion of the Total Consideration attributable to the Credit Bid Amount shall be reduced dollar-for-dollar by the Negated Credit Bid Amount, no other component of the Total Consideration shall be increased, decreased or otherwise modified, and the failure by Buyer to credit bid any Negated Credit Bid Amount shall not constitute a breach of this Agreement by Buyer.

(e)   For the avoidance of doubt, upon delivery to Sellers of each of the releases and waivers provided for by Section 3.3(a) and/or Section 3.3(c), as applicable, duly executed in accordance with such subsections, the Credit Bid Amount shall be deemed to have been paid in full for all purposes of this Agreement and the Closing.

Section 3.4.   **Allocation of Total Consideration.**   The Aggregate Consideration shall be allocated among the Purchased Assets in accordance with Section 1060 of the Code, as determined by Buyer in good faith.   Buyer and Sellers shall not take any action or position in a Tax Return or Tax proceeding inconsistent with the obligations set forth in this Section 3.4, except as may otherwise be required by applicable Law.

- 17 -

Section 3.5.    **Mutual Indemnification.**    In the event Buyer consummates the transactions contemplated by this Agreement, from and after the Closing:  (a) Buyer shall indemnify Sellers from and against the Credit Bid Claims and any other Claims or causes of action that Buyer may have against Sellers and their bankruptcy estates as of immediately following the Closing (except for any Claims arising under or in connection with this Agreement or the DIP Loan Facility), in each case to the extent any such Claim or cause of action is brought by Buyer or any Subsidiary of Buyer against Sellers after the Closing; and (b) Sellers shall waive and release any and all Claims or causes of actions that Sellers may have against Buyer as of immediately following the Closing (except for any Claims arising under this Agreement or the DIP Loan Facility), and shall indemnify Buyer from and against any such Claims or causes of action to the extent any such Claim or cause of action is brought by Sellers or any Subsidiary of a Seller against Buyer after the Closing.

## ARTICLE IV

## CLOSING AND CLOSING DELIVERIES

Section 4.1.    **Closing.** The closing of the transactions contemplated by this Agreement (the "Closing") shall take place at the offices of Drinker Biddle & Reath LLP, 1800 Century Park East, Suite 1500, Los Angeles, CA 90067-1517, commencing at 10:00 a.m. local time on the third Business Day following the satisfaction or waiver of all conditions to the obligations of the Parties to consummate the transactions contemplated hereby (other than conditions with respect to actions the respective Parties shall take at the Closing itself), or at such other place or on such other date as may be mutually agreeable to Buyer and Sellers.  The date on which the Closing takes place is referred to herein as the "Closing Date."

Section 4.2.    **Buyer Deliveries.** At the Closing, Buyer shall deliver the Total Consideration in accordance with Article III, against receipt of the Purchased Assets, together with the following documents: (i) such instruments of release and waiver, duly executed by Buyer, as reasonably necessary to comply with the obligations of Buyer under Section 3.3; (ii) an instrument of assignment and assumption with respect to each of the Assigned Contracts, assigning and delegating the same to Buyer as of the Closing Date and otherwise in accordance with this Agreement and any applicable Orders of the Bankruptcy Court, and otherwise in such form as Buyer and Sellers shall reasonable agree, duly executed by the Buyer (the "Assignment and Assumption Agreement"); (iii) a certificate duly executed by the President or Chief Executive Officer of Buyer stating that the preconditions specified in Sections 8.2(a) and (b) have been satisfied; and (iv) a certificate duly executed by the Secretary of Buyer, dated as of the Closing Date, certifying as to (A) the incumbency of officers of Buyer signing papers at the Closing; (B) the bylaws and other constituent documents of Buyer; and (C) the resolutions of the board of directors of Buyer approving the transactions contemplated by this Agreement.

Section 4.3.    **Seller Deliveries.** At the Closing, Sellers shall deliver the Purchased Assets to Buyer, free and clear of all Liens, other than Permitted Exceptions, against delivery of the Total Consideration in accordance with Article III, together with the following documents: (i) a Bill of Sale in proper form to convey the Purchased Assets hereunder, duly executed by each Seller, in such form as shall be reasonably acceptable to Buyer (the "Bill of Sale"); (ii) instruments of assignment (each, a "Proprietary Rights Assignment") with respect to each of

- 18 -

the Proprietary Rights, including all registered marks, patents, copyrights, and applications therefor set forth on <u>Schedule 5.13</u> of the Disclosure Schedule, duly executed by each Seller, as appropriate, in such form as shall be proper to record the conveyance of such Proprietary Rights to Buyer or its designee in the U.S. Patent and Trademark Office; (iii) true and complete copies of all Software comprised by the Purchased Assets, including source code, together with all documentation, usernames, passwords and other credentials (including administrative and system level credentials) therefor; (iv) true and complete copies of all documentation relating to or embodying the Technology, to the extent not included in the Software; (v) the Assignment and Assumption Agreement, duly executed by each Seller, as appropriate; (vi) a certificate duly executed by the President or Chief Executive Officer of each Seller in a form reasonably satisfactory to Buyer, dated as of the Closing Date, stating that the preconditions specified in <u>Sections 8.1(a)</u> and <u>(b)</u> have been satisfied; (vii) a certificate duly executed by the Secretary of each Seller in a form reasonably satisfactory to Buyer, dated as of the Closing Date, certifying as to (A) the incumbency of officers of such Seller and other individuals signing papers at the Closing; (B) the bylaws and other constituent documents of such Seller; and (C) the resolutions of the board of directors and stockholders (or comparable authorities) of such Seller approving the transactions contemplated by this Agreement; and (viii) such other documents or instruments as Buyer may reasonably request to effect the transactions contemplated hereby.

Section 4.4.    **Purchased Assets Taken Free and Clear.**    At the Closing, the Purchased Assets shall be sold by Sellers, and Buyer and take and acquire the Purchased Assets (and the Sale Order shall be provide that the Purchased Assets shall be sold and taken and acquired), in each case free and clear of any and all Liens, Claims, or interests there against or therein, of any kind or nature, whether arising prior to or subsequent to the commencement of the Bankruptcy Cases, and any claim or demand resulting therefrom, other than any Permitted Exceptions, with any such Liens, Claims, or interests (other than Permitted Exceptions) to attach to the consideration to be received by Sellers in the same priority and subject to the same defenses and avoidability, if any, as before the Closing.

**ARTICLE V**

<u>**REPRESENTATIONS AND WARRANTIES OF SELLERS**</u>

As a material inducement to Buyer to enter into this Agreement, except as qualified by any exceptions or disclosures set forth in the disclosure schedule attached hereto (the "<u>Disclosure Schedule</u>"), which identifies exceptions by specific Section references, Sellers represent and warrant to Buyer, as of the date of this Agreement and as of the Closing Date, that:

Section 5.1.    **Corporate    Organization,    Good    Standing    and    Qualification.** MediaShift is a corporation duly organized, validly existing and in good standing under the Laws of the State of Nevada. AdVantage is a corporation duly organized, validly existing and in good standing under the Laws of the State of Delaware. Each of the Sellers is qualified and in good standing as a foreign corporation or limited liability company in each jurisdiction where the properties owned, leased or operated by it, or the business conducted by it, requires such qualification, except where the failure to be so qualified or in good standing would not, individually or in the aggregate, have a Material Adverse Effect on Sellers. Each of the Sellers

has all requisite corporate power and authority to conduct its business as presently conducted and to own, lease and operate the properties and assets used in such business.

Section 5.2.    **Authority, Validity and Effect.** Subject to the entry of the Sale Order, each Seller has all requisite corporate power and authority to execute, deliver and perform its obligations under this Agreement and the Ancillary Agreements to which it is a party and to consummate the transactions contemplated hereby and thereby. This Agreement has been, and as and when executed the Ancillary Agreements to which each Seller is a party will have been, duly and validly executed by such Seller and, assuming the entry of the Sale Order and the due execution and delivery of this Agreement and the Ancillary Agreements to which it is a party by Buyer, will constitute legal, valid and binding agreements of such Seller, enforceable against it in accordance with their respective terms.

Section 5.3.    **No Conflict; Required Filings and Consents.**

(a)    Except for the Sale Order, no notices to, Consents of, or filings or registrations with, any Governmental Entity are necessary in connection with the execution and delivery by Sellers of this Agreement and each of the Ancillary Agreements to which they are a party, the performance of their obligations herein and therein, and the consummation by them of the transactions contemplated hereby and thereby.

(b)    The execution and delivery, and subject to the entry of the Sale Order, performance, by each Seller of this Agreement and the Ancillary Agreements to which it is a party, and the consummation by it of the transactions contemplated hereby and thereby, do not and will not (i) conflict with the charter or bylaws of such Seller, (ii) require any Consent under, conflict with, result in a violation or breach of, or constitute a default (or give rise to any right of termination, cancellation or acceleration) under, any of the terms, conditions or provisions of any note, bond, mortgage, Contract or other instrument or obligation to which such Seller is a party or by which any of its properties or assets may be bound, (iii) conflict with, result in a violation or breach of, or constitute a default (or give rise to any right of termination, cancellation or acceleration) under, any of the terms, conditions or provisions of any Permit, or (iv) conflict with or violate any Order or Law applicable to such Seller or any of its properties or assets.

Section 5.4.    **Subsidiaries.** Sellers have no Subsidiaries other than those listed in Schedule 5.4 of the Disclosure Schedule. Each Seller owns all the issued and outstanding capital stock or other equity securities of each of its Subsidiaries, free and clear of any Liens, and does not own any shares of capital stock or other securities of any other Person. All the issued and outstanding shares of capital stock and other equity securities of each Seller's Subsidiaries have been validly issued and are fully paid and non-assessable. There are no outstanding contractual obligations of any Seller or any of its Subsidiaries to make any investment in any of its Subsidiaries or any other Person.

Section 5.5.    **[Intentionally Omitted]**

Section 5.6.    **Purchased Assets.**

(a)    Sellers own good and marketable title to, or a valid leasehold interest in, all of the Purchased Assets, free and clear of all Liens, other than (i) Permitted Exceptions,

- 20 -

(ii) Liens related to the Credit Bid Claims or any claims listed as "Secured" in the Schedules of Assets and Liabilities filed by Sellers in the Bankruptcy Cases, and (iii) certain Claims asserted in the Litigation identified in Schedule 5.12 of the Disclosure Schedules.  All tangible personal property used or required for use or held for use in the Business is owned or leased by, and in the possession of, Sellers.  While (i) certain Persons identified as plaintiffs in Schedule 5.12 of the Disclosure Schedule may assert an interest in certain of the Purchased Assets pursuant to Contracts or otherwise, including Kensel & Co., LLC, which alleges in its pending Litigation that it owns the mediashift.com domain name and 8 related domain names, trademarks, copyrights, and the MediaShift logo, which allegations Sellers dispute, and (ii) certain Persons may assert a right to a commission on any sale of the Purchased Assets pursuant to Contracts or otherwise, other than the foregoing there are no Contracts or other agreements affecting the right of any Seller to convey the Purchased Assets to Buyer or any affecting other right of such Seller with respect to the Purchased Assets, and, subject to the entry of the Sale Order, Sellers have the absolute right, authority, power, and capacity to sell, assign, and transfer the Purchased Assets to Buyer free and clear of any Lien, other than Permitted Exceptions.  Subject to entry of the Sale Order, upon execution and delivery to Buyer of the Assignment and Assumption Agreement and Bill of Sale, Buyer will acquire good and valid title to the Purchased Assets, free and clear of any Lien, other than Permitted Exceptions.

(b)     The Purchased Assets constitute all of the rights, properties and assets necessary for Buyer to operate the Business in the same manner operated by Sellers prior to Closing.  Sellers have not sold, pledged, assigned, leased, rented, lent, given away, destroyed, abandoned or otherwise transferred or disposed of any property or asset used, held for use or required to operate the Business since October 31, 2014, other than liens, pledges and security interests in collateral granted to secure the obligations of Sellers under the Bridge Loan Agreement and DIP Loan Facility.  Except as may be expressly set forth in Schedule 2.1(b), all of the tangible property and assets included in the Purchased Assets are located at the Glendale Office Property.

### Section 5.7.    Financial Information; No Undisclosed Liabilities.

(a)     Sellers have delivered to Buyer true and complete copies of the following financial statements: (i) the audited consolidated balance sheets of MediaShift and its consolidated subsidiaries as of December 31, 2013, and 2012, and the related statements of income and cash flows for the fiscal years ended December 31, 2013, 2012, and 2011; and (ii) the unaudited consolidated balance sheet of MediaShift and its consolidated subsidiaries as of **[June 30, 2014]**, and the related statements of income and cash flows (or the equivalent) for the period from **[January 1, 2014]** through such date, and such unaudited consolidated balance sheet and financial statements are the most recent balance sheet and financial statements delivered to or prepared for the board of directors of MediaShift.  Each of the financial statements described in clauses (i) and (ii) of this paragraph (collectively, the "Financial Statements") presents fairly Sellers' and their Subsidiaries' consolidated financial condition and results of operations as of the times and for the periods referred to therein, and has been prepared in accordance with GAAP.  The Financial Statements reflect the consistent application of such accounting principles throughout the periods involved, except as disclosed in any notes to such Financial Statements. The Financial Statements are true, correct and complete in all respects and are consistent with the books and records of Sellers.  Sellers have also delivered to Buyer copies of all letters from

- 21 -

Sellers' auditors to MediaShift's or AdVantage's board of directors or the audit committee thereof during the three years preceding the execution of this Agreement, together with copies of all responses thereto.

(b)    Sellers do not have any Liabilities that are not fully and accurately reflected in the Schedules filed by Sellers in the Bankruptcy Cases, other than Indebtedness under the DIP Loan Facility and other than any professional fees or other Liabilities incurred in the Ordinary Course of Business since the date of such Schedules, which Liabilities are, individually and in the aggregate, immaterial to the financial and other condition, operations, results of operations, properties and prospects of Sellers, the Business, the Purchased Assets and the Assumed Liabilities. Sellers have no Indebtedness that is not fully and accurately reflected in the Schedules filed by Sellers in the Bankruptcy Cases, other than Indebtedness under the DIP Loan Facility. Buyer shall be entitled to rely upon the Schedules filed by Sellers in the Bankruptcy Cases and other financial information of Sellers and the Business provided therewith.

**Section 5.8.    [Intentionally Omitted]**

**Section 5.9.    [Intentionally Omitted]**

**Section 5.10.    [Intentionally Omitted]**

**Section 5.11.    Assigned Contracts.**

(a)    Schedule 5.11 of the Disclosure Schedule contains a complete list of all Contracts, including any and all amendments, modifications, supplements, exhibits and restatements thereto and thereof in effect as of the date of this Agreement. Except as set forth in Schedule 5.11 of the Disclosure Schedule, no Seller has assigned, delegated or otherwise transferred to any third party any of its rights or obligations with respect to any such Contract. The Assigned Contracts include all Contracts material to the ownership and/or operation of the Business as currently operated, other than (i) the Glendale Office Lease and (ii) off-the-shelf software licenses of a type generally available to the public on commercially reasonable terms at an aggregate cost of less than $10,000 per year. Sellers have not, and, to Sellers' Knowledge, other than as set forth in Schedule 5.11 or Schedule 5.12 of the Disclosure Schedule, no other party to any Assigned Contract has, commenced any action against any of the Seller parties to any Assigned Contract or given or received any written notice of any default or violation under any Assigned Contract that has not been withdrawn or dismissed except to the extent such default or violation will be cured as a result of the payment of the applicable Cure Amounts. Each Assigned Contract is, or will be upon the Closing, valid, binding and in full force and effect in accordance with its terms.

(b)    Seller has provided Buyer with a true and correct copy of all Assigned Contracts, in each case together with all amendments, waivers, or other changes thereto.

**Section 5.12.    Litigation.**    Except as set forth herein or in Schedule 5.12 of the Disclosure Schedule or in connection with the Bankruptcy Cases, there is no Litigation or audit, including appeals and applications for review, in progress, pending or, to the best of Sellers' Knowledge, threatened against or relating to any Seller or any Order which, in any case, might

- 22 -

adversely affect the ability of any Seller to enter into this Agreement or to consummate the transactions contemplated hereby.

**Section 5.13.    Proprietary Rights.**

(a)    Schedule 5.13(a) of the Disclosure Schedule contains a complete and accurate list of all registered Proprietary Rights of the Sellers.  Schedule 5.13(a) of the Disclosure Schedule also contains a complete and accurate list of all material licenses and covenants not to sue granted by each of the Sellers to any third party and all licenses and covenants not to sue granted by any third party to any of the Sellers, in each case identifying the subject Proprietary Rights.  Sellers have provided to Buyer true, correct and complete copies of all Contracts and other documents embodying such licenses and covenants.

(b)    Sellers own and possess free and clear of all Liens, other than Permitted Exceptions (and other than Liens in favor of Buyer securing Sellers' obligations under the Bridge Loan Agreement and the DIP Loan Facility), all right, title, and interest in and to, or have the right to use pursuant to a valid and enforceable license, all Proprietary Rights necessary for the operation of the Business as currently operated and as proposed to be conducted, and can convey the same to Buyer pursuant to the Sale Order.  All Owned IP is in good standing (including payment of filing, examination and maintenance fees and proofs of use).  Sellers have prosecuted and maintained all Owned IP in good faith in accordance with normal industry practice and applicable legal and administrative requirements.  None of the Owned IP has lapsed, expired or been abandoned and, to the Seller's Knowledge, all Owned IP is valid and enforceable.

(c)    No Seller has received any warning, inquiry, communication or notice, written or otherwise, of invalidity, infringement, or misappropriation from any third party with respect to any Proprietary Rights; no Seller has interfered with, infringed upon, misappropriated, or otherwise come into conflict with any Proprietary Rights of any third parties; and no third party has interfered with, infringed upon, misappropriated, or otherwise come into conflict with any Proprietary Rights of the Sellers.

(d)    Sellers have taken such commercially reasonable steps as would be consistent with reasonable and customary industry standards to protect and preserve the confidentiality of all confidential and proprietary information of Sellers.  All current and former employees, independent contractors and consultants of each Seller have entered into confidentiality, invention assignment and proprietary information agreements with such Seller in substantially the form attached to Schedule 5.13(d) of the Disclosure Schedule. To the Knowledge of Sellers, no such employee, independent contractor or consultant of any Seller is obligated under any Contract or subject to any Order of any Governmental Entity, or is subject to any other restriction that would interfere with his or her duties for and to Sellers, nor has any such employee, independent contractor or consultant failed to comply with his or her corresponding confidentiality, invention assignment and proprietary information agreement or failed to cooperate with Sellers on the assignment of inventions to Sellers pursuant to such agreement. To the Knowledge of Sellers, the carrying on of the Business by the employees, independent contractors and consultants of the Sellers and the conduct of the Business as presently conducted do not conflict with or result in a breach of the terms, conditions or provisions of, or constitute a default under, any Contract under which any of such employees,

- 23 -

independent contractors or consultants is now obligated. To the Knowledge of Sellers, at no time during the conception of or reduction to practice of any of the Proprietary Rights of any of the Sellers was any developer, inventor or other contributor to such Proprietary Rights operating under any grants from any Governmental Entity or private source, performing research sponsored by any Governmental Entity or private source or subject to any employment agreement or invention assignment or nondisclosure agreement or other obligation with any other third party that could materially adversely affect the rights of such Sellers in such Proprietary Rights.

(e)    To the extent that any Proprietary Rights of Sellers have been developed or created independently or jointly by any Person other than the Sellers, such other Person has delivered to Sellers a duly executed and valid written assignment granting exclusive ownership to Sellers of all Proprietary Rights of such Person therein.

(f)    No products or services of the Sellers are or have been created or developed in such a way as to trigger any obligations to distribute the Owned IP under any Public Software licenses, whether in object or source code form.

(g)    None of the execution, delivery, performance or consummation of this Agreement or the transactions contemplated by this Agreement, by operation of law or otherwise, will result in the grant to any third party of any right to or with respect to, or any impairment of, any Proprietary Rights of Sellers.

Section 5.14.    **Taxes.** Except as any payment or any enforcement action is stayed as a result of the Bankruptcy Case:

(a)    Sellers will file their consolidated 2014 federal and state income Tax Returns and other material Tax Returns required to have been filed by them for 2014 before the end of the first quarter of 2016.  Sellers have no federal or state Tax Liability for 2014.  Other than the foregoing, all Tax Returns required to have been filed by Sellers have been duly filed, all such Tax Returns are true, correct and complete in all material respects, and all Taxes required to be paid have been paid;

(b)    No federal or state Tax Return audits are pending with respect to any Seller;

(c)    No Seller has received written notice from any Governmental Entity of future federal or state Tax Return audits;

(d)    There are no material Liens with respect to Taxes upon any of the Purchased Assets, other than Liens for Taxes not yet due and payable; and

(e)    No Seller has (i) waived any statute of limitations in respect of any Tax Returns that have not been filed as of the date hereof or (ii) agreed to any extension of time with respect to the assessment of Taxes for which such Taxes have not been paid as of the date hereof.

Section 5.15.    **Brokers' Fees.**  Jensen Capital Partners, LLC and Practics Inc. assert or may assert that they are entitled to brokers' or other fees in connection with the transactions

contemplated by this Agreement or the Ancillary Agreements (the "Asserted Broker Claims"); however, Sellers dispute that the foregoing entities are entitled to any such brokers' or other fees and, to Sellers' Knowledge, such claims for brokers' or other fees would be against Sellers and not Buyer.  Other than the foregoing, there are no claims for brokerage commissions, finders' fees, or similar compensation in connection with the transactions contemplated by this Agreement or the Ancillary Agreements based on any arrangement or agreement made by or on behalf of any Seller or their direct or indirect Subsidiaries or other Affiliates, except those for which Sellers are solely responsible, as disclosed in and approved by the Bankruptcy Court in the Bidding Procedures Order, which shall include any fees payable to Houlihan Lokey Capital, Inc.

**Section 5.16.  [Intentionally Omitted]**

**Section 5.17.  Employees.**  To the Knowledge of Sellers, none of Sellers' officers, directors, managers, employees and independent contractors is a party to, or is otherwise bound by, any agreement or arrangement with any Person or entity other than a Seller that limits or adversely affects the performance of his or her duties, the ability of any Seller to conduct its business, or his or her freedom to engage in any of the businesses conducted by Sellers (including any confidentiality, non-competition, or proprietary rights agreements).  All employees of Sellers are "employees at will."  Each Person who has received compensation for the performance of services on behalf of a Seller has been properly classified as an employee or independent contractor in accordance with applicable Laws.

**Section 5.18.  [Intentionally Omitted]**

**Section 5.19.  Insurance.**  Sellers have already informed or hereby inform Buyer that Sellers' director and officer insurance policy carrier has indicated that the policy will not be renewed unless the fill premium payment for the policy period beginning on or about November 26, 2015 is received by December 31, 2015.  Sellers hereby inform Buyer that they need to pay premiums of $2,400 per month for October through December 2015 to bring their general liability policy current.  Sellers have delivered to Buyer true and correct copies of all policies of fire, general liability, worker's compensation, errors and omissions, malpractice, environmental and other forms of insurance maintained by or on behalf of each of the Sellers in connection with the Business.  To Sellers' Knowledge, taken together, all such policies provide adequate insurance coverage for the assets and the operations of each Seller for all risks to which Sellers are normally exposed.  Other than as set forth in this Section 5.19, all such policies are now in full force and effect and are issued by an insurer that is financially sound and reputable to Sellers' Knowledge.  Other than as set forth in this Section 5.19, no Seller has received any notice of cancellation or material amendment of any such policies or any refusal of coverage or any notice that a defense will be afforded with reservation of rights.  Other than as set forth in this Section 5.19, no coverage under such policies is being disputed.  Other than as set forth in this Section 5.19, Sellers have paid all premiums when due, and have otherwise performed all of its obligations, under each policy of insurance to which any Seller is a party or that provides coverage to any Seller, and all material claims thereunder have been filed in a timely fashion.

**Section 5.20.  [Intentionally Omitted]**

**Section 5.21.  [Intentionally Omitted]**

Section 5.22.  **Compliance with Laws.** Each of the Sellers has complied in all material respects with and is in material compliance with all Laws which are applicable to the Business, including Laws relating to labor, employment, occupational health and safety, environmental regulation and the use and release of hazardous materials, and no claims have been filed against any such Seller alleging a violation of any such Laws, or alleging an unfair labor practice, and no such Seller has received notice of any such violations. Sellers have no basis to expect, and have not received during the last five years, any notice, Order, or other communication from any Governmental Entity of any alleged, actual, or potential violation of or failure to comply with any Law.

Section 5.23.  **[Intentionally Omitted]**

Section 5.24.  **[Intentionally Omitted]**

Section 5.25.  **[Intentionally Omitted]**

Section 5.26.  **Compliance with the Foreign Corrupt Practices Act and Export Control and Anti-Boycott Laws.**

(a)    To Sellers' Knowledge, each Seller and its representatives and distributors, have not, to obtain or retain business, directly or indirectly offered, paid, or promised to pay, or authorized the payment of, any money or other thing of value (including any fee, gift, sample, travel expense, or entertainment with a value in excess of $100.00 in the aggregate to any one individual in any year), to:

(i)    any individual who is an official, officer, agent, employee or representative of any Governmental Entity, or of any existing or prospective customer (whether government-owned or non-government-owned);

(ii)    any political party or official thereof;

(iii)    any candidate for political or political party office; or

(iv)    any other Person;

while knowing or having reason to believe that all or any portion of such money or thing of value would be offered, given, or promised, directly or indirectly, to any such official, officer, agent, employee, representative, political party, political party official, candidate, or other Person affiliated with such customer, political party or official, or political office.

Section 5.27.  **[Intentionally Omitted]**

Section 5.28.  **Full Disclosure.**  All documents and other papers delivered by or on behalf of Sellers pursuant to this Agreement or any Ancillary Agreement or referenced in the Disclosure Schedule are accurate and complete and are authentic.  To Seller's Knowledge, no representation or warranty of Sellers contained in this Agreement or the Disclosure Schedule contains any untrue statement of a material fact or omits to state a material fact necessary in

83691923.7

order to make the statements herein or therein, in light of the circumstances under which they were made, not misleading in any material respect.

## ARTICLE VI

## REPRESENTATIONS AND WARRANTIES OF BUYER

As a material inducement to Sellers to enter into this Agreement, the Buyer represents and warrant to Sellers, as of the date of this Agreement and as of the Closing Date, that:

**Section 6.1.     Corporate Organization and Qualification.**  Buyer is a corporation duly organized, validly existing and in good standing under the Laws of the State of Delaware. Buyer is qualified and in good standing as a foreign corporation in each jurisdiction where the properties owned, leased, or operated by it, or the business conducted by it, requires such qualification, except where the failure to be so qualified or in good standing would not, individually or in the aggregate, result in a Material Adverse Effect on Buyer.  Buyer has all requisite corporate power and authority to conduct its business as presently conducted and to own, lease and operate the properties and assets used in such business.

**Section 6.2.     Authority, Validity and Effect.** Buyer has all requisite corporate power and authority to execute, deliver and perform its obligations under this Agreement and each of the Ancillary Agreements to which each is a party and to consummate the transactions contemplated hereby and thereby.  This Agreement has been, and as and when executed the Ancillary Agreements to which it is a party will have been, duly and validly executed by Buyer and, assuming the entry of the Sale Order and the due execution and delivery of this Agreement and the Ancillary Agreements to which it is a party by Sellers, will constitute legal, valid and binding agreements of Buyer, enforceable against it accordance with their respective terms, except as limited by applicable bankruptcy, reorganization, insolvency, moratorium or other similar Laws affecting the enforcement of creditors' rights generally.

**Section 6.3.     No Conflict; Required Filings and Consents.**

(a)     Except for the Sale Order, no notices to, Consents of, or filings or registrations with, any Governmental Entity are necessary in connection with the execution and delivery by Buyer of this Agreement and each of the Ancillary Agreements to which it is a party, the performance of its obligations herein and therein, and the consummation by it of the transactions contemplated hereby and thereby.

(b)     The execution, delivery and performance by Buyer of this Agreement and each of the Ancillary Agreements to which it is a party, and the consummation by it of the transactions contemplated hereby and thereby, do not and will not (i) conflict with the charter or bylaws of Buyer, (ii) require any Consent under, conflict with, result in a violation or breach of, or constitute a default (or give rise to any right of termination, cancellation or acceleration) under, any of the terms, conditions or provisions of any note, bond, mortgage, Contract or other instrument or obligation to which Buyer or any of its Subsidiaries is a party or by which Buyer's or any of its Subsidiaries' properties or assets may be bound, (iii) conflict with, result in a violation or breach of, or constitute a default (or give rise to any right of termination,

- 27 -

cancellation or acceleration) under, any of the terms, conditions or provisions of any Permit, or (iv) conflict with, violate any Order or Law applicable to Buyer or any of Buyer's properties or assets, except, with respect to clauses (ii), (iii) and (iv), for any such conflicts, violations, breaches, defaults, rights of termination, cancellation or acceleration, or other occurrences, which would not, individually or in the aggregate, have a Material Adverse Effect on Buyer.

Section 6.4.    **Brokers' Fees.** There are no claims for brokerage commissions, finders' fees, or similar compensation in connection with the transactions contemplated by this Agreement based on any arrangement or agreement made by or on behalf of Buyer, except those for which Buyer is solely responsible.

# ARTICLE VII

# COVENANTS

Section 7.1.    **Bankruptcy Court Filings**. Sellers shall (a) use commercially reasonable efforts to obtain entry of the Bidding Procedures Order by December 31, 2015, and (b) use commercially reasonable efforts to obtain entry of the Sale Order by January 28, 2016. Buyer agrees that it will promptly take such actions as are reasonably requested by Sellers to assist in obtaining the Bidding Procedures Order and the Sale Order, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for the purposes, among others, of demonstrating that Buyer is a "good faith" buyer under Section 363(m) of the Bankruptcy Code. Sellers shall consult with Buyer and its representatives concerning any Order of the Bankruptcy Court relating to this Agreement and the Bankruptcy Cases and provide Buyer with copies of applications, pleadings, notices, proposed Orders and other documents relating to such proceedings as soon as reasonably practicable prior to any submission thereof to the Bankruptcy Court. If any Order of the Bankruptcy Court relating to this Agreement shall be appealed by any Person (or a petition for certiorari or motion for reconsideration, amendment, clarification, modification, vacation, stay, rehearing or re-argument shall be filed with respect to any such Order), Sellers shall diligently defend against such appeal, petition or motion and shall use its reasonable best efforts to obtain an expedited resolution of any such appeal, petition or motion; provided that Sellers shall consult with Buyer regarding the status of any such actions. Any material changes to the form of the Bidding Procedures Order or the Sale Order must be approved by Buyer. Sellers further covenant and agree that, after the Closing, the terms of any reorganization plan submitted to the Bankruptcy Court or any other court by or with the support of Sellers for confirmation shall not conflict with, supersede, abrogate, nullify or restrict the terms of this Agreement, or in any way prevent or interfere with the consummation or performance of the transactions contemplated by this Agreement.

Section 7.2.    **Commercially Reasonable Efforts to Satisfy Conditions.**  Subject to the terms and conditions of this Agreement, each of Buyer and each Seller agrees to use its commercially reasonable efforts to take, or cause to be taken, all actions, and to do, or cause to be done, all things necessary, proper or desirable, or advisable under applicable Laws, so as to enable the Parties to consummate, as soon as practicable, the transactions contemplated hereby which are required to be performed prior to or at the Closing, including the satisfaction of the conditions set forth in this Agreement, and the Parties shall cooperate with each other fully and in good faith to that end.

- 28 -

**Section 7.3.    Operation of the Business Prior to Closing.**    Except as otherwise contemplated by this Agreement, and limited by Sellers' lack of funds to pay certain expenses related to the operation of its Business, between the date hereof and the Closing (except as specifically required or permitted by this Agreement or required by Law, or as shall be provided by any Order of the Bankruptcy Court, or except as Buyer shall otherwise consent in writing thereto), each of the Sellers shall use its commercially reasonable efforts to, and shall cause its Subsidiaries to, use their commercially reasonable efforts to operate in the Ordinary Course of Business, maintain relationships with the current material customers and suppliers of the Business (if any), retain the services of current officers and other key employees, keep the Purchased Assets in good working order and operating condition and maintain all Owned IP in good standing (including payment of filing, examination and maintenance fees and proofs of use, and without allowing any Owned IP to lapse, expire or be abandoned); provided, however, that notwithstanding any lack of funds, Sellers shall not shut down or disconnect any computer servers or other hardware, or any cloud computing services, or take any other action that could cause any loss, damage, destruction, or impairment of any Software or Technology comprised by the Purchased Assets, or permit any Owned IP to fail to be in good standing.    In furtherance of the foregoing, (x) each of the Sellers shall, and shall cause its Subsidiaries, representatives, and agents  to, keep all of their respective assets which comprise, host or include any Software or Technology in good and operable working condition, properly maintained, and online through the time of delivery to Buyer hereunder, with all such Software and Technology, including the MediaShift Monetization Platform, properly installed and running, and (y) except as specifically required or permitted by this Agreement or required by Law, or except as Buyer's prior written consent to do otherwise is obtained (which consent shall not be unreasonably withheld, conditioned or delayed), Sellers shall not, and shall cause their Subsidiaries not to:

(a)    sell, transfer, license, encumber or otherwise dispose of, or subject to any Lien, any Purchased Assets or any interest therein;

(b)    move any Purchased Assets away from the Glendale Office Property (or, if any Purchased Assets are currently located at any facility other than the Glendale Office Property, move such Purchased Assets away from their current location;

(c)    undertake any new material business opportunity outside the Ordinary Course of Business;

(d)    except for (i) the DIP Loan Facility or (ii) otherwise in the Ordinary Course of Business in an amount not to exceed $20,000 in the aggregate, create or incur any Indebtedness;

(e)    transfer or license to any Person or otherwise extend, amend or modify any of the Proprietary Rights of any Seller, other than in the Ordinary Course of Business;

(f)    acquire or agree to acquire by merging or consolidating with, or by purchasing a substantial portion of the assets or stock  or other securities of, or by any other manner, any business or any Person or division thereof;

- 29 -

(g)    (i) enter into any new Contract material to the Business, other than in the Ordinary Course of Business, or (ii) materially modify, amend or terminate any Contract material to the Business to which Seller is a party or waive, release, or assign any material rights or claims thereunder;

(h)    take any actions that would have, or could reasonably be expected to have, a Material Adverse Effect on any Seller, this transaction, or the Business; or

(i)    authorize any of, or commit or agree to take any of, the foregoing actions.

### Section 7.4.    Access to Information.

(a)    Upon reasonable notice and subject to any reasonable non-disclosure agreement reasonably requested by Sellers or their Subsidiaries, Sellers shall afford to Buyer's officers, employees, counsel, accountants, financing sources and other authorized representatives (collectively, the "Buyer Representatives"), reasonable access, during normal business hours throughout the period prior to the Closing Date, to their respective officers, directors, managers, employees, accountants and other advisors, properties, books, records, Permits and Contracts for purposes of verifying the representations and warranties made under this Agreement and to evaluate the transactions contemplated by this Agreement, and, during such period, Sellers shall and shall cause their Subsidiaries to promptly furnish to such Buyer Representatives all financial, operating and other data and information concerning the Sellers and their properties, businesses and personnel as may reasonably be requested in writing by Buyer. Without limiting the generality of the foregoing, during the period prior to the Closing Date, Sellers shall promptly provide Buyer with, or afford Buyer the right to make copies of (A) all existing Contracts with vendors, suppliers, customers, distributors, employees, officers, and independent contractors, and other material Contracts, and all Contracts with Affiliates; (B) all operating and financial reports prepared by or for the Sellers for Sellers' senior management; (C) all books and records relating to any meetings of, and/or actions taken by, the stockholders of either Seller, the board of directors of either Seller and any committees thereof, and the stockholders, directors, and comparable authorities of any Subsidiary of either Seller; (D) all correspondence to MediaShift from outside counsel with respect to Litigation or Claims by or against MediaShift or any of its Subsidiaries; (E) all "management letters" and similar correspondence from accounting firms to MediaShift or any of its Subsidiaries; (F) any written materials or communications sent by or on behalf of Sellers to the stockholders of MediaShift; (G) any notice, report or other document filed with or sent to any Governmental Entity; and (H) any notice received by Sellers or their representatives from any Governmental Entity or third party, with respect to any Claim against any Seller or any alleged failure by any Seller to comply in full with all applicable Laws. Notwithstanding the foregoing, Buyer shall not be entitled to any documents or information protected by the attorney-client, work-product or other similar privilege belonging to Sellers or any of their Affiliates.

(b)    Buyer agrees that it will, and will cause its Buyer Representatives to, use any information obtained pursuant to this Section 7.4 only in connection with the consummation of the transactions contemplated by this Agreement or the Ancillary Agreements and for no other reason or purpose whatsoever.

- 30 -

**Section 7.5.    Confidentiality.**

(a)    <u>Confidentiality</u>. Sellers shall, and shall cause their current and future Subsidiaries and other Affiliates to, treat and hold as confidential any information concerning the Business (including all Proprietary Rights) that is not already generally available to the public (the "<u>Confidential Information</u>"), refrain from using any of the Confidential Information except in connection with this Agreement and/or the operation of the Business, and at any time upon the request of Buyer, deliver promptly to Buyer or destroy, at the request and option of Buyer, all copies of the Confidential Information which are in its possession or under its control. If any Seller, or any of their respective Subsidiaries or other Affiliates, is requested or required (by oral question or request for information or documents in any Litigation or similar process) to disclose any Confidential Information, Sellers shall notify Buyer promptly of the request or requirement so that Buyer may seek an appropriate protective order or waive compliance with the provisions of this <u>Section 7.5(a)</u>. If, in the absence of a protective order or the receipt of a waiver hereunder, a Seller or any of their respective Subsidiaries and other Affiliates is, on the advice of counsel, compelled to disclose any Confidential Information to any Governmental Entity or else stand liable for contempt, such Seller or such Subsidiary or other Affiliate may disclose the Confidential Information to such Governmental Entity; <u>provided that</u> such Seller shall, and shall cause any such Subsidiary or other Affiliate to, use commercially reasonable efforts to obtain, at the request and expense of Buyer, an order or other assurance that confidential treatment shall be accorded to such portion of the Confidential Information required to be disclosed as Buyer shall designate.  Notwithstanding the foregoing, Sellers and their Subsidiaries shall be permitted to use Confidential Information, to the extent such use does not adversely affect Buyer or its and its Affiliates' post-Closing operation of the Business, to facilitate the recovery on, or monetization of, any Excluded Assets, or as otherwise required to fully administer their Bankruptcy Cases, comply with any applicable Law, defend any Claims or Litigation, prosecute any Claims or Litigation that constitute Excluded Assets, and object or challenge any disputed Claims asserted against Sellers.

(b)    <u>Remedy for Breach</u>. Each Seller acknowledges and agrees that in the event of a breach of any of the provisions of this <u>Section 7.5</u>, monetary damages shall not constitute a sufficient remedy. Consequently, in the event of any such breach, Buyer, or its successors or assigns may, in addition to other rights and remedies existing in their favor, apply to any court of law or equity of competent jurisdiction for specific performance or injunctive or other relief in order to enforce or prevent any violations of the provisions hereof, in each case without the requirement of posting a bond or proving actual damages.

**Section 7.6.    Certain Tax Matters.**

(a)    Sellers will be responsible for preparing and filing any ad valorem and personal property Tax Returns ("<u>Property Tax Returns</u>") with respect to the Purchased Assets for Tax periods ending on or before the Closing Date and subject to proration of such Taxes as described below, will make all payments required with respect to each such Tax Return. Buyer will be responsible for preparing and filing any Property Tax Returns for the Purchased Assets for all periods commencing after the Closing Date and subject to proration of such Taxes as described below, will make all payments required with respect to each such Tax Return. Such ad valorem and personal property Taxes that are imposed on a periodic basis and are payable for a

taxable period that includes (but does not end on) the Closing Date (a "<u>Straddle Period</u>"), shall be prorated between Buyer and Sellers by prorating the Taxes owed for the Straddle Period on a per-diem basis (by assuming the applicable Seller held such assets through the Closing Date). Buyer and each Seller shall cooperate, as and to the extent reasonably requested by a party, in connection with the filing of Tax Returns pursuant to this Agreement and any audit, Litigation or other proceeding with respect to Taxes. Such cooperation shall include the retention and (upon a Party's request) the provision of records and information which are reasonably relevant to any such audit, Litigation or other proceeding, making employees available on a mutually convenient basis to provide additional information and explanation of any material provided hereunder, and timely notification of receipt of any notice of an audit or notice of deficiency relating to any Tax or Tax Return with respect to which the non-recipient may have Liability hereunder.

(b)      Sellers shall file or cause to be filed all necessary Tax Returns and other documentation with respect to any Transfer Taxes and shall be solely responsible for the payment of any Transfer Taxes that may be or become due. If required by applicable Law, Buyer shall join in the execution of any such Tax Returns or such other related documentation. For the avoidance of doubt, Sellers shall be solely responsible for any and all income, gross receipts, and similar Taxes of Sellers and their respective Subsidiaries, for all periods (whether before or after the Closing), including all Taxes on any gains recognized by Sellers in connection with the transactions contemplated by this Agreement and the Ancillary Agreements, and Sellers shall be solely responsible for preparing and filing all Tax Returns relating thereto. At the reasonable request of Buyer, Sellers will certify to Buyer that Sellers have paid all such income, gross receipts and similar Taxes and have prepared and filed all such Tax Returns, and shall provide Buyer with reasonable evidence of the same.

### Section 7.7.    Employment.

(a)      Buyer and Sellers acknowledge that Buyer has no obligation to make, and does not currently intend to make, any offer of employment to any of Sellers' employees.

(b)      If, notwithstanding the foregoing, Buyer makes an offer of employment to any current or former employee of Sellers, and such person accepts such offer of employment (any such person, a "<u>Transferred Employee</u>") the terms of any such employment shall be as arranged between Buyer and such Transferred Employee. Prior to any such employment with Buyer, Sellers shall release each Transferred Employee from any employment agreement with Sellers, and Sellers shall be solely responsible for any and all Employee Claims or Employee Obligations as a result of the termination of employment with Sellers, or otherwise with respect to the employment, conditions or employment, or termination of employment prior to the Closing of any such Transferred Employee.

(c)      With respect to all employees and independent contractors of Sellers who are not offered employment by Buyer, Sellers shall be solely responsible for all severance pay and similar costs and expenses in the event any of them are severed by Sellers, and all other Employee Claims or Employee Obligations related to such employees and independent contractors.

83691923.7

(d)  Sellers shall provide all notices and fulfill all obligations, if any, under Section 4980B(f) of the Code with respect to the Transferred Employees.

(e)  From and after the Closing, Sellers shall promptly upon Buyer's written request enforce any and all employment, non-competition, non-solicitation, confidentiality, assignment of Proprietary Information, intellectual property and proprietary information Contracts by and between each Seller and any present or former employees, officers, directors, retirees, independent contractors or consultants of each Seller.

**Section 7.8.    Personally Identifiable Information.**  Buyer shall honor and observe any and all policies of Sellers in effect on the Petition Date prohibiting the transfer of personally identifiable information about individuals and otherwise comply with the requirements of Section 363(b)(1)(A) of the Bankruptcy Code.

**Section 7.9.    Certain Adequate Assurances.**  Buyer shall be responsible for providing any adequate assurance of the future performance of any Assigned Contracts required by Sections 365(b)(1)(C) and/or 365(f)(2)(B) of the Bankruptcy Code, as applicable.

**Section 7.10.   Notification of Certain Matters.** The Parties shall promptly advise each other orally and in writing of (a) any representation or warranty made by such Party contained in this Agreement becoming untrue or inaccurate in any material respect, (b) the failure by it to comply with or satisfy in any material respect any covenant, condition or agreement to be complied with or satisfied by it under this Agreement, or (c) any change or event (i) having, or which, insofar as can reasonably be foreseen, would have, a Material Adverse Effect on Buyer or any Seller, as the case may be, or (ii) which has resulted, or which, insofar as can reasonably be foreseen, would result, in any of the conditions set forth in Article VIII not being satisfied; provided, however, that no such notification shall affect the representations, warranties, covenants or agreements of the Parties or the conditions to the obligations of the Parties under this Agreement. Promptly upon request, Sellers shall advise Buyer in writing as to the location of any and all tangible property comprised by the Purchased Assets.

**Section 7.11.   Further Assurances.** Each of the Parties hereto shall use its commercially reasonable efforts to take or cause to be taken all appropriate action and do, or cause to be done, all things reasonably necessary or appropriate to consummate and make effective the transactions contemplated by this Agreement, and to vest Buyer with full rights, titles, interests, and possession of the Purchased Assets, including the execution of any additional documents, instruments or conveyances of any kind (not containing additional representations and warranties) which may be necessary or appropriate to carry out any of the provisions hereof. Promptly upon any written request by Buyer, Sellers shall assemble and prepare all or any Purchased Assets described in such request for delivery to Buyer at a location to be agreed by the Parties; provided, however, that Sellers shall not move or assemble any Purchased Assets unless so requested. If Buyer requests that the any tangible personal property be delivered to Buyer at any location other than the Glendale Office Property, Buyer shall pay any reasonable out-of-pocket costs actually incurred by Sellers to prepare, pack, and ship, such personal property. Sellers shall use their best efforts to obtain access to the Glendale Office Property to inspect, test, prepare, pack, and ship any tangible personal property, and to upload to the cloud and/or backup any Software, Technology, data, or other intangible property, included in the Purchased Assets.

- 33 -

**Section 7.12.    Publicity.** Before the Closing Date, the Parties will consult with each other and will mutually agree upon any press releases pertaining to the transactions contemplated by this Agreement and shall not issue any such press releases prior to such consultation and agreement, except as may be required by applicable Law, in which case the Party proposing to issue such press release shall use its commercially reasonable efforts to consult in good faith with the other Party before issuing any such press release. Notwithstanding the foregoing, the Parties may disclose the existence and terms of this Agreement in such manner as shall be required to comply with the Bidding Procedures Order.

**Section 7.13.    Name Change.** By the close of business on the fifth Business Day following the Closing Date, each Seller shall change its corporate name, and the corporate name of each of its Subsidiaries, to names that do not include the words "MediaShift", "Ad-Vantage" or any other trademark, service mark, trade name or other Proprietary Rights included in the Purchased Assets, and shall use commercially reasonable efforts to change the caption of the Bankruptcy Cases to reflect their new names.

**Section 7.14.    No Control of Other Party's Business; Other Actions.** Nothing contained in this Agreement is intended to give Buyer, directly or indirectly, the right to control or direct any Seller's or their direct or indirect Subsidiaries' operations prior to the Closing Date. Prior to the Closing Date, Sellers and their direct and indirect Subsidiaries shall exercise, consistent with the terms and conditions of this Agreement, complete control and supervision over their respective businesses, assets and operations.

**Section 7.15.    Remittance of Payments.** From and after the Closing, Sellers shall promptly remit to Buyer, in the form received or in such form as Buyer shall reasonably request, any payments which Sellers may receive which properly belong to Buyer and that do not relate to an Excluded Asset or a Retained Liability, and Buyer shall promptly remit to Sellers, in the form received or in such form as Sellers shall reasonably request, any payments which Buyer may receive which properly belong to Sellers and that do not relate to a Purchased Asset or an Assumed Liability. Each Party agrees to reasonably cooperate with the other Parties to ensure that each Party receives all such payments and the benefit thereof, including endorsing any check over to the Party to whom such check properly belongs.

**Section 7.16.    Asserted Broker Claims.** Sellers shall jointly and severally indemnify and hold Buyer and its Affiliates harmless from and against the Asserted Broker Claims and any amounts due to, and any Claims asserted by, Houlihan Lokey Capital, Inc.

## ARTICLE VIII

## CONDITIONS TO CLOSING

**Section 8.1.    Conditions to Buyer's Obligations.** The obligation of Buyer to consummate the transactions contemplated by this Agreement is subject to the satisfaction of the following conditions as of the Closing Date:

(a)    the representations and warranties of Sellers set forth in <u>Article V</u> hereof shall be true and correct in all material respects (except that any such representations and

warranties qualified as to "materiality" or "Material Adverse Effect" shall be true and correct in all respects) at and as of the Closing Date as though then made and as though the Closing Date were substituted for the date of this Agreement throughout such representations and warranties (except to the extent such representations and warranties speak as of a specified date, in which case such representations and warranties shall be true and correct on and as of such specified date);

(b)     Sellers shall have performed and complied in all material respects with all of the covenants and agreements required to be performed by them under this Agreement on or before the Closing;

(c)     all governmental filings, authorizations, and Consents that are required for the consummation of the transactions contemplated hereby shall have been duly made and obtained, and any notice periods required in connection therewith shall have expired;

(d)     the Bidding Procedures Order shall have become a Final Order;

(e)     the Sale Order shall have been issued by the Bankruptcy Court;

(f)     the Sale Order shall have become a Final Order (unless this condition shall have been waived in writing by Buyer);

(g)     the Purchased Assets shall be assumed, assigned and sold to Buyer, as the case may be, in accordance with the Sale Order;

(h)     there shall not be in effect any Order by a Governmental Entity of competent jurisdiction restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated hereby; and

(i)     none of Buyer or its Affiliates shall have been named as defendants in or parties to the TravelSpike Litigation or the TravelSpike II Litigation.

Any condition specified in this Section 8.1 may be waived by Buyer in its sole discretion; provided, however, that no such waiver shall be effective unless it is set forth in a writing duly executed by Buyer.

**Section 8.2.    Conditions to Sellers' Obligations.** The obligation of Sellers to consummate the transactions contemplated by this Agreement is subject to the satisfaction of the following conditions as of the Closing Date:

(a)     the representations and warranties of Buyer set forth in Article VI hereof shall be true and correct in all material respects (except that any such representations and warranties qualified as to "materiality" or "Material Adverse Effect" shall be true and correct in all respects) at and as of the Closing Date as though then made and as though the Closing Date were substituted for the date of this Agreement throughout such representations and warranties (except to the extent such representations and warranties speak as of a specified date, in which case such representations and warranties shall be true and correct on and as of such specified date);

(b)     Buyer shall have performed and complied in all material respects with all of the covenants and agreements required to be performed by it under this Agreement on or before the Closing;

(c)     all governmental filings, authorizations, and Consents that are required for the consummation of the transactions contemplated hereby shall have been duly made and obtained, including the Sale Order, and any notice periods required in connection therewith shall have expired;

(d)     there shall not be in effect any Order by a Governmental Entity of competent jurisdiction restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated hereby; and

(e)     the Other Secured Claimants shall deliver a release and waiver, effective as of the Closing, in proper form reasonably acceptable to Sellers as reasonably necessary to comply with Section 3.3(b)(i).

Any condition specified in this Section 8.2 may be waived by Sellers in their sole discretion; provided, however, that no such waiver shall be effective unless it is set forth in a writing duly executed by each Seller.

## ARTICLE IX

## TERMINATION

**Section 9.1.     Termination of Agreement**. This Agreement may be terminated prior to the Closing as follows:

(a)     by mutual written consent of Sellers and Buyer;

(b)     by Sellers or Buyer, if there shall be in effect a Final Order of a Governmental Entity of competent jurisdiction restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated hereby; it being agreed that the Parties hereto shall promptly appeal any adverse determination which is appealable (and pursue such appeal with reasonable diligence);

(c)     by Buyer:

(i)     if there shall be a material breach by Sellers of any representation or warranty, or any covenant or agreement contained in this Agreement which would result in a failure of a condition set forth in Section 8.1, which breach cannot be cured or has not been cured by the earlier of (A) ten Business Days after the giving of written notice by Buyer to Sellers of such breach and (B) the Termination Date;

(ii)     in the event that (A) the hearing on the motion to approve the Bidding Procedures Order has not been completed on or before December 30, 2015, (B) the Bankruptcy Court has not entered the Bidding Procedures Order on or before December 31,

2015, and/or (C) the Bidding Procedures Order shall have been stayed, vacated, modified or supplemented without Buyer's prior written consent;

(iii)    if the Sale Order with respect to the transactions contemplated by this Agreement has become a Final Order, and (A) Buyer has provided Sellers with written notice that it is prepared to consummate the transactions contemplated by this Agreement, (B) the conditions to Closing in Article VIII have been satisfied (or waived, to the extent permissible, by the Party entitled to the benefit of such condition), other than those conditions that by their nature can only be satisfied at Closing, and (C) the Closing does not occur within five Business Days after Buyer providing Sellers with such notice;

(iv)    if, prior to the Closing, the Bankruptcy Court enters an Order dismissing, or converting into cases under Chapter 7 of the Bankruptcy Code, any of the Sellers' Bankruptcy Cases, or appoints a trustee in any of the Sellers' Bankruptcy Cases or appoints a responsible officer or an examiner with enlarged powers to operate the Business or dispose of assets relating to the operation of Sellers' businesses (beyond those set forth in Section 1106(a)(3) or (4) of the Bankruptcy Code) under Bankruptcy Code Section 1106(b), or such an Order of dismissal, conversion or appointment is entered for any reason and is not reversed or vacated within 14 calendar days after the entry thereof;

(v)    if Sellers enter into an Alternative Proposal;

(vi)    if the Closing shall not have occurred on or before the close of business on the date which is 20 calendar days after the entry of the Sale Order or such later date as determined by Buyer in its sole discretion (the "Termination Date"); provided, however, that if the Closing shall not have occurred on or before the Termination Date due to a breach of any of the representations, warranties, covenants or agreements contained in this Agreement by Buyer, which would give the Sellers a right not to close pursuant to Article VIII, then Buyer may not terminate this Agreement pursuant to this Section 9.1(c)(vi); or

(vii)    if any of the conditions to the obligations of Buyer set forth in Section 8.1 shall have become incapable of fulfillment other than as a result of a breach by Buyer of any covenant or agreement contained in this Agreement, and such condition is not waived by Buyer;

(d)    by Sellers:

(i)    if any condition to the obligations of Sellers set forth in Section 8.2 shall have become incapable of fulfillment other than as a result of a breach by Sellers of any covenant or agreement contained in this Agreement, and such condition is not waived by Sellers;

(ii)    if there shall be a material breach by Buyer of any representation or warranty, or any covenant or agreement contained in this Agreement which would result in a failure of a condition set forth in Section 8.2, which breach cannot be cured or has not been cured by the earlier of (A) ten Business Days after the giving of written notice by Sellers to Buyer of such breach and (B) the Termination Date;

(iii)    if the Closing shall not have occurred on or before the Termination Date; provided, however, that if the Closing shall not have occurred on or before the Termination Date due to a breach of any of the representations, warranties, covenants or agreements contained in this Agreement by the Sellers, which would give the Buyer a right not to close pursuant to Article VIII, then the Sellers may not terminate this Agreement pursuant to this Section 9.1(d)(iii);

(iv)    if the Sale Order with respect to the transactions contemplated by this Agreement has been entered and (A) the Sellers have provided Buyer with written notice that they are prepared to consummate the transactions contemplated by this Agreement, (B) the conditions to Closing in Article VIII have been satisfied (or waived, to the extent permissible, by the Party entitled to the benefit of such condition), other than those conditions that by their nature can only be satisfied at Closing, and (C) the Closing Date does not occur within five Business Days after the Sellers providing the Buyer with such notice; or

(v)    if Sellers enter into and consummate an Alternative Proposal.

**Section 9.2.    Effect of Termination**. If this Agreement is validly terminated in accordance with Section 9.1, this Agreement shall terminate and each of the Parties shall be relieved of its respective duties and obligations arising under this Agreement after the date of such termination and such termination shall be without liability to Buyer or Sellers, except as expressly provided in Section 9.3; provided, however, that (a) the provisions of Section 3.1(k) and Section 3.3(b)(ii) regarding the effect of this Agreement on, and the preservation of rights to challenge, the Other Secured Claims in the event Buyer does not close the transaction contemplated by this Agreement and (b) the obligations of the Parties set forth in Section 7.12, Article X, and this Article IX shall survive any such termination and shall be enforceable hereunder.

**Section 9.3.    Expense Reimbursement**. Anything contained herein to the contrary notwithstanding, (a) if this Agreement is terminated at any time pursuant to Section 9.1(c)(i), or (b) if this Agreement is terminated at any time before the Closing pursuant to Section 9.1(c)(v), or Section 9.1(d)(v), and the Sellers consummate an Alternative Proposal at a price not less than the sum of the Total Consideration (as defined in this Agreement, as originally executed) plus $5,000,000, then, in either such event, Sellers, on a joint and several basis, shall reimburse Buyer for its actual out-of-pocket expenses (including attorney's fees) incurred in connection with the transactions contemplated by this Agreement and the DIP Loan Facility in an amount not to exceed $200,000 (the "Reimbursable Expenses"). The Reimbursable Expenses shall be due and payable as allowed administrative priority expenses of Sellers under Section 503(b)(1) of the Bankruptcy Code upon the consummation of any transaction pursuant to an Alternative Proposal, (or, if earlier, in the case of any termination of this Agreement pursuant to Section 9.1(c)(i), the earlies of the consummation of a plan of reorganization or plan of liquidation in the Bankruptcy Case, any dismissal of the Bankruptcy Case, and any conversion of the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code).

## ARTICLE X

## MISCELLANEOUS

**Section 10.1.    Survival.**    The representations and warranties of the Parties made in this Agreement shall not survive the Closing Date.

**Section 10.2.    Rules of Construction.**

(a)    All references in this Agreement to "dollars" or "$" shall mean United States dollars.

(b)    When a reference is made in this Agreement to a Section or Article, such reference shall be to a Section or Article of this Agreement unless otherwise clearly indicated to the contrary.

(c)    Whenever the words "include", "includes" or "including" are used in this Agreement they shall be deemed to be followed by the words "but not limited to."

(d)    The words "hereof" "hereby" "herein" and "herewith" and words of similar import shall, unless otherwise stated, be construed to refer to this Agreement as a whole and not to any particular provision of this Agreement.

(e)    The plural of any defined term shall have a meaning correlative to such defined term, and words denoting any gender shall include all genders. Where a word or phrase is defined herein, each of its other grammatical forms shall have a corresponding meaning.

(f)    A reference to any Party to this Agreement or any other agreement or document shall include such Party's permitted successors and permitted assigns.

(g)    A reference to any legislation or to any provision of any legislation shall include any modification or re-enactment thereof, any legislative provision substituted therefor and all regulations and statutory instruments issued thereunder or pursuant thereto.

**Section 10.3.   Expenses.** Unless otherwise specifically provided for herein, the Parties shall pay all of their own fees, costs, and expenses (including all court fees, the fees and expenses of the U.S. Trustee and any official committees appointed in the Bankruptcy Cases, the fees, costs and expenses of legal counsel, investment bankers, brokers, or other representatives and consultants and appraisal fees, costs, and expenses) incurred in connection with the negotiation of this Agreement and the other agreements contemplated hereby, the performance of its obligations hereunder and thereunder, and the consummation of the transactions contemplated hereby and thereby.

**Section 10.4.   Amendment and Waiver.** This Agreement may be amended and any provision of this Agreement may be waived only if such amendment or waiver is set forth in a writing executed by Buyer and each of the Sellers. No course of dealing between or among any Persons having any interest in this Agreement shall be deemed effective to modify, amend, or discharge any part of this Agreement or any rights or obligations of any Party under or by reason of this Agreement.

**Section 10.5.   Notices.** All notices, demands, and other communications given or delivered under this Agreement shall be in writing and shall be deemed to have been given, (a) when received if given in person, (b) on the date of electronic confirmation of receipt if sent by e-mail or other wire transmission, (c) three days after being deposited in the U.S. mail, certified or registered mail, postage prepaid, or (d) one day after being deposited with a reputable overnight courier. Notices, demands, and communications to the Parties shall, unless another address is specified in writing, be sent to the address or facsimile number indicated below:

> Notices to Sellers:
>
> MediaShift, Inc.
> 600 North Brand Blvd, Suite 230
> Glendale, California 91203
> Attention: Rick Baran
> E-mail: Rick.Baran@mediashift.com
>
> with a copy to:
>
> Levene, Neale, Bender, Yoo & Brill L.L.P.
> 10250 Constellation Blvd., Suite 1700
> Los Angeles, CA  90067
> Attention:  Ron Bender, Esq. and Todd M. Arnold, Esq.
> Fax:  (310) 229-1244
> Email: rb@lnbyb.com, tma@lnbyb.com

Notices to Buyer:

MediaShift Holdings, Inc.
4500 Cherry Creek Drive South, Suite 550
Glendale, Colorado 80246
Attention: Darren M. Fisk, President
E-mail:  DFisk@forumre.com

with a copy to:

Drinker Biddle & Reath LLP
1177 Avenue of the Americas
New York, New York 10036-2714
Attention:  Marc A. Leaf, Esq.
E-mail:  Marc.Leaf@dbr.com

**Section 10.6.    Binding Agreement; Assignment.**    This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns. Buyer may assign its rights and delegate its obligations hereunder to any Affiliate of Buyer, and may designate any one or more Affiliates of Buyer to acquire any of the Purchased Assets at the Closing, provided that no such assignment, delegation, or designation shall relieve Buyer of its obligations under this Agreement to be performed at or prior to the Closing, including the payment and delivery of the Total Consideration as provided for in <u>Article III</u>, and provided further the Person acquiring the rights of Sellers under any of the Assigned Contracts hereunder shall also assume the Assumed Liabilities with respect to such Assigned Contract.  Neither Seller may assign this Agreement or any of its rights, interests, or obligations hereunder without the prior written consent of Buyer.

**Section 10.7.    Severability.** Whenever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable Law, but if any provision of this Agreement is held to be prohibited by or invalid under applicable Law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provisions or the remaining provisions of this Agreement.

**Section 10.8.    Entire Agreement.** This Agreement and the documents referred to herein contain the entire agreement between the Parties and supersede any prior understandings, agreements, or representations by or between the Parties, written or oral, which may have related to the subject matter hereof in any way.

**Section 10.9.    Counterparts.** This Agreement may be executed in two or more counterparts, and by the different parties hereto in separate counterparts, each of which executed counterparts and any photocopies and facsimile copies and electronically transferred copies thereof, shall be deemed to be an original, but all of which taken together shall constitute one and the same agreement.

**Section 10.10.  Governing Law.** This Agreement is delivered in the State of New York. All questions concerning the construction, validity, and interpretation of this Agreement shall be

83691923.7

governed by and construed in accordance with the Laws of the State of New York applicable to contracts made therein.

**Section 10.11. Submission to Jurisdiction; Consent to Service of Process**.

(a)     Without limiting any Party's right to appeal any order of the Bankruptcy Court, (i) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any Claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby, and (ii) any and all Litigation related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the Parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court and shall receive notices at such locations as indicated in Section 10.5 hereof; provided, however, that if the Bankruptcy Cases have closed or the Bankruptcy Court refuses to exercise jurisdiction, the Parties agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the United States District Court for the Central District of California and any appellate court thereof, for the resolution of any such Claim or dispute.  The Parties hereby irrevocably waive, to the fullest extent permitted by applicable Law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute.  Each of the Parties hereto agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by Law.

(b)     Each of the Parties hereto hereby consents to process being served by any Party to this Agreement in any Litigation by delivery of a copy thereof in accordance with the provisions of Section 10.5.

**Section 10.12. Waiver of Right to Trial by Jury**. Each Party to this Agreement waives any right to trial by jury in any action, matter or proceeding regarding this Agreement or any provision hereof.

**Section 10.13. Parties in Interest.** Nothing in this Agreement, express or implied, is intended to confer on any Person whatsoever, other than the Parties, any rights or remedies under or by virtue of this Agreement.

**Section 10.14. Descriptive Headings.** The descriptive headings herein are inserted for convenience of reference only and are not intended to be part of or to affect the meaning or interpretation of this Agreement.

**Section 10.15. Incorporation of Schedules.** The Schedules and Disclosure Schedules identified in this Agreement are incorporated herein by reference and made a part hereof.

[signature pages follow]

83691923.7

**IN WITNESS WHEREOF,** the Parties have executed this Asset Purchase Agreement as of the date first written above.

**SELLERS**:

**MEDIASHIFT, INC.**

By: _____

Print Name: _Rick Baran_

Its: _President_

**AD-VANTAGE NETWORKS, INC.**

By: _____

Print Name: _Rick Baran_

Its: _President_

**BUYER**:

**MEDIASHIFT HOLDINGS, INC.**

By: _____

Print Name: Darren Fisk

Its: President

**Schedule A**

**Promissory Notes**

| **SCHEDULE A** | | | | | | | | Petition Date: | 9/30/2015 |

| DATE | PRINCIPAL | LENDER | RATE | | DAILY | | ACCRUED | | TOTAL | OBLIGOR |
|---|---|---|---|---|---|---|---|---|---|---|
| 11/29/2013 | $ 25,000 | Charles Kirby | 12% | $ | 8.22 | $ | 5,506.85 | $ | 30,506.85 | MSHF |
| 6/3/2014 | $ 30,000 | Don Larson | 12% | $ | 9.86 | $ | 4,773.70 | $ | 34,773.70 | MSHF |
| 10/31/2013 | $ 52,500 | Elevation Fund | 12% | $ | 17.26 | $ | 12,064.93 | $ | 64,564.93 | MSHF |
| 11/19/2013 | $ 100,000 | Elevation Fund | 10% | $ | 27.40 | $ | 18,630.14 | $ | 118,630.14 | MSHF |
| 11/29/2013 | $ 25,000 | Elevation Fund | 12% | $ | 8.22 | $ | 5,506.85 | $ | 30,506.85 | MSHF |
| 12/11/2013 | $ 60,000 | Elevation Fund | 12% | $ | 19.73 | $ | 12,979.73 | $ | 72,979.73 | MSHF |
| 12/16/2013 | $ 20,000 | Elevation Fund | 12% | $ | 6.58 | $ | 4,293.70 | $ | 24,293.70 | MSHF |
| 12/26/2013 | $ 100,000 | Elevation Fund | 12% | $ | 32.88 | $ | 21,139.73 | $ | 121,139.73 | MSHF |
| 1/13/2014 | $ 105,000 | Elevation Fund | 12% | $ | 34.52 | $ | 21,575.34 | $ | 126,575.34 | MSHF |
| 2/12/2014 | $ 45,000 | Elevation Fund | 12% | $ | 14.79 | $ | 8,802.74 | $ | 53,802.74 | MSHF |
| 2/13/2014 | $ 175,000 | Elevation Fund | 12% | $ | 57.53 | $ | 34,175.34 | $ | 209,175.34 | MSHF |
| 4/14/2014 | $ 40,000 | Elevation Fund | 12% | $ | 13.15 | $ | 7,022.47 | $ | 47,022.47 | MSHF |
| 5/13/2014 | $ 25,000 | Elevation Fund | 12% | $ | 8.22 | $ | 4,150.68 | $ | 29,150.68 | MSHF |
| SUBTOTAL | $ 747,500 | | | $ | 240.27 | $ | 150,341.64 | $ | 897,841.64 | |
| 1/17/2014 | $ 200,000 | James Veldkamp | 12% | $ | 65.75 | $ | 40,832.88 | $ | 240,832.88 | MSHF |
| 8/1/2014 | $ 200,000 | JMW Fund | 12% *Note 1* | $ | 65.75 | $ | 27,945.21 | $ | 227,945.21 | MSHF |
| 8/1/2014 | $ 200,000 | JMW Fund | 10% *Note 1* | $ | 54.79 | $ | 23,287.67 | $ | 223,287.67 | ADVN |
| SUBTOTAL | $ 400,000 | | | $ | 120.55 | $ | 51,232.88 | $ | 451,232.88 | |
| 5/28/2014 | $ 25,000 | Kearney | 12% | $ | 8.22 | $ | 4,027.40 | $ | 29,027.40 | MSHF |
| 8/1/2014 | $ 350,000 | Kirby Enterprises Fund | 10% *Note 1* | $ | 95.89 | $ | 40,753.42 | $ | 390,753.42 | ADVN |
| 10/15/2013 | $ 28,000 | Kirby Enterprises Fund | 10% | $ | 7.67 | $ | 5,484.93 | $ | 33,484.93 | MSHF |
| 11/27/2013 | $ 25,000 | Kirby Enterprises Fund | 12% | $ | 8.22 | $ | 5,523.29 | $ | 30,523.29 | MSHF |
| 12/11/2013 | $ 140,000 | Kirby Enterprises Fund | 12% | $ | 46.03 | $ | 30,286.03 | $ | 170,286.03 | MSHF |
| 2/12/2014 | $ 10,000 | Kirby Enterprises Fund | 12% | $ | 3.29 | $ | 1,956.16 | $ | 11,956.16 | MSHF |
| 4/14/2014 | $ 40,000 | Kirby Enterprises Fund | 12% | $ | 13.15 | $ | 7,022.47 | $ | 47,022.47 | MSHF |
| 4/28/2014 | $ 50,000 | Kirby Enterprises Fund | 12% | $ | 16.44 | $ | 8,547.95 | $ | 58,547.95 | MSHF |
| 4/30/2014 | $ 30,000 | Kirby Enterprises Fund | 12% | $ | 9.86 | $ | 5,109.04 | $ | 35,109.04 | MSHF |
| 5/28/2014 | $ 50,000 | Kirby Enterprises Fund | 12% | $ | 16.44 | $ | 8,054.79 | $ | 58,054.79 | MSHF |
| 7/7/2014 | $ 50,000 | Kirby Enterprises Fund | 12% | $ | 16.44 | $ | 7,397.26 | $ | 57,397.26 | MSHF |
| SUBTOTAL | $ 773,000 | | | $ | 233.42 | $ | 120,135.34 | $ | 893,135.34 | |
| 4/1/2014 | $ 80,000 | Kirby Fund LLC | 12% | $ | 26.30 | $ | 14,386.85 | $ | 94,386.85 | MSHF |
| 1/14/2014 | $ 50,000 | Nite Media | 12% | $ | 16.44 | $ | 10,257.53 | $ | 60,257.53 | MSHF |
| 8/1/2014 | $ 300,000 | Richland Fund | 12% *Note 1* | $ | 98.63 | $ | 41,917.81 | $ | 341,917.81 | MSHF |
| 8/1/2014 | $ 100,000 | Richland Fund | 10% *Note 1* | $ | 27.40 | $ | 11,643.84 | $ | 111,643.84 | ADVN |
| SUBTOTAL | $ 400,000 | | | $ | 126.03 | $ | 53,561.64 | $ | 453,561.64 | |
| 8/1/2014 | $ 200,000 | San Gabriel Fund LLC | 10% *Note 1* | $ | 54.79 | $ | 23,287.67 | $ | 223,287.67 | ADVN |
| 8/1/2014 | $ 150,000 | West Hampton Special Situations Fund | 10% *Note 1* | $ | 41.10 | $ | 17,465.75 | $ | 167,465.75 | ADVN |
| 9/16/2013 | $ 35,000 | West Hampton Special Situations Fund | 12% | $ | 11.51 | $ | 8,561.10 | $ | 43,561.10 | MSHF |
| 10/15/2013 | $ 42,000 | West Hampton Special Situations Fund | 12% | $ | 13.81 | $ | 9,872.88 | $ | 51,872.88 | MSHF |
| 12/11/2013 | $ 100,000 | West Hampton Special Situations Fund | 12% | $ | 32.88 | $ | 21,632.88 | $ | 121,632.88 | MSHF |
| 1/29/2014 | $ 30,000 | West Hampton Special Situations Fund | 12% | $ | 9.86 | $ | 6,006.58 | $ | 36,006.58 | MSHF |
| 2/12/2014 | $ 45,000 | West Hampton Special Situations Fund | 12% | $ | 14.79 | $ | 8,802.74 | $ | 53,802.74 | MSHF |
| 4/30/2014 | $ 70,000 | West Hampton Special Situations Fund | 12% | $ | 23.01 | $ | 11,921.10 | $ | 81,921.10 | MSHF |
| SUBTOTAL | $ 472,000 | | | $ | 146.96 | $ | 84,263.01 | $ | 556,263.01 | |
| TOTAL: | $ 3,402,500 | | | | | | | | $ 3,965,107.40 | |

**Notes:**
(1) Interest accrues from 8/1/2014. Dates of actual notes vary.

**Schedule B**

**Bidding Procedures Order**

RON BENDER (SBN 143364)
TODD M. ARNOLD (SBN 221868)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email:   rb@lnbyb.com; tma@lnbyb.com

Attorneys for Chapter 11 Debtors & Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>MediaShift, Inc.,<br><br>       Debtor and Debtor in Possession.<br>———————————————————<br>In re:<br><br>Ad-Vantage Networks, Inc.,<br><br>       Debtor and Debtor in Possession.<br>———————————————————<br>☒ Affects Both Debtors<br><br>☐ Affects MediaShift, Inc.  Only<br><br>☐ Affects Ad-Vantage Networks, Inc. Only | Lead Case No.: 2:15-bk-25024-SK<br>(Jointly administered with:<br>Case No. 2:15-bk-25030-SK)<br><br>Chapter 11 Cases<br><br>**ORDER (A) APPROVING BIDDING PROCEDURES FOR SALE OF DEBTORS' ASSETS; (B) AUTHORIZING AND SCHEDULING AN AUCTION; (C) SCHEDULING HEARING FOR APPROVAL OF THE SALE OF ASSETS FREE AND CLEAR OF LIENS AND THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO THE SUCCESSFUL BIDDER; (D) APPROVING ATTORNEYS' FEES AND EXPENSE REIMBURSEMENT; (E) APPROVING PROCEDURES AND SETTING DEADLINES FOR THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES INCLUDING CURE AMOUNTS RELATING THERETO; (F) APPROVING CERTAIN DEADLINES AND THE FORM, MANNER AND SUFFICIENCY OF NOTICE; AND (G) GRANTING OTHER RELATED RELIEF**<br><br>Hearing:<br>Date: _____<br>Time: _____<br>Place:Courtroom 1575<br>      255 East Temple Street<br>      Los Angeles, CA 90012 |

2

83655363.1

Upon the motion (the "Procedures Motion"), of MediaShift, Inc. ("MediaShift") and Ad-Vantage Networks, Inc. ("Ad-Vantage"), chapter 11 debtors and debtors-in-possession in the above captioned, jointly-administered bankruptcy cases (collectively, the "Debtors"), Docket No. ___, and the Official Committee of Unsecured Creditors (the "Committee") seeking entry of an order: (a) approving bidding procedures for the sale of substantially all of the Debtors' assets; (b) setting a date for and authorizing an auction (the "Auction") to sell the Debtors' assets; (c) scheduling a hearing (the "Sale Hearing") for approval of a sale of the Debtors' assets free and clear of liens, claims, encumbrances and other interests, and of the assumption and assignment of certain executory contracts and unexpired leases; (d) authorizing payment of attorney' fees and expense reimbursement; (e) approving procedures and setting deadlines for the assumption and assignment of executory contracts and unexpired leases, including cure claims relating thereto; (f) approving certain deadlines and the form, manner and sufficiency notice of the foregoing; and (g) granting other related relief;[1]

And it appearing that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(a); the Court having considered the Procedures Motion, and it appearing that the relief requested in the Procedures Motion is in the best interests of the Debtors' bankruptcy estates, their creditors and other parties in interest, and after due deliberation and sufficient cause appearing therefor;

**THE COURT HEREBY FINDS AND CONCLUDES:**

A.      Notice of the Procedures Motion was adequate and sufficient under the circumstances of the Debtors' chapter 11 cases, and such notice complied with all applicable requirements of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed thereto in the Procedures Motion. The term "Assets" shall have the same meaning as "Purchased Assets" as set forth in the Stalking Horse APA.

83655363.1

Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Bankruptcy Rules.

B.      All objections to the relief requested in the Procedures Motion that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Procedures Motion or by stipulation filed with the Court, are overruled except as otherwise expressly set forth herein.

C.      The bidding procedures attached hereto as <u>Exhibit 1</u> (the "Bidding Procedures") are reasonable and appropriate under the circumstances of the Debtors' chapter 11 cases.

D.      The Notice of Bidding Procedures, Auction Date and Sale Hearing, substantially in the form attached hereto as <u>Exhibit 2</u> (the "Sale and Bidding Procedures Notice"); the Notice of Auction and Sale Hearing, substantially in the form attached hereto as <u>Exhibit 3</u> (the "Creditor Notice"); and the Notice to Counterparties to Executory Contracts and Unexpired Leases that May Be Assumed and Assigned, substantially in the form attached hereto as <u>Exhibit 4</u> (the "Cure Notice"), are each calculated to provide adequate notice concerning the proposed sale of the Assets and the proposed assumption and assignment of the Purchased Contracts, as contemplated in the Stalking Horse APA, and are intended to provide due and adequate notice of the relief sought in the Sale Motion.

E.      MediaShift Holdings, Inc. or its designee (the "Stalking Horse Bidder" or "Holdings") has expended considerable time and expense in connection with the Stalking Horse APA and the negotiation thereof and the identification and quantification of assets of the Debtors, justifying the Expense Reimbursement (as defined below) and the terms relating thereto approved by the Court below.

4

F.      The entry of this Order is in the best interests of the Debtors, their estates, their

creditors, and other parties in interest.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The Procedures Motion shall be, and hereby is, GRANTED as set forth in this

Order.

2.      The Bidding Procedures attached hereto as <u>Exhibit 1</u> are approved in their

entirety, and are incorporated into this Order as though fully set forth herein and shall apply to

the proposed Auction and sale of the Assets.

3.      The Debtors and Committee are authorized to take any and all actions necessary

or appropriate to implement the Bidding Procedures.

4.      If the Debtors and Committee receive more than one Qualified Bid (as defined in

the Bidding Procedures), an auction (the "Auction") shall be held on **January 25, 2016, at     :**

**   .m. (prevailing Pacific Time)**, at Levene, Neale, Bender, Yoo & Brill L.L.P., 10250

Constellation Blvd., Suite 700, Los Angeles, CA 90067, or at any such other location as the

Debtors and Committee may hereafter designate.

5.      In the event the Court approves an Alternative Proposal (as defined in the

Stalking Horse APA), with a cash Purchase Price subject to the terms of the Stalking Horse

APA, that is at least $5 million greater than the Stalking Horse Bid, the Debtors shall reimburse

the Stalking Horse Bidder for Stalking Horse Bidder's reasonable and documented out-of-pocket

attorneys' fees and expenses not to exceed $200,000 incurred in connection with the transaction

contemplated by the Stalking Horse APA and DIP Financing (the "Expense Reimbursement").

The Expense Reimbursement shall be paid to the Stalking Horse Bidder from the proceeds of

sale on the closing of an Alternative Proposal approved by Bankruptcy Court.  No further or

additional order from the Court shall be required in order to give effect to these provisions relating to the terms of payment of the Expense Reimbursement.

6.    The Expense Reimbursement shall be deemed an allowed claim entitled to administrative expense priority under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code.

7.    The Sale Hearing shall be conducted on **January 27, 2016, at     :       .m. (prevailing Pacific Time)**, before the Honorable Sandra L. Klein, United States Bankruptcy Court for the Central District of California, Edward R. Roybal Federal Building and Courthouse, 255 E. Temple Street, Suite 1582, Courtroom 1575, Los Angeles, CA 90012, and may be adjourned from time to time.

8.    Any objections to any of the relief to be requested at the Sale Hearing must be in writing, state the basis of such objections with specificity and shall be filed with the Court on or before **January 13, 2016, at 11:59 p.m. (prevailing Pacific Time)**, and such objections shall be served in accordance with the Sale and Bidding Procedures Notice and the Creditor Notice.

9.    The proposed sale of the Assets, the proposed assumption and assignment of the Purchased Contracts, and the Auction shall be conducted in accordance with the provisions of this Order and the Bidding Procedures.

10.    The Sale and Bidding Procedures Notice attached hereto as <u>Exhibit 2</u>, the Creditor Notice attached hereto as <u>Exhibit 3</u>, and the Cure Notice attached hereto as <u>Exhibit 4</u> provide proper notice to all parties in interest and are hereby approved.

11.    Within three business days following entry of this Order, the Debtors shall serve by first class mail the Sale and Bidding Procedures Notice on the following parties:  (a) the U.S. Trustee; (b) counsel to the Committee; (c) counsel to Holdings; (d) counsel to Other Secured

Lenders; (e) all parties known to be asserting a lien on any of the Assets and who would appear as potentially holding a lien based on any search conducted to determine who asserts a lien on the Debtors' assets; (f) all known counterparties to the Purchased Contracts; (g) all entities known to have expressed an interest in bidding on the Assets; (h) the state taxing authorities where the Debtors' operate; (i) District Director of Internal Revenue; and (j) all other parties that filed a notice of appearance and demand for service of papers in the Debtors' bankruptcy cases under Bankruptcy Rule 9010(b) as of the date of entry of this Order.

12.      Within three business days following entry of this Order, the Debtors shall serve the Creditor Notice on all known creditors of the Debtors.

13.      Within three business days following entry of this Order, the Debtors shall file and serve the Cure Notice on the counterparties to the Purchased Contracts.  Counterparties to the Purchased Contracts[2] (each a "Counterparty," and together, the "Counterparties") must file and serve any objection to the assumption and assignment of any Purchased Contract, including objections to any Cure Cost and such objections must attach a complete copy of the Purchased Contract (together with all amendments), and set forth with specificity (a) all defaults under the Purchased Contract, the cure costs that the Counterparty believes are owing and must be paid as a condition to assumption, and (c) any other objection to the assumption and assignment of the Purchased Contract, by **January 13, 2016 at 11:59 p.m. (prevailing Pacific Time)**.

14.      Any Counterparty failing to timely file an objection to the Cure Amount set forth in the Cure Notice shall be deemed to consent to the (a) assumption and assignment of the Purchased Contract and shall be forever barred from objecting to the Cure Costs and from

---

[2]   The inclusion of any agreement as a Purchased Contract does not constitute an admission by the Debtors that such agreement actually constitutes an executory contract or unexpired lease under section 365 of the Bankruptcy Code, and the Debtors expressly reserve the right to challenge the status of any agreement included as a Purchased Contract.

83655363.1

asserting any additional cure costs or other amounts against the Debtors, their estates, and the Successful Bidder with respect to the Purchased Contract to which it is a Counterparty; and (b) the reinstatement, without default, of the Purchased Contract upon receipt by the Counterparty of payment of the applicable Cure Cost. Notwithstanding anything to the contrary, none of the Purchased Contracts, and no other executory contract or unexpired lease, shall be assumed unless and until the occurrence of the closing by the Debtors and the Successful Bidder pursuant to asset purchase agreement as approved by order of this Court.

15.    Compliance with the foregoing notice provisions shall constitute sufficient notice of the Debtors' proposed sale of the Assets free and clear of all liens, claims, interests and encumbrances (all as set forth in the Sale Motion, Docket No. ____), the contemplated assumption and assignment of each Purchased Contract and the proposed amount of Cure Costs with respect to each such Purchased Contract, and except as set forth in paragraphs 12 and 13 of this Order, no other or further notice of the sale shall be required to be provided by the Debtors.

16.    Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d) and 7062 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and no automatic stay of execution shall apply to this Order.

17.    This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order. All matters arising from or related to the implementation of this Order may be brought before the Court as a contested matter, without the necessity of commencing an adversary proceeding.

83655363.1

RON BENDER (SBN 143364)
TODD M. ARNOLD (SBN 221868)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email: rb@lnbyb.com; tma@lnbyb.com

Attorneys for Chapter 11 Debtors & Debtors in Possession

### UNITED STATES BANKRUPTCY COURT

### CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>MediaShift, Inc.,<br><br>       Debtor and Debtor in Possession.<br>_____<br><br>In re:<br><br>Ad-Vantage Networks, Inc.,<br><br>       Debtor and Debtor in Possession.<br>_____<br>⊠  Affects Both Debtors<br><br>☐ Affects MediaShift, Inc.  Only<br><br>☐ Affects Ad-Vantage Networks, Inc. Only | Lead Case No.: 2:15-bk-25024-SK<br>(Jointly administered with:<br>Case No. 2:15-bk-25030-SK)<br><br>Chapter 11 Cases<br><br>**BIDDING PROCEDURES** |

These sale and bidding procedures (the "***Bidding Procedures***") govern the procedures for the sale of substantially all of the assets (collectively, the "***Assets***") of MediaShift, Inc. and Ad-Vantage Networks, Inc. (collectively, the "***Debtors***") pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "***Bankruptcy Code***").

By motion (the "***Procedures Motion***")[1] dated December 16 2015, the above-captioned debtors and debtors in possession (collectively, the "***Debtors***") and the Official Committee of Unsecured Creditors (the "***Committee***") sought, among other things, approval of the Bidding Procedures governing the process and procedures for the sale of the Assets.  On December 30, 2015, the United States Bankruptcy Court for the Central District of California (the "***Bankruptcy Court***"), entered an order approving these Bidding Procedures (the "***Bidding Procedures Order***" [Docket No. ___]).  Pursuant to the Bidding Procedures Order, the Bankruptcy Court has scheduled a hearing on **January 27, 2016**, **at ___:___ __.m. (prevailing Pacific Time),** to consider the sale (the "***Sale Hearing***").

## I.    Assets to Be Sold

The Debtors intend to sell substantially all of their assets including patents, software and related intellectual property, as described more fully in the Stalking Horse APA (as defined below).  Any Potential Bidder (as defined below) may obtain a detailed description of the Assets through the process described in Section II below.  The Stalking Horse APA includes the terms and conditions upon which the Debtors and the Committee expect the Assets to be sold.  Pursuant to section 363 of the Bankruptcy Code and in accordance with these Bidding Procedures, the Assets will be sold free and clear of all liens, claims, encumbrances, and interests.

## II.    Due Diligence

Until the Bid Deadline (as defined below), the Debtors and the Committee will afford to each interested party: (i) determined by the Debtors and the Committee to be reasonably likely, to make a Qualified Bid (defined below); and (ii) who delivers an executed confidentiality agreement in form and substance satisfactory to the Debtors and the Committee (each, a "***Potential Bidder***"), reasonable access, during normal business hours and subject to confidentiality requirements, to the books and records of the Debtors reasonably requested by any Potential Bidder, to the extent provision of such access or information is not prohibited by applicable law and relates to the Assets.  The Debtors

---

[1] Capitalized terms used, but not otherwise defined herein, shall have the meanings given to them in the Procedures Motion.

83655971.1

will simultaneously distribute via their virtual data room in written form any additional diligence materials not previously provided to the Stalking Horse Bidder or any other Potential Bidder.  Except as provided by applicable law or Bankruptcy Court order, neither the Debtors nor their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Assets to any person or entity who is not a Potential Bidder and who does not comply with the requirements of these Bidding Procedures.

**III.    Determination of "Qualified Bidder" Status**

Any Potential Bidder desiring to participate in the bidding process must be deemed a "***Qualified Bidder***".  To be deemed a Qualified Bidder, a Potential Bidder must deliver to the Debtors and the Committee financial information evidencing the Potential Bidder's ability to close the transaction satisfactory to the Debtors and the Committee, in their sole discretion after consultation with the Committee, or such other information as reasonably determined by the Debtors and the Committee to support the Potential Bidder's ability to close the transaction.

**IV.    Bid Deadline**

A Qualified Bidder that desires to make a bid shall deliver written and electronic copies of such bid to the Debtors' investment banker Houlihan Lokey Capital, Inc., Attn: Raj Dayalan / Jorge Villen, 10250 Constellation Blvd., 5th Floor, Los Angeles, CA 90067, T: 310.553.8871, F: 310.553.2173, E: RDayalan@HL.com, JVillen@HL.com, so as to be received by no later than **1:00 p.m. (prevailing Pacific Time) on or before January 21, 2016** (the "***Bid Deadline***").

**V.    Requirements of a "Qualified Bid"**

To be deemed a "***Qualified Bid***" that may be considered at the Auction (as defined below), a bid must:

a.    be in writing;

b.    be submitted by a Qualified Bidder;

c.    provide that the purchase price shall be paid in full in cash upon closing;

d.    provide for (i) a minimum cash purchase price that exceeds the Stalking Horse Purchase Price by at least $500,000 (such sum, the "***Minimum Cash Overbid Amount***");

e.    be accompanied by a cash deposit of 5% of the Qualified Bid amount (such cash deposit will be applied to the ultimate purchase price);

f.    confirm the Qualified Bidder's completion of all due diligence required by such Qualified Bidder in connection with the proposed transaction;

83655971.1

g.    be irrevocable until the earlier of (i) the Qualified Bidder's bid being determined by the Debtors not to be a Qualified Bid, or (ii) another Qualified Bidder's bid for substantially all of the Assets being approved by the Bankruptcy Court;

h.    be accompanied by a fully executed asset purchase agreement (the "**_Modified APA_**") and a version electronically marked to show reasonable changes against the Stalking Horse APA;

i.    be, in the Debtors' and Committee's reasonable business judgment, on substantially the same or better terms as the Stalking Horse APA;

j.    identify all executory contracts or unexpired leases the Qualified Bidder seeks to have assigned to it;

k.    demonstrate the capacity to provide adequate assurance of future performance under all executory contracts and unexpired leases that are being assumed and assigned;

l.    contain no contingencies of any kind, including evidence that the Qualified Bidder has financial resources readily available sufficient to finance the purchase of the Assets and authorization;

m.    provide the that the Qualified Bidder is obligated to perform as the Reserve Bidder (as defined below) in the event the Qualified Bidder is not the Successful Bidder; and

n.    be accompanied by an affirmative statement from the Qualified Bidder that (i) it has and will continue to comply with these Bidding Procedures; (ii) its bid does not entitle such Qualified Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment or reimbursement; and (iii) it waives any substantial contribution administrative expense claims under section 503(b) of the Bankruptcy Code related to bidding for the Assets.

The Debtors and the Committee shall jointly make a determination regarding whether a bid is a Qualified Bid and shall notify all Qualified Bidders whether their bids have been determined to be Qualified Bids by no later than **4:00 p.m. (prevailing Pacific Time) on January 22, 2016**. The Debtors and Committee reserve the right to reject any bid on any grounds.

## VI.    Stalking Horse Bidder

The Debtors have completed arm's length negotiations with **Mediashift Holdings, Inc. (the "_Stalking Horse Bidder_")** to serve as the stalking horse bidder. As a result of those negotiations, the Stalking Horse Bidder has submitted an initial bid of

$11,767,000[2] for the Assets (the "***Stalking Horse Bid***").  The Stalking Horse Bid, memorialized by an Asset Purchase Agreement by and between the Sellers and the Stalking Horse Bidder dated December [_____], 2015 (the "***Stalking Horse APA***"), shall be subject to higher and better bids pursuant to the terms of these Bidding Procedures and applicable law.  For purposes of these Bidding Procedures and bidding at the Auction, the Stalking Horse Bidder is a Qualified Bidder and the Stalking Horse Bid is a Qualified Bid.

## VII.    **Negotiation of Stalking Horse Breakup Fee**

The Debtors have negotiated, and the Bankruptcy Court has approved, the reimbursement of the Stalking Horse Bidder for its reasonable out-of-pocket attorneys' fees and expenses incurred in connection with the transactions contemplated by the Stalking Horse APA up to a cap of $200,000 (the "***Expense Reimbursement***") in the event that the winning bid exceeds the Stalking Horse Bid by at least $5,000,000.00.

## VIII.    **Auction Process**

In the event that the Debtors and Committee receive more than one Qualified Bid, the Debtors will conduct an auction (the "***Auction***") for the Assets.  The Auction will take place on **January 25, 2016 at __:__ __.m. (prevailing Pacific Time)** at Levene, Neale, Bender, Yoo & Brill L.L.P., 10250 Constellation Blvd., Suite 700, Los Angeles, CA 90067.

The Debtors and Committee will have the right to jointly enact detailed procedures for the conduct of the Auction at any time prior to the start of the Auction. Any rules developed by the Debtors and Committee will provide that all bids in the Auction will be made and received in one room, on an open basis, and all other Qualified Bidders participating in the Auction will be entitled to be present for all bidding with the understanding that the true identity of each Qualified Bidder will be fully disclosed to all other Qualified Bidders participating in the Auction and that all material terms of each Qualified Bid submitted in response to the Baseline Bid or to any Subsequent Overbid (as defined below) made at the Auction will be fully disclosed to all other Qualified Bidders throughout the entire Auction.  All bids shall be placed on the record, which shall either be transcribed, videotaped, or recorded on an audio recording device.

Parties entitled to attend the Auction shall include the Debtors, the Stalking Horse Bidder, the Committee, the Qualified Bidders, the Debtors' prepetition secured lenders possessing liens in the Assets, and each of those respective parties' representatives.  The Stalking Horse Bidder and each Qualified Bidder shall appear at the Auction in person, or through a representative who provides appropriate evidence of such person's authority. Only a Qualified Bidder that submitted a timely Qualified Bid and the Stalking Horse Bidder shall be entitled to make bids at the Auction.

---

[2] The Stalking Horse Bid consists of (i) a credit bid pursuant to section 363(k) of the Bankruptcy Code of Stalking Horse Bidder's allowed Secured Pre-Petition Claim, DIP Claim and Other Secured Claims in an amount up to $11,067,000.00, plus (2) cash in the amount of $700,000.

83655971.1

Prior to the Auction, the Debtors will share with all Qualified Bidders the highest and best Qualified Bid received at the Bid Deadline (the "***Baseline Bid***"). Qualified Bidders will be permitted to revise, increase, and/or enhance their bid based upon the terms of the Baseline Bid at the Auction. All Qualified Bidders will have the right to make additional modifications to the Modified APA or the Stalking Horse APA, as the case may be, at the Auction.

The Auction will be conducted in rounds and in any order the Debtors and Committee jointly determine. At the end of every round, the highest and best bid or bids at that time for the Assets will be announced. Each Qualified Bidder shall have the right to continue to improve its respective bid at the Auction. The initial minimum overbid shall be the Baseline Bid plus $150,000 (the "***Initial Overbid***"). Thereafter, a Qualified Bidder may increase its Qualified Bid in any manner that it deems fit; provided, however, that each subsequent bid above the Initial Overbid (each, a "***Subsequent Overbid***") must have a purchase price that exceeds the purchase price of the previous highest bid by at least $100,000 of additional consideration.

The Initial Overbid and Subsequent Overbids must continue to meet each of the criteria of a Qualified Bid (other than the requirement that such bids be submitted by the Bid Deadline). The Debtors and Committee jointly reserve the right to approach any Qualified Bidder and seek clarification to bids at any time.

The Auction will continue until the Debtors and Committee jointly determine, subject to Bankruptcy Court approval, that they have received the highest and best offer for Assets (the "***Successful Bid***") and the next highest and best Qualified Bid for the Assets as the Auction (the "***Reserved Bid***"). The Qualified Bidder submitting the Successful Bid shall become the "***Successful Bidder***" and the Qualified Bidder submitting the Reserve Bid shall be the "***Reserve Bidder***."

The Debtors and Committee reserve the right, in their business judgment, to make one or more modifications and/or adjournments to the Auction to, among other things: (i) facilitate discussions between the Debtors and Committee, on the one hand, and individual Qualified Bidders, on the other hand; (ii) allow individual Qualified Bidders to consider how they wish to proceed; and (iii) give Qualified Bidders the opportunity to provide the Debtors and Committee with such additional evidence as the Debtors and Committee in their reasonable business judgment may require.

## IX.    The Sale Hearing

At the Sale Hearing, the Debtors and Committee will jointly seek entry of an order authorizing and approving the sale to the Successful Bidder. No later than **11:59 p.m. (prevailing Pacific Time) on January 13, 2016,** all objections to the relief requested at the Sale Hearing shall be filed and served in the manner prescribed in the motion to approve the sale of the Assets. The Sale Hearing may be adjourned or rescheduled from time to time. The Debtors and Committee shall provide notice of such adjournment or rescheduling to the following parties or their counsel: (i) the U.S. Trustee; (ii) the Stalking Horse Bidder; (iii) Qualified Bidders; (iv) all parties that have

83655971.1

filed a timely objection to the sale; (v) all persons or entities known or reasonably believed to have asserted a lien in any of the Assets; and (vi) all parties that have requested notice in the Debtors' bankruptcy cases.

## X.    Failure to Consummate Purchase

Following the Sale Hearing, if the Successful Bidder fails to consummate the closing of the sale because of a breach or failure to perform on the part of such Successful Bidder, the Debtors will be authorized, but not required, to consummate the sale with Reserve Bidder without further order of the Bankruptcy Court.  In such case, the defaulting Successful Bidder's deposit shall be forfeited to the Debtors.  Additionally, the Debtors shall be entitled to seek all available damages from the defaulting Successful Bidder.

## XI.    Return of Deposit

The deposits of the Successful Bidder shall be applied to the Successful Bidder's obligations under the Successful Bid upon closing of the transactions contemplated thereby.  If a Successful Bidder fails to close the transactions contemplated by the Successful Bidder then such Successful Bidder shall forfeit its deposit.

The deposit of the Reserve Bidder shall be returned to the Reserve Bidder upon the later of (i) the closing of the transaction to the Successful Bidder and (ii) thirty days after the Sale Hearing; provided, however, that if a Successful Bidder fails to close the transactions when and as provided in the Successful Bid, then the deposit of the Reserve Bidder shall be applied to the Reserve Bidder's obligations under the Reserve Bid upon closing of the transactions contemplated thereby.  If a Reserve Bidder fails to close the transactions contemplated by a Reserve Bid, then such Reserve Bidder shall forfeit its deposit.

All other deposits of Qualified Bidders who are not the Successful Bidder or the Reserve Bidder shall be returned within three business days after the conclusion of the Auction.  The Debtors reserve all of their rights regarding any return of deposits, and the failure by the Debtors to timely return any deposits shall not serve as a claim for breach of any Qualified Bids or create any default in favor of any Qualified Bidders.

## XII.    Modification of Bidding Procedures

The Debtors and Committee may jointly amend any non-material terms of these Bidding Procedures, in their reasonable business judgment, at any time in any manner that will best promote the goals of the bidding process, including but not limited to extending or modifying any of the dates described herein.

## XIII.    Miscellaneous

Nothing in these Bidding Procedures shall prejudice a party's rights pursuant to section 363(k) of the Bankruptcy Code to credit bid at the Auction; provided, however, that any party exercising credit bid rights must comply with all other provisions of these

83655971.1

Bidding Procedures, including but not limited to the requirements for submitting a Qualified Bid.

8

RON BENDER (SBN 143364)
TODD M. ARNOLD (SBN 221868)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email: rb@lnbyb.com; tma@lnbyb.com


Attorneys for Chapter 11 Debtors & Debtors in Possession


# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>MediaShift, Inc.,<br><br>        Debtor and Debtor in Possession. | Lead Case No.: 2:15-bk-25024-SK<br>(Jointly administered with:<br>Case No. 2:15-bk-25030-SK)<br><br>Chapter 11 Cases<br><br>**NOTICE OF BIDDING PROCEDURES,<br>AUCTION DATE, AND SALE HEARING** |
| In re:<br><br>Ad-Vantage Networks, Inc.,<br><br>        Debtor and Debtor in Possession. | |
| ⊠  Affects Both Debtors<br><br>☐ Affects MediaShift, Inc.  Only<br><br>☐ Affects Ad-Vantage Networks, Inc. Only | |

**PLEASE TAKE NOTICE** that on December 16, 2015, MediaShift, Inc. and Ad-Vantage Networks, Inc., chapter 11 debtors and debtors in possession (collectively the "Debtors") and the Official Committee of Unsecured Creditor (the "Committee") filed the Joint Motion For An Order (A) Approving Bidding Procedures For Sale Of Debtors' Assets; (B) Authorizing And Scheduling An Auction; (C) Scheduling Hearing For Approval Of The Sale Of Assets Free And Clear Of Liens And The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases To The Successful Bidder; (D) Approving Attorneys' Fee and Expense Reimbursement; (E) Approving Procedures And Setting Deadlines For The Assumption And Assignment Of Executory Contracts And Unexpired Leases, Including Cure Amounts Relating Thereto; (F) Approving Certain Deadlines And The Form, Manner And Sufficiency Of Notice; And (G) Granting Other Related Relief, Docket No. ___ (the "Procedures Motion").[1]

On December 30, 2015, the Bankruptcy Court entered an order (the "Procedures Order") granting the Procedures Motion and approving the bidding procedures attached hereto (the "Bidding Procedures") to be used in connection with a sale of substantially all of the Debtor's assets (the "Assets"). Pursuant to separate motion (the "Sale Motion," Doc. No.___), the Assets are being sold free and clear of all liens, claims, encumbrances and interests.

MediaShift Holdings, Inc. has submitted an offer, as the "Stalking Horse Bidder" to the Debtors to purchase the Assets on the terms set forth in that certain Asset Purchase Agreement dated December ___, 2015, between the Debtors and the Stalking Horse Bidder (the "Stalking Horse APA"), which is conditioned on Bankruptcy Court approval and is subject to higher or better offers. The Debtors and Committee determined that the offer of the Stalking Horse Bidder is presently the highest and best offer. The sale terms are set forth with more particularly in the Stalking Horse APA. The Stalking Horse bidder bid for the Asset is $11,767,000.00 ("Stalking Horse Bid").[2]

Other relevant terms of the Stalking Horse APA include the following: (a) the Assets will be sold free and clear of liens, claims, encumbrances and other interests; (b) in the event the Court approves a bid from another party that is $5,000,000.00 or greater than the Stalking Horse Bid, the Stalking Horse Bidder will be reimbursed reasonable attorneys' fees and expenses in am amount not to exceed $200,000 that the Stalking Horse Bidder incurred in connection with the transactions contemplated by the Stalking Horse APA (the "Expense Reimbursement"); (c) the Stalking Horse Bidder will assume certain enumerated liabilities as of the closing; and (d) certain executory contracts and unexpired leases will be assumed by the Debtors and assigned to the Stalking Horse Bidder.

If offers are received by the Debtors and Committee from other Qualified Bidders in accordance with the Bidding Procedures for a price and on terms that are higher or better than the Stalking Horse APA, the Assets will be sold at the Auction. The Bidding Procedures afford

---

[1] Capitalized terms not otherwise defined herein shall have the meanings set forth in the Procedures Motion. The term "Assets" in this Notice shall have the same meaning as "Purchased Assets" as set forth in the Stalking Horse APA (defined herein). The Stalking Horse APA is attached to the Procedures Motion as Exhibit "__."

[2] The Stalking Horse Bid consists of: (1) a credit bid pursuant to Section 363(k) of the bankruptcy Code of Stalking Horse Bidder's allowed Prepetition Secured Claim, DIP Claim and Other Secured Claims, plus (2) cash in the amount of $700,000.

the Debtors and Committee the opportunity to subject the Assets to competitive bidding while preserving the Stalking Horse Bid, thereby providing a floor price for the Assets.

The Debtors are seeking to sell substantially all of their assets under chapter 11 of the United States Bankruptcy Code.  After the sale of the Assets, the Debtors will no longer operate.  The Debtors and Committee believe the sale of the Assets is in the best interest of the Debtors' estates and will provide the highest and best value for the Assets.

## Bidding Procedures

A copy of the Bidding Procedures is attached hereto as **Exhibit 1**.  The Bidding Procedures describe, *inter alia*, the terms of the bidding process, the requirements and deadlines for participation therein, required terms of any bids, and the time, location and conduct of the Auction.  In the event of any inconsistency or conflict between this Notice, the Bidding Procedures and the Bidding Procedures Order, the Bidding Procedures Order shall control.

## The Auction

**PLEASE TAKE FURTHER NOTICE** that the Debtors and Committee are authorized to conduct the Auction in accordance with the Bidding Procedures to determine the highest and best bid with respect to the Assets.  The Auction, if any, shall commence at __:__ **a.m. (prevailing Eastern Time) on January 25, 2016**, at Levene, Neale, Bender, Yoo & Brill L.L.P., 10250 Constellation Blvd., Suite 700, Los Angeles, CA 90067, or such other date or location as designated prior to the Auction.

## The Sale Hearing

**PLEASE TAKE FURTHER NOTICE** that the Bankruptcy Court has scheduled a hearing for **January 27, 2016, at __:__0 __.m. (prevailing Pacific Time)** (the "Sale Hearing") to consider either approval of the Stalking Horse APA in the absence of an Auction or approval of the successful bid and confirm the results at the Auction for the Assets, pursuant to the Sale Motion.  The Sale Hearing may be adjourned in open court from time to time, without further notice.  The Sale Hearing will be held before the Honorable Sandra L. Klein, United States Bankruptcy Court for the Central District of California, Edward R. Roybal Federal Building and Courthouse, 255 E. Temple Street, Suite 1582, Los Angeles, California 90012.

**PLEASE TAKE FURTHER NOTICE** that the Bidding Procedures attached hereto shall govern the bidding process and any Auction of the Assets.  Any person that wishes to receive a copy of the Sale Motion (with all attachments), the Stalking Horse APA or the Procedures Order (with all attachments), can make such request in writing to Levene, Neale, Bender, Yoo & Brill, L.L.P., 10250 Constellation Blvd., Suite 1700, Los Angeles, California 90067, Attention: Todd M. Arnold, Fax 310-229-1244, Email tma@lnbyb.com.

## Objections

Any objection to any of the relief to be requested at the Sale Hearing must be in writing, state the basis of such objection with specificity, and shall be filed with the Court, and shall be served on:  (i) counsel to the Debtors: Levene, Neale, Bender, Yoo & Brill, L.L.P., 10250 Constellation Blvd., Suite 1700, Los Angeles, California 90067, Attention: Todd M. Arnold, Facsimile: (310) 229-1244;  (ii) ) counsel to the Official Committee of Unsecured Creditors: Danning, Gill, Diamond & Kollitz, LLP, 1900 Avenue of the Stars, 11th Floor, Los Angeles, CA 90067 (Attention: Uzzi O Raanan, Esq. and Zev Shechtman, Esq.);  (iii) the Office of the United States Trustee, Office of the U.S. Trustee, Los Angeles, California 90012; and (iv) counsel to the Stalking Horse Bidder: Drinker Bidder & Reath, LLP, 1177 Avenue of the Americas, 41st Floor, New York, NY 10036-2714 (Attention: Michael P. Pompeo), so as to be received by **January 13, 2016, at 11:59 p.m. (prevailing Pacific Time)**.

Dated: _____ __, 2015          Respectfully submitted,

                                      _____

RON BENDER (SBN 143364)
TODD M. ARNOLD (SBN 221868)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: rb@lnbyb.com; tma@lnbyb.com

Attorneys for Chapter 11 Debtors & Debtors in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>MediaShift, Inc.,<br><br>　　　　Debtor and Debtor in Possession.<br><br>―――――――――――――――――<br><br>In re:<br><br>Ad-Vantage Networks, Inc.,<br><br>　　　　Debtor and Debtor in Possession.<br><br>―――――――――――――――――<br><br>☒ Affects Both Debtors<br><br>☐ Affects MediaShift, Inc. Only<br><br>☐ Affects Ad-Vantage Networks, Inc. Only | Lead Case No.: 2:15-bk-25024-SK<br>(Jointly administered with:<br>Case No. 2:15-bk-25030-SK)<br><br>Chapter 11 Cases<br><br>**NOTICE OF AUCTION AND HEARING ON JOINT MOTION AUTHORIZING A SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS**<br><br>Hearing:<br>Date: _____<br>Time: _____<br>Place: Courtroom 1575<br>　　　　255 East Temple Street<br>　　　　Los Angeles, CA 90012 |

83659064.1

**ALL PARTIES IN INTEREST– PLEASE TAKE NOTICE OF THE FOLLOWING**:

MediaShift Holdings, Inc. and Ad-Vantage Networks, Inc., chapter 11 debtors and debtors in possession (collectively, the "Debtors") and the Official Committee of Unsecured Creditors (the "Committee") have filed the Joint Motion for an Order (A) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests; (B) Authorizing the Assumption and Assignment of Certain Executory Contracts; and (C) Granting Related Relief, Docket No. ___ (the "Sale Motion").

### Assets to Be Sold

The Debtors propose to sell substantially all of their assets (the "Assets") to MediaShift Holdings, Inc. (the "Stalking Horse Bidder") or to the party that submits the highest and best bid. The Debtors further propose to assume and assign certain executory contracts (the "Purchased Contracts") associated with the Assets.

### Sale Free and Clear of Liens, Claims, Encumbrances and Interests

Pursuant to section 363(b) and (f) of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and subject to any orders entered by the Court, the Debtors will seek authority to sell all rights, title, and interest in the Sale Assets to the Stalking Horse Bidder or the Qualified Bidder[1] submitting the highest and best Qualifying Bid in accordance with the Bidding Procedures, in either case, free and clear of any liens, claims, encumbrances, and interests, with all such liens, claims, encumbrances and interests attaching to the proceeds of such sale.

### Auction And Bidding Procedures

**A.     The Auction**

In the event the Debtors and Committee receive more than one Qualified Bid, the Debtors and Committee will conduct an auction (the "Auction") for all of the Assets on **January 25, 2016** commencing at **__:_0 a.m. (prevailing Pacific Time**) at Levene, Neale, Bender, Yoo & Brill L.L.P., 10250 Constellation Blvd., Suite 700, Los Angeles, CA 90067.  Only parties submitting Qualified Bids will be invited to participate in the Auction.

---

[1] Unless otherwise defined herein, capitalized terms used herein have the meanings given to them in the Sale Motion and exhibits attached thereto.

83659064.1

**B.**     **The Bidding Procedures**

The Bidding Procedures, which are available upon request by contacting the undersigned, set forth the process by which the Debtors and Committee seek to conduct the Auction. Participating bidders at the Auction will include the Stalking Horse Bidder and any potential purchaser that satisfies the requirements set forth in the Bidding Procedures.

**C.**     **The Sale Hearing**

The Court will hold a hearing (the "Sale Hearing") on the Sale Motion on **January 27, 2016** at __:_0_.m. prevailing Pacific Time before the Honorable Judge Sandra L. Klein, United States Bankruptcy Court for the Central District of California, Edward R. Roybal Federal Building and Courthouse, 255 E. Temple Street, Suite 1582, Los Angeles, California 90012. At the Sale Hearing, the Debtors and Committee will seek approval of the proposed sale of the Sale Assets. Objections, if any, to the Sale Motion must be filed with the Court and served upon parties in interest so as to be received no later than **11:59 p.m. (prevailing Pacific Time), January 13, 2016.**

**D.**     **Assumption of Contracts and Leases**

As part of the sale of substantially all of the Debtors' assets, the Debtors propose to assume and assign the Purchased Contracts. A list of the Purchased Contracts may be obtained from the Debtors.

If you are a party to a Purchased Contract, you will receive a separate motion or notice, which will identify the contracts or leases to be assigned, the identity of the assignee, and the amount, if any, to be paid as a "cure amount" under section 365 of the Bankruptcy Code. Objections, if any, to the assumption and assignment of any Purchased Contracts, or to any proposed Cure Costs therein, must be filed with the Court and served upon parties in interest so as to be received on or before **January 13, 2016**.

**E.**     **Complete Copies**

Complete copies of the Sale Motion and related documents may be obtained contacting counsel for the Debtors: Levene, Neale, Bender, Yoo & Brill L.L.P., Attn: Ron Bender, Esq. and Todd M. Arnold, Esq., 10250 Constellation Blvd., Suite 700, Los Angeles, CA 90067, Ph 310-229-1234, Fax 310-229-1234, Email rb@lnbyb.com, tma@lnbyb.com

Dated:  December __, 2015                              Respectfully submitted,

RON BENDER (SBN 143364)
TODD M. ARNOLD (SBN 221868)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email: rb@lnbyb.com; tma@lnbyb.com

Attorneys for Chapter 11 Debtors & Debtors in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>MediaShift, Inc.,<br><br>        Debtor and Debtor in Possession.<br>_____<br><br>In re:<br><br>Ad-Vantage Networks, Inc.,<br><br>        Debtor and Debtor in Possession.<br>_____<br><br>☒  Affects Both Debtors<br><br>☐ Affects MediaShift, Inc.  Only<br><br>☐ Affects Ad-Vantage Networks, Inc. Only | Lead Case No.: 2:15-bk-25024-SK<br>(Jointly administered with:<br>Case No. 2:15-bk-25030-SK)<br><br>Chapter 11 Cases<br><br>**NOTICE TO COUNTERPARTIES TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES THAT MAY BE ASSUMED AND ASSIGNED**<br><br>  Hearing:<br>  Date: _____<br>  Time: _____<br>  Place: Courtroom 1575<br>        255 East Temple Street<br>        Los Angeles, CA 90012 |

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

PLEASE TAKE NOTICE that on September 30, 2015 (the "Petition Date"), MediaShift, Inc. and Ad-Vantage Networks, Inc., chapter 11 debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition for relief under title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

PLEASE TAKE FURTHER NOTICE that on December [  ], 2015, the Debtors and the Official Committee of Unsecured Creditor (the "Committee") filed the Joint Motion for an Order (A) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests; (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (C) Granting Related Relief, Docket No. ___ (the "Sale Motion"). Pursuant to the Sale Motion, the Debtors and Committee seek, *inter alia*, the Bankruptcy Court's approval of the sale of substantially all the Debtors' assets, including the assumption and assignment of various executory contracts and unexpired leases (the "Purchased Contracts") to the Successful Bidder (as defined in the Sale Motion), free and clear of liens, claims, encumbrances and other interests.

PLEASE TAKE FURTHER NOTICE that on December 30, 2015 the Bankruptcy Court entered an Order (A) Approving Bidding Procedures For Sale Of Debtors' Assets; (B) Authorizing And Scheduling An Auction; (C) Scheduling Hearing For Approval Of The Sale Of Assets Free And Clear Of Liens And The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases To The Successful Bidder; (D) Approving Attorneys' Fees and Expense Reimbursement; (E) Approving Procedures And Setting Deadlines For The Assumption And Assignment Of Executory Contracts And Unexpired Leases, Including Cure Amounts Relating Thereto; (F) Approving Certain Deadlines And The Form, Manner And Sufficiency Of Notice; and (G) Granting Other Related Relief, Docket No. ___ (the "Procedures Order"). This Notice is issued pursuant to the requirements of the Procedures Order. The Procedures Order and the order approving the Sale Motion shall govern the Debtors' assumption and assignment of the Purchased Contracts.

PLEASE TAKE FURTHER NOTICE that the hearing (the "Sale Hearing") on the Sale Motion has been set for **January 27, 2016, at    :   0    .m. (Prevailing Pacific Time**) before the Honorable Sandra L. Klein, United States Bankruptcy Court for the Central District of California, Edward R. Roybal Federal Building and Courthouse, 255 E. Temple Street, Suite 1582, Los Angeles, California 90012.

PLEASE TAKE FURTHER NOTICE that the amount shown on **Exhibit 1** attached to this Notice as the "Cure Cost" for the Purchased Contract listed on **Exhibit 1** to which you are a

party is the amount, based upon the Debtors' books and records, which the Debtors assert is owed to cure any defaults existing under the Purchased Contract as of the Petition Date**.**[1]

**PLEASE TAKE FURTHER NOTICE** that the Purchaser may exclude any agreement or agreements from the list of Purchased Contracts at any time within 10 days prior to the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that if you disagree with the Cure Cost shown for the Purchased Contract on **Exhibit 1**, or if you object to the assumption and assignment of your Purchased Contract on any ground, you must file an objection in writing with United States Bankruptcy Court for the Central District of California, Edward R. Roybal Federal Building and Courthouse, 255 E. Temple Street, Suite 1582, Los Angeles, California 90012 on or before **11:59 p.m. (Prevailing Pacific Time on Janaury 13, 2015**.  In addition, any objection must attached a complete copy of your contract (including all amendments thereto) and set forth the specific default or defaults alleged, set forth any such other ground for objection, and set forth any Cure Cost as alleged by you.

**PLEASE TAKE FURTHER NOTICE** that any objection to the assignment and assumption of your Purchased Contract or to the Cure Cost must be served so as to be received by that same date and time stated above upon the following parties:  (i) counsel to the Debtors: Levene, Neale, Bender, Yoo & Brill, L.L.P., 10250 Constellation Blvd., Suite 1700, Los Angeles, California 90067 (Attention: Todd M. Arnold);  (ii) counsel to the Official Committee of Unsecured Creditors: Danning, Gill, Diamond & Kollitz, LLP, 1900 Avenue of the Stars, 11th Floor, Los Angeles, CA 90067 (Attention: Uzzi O Raanan, Esq. and Zev Shechtman, Esq.); (iii) the Office of the United States Trustee:; and (iv) counsel to the Stalking Horse Bidder: Drinker Bidder & Reath, LLP, 1177 Avenue of the Americas, 41st Floor, New York, NY 10036-2714 (Attention: Michael P. Pompeo).

**PLEASE TAKE FURTHER NOTICE THAT IF YOU DO NOT TIMELY FILE AND SERVE AN OBJECTION OR OBJECTIONS AS STATED ABOVE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE SALE MOTION WITHOUT FURTHER NOTICE.   ANY NON-DEBTOR PARTY TO ANY PURCHASED CONTRACT WHO DOES NOT FILE A TIMELY OBJECTION TO THE CURE COSTS FOR SUCH PURCHASED CONTRACT IS DEEMED TO HAVE CONSENTED TO SUCH CURE COSTS, AND ANY NON-DEBTOR PARTY TO ANY PURCHASED CONTRACT WHO DOES NOT FILE A TIMELY OBJECTION ON OTHER GROUNDS IS DEEMED TO HAVE CONSENTED TO THE ASSUMPTION AND ASSIGNMENT OF THE PURCHASED CONTRACT ON THE TERMS AND CONDITIONS REQUESTED BY THE DEBTORS.**

Dated:  December __, 2015                          Respectfully submitted,

---

[1]  Your receipt of this notice does not constitute an admission by the Debtors that your agreement actually constitutes an executory contract or unexpired lease under section 365 of the Bankruptcy Code, and the Debtors expressly reserve the right to challenge the status of any agreement.

**EXHIBIT 1**

**[PURCHASED CONTRACTS LIST]**

Schedule 2.1(b)

# Tangible Personal Property

**MEDIASHIFT**

| Asset No. | Date Purchased | Date Placed in Service | Description | Fixed Asset Category | Purchased From | Location | Amount | Ending Accumulated Depreciation | Net Book Value |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 04/30/13 | 04/30/13 | MacBook Pro | Office Equipment | Mac Mall | Home Office | $ 2,271.18 | $ 1,892.70 | $ 378.48 |
| 2 | 05/31/13 | 04/30/13 | Monitor | Office Equipment | | Glendale | $ 642.63 | $ 517.65 | 124.98 |
| 3 | 06/30/13 | 06/30/13 | 8 Samsung C300 Series S24C300HL monitors | Office Equipment | | Glendale | $ 1,691.68 | $ 1,315.72 | 375.96 |
| 4 | 07/25/13 | 07/25/13 | Desktops for AMP (QA) Group | Office Equipment | | Glendale | $ 2,452.47 | $ 1,839.24 | 613.23 |
| 5 | 08/30/13 | 08/30/13 | LG E960 Google Nexus 4 Unlocked GSM Phone 16GB | Office Equipment | Amazon | Glendale | $ 339.48 | $ 245.18 | 94.30 |
| 6 | 08/30/13 | 08/30/13 | Apple Ipad Mini 16gb wifi | Office Equipment | Amazon | Glendale | $ 346.00 | $ 249.86 | 96.14 |
| 7 | 08/30/13 | 08/30/13 | apple Ipad 2 16gb wifi 2nd generation | Office Equipment | Amazon | Glendale | $ 412.99 | $ 298.22 | 114.77 |
| 8 | 08/30/13 | 08/30/13 | Apple Iphone5 | Office Equipment | Amazon | Glendale | $ 744.00 | $ 537.42 | 206.58 |
| 9 | 08/30/13 | 08/30/13 | Samsung Galaxy Tab 2 7 inch wifi | Office Equipment | Amazon | Glendale | $ 183.52 | $ 132.60 | 50.92 |
| 10 | 07/23/13 | 07/23/13 | Polycom SoundStation IP 6000 | Office Equipment | Amazon | Glendale | $ 528.70 | $ 396.63 | 132.07 |
| 11 | 09/30/13 | 09/02/13 | Apple Iphone4 | Office Equipment | Amazon | Glendale | $ 380.00 | $ 264.00 | 116.00 |
| 12 | 09/30/13 | 09/02/13 | Samsung Galaxy S IV/S4 GT-I9500 | Office Equipment | Amazon | Glendale | $ 648.00 | $ 450.00 | 198.00 |
| 13 | 10/11/13 | 10/11/13 | Seagate 3.5 Inch Hardrive | Office Equipment | Amazon | Glendale | $ 832.68 | $ 555.12 | 277.56 |
| | | | | | | | | $ - | $ - |
| | | | | | | | **$ 11,473.33** | **$ 8,694.34** | **$ 2,778.99** |
| | | | | | | | | | |
| 4 | 06/30/13 | 06/30/13 | Madison Seating for 3 chairs | Furniture & Fixtures | | Glendale | $ 1,799.97 | $ 600.04 | 1,199.93 |
| | | | | | | | **$ 1,799.97** | **$ 600.04** | **$ 1,199.93** |
| | | | | | | | | Net Book | **$ 3,978.92** |
| | | | | | | | $ 13,273.30 | | |

Contents of Storage Locker (TBD)
Public Storage #21106
171 S Arroyo Parkway
Pasadena, CA 91105-2019

<u>**AD-VANTAGE**</u>

| Date Purchased | Date Placed in Service [1] | Description | Category | Amount | Ending Accumulated Depreciation | Net Book Value |
|---|---|---|---|---|---|---|
| 02/22/12 | 02/22/12 | 15 41' cubicles | Furniture & Fixtures | $ 8,874.00 | $ 4,648.16 | $ 4,225.84 |
| 02/22/12 | 02/22/12 | Office Furniture | Furniture & Fixtures | $ 5,013.38 | $ 2,625.92 | $ 2,387.46 |
| 03/01/12 | 03/01/12 | 12 Larkin Stackable Chairs | Furniture & Fixtures | $ 639.45 | $ 334.84 | $ 304.61 |
| 07/18/12 | 07/18/12 | Kearney Desk Chair (5) | Furniture & Fixtures | $ 701.44 | $ 317.30 | $ 384.14 |
| 10/04/12 | 10/04/12 | Office Furniture for M. Spalter | Furniture & Fixtures | $ 1,381.13 | $ 591.84 | $ 789.29 |
| 01/07/13 | 01/07/13 | 5 Desk Chairs Plus Assembly | Furniture & Fixtures | $ 798.05 | $ 313.50 | $ 484.55 |
| 03/15/13 | 03/15/13 | 14 Cubicle Workstations | Furniture & Fixtures | $ 9,163.36 | $ 3,381.79 | $ 5,781.57 |
| 03/18/13 | 03/18/13 | 8 desk chairs | Furniture & Fixtures | $ 1,212.08 | $ 447.33 | $ 764.75 |
| **Total Furniture & Fixtures** | | | TB | **$ 27,782.89** | **$ 12,660.68** | **$ 15,122.21** |
| 02/09/11 | 02/09/11 | Software Upgrade for Dave Grant | Office Equipment | $ 660.54 | $ 660.54 | $ 66.05 |
| 04/11/11 | 04/11/11 | Computer | Office Equipment | $ 1,161.16 | $ 1,161.16 | $ 116.12 |
| 04/18/11 | 04/18/11 | Computer - 2 | Office Equipment | $ 2,565.96 | $ 2,565.96 | $ 256.60 |
| 07/29/11 | 07/29/11 | Computer Equipment | Office Equipment | $ 567.61 | $ 567.61 | $ 56.76 |
| 09/26/11 | 09/26/11 | Computer | Office Equipment | $ 2,138.73 | $ 2,138.73 | $ 213.87 |
| 09/26/11 | 09/26/11 | Computer | Office Equipment | $ 2,196.67 | $ 2,196.67 | $ 219.67 |
| 09/29/11 | 09/29/11 | Computer Equipment | Office Equipment | $ 528.62 | $ 528.62 | $ 52.86 |
| 09/29/11 | 09/29/11 | Computer - 2 | Office Equipment | $ 2,412.07 | $ 2,412.07 | $ 241.21 |
| 10/06/11 | 10/06/11 | Computer Equipment | Office Equipment | $ 1,863.88 | $ 1,863.88 | $ 186.39 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 12/15/11 | 12/15/11 | HP Server | Office Equipment | $ | 7,424.99 | $ | 7,424.99 | $ | 742.50 |
| 12/15/11 | 12/15/11 | Sonic Wall | Office Equipment | $ | 6,119.91 | $ | 6,119.91 | $ | 611.99 |
| 12/16/11 | 12/16/11 | New Egg | Office Equipment | $ | 2,500.12 | $ | 2,500.12 | $ | 250.01 |
| 01/03/12 | 01/03/12 | Computer | Office Equipment | $ | 2,190.11 | $ | 2,190.11 | $ | 219.01 |
| 02/02/12 | 02/02/12 | Computer | Office Equipment | $ | 1,875.88 | $ | 1,875.88 | $ | 187.59 |
| 02/07/12 | 02/07/12 | HP Envy 15 laptop | Office Equipment | $ | 1,312.99 | $ | 1,312.99 | $ | 131.30 |
| 02/22/12 | 02/22/12 | 1 Samsung Monitor S27A350H | Office Equipment | $ | 323.37 | $ | 323.37 | $ | 32.34 |
| 02/22/12 | 02/22/12 | 1 Samsung Monitor S22A3 | Office Equipment | $ | 171.11 | $ | 171.11 | $ | 17.11 |
| 02/23/12 | 02/23/12 | 3 Samsung Monitors S27A350H | Office Equipment | $ | 970.09 | $ | 970.09 | $ | 97.01 |
| 02/23/12 | 02/23/12 | 1 Samsung Monitor S22A3 | Office Equipment | $ | 171.11 | $ | 171.11 | $ | 17.11 |
| 02/23/12 | 02/23/12 | Sharp Microwave | Office Equipment | $ | 108.74 | $ | 77.83 | $ | 30.91 |
| 02/23/12 | 02/23/12 | Cuisinart Coffee Maker | Office Equipment | $ | 157.68 | $ | 113.09 | $ | 44.59 |
| 03/01/12 | 03/01/12 | 2 13' Macbook Pro I7 | Office Equipment | $ | 2,939.09 | $ | 2,939.09 | $ | 293.91 |
| 03/01/12 | 03/01/12 | 2 HP Envy I5-3033CL Laptop | Office Equipment | $ | 2,625.98 | $ | 2,625.98 | $ | 262.60 |
| 03/01/12 | 03/01/12 | Sears - Fridge | Office Equipment | $ | 516.27 | $ | 369.80 | $ | 146.47 |
| 03/13/12 | 03/13/12 | Cables & Router | Office Equipment | $ | 249.43 | $ | 249.43 | $ | 24.94 |
| 03/13/12 | 03/13/12 | NI Cards | Office Equipment | $ | 1,757.50 | $ | 1,757.50 | $ | 175.75 |
| 03/13/12 | 03/13/12 | Memory Modules | Office Equipment | $ | 515.08 | $ | 515.08 | $ | 51.51 |
| 03/26/12 | 03/26/12 | Server Equipment | Office Equipment | $ | 1,608.40 | $ | 1,608.40 | $ | 160.84 |
| 03/26/12 | 03/26/12 | 10 VOIP Phones | Office Equipment | $ | 2,354.33 | $ | 2,354.33 | $ | 235.43 |
| 05/30/12 | 05/30/12 | VOIP Phones | Office Equipment | $ | 805.60 | $ | 805.60 | $ | 80.56 |
| 04/19/12 | 04/19/12 | Equipment | Office Equipment | $ | 2,352.36 | $ | 2,352.36 | $ | 235.24 |
| 07/11/12 | 07/11/12 | Desktop & Routers | Office Equipment | $ | 1,807.76 | $ | 1,807.76 | $ | 180.78 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 07/11/12 | 07/11/12 | Telephones (3) | Office Equipment | $ | 737.29 | $ | 737.29 | $ | 73.73 |
| 07/23/12 | 07/23/12 | HP Envy 15 laptop | Office Equipment | $ | 1,243.00 | $ | 1,243.00 | $ | 124.30 |
| 07/24/12 | 07/24/12 | Apple Air Macbooks (2) | Office Equipment | $ | 2,743.23 | $ | 2,743.23 | $ | 274.32 |
| 07/25/12 | 07/25/12 | 1 Samsung 24" Monitor; 1 Samsung 27" Monitor | Office Equipment | $ | 516.23 | $ | 516.23 | $ | 51.62 |
| 09/30/12 | 09/30/12 | Ravi Computer | Office Equipment | $ | 1,388.10 | $ | 1,388.10 | $ | 138.81 |
| 10/31/12 | 10/31/12 | HP Envy 15 laptop | Office Equipment | $ | 1,186.83 | $ | 1,153.95 | $ | 32.88 |
| 10/31/12 | 10/31/12 | Monitor | Office Equipment | $ | 275.74 | $ | 268.10 | $ | 7.64 |
| 11/30/12 | 11/30/12 | HP Envy 15 laptop | Office Equipment | $ | 1,293.87 | $ | 1,221.96 | $ | 71.91 |
| 11/30/12 | 11/30/12 | HP Envy 15 laptop | Office Equipment | $ | 1,204.24 | $ | 1,137.30 | $ | 66.94 |
| 11/30/12 | 11/30/12 | Tiger Direct: AMP1500 & AMP300 test servers | Office Equipment | $ | 731.34 | $ | 690.88 | $ | 40.46 |
| 11/30/12 | 11/30/12 | 3 Cisco SPA IP Phones | Office Equipment | $ | 760.13 | $ | 717.74 | $ | 42.39 |
| 12/04/12 | 12/04/12 | Laptop, external drive | Office Equipment | $ | 1,128.09 | $ | 1,065.56 | $ | 62.53 |
| 12/07/12 | 12/07/12 | HP Envy I5-3033CL Laptop | Office Equipment | $ | 1,518.30 | $ | 1,434.12 | $ | 84.18 |
| 09/01/12 | 01/01/13 | HP PROLIANT DI120 Rack Entry-Level Server (2) | Office Equipment | $ | 2,297.24 | $ | 2,297.24 | $ | 229.72 |
| 08/31/12 | 08/31/12 | Test Computer and MacPro Add-In Testing | Office Equipment | $ | 1,663.00 | $ | 1,663.00 | $ | 166.30 |
| 09/30/12 | 09/30/12 | 3 Computers and Unix Admin | Office Equipment | $ | 4,400.00 | $ | 4,400.00 | $ | 440.00 |
| 01/04/13 | 01/04/13 | 2 HP Envy 15-3040NR 15.6' Laptop | Office Equipment | $ | 2,405.98 | $ | 2,205.39 | $ | 200.59 |
| 01/17/13 | 01/17/13 | HP Envy 15-3040NR 15.6' Laptop | Office Equipment | $ | 1,311.97 | $ | 1,166.08 | $ | 145.89 |
| 02/01/13 | 02/01/13 | HP Envy 15-3040NR 15.6' Laptop | Office Equipment | $ | 1,308.94 | $ | 1,163.52 | $ | 145.42 |
| 02/14/13 | 02/14/13 | HP Envy 15-3040NR 15.6' Laptop | Office Equipment | $ | 1,093.99 | $ | 972.48 | $ | 121.51 |
| 02/25/13 | 02/25/13 | HP Envy 15-3040NR 15.6' Laptop, Keyboard & Monitor | Office Equipment | $ | 1,571.38 | $ | 1,353.15 | $ | 218.23 |
| 02/27/13 | 02/27/13 | HP Envy 15-3040NR 15.6' Laptop, Keyboard & Monitor | Office Equipment | $ | 1,571.38 | $ | 1,353.15 | $ | 218.23 |
| 03/01/13 | 03/01/13 | HP Pavilion Desktop | Office Equipment | $ | 828.38 | $ | 713.31 | $ | 115.07 |

83702077. 4

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 03/13/13 | 03/13/13 | Laptop, wireless keyboard/mouse | Office Equipment | $ | 1,157.41 | $ | 996.65 | $ | 160.76 |
| 03/31/13 | 03/31/13 | Projector | Office Equipment | $ | 732.05 | $ | 630.23 | $ | 101.82 |
| 04/10/13 | 04/10/13 | 5 Cisco Phones | Office Equipment | $ | 1,106.30 | $ | 921.90 | $ | 184.40 |
| 04/10/13 | 04/10/13 | HP Envy 15-3040NR 15.6' Laptop | Office Equipment | $ | 1,268.37 | $ | 1,056.90 | $ | 211.47 |
| 04/11/13 | 04/11/13 | HP Envy 15-3040NR 15.6' Laptop (5) | Office Equipment | $ | 5,073.48 | $ | 4,227.90 | $ | 845.58 |
| 04/30/13 | 04/30/13 | HP Envy 15-3040NR 15.6' Laptop | Office Equipment | $ | 1,246.57 | $ | 1,038.90 | $ | 207.67 |
| 04/30/13 | 04/30/13 | HP Envy 15-3040NR 15.6' Laptop | Office Equipment | $ | 1,246.57 | $ | 1,038.90 | $ | 207.67 |
| 07/15/13 | 07/15/13 | 13.3" MacBook Air | Office Equipment | $ | 1,725.08 | $ | 1,293.84 | $ | 431.24 |
| 07/31/13 | 07/15/13 | Polycom SoundStation IP 5000 PoE for conf. room | Office Equipment | $ | 389.66 | $ | 292.14 | $ | 97.52 |
| 10/08/13 | 10/08/13 | Memory for Matt Variot's computer - 1 of: Kingston Value RAM 4GB 1333MHz PC3-10600 DDR3 Non-ECC CL9 DIMM SR x8 Desktop Memory (KVR13N9S8/4) 1 of: Intel Core i7-2600K Quad-Core Processor 3.4 Ghz 8 MB Cache LGA 1155 - BX80623I72600K | Office Equipment | $ | 378.40 | $ | 252.24 | $ | 126.16 |
| 10/14/13 | 03/31/13 | Plug and Play Gateway Controller | Office Equipment | $ | 799.00 | $ | 665.70 | $ | 133.30 |
| 03/04/15 | 03/04/15 | Cisco Wireless Router | Office Equipment | $ | 600.99 | $ | 100.14 | $ | 500.85 |
| 03/04/15 | 03/04/15 | Cisco Air 3500i Access Point | Office Equipment | $ | 261.13 | $ | 43.50 | $ | 217.63 |
| **Total Office Equipment** | | | TB | | **$104,116.80** | $ | **98,894.89** | $ | **12,137.76** |
| 02/09/12 | 02/09/12 | Whiteboard paint | Tenant Improvements | $ | 1,304.74 | $ | 1,304.74 | $ | 130.47 |
| 02/29/12 | 02/29/12 | Electrical boxes | Tenant Improvements | $ | 1,125.00 | $ | 1,125.00 | $ | 112.50 |
| 03/02/12 | 03/02/12 | Cabling | Tenant Improvements | $ | 3,965.81 | $ | 3,965.81 | $ | 396.58 |
| 04/01/13 | 04/01/13 | Cabling | Tenant Improvements | $ | 1,875.00 | $ | 1,875.00 | $ | 187.50 |
| 04/30/13 | 04/30/13 | Electrical work for cubicles | Tenant Improvements | $ | 1,095.00 | $ | 1,095.00 | $ | 109.50 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **Total Improvements** | | | TB | | $ | 9,365.55 | $ | 9,365.55 | $ | 936.56 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 05/15/12 | 05/15/12 | Server Hardware for SafetyNet | Machinery & Equipment | $ | 590.08 | $ | 590.08 | $ | 29.50 |
| 05/15/12 | 05/15/12 | Server Hardware for SafetyNet | Machinery & Equipment | $ | 1,033.13 | $ | 1,033.13 | $ | 51.66 |
| 08/09/12 | 09/30/12 | EX350 Xli Computer Equipment | Machinery & Equipment | $ | 3,941.25 | $ | 3,941.25 | $ | 197.06 |
| 07/23/12 | 10/06/12 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 204.53 | $ | 204.53 | $ | 10.23 |
| 07/23/12 | 10/06/12 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 204.53 | $ | 204.53 | $ | 10.23 |
| 08/26/12 | 10/06/12 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 86.99 | $ | 86.99 | $ | 4.35 |
| 08/26/12 | 10/06/12 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 132.65 | $ | 132.65 | $ | 6.63 |
| 08/26/12 | 10/06/12 | OCZ Vertez 4 128GB SSD SATA-3 | Machinery & Equipment | $ | 119.62 | $ | 119.62 | $ | 5.98 |
| 08/26/12 | 10/06/12 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 50.01 | $ | 50.01 | $ | 2.50 |
| 08/26/12 | 10/06/12 | OCZ Vertez 4 128GB SSD SATA-3 | Machinery & Equipment | $ | 85.88 | $ | 85.88 | $ | 4.29 |
| 08/26/12 | 10/06/12 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 91.33 | $ | 91.33 | $ | 4.57 |
| 08/26/12 | 10/06/12 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 77.46 | $ | 77.46 | $ | 3.87 |
| 08/26/12 | 10/06/12 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 54.35 | $ | 54.35 | $ | 2.72 |
| 08/26/12 | 10/06/12 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 53.27 | $ | 53.27 | $ | 2.66 |
| 09/02/12 | 10/06/12 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 48.93 | $ | 48.93 | $ | 2.45 |
| 09/24/12 | 10/25/12 | PowerEdge R320 server | Machinery & Equipment | $ | 2,556.53 | $ | 2,485.35 | $ | 71.18 |
| 09/24/12 | 10/25/12 | PowerEdge R320 server | Machinery & Equipment | $ | 2,556.53 | $ | 2,485.35 | $ | 71.18 |
| 07/23/12 | 11/01/12 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 204.53 | $ | 198.80 | $ | 5.72 |
| 09/21/12 | 11/01/12 | PowerEdge R320 | Machinery & Equipment | $ | 2,205.62 | $ | 2,144.45 | $ | 61.17 |
| 09/24/12 | 11/01/12 | PowerEdge R320 server | Machinery & Equipment | $ | 2,556.53 | $ | 2,485.35 | $ | 71.18 |

| 09/20/12 | 11/08/12 | PowerEdge R320 server | Machinery & Equipment | $ | 2,565.59 | $ | 2,494.45 | $ | 71.14 |
|---|---|---|---|---|---|---|---|---|---|
| 07/23/12 | 11/13/12 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 204.53 | $ | 198.80 | $ | 5.72 |
| 12/31/12 | 11/13/12 | Assembly | Machinery & Equipment | $ | 22.31 | $ | 21.70 | $ | 0.61 |
| 12/31/12 | 11/13/12 | Assembly | Machinery & Equipment | $ | 22.31 | $ | 21.70 | $ | 0.61 |
| 12/31/12 | 11/13/12 | Assembly | Machinery & Equipment | $ | 22.31 | $ | 21.70 | $ | 0.61 |
| 12/31/12 | 11/13/12 | Assembly | Machinery & Equipment | $ | 22.31 | $ | 21.70 | $ | 0.61 |
| 12/31/12 | 11/13/12 | Assembly | Machinery & Equipment | $ | 22.31 | $ | 21.70 | $ | 0.61 |
| 12/31/12 | 11/13/12 | Assembly | Machinery & Equipment | $ | 22.31 | $ | 21.70 | $ | 0.61 |
| 12/31/12 | 11/13/12 | Assembly | Machinery & Equipment | $ | 22.31 | $ | 21.70 | $ | 0.61 |
| 09/20/12 | 11/15/12 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 48.92 | $ | 47.60 | $ | 1.32 |
| 09/21/12 | 11/15/12 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 57.27 | $ | 55.65 | $ | 1.62 |
| 09/27/12 | 11/15/12 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 205.48 | $ | 199.85 | $ | 5.63 |
| 09/27/12 | 11/15/12 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 205.48 | $ | 199.85 | $ | 5.63 |
| 10/29/12 | 11/15/12 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 86.98 | $ | 84.70 | $ | 2.28 |
| 10/29/12 | 11/15/12 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 86.98 | $ | 84.70 | $ | 2.28 |
| 10/29/12 | 11/15/12 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 135.93 | $ | 132.30 | $ | 3.63 |
| 10/29/12 | 11/15/12 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 135.93 | $ | 132.30 | $ | 3.63 |
| 10/29/12 | 11/15/12 | OCZ Vertez 4 128GB SSD SATA-3 | Machinery & Equipment | $ | 114.18 | $ | 110.95 | $ | 3.23 |
| 10/29/12 | 11/15/12 | OCZ Vertez 4 128GB SSD SATA-3 | Machinery & Equipment | $ | 114.18 | $ | 110.95 | $ | 3.23 |
| 10/31/12 | 11/15/12 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 56.02 | $ | 54.60 | $ | 1.42 |
| 10/31/12 | 11/15/12 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 56.02 | $ | 54.60 | $ | 1.42 |
| 12/31/12 | 11/16/12 | Assembly | Machinery & Equipment | $ | 22.31 | $ | 21.08 | $ | 1.23 |
| 12/31/12 | 11/16/12 | Assembly | Machinery & Equipment | $ | 22.31 | $ | 21.08 | $ | 1.23 |

| 12/31/12 | 11/16/12 | Assembly | Machinery & Equipment | $ | 22.31 | $ | 21.08 | $ | 1.23 |
|---|---|---|---|---|---|---|---|---|---|
| 09/02/12 | 11/20/12 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 48.93 | $ | 46.24 | $ | 2.69 |
| 09/02/12 | 11/20/12 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 48.93 | $ | 46.24 | $ | 2.69 |
| 09/02/12 | 11/20/12 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 86.99 | $ | 82.28 | $ | 4.71 |
| 09/02/12 | 11/20/12 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 86.99 | $ | 82.28 | $ | 4.71 |
| 09/02/12 | 11/20/12 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 132.65 | $ | 125.12 | $ | 7.53 |
| 09/02/12 | 11/20/12 | OCZ Vertez 4 128GB SSD SATA-3 | Machinery & Equipment | $ | 108.74 | $ | 102.68 | $ | 6.06 |
| 09/02/12 | 11/20/12 | OCZ Vertez 4 128GB SSD SATA-3 | Machinery & Equipment | $ | 108.74 | $ | 102.68 | $ | 6.06 |
| 09/02/12 | 11/20/12 | OCZ Vertez 4 128GB SSD SATA-3 | Machinery & Equipment | $ | 108.74 | $ | 102.68 | $ | 6.06 |
| 09/02/12 | 11/20/12 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 53.27 | $ | 50.32 | $ | 2.95 |
| 09/02/12 | 11/20/12 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 53.27 | $ | 50.32 | $ | 2.95 |
| 09/05/12 | 11/20/12 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 135.93 | $ | 128.52 | $ | 7.41 |
| 09/05/12 | 11/20/12 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 86.99 | $ | 82.28 | $ | 4.71 |
| 09/05/12 | 11/20/12 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 86.99 | $ | 82.28 | $ | 4.71 |
| 09/05/12 | 11/20/12 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 48.93 | $ | 46.24 | $ | 2.69 |
| 09/05/12 | 11/20/12 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 48.93 | $ | 46.24 | $ | 2.69 |
| 09/05/12 | 11/20/12 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 48.93 | $ | 46.24 | $ | 2.69 |
| 09/05/12 | 11/20/12 | OCZ Vertez 4 128GB SSD SATA-3 | Machinery & Equipment | $ | 108.74 | $ | 102.68 | $ | 6.06 |
| 09/05/12 | 11/20/12 | OCZ Vertez 4 128GB SSD SATA-3 | Machinery & Equipment | $ | 108.74 | $ | 102.68 | $ | 6.06 |
| 09/05/12 | 11/20/12 | OCZ Vertez 4 128GB SSD SATA-3 | Machinery & Equipment | $ | 108.74 | $ | 102.68 | $ | 6.06 |
| 09/05/12 | 11/20/12 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 53.28 | $ | 50.32 | $ | 2.96 |
| 09/05/12 | 11/20/12 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 53.28 | $ | 50.32 | $ | 2.96 |
| 09/06/12 | 11/20/12 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 134.54 | $ | 127.16 | $ | 7.38 |

| 09/06/12 | 11/20/12 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 134.54 | $ | 127.16 | $ | 7.38 |
|---|---|---|---|---|---|---|---|---|---|
| 09/06/12 | 11/20/12 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 134.54 | $ | 127.16 | $ | 7.38 |
| 09/12/12 | 11/20/12 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 86.99 | $ | 82.28 | $ | 4.71 |
| 09/12/12 | 11/20/12 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 86.99 | $ | 82.28 | $ | 4.71 |
| 09/12/12 | 11/20/12 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 50.01 | $ | 47.26 | $ | 2.75 |
| 09/12/12 | 11/20/12 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 50.01 | $ | 47.26 | $ | 2.75 |
| 09/12/12 | 11/20/12 | OCZ Vertez 4 128GB SSD SATA-3 | Machinery & Equipment | $ | 108.74 | $ | 102.68 | $ | 6.06 |
| 09/16/12 | 11/20/12 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 86.99 | $ | 82.28 | $ | 4.71 |
| 09/17/12 | 11/20/12 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 132.65 | $ | 125.12 | $ | 7.53 |
| 09/17/12 | 11/20/12 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 132.65 | $ | 125.12 | $ | 7.53 |
| 09/17/12 | 11/20/12 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 55.32 | $ | 52.36 | $ | 2.96 |
| 09/17/12 | 11/20/12 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 55.32 | $ | 52.36 | $ | 2.96 |
| 09/20/12 | 11/20/12 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 53.51 | $ | 50.66 | $ | 2.85 |
| 12/31/12 | 11/20/12 | Assembly | Machinery & Equipment | $ | 22.31 | $ | 21.08 | $ | 1.23 |
| 09/12/12 | 11/23/12 | OCZ Vertez 4 128GB SSD SATA-3 | Machinery & Equipment | $ | 108.74 | $ | 102.68 | $ | 6.06 |
| 09/12/12 | 11/23/12 | OCZ Vertez 4 128GB SSD SATA-3 | Machinery & Equipment | $ | 108.74 | $ | 102.68 | $ | 6.06 |
| 09/12/12 | 11/23/12 | OCZ Vertez 4 128GB SSD SATA-3 | Machinery & Equipment | $ | 108.74 | $ | 102.68 | $ | 6.06 |
| 09/16/12 | 11/23/12 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 86.99 | $ | 82.28 | $ | 4.71 |
| 09/17/12 | 11/23/12 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 55.32 | $ | 52.36 | $ | 2.96 |
| 09/17/12 | 11/23/12 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 55.32 | $ | 52.36 | $ | 2.96 |
| 09/18/12 | 11/23/12 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 130.69 | $ | 123.42 | $ | 7.27 |
| 09/18/12 | 11/23/12 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 130.69 | $ | 123.42 | $ | 7.27 |
| 09/18/12 | 11/23/12 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 130.69 | $ | 123.42 | $ | 7.27 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 09/18/12 | 11/23/12 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 130.69 | $ | 123.42 | $ | 7.27 |
| 09/20/12 | 11/23/12 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 86.99 | $ | 82.28 | $ | 4.71 |
| 09/20/12 | 11/23/12 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 86.99 | $ | 82.28 | $ | 4.71 |
| 09/20/12 | 11/23/12 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 48.93 | $ | 46.24 | $ | 2.69 |
| 09/20/12 | 11/23/12 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 48.93 | $ | 46.24 | $ | 2.69 |
| 09/20/12 | 11/23/12 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 53.51 | $ | 50.66 | $ | 2.85 |
| 09/20/12 | 11/23/12 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 53.51 | $ | 50.66 | $ | 2.85 |
| 09/20/12 | 11/23/12 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 53.51 | $ | 50.66 | $ | 2.85 |
| 09/20/12 | 11/23/12 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 53.51 | $ | 50.66 | $ | 2.85 |
| 09/20/12 | 11/23/12 | OCZ Vertez 4 128GB SSD SATA-3 | Machinery & Equipment | $ | 111.23 | $ | 105.06 | $ | 6.17 |
| 09/20/12 | 11/23/12 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 86.99 | $ | 82.28 | $ | 4.71 |
| 09/25/12 | 11/23/12 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 202.28 | $ | 191.08 | $ | 11.20 |
| 09/25/12 | 11/23/12 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 202.28 | $ | 191.08 | $ | 11.20 |
| 09/25/12 | 11/23/12 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 202.28 | $ | 191.08 | $ | 11.20 |
| 09/25/12 | 11/23/12 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 202.28 | $ | 191.08 | $ | 11.20 |
| 09/21/12 | 11/26/12 | PowerEdge R320 | Machinery & Equipment | $ | 2,205.62 | $ | 2,083.18 | $ | 122.44 |
| 09/18/12 | 11/27/12 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 130.69 | $ | 123.42 | $ | 7.27 |
| 09/18/12 | 11/27/12 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 130.69 | $ | 123.42 | $ | 7.27 |
| 09/19/12 | 11/27/12 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 133.75 | $ | 126.48 | $ | 7.27 |
| 09/19/12 | 11/27/12 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 133.75 | $ | 126.48 | $ | 7.27 |
| 09/19/12 | 11/27/12 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 133.75 | $ | 126.48 | $ | 7.27 |
| 09/20/12 | 11/27/12 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 48.93 | $ | 46.24 | $ | 2.69 |
| 09/20/12 | 11/27/12 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 48.93 | $ | 46.24 | $ | 2.69 |

| 09/20/12 | 11/27/12 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 48.93 | $ | 46.24 | $ | 2.69 |
|---|---|---|---|---|---|---|---|---|---|
| 09/20/12 | 11/27/12 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 48.93 | $ | 46.24 | $ | 2.69 |
| 09/20/12 | 11/27/12 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 48.93 | $ | 46.24 | $ | 2.69 |
| 09/20/12 | 11/27/12 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 53.51 | $ | 50.66 | $ | 2.85 |
| 09/20/12 | 11/27/12 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 53.51 | $ | 50.66 | $ | 2.85 |
| 09/20/12 | 11/27/12 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 53.51 | $ | 50.66 | $ | 2.85 |
| 09/20/12 | 11/27/12 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 53.51 | $ | 50.66 | $ | 2.85 |
| 09/20/12 | 11/27/12 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 53.50 | $ | 50.66 | $ | 2.84 |
| 09/20/12 | 11/27/12 | OCZ Vertez 4 128GB SSD SATA-3 | Machinery & Equipment | $ | 111.23 | $ | 105.06 | $ | 6.17 |
| 09/20/12 | 11/27/12 | OCZ Vertez 4 128GB SSD SATA-3 | Machinery & Equipment | $ | 111.23 | $ | 105.06 | $ | 6.17 |
| 09/20/12 | 11/27/12 | OCZ Vertez 4 128GB SSD SATA-3 | Machinery & Equipment | $ | 111.23 | $ | 105.06 | $ | 6.17 |
| 09/20/12 | 11/27/12 | OCZ Vertez 4 128GB SSD SATA-3 | Machinery & Equipment | $ | 111.22 | $ | 105.06 | $ | 6.16 |
| 09/20/12 | 11/27/12 | OCZ Vertez 4 128GB SSD SATA-3 | Machinery & Equipment | $ | 111.22 | $ | 105.06 | $ | 6.16 |
| 09/20/12 | 11/27/12 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 86.99 | $ | 82.28 | $ | 4.71 |
| 09/20/12 | 11/27/12 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 86.99 | $ | 82.28 | $ | 4.71 |
| 09/20/12 | 11/27/12 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 86.99 | $ | 82.28 | $ | 4.71 |
| 09/20/12 | 11/27/12 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 86.98 | $ | 82.28 | $ | 4.70 |
| 09/20/12 | 11/27/12 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 86.98 | $ | 82.28 | $ | 4.70 |
| 12/31/12 | 11/27/12 | Assembly | Machinery & Equipment | $ | 22.31 | $ | 21.08 | $ | 1.23 |
| 12/31/12 | 11/27/12 | Assembly | Machinery & Equipment | $ | 22.31 | $ | 21.08 | $ | 1.23 |
| 12/31/12 | 11/27/12 | Assembly | Machinery & Equipment | $ | 22.31 | $ | 21.08 | $ | 1.23 |
| 12/31/12 | 11/27/12 | Assembly | Machinery & Equipment | $ | 22.31 | $ | 21.08 | $ | 1.23 |
| 09/20/12 | 11/28/12 | PowerEdge R320 server | Machinery & Equipment | $ | 2,565.59 | $ | 2,423.18 | $ | 142.41 |

| 09/19/12 | 11/30/12 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 133.75 | $ | 126.48 | $ | 7.27 |
|---|---|---|---|---|---|---|---|---|---|
| 09/19/12 | 11/30/12 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 133.75 | $ | 126.48 | $ | 7.27 |
| 09/20/12 | 11/30/12 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 48.92 | $ | 46.24 | $ | 2.68 |
| 09/20/12 | 11/30/12 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 48.93 | $ | 46.24 | $ | 2.69 |
| 09/20/12 | 11/30/12 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 48.93 | $ | 46.24 | $ | 2.69 |
| 09/20/12 | 11/30/12 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 48.93 | $ | 46.24 | $ | 2.69 |
| 09/20/12 | 11/30/12 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 48.92 | $ | 46.24 | $ | 2.68 |
| 09/20/12 | 11/30/12 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 48.92 | $ | 46.24 | $ | 2.68 |
| 09/21/12 | 11/30/12 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 57.27 | $ | 54.06 | $ | 3.21 |
| 09/21/12 | 11/30/12 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 57.26 | $ | 54.06 | $ | 3.20 |
| 09/21/12 | 11/30/12 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 57.27 | $ | 54.06 | $ | 3.21 |
| 09/21/12 | 11/30/12 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 57.27 | $ | 54.06 | $ | 3.21 |
| 09/27/12 | 11/30/12 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 205.48 | $ | 194.14 | $ | 11.34 |
| 09/27/12 | 11/30/12 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 205.48 | $ | 194.14 | $ | 11.34 |
| 09/27/12 | 11/30/12 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 205.48 | $ | 194.14 | $ | 11.34 |
| 09/27/12 | 11/30/12 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 205.48 | $ | 194.14 | $ | 11.34 |
| 09/27/12 | 11/30/12 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 205.48 | $ | 194.14 | $ | 11.34 |
| 09/27/12 | 11/30/12 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 205.48 | $ | 194.14 | $ | 11.34 |
| 10/29/12 | 11/30/12 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 60.00 | $ | 56.78 | $ | 3.22 |
| 10/29/12 | 11/30/12 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 60.00 | $ | 56.78 | $ | 3.22 |
| 10/29/12 | 11/30/12 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 60.00 | $ | 56.78 | $ | 3.22 |
| 10/29/12 | 11/30/12 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 60.01 | $ | 56.78 | $ | 3.23 |
| 10/29/12 | 11/30/12 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 60.01 | $ | 56.78 | $ | 3.23 |

| 10/29/12 | 11/30/12 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 57.64 | $ | 54.40 | $ | 3.24 |
|---|---|---|---|---|---|---|---|---|---|
| 10/29/12 | 11/30/12 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 86.98 | $ | 82.28 | $ | 4.70 |
| 10/29/12 | 11/30/12 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 86.98 | $ | 82.28 | $ | 4.70 |
| 10/29/12 | 11/30/12 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 86.98 | $ | 82.28 | $ | 4.70 |
| 10/29/12 | 11/30/12 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 86.98 | $ | 82.28 | $ | 4.70 |
| 10/29/12 | 11/30/12 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 86.98 | $ | 82.28 | $ | 4.70 |
| 10/29/12 | 11/30/12 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 86.98 | $ | 82.28 | $ | 4.70 |
| 10/29/12 | 11/30/12 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 86.98 | $ | 82.28 | $ | 4.70 |
| 10/29/12 | 11/30/12 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 135.93 | $ | 128.52 | $ | 7.41 |
| 10/29/12 | 11/30/12 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 135.93 | $ | 128.52 | $ | 7.41 |
| 10/29/12 | 11/30/12 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 135.93 | $ | 128.52 | $ | 7.41 |
| 10/29/12 | 11/30/12 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 135.93 | $ | 128.52 | $ | 7.41 |
| 10/29/12 | 11/30/12 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 135.94 | $ | 128.52 | $ | 7.42 |
| 10/29/12 | 11/30/12 | OCZ Vertez 4 128GB SSD SATA-3 | Machinery & Equipment | $ | 114.18 | $ | 107.78 | $ | 6.40 |
| 10/29/12 | 11/30/12 | OCZ Vertez 4 128GB SSD SATA-3 | Machinery & Equipment | $ | 114.18 | $ | 107.78 | $ | 6.40 |
| 10/29/12 | 11/30/12 | OCZ Vertez 4 128GB SSD SATA-3 | Machinery & Equipment | $ | 114.18 | $ | 107.78 | $ | 6.40 |
| 10/29/12 | 11/30/12 | OCZ Vertez 4 128GB SSD SATA-3 | Machinery & Equipment | $ | 114.18 | $ | 107.78 | $ | 6.40 |
| 10/29/12 | 11/30/12 | OCZ Vertez 4 128GB SSD SATA-3 | Machinery & Equipment | $ | 114.18 | $ | 107.78 | $ | 6.40 |
| 10/29/12 | 11/30/12 | OCZ Vertez 4 128GB SSD SATA-3 | Machinery & Equipment | $ | 114.18 | $ | 107.78 | $ | 6.40 |
| 10/29/12 | 11/30/12 | OCZ Vertez 4 128GB SSD SATA-3 | Machinery & Equipment | $ | 114.18 | $ | 107.78 | $ | 6.40 |
| 10/29/12 | 11/30/12 | OCZ Vertez 4 128GB SSD SATA-3 | Machinery & Equipment | $ | 114.18 | $ | 107.78 | $ | 6.40 |
| 10/29/12 | 11/30/12 | OCZ Vertez 4 128GB SSD SATA-3 | Machinery & Equipment | $ | 114.18 | $ | 107.78 | $ | 6.40 |
| 10/29/12 | 11/30/12 | OCZ Vertez 4 128GB SSD SATA-3 | Machinery & Equipment | $ | 114.18 | $ | 107.78 | $ | 6.40 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 10/31/12 | 11/30/12 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 56.01 | $ | 53.04 | $ | 2.97 |
| 10/31/12 | 11/30/12 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 56.01 | $ | 53.04 | $ | 2.97 |
| 10/31/12 | 11/30/12 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 56.02 | $ | 53.04 | $ | 2.98 |
| 10/31/12 | 11/30/12 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 56.02 | $ | 53.04 | $ | 2.98 |
| 10/31/12 | 11/30/12 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 56.02 | $ | 53.04 | $ | 2.98 |
| 11/14/12 | 11/30/12 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 135.93 | $ | 128.52 | $ | 7.41 |
| 11/14/12 | 11/30/12 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 135.93 | $ | 128.52 | $ | 7.41 |
| 11/14/12 | 11/30/12 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 135.93 | $ | 128.52 | $ | 7.41 |
| 11/14/12 | 11/30/12 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 135.93 | $ | 128.52 | $ | 7.41 |
| 11/14/12 | 11/30/12 | OCZ Vertez 4 128GB SSD SATA-3 | Machinery & Equipment | $ | 130.49 | $ | 123.08 | $ | 7.41 |
| 11/15/12 | 11/30/12 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 55.62 | $ | 52.70 | $ | 2.92 |
| 11/19/12 | 11/30/12 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 86.99 | $ | 82.28 | $ | 4.71 |
| 11/19/12 | 11/30/12 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 86.99 | $ | 82.28 | $ | 4.71 |
| 11/19/12 | 11/30/12 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 86.99 | $ | 82.28 | $ | 4.71 |
| 11/19/12 | 11/30/12 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 86.99 | $ | 82.28 | $ | 4.71 |
| 12/31/12 | 11/30/12 | Assembly | Machinery & Equipment | $ | 22.31 | $ | 21.08 | $ | 1.23 |
| 12/31/12 | 11/30/12 | Assembly | Machinery & Equipment | $ | 22.31 | $ | 21.08 | $ | 1.23 |
| 12/31/12 | 11/30/12 | Assembly | Machinery & Equipment | $ | 22.31 | $ | 21.08 | $ | 1.23 |
| 12/31/12 | 11/30/12 | Assembly | Machinery & Equipment | $ | 22.31 | $ | 21.08 | $ | 1.23 |
| 12/31/12 | 11/30/12 | Assembly | Machinery & Equipment | $ | 22.31 | $ | 21.08 | $ | 1.23 |
| 12/31/12 | 11/30/12 | Assembly | Machinery & Equipment | $ | 22.31 | $ | 21.08 | $ | 1.23 |
| 12/31/12 | 11/30/12 | Assembly | Machinery & Equipment | $ | 22.31 | $ | 21.08 | $ | 1.23 |
| 12/31/12 | 11/30/12 | Assembly | Machinery & Equipment | $ | 22.31 | $ | 21.08 | $ | 1.23 |

| 12/31/12 | 11/30/12 | Assembly | Machinery & Equipment | $ | 22.31 | $ | 21.08 | $ | 1.23 |
|---|---|---|---|---|---|---|---|---|---|
| 09/25/12 | 12/03/12 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 202.28 | $ | 191.08 | $ | 11.20 |
| 10/29/12 | 12/16/12 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 135.93 | $ | 124.74 | $ | 11.19 |
| 11/14/12 | 12/16/12 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 57.63 | $ | 52.80 | $ | 4.83 |
| 11/14/12 | 12/16/12 | OCZ Vertez 4 128GB SSD SATA-3 | Machinery & Equipment | $ | 130.49 | $ | 119.46 | $ | 11.03 |
| 11/15/12 | 12/16/12 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 55.63 | $ | 51.15 | $ | 4.48 |
| 11/30/12 | 12/16/12 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 86.99 | $ | 79.86 | $ | 7.13 |
| 09/20/12 | 01/04/13 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 48.92 | $ | 44.88 | $ | 4.04 |
| 10/29/12 | 01/04/13 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 86.98 | $ | 79.86 | $ | 7.12 |
| 10/29/12 | 01/04/13 | OCZ Vertez 4 128GB SSD SATA-3 | Machinery & Equipment | $ | 114.18 | $ | 104.61 | $ | 9.57 |
| 10/31/12 | 01/04/13 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 56.02 | $ | 51.48 | $ | 4.54 |
| 11/14/12 | 01/04/13 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 135.93 | $ | 124.74 | $ | 11.19 |
| 10/31/12 | 01/25/13 | Intel D2500CCE Atom D2500 Dual LAN & Dual COM mini-itx motherboard | Machinery & Equipment | $ | 140.67 | $ | 125.12 | $ | 15.55 |
| 11/15/12 | 01/25/13 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 55.62 | $ | 49.60 | $ | 6.02 |
| 01/11/13 | 01/25/13 | | Machinery & Equipment | $ | 29.50 | $ | 26.24 | $ | 3.26 |
| 09/27/12 | 01/28/13 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 205.48 | $ | 182.72 | $ | 22.76 |
| 09/27/12 | 01/28/13 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 205.48 | $ | 182.72 | $ | 22.76 |
| 10/09/12 | 01/28/13 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 203.67 | $ | 181.12 | $ | 22.55 |
| 10/09/12 | 01/28/13 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 203.67 | $ | 181.12 | $ | 22.55 |
| 11/14/12 | 01/28/13 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 57.62 | $ | 51.20 | $ | 6.42 |
| 11/14/12 | 01/28/13 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 57.62 | $ | 51.20 | $ | 6.42 |
| 11/14/12 | 01/28/13 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 57.62 | $ | 51.20 | $ | 6.42 |
| 11/14/12 | 01/28/13 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 57.62 | $ | 51.20 | $ | 6.42 |

| 11/14/12 | 01/28/13 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 57.62 | $ | 51.20 | $ | 6.42 |
|---|---|---|---|---|---|---|---|---|---|
| 11/14/12 | 01/28/13 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 135.93 | $ | 120.96 | $ | 14.97 |
| 11/14/12 | 01/28/13 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 135.93 | $ | 120.96 | $ | 14.97 |
| 11/14/12 | 01/28/13 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 135.93 | $ | 120.96 | $ | 14.97 |
| 11/14/12 | 01/28/13 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 135.93 | $ | 120.96 | $ | 14.97 |
| 11/14/12 | 01/28/13 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 135.93 | $ | 120.96 | $ | 14.97 |
| 11/14/12 | 01/28/13 | OCZ Vertez 4 128GB SSD SATA-3 | Machinery & Equipment | $ | 130.49 | $ | 115.84 | $ | 14.65 |
| 11/14/12 | 01/28/13 | OCZ Vertez 4 128GB SSD SATA-3 | Machinery & Equipment | $ | 130.49 | $ | 115.84 | $ | 14.65 |
| 11/14/12 | 01/28/13 | OCZ Vertez 4 128GB SSD SATA-3 | Machinery & Equipment | $ | 130.49 | $ | 115.84 | $ | 14.65 |
| 11/14/12 | 01/28/13 | OCZ Vertez 4 128GB SSD SATA-3 | Machinery & Equipment | $ | 130.49 | $ | 115.84 | $ | 14.65 |
| 11/14/12 | 01/28/13 | OCZ Vertez 4 128GB SSD SATA-3 | Machinery & Equipment | $ | 130.49 | $ | 115.84 | $ | 14.65 |
| 11/15/12 | 01/28/13 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 55.62 | $ | 49.60 | $ | 6.02 |
| 11/15/12 | 01/28/13 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 55.62 | $ | 49.60 | $ | 6.02 |
| 11/15/12 | 01/28/13 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 55.62 | $ | 49.60 | $ | 6.02 |
| 11/15/12 | 01/28/13 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 55.62 | $ | 49.60 | $ | 6.02 |
| 11/15/12 | 01/28/13 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 55.62 | $ | 49.60 | $ | 6.02 |
| 11/19/12 | 01/28/13 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 86.99 | $ | 77.44 | $ | 9.55 |
| 11/19/12 | 01/28/13 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 86.99 | $ | 77.44 | $ | 9.55 |
| 11/19/12 | 01/28/13 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 86.99 | $ | 77.44 | $ | 9.55 |
| 11/19/12 | 01/28/13 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 86.99 | $ | 77.44 | $ | 9.55 |
| 10/09/12 | 01/31/13 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 203.67 | $ | 181.12 | $ | 22.55 |
| 11/14/12 | 01/31/13 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 57.62 | $ | 51.20 | $ | 6.42 |
| 11/14/12 | 01/31/13 | OCZ Vertez 4 128GB SSD SATA-3 | Machinery & Equipment | $ | 130.49 | $ | 115.84 | $ | 14.65 |

| 11/15/12 | 01/31/13 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 55.62 | $ | 49.60 | $ | 6.02 |
|---|---|---|---|---|---|---|---|---|---|
| 11/19/12 | 01/31/13 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 86.99 | $ | 77.44 | $ | 9.55 |
| 11/30/12 | 01/31/13 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 135.93 | $ | 120.96 | $ | 14.97 |
| 11/06/12 | 02/04/13 | PowerEdge R320 server | Machinery & Equipment | $ | 2,455.68 | $ | 2,182.72 | $ | 272.96 |
| 11/06/12 | 02/08/13 | PowerEdge R320 server | Machinery & Equipment | $ | 2,455.68 | $ | 2,182.72 | $ | 272.96 |
| 11/06/12 | 02/27/13 | PowerEdge R320 server | Machinery & Equipment | $ | 2,455.69 | $ | 2,114.51 | $ | 341.18 |
| 10/09/12 | 03/05/13 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 203.67 | $ | 175.46 | $ | 28.21 |
| 11/14/12 | 03/05/13 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 57.62 | $ | 49.60 | $ | 8.02 |
| 11/14/12 | 03/05/13 | OCZ Vertez 4 128GB SSD SATA-3 | Machinery & Equipment | $ | 130.49 | $ | 112.22 | $ | 18.27 |
| 11/15/12 | 03/05/13 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 55.62 | $ | 48.05 | $ | 7.57 |
| 11/19/12 | 03/05/13 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 86.98 | $ | 75.02 | $ | 11.96 |
| 11/30/12 | 03/05/13 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 135.92 | $ | 117.18 | $ | 18.74 |
| 09/21/12 | 03/06/13 | PowerEdge R320 server | Machinery & Equipment | $ | 2,205.62 | $ | 1,899.37 | $ | 306.25 |
| 11/06/12 | 03/06/13 | PowerEdge R320 server | Machinery & Equipment | $ | 2,455.69 | $ | 2,114.51 | $ | 341.18 |
| 11/06/12 | 03/06/13 | PowerEdge R320 server | Machinery & Equipment | $ | 2,455.68 | $ | 2,114.51 | $ | 341.17 |
| 10/09/12 | 03/07/13 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 203.67 | $ | 169.80 | $ | 33.87 |
| 11/14/12 | 03/07/13 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 57.63 | $ | 48.00 | $ | 9.63 |
| 11/15/12 | 03/07/13 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 55.63 | $ | 46.50 | $ | 9.13 |
| 11/30/12 | 03/07/13 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 86.99 | $ | 72.60 | $ | 14.39 |
| 12/02/12 | 03/07/13 | OCZ Vertez 4 128GB SSD SATA-3 | Machinery & Equipment | $ | 143.65 | $ | 119.70 | $ | 23.95 |
| 12/20/12 | 03/07/13 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 79.65 | $ | 66.30 | $ | 13.35 |
| 09/21/12 | 03/13/13 | PowerEdge R320 server | Machinery & Equipment | $ | 2,205.62 | $ | 1,899.37 | $ | 306.25 |
| 09/21/12 | 03/14/13 | PowerEdge R320 server | Machinery & Equipment | $ | 2,205.62 | $ | 1,899.37 | $ | 306.25 |

| 09/21/12 | 03/14/13 | PowerEdge R320 server | Machinery & Equipment | $ | 2,205.62 | $ | 1,899.37 | $ | 306.25 |
|---|---|---|---|---|---|---|---|---|---|
| 11/14/12 | 03/18/13 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 57.62 | $ | 49.60 | $ | 8.02 |
| 11/14/12 | 03/18/13 | OCZ Vertez 4 128GB SSD SATA-3 | Machinery & Equipment | $ | 130.49 | $ | 112.22 | $ | 18.27 |
| 11/15/12 | 03/18/13 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 55.63 | $ | 48.05 | $ | 7.58 |
| 11/30/12 | 03/18/13 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 86.99 | $ | 75.02 | $ | 11.97 |
| 12/20/12 | 03/18/13 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 79.65 | $ | 68.51 | $ | 11.14 |
| 03/23/13 | 03/23/13 | HP ProCurve 5406zl J8697A, 1xJ8702A 24 port Gig POE 1x J8712A PS (for ADVN computer room) | Machinery & Equipment | $ | 1,154.52 | $ | 930.03 | $ | 224.49 |
| 03/23/13 | 03/23/13 | 2 HP J8702A ProCurve 24-Port Gig-T PoE Network Device (for ADVN computer room) | Machinery & Equipment | $ | 981.00 | $ | 790.25 | $ | 190.75 |
| 11/07/12 | 03/28/13 | PowerEdge R320 server | Machinery & Equipment | $ | 2,431.13 | $ | 1,958.37 | $ | 472.76 |
| 03/28/13 | 03/28/13 | HIS Fusion Box for India | Machinery & Equipment | $ | 689.85 | $ | 555.64 | $ | 134.21 |
| 10/09/12 | 04/15/13 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 203.67 | $ | 164.14 | $ | 39.53 |
| 11/15/12 | 04/15/13 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 55.63 | $ | 44.95 | $ | 10.68 |
| 11/30/12 | 04/15/13 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 57.63 | $ | 46.40 | $ | 11.23 |
| 11/30/12 | 04/15/13 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 86.99 | $ | 70.18 | $ | 16.81 |
| 12/02/12 | 04/15/13 | OCZ Vertez 4 128GB SSD SATA-3 | Machinery & Equipment | $ | 143.65 | $ | 115.71 | $ | 27.94 |
| 12/20/12 | 04/15/13 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 79.65 | $ | 64.09 | $ | 15.56 |
| 04/24/13 | 04/24/13 | OpenMesh Routers for Testing | Machinery & Equipment | $ | 552.52 | $ | 445.15 | $ | 107.37 |
| 09/17/12 | 04/30/13 | Intel i3 3220 Socket 1155 CPU | Machinery & Equipment | $ | 148.63 | $ | 119.77 | $ | 28.86 |
| 10/09/12 | 04/30/13 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 203.67 | $ | 164.14 | $ | 39.53 |
| 11/15/12 | 04/30/13 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 55.63 | $ | 44.95 | $ | 10.68 |
| 11/30/12 | 04/30/13 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 86.99 | $ | 70.18 | $ | 16.81 |
| 12/02/12 | 04/30/13 | OCZ Vertez 4 128GB SSD SATA-3 | Machinery & Equipment | $ | 143.65 | $ | 115.71 | $ | 27.94 |
| 12/20/12 | 04/30/13 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 26.08 | $ | 20.88 | $ | 5.20 |

| 09/17/12 | 05/20/13 | Intel i3 3220 Socket 1155 CPU | Machinery & Equipment | $ 148.63 | $ 119.77 | $ 28.86 |
| 10/09/12 | 05/20/13 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ 203.68 | $ 164.14 | $ 39.54 |
| 11/15/12 | 05/20/13 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ 55.63 | $ 44.95 | $ 10.68 |
| 12/02/12 | 05/20/13 | OCZ Vertez 4 128GB SSD SATA-3 | Machinery & Equipment | $ 143.65 | $ 115.71 | $ 27.94 |
| 12/20/12 | 05/20/13 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ 26.08 | $ 20.88 | $ 5.20 |
| 12/20/12 | 05/20/13 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ 86.99 | $ 70.18 | $ 16.81 |
| 03/05/13 | 06/21/13 | PowerEdge R320 server | Machinery & Equipment | $ 2,351.30 | $ 1,828.68 | $ 522.62 |
| 10/09/12 | 06/25/13 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ 203.68 | $ 158.48 | $ 45.20 |
| 11/15/12 | 06/25/13 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ 55.63 | $ 43.40 | $ 12.23 |
| 12/20/12 | 06/25/13 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ 86.99 | $ 67.76 | $ 19.23 |
| 12/20/12 | 06/25/13 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ 26.08 | $ 20.16 | $ 5.92 |
| 01/08/13 | 06/25/13 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ 87.19 | $ 67.76 | $ 19.43 |
| 05/28/13 | 06/25/13 | Sandisk Extreme 120 GB SATA | Machinery & Equipment | $ 113.37 | $ 88.20 | $ 25.17 |
| 09/17/12 | 07/22/13 | Intel i3 3220 Socket 1155 CPU | Machinery & Equipment | $ 148.63 | $ 111.51 | $ 37.12 |
| 10/09/12 | 07/22/13 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ 203.68 | $ 152.82 | $ 50.86 |
| 11/15/12 | 07/22/13 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ 55.63 | $ 41.85 | $ 13.78 |
| 01/08/13 | 07/22/13 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ 56.67 | $ 42.39 | $ 14.28 |
| 01/08/13 | 07/22/13 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ 136.24 | $ 102.06 | $ 34.18 |
| 05/28/13 | 07/22/13 | Sandisk Extreme 120 GB SATA | Machinery & Equipment | $ 113.37 | $ 85.05 | $ 28.32 |
| 07/23/12 | 08/07/13 | 4 Port Copper 1G PCI-E G2 Bypass Server Adapter | Machinery & Equipment | $ 424.13 | $ 306.28 | $ 117.85 |
| 08/26/12 | | Corsair XMS3 4 GB 1333MHz PC3-10666 240-pin DDR3 Memory kit | Machinery & Equipment | $ 25.00 | $ - | $ 25.00 |
| 08/26/12 | | Corsair XMS3 4 GB 1333MHz PC3-10666 240-pin DDR3 Memory kit | Machinery & Equipment | $ 25.00 | $ - | $ 25.00 |
| 08/30/12 | | 4GB 2RX8 PC3-10600E - 9 Kit | Machinery & Equipment | $ 70.69 | $ - | $ 70.69 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 08/30/12 | | 4GB 2RX8 PC3-10600E - 9 Kit | Machinery & Equipment | $ | 70.69 | $ | - | $ | 70.69 |
| 09/20/12 | | PowerEdge R320 server | Machinery & Equipment | $ | 2,565.59 | $ | - | $ | 2,565.59 |
| 09/21/12 | | PowerEdge R320 server | Machinery & Equipment | $ | 2,205.62 | $ | - | $ | 2,205.62 |
| 10/09/12 | 09/20/13 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 203.68 | $ | 141.50 | $ | 62.18 |
| 10/09/12 | 10/11/13 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 203.68 | $ | 135.84 | $ | 67.84 |
| 10/09/12 | | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 203.68 | $ | - | $ | 203.68 |
| 10/09/12 | | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 203.68 | $ | - | $ | 203.68 |
| 10/09/12 | | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 203.68 | $ | - | $ | 203.68 |
| 11/07/12 | 04/05/13 | PowerEdge R320 server | Machinery & Equipment | $ | 2,431.12 | $ | 2,025.90 | $ | 405.22 |
| 11/07/12 | 04/05/13 | PowerEdge R320 server | Machinery & Equipment | $ | 2,504.79 | $ | 2,087.40 | $ | 417.39 |
| 11/13/12 | | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 182.70 | $ | - | $ | 182.70 |
| 11/13/12 | | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 182.70 | $ | - | $ | 182.70 |
| 11/13/12 | | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 182.70 | $ | - | $ | 182.70 |
| 11/13/12 | | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 182.70 | $ | - | $ | 182.70 |
| 11/15/12 | 08/07/13 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 55.63 | $ | 40.30 | $ | 15.33 |
| 11/15/12 | 09/20/13 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 55.63 | $ | 38.75 | $ | 16.88 |
| 11/15/12 | 10/11/13 | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 55.63 | $ | 37.20 | $ | 18.43 |
| 12/02/12 | | OCZ Vertez 4 128GB SSD SATA-3 | Machinery & Equipment | $ | 143.65 | $ | - | $ | 143.65 |
| 12/02/12 | | OCZ Vertez 4 128GB SSD SATA-3 | Machinery & Equipment | $ | 143.65 | $ | - | $ | 143.65 |
| 12/20/12 | | WD 250 GB Desktop Hard Drive | Machinery & Equipment | $ | 58.90 | $ | - | $ | 58.90 |
| 12/20/12 | | WD 250 GB Desktop Hard Drive | Machinery & Equipment | $ | 58.90 | $ | - | $ | 58.90 |
| 12/20/12 | | WD 250 GB Desktop Hard Drive | Machinery & Equipment | $ | 58.90 | $ | - | $ | 58.90 |
| 12/26/12 | | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 165.16 | $ | - | $ | 165.16 |

| 12/26/12 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 165.16 | $ | - | $ | 165.16 |
|---|---|---|---|---|---|---|---|---|
| 12/26/12 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 165.16 | $ | - | $ | 165.16 |
| 12/26/12 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 165.16 | $ | - | $ | 165.16 |
| 12/26/12 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 165.16 | $ | - | $ | 165.16 |
| 12/26/12 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 165.16 | $ | - | $ | 165.16 |
| 12/26/12 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 165.16 | $ | - | $ | 165.16 |
| 12/26/12 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 165.16 | $ | - | $ | 165.16 |
| 12/26/12 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 165.16 | $ | - | $ | 165.16 |
| 12/26/12 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 165.16 | $ | - | $ | 165.16 |
| 12/26/12 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 165.16 | $ | - | $ | 165.16 |
| 12/26/12 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 165.16 | $ | - | $ | 165.16 |
| 12/26/12 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 165.16 | $ | - | $ | 165.16 |
| 12/26/12 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 165.16 | $ | - | $ | 165.16 |
| 12/26/12 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 165.17 | $ | - | $ | 165.17 |
| 12/26/12 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 165.17 | $ | - | $ | 165.17 |
| 12/26/12 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 165.17 | $ | - | $ | 165.17 |
| 12/26/12 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 165.17 | $ | - | $ | 165.17 |
| 12/26/12 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 165.17 | $ | - | $ | 165.17 |
| 12/26/12 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 165.17 | $ | - | $ | 165.17 |
| 12/26/12 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 165.17 | $ | - | $ | 165.17 |
| 12/26/12 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 165.17 | $ | - | $ | 165.17 |
| 12/26/12 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 165.17 | $ | - | $ | 165.17 |
| 12/26/12 | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ | 165.17 | $ | - | $ | 165.17 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 12/26/12 | | Silicom Dual Port Bypass NIC | Machinery & Equipment | $ 165.17 | $ - | $ 165.17 |
| 12/31/12 | | Assembly | Machinery & Equipment | $ 22.31 | $ - | $ 22.31 |
| 12/31/12 | | Assembly | Machinery & Equipment | $ 22.31 | $ - | $ 22.31 |
| 01/08/13 | | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ 906.72 | $ - | $ 906.72 |
| 01/08/13 | 09/20/13 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ 56.67 | $ 39.25 | $ 17.42 |
| 01/08/13 | 08/07/13 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ 56.67 | $ 39.25 | $ 17.42 |
| 01/08/13 | 10/11/13 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ 56.67 | $ 37.68 | $ 18.99 |
| 01/08/13 | | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ 2,179.84 | $ - | $ 2,179.84 |
| 01/08/13 | 09/20/13 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ 136.24 | $ 94.50 | $ 41.74 |
| 01/08/13 | 08/07/13 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ 136.24 | $ 94.50 | $ 41.74 |
| 01/08/13 | 10/11/13 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ 136.24 | $ 90.72 | $ 45.52 |
| 01/08/13 | 08/07/13 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ 87.19 | $ 62.92 | $ 24.27 |
| 01/08/13 | 09/20/13 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ 87.19 | $ 60.50 | $ 26.69 |
| 01/08/13 | 10/11/13 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ 87.19 | $ 58.08 | $ 29.11 |
| 01/08/13 | | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ 87.19 | $ - | $ 87.19 |
| 01/08/13 | | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ 87.19 | $ - | $ 87.19 |
| 01/08/13 | | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ 87.19 | $ - | $ 87.19 |
| 01/08/13 | | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ 87.19 | $ - | $ 87.19 |
| 01/08/13 | | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ 87.19 | $ - | $ 87.19 |
| 01/08/13 | | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ 87.19 | $ - | $ 87.19 |
| 01/08/13 | | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ 87.19 | $ - | $ 87.19 |
| 01/08/13 | | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ 87.19 | $ - | $ 87.19 |
| 01/08/13 | | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ 87.19 | $ - | $ 87.19 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 01/08/13 | | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 87.19 | $ | - | $ | 87.19 |
| 01/08/13 | | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 87.19 | $ | - | $ | 87.19 |
| 01/08/13 | | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 87.19 | $ | - | $ | 87.19 |
| 01/08/13 | | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 87.19 | $ | - | $ | 87.19 |
| 01/08/13 | | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 87.19 | $ | - | $ | 87.19 |
| 01/08/13 | | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 87.19 | $ | - | $ | 87.19 |
| 01/08/13 | | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 87.19 | $ | - | $ | 87.19 |
| 01/08/13 | | OCZ Vertez 4 128GB SSD SATA-3 | Machinery & Equipment | $ | 2,615.80 | $ | - | $ | 2,615.80 |
| 02/15/13 | | Cybertron Apex MI-008 Atom D2500 | Machinery & Equipment | $ | 8,128.24 | $ | - | $ | 8,128.24 |
| 01/17/13 | | Cybertron Apex MI-008 Atom D2500 | Machinery & Equipment | $ | 8,128.24 | $ | - | $ | 8,128.24 |
| 01/11/13 | | Foxconn H61S LGA 1155 Intel H61 Mini ITX Intel Motherboard | Machinery & Equipment | $ | 56.75 | $ | - | $ | 56.75 |
| 01/11/13 | | Intel Celeron G540 Sandy Bridge 2.5GHz LGA 1155 65W Dual-Core Desktop Processor Intel HD Graphics BX80623G540 | Machinery & Equipment | $ | 56.75 | $ | - | $ | 56.75 |
| 01/14/13 | | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 160.89 | $ | - | $ | 160.89 |
| 01/14/13 | | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 160.89 | $ | - | $ | 160.89 |
| 01/14/13 | | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 160.89 | $ | - | $ | 160.89 |
| 01/14/13 | | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 268.15 | $ | - | $ | 268.15 |
| 02/16/13 | 02/16/13 | 3 Computers for new employees and QA | Machinery & Equipment | $ | 2,224.00 | $ | 1,976.96 | $ | 247.04 |
| 01/17/13 | | Cybertron Apex MI-008 Atom D2500 | Machinery & Equipment | $ | 8,128.24 | $ | - | $ | 8,128.24 |
| 03/05/13 | | PowerEdge R320 server | Machinery & Equipment | $ | 2,351.30 | $ | - | $ | 2,351.30 |
| 03/05/13 | | PowerEdge R320 server | Machinery & Equipment | $ | 2,351.30 | $ | - | $ | 2,351.30 |
| 03/05/13 | 10/09/13 | PowerEdge R320 server | Machinery & Equipment | $ | 2,351.30 | $ | 1,567.44 | $ | 783.86 |
| 03/05/13 | | PowerEdge R320 server | Machinery & Equipment | $ | 2,351.30 | $ | - | $ | 2,351.30 |
| 03/05/13 | | PowerEdge R320 server | Machinery & Equipment | $ | 2,351.30 | $ | - | $ | 2,351.30 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 03/05/13 | | PowerEdge R320 server | Machinery & Equipment | $ | 2,351.30 | $ | - | $ | 2,351.30 |
| 03/05/13 | 10/09/13 | PowerEdge R320 server | Machinery & Equipment | $ | 2,351.30 | $ | 1,567.44 | $ | 783.86 |
| 03/05/13 | | PowerEdge R320 server | Machinery & Equipment | $ | 2,351.30 | $ | - | $ | 2,351.30 |
| 03/05/13 | | PowerEdge R320 server | Machinery & Equipment | $ | 2,351.30 | $ | - | $ | 2,351.30 |
| 03/05/13 | | PowerEdge R320 server | Machinery & Equipment | $ | 2,351.30 | $ | - | $ | 2,351.30 |
| 03/05/13 | | PowerEdge R320 server | Machinery & Equipment | $ | 2,351.30 | $ | - | $ | 2,351.30 |
| 05/28/13 | | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 77.37 | $ | - | $ | 77.37 |
| 05/28/13 | | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 77.37 | $ | - | $ | 77.37 |
| 05/28/13 | | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 77.37 | $ | - | $ | 77.37 |
| 05/28/13 | | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 77.37 | $ | - | $ | 77.37 |
| 05/28/13 | | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 77.37 | $ | - | $ | 77.37 |
| 05/28/13 | | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 77.37 | $ | - | $ | 77.37 |
| 05/28/13 | | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 77.37 | $ | - | $ | 77.37 |
| 05/28/13 | | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 77.37 | $ | - | $ | 77.37 |
| 05/28/13 | | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 77.37 | $ | - | $ | 77.37 |
| 05/28/13 | | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 77.37 | $ | - | $ | 77.37 |
| 05/28/13 | 08/07/13 | Sandisk Extreme 120 GB SATA | Machinery & Equipment | $ | 113.37 | $ | 81.90 | $ | 31.47 |
| 05/28/13 | 09/20/13 | Sandisk Extreme 120 GB SATA | Machinery & Equipment | $ | 113.37 | $ | 78.75 | $ | 34.62 |
| 05/28/13 | 10/11/13 | Sandisk Extreme 120 GB SATA | Machinery & Equipment | $ | 113.37 | $ | 75.60 | $ | 37.77 |
| 05/28/13 | | Sandisk Extreme 120 GB SATA | Machinery & Equipment | $ | 113.37 | $ | - | $ | 113.37 |
| 05/28/13 | | Sandisk Extreme 120 GB SATA | Machinery & Equipment | $ | 113.37 | $ | - | $ | 113.37 |
| 05/28/13 | | Sandisk Extreme 120 GB SATA | Machinery & Equipment | $ | 113.37 | $ | - | $ | 113.37 |
| 05/28/13 | | Sandisk Extreme 120 GB SATA | Machinery & Equipment | $ | 113.37 | $ | - | $ | 113.37 |

| 05/28/13 | Sandisk Extreme 120 GB SATA | Machinery & Equipment | $ | 113.37 | $ | - | $ | 113.37 |
|----------|------------------------------|------------------------|---|--------|---|---|---|--------|
| 05/28/13 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 134.44 | $ | - | $ | 134.44 |
| 05/28/13 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 134.44 | $ | - | $ | 134.44 |
| 05/28/13 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 134.44 | $ | - | $ | 134.44 |
| 05/28/13 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 134.44 | $ | - | $ | 134.44 |
| 05/28/13 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 134.44 | $ | - | $ | 134.44 |
| 05/28/13 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 134.44 | $ | - | $ | 134.44 |
| 05/28/13 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 134.44 | $ | - | $ | 134.44 |
| 05/28/13 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 134.44 | $ | - | $ | 134.44 |
| 05/28/13 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 134.44 | $ | - | $ | 134.44 |
| 05/28/13 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 134.44 | $ | - | $ | 134.44 |
| 05/28/13 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 134.44 | $ | - | $ | 134.44 |
| 05/28/13 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 134.44 | $ | - | $ | 134.44 |
| 05/28/13 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 134.44 | $ | - | $ | 134.44 |
| 05/28/13 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 134.44 | $ | - | $ | 134.44 |
| 05/28/13 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 134.44 | $ | - | $ | 134.44 |
| 05/28/13 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 134.44 | $ | - | $ | 134.44 |
| 05/28/13 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 134.44 | $ | - | $ | 134.44 |
| 05/28/13 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 134.44 | $ | - | $ | 134.44 |
| 05/28/13 | Intel i3 2120 Socket 1155 CPU | Machinery & Equipment | $ | 134.44 | $ | - | $ | 134.44 |
| 05/28/13 | Sandisk Extreme 120 GB SATA | Machinery & Equipment | $ | 113.37 | $ | - | $ | 113.37 |
| 05/28/13 | Sandisk Extreme 120 GB SATA | Machinery & Equipment | $ | 113.37 | $ | - | $ | 113.37 |

| 05/28/13 | Sandisk Extreme 120 GB SATA | Machinery & Equipment | $ | 113.37 | $ | - | $ | 113.37 |
|---|---|---|---|---|---|---|---|---|
| 05/28/13 | Sandisk Extreme 120 GB SATA | Machinery & Equipment | $ | 113.37 | $ | - | $ | 113.37 |
| 05/28/13 | Sandisk Extreme 120 GB SATA | Machinery & Equipment | $ | 113.37 | $ | - | $ | 113.37 |
| 05/28/13 | Sandisk Extreme 120 GB SATA | Machinery & Equipment | $ | 113.37 | $ | - | $ | 113.37 |
| 05/28/13 | Sandisk Extreme 120 GB SATA | Machinery & Equipment | $ | 113.37 | $ | - | $ | 113.37 |
| 05/28/13 | Sandisk Extreme 120 GB SATA | Machinery & Equipment | $ | 113.37 | $ | - | $ | 113.37 |
| 05/28/13 | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 77.38 | $ | - | $ | 77.38 |
| 05/28/13 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 83.92 | $ | - | $ | 83.92 |
| 05/28/13 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 83.92 | $ | - | $ | 83.92 |
| 05/28/13 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 83.92 | $ | - | $ | 83.92 |
| 05/28/13 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 83.92 | $ | - | $ | 83.92 |
| 05/28/13 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 82.24 | $ | - | $ | 82.24 |
| 05/28/13 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 82.24 | $ | - | $ | 82.24 |
| 05/28/13 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 82.24 | $ | - | $ | 82.24 |
| 05/28/13 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 82.24 | $ | - | $ | 82.24 |
| 05/28/13 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 82.24 | $ | - | $ | 82.24 |
| 05/28/13 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 82.24 | $ | - | $ | 82.24 |
| 05/28/13 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 82.24 | $ | - | $ | 82.24 |
| 05/28/13 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 82.24 | $ | - | $ | 82.24 |
| 05/28/13 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 82.24 | $ | - | $ | 82.24 |
| 05/28/13 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 82.24 | $ | - | $ | 82.24 |
| 05/28/13 | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 82.24 | $ | - | $ | 82.24 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 05/28/13 | | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 82.24 | $ | - | $ | 82.24 |
| 05/28/13 | | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 82.24 | $ | - | $ | 82.24 |
| 05/28/13 | | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 82.24 | $ | - | $ | 82.24 |
| 05/28/13 | | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ | 82.24 | $ | - | $ | 82.24 |
| 05/30/13 | | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 58.96 | $ | - | $ | 58.96 |
| 05/30/13 | | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 58.96 | $ | - | $ | 58.96 |
| 05/30/13 | | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 58.96 | $ | - | $ | 58.96 |
| 05/28/13 | | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 58.96 | $ | - | $ | 58.96 |
| 05/28/13 | | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 58.96 | $ | - | $ | 58.96 |
| 05/28/13 | | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 58.96 | $ | - | $ | 58.96 |
| 05/28/13 | | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 58.96 | $ | - | $ | 58.96 |
| 05/30/13 | | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 58.97 | $ | - | $ | 58.97 |
| 05/30/13 | | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 58.97 | $ | - | $ | 58.97 |
| 05/17/13 | 05/17/13 | APC SMX3000RMLV2UNC X 3000VA Rack/Tower LCD 100-127V Smart-UPS with Network Card | Machinery & Equipment | $ | 1,688.20 | $ | 1,359.81 | $ | 328.39 |
| 05/18/13 | | APC Smart-UPS SMX1500RM2U X 1200W/1500VA LCD 120V 2U/Tower UPS System | Machinery & Equipment | $ | 713.94 | $ | - | $ | 713.94 |
| 05/30/13 | | Supermicro SuperServer Atom D525 1U Rackmount Server Barebone System, Black SYS-5015A-EHF-D525 | Machinery & Equipment | $ | 367.86 | $ | - | $ | 367.86 |
| 05/28/13 | | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 77.38 | $ | - | $ | 77.38 |
| 05/28/13 | | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 77.38 | $ | - | $ | 77.38 |
| 05/28/13 | | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 77.38 | $ | - | $ | 77.38 |
| 05/28/13 | | Crucial 8GB DDR3 DIMMs | Machinery & Equipment | $ | 77.38 | $ | - | $ | 77.38 |
| 06/02/13 | | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 58.96 | $ | - | $ | 58.96 |
| 06/02/13 | | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 58.96 | $ | - | $ | 58.96 |
| 06/02/13 | | SuperCase Micro ITX Chassis | Machinery & Equipment | $ | 58.96 | $ | - | $ | 58.96 |

| Date | Date | Description | Category | Amount | Amount | Amount |
|---|---|---|---|---|---|---|
| 06/02/13 | | SuperCase Micro ITX Chassis | Machinery & Equipment | $ 58.96 | $ - | $ 58.96 |
| 06/02/13 | | SuperCase Micro ITX Chassis | Machinery & Equipment | $ 58.96 | $ - | $ 58.96 |
| 06/03/13 | | SuperCase Micro ITX Chassis | Machinery & Equipment | $ 58.96 | $ - | $ 58.96 |
| 06/03/13 | | SuperCase Micro ITX Chassis | Machinery & Equipment | $ 58.96 | $ - | $ 58.96 |
| 06/03/13 | | SuperCase Micro ITX Chassis | Machinery & Equipment | $ 58.96 | $ - | $ 58.96 |
| 06/03/13 | | SuperCase Micro ITX Chassis | Machinery & Equipment | $ 58.96 | $ - | $ 58.96 |
| 06/03/13 | | SuperCase Micro ITX Chassis | Machinery & Equipment | $ 58.96 | $ - | $ 58.96 |
| 06/07/13 | | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ 86.63 | $ - | $ 86.63 |
| 06/07/13 | | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ 86.63 | $ - | $ 86.63 |
| 06/07/13 | | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ 86.63 | $ - | $ 86.63 |
| 06/07/13 | | | Machinery & Equipment | $ 86.63 | $ - | $ 86.63 |
| 05/28/13 | | Sandisk Extreme 120 GB SATA | Machinery & Equipment | $ 113.37 | $ - | $ 113.37 |
| 07/15/13 | | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ 83.92 | $ - | $ 83.92 |
| 07/15/13 | | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ 83.92 | $ - | $ 83.92 |
| 07/15/13 | | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ 83.92 | $ - | $ 83.92 |
| 07/15/13 | | GigaByte Intel socket 1155 ITX motherboard | Machinery & Equipment | $ 83.92 | $ 60.58 | $ 23.34 |
| 08/03/13 | 08/03/13 | E-Port Plus, 130W Advanced Por 1 Replicator, USB 3.0 for Latitude E-Family, Customer Kit | Machinery & Equipment | $ 159.12 | $ 114.92 | $ 44.20 |
| 08/03/13 | 08/03/13 | Microsoft Corporation Download-Microsoft Office Home & AMP Business 2013 | Machinery & Equipment | $ 359.99 | $ 260.00 | $ 99.99 |
| 08/03/13 | 08/03/13 | Dell Latitude E5530, | Machinery & Equipment | $ 1,053.56 | $ 761.02 | $ 292.54 |
| 08/03/13 | 08/03/13 | Ipad 2, Ipad 4 Ipad Mini | Machinery & Equipment | $ 1,349.67 | $ 974.76 | $ 374.91 |
| 08/05/13 | 08/05/13 | Sony Xperia Z SGP311U1/B 10.1 Inch 16GB Tablet | Machinery & Equipment | $ 537.19 | $ 387.92 | $ 149.27 |
| 08/05/13 | 08/05/13 | Kindle Fire HD 7", DIby Audio Dual Band WiFi 16GB | Machinery & Equipment | $ 172.15 | $ 124.28 | $ 47.87 |
| 08/05/13 | 08/05/13 | LG E960 Google Nexus 4 Unlocked GSM Phone 16GB International Version | Machinery & Equipment | $ 418.72 | $ 302.38 | $ 116.34 |

| 08/05/13 | 08/05/13 | ASUS Google Nexus 7 Android Tablet | Machinery & Equipment | $ | 216.00 | $ | 156.00 | $ | 60.00 |
|---|---|---|---|---|---|---|---|---|---|
| 08/05/13 | 08/05/13 | Microsoft Corporation Download-Microsoft Office Home & AMP Business 2013 | Machinery & Equipment | $ | 439.98 | $ | 317.72 | $ | 122.26 |
| 08/14/13 | 08/14/13 | E-Port Plus, 130W Advanced Por 1 Replicator, USB 3.0 for Latitude E-Family, Customer Kit | Machinery & Equipment | $ | 392.38 | $ | 283.40 | $ | 108.98 |
| 08/14/13 | 08/14/13 | Dell Latitude E5530, | Machinery & Equipment | $ | 2,085.35 | $ | 1,506.18 | $ | 579.17 |
| 09/03/13 | | Gigabyte GA-H61N-USB3 Intel H61 Express Chipset Mini ITX DDR3 800 Intel-LGA 1155 Motherboard | Machinery & Equipment | $ | 348.76 | $ | - | $ | 348.76 |
| 09/10/13 | 09/09/13 | Dell Latitude E5530, | Machinery & Equipment | $ | 1,937.81 | $ | 1,345.75 | $ | 592.06 |
| 10/25/13 | | Dual Port Bypass Network Adapter 82580LP | Machinery & Equipment | $ | 150.56 | $ | - | $ | 150.56 |
| 10/25/13 | | Dual Port Bypass Network Adapter 82580LP | Machinery & Equipment | $ | 150.56 | $ | - | $ | 150.56 |
| 10/25/13 | | Dual Port Bypass Network Adapter 82580LP | Machinery & Equipment | $ | 150.56 | $ | - | $ | 150.56 |
| 10/25/13 | | Dual Port Bypass Network Adapter 82580LP | Machinery & Equipment | $ | 150.56 | $ | - | $ | 150.56 |
| 10/25/13 | | Dual Port Bypass Network Adapter 82580LP | Machinery & Equipment | $ | 150.56 | $ | - | $ | 150.56 |
| 10/25/13 | | Dual Port Bypass Network Adapter 82580LP | Machinery & Equipment | $ | 150.56 | $ | - | $ | 150.56 |
| 10/25/13 | | Dual Port Bypass Network Adapter 82580LP | Machinery & Equipment | $ | 150.56 | $ | - | $ | 150.56 |
| 10/25/13 | | Dual Port Bypass Network Adapter 82580LP | Machinery & Equipment | $ | 150.56 | $ | - | $ | 150.56 |
| 10/25/13 | | Dual Port Bypass Network Adapter 82580LP | Machinery & Equipment | $ | 150.56 | $ | - | $ | 150.56 |
| 10/25/13 | | Dual Port Bypass Network Adapter 82580LP | Machinery & Equipment | $ | 150.56 | $ | - | $ | 150.56 |
| 10/25/13 | | Dual Port Bypass Network Adapter 82580LP | Machinery & Equipment | $ | 150.56 | $ | - | $ | 150.56 |
| 10/25/13 | | Dual Port Bypass Network Adapter 82580LP | Machinery & Equipment | $ | 150.56 | $ | - | $ | 150.56 |
| 10/25/13 | | Dual Port Bypass Network Adapter 82580LP | Machinery & Equipment | $ | 150.56 | $ | - | $ | 150.56 |
| 10/25/13 | | Dual Port Bypass Network Adapter 82580LP | Machinery & Equipment | $ | 150.56 | $ | - | $ | 150.56 |
| 10/25/13 | | Dual Port Bypass Network Adapter 82580LP | Machinery & Equipment | $ | 150.56 | $ | - | $ | 150.56 |
| 10/25/13 | | Dual Port Bypass Network Adapter 82580LP | Machinery & Equipment | $ | 150.56 | $ | - | $ | 150.56 |
| 10/25/13 | | Dual Port Bypass Network Adapter 82580LP | Machinery & Equipment | $ | 150.56 | $ | - | $ | 150.56 |

| Date | Description | Category | | | |
|---|---|---|---|---|---|
| 10/25/13 | Dual Port Bypass Network Adapter 82580LP | Machinery & Equipment | $ 150.56 | $ - | $ 150.56 |
| 10/25/13 | Dual Port Bypass Network Adapter 82580LP | Machinery & Equipment | $ 150.56 | $ - | $ 150.56 |
| 10/25/13 | Dual Port Bypass Network Adapter 82580LP | Machinery & Equipment | $ 150.56 | $ - | $ 150.56 |
| 10/25/13 | Dual Port Bypass Network Adapter 82580LP | Machinery & Equipment | $ 150.56 | $ - | $ 150.56 |
| 10/25/13 | Dual Port Bypass Network Adapter 82580LP | Machinery & Equipment | $ 150.56 | $ - | $ 150.56 |
| 10/25/13 | Dual Port Bypass Network Adapter 82580LP | Machinery & Equipment | $ 150.56 | $ - | $ 150.56 |
| 10/25/13 | Dual Port Bypass Network Adapter 82580LP | Machinery & Equipment | $ 150.56 | $ - | $ 150.56 |
| 10/25/13 | Dual Port Bypass Network Adapter 82580LP | Machinery & Equipment | $ 150.56 | $ - | $ 150.56 |
| 07/24/13 | Gigabyte GA-H61N-USB3 Intel H61 express Chipset Mini ITX DDR3 800 Intel LGA Motherboard | Machinery & Equipment | $ 83.92 | $ - | $ 83.92 |
| 07/24/13 | Gigabyte GA-H61N-USB3 Intel H61 express Chipset Mini ITX DDR3 800 Intel LGA Motherboard | Machinery & Equipment | $ 83.92 | $ - | $ 83.92 |
| 07/24/13 | Gigabyte GA-H61N-USB3 Intel H61 express Chipset Mini ITX DDR3 800 Intel LGA Motherboard | Machinery & Equipment | $ 83.92 | $ - | $ 83.92 |
| 07/24/13 | Gigabyte GA-H61N-USB3 Intel H61 express Chipset Mini ITX DDR3 800 Intel LGA Motherboard | Machinery & Equipment | $ 83.92 | $ - | $ 83.92 |

| | | | | | |
|---|---|---|---|---|---|
| **Machinery & Equipment** | | | **$183,144.82** | **$ 90,758.72** | **$ 92,724.81** |
| **GRAND TOTAL** | | | | | **$ 120,921.34** |

[1] Most FFE placed in service at locations where the
Debtor's advertising platform is deployed, including:

**Location**

Transbeam, Inc.

ADVN Ravi Test

Brad Test Lab

CommSpeed, LLC

DesertGate Internet

FAO WiFi Guys-Bloomington MN CY

FAO WiFi Guys-Bloomington MN RI

FAO WiFi Guys-Burnsville MN LI

FAO WiFi Guys-Burnsville MN LI

FAO WiFi Guys-Eagan MN SS

FAO WiFi Guys-Eagan MN TS

FAO WiFi Guys-Eden Prairie MN RI

FAO WiFi Guys-Eden Prairie MN TS

FAO WiFi Guys-Eden Prairie MN TT

FAO WiFi Guys-Fridley MN

FAO WiFi Guys-Maplewood MN LI

FAO WiFi Guys-Minneapolis MN RI

FAO WiFi Guys-Minneapolis MN TS

FAO WiFi Guys-Plymouth MN RI

FAO WiFi Guys-Roseville MN CY

FAO WiFi Guys-Roseville MN RI

FAO WiFi Guys-St Louis MN TS

FAO WiFi Guys-Tucson AZ WL

Holiday Inn - Torrance

Kharma Consulting

Peacey Systems

R&D Lab

Suite Solutions - Four Points Sheraton (Canada)

Transbeam, Inc.

Uniserve

United Solutions

WiFi Guys - Country Inn Two Harbors

WiFi Guys - Grand Superior Lodge

Wi-Fi Guys - Office

83702077. 4

**Schedule 2.1(c)**

**Assigned Contracts**

| **Party** |
| --- |
| ***Customers*** |
| HIS |
| Outfront |
| Network Publisher Agreement by and between Panasonic Avionics Corporation and Ad-Vantage, dated as of March 21, 2014, as amended December 12, 2014. |
| JetBlue |
| Mobilitie |
| Ovation |
| ***Vendors*** |
| Amazon Web Services |
| ***IP Rights*** |
| All confidentiality, work-for-hire, and invention and assignment agreements with current and former employees, but excluding any employment agreements or similar agreements |

83702077. 4

**Schedule 2.2**

**Excluded Assets**

---

**DISCLOSURE SCHEDULE**

*to the*

**ASSET PURCHASE AGREEMENT**

*by and among*

**MEDIASHIFT, INC.**

*and*

**AD-VANTAGE NETWORKS, INC.**

*as Sellers*;

*and*

**MEDIASHIFT HOLDINGS, INC.**

*as Buyer*


**Dated as of December 14, 2015**

---

**Schedule 5.4**

**Subsidiaries**

1. Delphi is a subsidiary of AdVantage.
2. Travora is a subsidiary of MediaShift.
3. Sagax, Inc., a Nevada corporation, is a subsidiary of AdVantage.
4. Tenaya, LLC, a California limited liability company, is a subsidiary of Delphi.

83702077.4

### Schedule 5.6[1]

### Purchased Assets

1. The lien perfected by the UCC-1 Financing Statement filed with the office of the Secretary of State of the State of Delaware on July 16, 2012 as Instrument No. 22729657, naming Advantage-Networks, Inc., as debtor, and JMG Exploration, Inc. as secured party.

2. The lien filed with the office of the Secretary of State of the State of California on July 16, 2012 as Instrument No. 12-7321029057, naming Ad-Vantage Networks, Inc. as debtor, and JMG Exploration, Inc. as secured party.

3. The lien perfected by the UCC-1 Financing Statement filed with the office of the Secretary of State of the State of Delaware on October 31, 2014 as Instrument No. 20144404059, naming Ad-Vantage Networks, Inc., as debtor, and MediaShift Holdings, Inc., as secured party.

4. The lien perfected by the UCC-1 Financing Statement filed with the office of the Secretary of State of the State of Nevada on January 15, 2014 as Instrument No. 2014001180-2, naming MediaShift, Inc., as debtor, and Elevation Fund, LLC, Kirby Enterprise Fund, LLC, Veldkamp, and West Hampton Special Situations Fund, LLC, as secured parties.

5. The lien perfected by the UCC-1 Financing Statement filed with the office of the Secretary of State of the State of Nevada on February 11, 2014 as Instrument No. 2014003724-8, naming MediaShift, Inc., as debtor, and JMW Fund, LLC and Richland Fund, LLC, as secured parties.

6. The lien perfected by the UCC-1 Financing Statement filed with the office of the Secretary of State of the State of Nevada on April 14, 2014 as Instrument No. 2014009177-3, naming MediaShift, Inc., as debtor, and Elevation Fund, LLC and Kirby Enterprise Fund, LLC, as secured parties.

7. The lien perfected by the UCC-1 Financing Statement filed with the office of the Secretary of State of the State of Nevada on May 28, 2014 as Instrument No. 2014013123-6, naming MediaShift, Inc., as debtor, and Fisk Investments, LLC, as secured party.

8. The lien perfected by the UCC-1 Financing Statement filed with the office of the Secretary of State of the State of Nevada on June 27, 2014 as Instrument No. 2014016399-2, naming MediaShift, Inc., as debtor, and Kearney Holdings, LLC, Kearney Properties, LLC, and Larson Don, as secured parties.

9. The lien perfected by the UCC-1 Financing Statement filed with the office of the Secretary of State of the State of Nevada on November 3, 2014 as Instrument No. 2014028284-3, naming MediaShift, Inc., as debtor, and MediaShift Holdings, Inc., as secured party.

10. The lien perfected by the UCC-1 Financing Statement filed with the office of the Secretary of State of the State of Delaware on September 26, 2014 as Instrument No. 30668245, naming Travora Networks, Inc., as debtor, and Eastward Capital Partners V, L.P. as secured party.

---

[1] Nothing herein constitutes an admission by Sellers as to the adequacy of any lien or secured claim referenced herein.

83702077.4

11. The lien perfected by the UCC-1 Financing Statement filed with the office of the Secretary of State of the State of Delaware on October 31, 2014 as Instrument No. 20144404083, naming Travora Networks, Inc., as debtor, and MediaShift Holdings, Inc., as secured party.

12. The lien perfected by the UCC-1 Financing Statement filed with the office of the Secretary of State of the State of Delaware on October 31, 2014 as Instrument No. 20144404166, naming Delphi Media Holdings, LLC, as debtor, and MediaShift Holdings, Inc., as secured party.

83702077.4

**Schedule 5.11**

**Assigned Contracts**

<u>(a)</u>

| Party |
|---|
| ***Customers*** |
| HIS |
| Outfront |
| Network Publisher Agreement by and between Panasonic Avionics Corporation and Ad-Vantage, dated as of March 21, 2014, as amended December 12, 2014. |
| JetBlue |
| Mobilitie |
| Ovation |
| ***Vendors*** |
| Amazon Web Services |
| ***IP Rights*** |
| All confidentiality, work-for-hire, and invention and assignment agreements with current and former employees, but excluding any employment agreements or similar agreements |

**Other Contracts**

| <u>Debtor Party To Contract</u> | <u>Other Party To Contract</u> | <u>Description</u> |
|---|---|---|
| MediaShift | Adap.tv, Inc.<br>770 Broadway<br>New York, NY 10003 | Market Place Agreement<br><br>Platform Agreement |
| MediaShift | Eclipse Capital Partners LLC<br>c/o CORPORATION SERVICE CO<br>Wilmington, DE 19808 | Amended and Restated Non-Binding Termsheet (listed in an abundance of caution, not thought to be binding or executory) |
| MediaShift | GenesisMedia, LLC<br>71 West 23rd St., Suite 903<br>New York, NY 10010 | Master Services Agreement: Genesis Media Content Unlock Platform |
| MediaShift | Harrison Grant<br>22391 Rosebriar<br>Mission Viejo, CA 92692 | Independent Contractor |
| MediaShift | Houlihan Lokey Howard & Zukin<br>10250 Constellation Blvd<br>Los Angeles, CA 90067-6802 | Engagement Letter re Investment Banker /Financial Advisor Services |

- 5 -

| MediaShift | ipCapital Licensing Co. I, LLC<br>ipCapital Group<br>400 Cornerstone Dr., Suite 325<br>Williston, VT 05495 | IP Brokerage Agreement and<br>Engagement Letter for Strategic<br>Intellectual Licensing Support<br>(listed in an abundance of caution,<br>not thought to be binding or<br>executory, because, inter alia,<br>the underlying contract is with Ad-<br>Vantage Networks, LLC, not related<br>debtor Ad-Vantage Networks, Inc.) |
|---|---|---|
| MediaShift | Jensen Capital Partners, LLC<br>Dean Jensen (Mg Ptr)<br>2711 N. Sepulveda Blvd. #544<br>Manhattan Beach, CA 90266 | Financial Advisory Agreement |
| MediaShift | Outfront Media Inc.<br>405 LEXINGTON AVENUE<br>New York, NY 10174 | WI-FI Ad Network Marketing<br>Agreement |
| MediaShift | Practics Inc.<br>Attn Von Cameron<br>30741 Hilltop Way<br>San Juan Capistrano, CA 92675 | Referral Agency Agreement |
| MediaShift | Public Storage #21106<br>171 S Arroyo Parkway<br>Pasadena, CA 91105 | Storage Contract |
| MediaShift | Skyline Partners, Intl., LLC<br>1815 S Washington Street<br>Denver, CO 80210 | Consulting Agreement (listed in an<br>abundance of caution, not an<br>admission of the existence of<br>an executory contract) |
| Ad-Vantage | 5 Net Solutions<br>22/2, Plot No 275-B<br>Sion West, Mumbai, Maharashtra<br>India, KY 40002-2000 | Software Evaluation License<br>Agreement |
| Ad-Vantage | Access Media 3, Inc.<br>900 Commerce Drive,<br>Suite 200<br>Oak Brook, IL 60523 | Network Publisher Agreement |
| Ad-Vantage | Advanced Wireless Group, LLC<br>10460 NW 46th Street<br>Miami, FL 33178 | End User Agreement |
| Ad-Vantage | Ajay Pandya<br>c/20, Kastur Mahal<br>Sion Mumbai 400022 | Consulting Agreement (listed in an<br>abundance of caution, not thought to<br>be executory because agreement<br>expired) |

83702077.4

| Ad-Vantage | Alliance Data Services<br>#3080 Kronprindsens Gole, Suite 200<br>Saint Thomas 00802-0000 | Network Publisher Agreement |
|---|---|---|
| Ad-Vantage | Brian Russell<br>23852 PCH #263<br>Malibu, CA 90265 | Consulting Agreement (listed in an abundance of caution, not thought to be executory because agreement expired) |
| Ad-Vantage | David Grant<br>22391 Rosebriar<br>Mission Viejo, CA 92692 | EMPLOYMENT AGREEMENT AND EMPLOYEE CONFIDENTIALITY, IP AND NON-SOLICIT AGREEMENT |
| Ad-Vantage | Deep Blue Communications, LLC<br>7 Century Hill Road<br>Latham, NY 12110 | Network Publisher Agreement |
| Ad-Vantage | Direct Video Entertainment<br>6615 Boynton Beach Blvd, 217<br>Boynton Beach, FL 33437 | Network Publisher Agreement |
| Ad-Vantage | Docomo Intertouch Pte Ltd<br>89 Science Park D<br>Singapore 118261 | Network Publisher Agreement |
| Ad-Vantage | Double Click For Publishers Google<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043<br><br>33654 P.O. Box 39<br>San Francisco, CA 94139 | Double-Click for Publishers Google Ad-Server software not owned by MediaShift or Ad-Vantage; MediaShift and/or Ad-Vantage utilize services per account of Travora Networks, Inc. with DFP/Google |
| Ad-Vantage | Essenture Incorporated<br>19349 Flavian Ave<br>Torrance, CA 90503 | MASTER CONSULTING SERVICES AGREEMENT (listed in an abundance of caution, not thought to be executory because agreement expired) |
| Ad-Vantage | Federal Realty Investment Trust<br>12626 E. Jefferson St.<br>Rockville, MD 20852 | Network Publisher Agreement |
| Ad-Vantage | Hill Companies<br>3271 Airflite Way Long Beac<br>Long Beach, CA 90807 | Network Publisher Agreement |
| Ad-Vantage | Houlihan Lokey Howard & Zukin<br>10250 Constellation Blvd<br>Los Angeles, CA 90067-6802 | Engagement Letter re Investment Banker / Financial Advisor Services |

83702077.4

| | | |
|---|---|---|
| Ad-Vantage | Intermedia Cable Communications<br>1018 New Nana Peth<br>Padamjee Path, Pune<br>India 41100-2000 | Software Evaluation License Agreement |
| Ad-Vantage | ipCapital Licensing Co. I, LLC<br>ipCapital Group<br>400 Cornerstone Dr., Suite 325<br>Williston, VT 05495 | IP Broker Agreement (listed in an abundance of caution, not thought to be binding or executory, because, inter alia, the underlying contract is with Ad-Vantage Networks, LLC, not related debtor Ad-Vantage Networks, Inc.) |
| Ad-Vantage | Michael Spalter<br>24218 Wembley Ct.<br>Valencia, CA 91355 | EMPLOYMENT AGREEMENT AND EMPLOYEE CONFIDENTIALITY, IP AND NON-SOLICIT AGREEMENT |
| Ad-Vantage | Mikhail Koyfman<br>4319 Radford Ave. # 4<br>Studio City, CA 9160 | MASTER CONSULTING SERVICES AGREEMENT<br>(listed in an abundance of caution, not thought<br>to be executory because agreement expired) |
| Ad-Vantage | Mobilite Investments III<br>660 Newpot Center Drive, Suite 200<br>Newport Beach, CA 92660 | Services Agreement |
| Ad-Vantage | Oze Gomez<br>18209 Sierra Highway Unit 55<br>Canyon Country, CA 91351 | Consulting Agreement (listed in an abundance<br>of caution, not thought to be executory because<br>agreement provides for Debtor to terminate at<br>will) |
| Ad-Vantage | Pacific Telemanagement Services<br>2001 Crow Canyon Road, Suite 200<br>San Ramon, CA 94583 | Network Publisher Agreement |
| Ad-Vantage | Peterson Communications Group<br>827 Arnold Dr # 140<br>Martinez, CA 94553 | Network Publisher Agreement |
| Ad-Vantage | Pure Pages | Network Publisher Agreement |
| Ad-Vantage | Ravindra Singh<br>11047 Ice Skate Place<br>San Diego, CA 92126 | MASTER CONSULTING SERVICES AGREEMENT<br>(listed in an abundance of caution, not thought<br>to be executory because agreement expired) |

83702077.4

| Ad-Vantage | Rick Baran<br>14 Daystar<br>Irvine, CA 92612 | EMPLOYMENT AGREEMENT AND EMPLOYEE CONFIDENTIALITY, IP AND NON-SOLICIT AGREEMENT |
|---|---|---|
| Ad-Vantage | Sanjeev Kuwadekar<br>18223 Charlton Ln.<br>Northridge, CA 91326-3617 | EMPLOYMENT AGREEMENT AND EMPLOYEE CONFIDENTIALITY, IP AND NON-SOLICIT AGREEMENT |
| Ad-Vantage | Social Wi-Fi Marketing | Network Publisher Agreement |
| Ad-Vantage | SWS Realty<br>600 N. Brand Blvd.<br>Glendale, CA 91203 | Real Property Lease |
| Ad-Vantage | TelePacific<br>Office of General Counsel<br>515 S. Flower Street, 47th<br>Los Angeles, CA 90071 | Internet Telecommunications Account<br>Agreement and related Terms and Conditions |
| Ad-Vantage | The Network Operations<br>44 South Dixie Highway<br>Saint Augustine, FL 32084 | Network Publisher Agreement |
| Ad-Vantage | Uniguest, Inc.<br>1035 Acorn Dr.<br>Nashville, TN 37210<br>United Solution LLC<br>3909 Westpoint Blvd. , Suite<br>Winston Salem, NC 27103 | Network Publisher Agreement |
| Ad-Vantage | Wi-Fi Guys, LLC<br>7265 Highway 1<br>Finland, MN 55603 | Network Publisher Agreement |

83702077.4

## Schedule 5.12

## Litigation

1. <u>Neohire North Inc. v. Mediashift, Inc. et al.</u>
   Case No. BC580864
   Breach of contract, open book, account stated, goods and services rendered, quantum meruit
   California Superior Court - Los Angeles
   Pending

2. <u>Penguin Random House LLC v. Mediashift, Inc. et al.</u>
   Case No. BC582953
   Breach of contract, open book account, account stated, quantum meruit
   California Superior Court - Los Angeles
   Pending

3. <u>Cybercoders, Inc. v. Mediashift, Inc. and Ad-Vantage Networks, Inc.</u>
   Case No. 30-2015-00781722-CL-CL-CJC
   Breach of contract, open book, reasonable value
   California Superior Court – Orange County
   Pending

4. *<u>Travel Spike, LLC v. Travora Media, f/k/a Travel Ad Network, Inc.</u>*
   This action was not against either of Borrowers.  In or about November 2014, Travel Spike obtained a default judgment in excess of $12.4 million against Travora Media.  Travel Spike is now asserting claims in the action immediately below in an effort to recover from MediaShift on Travel Spike's default judgment

5. <u>Travel Spike, LLC v. Travora Networks, Inc., d/b/a MediaShift and MediaShift, Inc.</u>
   Case No. 15 Civ. 1815 (RJS)
   Fraudulent transfer, successor liability, piercing the corporate veil
   United States District Court – Southern District of California
   Pending

6. <u>Kensel & Co., LLC v. MediaShift, Inc.</u>
   Case No. 2:15-ap-01646-SK
   Injunctive and declaratory relief
   United States Bankruptcy Court – Central District of California
   Pending

7. Labor claim by former employee Dustin Perlberg in the amount of $4,500 filed the week of October 31.

8. Lawsuit filed by Michael McDonald of WorldisRound.com

9. Lawsuits threatened by certain publishers and vendors for failure to pay.

83702077.4

**Schedule 5.13**

**Proprietary Rights**

(a)

## PATENTS

| Country | Title | Application No. Filing Date | Patent No.  Issued Date | Assignment |
|---------|-------|------------------------------|--------------------------|------------|
| **ISSUED PATENTS** | | | | |
| U.S. | Methods and Systems for Processing and Displaying Content | 12/728116 March 19, 2010 | 8,554,630 October 8, 2013 | **Ad-Vantage Networks, Inc.** (Non-prov. Of DGRANT.001PR and 001PR2) |
| U.S. | Methods and Systems for Searching, Selecting, and Displaying Content | 13/184448 July 15, 2011 | 8,234,275 July 31, 2012 | **Ad-Vantage Networks, Inc.** (CON of DGRANT.001A) |
| U.S. | Methods and Systems for Searching, Selecting, and Displaying Content | 13/184442 July 15, 2011 | 8,386,321 February 26, 2013 | **Ad-Vantage Networks, Inc.** (CON of DGRANT.001A) |
| U.S. | Methods and Systems for Searching, Selecting, and Displaying Content | 12/728037 March 19, 2010 | 8,898,161 November 25,2014 | **Ad-Vantage Networks, Inc.** (Non-prov. Of DGRANT.001PR and 001PR2) |
| Japan | Methods and Systems for Searching, Selecting, and Displaying Content | 2012-501022 March 19, 2010 | 5,735,480 April 24, 2015 | Applicant: **Ad-Vantage Networks, LLC (instructions to foreign associate sent regarding change of applicant to Ad-Vantage Networks, Inc. on 3/27/15)** (National phase of DGRANT.001VPC) |
| **PENDING PATENT APPLICATIONS** | | | | |
| U.S. | Methods and Systems for Searching, Selecting, and Displaying Content | 14/540877 November 13, 2014 | | **Ad-Vantage Networks, Inc.** (CON of DGRANT.001C3) |
| U.S. | Methods and Systems for Processing and Displaying Content | 14/045239 October 3, 2013 | | **Ad-Vantage Networks, Inc.** (CON of DGRANT.001A2) |
| U.S. | Methods and Systems for Processing and Displaying Video Content | 13/836672 March 15, 2013 | | **Ad-Vantage Networks, Inc.** (CIP OF DGRANT.001A2C1) |
| Australia | Methods and Systems for Searching, Selecting, and Displaying Content | 2010226395 March 19, 2010 | | Applicant: **Ad-Vantage Networks, LLC** (National phase of DGRANT.001VPC) |

- 11 -

| Country | Title | Application No. Filing Date | Patent No. | Issued Date | Assignment |
|---|---|---|---|---|---|
| Canada | Methods and Systems for Searching, Selecting, and Displaying Content | 2755645 March 19, 2010 | | | Applicant: **Ad-Vantage Networks, LLC** (National phase of DGRANT.001VPC) |
| China, People's Republic | Methods and Systems for Searching, Selecting, and Displaying Content | 201080022098.0 March 19, 2010 | | | Applicant: **Ad-Vantage Networks, LLC** (National phase of DGRANT.001VPC) |
| EPC | Methods and Systems for Searching, Selecting, and Displaying Content | 10754213.6 March 19, 2010 | | | Applicant: **Ad-Vantage Networks, LLC** (National phase of DGRANT.001VPC) |
| Hong Kong | Methods and Systems for Searching, Selecting, and Displaying Content | 12107344.4 July 25, 2012 | | | Applicant: **Ad-Vantage Networks, LLC** (National phase of DGRANT.001VPC) |
| Korea, Republic of | Methods and Systems for Searching, Selecting, and Displaying Content | 102011-7024824 March 19, 2010 | | | Applicant: **Ad-Vantage Networks, LLC** (National phase of DGRANT.001VPC) |
| U.S. | Content Easement and Management System for Internet Access Providers and Premise Operators | 13/896057 May 16, 2013 | | | **Ad-Vantage Networks, Inc.** (Non-prov. Of DGRANT.003PR and 003PR2) |
| Australia | Content Easement and Management System for Internet Access Providers and Premise Operators | 2013262647 December 10, 2014 | | | Applicant: **Ad-Vantage Networks, Inc.** (National Phase of DGRANT.003WO) |
| China | Content Easement and Management System for Internet Access Providers and Premise Operators | 201380037930.8 January 16, 2015 | | | Applicant: **Ad-Vantage Networks, Inc.** (National Phase of DGRANT.003WO) |
| Europe | Content Easement and Management System for Internet Access Providers and Premise Operators | 13791501.3 November 28, 2014 | | | Applicant: **Ad-Vantage Networks, Inc.** (National Phase of DGRANT.003WO) |
| Japan | Content Easement and Management System for Internet Access Providers and Premise Operators | 2015-512856 November 17, 2014 | | | Applicant: **Ad-Vantage Networks, Inc.** (National Phase of DGRANT.003WO) |

- 12 -

83702077.4

| Country | Title | Application No. Filing Date | Patent No. | Issued Date | Assignment |
|---|---|---|---|---|---|
| PCT | Content Easement and Management System for Internet Access Providers and Premise Operators | PCT/US2013/041435 May 16, 2013 | | | Applicant: **Ad-Vantage Networks, Inc.** (Claims priority to DGRANT.003PR and 003PR2) |
| PCT | Methods and Systems for Searching, Selecting, and Displaying Content | PCT/US2014/022096 March 7, 2014 | | | Applicant: **Ad-Vantage Networks, Inc.** (Claims priority to DGRANT.001A2P1, 004PR, 006PR, 007PR) |
| US | Locally and Automatically Articulated Content Requester Technology | 14/200555 March 7, 2014 | | | **Ad-Vantage Networks, Inc.** (Non-prov. Of DGRANT.004PR) |
| US | Systems and Methods for Providing and Utilizing User-Specific Information | 14/200616 March 7, 2014 | | | **Ad-Vantage Networks, Inc.** (Non-prov. Of DGRANT.006PR) |
| US | Methods and Systems for Processing and Displaying Content | 14/201180 March 7, 2014 | | | **Ad-Vantage Networks, Inc.** (non-prov. Of DGRANT.007PR) |
| US | Systems and Methods for Managing Network Resource Requests | 14/339278 July 26, 2014 | | | (non-prov. Of DGRANT.010PR) |
| PCT | Systems and Methods for Managing Network Resource Requests | PCT/US2014/047907 July 23, 2014 | | | Applicant: **Ad-Vantage Networks, Inc.** (Claims priority to DGRANT.010PR) |

## TRADEMARKS

| Grantor | Country | Mark or Application | Registration Number or Serial Number | Date of Registration or Application |
|---|---|---|---|---|
| MediaShift, Inc. | US | OTG ENGAGEMENT PLATFORM | 86/154,688 | Application Filing Date: December 30, 2013 |
| MediaShift, Inc. | US | ON THE GO ENGAGEMENT PLATFORM | 86/154,683 | Application Filing Date: December 30, 2013 |
| MediaShift, Inc. | US | MEDIASHIFT  | 4,496,056 | Filing Date: January 31, 2013  Registration Date: March 11, 2014 |
| MediaShift, Inc. | US | MEDIASHIFT | 4,496,055 | Filing Date: January 31, 203  Registration Date: |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | March 11, 2014 |
| MediaShift, Inc. | European Union | MEDIASHIFT | 012330957 | | Filing Date: November 11, 2013<br><br>Registration Date: April 11, 2014 |
| Ad-Vantage Networks, Inc. | US | ADVANTAGE NETWORKS | 4,413,899 | | Filing Date: February 4, 2013<br><br>Registration Date: October 8, 2013 |
| Ad-Vantage Networks, Inc. | US | ADVANTAGE NETWORKS | 4,413,898 | | Filing Date: February 4, 2013<br><br>Registration Date: October 8, 2013 |

## DOMAIN NAMES

| Domain Name | Expiration Date | Status | Forwarding URL | Domain Owner | Registrar Account | Auto Renew |
|---|---|---|---|---|---|---|
| TENAYALLC.NET | 11/25/16 | Active | | AdVantage | GoDaddy: ADVNAdmin | On |
| VIRTUAL-AD-EXCHANGE.COM | 6/12/16 | Active | | AdVantage | GoDaddy: ADVNAdmin | On |
| VIRTUAL-AD-NETWORKS.COM | 6/12/16 | Active | | AdVantage | GoDaddy: ADVNAdmin | On |
| VIRTUALADMARKET.COM | 6/12/16 | Active | | AdVantage | GoDaddy: ADVNAdmin | On |
| VIRTUALADNETWORKS.COM | 6/12/16 | Active | | AdVantage | GoDaddy: ADVNAdmin | On |
| VIRTUALADNETWORKS.NET | 6/12/16 | Active | | AdVantage | GoDaddy: ADVNAdmin | On |
| TRAVELADVERTISING.COM | 8/8/16 | Active | | AdVantage | GoDaddy: ADVNAdmin | On |
| ad-canvas.com(MX) | TBD[2] | TBD[2] | | AdVantage | 1&1: 27114386 | On |
| ad-easement.com(MX) | TBD[2] | TBD[2] | | AdVantage | 1&1: 27114386 | On |
| ad-easement.net(MX) | TBD[2] | TBD[2] | | AdVantage | 1&1: 27114386 | On |
| ad-vantagenetworks.com | TBD[2] | TBD[2] | | AdVantage | 1&1: 27114386 | - |
| Ad-vantagenetworks.net | TBD[2] | TBD[2] | | AdVantage | 1&1: 27114386 | On |
| adeasement.com(MX) | TBD[2] | TBD[2] | | AdVantage | 1&1: 27114386 | On |
| adeasement.net(MX) | TBD[2] | TBD[2] | | AdVantage | 1&1: 27114386 | On |
| adffluentnetworks.com(MX) | TBD[2] | TBD[2] | | AdVantage | 1&1: 27114386 | On |

---

[2] Cannot access account at present to verify status.

83702077.4

| Domain Name | Expiration Date | Status | Forwarding URL | Domain Owner | Registrar Account | Auto Renew |
|---|---|---|---|---|---|---|
| adhomenetwork.com(MX) | TBD[2] | TBD[2] | | AdVantage | 1&1: 27114386 | On |
| ads.ad-vantagenetworks.com | TBD[2] | TBD[2] | | AdVantage | 1&1: 27114386 | - |
| adsv2.ad-vantagenetworks.com | TBD[2] | TBD[2] | | AdVantage | 1&1: 27114386 | - |
| adsv21.ad-vantagenetworks.com | TBD[2] | TBD[2] | | AdVantage | 1&1: 27114386 | - |
| advnad.com(MX) | TBD[2] | TBD[2] | | AdVantage | 1&1: 27114386 | On |
| advnads.com(MX) | TBD[2] | TBD[2] | | AdVantage | 1&1: 27114386 | On |
| evalidation.ad-vantagenetworks.net | TBD[2] | TBD[2] | | AdVantage | 1&1: 27114386 | - |
| fair-ads.com(MX) | TBD[2] | TBD[2] | | AdVantage | 1&1: 27114386 | On |
| fair-ads.net(MX) | TBD[2] | TBD[2] | | AdVantage | 1&1: 27114386 | On |
| myad-network.com(MX) | TBD[2] | TBD[2] | | AdVantage | 1&1: 27114386 | On |
| onlinegamingadnetwork.com(MX) | TBD[2] | TBD[2] | | AdVantage | 1&1: 27114386 | On |
| ox-d.ad-vantagenetworks.com | TBD[2] | TBD[2] | | AdVantage | 1&1: 27114386 | - |
| ox-i.ad-vantagenetworks.com | TBD[2] | TBD[2] | | AdVantage | 1&1: 27114386 | - |
| ox-ui.ad-vantagenetworks.com | TBD[2] | TBD[2] | | AdVantage | 1&1: 27114386 | - |
| residentialadnetwork.com(MX) | TBD[2] | TBD[2] | | AdVantage | 1&1: 27114386 | On |
| s340959591.onlinehome.us(MX) | TBD[2] | TBD[2] | | AdVantage | 1&1: 27114386 | - |
| ticketing.ad-vantagenetworks.net(MX) | TBD[2] | TBD[2] | | AdVantage | 1&1: 27114386 | - |
| uradnetwork.com(MX) | TBD[2] | TBD[2] | | AdVantage | 1&1: 27114386 | On |
| wowadnetwork.com(MX) | TBD[2] | TBD[2] | | AdVantage | 1&1: 27114386 | On |
| youradnetwork.com(MX) | TBD[2] | TBD[2] | | AdVantage | 1&1: 27114386 | On |
| TRAVORANETWORKS.COM | 1/12/15 | Active | www.mediashift.com | AdVantage | GoDaddy: ADVNAdmin | Off |
| AD-MESH.COM | 6/20/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| AD-MESH.NET | 6/20/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| AD-REFLECTOR.COM | 5/28/2018 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| AD-REFLECTOR.NET | 5/28/2018 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| AD-REPORT.COM | 2/6/2017 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| AD-REPORTS.COM | 2/6/2017 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| AD-REPORTS.NET | 2/6/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |

- 15 -

| Domain Name | Expiration Date | Status | Forwarding URL | Domain Owner | Registrar Account | Auto Renew |
|---|---|---|---|---|---|---|
| AD-RFLCTR.COM | 5/28/2018 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| AD-RFLCTR.NET | 5/28/2018 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| AD-SPEAK.COM | 6/5/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| AD-SVC.COM | 5/28/2018 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| AD-SVC.NET | 5/28/2018 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| AD-SVCS.COM | 5/28/2018 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| AD-SVCS.NET | 5/28/2018 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| AD-TASTIC.COM | 6/20/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| AD-TASTIC.NET | 6/20/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| ADMESH.NET | 6/20/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| ADOPTOUT.COM | 9/28/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| ADREFLCTR.COM | 5/28/2018 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| ADREFLCTR.NET | 5/28/2018 | Expiration protection invoked | | AdVantage | GoDaddy: ADVNAdmin | |
| ADREFLECTOR.COM | 5/28/2018 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| ADREFLECTOR.NET | 5/28/2018 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| ADRFLCTR.COM | 5/28/2018 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| ADRFLCTR.NET | 5/28/2018 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| ADSERVER142401.NET | 1/24/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| ADSERVICE012114.COM | 1/21/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| ADSERVICE012114.NET | 1/21/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| ADSERVICE142701.NET | 2/11/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| ADSPIDER.NET | 6/20/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| ADSVC011420.COM | 1/20/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| ADSVC012014.NET | 1/20/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| ADSVC1107131.NET | 11/7/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| ADVN.COM | 6/27/2018 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| ADVN.NET | 6/23/2018 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| DEFAULT-ADS.COM | 9/28/2016 | Expiration protection invoked | | AdVantage | GoDaddy: ADVNAdmin | |
| DEV-ADVN.COM | 1/13/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| DEV-ADVN.NET | 1/13/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |

| Domain Name | Expiration Date | Status | Forwarding URL | Domain Owner | Registrar Account | Auto Renew |
|---|---|---|---|---|---|---|
| DISTRIBUTEDADNETWORKS.COM | 6/12/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| IRSHELPS.COM | 8/5/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| LANDING-PG.COM | 5/28/2018 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| LANDING-PG.NET | 5/28/2018 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| LNDINGPAGE.COM | 5/28/2018 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| LNDINGPAGE.NET | 5/28/2018 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| LNDNGPGS.COM | 5/28/2018 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| LNDNGPGS.NET | 5/28/2018 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| LOWERMYMORTAGEPAYMENT.COM | 3/16/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| MAMOZI.COM | 4/7/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| msfht.com | 6/25/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| msfht.net | 6/25/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| MSHFT.NET | 11/20/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| OPT-OUT-ADS.COM | 9/28/2016 | Expiration protection invoked | | AdVantage | GoDaddy: ADVNAdmin | |
| OPT-OUT-PAGE.COM | 9/28/2016 | Expiration protection invoked | | AdVantage | GoDaddy: ADVNAdmin | |
| PERLITAHOLDINGS.COM | 11/8/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| PERLITAHOLDINGS.NET | 11/8/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| PICKYOURLOWRATE.COM | 3/16/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| QA-ADVN.COM | 1/13/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| QA-ADVN.NET | 1/13/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| RESTAURANT-ADS.NET | 4/14/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| RESTAURANTADS.NET | 4/14/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| ROCKBOTTOMMORTAGERATES.COM | 3/16/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| STAGE-ADVN.COM | 1/13/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| STAGE-ADVN.NET | 1/13/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| TAX-RELIEFS.COM | 8/5/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| TAXATTORNEY-HELPS.COM | 8/5/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| TAXDEBT-RELIEFS.COM | 8/5/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| TAXHELP-SOLUTIONS.COM | 8/5/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| TAXLEIN-DEBT.COM | 8/5/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |

83702077.4

| Domain Name | Expiration Date | Status | Forwarding URL | Domain Owner | Registrar Account | Auto Renew |
|---|---|---|---|---|---|---|
| TAXLEIN.INFO | 8/5/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| TAXLIEN-HELP.COM | 8/5/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| TENAYALLC.NET | 11/25/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| TRAVELADVERTISING.COM | 8/8/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| TRAVORANETWORKS.COM | 1/12/2018 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| VIRTUAL-AD-EXCHANGE.COM | 6/12/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| VIRTUAL-AD-NETWORKS.COM | 6/12/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| VIRTUALADMARKET.COM | 6/12/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| VIRTUALADNETWORKS.COM | 6/12/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| VIRTUALADNETWORKS.NET | 6/12/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| XAXDXS.COM | 6/16/2016 | Active | | AdVantage | GoDaddy: ADVNAdmin | |
| MEDIASHIFT.COM | 3/1/2018 | Active | | MediaShift | GoDaddy: Mshift | On |
| MEDIASHIFT.BIZ | 4/3/18 | Active | | MediaShift | GoDaddy: ADVNAdmin | On |
| MEDIASHIFT.CO | 4/3/18 | Active | | MediaShift | GoDaddy: Mshift | On |
| MEDIASHIFT.CO.UK | 3/7/18 | Active | | MediaShift | GoDaddy: Mshift | On |
| MEDIASHIFT.ME | 4/4/18 | Active | | MediaShift | GoDaddy: Mshift | On |
| MEDIASHIFT.MOBI | 3/1/18 | Active | | MediaShift | GoDaddy: Mshift | On |
| MEDIASHIFT.NET | 5/22/18 | Active | | MediaShift | GoDaddy: Mshift | On |
| MEDIASHIFT.TV | 3/1/18 | Active | | MediaShift | GoDaddy: Mshift | On |
| MEDIASHIFT.US | 4/3/18 | Active | | MediaShift | GoDaddy: Mshift | On |
| MEDIASHIFTADS.COM | 5/29/18 | Active | | MediaShift | GoDaddy: Mshift | On |
| MEDIASHIFTADS.NET | 5/29/18 | Active | | MediaShift | GoDaddy: Mshift | On |

83702077.4

## LICENSES

1. License Agreement by and between Netstorm and Ad-Vantage Networks, Inc., dated as of December 2, 2013.

## COMPUTER SOFTWARE

1. ADIQ – MS proprietary Ad Server
2. DFP – Double-Click for Publishers by Google Ad Server; software not owned by MediaShift or Ad-Vantage; MediaShift and/or Ad-Vantage utilize services per account with DFP/Google
3. AWS – Amazon Web Services Hardware/Software Data Center; software not owned by MediaShift or Ad-Vantage; MediaShift and/or Ad-Vantage utilize Hardware/Software storage services per account with AWS

<u>(d)</u>

See attached.

- 19 -



## EXHIBIT A

### EMPLOYEE INVENTION AND CONFIDENTIALITY AGREEMENT

This Employee Invention and Confidentiality Agreement (the "Agreement") is entered into as of _____, _____, by and between                                        "Company") and

Name: _____

Social Security No: _____

In consideration and as a condition of my employment by the Company, or my continued employment by the Company, the compensation received by me from the Company from time to time, and any bonus or other amount payable to me by the Company, I hereby agree to the following:

1.      I will not at any time, whether during or after termination of my employment, reveal to any person or entity any of the trade secrets or confidential information concerning the organization, business or finances of the Company or any third party to which the Company is under obligation to keep confidential (including but not limited to trade secrets or confidential information respecting customer lists, projects, plans, proposals), except as may be required in the ordinary course of performing my duties as an employee of the Company, and I shall keep secret all matters entrusted to me and shall not use or attempt to use any such information in any manner which may injure or cause loss or may be calculated to injure or cause loss whether directly or indirectly to the Company.

Further, I agree that during my employment I shall not make, use or permit to be used any notes, memoranda, reports, lists, records, drawings, sketches, specifications, software programs, data, documentation or other materials of any nature relating to any matter within the scope of the business of the Company or concerning any of its dealings or affairs other than for the benefit of the Company.  I further agree that I shall not, after the termination of my employment, use or permit to be used any such notes, memoranda, reports, lists, records, drawings, sketches, specifications, software programs, data documentation or other materials, it being agreed that all of the foregoing shall be and remain sole and exclusive property of the Company and that immediately upon the termination of my employment or upon the Company's earlier request I shall deliver all of the foregoing, and all copies thereof, to the Company, at its main office.

2.      If at any time or times during my employment, I shall (either alone or with others) make, conceive, discover or reduce to practice or have heretofore made, conceived, discovered or reduced to practice, any invention, modification, discovery, design, development, improvement, process, software program, work of authorship, documentation, formula, data, technique, know-how, trade secret or intellectual property right whatsoever or any interest therein (whether or not patentable or registrable under copyright or similar statutes or subject to analogous protection) (herein called "Developments"), I agree that all such Developments and the benefits thereof shall immediately be the sole and absolute property of the Company and its assigns to the maximum extent permitted by applicable law and to the extent permitted by law shall be "works made for hire." I shall promptly disclose to the Company (or any persons designated by it) each such Development and I

hereby assign any rights I may have or acquire in the Developments and benefits and/or rights resulting therefrom to the Company and its assigns without further compensation and I shall communicate, without cost or delay, and without publishing the same, all available information relating thereto (with all necessary plans and models) to the Company.

Upon disclosure of each Development to the Company, I will, during my employment and at any time thereafter, at the request and cost of the Company, sign, execute, make and do all such deeds, documents, acts and things as the Company and its duly authorized agents may reasonably require:

(A)    to apply for, obtain and vest in the name of the Company alone (unless the Company otherwise directs) patents, copyrights or other intellectual property protection in any country throughout the world and when so obtained or vested to renew and restore the same; and

(B)    to defend any such patent, copyright or analogous protection in any country in any administrative or court proceeding as necessary to maintain or enforce the same.

In the event the Company is unable, after reasonable effort, to secure my signature on any patents, copyrights or other intellectual property protection relating to a Development, whether because of my physical or mental incapacity or for any other reason whatsoever, I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney-in-fact, to act for and in my behalf and stead to execute and file any such application or applications and to do all other lawfully permitted acts to further the prosecution and issuance of letters patent, copyright or other analogous protection thereon with the same legal force and effect as if executed by me.

3.    I agree that during my employment with the Company, I shall not, directly or indirectly, whether or not for compensation, engage in any employment, business or activity, or have any interest in any person, firm, corporation or business (whether as an employee, shareholder, proprietor, officer, director, agent, security holder, trustee, partner, consultant, creditor lending credit or money for the purpose of establishing or operating any such business, partner or otherwise) which is the same as, or similar to, or directly competitive with, the business or proposed business of the Company now being conducted or proposed to be conducted.  The provisions of this paragraph shall apply both during normal working hours and at all other times including, but not limited to, nights, weekends and vacation time, while I am employed by the Company.  I further agree that during the term of my employment with the Company, and for a period of one (1) year thereafter, I will not divert or attempt to divert, directly or indirectly, any business of the Company or any customers or suppliers of such business to any other person, entity or competitor.

4.    I agree that any breach of this Agreement by me will cause irreparable damage to the Company and that in the event of such breach the Company shall have, in addition to any and all remedies of law, the right to an injunction, specific performance or other equitable relief to prevent the violation of my obligations hereunder.

5.    I understand that this Agreement does not create an obligation on the Company or any other person or entity to continue my employment and that I have a right to resign and the



Company has the right to terminate my employment at any time, for any reason, with or without cause.

6. As a matter of record, I attach hereto in the form of <u>Schedule 1</u>, which the Company has signed to signify receipt thereof, which attachment is incorporated herein by this reference, a complete list of any and all Developments which have been made or conceived or first reduced to practice by me alone or jointly with others prior to my employment with the Company that I desire to remove from the operation of this Agreement, and I hereby represent and covenant that such list is complete. I understand that it is only necessary to list the title and purpose of such Developments but not details thereof. If no such Developments are listed on <u>Schedule 1</u>, I hereby represent and warrant that there are none.

7. I further represent that my performance of all of the terms of this Agreement and as an employee of the Company does not and will not breach any agreement to keep in confidence proprietary information acquired by me in confidence or in trust prior to my employment by the Company. I have not entered into, and I agree I will not enter into, any agreement either written or oral in conflict herewith.

8. All documents, data, records, apparatus, equipment, personal computers, lab books and other physical property furnished to me by the Company or produced by myself or others in connection with my retention as an employee by the Company shall be and remain the sole property of the Company and shall be returned promptly to the Company as and when requested by the Company. In any event, I shall return and deliver all such property upon termination of my retention as an employee by me or by the Company for any reason and I will not take with me any such property or any reproduction of such property upon such termination.

9. I agree that for a period of one (1) years following termination of my retention as an employee with the Company, I will not directly or indirectly solicit or in any manner encourage employees, consultants or customers of the Company to leave his or her employ or terminate his, her or its association with the Company.

10. I agree that in addition to any other rights and remedies available to the Company for any breach by me of my obligations hereunder, the Company shall be entitled to enforce my obligations hereunder by court injunction.

11. In the event that any paragraph or provision of this Agreement shall be held to be illegal or unenforceable, such paragraph or provision shall be adjusted and reformed, if possible, in order to achieve the intent of the parties, and if such paragraph or provision cannot be adjusted and reformed, such paragraph or provision shall be voided and severed from this Agreement, and the entire Agreement shall not fail on account thereof but shall otherwise remain in full force and effect.

12. This Agreement shall be effective as of the first day of my retention as an employee by the Company.

13. My obligations under this Agreement shall survive the termination of my employment regardless of the manner of such termination. This Agreement shall be binding upon



me, my heirs, executors, assigns and administrators and shall inure to the benefit of the Company, its successor and assigns.

14.    This Agreement may not be amended and the observance of any term of this Agreement may not be waived (either generally or in a particular instance and neither retroactively nor prospectively), without the written consent of the Company and the undersigned employee.

15.    This Agreement shall be governed by and construed in accordance with the laws of the State of New York without reference to principles of conflicts of laws. If any legal action is necessary to enforce this Agreement, the prevailing party shall be entitled to recover attorneys' fees

16.    I hereby acknowledge receipt of a copy of this Employee Invention and Confidentiality Agreement and agree to abide by the conditions contained herein.

ACCEPTED AND AGREED TO:

**Employee**

By: _____       _____

Title: _____

Dated: _____       Dated: _____



# EXHIBIT A

## Schedule 1

### DEVELOPMENTS

**None, unless indicated below.**



# AdVantage Networks, Inc.
## Employee Confidentiality, IP and Non-Solicit Agreement

This Confidentiality and Non-compete Agreement (the "Agreement") is between Ad-Vantage Networks, Inc., a Delaware corporation ("Ad-Vantage") and the undersigned employee ("Employee").

Employee's employment by Ad-Vantage creates a relationship of confidence and trust between Employee and Ad-Vantage with respect to certain information applicable to the business of Ad-Vantage and its clients or customers. Ad-Vantage possesses and will continue to possess information that has commercial value and is treated by Ad-Vantage as confidential. Such information may include information created, discovered or developed by Employee during the period of or arising out of his or her employment by Ad-Vantage, whether before or after the date hereof. Such information may also include information belonging to Ad-Vantage's clients, business partners, customers or suppliers. All such information is hereinafter called "Confidential Information", which term includes, without limitation, developments, designs, improvements, inventions, software, processes, computer programs, know-how, data, techniques, formulas, marketing and business plans and outlines, strategies, budgets, forecasts, projections, unpublished financial statements, costs, fee schedules, client and supplier lists, client and prospective client databases, access codes and similar security information and procedures, and all patents, copyrights, maskworks, trade secrets and other proprietary rights thereto; provided, however, that the terms "Confidential Information" shall not include any of the foregoing that is in the public domain other than as the result of a breach of an obligation of confidentiality.

Employee recognizes that any unauthorized use or disclosure of Confidential Information would cause serious injury to Ad-Vantage. Ad-Vantage's willingness to employ Employee depends upon his or her commitment to protect Ad-Vantage's Confidential Information and to comply with this Agreement. Therefore, Employee hereby agrees:

1. **Protection of the Confidential Information.**
   a. During and after Employee's employment, Employee shall hold the Confidential Information in confidence and shall protect it with utmost care. Employee shall not disclose, copy, or permit any person to disclose or copy any of the Confidential Information, and Employee shall not use any of the Confidential Information, except as necessary to perform his or her duties as an employee of Ad-Vantage.

   b. In the event that Employee has or has had access to any Confidential Information belonging to any third party, including but not limited to any of Employee's previous employer's Employee shall hold all such Confidential Information in confidence and shall comply with the terms of any and all agreements between Employee or Ad-Vantage and the third party with respect to such Confidential Information.

1

2. **Exceptions.** This Agreement will not be interpreted to prevent the use or disclosure of information that (i) is required by law to be disclosed, but only to the extent that such disclosure is legally required, (ii) becomes a part of the public knowledge other than by a breach of an obligation of confidentiality, or (iii) is rightfully received from a third party not obligated to hold such information confidential.

3. **Return of Confidential Information.** Upon Ad-Vantage's request, and in any event upon termination of Employee's employment for any reason, Employee shall promptly return to Ad-Vantage all materials in his or her possession or control that contain or represent Confidential Information, including but not limited to documents, drawings, diagrams, flow charts, computer programs, memoranda, notes, and every other medium, and all copies thereof.

4. **Assignment of Intellectual Property.**
   a. Employee will promptly disclose to Ad-Vantage all Confidential Information, whether or not registrable under copyright or other intellectual property or similar laws, made or conceived or reduced to practice or learned by Employee, either alone or jointly with others, during the period of his or her employment that (i) at the time of conception or reduction to practice are related to the actual or demonstrably anticipated business of Ad-Vantage, (ii) result from tasks performed by Employee for Ad-Vantage, or (iii) are developed on any amount of Ad-Vantage's time or result from the use of premises or property (including computer systems) owned, leased, or contracted for by Ad-Vantage (collectively, "Intellectual Property"). All Intellectual Property shall at all times and for all purposes be the sole property of Ad-Vantage. Employee hereby assigns and agrees to assign any rights he or she may have or acquire in any Confidential Information or Intellectual Property.

   b. Attached as Exhibit A is a list of all intellectual property and information created, discovered or developed by Employee whether or not registrable under copyright or other intellectual property or similar laws, made or conceived or reduced to practice or learned by Employee, either alone or jointly with others, excluding any Intellectual Property, relating in any way to Ad-Vantage's business or demonstrably anticipated research and development that were made by Employee prior to his or her employment with Ad-Vantage (the "Employee Intellectual Property"). Employee represents that Exhibit A is complete and contains no Confidential Information. Employee understands that he or she has no rights in any such Employee Intellectual Property other than those listed on Exhibit A. If there is nothing identified on Exhibit A, Employee represents that he or she has no Employee Intellectual Property as of the time of signing this Agreement.

   c. Employee shall (i) treat all information with respect to Intellectual Property as Confidential Information within the meaning of this Agreement; (ii) keep complete and accurate records of the Intellectual Property, which records will be the property of Ad-Vantage; (iii) testify in any proceedings or litigation related to the Intellectual Property; and (iv) in case Ad-Vantage will desire to keep secret any Intellectual Property, refrain from disclosing the Intellectual Property.

   d. Employee shall assist Ad-Vantage in every way deemed necessary or desirable by Ad-Vantage (but at Ad-Vantage's expense) to obtain and enforce copyrights, trademarks and other rights and protections relating to any Confidential

Information and Intellectual Property in any and all countries, and to that end Employee will execute all documents for use in obtaining and enforcing such copyrights, trademarks and other rights and protections as Ad-Vantage may desire, together with any assignments thereof to Ad-Vantage of persons designated by it. If Ad-Vantage is unable for any reason to secure Ad-Vantage's signature to any documents required to apply for or execute any copyright, mask work or other application with respect to any Intellectual Property (including improvements, renewals, extensions, continuations, divisions or continuations in part thereof), and agents as Employee's agents and attorneys-in-fact for and on Employee's behalf to execute and file any such application and to do all other lawfully permitted acts to further the issuance of copyrights, maskworks or other rights thereon with the same legal force and effect as if executed by Employee. Employee's obligation to assist Ad-Vantage shall continue beyond the termination of his or her employment, but Ad-Vantage shall compensate Employee at a reasonable rate after his or her termination for time actually spent by Employee at Ad-Vantage's request on such assistance.

5. **No Conflicts with Prior Obligations**.  Employee represents and warrants that his or her employment by Ad-Vantage and his or her performance of this Agreement will not conflict with any obligations that Employee may have with third parties. Without limiting the foregoing, Employee agrees that he or she will not disclose to Ad-Vantage or use in Ad-Vantage's behalf any confidential or proprietary information belonging to a third party, unless the third party has consented in writing to the disclosure or use of the information.

6. **Covenant not to Solicit**. For a period of one (1) year from the date of any termination of Employee's employment with Ad-Vantage for any reason, Employee shall not solicit for employment, attempt to employ, or assist any other person or entity in employing or soliciting for employment, any employee or representative of Ad-Vantage, either for Employee or for any other entity.

7. **Equitable Remedies**. Employee acknowledges that breach of this Agreement would cause Ad-Vantage to suffer irreparable harm for which monetary damages would be inadequate compensation. Employee agrees that Ad-Vantage will be entitled to an injunction restraining any actual or threatened breach of this Agreement, or specific performance, if applicable, in addition to any monetary damages.

8. **No Contract of Employment Created by this Agreement**. This Agreement does not create an express or implied contract of employment. Rather, the employment relationship between Employee and Ad-Vantage is governed by the terms of the Employment Agreement between Ad-Vantage and the Employee.

9. **Entire Agreement**. This Agreements sets forth the entire agreement of the parties with respect to the subject matter hereof, and supersedes all prior agreements, whether written or oral.

10. **Waiver and Amendment**. This Agreement may be amended only by a writing signed by both parties hereto. No oral waiver, amendment or modification of this Agreement shall be effective under any circumstances. The waiver by Ad-Vantage of a breach of any provision

of this Agreement shall not operate or be construed as a waiver of any other or subsequent breach of this Agreement by Employee.

11. **Term of Agreement**. This Agreement will remain in force during Employee's employment and will continue thereafter until all Confidential Information acquired by Employee becomes part of the public knowledge other than through a violation of this Agreement.

12. **Successors and Assigns**. This Agreement shall be binding upon and continue to the benefit or successors and assigns of Ad-Vantage whether by way of merger, consolidation, operation of law, assignment, purchase, or other acquisition of substantially all the assets or business of Ad-Vantage.

13. **Severability**. Should any provision of this Agreement be considered unenforceable by a court of law, the remainder of the Agreement shall remain in force to the fullest extent permitted by law.

14. **Governing Law**. This Agreement shall be governed by and interpreted in accordance with the laws of the state of California, without giving effect to principles of conflicts of law. Employee hereby consents to the personal jurisdiction of the state and federal courts located in the State of California in connection with any litigation related to this Agreement and agrees that the exclusive venue for any such litigation shall be in such courts located in the State of California.

**Employee Acknowledgement**
I have read this entire agreement and fully understand the limitations that it imposes upon me.

Date:                       April 16, 2015

Employee Name:              Richard Silverberg

Employee Signature:

**AdVantage Acknowledgment**

Date:

By:

Print Name:

Title:

4

**EXHIBIT A**

The following is a list of all Employee Intellectual Property created, conceived, developed or reduced to practice by Employee prior to date of this Agreement:

# EXHIBIT "2"

**Report Date: Sep 23, 2015**





Do It Yourself Doesn't Mean Do It Alone!

Call CLAS For Assistance: 800.952.5696

## UCC Search Report

| | |
|---|---|
| **Type of Search :** | UCCs and Federal Tax Liens |
| **Jurisdiction/Filing Office :** | State of Nevada, Secretary of State Uniform Commercial Code Division |
| **Effective Index Date :** | Sep. 17, 2015 |
| **Subject Search Name :** | MEDIASHIFT |
| **Search Key Entered :** | MEDIASHIFT |

## Results

Based on a search of the indices of the Uniform Commercial Code Division of the Secretary of State of Nevada, there are no active liens of record other than those set out below. Liens reflected in this report were based on the searcher's individual search parameters, the search key entered, as well as the searcher's choice of the liens ultimately included or excluded herein.
**Certification can only be obtained through the office of the Nevada Secretary of State.**

**1. Financing Statement**

| | |
|---|---|
| **Document No. :** | 2013027283-8          **Lapses:** 10/22/2018 |
| **Filed :** | 10/22/2013 |
| **Debtor :** | MEDIASHIFT, INC.<br>20062 SW BIRCH ST, STE 220<br>NEWPORT BEACH  CA  92660 |
| **Secured Party:** | FAST PAY PARTNERS, LLC<br>9300 WILSHIRE BLVD., SUITE 500<br>BEVERLY HILLS  CA  90212 |
| **Amendment Type :** | Termination |
| **File No. :** | 2015005490-5 |
| **Filed :** | 3/2/2015 |

**2. Financing Statement**

| | |
|---|---|
| **Document No. :** | 2014001180-2          **Lapses:** 1/15/2019 |
| **Filed :** | 1/15/2014 |
| **Debtor :** | MEDIASHIFT, INC.<br>20062 SW BIRCH ST. #220<br>NEWPORT BEACH  CA  92660 |
| **Secured Party:** | ELEVATION FUND, LLC<br>5825 E IRISH PLACE<br>CENTENNIAL  CO  80112 |
| **Secured Party:** | KIRBY ENTERPRISE FUND, LLC<br>5825 IRISH PLACE<br>CENTENNIAL  CO  80112 |
| **Secured Party:** | VELDKAMP, JAMES A<br>2324 S CLAYTON STREET<br>DENVER  CO  80210 |
| **Secured Party:** | WEST HAMPTON SPECIAL SITUATIONS FUND, LLC<br>5825 IRISH PLACE<br>CENTENNIAL  CO  80112 |

**3. Financing Statement**

**Document No. :** 2014003724-8                    **Lapses:** 2/11/2019

**Filed :** 2/11/2014

**Debtor :** MEDIASHIFT, INC.
20062 S.W. BIRCH STREET, SUITE 220
NEWPORT BEACH  CA  92660

**Secured Party:** JMW FUND, LLC
4 RICHLAND PLACE
PASADENA  CA  91103

**Secured Party:** RICHLAND FUND, LLC
4 RICHLAND PLACE
PASADENA  CA  91103

## 4. Financing Statement

**Document No. :** 2014009177-3                    **Lapses:** 4/14/2019

**Filed :** 4/14/2014

**Debtor :** MEDIASHIFT, INC.
20062 S.W. BIRCH STREET, SUITE 220
NEWPORT BEACH  CA  92660

**Secured Party:** ELEVATION FUND, LLC
5825 E. IRISH PLACE
CENTENNIAL  CO  80112

**Secured Party:** KIRBY ENTERPRISE FUND, LLC
5825 E. IRISH PLACE
CENTENNIAL  CO  80112

## 5. Financing Statement

**Document No. :** 2014013123-6                    **Lapses:** 5/28/2019

**Filed :** 5/28/2014

**Debtor :** MEDIASHIFT, INC.
20062 S. W. BIRCH STREET, SUITE 220
NEWPORT BEACH  CA  92660

**Secured Party:** FISK INVESTMENTS, LLC
4550 CHERRY CREEK DRIVE
SOUTH GLENDALE  CO  80246

## 6. Financing Statement

**Document No. :** 2014016399-2                    **Lapses:** 6/27/2019

**Filed :** 6/27/2014

**Debtor :** MEDIASHIFT, INC.
20062 S. W. BIRCH STREET, SUITE 220
NEWPORT BEACH  CA  92660

**Secured Party:** KEARNEY HOLDINGS, LLC
5825 E. IRISH PLACE
CENTENNIAL  CO  80112

**Secured Party:** KEARNEY PROPERTIES, LLC
5825 E. IRISH PLACE
CENTENNIAL  CO  80112

**Secured Party:** LARSON, DON
500 FORD ROAD
ST. LOUIS PARK  MN  55426

## 7. Financing Statement

**Document No. :** 2014028284-3                    **Lapses:** 11/3/2019

**Filed :** 11/3/2014

**Debtor :** MEDIASHIFT, INC.
600 NORTH BRAND BLVD., SUITE 230
GLENDALE  CA  91203

**Secured Party:** MEDIASHIFT HOLDINGS, INC.
4500 CHERRY CREEK DRIVE SOUTH, SUITE 550
GLENDALE  CO  80246

We assume no liability with respect to the identity of any party named or referred to in this report, nor with respect to the validity, legal effect or priority of any matter shown herein; nor, due to our inability to independently verify the accuracy of this data as provided by government and other sources, do we make any guaranty or representation as to its accuracy.

---------- **END OF REPORT** ----------

**Report Parameters**

The UCC Revised Article 9 Model Administrative Rules (MARS) provide state filing offices with a set of guidelines for producing a legally compliant UCC lien search report. The search tool used to create this search report was designed to satisfy the requirements under MARS while providing the searcher with increased flexibility.

Flexible search logic generates a more inclusive search report and addresses the inconsistencies in searches performed within states that did not effectively adopt the MARS guidelines. Further, these specially designed broad-based searching features aid in the location of involuntary liens such as Federal and State Tax Liens and Judgment Liens and liens that may not be located in state databases limited to the MARS guidelines for the reporting of UCCs.

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

| A. NAME & PHONE OF CONTACT AT FILER [optional] |
|---|
| TRACY HUFF |

| B. SEND ACKNOWLEDGMENT TO:   (Name and Address) |
|---|
| TRACY HUFF<br>FIRST CORPORATE SOLUTIONS<br>914 S STREET<br>SACRAMENTO, CA 95814 |

| Filed in the office of | Document Number |
|---|---|
| *Ross Miller* | **2013027283-8** |
| Ross Miller | Filing Date and Time |
| Secretary of State | **10/22/2013 11:02 AM** |
| State of Nevada | |

(This document was filed electronically.)
THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| MEDIASHIFT, INC. | | | | | |
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| | | | | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |
| 20062 SW BIRCH ST., STE 220 | NEWPORT BEACH | CA | 92660 | | |
| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| | | | | | |
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| | | | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |
| | | | | | |
| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| FAST PAY PARTNERS, LLC | | | | | |
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| | | | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |
| 9300 WILSHIRE BLVD., SUITE 500 | BEVERLY HILLS | CA | 90212 | | |

4. This FINANCING STATEMENT covers the following collateral:

ALL OF THE DEBTOR'S ACCOUNTS, BOOKS AND RECORDS, CONTRACT RIGHTS, DEPOSIT ACCOUNTS, DOCUMENTS, EQUIPMENT, URLS, GENERAL INTANGIBLES (INCLUDING INTELLECTUAL PROPERTY, PATENTS, TRADEMARKS, COPYRIGHTS AND LICENSES THEREOF),
GOODS, INSTRUMENTS, INVENTORY, INVESTMENT PROPERTY, LETTER-OF-CREDIT RIGHTS, LETTERS OF CREDIT, AND ALL SUMS ON
DEPOSIT IN ANY COLLECTION OR DEPOSIT ACCOUNT; ANY MONEY, OR OTHER ASSETS OF DEBTOR THAT COME INTO THE POSSESSION,
CUSTODY, OR CONTROL OF SECURED PARTY NOW OR IN THE FUTURE; PROCEEDS OF ANY OF THE ABOVE; AND ALL OF THE ABOVE
COLLATERAL, WHETHER NOW OWNED OR EXISTING OR ACQUIRED NOW OR IN THE FUTURE OR IN WHICH DEBTOR HAS RIGHTS NOW OR
IN THE FUTURE.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum | | [if applicable] | 7. Check to REQUEST SEARCH REPORT (S) on Debtor(s) [ADDITIONAL FEE] [optional] | | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |

8. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
TRACY HUFF

B. E-MAIL CONTACT AT FILER (optional)
TRACYH@FICOSO.COM

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

TRACY HUFF
FIRST CORPORATE SOLUTIONS
914 S STREET
SACRAMENTO, CA 95814

Filed in the office of

*Barbara K. Cegavske*

Barbara K. Cegavske
Secretary of State
State of Nevada

Document Number
**2015005490-5**

Filing Date and Time
**03/02/2015 1:40 PM**

**THIS DOCUMENT WAS FILED ELECTRONICALLY**
THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE NUMBER
2013027283-8

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record]
(or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

2. ☑ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ ASSIGNMENT (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ PARTY INFORMATION CHANGE:

Check one of these two boxes:

This Change affects ☐ Debtor or ☐ Secured Party of record

AND Check one of these three boxes to:

☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

| | 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| | 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 7b. INDIVIDUAL'S SURNAME | | | |
| | INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| | INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☐ COLLATERAL CHANGE: Also check one of these four boxes: ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral

Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| | 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| | FAST PAY PARTNERS, LLC | | | |
| OR | 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:

International Association of Commercial Administrators (IACA)
FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

| A. NAME & PHONE OF CONTACT AT FILER [optional] |
|---|
| Howard Kern                                  3108576342 |

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

Howard Kern
HOWARD J. KERN, PC
579 Erskine Drive
Pacific Palisades, CA 90272

| Filed in the office of | Document Number |
|---|---|
| *Ross Miller signature* | **2014001180-2** |
| Ross Miller | Filing Date and Time |
| Secretary of State | **01/15/2014 10:09 AM** |
| State of Nevada | |

(This document was filed electronically.)
THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| MEDIASHIFT, INC. | | | | | |

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|---|

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 20052 SW BIRCH ST. #220 | NEWPORT BEACH | CA | 92660 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | | | | ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | | | | ☐ NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| KIRBY ENTERPRISE FUND, LLC | | | | | |

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5825 IRISH PLACE | CENTENNIAL | CO | 80112 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

?COLLATERAL? SHALL MEAN AND INCLUDE ALL RIGHT, TITLE, INTEREST, CLAIMS AND DEMANDS OF THE DEBTOR IN AND TO EACH AND EVERY ACCOUNTS RECEIVABLE, WHETHER NOW OWNED OR HEREAFTER ACQUIRED, TOGETHER WITH ALL SUBSTITUTIONS, RENEWALS OR REPLACEMENTS OF AND ADDITIONS, IMPROVEMENTS, REPLACEMENT PARTS AND ACCUMULATIONS TO ANY AND ALL OF SUCH ASSETS.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]    [optional] | | | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
| 8. OPTIONAL FILER REFERENCE DATA | | | | | | |

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

# UCC FINANCING STATEMENT ADDITIONAL PARTY
**FOLLOW INSTRUCTIONS (front and back) CAREFULLY**

## 19. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT

| | | | |
|---|---|---|---|
| 19a. ORGANIZATION'S NAME | | | |
| MEDIASHIFT, INC. | | | |

OR

| 19b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX |
|---|---|---|
| | | |

**20. MISCELLANEOUS:**

[This document was filed electronically.]
THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

## 21. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one name (21a or 21b) - do not abbreviate or combine names

| 21a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 21b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 21c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 21d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 21e. TYPE OF ORGANIZATION | 21f. JURISDICTION OF ORGANIZATION | 21g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

## 22. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one name (22a or 22b) - do not abbreviate or combine names

| 22a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 22b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 22c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 22d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 22e. TYPE OF ORGANIZATION | 22f. JURISDICTION OF ORGANIZATION | 22g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

## 23. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one name (23a or 23b) - do not abbreviate or combine names

| 23a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 23b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 23c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 23d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 23e. TYPE OF ORGANIZATION | 23f. JURISDICTION OF ORGANIZATION | 23g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

## 24. ADDITIONAL SECURED PARTY'S NAME (or Name of TOTAL ASSIGNEE) - insert only one name (24a or 24b)

| 24a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| WEST HAMPTON SPECIAL SITUATIONS FUND, LLC | | | | |

OR

| 24b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 24c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5825 IRISH PLACE | CENTENNIAL | CO | 80112 | USA |

## 25. ADDITIONAL SECURED PARTY'S NAME (or Name of TOTAL ASSIGNEE) - insert only one name (25a or 25b)

| 25a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| ELEVATION FUND, LLC | | | | |

OR

| 25b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 25c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5825 E IRISH PLACE | CENTENNIAL | CO | 80112 | USA |

**FILING OFFICE COPY — UCC FINANCING STATEMENT ADDITIONAL PARTY (FORM UCC1AP) (REV. 05/22/02)**

# UCC FINANCING STATEMENT ADDITIONAL PARTY
**FOLLOW INSTRUCTIONS (front and back) CAREFULLY**

**19. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

OR

19a. ORGANIZATION'S NAME
MEDIASHIFT, INC.

| 19b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |
|---|---|---|
| | | |

**20. MISCELLANEOUS:**

[This document was filed electronically.]
**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**21. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one name (21a or 21b) - do not abbreviate or combine names

21a. ORGANIZATION'S NAME

OR

| 21b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 21c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 21d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 21e. TYPE OF ORGANIZATION | 21f. JURISDICTION OF ORGANIZATION | 21g. ORGANIZATIONAL ID #, if any | NONE |
|---|---|---|---|---|---|

**22. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one name (22a or 22b) - do not abbreviate or combine names

22a. ORGANIZATION'S NAME

OR

| 22b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 22c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 22d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 22e. TYPE OF ORGANIZATION | 22f. JURISDICTION OF ORGANIZATION | 22g. ORGANIZATIONAL ID #, if any | NONE |
|---|---|---|---|---|---|

**23. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one name (23a or 23b) - do not abbreviate or combine names

23a. ORGANIZATION'S NAME

OR

| 23b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 23c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 23d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 23e. TYPE OF ORGANIZATION | 23f. JURISDICTION OF ORGANIZATION | 23g. ORGANIZATIONAL ID #, if any | NONE |
|---|---|---|---|---|---|

**24. ADDITIONAL SECURED PARTY'S NAME (or Name of TOTAL ASSIGNEE)** - insert only one name (24a or 24b)

24a. ORGANIZATION'S NAME

OR

| 24b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| VELDKAMP | JAMES | A | |

| 24c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 2324 S CLAYTON STREET | DENVER | CO | 80210 | |

**25. ADDITIONAL SECURED PARTY'S NAME (or Name of TOTAL ASSIGNEE)** - insert only one name (25a or 25b)

25a. ORGANIZATION'S NAME

OR

| 25b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 25c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
NICOLE PARNELL                    949-955-9585

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

NICOLE PARNELL
CHARLES BACLET AND ASSOCIATES, INC.
2030 MAIN STREET,
SUITE 1030
IRVINE, CA 92514

**Filed in the office of**
Ross Miller
Secretary of State
State of Nevada

Document Number
**2014003724-8**

Filing Date and Time
**02/11/2014 4:01 PM**

(This document was filed electronically.)
THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | | | |
|---|---|---|---|---|---|---|
| MEDIASHIFT, INC. | | | | | | |
| 1b. INDIVIDUAL'S LAST NAME | | FIRST NAME | | MIDDLE NAME | | SUFFIX |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 20062 S.W. BIRCH STREET, SUITE 220 | NEWPORT BEACH | CA | 92660 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | NONE |
|---|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | | | |
|---|---|---|---|---|---|---|
| 2b. INDIVIDUAL'S LAST NAME | | FIRST NAME | | MIDDLE NAME | | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | NONE |
|---|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | | |
|---|---|---|---|---|---|---|
| RICHLAND FUND, LLC | | | | | | |
| 3b. INDIVIDUAL'S LAST NAME | | FIRST NAME | | MIDDLE NAME | | SUFFIX |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 4 RICHLAND PLACE | PASADENA | CA | 91103 | |

4. This FINANCING STATEMENT covers the following collateral:

ALL RIGHT, TITLE AND INTEREST OF THE DEBTOR IN AND TO THE COLLATERAL. ?COLLATERAL? SHALL MEAN AND
INCLUDE ALL RIGHT, TITLE, INTEREST, CLAIMS AND DEMANDS OF THE DEBTOR IN AND TO EACH AND EVERY ASSET,
TANGIBLE AND INTANGIBLE, IN WHICH THE DEBTOR HAS ANY RIGHT, TITLE, INTEREST, CLAIM OR DEMAND, INCLUDING,
BUT NOT LIMITED TO, ACCOUNTS RECEIVABLE, EQUIPMENT, FIXTURES, REAL AND PERSONAL PROPERTY, PATENTS,
TRADEMARKS, COPYRIGHTS, TRADE SECRETS, CONFIDENTIAL INFORMATION AND ANY OTHER PROPRIETARY OR
INTELLECTUAL PROPERTY RIGHTS, WHETHER NOW OWNED OR HEREAFTER ACQUIRED, TOGETHER WITH ALL SUBSTITUTIONS,
RENEWALS OR REPLACEMENTS OF AND ADDITIONS, IMPROVEMENTS, REPLACEMENT PARTS AND ACCUMULATIONS TO ANY AND
ALL OF SUCH ASSETS.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum   [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional] | All Debtors | Debtor 1 | Debtor 2 |
|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## UCC FINANCING STATEMENT ADDITIONAL PARTY
**FOLLOW INSTRUCTIONS (front and back) CAREFULLY**

**19. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

OR

| 19a. ORGANIZATION'S NAME |
|---|
| MEDIASHIFT, INC. |

| 19b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX |
|---|---|---|
| | | |

**20. MISCELLANEOUS:**

(This document was filed electronically.)
**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**21. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one name (21a or 21b) - do not abbreviate or combine names

OR

| 21a. ORGANIZATION'S NAME |
|---|
| |

| 21b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 21c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 21d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 21e. TYPE OF ORGANIZATION | 21f. JURISDICTION OF ORGANIZATION | 21g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

**22. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one name (22a or 22b) - do not abbreviate or combine names

OR

| 22a. ORGANIZATION'S NAME |
|---|
| |

| 22b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 22c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 22d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 22e. TYPE OF ORGANIZATION | 22f. JURISDICTION OF ORGANIZATION | 22g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

**23. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one name (23a or 23b) - do not abbreviate or combine names

OR

| 23a. ORGANIZATION'S NAME |
|---|
| |

| 23b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 23c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 23d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 23e. TYPE OF ORGANIZATION | 23f. JURISDICTION OF ORGANIZATION | 23g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

**24. ADDITIONAL SECURED PARTY'S NAME (or Name of TOTAL ASSIGNEE)** - Insert only one name (24a or 24b)

OR

| 24a. ORGANIZATION'S NAME |
|---|
| JMW FUND, LLC |

| 24b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 24c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 4 RICHLAND PLACE | PASADENA | CA | 91103 | |

**25. ADDITIONAL SECURED PARTY'S NAME (or Name of TOTAL ASSIGNEE)** - Insert only one name (25a or 25b)

OR

| 25a. ORGANIZATION'S NAME |
|---|
| |

| 25b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 25c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**FILING OFFICE COPY — UCC FINANCING STATEMENT ADDITIONAL PARTY (FORM UCC1AP) (REV. 05/22/02)**

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
NICOLE PARNELL                          949-955-9585

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

NICOLE PARNELL
CHARLES BACLET AND ASSOCIATES, INC.
2030 MAIN STREET,
SUITE 1030
IRVINE, CA 92614

Filed in the office of
Ross Miller
Secretary of State
State of Nevada

Document Number
2014009177-3
Filing Date and Time
04/14/2014 2:36 PM

(This document was filed electronically.)
THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

1a. ORGANIZATION'S NAME
MEDIASHIFT, INC.

1c. MAILING ADDRESS
20062 S.W. BIRCH STREET, SUITE 220
CITY NEWPORT BEACH
STATE CA
POSTAL CODE 92660

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

3a. ORGANIZATION'S NAME
KIRBY ENTERPRISE FUND, LLC

3c. MAILING ADDRESS
5825 E. IRISH PLACE
CITY CENTENNIAL
STATE CO
POSTAL CODE 80112

**4. This FINANCING STATEMENT covers the following collateral:**

?COLLATERAL? SHALL MEAN AND INCLUDE ALL RIGHT, TITLE, INTEREST, CLAIMS AND DEMANDS OF THE DEBTOR IN AND TO EACH AND EVERY ASSET, TANGIBLE AND INTANGIBLE, IN WHICH THE DEBTOR HAS ANY RIGHT, TITLE, INTEREST, CLAIM OR DEMAND, INCLUDING, BUT NOT LIMITED TO, ACCOUNTS RECEIVABLE, EQUIPMENT, FIXTURES, REAL AND PERSONAL PROPERTY, PATENTS, TRADEMARKS, COPYRIGHTS, TRADE SECRETS, CONFIDENTIAL INFORMATION AND ANY OTHER PROPRIETARY OR INTELLECTUAL PROPERTY RIGHTS, WHETHER NOW OWNED OR HEREAFTER ACQUIRED, TOGETHER WITH ALL SUBSTITUTIONS, RENEWALS OR REPLACEMENTS OF AND ADDITIONS, IMPROVEMENTS, REPLACEMENT PARTS AND ACCUMULATIONS TO ANY AND ALL OF SUCH ASSETS.

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

# UCC FINANCING STATEMENT ADDITIONAL PARTY
**FOLLOW INSTRUCTIONS (front and back) CAREFULLY**

**19. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

| | | |
|---|---|---|
| 19a. ORGANIZATION'S NAME | | |
| MEDIASHIFT, INC. | | |

OR

| 19b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX |
|---|---|---|
| | | |

**20. MISCELLANEOUS:**

(This document was filed electronically.)
**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**21. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one name (21a or 21b) - do not abbreviate or combine names

| 21a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

OR

| 21b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 21c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 21d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 21e. TYPE OF ORGANIZATION | 21f. JURISDICTION OF ORGANIZATION | 21g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

**22. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one name (22a or 22b) - do not abbreviate or combine names

| 22a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

OR

| 22b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 22c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 22d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 22e. TYPE OF ORGANIZATION | 22f. JURISDICTION OF ORGANIZATION | 22g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

**23. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one name (23a or 23b) - do not abbreviate or combine names

| 23a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

OR

| 23b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 23c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 23d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 23e. TYPE OF ORGANIZATION | 23f. JURISDICTION OF ORGANIZATION | 23g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

**24. ADDITIONAL SECURED PARTY'S NAME (or Name of TOTAL ASSIGNEE)** - insert only one name (24a or 24b)

| | | | |
|---|---|---|---|
| 24a. ORGANIZATION'S NAME | | | |
| ELEVATION FUND, LLC | | | |

OR

| 24b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 24c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5825 E. IRISH PLACE | CENTENNIAL | CO | 80112 | |

**25. ADDITIONAL SECURED PARTY'S NAME (or Name of TOTAL ASSIGNEE)** - insert only one name (25a or 25b)

| 25a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

OR

| 25b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 25c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**FILING OFFICE COPY — UCC FINANCING STATEMENT ADDITIONAL PARTY (FORM UCC1AP) (REV. 05/22/02)**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Howard Kern                              3108576342

B. SEND ACKNOWLEDGMENT TO:   (Name and Address)

```
┌                                          ┐
  Howard Kern
  HOWARD J. KERN, PC
  579 Erskine Drive
  Pacific Palisades, CA 90272

└                                          ┘
```

| Filed in the office of | Document Number |
|---|---|
| *[signature]* | **2014013123-6** |
| Ross Miller | Filing Date and Time |
| Secretary of State | **05/28/2014 7:31 AM** |
| State of Nevada | |

(This document was filed electronically.)
THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

1a. ORGANIZATION'S NAME
MEDIASHIFT, INC.

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 20062 S. W. BIRCH STREET, SUITE 220 | NEWPORT BEACH | CA | 92660 | UNITE |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | NONE |
|---|---|---|---|---|---|
| | | | | | |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

2a. ORGANIZATION'S NAME

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | NONE |
|---|---|---|---|---|---|
| | | | | | |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

3a. ORGANIZATION'S NAME
FISK INVESTMENTS, LLC

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 4550 CHERRY CREEK DRIVE | SOUTH GLENDALE | CO | 80246 | UNITE |

4. This FINANCING STATEMENT covers the following collateral:

"COLLATERAL" SHALL MEAN AND INCLUDE ALL RIGHT, TITLE, INTEREST, CLAIMS AND DEMANDS OF THE DEBTOR IN AND TO EACH AND EVERY ASSET, TANGIBLE AND INTANGIBLE, IN WHICH THE DEBTOR HAS ANY RIGHT, TITLE, INTEREST, CLAIM OR DEMAND, INCLUDING, BUT NOT LIMITED TO, ACCOUNTS RECEIVABLE, EQUIPMENT, FIXTURES, REAL AND PERSONAL PROPERTY, PATENTS, TRADEMARKS, COPYRIGHTS, TRADE SECRETS, CONFIDENTIAL INFORMATION AND ANY OTHER PROPRIETARY OR INTELLECTUAL PROPERTY RIGHTS, WHETHER NOW OWNED OR HEREAFTER ACQUIRED, TOGETHER WITH ALL SUBSTITUTIONS, RENEWALS OR REPLACEMENTS OF AND ADDITIONS, IMPROVEMENTS, REPLACEMENT PARTS AND ACCUMULATIONS TO ANY AND ALL OF SUCH ASSETS.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS    Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]    [optional] | All Debtors | Debtor 1 | Debtor 2 |
|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA

**FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)**

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Howard Kern                           3108576342

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

    ⌐                                          ⌐
    │  Howard Kern
       HOWARD J. KERN, PC
       579 Erskine Drive
       Pacific Palisades, CA 90272
    └                                          ┘

**Filed in the office of**

*Ros Mn*

Ross Miller
Secretary of State
State of Nevada

| Document Number |
|---|
| **2014016399-2** |
| Filing Date and Time |
| **06/27/2014 9:10 AM** |

(This document was filed electronically.)
THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

1a. ORGANIZATION'S NAME
MEDIASHIFT, INC.

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 20052 S. W. BIRCH STREET, SUITE 220 | NEWPORT BEACH | CA | 92660 | US |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | □ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

2a. ORGANIZATION'S NAME

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | □ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

3a. ORGANIZATION'S NAME
KEARNEY HOLDINGS, LLC

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5825 E. IRISH PLACE | CENTENNIAL | CO | 80112 | US |

4. This FINANCING STATEMENT covers the following collateral:

"COLLATERAL" SHALL MEAN AND INCLUDE ALL RIGHT, TITLE, INTEREST, CLAIMS AND DEMANDS OF THE DEBTOR IN AND TO EACH AND EVERY ASSET, TANGIBLE AND INTANGIBLE, IN WHICH THE DEBTOR HAS ANY RIGHT, TITLE, INTEREST, CLAIM OR DEMAND, INCLUDING, BUT NOT LIMITED TO, ACCOUNTS RECEIVABLE, EQUIPMENT, FIXTURES, REAL AND PERSONAL PROPERTY, PATENTS, TRADEMARKS, COPYRIGHTS, TRADE SECRETS, CONFIDENTIAL INFORMATION AND ANY OTHER PROPRIETARY OR INTELLECTUAL PROPERTY RIGHTS, WHETHER NOW OWNED OR HEREAFTER ACQUIRED, TOGETHER WITH ALL SUBSTITUTIONS, RENEWALS OR REPLACEMENTS OF AND ADDITIONS, IMPROVEMENTS, REPLACEMENT PARTS AND ACCUMULATIONS TO ANY AND ALL OF SUCH ASSETS.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. □ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum   [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional] | All Debtors | Debtor 1 | Debtor 2 |
|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA

# UCC FINANCING STATEMENT ADDITIONAL PARTY
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**19. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

| | |
|---|---|
| 19a. ORGANIZATION'S NAME | MEDIASHIFT, INC. |

OR

| 19b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX |
|---|---|---|
| | | |

**20. MISCELLANEOUS:**

(This document was filed electronically.)
THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**21. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one name (21a or 21b) - do not abbreviate or combine names

| 21a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| OR 21b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 21c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |

| 21d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 21e. TYPE OF ORGANIZATION | 21f. JURISDICTION OF ORGANIZATION | 21g. ORGANIZATIONAL ID #, if any | ☐ NONE |
|---|---|---|---|---|---|

**22. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one name (22a or 22b) - do not abbreviate or combine names

| 22a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| OR 22b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 22c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |

| 22d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 22e. TYPE OF ORGANIZATION | 22f. JURISDICTION OF ORGANIZATION | 22g. ORGANIZATIONAL ID #, if any | ☐ NONE |
|---|---|---|---|---|---|

**23. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one name (23a or 23b) - do not abbreviate or combine names

| 23a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| OR 23b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 23c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |

| 23d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 23e. TYPE OF ORGANIZATION | 23f. JURISDICTION OF ORGANIZATION | 23g. ORGANIZATIONAL ID #, if any | ☐ NONE |
|---|---|---|---|---|---|

**24. ADDITIONAL SECURED PARTY'S NAME (or Name of TOTAL ASSIGNEE)** - insert only one name (24a or 24b)

| 24a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| OR 24b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| LARSON | DON | | | | |
| 24c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 500 FORD ROAD | ST. LOUIS PARK | | MN | 55426 | US |

**25. ADDITIONAL SECURED PARTY'S NAME (or Name of TOTAL ASSIGNEE)** - insert only one name (25a or 25b)

| 25a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| KEARNEY PROPERTIES, LLC | | | | | |
| OR 25b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 25c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 5825 E. IRISH PLACE | CENTENNIAL | | CO | 80112 | US |

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDITIONAL PARTY (FORM UCC1AP) (REV. 05/22/02)

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| | |
|---|---|
| A. NAME & PHONE OF CONTACT AT FILER (optional) | |
| B. E-MAIL CONTACT AT FILER (optional) | |
| C. SEND ACKNOWLEDGMENT TO: (Name and Address) | |

Corporation Service Company
830 Bear Tavern Road
Suite 305
West Trenton, New Jersey 08628

| Filed in the office of | Document Number |
|---|---|
| *signature* Ross Miller Secretary of State State of Nevada | 2014028284-3 |
| | Filing Date and Time |
| | 11/03/2014 5:03 PM |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| MediaShift, Inc. | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 600 North Brand Blvd., Suite 230 | Glendale | CA | 91203 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| MediaShift Holdings, Inc. | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 4500 Cherry Creek Drive South, Suite 550 | Glendale | CO | 80246 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

See attached Exhibit A.

| 5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) | being administered by a Decedent's Personal Representative |
|---|---|
| 6a. Check only if applicable and check only one box: | 6b. Check only if applicable and check only one box: |
| ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien ☐ Non-UCC Filing |
| 7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor | |

8. OPTIONAL FILER REFERENCE DATA:
File with NV SOS                                      360417 004

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)    International Association of Commercial Administrators (IACA)

# EXHIBIT A

## Collateral

All rights, titles, and interests of Debtor in, to, and under all the following property held, in all its forms, whether now or hereafter existing, whether now owned or hereafter acquired, created or arising, and wherever located (collectively, but without duplication, and except for any Excluded Collateral, the "**Collateral**"):

(i)     all Accounts;

(ii)    all Equipment;

(iii)   all Inventory;

(iv)    all General Intangibles;

(v)     all Fixtures;

(vi)    all Documents, Chattel Paper, and Letter-of-Credit Rights;

(vii)   all Deposit Accounts;

(viii)  all Instruments and Investment Property;

(ix)    all Commercial Tort Claims;

(x)     all Supporting Obligations; and

(xi)    all Proceeds of any and all of the foregoing.

The following terms, as used herein, have the corresponding meanings:

"**Account**" is used as defined in the Uniform Commercial Code, but in any event shall include, but not be limited to, any right to payment arising out of goods or other property (including, without limitation, intellectual property) sold or leased, licensed, assigned or disposed of or for services rendered which is not evidenced by an instrument or chattel paper, whether or not it has been earned by performance, including all rights to payment of rents and other obligations under any lease, license, or other contract, and all rights incident thereto.

"**Chattel Paper**" is used as defined in the Uniform Commercial Code, but in any event shall include, but not be limited to, a writing or writings which evidence both a monetary obligation and a security interest in, or a lease of, specific goods.

"**Commercial Tort Claims**" is used as defined in the Uniform Commercial Code, except it shall refer only to such claims that have been asserted in judicial proceedings.

Page 1 of 4

"**Deposit Account**" is used as defined in the Uniform Commercial Code, but in any event shall include, but not be limited to, any demand, time, savings, passbook or other deposit account, except that it shall not include any Excluded Deposit Account.

"**Document**" is used as defined in the Uniform Commercial Code, but in any event shall include, but not be limited to, any bill of lading, dock warrant, dock receipt, warehouse receipt or order for the delivery of goods, and also any other document which in the regular course of business or financing is treated as adequately evidencing that the Person in possession of it is entitled to receive, hold and dispose of the document and the goods it covers.

"**Equipment**" is used as defined in the Uniform Commercial Code, but in any event shall include, but not be limited to, tangible personal property held by Debtor for use primarily in business and shall include equipment, machinery, furniture, vehicles, fixtures, furnishings, dyes, tools, and all accessories and parts now or hereafter affixed thereto as well as all attachments, replacements, substitutes, accessories, additions and improvements to any of the foregoing, but Equipment shall not include Inventory.

"**Excluded Collateral**" means (1) assets subject to capital leases, purchase money financing, and cash to secure letter-of-credit reimbursement obligations, to the extent such capital leases, purchase money financing or letters of credit prohibit other liens and are permitted under the terms of any indebtedness secured by the security interest evidenced hereby; and (2) assets sold to a person who is not an obligor of any such indebtedness in compliance with the terms of such indebtedness.

"**Excluded Deposit Accounts**" means any deposit accounts exclusively used for payroll, payroll taxes and other employee wage and benefit payments to or for the benefit of the employees of the Debtor or any other obligor of the indebtedness secured by the security interest evidenced hereby.

"**Fixtures**" is used as defined in the Uniform Commercial Code.

"**General Intangibles**" is used as defined in the Uniform Commercial Code but in any event shall include, but not be limited to, all personal property of every kind and description other than Goods, Accounts, Fixtures, Documents, Letter-of-Credit Rights, Chattel Paper, Deposit Accounts, Instruments, Investment Property, Commercial Tort Claims and Supporting Obligations, and shall include, without limitation, payment intangibles, contract rights (other than Accounts), franchises, licenses, choses in action, books, records, customer lists, tax, insurance and other kinds of refunds, patents, trademarks, trade names, service marks, slogans, trade dress, copyrights, other intellectual property rights and applications for intellectual property rights, goodwill, plans, licenses, software (to the extent it does not constitute Goods) and other rights in personal property.

"**Goods**" is used as defined in the Uniform Commercial Code, but in any event shall include, but not be limited to, all computer programs imbedded in goods and any supporting information provided in connection with the transaction relating to the program and all other things that are movable.

Exhibit A to UCC-1 (continued)

"**Instruments**" is used as defined in the Uniform Commercial Code, but in any event shall include, but not be limited to, promissory notes, negotiable certificates of deposit, a negotiable instrument or a security or any other writing which evidences a right to the payment of money and is not itself a security agreement or lease and is of a type which is, in the ordinary course of business, transferred by delivery with any necessary endorsement or assignment.

"**Inventory**" is used as defined in the Uniform Commercial Code but in any event shall include, but not be limited to, tangible personal property held by or on behalf of Debtor (or in which Debtor has an interest in mass or a joint or other interest) for sale or lease or to be furnished under contracts of service, tangible personal property which Debtor has so leased or furnished, and raw materials, work in process and materials used, produced or consumed in Debtor's business, and shall include tangible personal property returned to Debtor by the purchaser following a sale thereof by Debtor and tangible personal property represented by Documents. All equipment, accessories and parts at any time attached or added to items of Inventory or used in connection therewith shall be deemed to be part of the Inventory.

"**Investment Property**" is used as defined in the Uniform Commercial Code but in any event shall include, but not be limited to, all securities, whether certificated or uncertificated, all financial assets, all security entitlements, all securities accounts, all commodity contracts and all commodity accounts.

"**Letter-of-Credit Right**" is used as defined in the Uniform Commercial Code, but in any event shall include, but not be limited to, any right to payment or performance under a letter of credit, whether or not the beneficiary has demanded or is at the time entitled to demand payment or performance.

"**Proceeds**" is used as defined in the Uniform Commercial Code but, in any event, shall include, but not be limited to, (a) any and all proceeds of any insurance (whether or not the Secured Party is named as the loss payee thereof), indemnity, warranty or guaranty payable to Debtor or the Secured Party from time to time with respect to any of the Collateral, (b) any and all payments (in any form whatsoever) made or due and payable to Debtor from time to time in connection with any requisition, confiscation, condemnation, seizure or forfeiture of all or any part of the Collateral by any governmental authority (or any person acting under color of governmental authority), (c) any and all amounts received when Collateral is sold, leased, licensed, exchanged, collected or disposed of, (d) any rights arising out of Collateral, and (e) any and all other amounts from time to time paid or payable under or in connection with any of the Collateral.

"**Software**" is used as defined in the Uniform Commercial Code but in any event, shall include, but not be limited to, any computer program or supporting information provided in connection with the transaction relating to the program.

"**Supporting Obligations**" is used as defined in the Uniform Commercial Code but in any event shall include, but not be limited to, guarantees and letters of credit that support payment of another obligation.

"**Uniform Commercial Code**" means the Uniform Commercial Code in effect on the date hereof and as amended from time to time, as enacted in the state in which this UCC-1 financing statement is filed or recorded, or in any state or states which, pursuant to the Uniform Commercial Code as enacted in the state in which this UCC-1 financing statement is filed or recorded, has jurisdiction with respect to all, or any portion of, the Collateral from time to time. The parties intend that the definitions set forth above should be construed in their broadest sense so that Collateral will be construed in its broadest sense. Accordingly, if there are, from time to time, changes to defined terms in the Uniform Commercial Code that broaden the definitions, they are incorporated herein and if existing definitions in the Uniform Commercial Code are broader than the amended definitions, the existing ones shall be controlling. Similarly, where the phrase "as defined in the Uniform Commercial Code, but in any event shall include, but not be limited to . . ." is used above, it means as defined in the Uniform Commercial Code except that if any of the enumerated types of items specified thereafter would not fall within the Uniform Commercial Code definition, they shall nonetheless be included in the applicable definition for purposes of this Agreement.

# EXHIBIT "3"

# Delaware

*Page 1*

### The First State

*CERTIFICATE*

*SEARCHED SEPTEMBER 28, 2015 AT 2:31 P.M.*
*FOR DEBTOR, AD-VANTAGE NETWORKS, INC.*

*1 OF 3*           *FINANCING STATEMENT*              *20113434050*

*DEBTOR:*
*EXPIRATION DATE: 09/07/2016*
*AD-VANTAGE NETWORKS, INC.*

*23052-H ALICIA PARKWAY, #371*          *ADDED    09-07-11*

*MISSION VIEJO, CA 92692*

*SECURED:*   *JPG INVESTMENTS, LLC*

*4 RICHLAND PLACE*          *ADDED    09-07-11*

*PASADENA, CA 91103*


*F I L I N G   H I S T O R Y*

*20113434050*    *FILED 09-07-11    AT 12:21 P.M.    FINANCING STATEMENT*

*20151025039*    *FILED 03-11-15    AT 1:54 P.M.    TERMINATION*

*20151318848*    *FILED 03-30-15    AT 12:20 P.M.    TERMINATION*


*2 OF 3*        *FINANCING STATEMENT*             *20122729657*

*EXPIRATION DATE: 07/16/2017*
*DEBTOR:*      *AD-VANTAGE NETWORKS, INC.*



Jeffrey W. Bullock, Secretary of State

Authentication: 10141654
Date: 09-28-15

You may verify this certificate online at corp.delaware.gov/authver.shtml

# Delaware

Page 2

## The First State

600 N. BRAND BLVD., SUITE 230          ADDED    07-16-12

GLENDALE, CA 91203

SECURED:    JMG EXPLORATION, INC.

180 SOUTH LAKE AVENUE, SEVENTH         ADDED    07-16-12

FLOOR

PASADENA, CA 91101


## FILING HISTORY

20122729657    FILED 07-16-12    AT 4:24 P.M.    FINANCING STATEMENT

20151330298    FILED 03-30-15    AT 3:47 P.M.    TERMINATION


3 OF 3              FINANCING STATEMENT              20144404059

EXPIRATION DATE: 10/31/2019
DEBTOR:     AD-VANTAGE NETWORKS, INC.

600 NORTH BRAND BLVD., SUITE 230       ADDED    10-31-14

GLENDALE, CA 91203

SECURED:    MEDIASHIFT HOLDINGS, INC.

4500 CHERRY CREEK DRIVE SOUTH,         ADDED    10-31-14

SUITE 550

GLENDALE, CO 80246



Jeffrey W. Bullock, Secretary of State

Authentication: 10141654
Date: 09-28-15



# Delaware

*Page 3*

### The First State

*F I L I N G   H I S T O R Y*

*20144404059      FILED 10-31-14      AT 5:32 P.M.      FINANCING STATEMENT*

*E N D   O F   F I L I N G   H I S T O R Y*

*THE UNDERSIGNED FILING OFFICER HEREBY CERTIFIES THAT THE ABOVE
LISTING IS A RECORD OF ALL PRESENTLY EFFECTIVE FINANCING STATEMENTS,
FEDERAL TAX LIENS AND UTILITY SECURITY INSTRUMENTS FILED IN THIS
OFFICE WHICH NAME THE ABOVE DEBTOR, AD-VANTAGE NETWORKS, INC. AS OF
SEPTEMBER 7, 2015 AT 11:59 P.M.*



Jeffrey W. Bullock, Secretary of State

20157412335-UCC11
5R# 20150289314

You may verify this certificate online at corp.delaware.gov/authver.shtml

Authentication: 10141654
Date: 09-28-15

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**

8012577924

**B. SEND ACKNOWLEDGMENT TO:** (Name and Address)

```
KENT  W LARSEN

185 S. STATE ST., #1300




SALT LAKE CITY UT 84111
```

DELAWARE DEPARTMENT OF STATE
U.C.C. FILING SECTION
FILED 12:21 PM 09/07/2011
INITIAL FILING # 2011 3434050

SRV: 110983665

---

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| | |
|---|---|
| **1a. ORGANIZATION'S NAME** | |
| AD-VANTAGE NETWORKS, INC. | |

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 23052-H ALICIA PARKWAY, #371 | MISSION VIEJO | CA | 92692 | US |

| 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION |
|---|---|
| CORPORATION | DE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| | |
|---|---|
| **2a. ORGANIZATION'S NAME** | |
| | |

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION |
|---|---|
| | |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| | |
|---|---|
| **3a. ORGANIZATION'S NAME** | |
| JFG INVESTMENTS, LLC | |

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 4 RICHLAND PLACE | PASADENA | CA | 91103 | US |

**4.  This FINANCING STATEMENT covers the following collateral:**

All of the accounts receivable of the Debtor, together with all proceeds thereof
and all increases, substitutions, replacements, additions and accessions
thereto.

10.  miscellaneous: ADVN

| 6. | This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum    [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]    [optional] | All Debtors | Debtor 1 | Debtor 2 |
|---|---|---|---|---|---|

**8. OPTIONAL FILER REFERENCE DATA**

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

John McGrain

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

AD-VANTAGE NETWORKS

4 RICHLAND PLACE

PASAADENA CA 91103

*DELAWARE DEPARTMENT OF STATE*
*U.C.C. FILING SECTION*
*FILED 01:54 PM 03/11/2015*
*INITIAL FILING # 2011 3434050*
*AMENDMENT    # 2015 1025039*
*SRV: 150342596*

| | |
|---|---|
| 1a. INITIAL FINANCING STATEMENT FILE # <br> 2011 3434050 | 1b.  ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ **ASSIGNMENT (full or partial):** Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. **AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor _or_ ☐ Secured Party of record. Check only _one_ of these two boxes.

Also check _one_ of the following three boxes _and_ provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.  ☐ DELETE name: Give record name to be deleted in item 6a or 6b.  ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7c-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

| OR | 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | | | | |

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

| OR | 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | |
|---|---|---|---|
| | | | |

8. **AMENDMENT (COLLATERAL CHANGE):** check only _one_ box.

Describe collateral ☐ deleted  or  ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT

Ad Vantage Networks

10. OPTIONAL FILER REFERENCE DATA

**UCC FINANCING STATEMENT AMENDMENT**

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

AD-VANTAGE NETWORKS

4 RICHLAND PLACE

PASAADENA CA 91103

DELAWARE DEPARTMENT OF STATE
U.C.C. FILING SECTION
FILED 12:20 PM 03/30/2015
INITIAL FILING # 2011 3434050
AMENDMENT    # 2015 1318848
SRV: 150431866

| 1a. INITIAL FINANCING STATEMENT FILE # | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] [or recorded] in the REAL ESTATE RECORDS. |
|---|---|
| 2011 3434050 | |

2. ☐# **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ **ASSIGNMENT** (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. **AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor **or** ☐ Secured Party of record. Check only **one** of these two boxes.

Also check **one** of the following three boxes **and** provide appropriate information in Items 6 and/or 7.

☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.    ☐ DELETE name: Give record name to be deleted in item 6a or 6b.    ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | |
|---|---|---|---|

8. **AMENDMENT (COLLATERAL CHANGE):** check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT

JPG Investments, LLC

10. OPTIONAL FILER REFERENCE DATA

**UCC FINANCING STATEMENT**

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Howard Appel (310-788-7577)

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

Howard Appel
c/o Law Offices of Aaron A. Grunfeld & Associates
1100 Glendon Avenue, Suite 850
Los Angeles, California 90024

DELAWARE DEPARTMENT OF STATE
U.C.C. FILING SECTION
FILED 04:24 PM 07/16/2012
INITIAL FILING # 2012 2729657

SRV: 120840090

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - Insert only one debtor name (1a or 1b) - do not abbreviate or combine names

1a. ORGANIZATION'S NAME
**Ad-Vantage Networks, Inc.**

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| **600 N. Brand Blvd., Suite 230** | **Glendale** | **CA** | **91203** | **USA** |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | **Corporation** | **Delaware** | **DE4791955** ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - Insert only one debtor name (2a or 2b) - do not abbreviate or combine names

2a. ORGANIZATION'S NAME

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - Insert only one secured party name (3a or 3b)

3a. ORGANIZATION'S NAME
**JMG Exploration, Inc.**

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| **180 South Lake Avenue, Seventh Floor** | **Pasadena** | **CA** | **91101** | **USA** |

4. This FINANCING STATEMENT covers the following collateral:

**All the assets of Debtor including, but not limited to, all tools, inventory, contract rights, consumer goods, equipment, inventory, general intangibles, accounts, chattel paper, deposit accounts, documents, instruments, investment property, letter-of-credit rights, letters of credit, money, patents, licenses, intellectual property, cash, cash equivalents, cash collateral, accounts receivable, contracts rights, real property, plant, machinery, equipment, fixtures, vehicles, stock and equity instruments, commercial tort claims, supporting obligations, to the extent not covered by the foregoing types of Collateral, choses in action and all other personal property of Debtor, whether tangible or intangible, and book and records pertaining to Collateral; all proceeds, replacements, substitutions, products, rents and profits of or from any and all of the foregoing Collateral and, to the extent not otherwise included, all payments under insurance (whether or not Debtor is the loss payee thereof), or any indemnity, warranty or guaranty, payable by reason of loss or damage to or otherwise with respect to any of the foregoing Collateral; and any after acquired collateral or asset.**

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
| 8. OPTIONAL FILER REFERENCE DATA | | | | | | |

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

*DELAWARE DEPARTMENT OF STATE*
*U.C.C. FILING SECTION*
*FILED 03:47 PM 03/30/2015*
*INITIAL FILING # 2012 2729657*
*AMENDMENT      # 2015 1330298*
*SRV: 150435937*

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

CSC
2711 Centerville Road
Suite 400
Wilmington, DE 19808

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE NUMBER
**20122729657**

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record]
(or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

2. ☑ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT (full or partial):**  Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ **CONTINUATION:**  Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is
continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:

This Change affects ☐ Debtor or ☐ Secured Party of record

AND Check one of these three boxes to:

☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c  ☐ ADD name: Complete item 7a or 7b, and item 7c  ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION:  Complete for Party Information Change - provide only one name (6a or 6b)

6a. ORGANIZATION'S NAME

OR | 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

7. CHANGED OR ADDED INFORMATION:  Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

7a. ORGANIZATION'S NAME

OR | 7b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

8. ☐ **COLLATERAL CHANGE:**  Also check one of these four boxes: ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral
Indicate collateral:

9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT:  Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☑ and provide name of authorizing Debtor

9a. ORGANIZATION'S NAME
**Ad-Vantage Networks, Inc.**

OR | 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

10. OPTIONAL FILER REFERENCE DATA:

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

International Association of Commercial Administrators (IACA)

██████████████

██████████████

██████████████

██████████████

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS

*DELAWARE DEPARTMENT OF STATE*
*U.C.C. FILING SECTION*
*FILED 05:32 PM 10/31/2014*
*INITIAL FILING # 2014 4404059*

*SRV: 141360337*

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

⌐    CSC
    2711 Centerville Road
    Suite 400
    Wilmington, DE 198⁰⁵
└

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Ad-Vantage Networks, Inc. | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 600 North Brand Blvd., Suite 230 | Glendale | CA | 91203 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| MediaShift Holdings, Inc. | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 4500 Cherry Creek Drive South, Suite 550 | Glendale | CO | 80246 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

See attached Exhibit A.

| 5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative |
|---|
| 6a. Check only if applicable and check only one box: | 6b. Check only if applicable and check only one box: |
| ☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien  ☐ Non-UCC Filing |
| 7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor |
| 8. OPTIONAL FILER REFERENCE DATA:
File with DE SOS |

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)    International Association of Commercial Administrators (IACA)

## EXHIBIT A

### Collateral

All rights, titles, and interests of Debtor in, to, and under all the following property held, in all its forms, whether now or hereafter existing, whether now owned or hereafter acquired, created or arising, and wherever located (collectively, but without duplication, and except for any Excluded Collateral, the "**Collateral**"):

(i)     all Accounts;

(ii)    all Equipment;

(iii)   all Inventory;

(iv)    all General Intangibles;

(v)     all Fixtures;

(vi)    all Documents, Chattel Paper, and Letter-of-Credit Rights;

(vii)   all Deposit Accounts;

(viii)  all Instruments and Investment Property;

(ix)    all Commercial Tort Claims;

(x)     all Supporting Obligations; and

(xi)    all Proceeds of any and all of the foregoing.

The following terms, as used herein, have the corresponding meanings:

"**Account**" is used as defined in the Uniform Commercial Code, but in any event shall include, but not be limited to, any right to payment arising out of goods or other property (including, without limitation, intellectual property) sold or leased, licensed, assigned or disposed of or for services rendered which is not evidenced by an instrument or chattel paper, whether or not it has been earned by performance, including all rights to payment of rents and other obligations under any lease, license, or other contract, and all rights incident thereto.

"**Chattel Paper**" is used as defined in the Uniform Commercial Code, but in any event shall include, but not be limited to, a writing or writings which evidence both a monetary obligation and a security interest in, or a lease of, specific goods.

"**Commercial Tort Claims**" is used as defined in the Uniform Commercial Code, except it shall refer only to such claims that have been asserted in judicial proceedings.

ACTIVE/ 77691277.1

Exhibit A to UCC-1 (continued)

"**Deposit Account**" is used as defined in the Uniform Commercial Code, but in any event shall include, but not be limited to, any demand, time, savings, passbook or other deposit account, except that it shall not include any Excluded Deposit Account.

"**Document**" is used as defined in the Uniform Commercial Code, but in any event shall include, but not be limited to, any bill of lading, dock warrant, dock receipt, warehouse receipt or order for the delivery of goods, and also any other document which in the regular course of business or financing is treated as adequately evidencing that the Person in possession of it is entitled to receive, hold and dispose of the document and the goods it covers.

"**Equipment**" is used as defined in the Uniform Commercial Code, but in any event shall include, but not be limited to, tangible personal property held by Debtor for use primarily in business and shall include equipment, machinery, furniture, vehicles, fixtures, furnishings, dyes, tools, and all accessories and parts now or hereafter affixed thereto as well as all attachments, replacements, substitutes, accessories, additions and improvements to any of the foregoing, but Equipment shall not include Inventory.

"**Excluded Collateral**" means (1) assets subject to capital leases, purchase money financing, and cash to secure letter-of-credit reimbursement obligations, to the extent such capital leases, purchase money financing or letters of credit prohibit other liens and are permitted under the terms of any indebtedness secured by the security interest evidenced hereby; and (2) assets sold to a person who is not an obligor of any such indebtedness in compliance with the terms of such indebtedness.

"**Excluded Deposit Accounts**" means any deposit accounts exclusively used for payroll, payroll taxes and other employee wage and benefit payments to or for the benefit of the employees of the Debtor or any other obligor of the indebtedness secured by the security interest evidenced hereby.

"**Fixtures**" is used as defined in the Uniform Commercial Code.

"**General Intangibles**" is used as defined in the Uniform Commercial Code but in any event shall include, but not be limited to, all personal property of every kind and description other than Goods, Accounts, Fixtures, Documents, Letter-of-Credit Rights, Chattel Paper, Deposit Accounts, Instruments, Investment Property, Commercial Tort Claims and Supporting Obligations, and shall include, without limitation, payment intangibles, contract rights (other than Accounts), franchises, licenses, choses in action, books, records, customer lists, tax, insurance and other kinds of refunds, patents, trademarks, trade names, service marks, slogans, trade dress, copyrights, other intellectual property rights and applications for intellectual property rights, goodwill, plans, licenses, software (to the extent it does not constitute Goods) and other rights in personal property.

"**Goods**" is used as defined in the Uniform Commercial Code, but in any event shall include, but not be limited to, all computer programs imbedded in goods and any supporting information provided in connection with the transaction relating to the program and all other things that are movable.

Exhibit A to UCC-1 (continued)

"**Instruments**" is used as defined in the Uniform Commercial Code, but in any event shall include, but not be limited to, promissory notes, negotiable certificates of deposit, a negotiable instrument or a security or any other writing which evidences a right to the payment of money and is not itself a security agreement or lease and is of a type which is, in the ordinary course of business, transferred by delivery with any necessary endorsement or assignment.

"**Inventory**" is used as defined in the Uniform Commercial Code but in any event shall include, but not be limited to, tangible personal property held by or on behalf of Debtor (or in which Debtor has an interest in mass or a joint or other interest) for sale or lease or to be furnished under contracts of service, tangible personal property which Debtor has so leased or furnished, and raw materials, work in process and materials used, produced or consumed in Debtor's business, and shall include tangible personal property returned to Debtor by the purchaser following a sale thereof by Debtor and tangible personal property represented by Documents. All equipment, accessories and parts at any time attached or added to items of Inventory or used in connection therewith shall be deemed to be part of the Inventory.

"**Investment Property**" is used as defined in the Uniform Commercial Code but in any event shall include, but not be limited to, all securities, whether certificated or uncertificated, all financial assets, all security entitlements, all securities accounts, all commodity contracts and all commodity accounts.

"**Letter-of-Credit Right**" is used as defined in the Uniform Commercial Code, but in any event shall include, but not be limited to, any right to payment or performance under a letter of credit, whether or not the beneficiary has demanded or is at the time entitled to demand payment or performance.

"**Proceeds**" is used as defined in the Uniform Commercial Code but, in any event, shall include, but not be limited to, (a) any and all proceeds of any insurance (whether or not the Secured Party is named as the loss payee thereof), indemnity, warranty or guaranty payable to Debtor or the Secured Party from time to time with respect to any of the Collateral, (b) any and all payments (in any form whatsoever) made or due and payable to Debtor from time to time in connection with any requisition, confiscation, condemnation, seizure or forfeiture of all or any part of the Collateral by any governmental authority (or any person acting under color of governmental authority), (c) any and all amounts received when Collateral is sold, leased, licensed, exchanged, collected or disposed of, (d) any rights arising out of Collateral, and (e) any and all other amounts from time to time paid or payable under or in connection with any of the Collateral.

"**Software**" is used as defined in the Uniform Commercial Code but in any event, shall include, but not be limited to, any computer program or supporting information provided in connection with the transaction relating to the program.

"**Supporting Obligations**" is used as defined in the Uniform Commercial Code but in any event shall include, but not be limited to, guarantees and letters of credit that support payment of another obligation.

Exhibit A to UCC-1 (continued)

"**Uniform Commercial Code**" means the Uniform Commercial Code in effect on the date hereof and as amended from time to time, as enacted in the state in which this UCC-1 financing statement is filed or recorded, or in any state or states which, pursuant to the Uniform Commercial Code as enacted in the state in which this UCC-1 financing statement is filed or recorded, has jurisdiction with respect to all, or any portion of, the Collateral from time to time. The parties intend that the definitions set forth above should be construed in their broadest sense so that Collateral will be construed in its broadest sense. Accordingly, if there are, from time to time, changes to defined terms in the Uniform Commercial Code that broaden the definitions, they are incorporated herein and if existing definitions in the Uniform Commercial Code are broader than the amended definitions, the existing ones shall be controlling. Similarly, where the phrase "as defined in the Uniform Commercial Code, but in any event shall include, but not be limited to . . ." is used above, it means as defined in the Uniform Commercial Code except that if any of the enumerated types of items specified thereafter would not fall within the Uniform Commercial Code definition, they shall nonetheless be included in the applicable definition for purposes of this Agreement.

# EXHIBIT "4"

1   RON BENDER (SBN 143364)
    TODD M. ARNOLD (SBN 221868)
2   LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
    10250 Constellation Boulevard, Suite 1700
3   Los Angeles, California 90067
    Telephone:  (310) 229-1234
4   Facsimile:  (310) 229-1244
    Email:   rb@lnbyb.com; tma@lnbyb.com
5
    Attorneys for Chapter 11 Debtors & Debtors in Possession
6

**FILED & ENTERED**

**DEC 30 2015**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Lakanza  DEPUTY CLERK

7           UNITED STATES BANKRUPTCY COURT
            CENTRAL DISTRICT OF CALIFORNIA
8             LOS ANGELES DIVISION

**CHANGES MADE BY COURT**

9   In re:                                  Lead Case No.: 2:15-bk-25024-SK
                                            (Jointly administered with:
    MediaShift, Inc.,                       Case No. 2:15-bk-25030-SK)
10
            Debtor and Debtor in            Chapter 11 Cases
11  Possession.

12  _____       **ORDER (A) APPROVING BIDDING
    ___                                      PROCEDURES FOR SALE OF DEBTORS'
                                            ASSETS; (B) AUTHORIZING AND
13  In re:                                   SCHEDULING AN AUCTION;
                                            (C) SCHEDULING HEARING FOR APPROVAL
14  Ad-Vantage Networks, Inc.,               OF THE SALE OF ASSETS FREE AND CLEAR
                                            OF LIENS AND THE ASSUMPTION AND
15          Debtor and Debtor in            ASSIGNMENT OF CERTAIN EXECUTORY
    Possession.                             CONTRACTS AND UNEXPIRED LEASES TO
16                                          THE SUCCESSFUL BIDDER; (D) APPROVING
                                            ATTORNEYS' FEES AND EXPENSE
17  _____       REIMBURSEMENT; (E) APPROVING
                                            PROCEDURES AND SETTING DEADLINES
18  ☒  Affects Both Debtors                 FOR THE ASSUMPTION AND ASSIGNMENT
                                            OF EXECUTORY CONTRACTS AND
19  ☐ Affects MediaShift, Inc.  Only        UNEXPIRED LEASES INCLUDING CURE
                                            AMOUNTS RELATING THERETO;
20  ☐ Affects Ad-Vantage Networks,          (F) APPROVING CERTAIN DEADLINES
    Inc. Only                               AND THE FORM, MANNER AND
21                                          SUFFICIENCY OF NOTICE; AND
                                            (G) GRANTING OTHER RELATED RELIEF**
22

23                                          Hearing:
                                            Date:   December 30, 2015
24                                          Time:   8:30 a.m.
                                            Place:  Courtroom 1575
25                                                  255 East Temple Street
                                                    Los Angeles, CA 90012
26

27

28

                                1

Upon the motion (the "Procedures Motion"), of MediaShift, Inc. ("MediaShift") and Ad-Vantage Networks, Inc. ("Ad-Vantage"), chapter 11 debtors and debtors-in-possession in the above captioned, jointly-administered bankruptcy cases (collectively, the "Debtors"), Docket No. 140, and the Official Committee of Unsecured Creditors (the "Committee") seeking entry of an order: (a) approving bidding procedures for the sale of substantially all of the Debtors' assets; (b) setting a date for and authorizing an auction (the "Auction") to sell the Debtors' assets; (c) scheduling a hearing (the "Sale Hearing") for approval of a sale of the Debtors' assets free and clear of liens, claims, encumbrances and other interests, and of the assumption and assignment of certain executory contracts and unexpired leases; (d) authorizing payment of attorney' fees and expense reimbursement; (e) approving procedures and setting deadlines for the assumption and assignment of executory contracts and unexpired leases, including cure claims relating thereto; (f) approving certain deadlines and the form, manner and sufficiency notice of the foregoing; and (g) granting other related relief;[1]

And it appearing that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(a); the Court having considered the Procedures Motion, and it appearing that the relief requested in the Procedures Motion is in the best interests of the Debtors' bankruptcy estates, their creditors and other parties in interest, and after due deliberation and sufficient cause appearing therefor;

**THE COURT HEREBY FINDS AND CONCLUDES:**

A.     Notice of the Procedures Motion was adequate and sufficient under the circumstances of the Debtors' chapter 11 cases, and such notice complied with all applicable requirements of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed thereto in the Procedures Motion.  The term "Assets" shall have the same meaning as "Purchased Assets" as set forth in the Stalking Horse APA.

Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Bankruptcy Rules.

B.     All objections to the relief requested in the Procedures Motion that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Procedures Motion or by stipulation filed with the Court, are overruled except as otherwise expressly set forth herein.

C.     The bidding procedures separately lodged as <u>Exhibit 1</u>, Docket #150 (the "Bidding Procedures") are reasonable and appropriate under the circumstances of the Debtors' chapter 11 cases.

D.     The Notice of Bidding Procedures, Auction Date and Sale Hearing, substantially in the form separately lodged as <u>Exhibit 2</u>, Docket #150 (the "Sale and Bidding Procedures Notice"); the Notice of Auction and Sale Hearing, substantially in the form separately lodged as <u>Exhibit 3</u>, Docket #150 (the "Creditor Notice"); and the Notice to Counterparties to Executory Contracts and Unexpired Leases that May Be Assumed and Assigned, substantially in the form separately lodged as <u>Exhibit 4</u>, Docket #150 (the "Cure Notice"), are each calculated to provide adequate notice concerning the proposed sale of the Assets and the proposed assumption and assignment of the Purchased Contracts, as contemplated in the Stalking Horse APA, and are intended to provide due and adequate notice of the relief sought in the Sale Motion.

E.     MediaShift Holdings, Inc. or its designee (the "Stalking Horse Bidder" or "Holdings") has expended considerable time and expense in connection with the Stalking Horse APA and the negotiation thereof and the identification and quantification of assets of the Debtors, justifying the Expense Reimbursement (as defined below) and the terms relating thereto approved by the Court below.

3

F.      The entry of this Order is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The Procedures Motion shall be, and hereby is, GRANTED as set forth in this Order.

2.      The Bidding Procedures separately lodged as <u>Exhibit 1</u>, Docket #150 are approved in their entirety, and are incorporated into this Order as though fully set forth herein and shall apply to the proposed Auction and sale of the Assets.

3.      Holdings' Secured Claim (defined as "<u>Buyer's Secured Claim</u>" in the APA) is valid and shall be, and hereby is, deemed allowed for all for all purposes of the APA and the Cases in the amount of $6,400,000 as of the Petition Date, together with interest thereon after the petition date at 12% per annum, for a total estimated allowed secured claim in the amount of $6,658,000.

4.      The Other Secured Claims of the Other Secured Creditors listed in Schedule A to the APA, which Schedule A was attached to the Motion as Exhibit "C," shall be, and hereby are, deemed allowed in the aggregate amount of $3,402,500 as of the Petition Date, together with interest thereon after the petition date at 12% per annum, for a total estimated allowed secured claim in the amount of $3,978,000, solely for the purpose of allowing them to be included in the Credit Bid Amount to be provided by Holdings under the APA, and without prejudice to the rights of the Debtors, the Committee, and any other party in interest to object to the Other Secured Claims, on any ground, and without being bound, or prejudiced by, any statements in the APA, the Procedures Motion, related documents, or herein regarding the amounts of the Other Secured Claims or any security for the Other Secured Claims, if they are not included in

the Credit Bid Amount and the parties do not consummate the closing of the sale contemplated

herein and by the APA.

5.      The Debtors and Committee are authorized to take any and all actions necessary

or appropriate to implement the Bidding Procedures.

6.      If the Debtors and Committee receive more than one Qualified Bid (as defined in

the Bidding Procedures), an auction (the "Auction") shall be held on **January 25, 2016, at**

**10:00 a.m. (prevailing Pacific Time)**, at Levene, Neale, Bender, Yoo & Brill L.L.P., 10250

Constellation Blvd., Suite 700, Los Angeles, CA 90067, or at any such other location as the

Debtors and Committee may hereafter designate.

7.      In the event the Court approves an Alternative Proposal (as defined in the

Stalking Horse APA), with a cash Purchase Price subject to the terms of the Stalking Horse

APA, that is at least $5 million greater than the Stalking Horse Bid, the Debtors shall reimburse

the Stalking Horse Bidder for Stalking Horse Bidder's reasonable and documented out-of-

pocket attorneys' fees and expenses not to exceed $200,000 incurred in connection with the

transaction contemplated by the Stalking Horse APA and DIP Financing (the "Expense

Reimbursement").  The Expense Reimbursement shall be paid to the Stalking Horse Bidder

from the proceeds of sale on the closing of an Alternative Proposal approved by Bankruptcy

Court.  No further or additional order from the Court shall be required in order to give effect to

these provisions relating to the terms of payment of the Expense Reimbursement.

8.      The Expense Reimbursement shall be deemed an allowed claim entitled to

administrative expense priority under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy

Code.

9.      The Sale Hearing shall be conducted on **January 27, 2016, at 8:30 a.m.**

**(prevailing Pacific Time)**, before the Honorable Sandra L. Klein, United States Bankruptcy

Court for the Central District of California, Edward R. Roybal Federal Building and Courthouse, 255 E. Temple Street, Suite 1582, Courtroom 1575, Los Angeles, CA 90012, and may be adjourned from time to time.

10.     Any objections to any of the relief to be requested at the Sale Hearing must be in writing, state the basis of such objections with specificity and shall be filed and served on or before **January 13, 2016, at 11:59 p.m. (prevailing Pacific Time)**, and such objections shall be served in accordance with the Sale and Bidding Procedures Notice and the Creditor Notice.

11.     Any reply shall be filed and served on or before **January 20, 2016, at 11:59 p.m. (prevailing Pacific Time).**

12.     The proposed sale of the Assets, the proposed assumption and assignment of the Purchased Contracts, and the Auction shall be conducted in accordance with the provisions of this Order and the Bidding Procedures.

13.     The Sale and Bidding Procedures Notice separately lodged as <u>Exhibit 2</u>, Docket #150 the Creditor Notice separately lodged as <u>Exhibit 3</u>, Docket #150 and the Cure Notice separately lodged as <u>Exhibit 4</u>, Docket #150 provide proper notice to all parties in interest and are hereby approved.

14.     Within three business days following entry of this Order, the Debtors shall serve by first class mail the Sale and Bidding Procedures Notice on the following parties:  (a) the U.S. Trustee; (b) counsel to the Committee; (c) counsel to Holdings; (d) counsel to Other Secured Lenders; (e) all parties known to be asserting a lien on any of the Assets and who would appear as potentially holding a lien based on any search conducted to determine who asserts a lien on the Debtors' assets; (f) all known counterparties to the Purchased Contracts; (g) all entities known to have expressed an interest in bidding on the Assets; (h) the state taxing authorities where the Debtors' operate; (i) District Director of Internal Revenue; and (j) all other parties

that filed a notice of appearance and demand for service of papers in the Debtors' bankruptcy cases under Bankruptcy Rule 9010(b) as of the date of entry of this Order.

15.     Within three business days following entry of this Order, the Debtors shall serve the Creditor Notice on all known creditors of the Debtors.

16.     Within three business days following entry of this Order, the Debtors shall file and serve the Cure Notice on the counterparties to the Purchased Contracts.  Counterparties to the Purchased Contracts[2] (each a "Counterparty," and together, the "Counterparties") must file and serve any objection to the assumption and assignment of any Purchased Contract, including objections to any Cure Cost and such objections must attach a complete copy of the Purchased Contract (together with all amendments), and set forth with specificity (a) all defaults under the Purchased Contract, the cure costs that the Counterparty believes are owing and must be paid as a condition to assumption, and (c) any other objection to the assumption and assignment of the Purchased Contract, by **January 13, 2016 at 11:59 p.m. (prevailing Pacific Time)**.  Any reply shall be filed and served on or before **January 20, 2016, at 11:59 p.m. (prevailing Pacific Time).**

17.     Any Counterparty failing to timely file an objection to the Cure Amount set forth in the Cure Notice shall be deemed to consent to the (a) assumption and assignment of the Purchased Contract and shall be forever barred from objecting to the Cure Costs and from asserting any additional cure costs or other amounts against the Debtors, their estates, and the Successful Bidder with respect to the Purchased Contract to which it is a Counterparty; and (b) the reinstatement, without default, of the Purchased Contract upon receipt by the Counterparty of payment of the applicable Cure Cost.  Notwithstanding anything to the

---

[2]  The inclusion of any agreement as a Purchased Contract does not constitute an admission by the Debtors that such agreement actually constitutes an executory contract or unexpired lease under section 365 of the

1  contrary, none of the Purchased Contracts, and no other executory contract or unexpired lease,

2  shall be assumed unless and until the occurrence of the closing by the Debtors and the

3  Successful Bidder pursuant to asset purchase agreement as approved by order of this Court.

4          18.     Compliance with the foregoing notice provisions shall constitute sufficient notice

5  of the Debtors' proposed sale of the Assets free and clear of all liens, claims, interests and

6  encumbrances (all as set forth in the Sale Motion to be filed by the Debtors and the Committee

7  by no later than January 6, 2016), the contemplated assumption and assignment of each

8  Purchased Contract and the proposed amount of Cure Costs with respect to each such Purchased

9  Contract, and except as set forth in paragraphs 12 and 13 of this Order, no other or further notice

10  of the sale shall be required to be provided by the Debtors.

11          19.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d)

12  and 7062 or otherwise, the terms and conditions of this Order shall be immediately effective

13  and enforceable upon its entry, and no automatic stay of execution shall apply to this Order.

14          20.     This Court shall retain jurisdiction to hear and determine all matters arising from

15  or related to the implementation of this Order.

16  **IT IS SO ORDERED.**

17                                      # # #

18

19

20

21

22

23  Date: December 30, 2015

24                                      Sandra R. Klein
                                        United States Bankruptcy Judge

25

26

27

28  Bankruptcy Code, and the Debtors expressly reserve the right to challenge the status of any agreement included as a
    Purchased Contract.

RON BENDER (SBN 143364)
TODD M. ARNOLD (SBN 221868)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email:   rb@lnbyb.com; tma@lnbyb.com

Attorneys for Chapter 11 Debtors & Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>MediaShift, Inc.,<br><br>       Debtor and Debtor in Possession.<br><br>_____<br><br>In re:<br><br>Ad-Vantage Networks, Inc.,<br><br>       Debtor and Debtor in Possession.<br><br>_____<br><br>☒ Affects Both Debtors<br><br>☐ Affects MediaShift, Inc.  Only<br><br>☐ Affects Ad-Vantage Networks, Inc. Only | Lead Case No.: 2:15-bk-25024-SK<br>(Jointly administered with:<br>Case No. 2:15-bk-25030-SK)<br><br>Chapter 11 Cases<br><br>**EXHIBITS TO ORDER (A) APPROVING BIDDING PROCEDURES FOR SALE OF DEBTORS' ASSETS; (B) AUTHORIZING AND SCHEDULING AN AUCTION; (C) SCHEDULING HEARING FOR APPROVAL OF THE SALE OF ASSETS FREE AND CLEAR OF LIENS AND THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO THE SUCCESSFUL BIDDER; (D) APPROVING ATTORNEYS' FEES AND EXPENSE REIMBURSEMENT; (E) APPROVING PROCEDURES AND SETTING DEADLINES FOR THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES INCLUDING CURE AMOUNTS RELATING THERETO; (F) APPROVING CERTAIN DEADLINES AND THE FORM, MANNER AND SUFFICIENCY OF NOTICE; AND (G) GRANTING OTHER RELATED RELIEF**<br><br>Hearing:<br>Date:   December 30, 2015<br>Time:   8:30 a.m.<br>Place:  Courtroom 1575<br>        255 East Temple Street<br>        Los Angeles, CA 90012 |

# EXHIBIT "1"

RON BENDER (SBN 143364)
TODD M. ARNOLD (SBN 221868)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email: rb@lnbyb.com; tma@lnbyb.com

Attorneys for Chapter 11 Debtors & Debtors in Possession

UZZI O. RAANAN (SBN 162747)
ZEV SHECHTMAN (SBN 266280)
DANNING, GILL, DIAMOND & KOLLITZ, LLP
1900 Avenue of the Stars, 11th Floor
Los Angeles, California 90067
Telephone:  (310) 277-0077
Facsimile:  (310) 277-5735
Email: uraanan@dgdk.com, zshechtman@dgdk.com

Attorneys for Official Committee of Unsecured Creditors

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>MediaShift, Inc.,<br><br>       Debtor and Debtor in Possession.<br>_____<br><br>In re:<br><br>Ad-Vantage Networks, Inc.,<br><br>       Debtor and Debtor in Possession.<br><br>_____<br><br>☒  Affects Both Debtors<br><br>☐  Affects MediaShift, Inc.  Only<br><br>☐  Affects Ad-Vantage Networks, Inc. Only | Lead Case No.: 2:15-bk-25024-SK<br>(Jointly administered with:<br>Case No. 2:15-bk-25030-SK)<br><br>Chapter 11 Cases<br><br>**BIDDING PROCEDURES** |

1

These sale and bidding procedures (the "*Bidding Procedures*") govern the procedures for the sale of substantially all of the assets (collectively, the "*Assets*") of MediaShift, Inc. and Ad-Vantage Networks, Inc. (collectively, the "*Debtors*") pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "*Bankruptcy Code*").

By motion (the "*Procedures Motion*")[1] dated December 21, 2015, the above-captioned debtors and debtors in possession (collectively, the "*Debtors*") and the Official Committee of Unsecured Creditors (the "*Committee*") sought, among other things, approval of the Bidding Procedures governing the process and procedures for the sale of the Assets.  On December 30, 2015, the United States Bankruptcy Court for the Central District of California (the "*Bankruptcy Court*"), entered an order approving these Bidding Procedures (the "*Bidding Procedures Order*" [Docket No. ___]).  Pursuant to the Bidding Procedures Order, the Bankruptcy Court has scheduled a hearing on **January 27, 2016, at 8:30 a.m. (prevailing Pacific Time),** to consider the sale (the "*Sale Hearing*").

## I.    Assets to Be Sold

The Debtors intend to sell substantially all of their assets including patents, software and related intellectual property, as described more fully in the Stalking Horse APA (as defined below).  Any Potential Bidder (as defined below) may obtain a detailed description of the Assets through the process described in Section II below.  The Stalking Horse APA includes the terms and conditions upon which the Debtors and the Committee expect the Assets to be sold. Pursuant to section 363 of the Bankruptcy Code and in accordance with these Bidding Procedures, the Assets will be sold free and clear of all liens, claims, encumbrances, and interests.

## II.    Due Diligence

Until the Bid Deadline (as defined below), the Debtors and the Committee will afford to each interested party: (i) determined by the Debtors and the Committee to be reasonably likely, to make a Qualified Bid (defined below); and (ii) who delivers an executed confidentiality agreement in form and substance satisfactory to the Debtors and the Committee (each, a "*Potential Bidder*"), reasonable access, during normal business hours and subject to confidentiality requirements, to the books and records of the Debtors reasonably requested by any Potential Bidder, to the extent provision of such access or information is not prohibited by applicable law and relates to the Assets.  The Debtors will simultaneously distribute via their virtual data room in written form any additional diligence materials not previously provided to the Stalking Horse Bidder or any other Potential Bidder.  Except as provided by applicable law or Bankruptcy Court order, neither the Debtors nor their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Assets to any person or entity who is not a Potential Bidder and who does not comply with the requirements of these Bidding Procedures.

---

[1] Capitalized terms used, but not otherwise defined herein, shall have the meanings given to them in the Procedures Motion.

**III.    Determination of "Qualified Bidder" Status**

Any Potential Bidder desiring to participate in the bidding process must be deemed a "**Qualified Bidder**".  To be deemed a Qualified Bidder, a Potential Bidder must deliver to the Debtors and the Committee financial information evidencing the Potential Bidder's ability to close the transaction satisfactory to the Debtors and the Committee, in their sole discretion, or such other information as reasonably determined by the Debtors and the Committee to support the Potential Bidder's ability to close the transaction.

**IV.    Bid Deadline**

A Qualified Bidder that desires to make a bid shall deliver written and electronic copies of such bid to the Debtors' investment banker Houlihan Lokey Capital, Inc., Attn: Raj Dayalan / Jorge Villen, 10250 Constellation Blvd., 5th Floor, Los Angeles, CA 90067, T: 310.553.8871, F: 310.553.2173, E: RDayalan@HL.com, JVillen@HL.com, so as to be received by no later than **1:00 p.m. (prevailing Pacific Time) on or before January 21, 2016** (the "**Bid Deadline**").

**V.    Requirements of a "Qualified Bid"**

To be deemed a "**Qualified Bid**" that may be considered at the Auction (as defined below), a bid must:

     a.    be in writing;

     b.    be submitted by a Qualified Bidder;

     c.    provide that the purchase price shall be paid in full in cash upon closing;

     d.    provide for (i) a minimum cash purchase price that exceeds the Stalking Horse Bid  by at least $500,000;

     e.    be accompanied by a cash deposit of 5% of the Qualified Bid amount (such cash deposit will be applied to the ultimate purchase price);

     f.    confirm the Qualified Bidder's completion of all due diligence required by such Qualified Bidder in connection with the proposed transaction;

     g.    be irrevocable until the earlier of (i) the Qualified Bidder's bid being determined by the Debtors not to be a Qualified Bid, or (ii) another Qualified Bidder's bid for substantially all of the Assets being approved by the Bankruptcy Court;

     h.    be accompanied by a fully executed asset purchase agreement (the "**Modified APA**") and a version electronically marked to show reasonable changes against the Stalking Horse APA;

     i.    be, in the Debtors' and Committee's reasonable business judgment, on substantially the same or better terms as the Stalking Horse APA;

j.    identify all executory contracts or unexpired leases the Qualified Bidder seeks to have assigned to it;

k.    demonstrate the capacity to provide adequate assurance of future performance under all executory contracts and unexpired leases that are being assumed and assigned;

l.    contain no contingencies of any kind, including evidence that the Qualified Bidder has financial resources readily available sufficient to finance the purchase of the Assets and authorization;

m.    provide the that the Qualified Bidder is obligated to perform as the Reserve Bidder (as defined below) in the event the Qualified Bidder is not the Successful Bidder; and

n.    be accompanied by an affirmative statement from the Qualified Bidder that (i) it has and will continue to comply with these Bidding Procedures; (ii) its bid does not entitle such Qualified Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment or reimbursement; and (iii) it waives any substantial contribution administrative expense claims under section 503(b) of the Bankruptcy Code related to bidding for the Assets.

The Debtors and the Committee shall jointly make a determination regarding whether a bid is a Qualified Bid and shall notify all Qualified Bidders whether their bids have been determined to be Qualified Bids by no later than **4:00 p.m. (prevailing Pacific Time) on January 22, 2016**. The Debtors and Committee reserve the right to reject any bid on any grounds.

## VI.    <u>Stalking Horse Bidder</u>

The Debtors have completed arm's length negotiations with **Mediashift Holdings, Inc.** (the "***Stalking Horse Bidder***") to serve as the stalking horse bidder. As a result of those negotiations, the Stalking Horse Bidder has submitted an initial bid of $11,767,000[2] for the Assets (the "***Stalking Horse Bid***"). The Stalking Horse Bid, memorialized by an Asset Purchase Agreement by and between the Sellers and the Stalking Horse Bidder dated December 15, 2015 (the "***Stalking Horse APA***"), shall be subject to higher and better bids pursuant to the terms of these Bidding Procedures and applicable law. For purposes of these Bidding Procedures and bidding at the Auction, the Stalking Horse Bidder is a Qualified Bidder and the Stalking Horse Bid is a Qualified Bid.

## VII.    <u>Negotiation of Stalking Horse Breakup Fee</u>

The Debtors have negotiated, and the Bankruptcy Court has approved, the reimbursement of the Stalking Horse Bidder for its reasonable out-of-pocket attorneys' fees and expenses incurred in connection with the transactions contemplated by the Stalking Horse APA

---

[2] The Stalking Horse Bid consists of (i) a credit bid pursuant to section 363(k) of the Bankruptcy Code of Stalking Horse Bidder's allowed Secured Pre-Petition Claim, DIP Claim and Other Secured Claims in an amount up to $11,067,000.00, plus (2) cash in the amount of $700,000.

up to a cap of $200,000 (the "***Expense Reimbursement***") in the event that the winning bid exceeds the Stalking Horse Bid by at least $5,000,000.00.

## VIII.    Auction Process

In the event that the Debtors and Committee receive more than one Qualified Bid, the Debtors will conduct an auction (the "***Auction***") for the Assets. The Auction will take place on **January 25, 2016 at 10:00 a.m. (prevailing Pacific Time)** at Levene, Neale, Bender, Yoo & Brill L.L.P., 10250 Constellation Blvd., Suite 700, Los Angeles, CA 90067.

The Debtors and Committee will have the right to jointly enact detailed procedures for the conduct of the Auction at any time prior to the start of the Auction. Any rules developed by the Debtors and Committee will provide that all bids in the Auction will be made and received in one room, on an open basis, and all other Qualified Bidders participating in the Auction will be entitled to be present for all bidding with the understanding that the true identity of each Qualified Bidder will be fully disclosed to all other Qualified Bidders participating in the Auction and that all material terms of each Qualified Bid submitted in response to the Baseline Bid or to any Subsequent Overbid (as defined below) made at the Auction will be fully disclosed to all other Qualified Bidders throughout the entire Auction. All bids shall be placed on the record, which shall either be transcribed, videotaped, or recorded on an audio recording device.

Parties entitled to attend the Auction shall include the Debtors, the Stalking Horse Bidder, the Committee, the Qualified Bidders, the Debtors' prepetition secured lenders possessing liens in the Assets, and each of those respective parties' representatives. The Stalking Horse Bidder and each Qualified Bidder shall appear at the Auction in person, or through a representative who provides appropriate evidence of such person's authority. Only a Qualified Bidder that submitted a timely Qualified Bid and the Stalking Horse Bidder shall be entitled to make bids at the Auction.

Prior to the Auction, the Debtors will share with all Qualified Bidders the highest and best Qualified Bid received at the Bid Deadline (the "***Baseline Bid***"). Qualified Bidders will be permitted to revise, increase, and/or enhance their bid based upon the terms of the Baseline Bid at the Auction. All Qualified Bidders will have the right to make additional modifications to the Modified APA or the Stalking Horse APA, as the case may be, at the Auction.

The Auction will be conducted in rounds and in any order the Debtors and Committee jointly determine. At the end of every round, the highest and best bid or bids at that time for the Assets will be announced. Each Qualified Bidder shall have the right to continue to improve its respective bid at the Auction. The initial minimum overbid shall be the Baseline Bid plus $150,000 (the "***Initial Overbid***"). Thereafter, a Qualified Bidder may increase its Qualified Bid in any manner that it deems fit; provided, however, that each subsequent bid above the Initial Overbid (each, a "***Subsequent Overbid***") must have a purchase price that exceeds the purchase price of the previous highest bid by at least $100,000 of additional consideration.

The Initial Overbid and Subsequent Overbids must continue to meet each of the criteria of a Qualified Bid (other than the requirement that such bids be submitted by the Bid Deadline). The Debtors and Committee jointly reserve the right to approach any Qualified Bidder and seek clarification to bids at any time.

The Auction will continue until the Debtors and Committee jointly determine, subject to Bankruptcy Court approval, that they have received the highest and best offer for Assets (the "*Successful Bid*") and the next highest and best Qualified Bid for the Assets as the Auction (the "*Reserved Bid*").  The Qualified Bidder submitting the Successful Bid shall become the "*Successful Bidder*" and the Qualified Bidder submitting the Reserve Bid shall be the "*Reserve Bidder*."

The Debtors and Committee reserve the right, in their business judgment, to make one or more modifications and/or adjournments to the Auction to, among other things: (i) facilitate discussions between the Debtors and Committee, on the one hand, and individual Qualified Bidders, on the other hand; (ii) allow individual Qualified Bidders to consider how they wish to proceed; and (iii) give Qualified Bidders the opportunity to provide the Debtors and Committee with such additional evidence as the Debtors and Committee in their reasonable business judgment may require.

## IX.    The Sale Hearing

At the Sale Hearing, the Debtors and Committee will jointly seek entry of an order authorizing and approving the sale to the Successful Bidder.  No later than **11:59 p.m. (prevailing Pacific Time) on January 13, 2016**, all objections to the relief requested at the Sale Hearing shall be filed and served in the manner prescribed in the motion to approve the sale of the Assets.  The Sale Hearing may be adjourned or rescheduled from time to time.  The Debtors and Committee shall provide notice of such adjournment or rescheduling to the following parties or their counsel:  (i) the U.S. Trustee; (ii) the Stalking Horse Bidder; (iii) Qualified Bidders; (iv) all parties that have filed a timely objection to the sale; (v) all persons or entities known or reasonably believed to have asserted a lien in any of the Assets; and (vi) all parties that have requested notice in the Debtors' bankruptcy cases.

## X.    Failure to Consummate Purchase

Following the Sale Hearing, if the Successful Bidder fails to consummate the closing of the sale because of a breach or failure to perform on the part of such Successful Bidder, the Debtors will be authorized, but not required, to consummate the sale with Reserve Bidder without further order of the Bankruptcy Court.  In such case, the defaulting Successful Bidder's deposit shall be forfeited to the Debtors.  Additionally, the Debtors shall be entitled to seek all available damages from the defaulting Successful Bidder.

## XI.    Return of Deposit

The deposits of the Successful Bidder shall be applied to the Successful Bidder's obligations under the Successful Bid upon closing of the transactions contemplated thereby.  If a Successful Bidder fails to close the transactions contemplated by the Successful Bidder then such Successful Bidder shall forfeit its deposit.

The deposit of the Reserve Bidder shall be returned to the Reserve Bidder upon the later of (i) the closing of the transaction to the Successful Bidder and (ii) thirty days after the Sale Hearing; provided, however, that if a Successful Bidder fails to close the transactions when and as provided in the Successful Bid, then the deposit of the Reserve Bidder shall be applied to the Reserve Bidder's obligations under the Reserve Bid upon closing of the transactions

contemplated thereby.  If a Reserve Bidder fails to close the transactions contemplated by a Reserve Bid, then such Reserve Bidder shall forfeit its deposit.

All other deposits of Qualified Bidders who are not the Successful Bidder or the Reserve Bidder shall be returned within three business days after the conclusion of the Auction.  The Debtors reserve all of their rights regarding any return of deposits, and the failure by the Debtors to timely return any deposits shall not serve as a claim for breach of any Qualified Bids or create any default in favor of any Qualified Bidders.

**XII.   Modification of Bidding Procedures**

The Debtors and Committee may jointly amend any non-material terms of these Bidding Procedures, in their reasonable business judgment, at any time in any manner that will best promote the goals of the bidding process, including but not limited to extending or modifying any of the dates described herein.

**XIII.   Miscellaneous**

Nothing in these Bidding Procedures shall prejudice a party's rights pursuant to section 363(k) of the Bankruptcy Code to credit bid at the Auction; provided, however, that any party exercising credit bid rights must comply with all other provisions of these Bidding Procedures, including but not limited to the requirements for submitting a Qualified Bid.

Dated:  December __, 2015         **MEDIASHIFT, INC. AND**
                                  **AD-VANTAGE NETWORKS, INC.**

                                  By:_____
                                        RON BENDER
                                        TODD M. ARNOLD
                                  LEVENE, NEALE, BENDER, YOO
                                     & BRILL L.L.P.
                                  Attorneys for Debtors and Debtors in Possession


Dated:  December __, 2015         **OFFICIAL COMMITTEE OF**
                                  **UNSECURED CREDITORS**

                                  By:_____
                                        UZZI O. RAANAN
                                  DANNING, GILL, DIAMOND & KOLLITZ, LLP
                                  Attorneys for the Official Committee of
                                  Unsecured Creditors

7

# EXHIBIT "2"

RON BENDER (SBN 143364)
TODD M. ARNOLD (SBN 221868)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email: rb@lnbyb.com; tma@lnbyb.com

Attorneys for Chapter 11 Debtors & Debtors in Possession

UZZI O. RAANAN (SBN 162747)
ZEV SHECHTMAN (SBN 266280)
DANNING, GILL, DIAMOND & KOLLITZ, LLP
1900 Avenue of the Stars, 11th Floor
Los Angeles, California 90067
Telephone:  (310) 277-0077
Facsimile:  (310) 277-5735
Email:        uraanan@dgdk.com, zshechtman@dgdk.com

Attorneys for Official Committee of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>MediaShift, Inc.,<br><br>　　　　Debtor and Debtor in Possession.<br>_____<br><br>In re:<br><br>Ad-Vantage Networks, Inc.,<br><br>　　　　Debtor and Debtor in Possession.<br><br>_____<br>☒ Affects Both Debtors<br><br>☐ Affects MediaShift, Inc.  Only<br><br>☐ Affects Ad-Vantage Networks, Inc. Only | Lead Case No.: 2:15-bk-25024-SK<br>(Jointly administered with:<br>Case No. 2:15-bk-25030-SK)<br><br>Chapter 11 Cases<br><br>**NOTICE OF BIDDING PROCEDURES, AUCTION DATE, AND SALE HEARING** |

**PLEASE TAKE NOTICE** that on December 21, 2015, MediaShift, Inc. and Ad-Vantage Networks, Inc., chapter 11 debtors and debtors in possession (collectively the "Debtors") and the Official Committee of Unsecured Creditor (the "Committee") filed the Joint Motion For An Order (A) Approving Bidding Procedures For Sale Of Debtors' Assets; (B) Authorizing And Scheduling An Auction; (C) Scheduling Hearing For Approval Of The Sale Of Assets Free And Clear Of Liens And The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases To The Successful Bidder; (D) Approving Attorneys' Fee and Expense Reimbursement; (E) Approving Procedures And Setting Deadlines For The Assumption And Assignment Of Executory Contracts And Unexpired Leases, Including Cure Amounts Relating Thereto; (F) Approving Certain Deadlines And The Form, Manner And Sufficiency Of Notice; And (G) Granting Other Related Relief, Docket No. 140 (the "Procedures Motion").[1]

On December 30, 2015, the Bankruptcy Court entered an order (the "Procedures Order") granting the Procedures Motion and approving the bidding procedures attached hereto (the "Bidding Procedures") to be used in connection with a sale of substantially all of the Debtor's assets (the "Assets"). Pursuant to separate motion to be filed by the Debtors and the Committee by no later than January 6, 2016 (the "Sale Motion," Doc. No. ___), the Assets are being sold free and clear of all liens, claims, encumbrances and interests.

MediaShift Holdings, Inc. has submitted an offer, as the "Stalking Horse Bidder" to the Debtors to purchase the Assets on the terms set forth in that certain Asset Purchase Agreement dated December 15, 2015, between the Debtors and the Stalking Horse Bidder (the "Stalking Horse APA"), which is conditioned on Bankruptcy Court approval and is subject to higher or better offers. The Debtors and Committee determined that the offer of the Stalking Horse Bidder is presently the highest and best offer. The sale terms are set forth with more particularly in the Stalking Horse APA. The Stalking Horse bidder bid for the Asset is $11,767,000.00 ("Stalking Horse Bid").[2]

Other relevant terms of the Stalking Horse APA include the following: (a) the Assets will be sold free and clear of liens, claims, encumbrances and other interests; (b) in the event the Court approves a bid from another party that is $5,000,000.00 or greater than the Stalking Horse Bid, the Stalking Horse Bidder will be reimbursed reasonable attorneys' fees and expenses in an amount not to exceed $200,000 that the Stalking Horse Bidder incurred in connection with the transactions contemplated by the Stalking Horse APA (the "Expense Reimbursement"); (c) the Stalking Horse Bidder will assume certain enumerated liabilities as of the closing; and (d) certain executory contracts and unexpired leases will be assumed by the Debtors and assigned to the Stalking Horse Bidder.

If offers are received by the Debtors and Committee from other Qualified Bidders in accordance with the Bidding Procedures for a price and on terms that are higher or better than the Stalking Horse APA, the Assets will be sold at the Auction. The Bidding Procedures afford the Debtors and Committee the opportunity to subject the Assets to competitive bidding while preserving the Stalking Horse Bid, thereby providing a floor price for the Assets.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings set forth in the Procedures Motion. The term "Assets" in this Notice shall have the same meaning as "Purchased Assets" as set forth in the Stalking Horse APA (defined herein). The Stalking Horse APA is attached to the Procedures Motion as Exhibit "B."

[2] The Stalking Horse Bid consists of: (1) a credit bid pursuant to Section 363(k) of the bankruptcy Code of Stalking Horse Bidder's allowed Prepetition Secured Claim, DIP Claim and Other Secured Claims, plus (2) cash in the amount of $700,000.

The Debtors are seeking to sell substantially all of their assets under chapter 11 of the United States Bankruptcy Code. After the sale of the Assets, the Debtors will no longer operate. The Debtors and Committee believe the sale of the Assets is in the best interest of the Debtors' estates and will provide the highest and best value for the Assets.

**Bidding Procedures**

A copy of the Bidding Procedures is attached hereto as **Exhibit 1**. The Bidding Procedures describe, *inter alia*, the terms of the bidding process, the requirements and deadlines for participation therein, required terms of any bids, and the time, location and conduct of the Auction. In the event of any inconsistency or conflict between this Notice, the Bidding Procedures and the Bidding Procedures Order, the Bidding Procedures Order shall control.

**The Auction**

**PLEASE TAKE FURTHER NOTICE** that the Debtors and Committee are authorized to conduct the Auction in accordance with the Bidding Procedures to determine the highest and best bid with respect to the Assets. The Auction, if any, shall commence at **10:00 a.m. (prevailing Pacific Time) on January 25, 2016**, at Levene, Neale, Bender, Yoo & Brill L.L.P., 10250 Constellation Blvd., Suite 700, Los Angeles, CA 90067, or such other date or location as designated prior to the Auction.

**The Sale Hearing**

**PLEASE TAKE FURTHER NOTICE** that the Bankruptcy Court has scheduled a hearing for **January 27, 2016, at 8:30 a.m. (prevailing Pacific Time)** (the "Sale Hearing") to consider either approval of the Stalking Horse APA in the absence of an Auction or approval of the successful bid and confirm the results at the Auction for the Assets, pursuant to the Sale Motion. The Sale Hearing may be adjourned in open court from time to time, without further notice. The Sale Hearing will be held before the Honorable Sandra L. Klein, United States Bankruptcy Court for the Central District of California, Edward R. Roybal Federal Building and Courthouse, 255 E. Temple Street, Suite 1582, Los Angeles, California 90012.

**PLEASE TAKE FURTHER NOTICE** that the Bidding Procedures attached hereto shall govern the bidding process and any Auction of the Assets. Any person that wishes to receive a copy of the Sale Motion (with all attachments), the Stalking Horse APA or the Procedures Order (with all attachments), can make such request in writing to Levene, Neale, Bender, Yoo & Brill, L.L.P., 10250 Constellation Blvd., Suite 1700, Los Angeles, California 90067, Attention: Todd M. Arnold, Fax 310-229-1244, Email tma@lnbyb.com.

**Objections**

Any objection to any of the relief to be requested at the Sale Hearing must be in writing, state the basis of such objection with specificity, and shall be filed with the Court, and shall be served on: (i) counsel to the Debtors: Levene, Neale, Bender, Yoo & Brill, L.L.P., 10250 Constellation Blvd., Suite 1700, Los Angeles, California 90067, Attention: Todd M. Arnold, Facsimile: (310) 229-1244; (ii) ) counsel to the Official Committee of Unsecured Creditors:

Danning, Gill, Diamond & Kollitz, LLP, 1900 Avenue of the Stars, 11th Floor, Los Angeles, CA 90067 (Attention: Uzzi O Raanan, Esq. and Zev Shechtman, Esq.);  (iii) the Office of the United States Trustee, Office of the U.S. Trustee, Los Angeles, California 90012; and (iv) counsel to the Stalking Horse Bidder: Drinker Bidder & Reath, LLP, 1177 Avenue of the Americas, 41st Floor, New York, NY 10036-2714 (Attention: Michael P. Pompeo), so as to be received by **January 13, 2016, at 11:59 p.m. (prevailing Pacific Time)**.

Dated:  December __, 2015

**MEDIASHIFT, INC. AND
AD-VANTAGE NETWORKS, INC.**

By:_____
            RON BENDER
            TODD M. ARNOLD
LEVENE, NEALE, BENDER, YOO
    & BRILL L.L.P.
Attorneys for Debtors and Debtors in Possession

Dated:  December __, 2015

**OFFICIAL COMMITTEE OF
UNSECURED CREDITORS**

By:_____
            UZZI O. RAANAN
DANNING, GILL, DIAMOND
    & KOLLITZ, LLP
Attorneys for the Official Committee of
Unsecured Creditors

4

# EXHIBIT "3"

RON BENDER (SBN 143364)
TODD M. ARNOLD (SBN 221868)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email: rb@lnbyb.com; tma@lnbyb.com

Attorneys for Chapter 11 Debtors & Debtors in Possession

UZZI O. RAANAN (SBN 162747)
ZEV SHECHTMAN (SBN 266280)
DANNING, GILL, DIAMOND & KOLLITZ, LLP
1900 Avenue of the Stars, 11th Floor
Los Angeles, California 90067
Telephone:  (310) 277-0077
Facsimile:  (310) 277-5735
Email:       uraanan@dgdk.com, zshechtman@dgdk.com

Attorneys for Official Committee of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>MediaShift, Inc.,<br><br>      Debtor and Debtor in Possession.<br>_____<br><br>In re:<br><br>Ad-Vantage Networks, Inc.,<br><br>      Debtor and Debtor in Possession.<br>_____<br><br>☒ Affects Both Debtors<br><br>☐ Affects MediaShift, Inc.  Only<br><br>☐ Affects Ad-Vantage Networks, Inc. Only | Lead Case No.: 2:15-bk-25024-SK<br>(Jointly administered with:<br>Case No. 2:15-bk-25030-SK)<br><br>Chapter 11 Cases<br><br>**NOTICE OF AUCTION AND HEARING ON JOINT MOTION AUTHORIZING A SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS**<br><br>Hearing:<br>Date:  January 27, 2016<br>Time: 8:30 a.m.<br>Place: Courtroom 1575<br>      255 East Temple Street<br>      Los Angeles, CA 90012 |

1

**ALL PARTIES IN INTEREST– PLEASE TAKE NOTICE OF THE FOLLOWING**:

MediaShift Holdings, Inc. and Ad-Vantage Networks, Inc., chapter 11 debtors and debtors in possession (collectively, the "Debtors") and the Official Committee of Unsecured Creditors (the "Committee") shall file a Joint Motion for an Order (A) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests; (B) Authorizing the Assumption and Assignment of Certain Executory Contracts; and (C) Granting Related Relief, by no later than January 6, 2016 (the "Sale Motion").

### Assets to Be Sold

The Debtors propose to sell substantially all of their assets (the "Assets") to MediaShift Holdings, Inc. (the "Stalking Horse Bidder") or to the party that submits the highest and best bid.  The Debtors further propose to assume and assign certain executory contracts (the "Purchased Contracts") associated with the Assets.

### Sale Free and Clear of Liens, Claims, Encumbrances and Interests

Pursuant to section 363(b) and (f) of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and subject to any orders entered by the Court, the Debtors will seek authority to sell all rights, title, and interest in the Sale Assets to the Stalking Horse Bidder or the Qualified Bidder[1] submitting the highest and best Qualifying Bid in accordance with the Bidding Procedures, in either case, free and clear of any liens, claims, encumbrances, and interests, with all such liens, claims, encumbrances and interests attaching to the proceeds of such sale.

### Auction And Bidding Procedures

**A.    The Auction**

In the event the Debtors and Committee receive more than one Qualified Bid, the Debtors and Committee will conduct an auction (the "Auction") for all of the Assets on **January 25, 2016** commencing at **10:00 a.m. (prevailing Pacific Time**) at Levene, Neale, Bender, Yoo & Brill L.L.P., 10250 Constellation Blvd., Suite 700, Los Angeles, CA 90067. Only parties submitting Qualified Bids will be invited to participate in the Auction.

**B.    The Bidding Procedures**

The Bidding Procedures, which are available upon request by contacting the undersigned, set forth the process by which the Debtors and Committee seek to conduct the Auction.  Participating bidders at the Auction will include the Stalking Horse Bidder and any potential purchaser that satisfies the requirements set forth in the Bidding Procedures.

---

[1] Unless otherwise defined herein, capitalized terms used herein have the meanings given to them in the Sale Motion and exhibits attached thereto.

2

**C.      The Sale Hearing**

The Court will hold a hearing (the "Sale Hearing") on the Sale Motion on **January 27, 2016** at **8:30 a.m.** prevailing Pacific Time before the Honorable Judge Sandra L. Klein, United States Bankruptcy Court for the Central District of California, Edward R. Roybal Federal Building and Courthouse, 255 E. Temple Street, Suite 1582, Los Angeles, California 90012.  At the Sale Hearing, the Debtors and Committee will seek approval of the proposed sale of the Sale Assets.  Objections, if any, to the Sale Motion must be filed with the Court and served upon parties in interest so as to be received no later than **11:59 p.m.** (**prevailing Pacific Time**), **January 13, 2016.**

**D.      Assumption of Contracts and Leases**

As part of the sale of substantially all of the Debtors' assets, the Debtors propose to assume and assign the Purchased Contracts.  A list of the Purchased Contracts may be obtained from the Debtors.

If you are a party to a Purchased Contract, you will receive a separate motion or notice, which will identify the contracts or leases to be assigned, the identity of the assignee, and the amount, if any, to be paid as a "cure amount" under section 365 of the Bankruptcy Code. Objections, if any, to the assumption and assignment of any Purchased Contracts, or to any proposed Cure Costs therein, must be filed with the Court and served upon parties in interest so as to be received on or before **January 13, 2016**.

**E.      Complete Copies**

Complete copies of the Sale Motion and related documents may be obtained contacting counsel for the Debtors: Levene, Neale, Bender, Yoo & Brill L.L.P., Attn: Ron Bender, Esq. and Todd M. Arnold, Esq., 10250 Constellation Blvd., Suite 700, Los Angeles, CA 90067, Ph 310-229-1234, Fax 310-229-1234, Email rb@lnbyb.com, tma@lnbyb.com

Dated:  December __, 2015

**MEDIASHIFT, INC. AND
AD-VANTAGE NETWORKS, INC.**

By:_____
          RON BENDER
          TODD M. ARNOLD
          LEVENE, NEALE, BENDER, YOO
          & BRILL L.L.P.
          Attorneys for Debtors and Debtors in Possession

Dated:  December __, 2015

**OFFICIAL COMMITTEE OF
UNSECURED CREDITORS**

By:_____
          UZZI O. RAANAN
          DANNING, GILL, DIAMOND
          & KOLLITZ, LLP
          Attorneys for the Official Committee of
          Unsecured Creditors

3

# EXHIBIT "4"

RON BENDER (SBN 143364)
TODD M. ARNOLD (SBN 221868)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email: rb@lnbyb.com; tma@lnbyb.com

Attorneys for Chapter 11 Debtors & Debtors in Possession

UZZI O. RAANAN (SBN 162747)
ZEV SHECHTMAN (SBN 266280)
DANNING, GILL, DIAMOND & KOLLITZ, LLP
1900 Avenue of the Stars, 11th Floor
Los Angeles, California 90067
Telephone:  (310) 277-0077
Facsimile:  (310) 277-5735
Email:        uraanan@dgdk.com, zshechtman@dgdk.com

Attorneys for Official Committee of Unsecured Creditors

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>MediaShift, Inc.,<br><br>         Debtor and Debtor in Possession.<br>_____<br><br>In re:<br><br>Ad-Vantage Networks, Inc.,<br><br>         Debtor and Debtor in Possession.<br>_____<br>☒ Affects Both Debtors<br><br>☐ Affects MediaShift, Inc.  Only<br><br>☐ Affects Ad-Vantage Networks, Inc. Only<br>_____ | Lead Case No.: 2:15-bk-25024-SK<br>(Jointly administered with:<br>Case No. 2:15-bk-25030-SK)<br><br>Chapter 11 Cases<br><br>**NOTICE TO COUNTERPARTIES TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES THAT MAY BE ASSUMED AND ASSIGNED**<br><br>Hearing:<br>Date: January 27, 2016<br>Time: 8:30 a.m.<br>Place: Courtroom 1575<br>          255 East Temple Street<br>          Los Angeles, CA 90012 |

1

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

**PLEASE TAKE NOTICE** that on September 30, 2015 (the "Petition Date"), MediaShift, Inc. and Ad-Vantage Networks, Inc., chapter 11 debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition for relief under title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

**PLEASE TAKE FURTHER NOTICE** that, by no later than January 6, 2016, the Debtors and the Official Committee of Unsecured Creditor (the "Committee") filed the Joint Motion for an Order (A) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests; (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (C) Granting Related Relief (the "Sale Motion"). Pursuant to the Sale Motion, the Debtors and Committee seek, *inter alia*, the Bankruptcy Court's approval of the sale of substantially all the Debtors' assets, including the assumption and assignment of various executory contracts and unexpired leases (the "Purchased Contracts") to the Successful Bidder (as will be defined in the Sale Motion), free and clear of liens, claims, encumbrances and other interests.

**PLEASE TAKE FURTHER NOTICE** that on December 30, 2015 the Bankruptcy Court entered an Order (A) Approving Bidding Procedures For Sale Of Debtors' Assets; (B) Authorizing And Scheduling An Auction; (C) Scheduling Hearing For Approval Of The Sale Of Assets Free And Clear Of Liens And The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases To The Successful Bidder; (D) Approving Attorneys' Fees and Expense Reimbursement; (E) Approving Procedures And Setting Deadlines For The Assumption And Assignment Of Executory Contracts And Unexpired Leases, Including Cure Amounts Relating Thereto; (F) Approving Certain Deadlines And The Form, Manner And Sufficiency Of Notice; and (G) Granting Other Related Relief, Docket No. ___ (the "Procedures Order"). This Notice is issued pursuant to the requirements of the Procedures Order. The Procedures Order and the order approving the Sale Motion shall govern the Debtors' assumption and assignment of the Purchased Contracts.

**PLEASE TAKE FURTHER NOTICE** that the hearing (the "Sale Hearing") on the Sale Motion has been set for **January 27, 2016, at 8:30 a.m. (Prevailing Pacific Time)** before the Honorable Sandra L. Klein, United States Bankruptcy Court for the Central District of California, Edward R. Roybal Federal Building and Courthouse, 255 E. Temple Street, Suite 1582, Los Angeles, California 90012.

**PLEASE TAKE FURTHER NOTICE** that the amount shown on **Exhibit 1** attached to this Notice as the "Cure Cost" for the Purchased Contract listed on **Exhibit 1** to which you are a party is the amount, based upon the Debtors' books and records, which the Debtors assert is owed to cure any defaults existing under the Purchased Contract as of the Petition Date.[1]

---

[1] Your receipt of this notice does not constitute an admission by the Debtors that your agreement actually constitutes an executory contract or unexpired lease under section 365 of the Bankruptcy Code, and the Debtors expressly reserve the right to challenge the status of any agreement.

2

**PLEASE TAKE FURTHER NOTICE** that the Purchaser may exclude any agreement or agreements from the list of Purchased Contracts at any time within 10 days prior to the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that if you disagree with the Cure Cost shown for the Purchased Contract on **Exhibit 1**, or if you object to the assumption and assignment of your Purchased Contract on any ground, you must file an objection in writing with United States Bankruptcy Court for the Central District of California, Edward R. Roybal Federal Building and Courthouse, 255 E. Temple Street, Suite 1582, Los Angeles, California 90012 on or before **11:59 p.m. (Prevailing Pacific Time on January 13, 2015**.  In addition, any objection must attached a complete copy of your contract (including all amendments thereto) and set forth the specific default or defaults alleged, set forth any such other ground for objection, and set forth any Cure Cost as alleged by you.

**PLEASE TAKE FURTHER NOTICE** that any objection to the assignment and assumption of your Purchased Contract or to the Cure Cost must be served so as to be received by that same date and time stated above upon the following parties:  (i) counsel to the Debtors: Levene, Neale, Bender, Yoo & Brill, L.L.P., 10250 Constellation Blvd., Suite 1700, Los Angeles, California 90067 (Attention: Todd M. Arnold);  (ii) counsel to the Official Committee of Unsecured Creditors: Danning, Gill, Diamond & Kollitz, LLP, 1900 Avenue of the Stars, 11th Floor, Los Angeles, CA 90067 (Attention: Uzzi O Raanan, Esq. and Zev Shechtman, Esq.); (iii) the Office of the United States Trustee:; and (iv) counsel to the Stalking Horse Bidder: Drinker Bidder & Reath, LLP, 1177 Avenue of the Americas, 41st Floor, New York, NY 10036-2714 (Attention: Michael P. Pompeo).

**PLEASE TAKE FURTHER NOTICE THAT IF YOU DO NOT TIMELY FILE AND SERVE AN OBJECTION OR OBJECTIONS AS STATED ABOVE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE SALE MOTION WITHOUT FURTHER NOTICE.   ANY NON-DEBTOR PARTY TO ANY PURCHASED CONTRACT WHO DOES NOT FILE A TIMELY OBJECTION TO THE CURE COSTS FOR SUCH PURCHASED CONTRACT IS DEEMED TO HAVE CONSENTED TO SUCH CURE COSTS, AND ANY NON-DEBTOR PARTY TO ANY PURCHASED CONTRACT WHO DOES NOT FILE A TIMELY OBJECTION ON OTHER GROUNDS IS DEEMED TO HAVE CONSENTED TO THE ASSUMPTION AND ASSIGNMENT OF THE PURCHASED CONTRACT ON THE TERMS AND CONDITIONS REQUESTED BY THE DEBTORS**.

Dated:  December __, 2015

                                    **MEDIASHIFT, INC. AND
AD-VANTAGE NETWORKS, INC.**

By:_____
        RON BENDER
        TODD M. ARNOLD
    LEVENE, NEALE, BENDER, YOO
     & BRILL L.L.P.
    Attorneys for Debtors and Debtors in Possession

3

Dated:  December __, 2015

1

2

**OFFICIAL COMMITTEE OF**
**UNSECURED CREDITORS**

3

By:_____

4

          UZZI O. RAANAN
DANNING, GILL, DIAMOND & KOLLITZ, LLP
Attorneys for the Official Committee of
Unsecured Creditors

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

**EXHIBIT 1**

**[PURCHASED CONTRACTS LIST]**

# EXHIBIT "5"

1  RON BENDER (SBN 143364)
   TODD M. ARNOLD (SBN 221868)
2  LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
   10250 Constellation Boulevard, Suite 1700
3  Los Angeles, California 90067
   Telephone:  (310) 229-1234
4  Facsimile:  (310) 229-1244
   Email: rb@lnbyb.com; tma@lnbyb.com
5
   Attorneys for Chapter 11 Debtors & Debtors in Possession
6
   UZZI O. RAANAN (SBN 162747)
7  ZEV SHECHTMAN (SBN 266280)
   DANNING, GILL, DIAMOND & KOLLITZ, LLP
8  1900 Avenue of the Stars, 11th Floor
   Los Angeles, California 90067
9  Telephone:  (310) 277-0077
   Facsimile:  (310) 277-5735
10 Email: uraanan@dgdk.com, zshechtman@dgdk.com
11
   Attorneys for Official Committee of Unsecured Creditors
12

13              UNITED STATES BANKRUPTCY COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15                   LOS ANGELES DIVISION

16
17 In re:                                  Lead Case No.: 2:15-bk-25024-SK
                                           (Jointly administered with:
18 MediaShift, Inc.,                       Case No. 2:15-bk-25030-SK)

19          Debtor and Debtor in Possession.   Chapter 11 Cases
   _____
20                                         **NOTICE TO COUNTERPARTIES TO**
                                           **EXECUTORY CONTRACTS AND**
21 In re:                                  **UNEXPIRED LEASES THAT MAY BE**
                                           **ASSUMED AND ASSIGNED**
22 Ad-Vantage Networks, Inc.,

23          Debtor and Debtor in Possession.
   _____   Hearing:
24 ☒ Affects Both Debtors                 Date:  January 27, 2016
                                          Time:  8:30 a.m.
25 ☐ Affects MediaShift, Inc.  Only       Place: Courtroom 1575
                                                 255 East Temple Street
26 ☐ Affects Ad-Vantage Networks, Inc. Only      Los Angeles, CA 90012
27
28

                              1

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

PLEASE TAKE NOTICE that on September 30, 2015 (the "Petition Date"), MediaShift, Inc. and Ad-Vantage Networks, Inc., chapter 11 debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition for relief under title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

PLEASE TAKE FURTHER NOTICE that, by no later than January 6, 2016, the Debtors and the Official Committee of Unsecured Creditor (the "Committee") filed the Joint Motion for an Order (A) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests; (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (C) Granting Related Relief (the "Sale Motion"). Pursuant to the Sale Motion, the Debtors and Committee will seek, *inter alia*, the Bankruptcy Court's approval of the sale of substantially all the Debtors' assets, including the assumption and assignment of various executory contracts and unexpired leases (the "Purchased Contracts") to the Successful Bidder (as will be defined in the Sale Motion), free and clear of liens, claims, encumbrances and other interests.

PLEASE TAKE FURTHER NOTICE that on December 30, 2015 the Bankruptcy Court entered an Order (A) Approving Bidding Procedures For Sale Of Debtors' Assets; (B) Authorizing And Scheduling An Auction; (C) Scheduling Hearing For Approval Of The Sale Of Assets Free And Clear Of Liens And The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases To The Successful Bidder; (D) Approving Attorneys' Fees and Expense Reimbursement; (E) Approving Procedures And Setting Deadlines For The Assumption And Assignment Of Executory Contracts And Unexpired Leases, Including Cure Amounts Relating Thereto; (F) Approving Certain Deadlines And The Form, Manner And Sufficiency Of Notice; and (G) Granting Other Related Relief, Docket No. 153 (the "Procedures Order"). This Notice is issued pursuant to the requirements of the Procedures Order. The Procedures Order and the order approving the Sale Motion shall govern the Debtors' assumption and assignment of the Purchased Contracts.

PLEASE TAKE FURTHER NOTICE that the hearing (the "Sale Hearing") on the Sale Motion has been set for **January 27, 2016, at 8:30 a.m. (Prevailing Pacific Time**) before the Honorable Sandra L. Klein, United States Bankruptcy Court for the Central District of California, Edward R. Roybal Federal Building and Courthouse, 255 E. Temple Street, Suite 1582, Los Angeles, California 90012.

PLEASE TAKE FURTHER NOTICE that the amount shown on **Exhibit 1** attached to this Notice as the "Cure Cost" for the Purchased Contract (or Potentially Purchased Contract) listed on **Exhibit 1** to which you are a party is the amount, based upon the Debtors' books and records, which the Debtors assert is owed to cure any defaults existing under the Purchased Contract (or Potentially Purchased Contract) as of the Petition Date.[1]

---

[1]  Your receipt of this notice does not constitute an admission by the Debtors that your agreement actually constitutes an executory contract or unexpired lease under section 365 of the Bankruptcy Code, and the Debtors expressly reserve the right to challenge the status of any agreement.

2

**PLEASE TAKE FURTHER NOTICE** that the Purchaser may exclude any agreement or agreements from the list of Purchased Contracts at any time within 10 days prior to the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that if you disagree with the Cure Cost shown for the Purchased Contract (or Potentially Purchased Contract) on **Exhibit 1**, or if you object to the assumption and assignment of your Purchased Contract (or Potentially Purchased Contract) on any ground, you must file an objection in writing with United States Bankruptcy Court for the Central District of California, Edward R. Roybal Federal Building and Courthouse, 255 E. Temple Street, Suite 1582, Los Angeles, California 90012 on or before **11:59 p.m. (Prevailing Pacific Time on January 13, 2015**.  In addition, any objection must attached a complete copy of your contract (including all amendments thereto) and set forth the specific default or defaults alleged, set forth any such other ground for objection, and set forth any Cure Cost as alleged by you.

**PLEASE TAKE FURTHER NOTICE** that any objection to the assignment and assumption of your Purchased Contract or to the Cure Cost must be served so as to be received by that same date and time stated above upon the following parties:  (i) counsel to the Debtors: Levene, Neale, Bender, Yoo & Brill, L.L.P., 10250 Constellation Blvd., Suite 1700, Los Angeles, California 90067 (Attention: Todd M. Arnold);  (ii) counsel to the Official Committee of Unsecured Creditors: Danning, Gill, Diamond & Kollitz, LLP, 1900 Avenue of the Stars, 11th Floor, Los Angeles, CA 90067 (Attention: Uzzi O Raanan, Esq. and Zev Shechtman, Esq.); (iii) the Office of the United States Trustee:; and (iv) counsel to the Stalking Horse Bidder: Drinker Bidder & Reath, LLP, 1177 Avenue of the Americas, 41st Floor, New York, NY 10036-2714 (Attention: Michael P. Pompeo).

**PLEASE TAKE FURTHER NOTICE THAT IF YOU DO NOT TIMELY FILE AND SERVE AN OBJECTION OR OBJECTIONS AS STATED ABOVE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE SALE MOTION WITHOUT FURTHER NOTICE.   ANY NON-DEBTOR PARTY TO ANY PURCHASED CONTRACT WHO DOES NOT FILE A TIMELY OBJECTION TO THE CURE COSTS FOR SUCH PURCHASED CONTRACT IS DEEMED TO HAVE CONSENTED TO SUCH CURE COSTS, AND ANY NON-DEBTOR PARTY TO ANY PURCHASED CONTRACT WHO DOES NOT FILE A TIMELY OBJECTION ON OTHER GROUNDS IS DEEMED TO HAVE CONSENTED TO THE ASSUMPTION AND ASSIGNMENT OF THE PURCHASED CONTRACT ON THE TERMS AND CONDITIONS REQUESTED BY THE DEBTORS**.

Dated:  January 4, 2016             **MEDIASHIFT, INC. AND
                                     AD-VANTAGE NETWORKS, INC.**

                                    By:___*/s/ Todd M. Arnold*_____
                                          RON BENDER
                                          TODD M. ARNOLD
                                    LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
                                    Attorneys for Debtors and Debtors in Possession

Case 2:15-bk-25024-SK    Doc 159    Filed 01/04/16    Entered 01/04/16 16:42:17    Desc
                    Main Document        Page 4 of 34

Dated:  January 4, 2016

**OFFICIAL COMMITTEE OF UNSECURED
CREDITORS**

By:_____/s/ Uzzi O. Raanan_____
      UZZI O. RAANAN
DANNING, GILL, DIAMOND & KOLLITZ, LLP
Attorneys for the Official Committee of Unsecured Creditors

**EXHIBIT 1**

**[PURCHASED CONTRACTS LIST and
POTENTIALLY PURCHASED CONTRACTS LIST]**

**PURCHASED CONTRACTS LIST**

| Other Party | Address(es) | Cure Amount as of the Petition Date of September 30, 2015 | Cure Amount as of the Date of December 31, 2015 |
|---|---|---|---|
| Amazon Web Services (AWS) | Jeffrey P. Bezos, CEO, or Other Officer or Director 410 Terry Avenue North Seattle, Washington 98109-5210<br><br>Jeffrey P. Bezos, CEO, or Other Officer or Director PO Box 84023 Seattle, WA 98124-8423 | $88,684.27 | $127,774.72 |
| Hotel Internet Services (HIS) | Attn: Gary Patrick, President, or Other Officer or Director 4590 Ish Drive, Suite 120 Simi Valley, CA 93063-7683 | $29,366.27 | $29,366.27 |
| JetBlue Airways | Attn: Robin Hayes, President and Chief Executive Officer, Martin St. George, SVP Commercial, or Other Officer or Director 27-01 Queens Plaza North Long Island City, NY 11101-4021 | $26.04 | $26.04 |
| Mobilitie Investments III, LLC, | Attn: Christos Karmis, President, or Other Officer or Director 2220 University Dr. Newport Beach, CA 92660-3319 | $4,355.64 | $4,355.64 |

| Other Party | Address(es) | Cure Amount as of the Petition Date of September 30, 2015 | Cure Amount as of the Date of December 31, 2015 |
|---|---|---|---|
| Outfront Media Inc. | Attn: Jeremy J. Male, Chairman and CEO Pete Izzo, Andrew R. Simbas, Other Officer or Director, or Law Department 405 Lexington Avenue New York, NY 10174-0002 | $0 | $0 |
| Ovation Networks, Inc. | Attn: Larry J. Selensky, President & CEO 222 3rd Ave Ste 276 Cedar Rapids, IA 52401-1541 | $51,342.89 | $51,342.89 |
| Panasonic Avionics Corporation | Attn: Paul Margis, President and Chief Executive Officer, Gene Connelly, Senior Vice President, or Other Officer or Director 26200 Enterprise Way Lake Forest, CA 92630-8400<br><br>c/o agent CT corporation system 818 West Seventh St. Ste. 930 Los Angeles, CA 90017 | $0 | $0 |

**POTENTIALLY PURCHASED CONTRACTS LIST**

| Other Party | Address(es) | Cure Amount as of the Petition Date of September 30, 2015 | Cure Amount as of the Date of December 31, 2015 |
|---|---|---|---|
| Adap.tv, Inc. | Attn: Tim Armstrong, Chairman & CEO 770 Broadway New York, NY 10003 | $0 | $0 |

| **Other Party** | **Address(es)** | **Cure Amount as of the Petition Date of September 30, 2015** | **Cure Amount as of the Date of December 31, 2015** |
|---|---|---|---|
| Alliance Data Services | Attn: Officer or Director 3080 Kronprindsens Gole, Suite 200 Saint Thomas 00802-0000 | $237.35 | $237.35 |
| Eclipse Capital Partners LLC | c/o Corporation Service Co 2711 Centerville Rd Suite 400 Wilmington, DE 19808<br><br>Attn: Ronald Hoplamazian, President, or Other Officer or Director 234 Trianon Lane Villanova, PA 19085<br><br>c/o Eric E. Sagerman, Esq. Winston & Strawn LLP 333 S. Grand Avenue, 38th Floor Los Angeles, CA 90071-1543 | $0 | $0 |
| GenesisMedia, LLC | Attn: George Mani, Officer, or other Officer or Director 71 West 23rd St., Suite 903 New York, NY 10010 | $0 | $0 |
| Houlihan Lokey Howard & Zukin | Attn: Raj Dayalan, Manager 10250 Constellation Blvd Los Angeles, CA 90067-6802 | Contingent on sale results | Contingent on sale results |
| ipCapital Licensing Co. I, LLC<br><br>ipCapital Group | Attn: John Ciannamea, Partner, John Cronin, Managing Director, or Other Officer, Director, or Manager 400 Cornerstone Dr., Suite 325 Williston, VT 05495 | $0 | $0 |

| Other Party | Address(es) | Cure Amount as of the Petition Date of September 30, 2015 | Cure Amount as of the Date of December 31, 2015 |
|---|---|---|---|
| | Attn: John Ciannamea, Partner, John Cronin, Managing Director, or Other Officer, Director, or Manager 426 Industrial Ave, Ste 150 Williston, VT 05495-4459 | | |
| Jensen Capital Partners, LLC | Dean Jensen, Managing Partner, 2711 N. Sepulveda Blvd. #544 Manhattan Beach, CA 90266 | $0 | $0 |
| Practics Inc. | Attn: Von Cameron, Agent for Service, Officer, and Director 30741 Hilltop Way San Juan Capistrano, CA 92675 | $0 | $0 |
| Public Storage #21106 | Attn Counsel, Officer, or Director 171 S Arroyo Parkway Pasadena, CA 91105 | $150 | $150 |
| Skyline Partners, Intl., LLC | Attn: Dan O'Brien 1815 S Washington Street Denver, CO 80210 | $0 | $05 |
| 5 Net Solutions | Attn: Anand Mehta, Managing Director 22/2, Plot No 275-B Sion West, Mumbai, Maharashtra India, KY 40002-2000 | $0 | $0 |
| Access Media 3, Inc. | Attn: Alan Rosenberg, Chief Executive Officer, or Other Officer or Director 900 Commerce Drive, Suite 200 | $10,186.64 | $10,186.64 |

8

| | **Other Party** | **Address(es)** | **Cure Amount as of the Petition Date of September 30, 2015** | **Cure Amount as of the Date of December 31, 2015** |
|---|---|---|---|---|
| | | Oak Brook, IL 60523 | | |
| | Advanced Wireless Group, LLC (aka Boingo Wireless, Inc.) | Attn: David Hagan Chairman and Chief Executive Officer, H. Scott Phillips, President and CEO, or Other Officer or Director 10460 NW 46th Street Miami, FL 33178<br><br>Attn: David Hagan Chairman and Chief Executive Officer, H. Scott Phillips, President and CEO, or Other Officer or Director 10960 Wilshire Blvd, 23 rd Floor Los Angeles, CA 90024 | $96,936.89 | $96,936.89 |
| | Deep Blue Communications, LLC | Attn: Brian Epstein President and CEO, or Other Officer or Director 7 Century Hill Road Latham, NY 12110 | $316.66 | $316.66 |
| | Direct Video Entertainment | Attn: Officer or Director 6615 Boynton Beach Blvd, 217 Boynton Beach, FL 33437 | $0 | $0 |
| | Docomo Intertouch Pte Ltd<br><br>Intertouch Holdings LLC | Attn: Officer or Director 89 Science Park D Singapore 118261<br><br>Attn: Officer or Director 30851 Agoura Road, Suite 102 Agoura Hills, CA 91301<br><br>c/o Corporation Service Co 2711 Centerville Rd Suite 400 Wilmington, DE 19808 | $0 | $0 |

| Other Party | Address(es) | Cure Amount as of the Petition Date of September 30, 2015 | Cure Amount as of the Date of December 31, 2015 |
| --- | --- | --- | --- |
| Double Click For Publishers Google | Attn: Larry Page, CEO, 1600 Amphitheatre Parkway Mountain View, CA 94043<br><br>Attn: Larry Page, CEO, 33654 P.O. Box 39 San Francisco, CA 94139 | $0 | $0 |
| Essenture Incorporated | Brad Commins, Agent For Service and Officer or Director 19349 Flavian Ave Torrance, CA 90503 | $75,595.56 | $75,595.56 |
| Federal Realty Investment Trust | Attn: Donald C. Wood, President – Chief Executive Office 12626 E. Jefferson St. Rockville, MD 20852 | $13.36 | $13.36 |
| Hill Companies | Attn: Officer or Director 3271 Airflite Way Long Beach, CA 90807 | $0 | $0 |
| Intermedia Cable Communications | Attn: Ejaz M. Inamdar, Director 1018 New Nana Peth Padamjee Path, Pune India 41100-2000 | $0 | $0 |
| Pacific Telemanagement Services | Attn: Christine Chen, Agent for Service, Justin T. Keane, COO, or Other Officer or Director 2001 Crow Canyon Road, Suite 200 San Ramon, CA 94583 | $3.06 | $3.06 |
| Peterson Communications Group | Attn: Greg Peterson, Agent for Service, or Other Officer or Director 827 Arnold Dr # 140 Martinez, CA 94553 | $0 | $0 |

| Other Party | Address(es) | Cure Amount as of the Petition Date of September 30, 2015 | Cure Amount as of the Date of December 31, 2015 |
|---|---|---|---|
| Pure Pages | Attn: Officer or Director 504 Iroquois Shore Road, Unit 11, Oakville ON L6H 3K4 | $656.48 | $656.48 |
| Social Wi-Fi Marketing | Attn: Artur Racicki, President or Other Officer or Director Social WiFi, Inc. 180 Sansome Street San Francisco, CA 94104 | $82.12 | $82.12 |
| SWS Realty | Attn: Taghi Shoraka, President, or Other Officer or Director 600 N. Brand Blvd. Glendale, CA 91203  Attn: Taghi Shoraka, President, or Other Officer or Director 1125 East 17th St #N559 Santa Ana, CA 92701 | $42,614.64 | $42,614.64 |
| TelePacific | Attn: Richard Jalkut, President Attn: Office of General Counsel 515 S. Flower Street, 47th Los Angeles, CA 90071 | $0 | $0 |
| The Network Operations Company | Attn: Officer or Director 44 South Dixie Highway Saint Augustine, FL 32084 | $0 | $0 |
| Uniguest, Inc. | Attn: Joseph P. Morgan, Jr., Chief Executive, or Other Officer or Director 1035 Acorn Dr. Nashville, TN 37210 | $1,022.68 | $1,022.68 |

| **Other Party** | **Address(es)** | **Cure Amount as of the Petition Date of September 30, 2015** | **Cure Amount as of the Date of December 31, 2015** |
|---|---|---|---|
| | Attn: Joseph P. Morgan, Jr., Chief Executive, or Other Officer or Director 2926 Kraft Drive Nashville, TN 37204 | | |
| United Solution LLC | Attn: Officer or Director 3909 Westpoint Blvd. Suite F Winston Salem, NC 27103 | $240.46 | $240.46 |
| Wi-Fi Guys, LLC | Attn: Jay Lewis, Tom Sullivan, and Chris Swanson, Officers and Directors, or Other Officer or Director 7265 Highway 1 Finland, MN 55603 | $225.06 | $225.06 |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
10250 Constellation Blvd., Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE TO COUNTERPARTIES TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES THAT MAY BE ASSUMED AND ASSIGNED** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On January 4, 2016, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Todd M Arnold    tma@lnbyb.com
- Ron Bender    rb@lnbyb.com
- Stephen L Burton    steveburtonlaw@aol.com
- Cathrine M Castaldi    ccastaldi@brownrudnick.com
- Leslie A Cohen    leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;Brian@lesliecohenlaw.com
- Michael I Gottfried    mgottfried@lgbfirm.com, kalandy@lgbfirm.com;cboyias@lgbfirm.com;srichmond@lgbfirm.com;sdeiches@lgbfirm.com
- Lance N Jurich    ljurich@loeb.com, karnote@loeb.com;ladocket@loeb.com
- Dare Law    dare.law@usdoj.gov, ron.maroko@usdoj.gov
- Uzzi O Raanan    uor@dgdk.com, DanningGill@gmail.com;uraanan@ecf.inforuptcy.com
- Zev Shechtman    zshechtman@dgdk.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- George C Webster    George.Webster@dbr.com, jane.gorman@dbr.com
- Aleksandra Zimonjic    azimonjic@lgbfirm.com, cboyias@lgbfirm.com;sdeiches@lgbfirm.com

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On January 4, 2016, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on January 4, 2016, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**SERVED BY PERSONAL DELIVERY**

The Honorable Sandra Klein
U.S. Bankruptcy Court
255 E. Temple Street, Courtroom 1575,
Suite 1582
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 4, 2016 | Lourdes Cruz | /s/ Lourdes Cruz |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-3.1.PROOF.SERVICE**

MediaShift, Inc.
Ad-Vantage Networks, Inc.
File No. 7652
**RSN, Debtor, OUST MML
Service by U.S. Mail or NEF if
marked with an ***

Gayot, Inc.
c/o Stephen L. Burton, Esq. **NEF***
16133 Ventura Blvd., 7th Floor
Encino, CA 91436-2403

Counsel for Mediashift Holdings, Inc.
George C. Webster II **NEF***
Drinker Biddle & Reath LLP
1800 Century Park East, Ste. 1500
Los Angeles, CA 90067-1517

5 Net Solutions
22/2, Plot No 275-B
Sion West, Mumbai, Maharashtra
India 40002-2000

AON Risk Insurance
PO Box 849832
Los Angeles, CA 90084-9832

Ace Communications Group Rpr
5351 N M 37
Mesick, MI 49668-9705

Adap.tv, Inc.
c/o Peter Di Sciascio
Weinstock & OMalley Law
105 White Oak Lane
Old Bridge, NJ 08857-1975

Ajay Pandya
c/20, Katsur Mahal
Sion Mumbai 400022

Alliance Data Services
3080 Kronprindsens Gole
Ste 200
Saint Thomas 00802-6509

Alvin Tim Wong
620 E Angeleno Ave #V
Burbank, CA 91501-3002

Debtor
MediaShift, Inc.
Ad-Vantage Networks, Inc.
600 N. Brand Blvd., Suite 230
Glendale, CA 91203

Kensel & Co., LLC
20062 SW Birch Street, #220
Newport Beach, CA 92660-1519

Counsel for Kirby Group
Leslie A. Cohen, Esq. **NEF***
LESLIE COHEN LAW, PC
506 Santa Monica Blvd., Suite 200
Santa Monica, CA 90401

AFCO
DEPT LA 21315
Pasadena, CA 91185-1315

Aaron Guerrero
5444 Sepulveda Blvd. #208
Sherman Oaks, CA 91411-4513

Ad-Vantage Networks, Inc.
600 N Brand Bl #230
Glendale, CA 91203-4234

Advanced Wireless Group, LLC
10460 NW 46th St
Miami, FL 33178-2239

Alan David Morgan
11450 Calvert Ave Apt 6
North Hollywood, CA 91606-4151

Aloft Group
26 Parker St
Newburyport, MA 01950-4010

Amazon Web Services
PO Box 84023
Seattle, WA 98124-8423

Dare Law
Office of the United States Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, CA 90017

Committee Counsel
Uzzi O Raanan **NEF***
Danning Gill Diamond Kollitz
2029 Century Park East, Suite 300
Los Angeles, CA 90067

Smith Micro Software, Inc.
c/o Loeb & Loeb LLLP
10100 Santa Monica Blvd.
Suite 2200
Los Angeles, CA 90067-4120

AFCO
PO Box 887200
Los Angeles, CA 90088-7200

Access Media 3, Inc.
900 Commerce Dr, Ste 200
Oak Brook, IL 60523-8828

Adap.tv, Inc.
770 Broadway
New York, NY 10003-9522

Aires Law Firm
Attn Timothy Aires
6 Hughes, Suite 205
Irvine, CA 92618-2063

Alina Ebrahimian
1160 Irving Ave #105
Glendale, CA 91201-3352

Alternative Business Accomodations
1650 Broadway Suite 501
New York, NY 10019-6833

Amplify Roundtables
22337 Pacific Coast Highway
Suite 488
Malibu, CA 90265-5030

Amplify Roundtables
22337 Pacific Coast Highway , Suite
488
Malibu, CA 90265-5030

Arete Advisors
8875 Research Drive
Irvine, CA 92618-4236

AudienceScience Inc
NACM Business Credit Services
910 S Spokane St Building A
Seattle WA 98134-1125

BSIM Consulting, Inc.
2455 Ridgebrook Place
Thousand Oaks, CA 91362-5315

Barry R Gosnell
8130 Boone Blvd
Vienna, VA 22182-2666

Bell Modular Systems, Inc.
7801 Noble Ave
Van Nuys, CA 91405-1141

Bingham McCutchen LLP
One Federal St
Boston, MA 02110-1726

Bingham McCutchen LLP
PO Box 3486
Boston, MA 02241-3486

Bird & Bird
15 Fetter Ln
London EC4A1JP

Bonisoft Athota
22574 Enadia Way
West Hilla, CA 91307-2328

Bonitasoft
51 Federal St. ,  Suite 305
San Francisco, CA 94107-4150

Bose Athota
22574 Enadia Way
West Hills, CA 91307-2328

Brad Commins Consulting Services
19349 Flavian Ave
Torrance, CA 90503-1337

Brian Russell
23852 PCH #263
Malibu, CA 90265

Broadridge
PO Box 416423
Boston, MA 02241-6423

Brown Rudnick, LLP
Ronald Rus
2211 Michelson Dr.
Irvine, CA 92612-1384

Business Wire, Inc.
Department 34182
PO Box 39000
San Francisco, CA 94139-0001

Business Wire, Inc.
PO Box 34182
San Francisco, CA 94134-0182

CMB Enterprises
2816 Jackson #4
San Francisco, CA 94115-1155

CPA Global Limited
2318 Mill Road, 12th Floor
Alexandria, VA 22314-6834

CT Corporation
PO Box 4349
Carol Stream, IL 60197-4349

Chad Kirby
6161 S Syracuse Way, Suite 320
Greenwood Village, CO 80111-4773

Chad Payne
310 Marguerite Unit B
Corona Del Mar, CA 92625-3074

Chad Payne
PO Box 12862
Newport Beach, CA 92658-5077

Charles F. Kirby Roth 401K
6161 S Syracuse Way, Suite 320
Greenwood Village, CO 80111-4773

Charles Kirby
6161 S Syracuse Way, Suite 320
Greenwood Village, CO 80111-4773

Cheaper Office Solutions
17014 S Vermont Ave Unit C
Gardena, CA 90247-5832

Chris Hartley
4005 The Strand
Manhattan Beach, CA 90266-3184

Christian Anderson
8501 Gracious Pine Ave
Las Vegas, NV 89143-4609

City of Newport Beach - Revenue Dept
PO Box 3080
Newport Beach, CA 92658-3080

Collins Barrow
1400 First Alberta Pl
777-8th Ave
Calgary, Alberta T2P 3R5

Commspeed Internet Services
7411 E Addis Ave.
Prescott Valley, AZ 86314-3240

Connery & Assoc
PO Box 982885
Park City, UT 84098-2885

Corbett Waddington
2564 Bluebonnet Dr
Richardson, TX 75082-2324

Corporate Service Company
PO Box 13397
Philadelphia, PA 19101-3397

Corporate Stock Transfer Inc.
3200 Cherry Creek Dr. South, Suite 430
Denver, CO 80209-3246

Counsel to U.S. TelePacific Corp.
J. Scott Bovitz
Bovitz & Spitzer
1100 Wilshire Boulevard, Suite 2403
Los Angeles, CA 90017-1961

Cox Padmore Skolnik & Shakarchy, LP
630 Third Ave, 19th Floor
New York, NY 10017-6735

Cricelli
712 Hawthorne St
Monterey, CA 93940-1102

Cruise Complete LLC
301 William Rd
Rochester MI 48307-1628

CyberCoders, Inc.
c/o Zide & O'Biecunas LLP
14545 Victory Blvd 404
Van Nuys CA 91411-4133

Cymphonix
Dept 2563 POB 122563
Dallas, TX 75312-2563

DKKD Staffing
3390 Auto Mall Dr Ste 200
Westlake Village, CA 91362-3657

Damon Flowers
835 Walton Ave
Bronx, NY 10451-2221

Danyelle Proano
1730 N Hill Ave
Pasadena, CA 91104-1425

Darin Ganitch
7800 Topanga Canyon Blvd #305
Canoga Park, CA 91304-5558

Dave Eastman
PO Box 4135
Park City, UT 84060-4135

Dave Grant
22391 Rosebriar
Mission Viejo, CA 92692-4615

David Eastman
PO Box 980670
Park City, UT 84098-0670

David Elkin
5244 Reseda Bl
Tarzana, CA 91356-4150

David Grant
22391 Rosebriar
Mission Viejo, CA 92692-4615

Debra Graybill
PO Box 490
Oakley, UT 84055-0490

Deep Blue Communications LLC
7 Century Hill Rd
Latham, NY 12110-2113

Deep Canyon Group
95 W 100 S #340
Logan, UT 84321-5815

Del Risk Inc. DBA TDC Risk
Management
1440 Arrowhead Drive
Maumee, OH 43537-4016

Delaware Secretary of State
Division of Corps. / Franchise Tax
PO Box 898
Dover, DE 19903-0898

Delaware State Treasury
820 Silver Lake Blvd., Suite 100
Dover, DE 19904-2464

DesertGate Internet
118 Bridge St.
Las Vegas, NM 87701-3489

Direct Video Entertainment
6615 Boynton Beach Blvd, 217
Boynton Beach, FL 33437-3526

Docomo Intertouch Pte Ltd
89C, Science Park Drive
#03-09/12 The Rutherford
Singapore Science Park I
Singapore,  118261

Don Larson
500 Ford Road
St. Louis Park, MN 55426-1062

Double Click For Publishers
Google
1600 Amphitheatre Parkway
Mountain View, CA 94043-1351

Dustin Perlberg
5935 Playa Vista Drive
Los Angeles, CA 90094-2130

EK Enterprises LLC
146 Tapestry
Irvine, CA 92603-0683

Eastward Capital Partners V, LP
432 Cherry St.
West Newton, MA 02465-2029

Eclipse Capital Partners LLC
c/o Corporation Service Co
Wilmington, DE 19808

Eclipse Capital Partners, LLC
c/o Eric E. Sagerman, Esq.
Winston & Strawn LLP
333 S. Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543

Elevation Fund
PO Box 3087
Greenwood Village, CO 80155-3087

Elevation Fund LLC
6161 S Syracuse Way, Suite 320
Greenwood Village, CO 80111-4773

Elevation Fund, LLC
5825 E. Irish Place
Centennial, CO 80112-6519

Empire Stock Transfer
1859 Whitney Mesa Dr.
Henderson, NV 89014-2069

Employment Development Dept
PO Box 989061
West Sacramento, CA 95798-9061

Employment Development Dept.
Bankruptcy Group MIC 92E
P.O. Box 826880
Sacramento, CA 94280-0001

Enginuiti, Inc.
8321 Old Courthouse Rd # 120
Vienna, VA 22182-3817

Eric Bauer
18 Falabella Dr.
Ladera Ranch, CA 92694-0970

Essenture Incorporated
19349 Flavian Ave
Torrance, CA 90503-1337

Fast Pay Partners, LLC
9300 Wilshire Blvd., Suite 500
Beverly Hills, CA 90212-3223

Federal Realty Investment Trust
1626 East Jefferson St
Rockville, MD 20852-4041

Fisk Investments LLC
4550 Cherry Creek Dr.
South Glendale, CO 80246

Franchise Tax Board
Bankruptcy Section, MS: A-340
P.O. Box 2952
Sacramento, CA 95812-2952

Franchise Tax Board
PO Box 942857
Sacramento, CA 94257-0001

GTT Communications Inc.
fka UNSi
7900 Tysons One Place Suite 1450
Mclean, VA 22102-5971

Gault Millau Inc
c/o Stephen L Burton Esq
16133 Ventura Blvd 7th Fl
Encino, CA 91436-2403

Gault Millau, Inc.
4311 Wilshire Blvd. STE 405
Los Angeles, CA 90010-3713

GenesisMedia, LLC
71 West 23rd St., Suite 903
New York, NY 10010-3508

Georgia Dept of Revenue Processing
PO Box 740239
Atlanta, GA 30374-0239

Glenn Lebowitz
1212 Suffield Dr.
McLean, VA 22101-2347

Global Results
2405 McCabe Way
Ste 210
Irvine, CA 92614-6224

Great American Group Corporate
Valuation
21860 Burbank Blvd., #300 South
Woodland Hills, CA 91367-6493

Greg Sowell Consulting
1413 Elkton Ct
College Station, TX 77845-9495

GrwoBiz Services
27831 Silverton Ct
Valencia, CA 91354-1490

Harrison Grant
22391 Rosebriar
Mission Viejo, CA 92692-4615

Hartford Fire Insurance Co.
Bankruptcy Unit NP3-R
Hartford Plaza
Hartford CT 06115


Health Nspire Solutions
4885 Monument St
Simi Valley, CA 93063-0451

Hein & Associates, LLP
100 Spectrum Center Drive, Suite 650
Irvine, CA 92618-4970

Home Town Cable
10486 SW Village Center Dr,
Port Saint Lucie, FL 34987-2186


Henry C. Bausley Jr
20221 Hemmingway St
Winnetka, CA 91306-2366

Hill Companies
3271 Airflite Way Long Beac
Long Beach, CA 90807-5321

Houlihan Lokey Howard & Zukin
10250 Constellation Blvd
Los Angeles, CA 90067-6200


Hotel Internet Services
4590 Ish Drive, Suite 120
Simi Valley, CA 93063-7683

Hotel Kiosks Inc.
4590 Ish Dr Ste 120
Simi Valley, CA 93063-7683

Ian Peters
17219 Tribune Ste
Granada Hills, CA 91344-4842


Howard M. Appel
2910 Edgewick Rd
Glendale, CA 91206-1315

Hunter Capital
PO Box 682500
1910 Prospector Ave.
Park City, UT 84060-7211

JMW Fund LLC
4 Richland Place
Pasadena, CA 91103-2837


Intermedia Cable Communications
1018 New Nana Peth
Padamjee Path, Pune
India, 41100-2000

INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY
OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

JPG Investments LLC
4 Richland Pl
Pasadena, CA 91103-2837


IpCapital Licensing Co, I, LLC
IpCapital Group
400 Cornerstone Dr, Ste 325
Williston, VT 05495-4046

JMG Exploration, Inc.
180 South Lake Ave 7th Fl
Pasadena, CA 91101-4760

James T. Bell
198 W Haviland Lane
Stamford, CT 06903-3334


JMW Fund, LLC
4 Richland Place
Pasadena, CA 91103-2837

JNK Services Inc.
5700 Cahuenga Bl
North Hollywood, CA 91601-2105

Jesus Cigarro
1649 Aspen Village Way
West Covina, CA 91791-3103


James A. Veldkamp
2324 S. Clayton Street
Denver, CO 80210-5418

James Callahan
3297 Old Highway 246
Santa Ynes, CA 93460

Jive Communication
Dept CH 19606
Palatine, IL 60055-9606


Jason Ruiz
16834 San Jose St
Granada Hills, CA 91344-6308

Jensen Capital Partners, LLC
Dean Jensen (Mg Ptr)
2711 N Sepulveda Blvd, #544
Manhattan Beach, CA 90266-2725

John R. Marco Jr.
3110 Vail Ave
Redondo Beach, CA 90278-1539

JetBlue Airways
27-01 Queens Plaza N
Long Island City, NY 11101-4021

Jim J. Rivas Sr.
10297 S. Powling Way
Littleton, CO 80126-4769

Karina Klever
1977 Erbes Rd
Thousand Oaks, CA 91362-1827

Joe Waimrin
2288 Mountain Oak Dr
Los Angeles, CA 90068-2534

John O. Moen & Christina A. Woolwin
Woolwine-Moen Group
3616 Harden Blvd., #335
Lakeland, FL 33803-5938

Kearney Holdings, LLC
6161 S Syracuse Way, Suite 320
Greenwood Village, CO 80111-4773

Joseph C. Prindle
1122 18th St Apt 211
Santa Monica, CA 90403-5621

Joshn Vu
7054 Jumilla Ave
Winnetka, CA 91306-3619

Kensel & Co
20062 SW Birch St Ste 220
Newport Beach, CA 92660-1519

Kayla Hale
7804 White Grass Ave
Las Vegas, NV 89131-4725

Kearney Holdings LLC
5825 E Irish Place
Centennial, CO 80112-6519

Kimberly Ho
1935 Montrobles Pl
San Marino, CA 91108-1650

Kearney Properties, LLC
6161 S Syracuse Way, Suite 320
Greenwood Village, CO 80111-4773

Kelsey Kirby
6161 S Syracuse Way, Suite 320
Greenwood Village, CO 80111-4773

Kirby Enterprises Fund LLC
6161 S Syracuse Way, Suite 320
Greenwood Village, CO 80111-4773

Kevin Potter
9704 Mill Run Dr
Great Falls, VA 22066-1815

Kharma Consulting
5401 J.F.K. Blvd.
North Little Rock, AR 72116-6740

Knobbe Martens Olson & Bear LLP
2040 Main St 14th Fl
Irvine, CA 92614-8214

Kirby Enterprise Capital Management,
LLC
6161 S Syracuse Way, Suite 320
Greenwood Village, CO 80111-4773

Kirby Enterprise Fund LLC
8525 Irish Place
Centennial, CO 80112

Law Offices of Aaron A. Grunfeld
1100 Glendon Ave, Suite 850
Los Angeles, CA 90024-3525

Kirvb Enterprise Management LLC
PO Box 3087
Greenwood Village, CO 80155-3087

Kitty Hang
1822-A E. Route 66
PMB #455
Glendora, CA 91740-3800

Link Technologies Inc 314-735-0270
MO
4853 Hillsboro House Springs Rd
House Springs, MO 63051-3011

LOS ANGELES COUNTY
TREASURER AND TAX COLLECT
PO BOX 54110
LOS ANGELES CA 90054-0110

Labor Commissioner St. of Cal.
605 W. Santa Ana Blvd
Rm 625, Bldg. 28
Santa Ana, CA 92701

Matt Yerington
PO Box 161
Bolinas, CA 94924-0161

Lawrence Cable Service
20705 S. Western Ave. , Suite 104
Torrance, CA 90501-1844

Linda Ebrahimian
14104 Summertime Lane
Culver City, CA 90230-4543

Mediashift Holdings, Inc.
4500 Cherry Creek Drive South
Suite 550
Denver, CO 80246-1518

Lotame Solutions Inc.
8850 Stanford Blvd, Ste 2000
Columbia, MD 21045-4726

Marshall Taggart
794 Miller Run
Atlanta, GA 30349-7916

Michael Spalter
24218 Wembley Ct.
Valencia, CA 91355-3501

McGladrey LLP
1185 Ave of the Americas
New York, NY 10036-2601

McGladrey LLP
5155 Paysphere Circle
Chicago, IL 60674-0051

MimoTech Software
5319 University Dr
Santa Barabra, CA 93111-1643

Mediashift Holdings, Inc.
4550 Cherry Creek Dr.
South Glendale, CO 80246

MegaPath
DEPT 0324
PO Box 120324
Dallas, TX 75312-0324

Mobilitie
2220 University Dr
Newport Beach, CA 92660-3319

Michael Spalter
24218 Wembley Ct.
Valencia, CA 91355-3501

Mikhail Koyfman
4319 Radford Ave. # 4
Studio City, CA 91604-2110

Moss Adama LLP
2030 Main St Ste 1400
Irvine, CA 92614-7222

Misikir Kebede
4848 St Elmo Dr Apt 4
Los Angeles, CA 90019-5565

Mobilite Investments III
660 Newpot Center Drive, Suite 200
Newport Beach, CA 92660-6403

National Registered Agents, Inc.
PO Box 4349
Carol Stream, IL 60197-4349

Molly Hughes
3265 Brookview Dr.
Marietta, GA 30068-3820

Mondo
11 East 26th St 21st Fl
New York, NY 10010-1413

Net Data Centers Inc
File 1483
1801 W Olympic Blvd
Pasadena, CA 91199-1843

Moss-Adams LLP
PO Box 748369
Los Angeles, CA 90074-8369

Moving Networks Forward LLC
70 Short St
Batesville, AR 72501-9121

Nevada Dept. of Taxation
4600 Kietzke Ln., Suite L-235
Reno, NV 89502-5049

NaviVision
PO Box 1274
Stanton, CA 90680-1274

Neohire Inc
1750 14th Street, Suite D
Santa Monica, CA 90404-4353

Notary and Ship
1146 N Central Ave
Glendale, CA 91202-2506

Netstorm LLC
111 Harrison Ave Ste LL-001
Oklahoma City, OK 73104-1819

Nevada Department of Taxation
Bankruptcy Section
555 E. Washington Ave., #1300
Las Vegas, NV 89101-1046

Openx Technologies
20 E Del Mar Bl
Pasadena, CA 91105-2523

New Wave Net Corp.
P.O. Box 5284
Bloomington, IL 61702-5284

Nite Media LLC
6161 S. Syracuse Way #320
Greenwood Village, CO 80111-4773

Oze Gomez
18209 Sierra Highway Unit 55
Canyon Country, CA 91351-4398

Office Demands, LLC
301 E Stevens Ave
Santa Ana, CA 92707-5717

OpenX Technologies
888 E Walnut St 2nd Fl
Pasadena, CA 91101-1897

Panasonic Avionics Corporation
26200 Enterprise Way
Lake Forest, CA 92630-8400

Outfront Media Inc.
405 LEXINGTON AVENUE
New York, NY 10174-0002

Ovation Networks, Inc.
222 3rd Ave Ste 276
Cedar Rapids, IA 52401-1541

Paul Wasserman
4 Elizabeth Ct
Briarcliff, NY 10510-2528

PR Newswire Association LLC
PO Box 5897
New York, NY 10087-5897

Pacific Telemanagement Services
2001 Crow Canyon Rd Ste 200
San Ramon, CA 94583-5388

Peterson Communicatios Group
827 Arnold Dr # 140
Martinez, CA 94553-6533

Parr Brown Gee & Loveless, PC
PO Box 11019
Salt Lake City, UT 84147-0019

Parsoco
888 N Alameda St Apt 225
Los Angeles, CA 90012-4291

PhoCusWright Inc
PO BOX 150414 , Dept: 106086
Hartford,, CT 06115-0414

Peacey Systems LLC
1007 North Federal Hwy, # 227
Fort Lauderdale, FL 33304-1422

Penguin Random House, LLC
1745 Broadway
New York, NY 10019-4343

Pioneer Capital an FSE Corp
7545 Irvine Center Drive Suite 200
Irvine, CA 92618-2933

Phil Usher
531 N Louise #204
Glendale, CA 91206-5524

Philip Andrew Usher
3149 N Naomi St
Burbank, CA 91504-1735

PublicEase Inc.
7668 El Camino Real, #104-284
Carlsbad, CA 92009-7932

Pillsbury Winthrop Shaw Pittman LLP
PO Box 601240
Charlotte, NC 28260-1240

Pinedale Operations
PO Box 3087
Greenwood Village, CO 80155-3087

Radix Collective
33 Paloma Ave #2
Venice, CA 90291-2436

Practic Inc
Attn Von Cameron
30741 Hilltop Wy
San Juan Capistrano, CA 92675-2046

Public Storage #21106
171 S Arroyo Pkwy
Pasadena, CA 91105-2019

Randall M. Gates
415 Auburn Lane
Sierra Madre, CA 91024-1107

Pure Pages
504 Iroquois Shore Road
Oakville, ON L6H 3K4
Canada

RG Nets
1000 E William St #204
Carson City, NV 89701-3117

Richard Silverberg
106 Peony
Irvine, CA 92618-1509

Radix Collective LLC
12132 Herbert St.
Los Angeles, CA 90066-5204

Randall M. Gates
333 Ohio St
Pasadena, CA 91106-4211

Rick Baran
14 Daystar
Irvine, CA 92612-3251

Ravindra Singh
11047 Ice Skate Place
San Diego, CA 92126-4852

Ravindra Wijesiriwardena
376 N Ivy Ave
Monrovia, CA 91016-2262

Robert Burg
15695 N. 83rd Way
Scottsdale, AZ 85260-1815

Richard Silverberg
516 Sunflower
Lake Forest, CA 92630-8451

Richland Fund, LLC
4 Richland Place
Pasadena, CA 91103-2837

Robert Van den Heuvel
18618 Celtic St
Nortilridge, CA 91326-2708

Rickea Dez'Janae Powell
8352 Fort Sedgwick Ave
Las Vegas, NV 89131-8193

River Bend Fund, LLC
6161 S Syracuse Way, Suite 320
Greenwood Village, CO 80111-4773

Royal Allen
1714 N. Mccadden p1., #3316
Los Angeles, CA 90028-4779

Robert Half Internation
2613 Camino Ramon
San Ramon, CA 94583-4289

Robert Hatcher
9512 Russell St
La Habra, CA 90631-2576

Sachin Shah
659 1 St, Apt 503
Hoboken, NJ 07030-8839

Ronald N. Vance & Associates, P.C.
1656 Reunion Ave. , Suite 250
South Jordan, UT 84095-4630

Row 44, LLC
4353 Park Terrace Dr.
Westlake Village, CA 91361-4638

San Gabriel Ftmd LLC
4 Richland Pl
Pasadenas CA 91103-2837

STE Holdings, LLC
845 Third Ave, 6th Floor
New York, NY 10022-6630

SWS Realty
600 N. Brand Blvd.
Glendale, CA 91203-4207

Shift CRM Inc.
155 Gordon Baker Rd, Ste 206
Toranto, ON M2H3N5

Sal De Anda
1323 Pasto Anaeapa
San Dimas, CA 91773-4129

Salesforce.com
PO Box 203141
Dallas, TX 75320-3141

Skeehan & Company
1 80 S. Lake Ave, 7th Floor
Pasadena, CA 91101-2649

Sanjeev Kuwadekar
18223 Charlton Ln.
Northridge, CA 91326-3617

Securities & Exchange Commission
LA Regional
444 S. Flower St., Ste 900
Los Angeles, CA 90071-2934

Snoopy Enterprise
2246 W 1 175 N
Layton, UT 84041-7412

Silicom Connectivity Solutions
6 Forest Ave
Paramus, NJ 07652-5245

Sixel Consulting Group, Inc.
497 Oakway Rd, Ste 220
Eugene, OR 97401-5603

CALIFORNIA STATE BOARD OF
EQUALIZATION
ACCOUNT REFERENCE GROUP MIC 29
P O BOX 942879
SACRAMENTO CA 94279-0029

Sklar Williams
8363 West Sunset Rd, Ste 300
Las Vegas, NV 89113-2095

Skyline Partners, International, LLC
1815 S Washington Street
Denver, CO 80210-3213

Suite Solutions
11132 Winners Cir # 207
Los Alamitos, CA 90720-2890

Sorbis
226 West 47th Street
7th Floor
New York, NY 10036-1413

Spencer Edwards, Inc.
PO Box 3087
Greenwood, CO 80155-3087

Telepacific
PO Box 509013
San Diego, CA 92150-9013

Stradling Yocca Carlson & Rauth
660 Newport Center Dr. Suite 1600
Newport Beach, CA 92660-6458

Strategic Business Communications
1979 Marcus Ave. , Suite 210
Lake Success, NY 11042-1022

The Chugh Firm Inc,
l5925 Carmenita Rd
Cerritos, CA 90703-2206

Susan Graziano Living Trust
Dtd. 2-24-05
6365 Spotted Fawn Run
Littleton, CO 80125-9039

Talent Merchants, Inc.
1155 S Grand Ave Ste 1802
Los Angeles, CA 90015-2274

Thinkcommerce Group LLC
c/o MetroGroup Inc Attn Lee
26 Broadway Suite 933
New York NY 10004-1722

TengoInternet
1717 W. 6th St. Suite 215
Austin, Texas 78703-4776

Thanut  Nik  Leckuthai
3208 Chico Ave
El Monte, CA 91733-1031

Transbeam Inc
8 W 38th St
New York, NY 10018-0165

The Hartford
PO Box 660916
Dallas, TX 75266-0916

The Network Operations Company
44 South Dixie Highway
Saint Augustine, FL 32084-0313

Travora Networks, Inc.
600 N. Brand Street, No. 230
Glendale, CA 91203-4234

Tim Wong
620 E Angeleno Ave #V
Burbank, CA 91501-3002

Tracy Norton
711 Royal Stewart Dr.
Placentia, CA 92870-1613

U.S. TelePacific Corp.
Attention: Mary Saunders
3300 N. Cimarron Road, Building 5
Las Vegas, Nevada 89129-8401

Travel Spike, LLC
2849 Paces Ferry Rd SE Ste 220
Atlanta, GA 30339-3769

Travel Spike, LLC
c/o PJ Puryear
Wyrick Robbins Yates & Ponton LLP
4101 Lake Boone Trail, Suite 300
Raleigh, NC 27607-7525

United Solution LLC
3909 Westpoint Blvd, Ste F
Winston Salem, NC 27103-6728

Typecraft
2040 E. Walnut Street
Pasadena, CA 91107-5804

Typecraft Inc
2040 E Walnut St
Pasadena, CA 91107-5804

VMR Technologies
27831 Silverton Crt
Valencia, CA 91354-1490

U S TELEPACIFIC CORP
OFFICE OF THE GENERAL COUNSEL
515 S FLOWER ST
47TH FLOOR
LOS ANGELES CA 90071-2208

Uniguest, Inc.
1035 Aeorn Dr.
Nashville, TN 37210-3801

West Hampton Special Situations
Fund, LLC
5825 Irish Place
Englewood, CO 80112-6519

United Solution Telecommunications
PO Box 848
Clemmons, NC 27012-0848

Vue Inc.
108 Riverwalk Rd.
Searcy, AR 72143-4888

Winthrop Couchot Professional
Corporatio
660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660-6427

Venkat Nimmagadda
23805 Kensington Ct.
West Hills, CA 91307-1263

Wi-Fi Guys, LLC
7265 Highway 1
Finland, MN 55603-4009

Zane Benefits
PO Box 684392
Park City, UT 84068-4392

West Hampton Special Situations Fund
LLC
6161 S Syracuse Way, Suite 320
Greenwood Village, CO 80111-4773

Word Express Transportation
2110 Artesia Blvd #803
Redondo Beach, CA 90278-3073

iab
116 East 27th Street , 7th Floor
New York, NY 10016-8942

Wisco America Company Limited
20062 Birch St. , Suite 300
Newport Beach, CA 92660-1520

Zide & O'Biecunas LLP
Thomas Zide
14545 Victory Blvd., #404
Van Nuys, CA 91411-4133

ipcapital Group, Inc.
426 Industrial Ave, Ste 150
Williston, VT 05495-4459

ZentLaw
1298 Kifer Rd , Ste 509
Sunnyvale, CA 94086-5321

inveshare
4501 North Point Pkwy #325
Alpharetta, CA 30022-6457

Internal Revenue Service
300 North Los Angeles Street
M/S 5022
Los Angeles, CA 90012

Wells Fargo Bank, N.A.
Business Direct Division
P.O. Box 29482
Phoenix, AZ 85038-8650

Internal Revenue Service
District Director
P.O. Box 2350 Room 5127
Los Angeles, CA 90053

Amazon Web Services (AWS)
Jeffrey P. Bezos, CEO, or Other Officer or Director
410 Terry Avenue North
Seattle, Washington 98109-5210

Hotel Internet Services (HIS)
Attn: Gary Patrick, President, or Other Officer or
Director
4590 Ish Drive, Suite 120
Simi Valley, CA 93063-7683

Mobilitie Investments III, LLC,
Attn: Christos Karmis, President, or Other Officer
or Director
2220 University Dr.
Newport Beach, CA 92660-3319

Ovation Networks, Inc.
Attn: Larry J. Selensky, President & CEO
222 3rd Ave., Suite 276
Cedar Rapids, IA 52401-1541

Panasonic Avionics Corporation
c/o agent CT corporation system
818 West Seventh St., Suite 930
Los Angeles, CA 90017

Alliance Data Services
Attn: Officer or Director
3080 Kronprindsens Gole, Suite 200
Saint Thomas 00802-0000

Eclipse Capital Partners LLC
Attn: Ronald Hoplamazian, President, or Other
Officer or Director
234 Trianon Lane
Villanova, PA 19085

Amazon Web Services (AWS)
Jeffrey P. Bezos, CEO, or Other Officer or Director
PO Box 84023
Seattle, WA 98124-8423

JetBlue Airways
Attn: Robin Hayes, President and Chief Executive
Officer, Martin St. George, SVP Commercial, or
Other Officer or Director
27-01 Queens Plaza North
Long Island City, NY 11101-4021

Outfront Media Inc.
Attn: Jeremy J. Male, Chairman and CEO Pete
Izzo, Andrew R. Simbas, Other Officer or Director,
or Law Department
405 Lexington Avenue
New York, NY 10174-0002

Panasonic Avionics Corporation
Attn: Paul Margis, President and Chief Executive
Officer, Gene Connelly, Senior Vice President, or
Other Officer or Director
26200 Enterprise Way
Lake Forest, CA 92630-8400

Adap.tv, Inc.
Attn: Tim Armstrong, Chairman & CEO
770 Broadway
New York, NY 10003

Eclipse Capital Partners LLC
c/o Corporation Service Co
2711 Centerville Rd
Suite 400
Wilmington, DE 19808

Eclipse Capital Partners LLC
c/o Eric E. Sagerman, Esq.
Winston & Strawn LLP
333 S. Grand Avenue,
38th Floor
Los Angeles, CA 90071-1543

GenesisMedia, LLC
Attn: George Mani, Officer, or other Officer or
Director
71 West 23rd St., Suite 903
New York, NY 10010

Houlihan Lokey Howard & Zukin
Attn: Raj Dayalan, Manager
10250 Constellation Blvd
Los Angeles, CA 90067-6802

ipCapital Licensing Co. I, LLC
ipCapital Group
Attn: John Ciannamea,  Partner, John Cronin,
Managing Director, or Other Officer, Director, or
Manager
400 Cornerstone Dr., Suite 325
Williston, VT 05495

ipCapital Licensing Co. I, LLC
ipCapital Group
Attn: John Ciannamea,  Partner, John Cronin,
Managing Director, or Other Officer, Director, or
Manager
426 Industrial Ave, Ste 150
Williston, VT 05495-4459

Jensen Capital Partners, LLC
Dean Jensen, Managing Partner,
2711 N. Sepulveda Blvd. #544
Manhattan Beach, CA 90266

Practics Inc.
Attn: Von Cameron, Agent for Service, Officer, and
Director
30741 Hilltop Way
San Juan Capistrano, CA 92675

Public Storage #21106
Attn Counsel, Officer, or Director
171 S Arroyo Parkway
Pasadena, CA 91105

Skyline Partners, Intl., LLC
Attn: Dan O'Brien
1815 S Washington Street
Denver, CO 80210

5 Net Solutions
Attn: Anand Mehta,
Managing Director
22/2, Plot No 275-B
Sion West, Mumbai, Maharashtra
India, KY 40002-2000

Access Media 3, Inc.
Attn: Alan Rosenberg,
Chief Executive Officer, or Other Officer or
Director
900 Commerce Drive, Suite 200
Oak Brook, IL 60523

Advanced Wireless Group, LLC (aka Boingo Wireless,
Inc.)
Attn: David Hagan, Chairman and Chief Executive
Officer, H. Scott Phillips, President and CEO, or Other
Officer or Director
10460 NW 46th Street
Miami, FL 33178

Advanced Wireless Group, LLC (aka Boingo Wireless,
Inc.)
Attn: David Hagan, Chairman and Chief Executive
Officer, H. Scott Phillips, President and CEO, or Other
Officer or Director
10960 Wilshire Blvd, 23rd  Floor
Los Angeles, CA 90024

Deep Blue Communications, LLC
Attn: Brian Epstein
President and CEO, or Other Officer or Director
7 Century Hill Road
Latham, NY 12110

Direct Video Entertainment
Attn: Officer or Director
6615 Boynton Beach Blvd, 217
Boynton Beach, FL 33437

Docomo Intertouch Pte Ltd
Attn: Officer or Director
89 Science Park D
Singapore 118261

Intertouch Holdings LLC
Attn: Officer or Director
30851 Agoura Road, Suite 102
Agoura Hills, CA 91301

Intertouch Holdings LLC
c/o Corporation Service Co
2711 Centerville Rd., Suite 400
Wilmington, DE 19808

Double Click For Publishers
Google
Attn: Larry Page, CEO,
1600 Amphitheatre Parkway
Mountain View, CA 94043

Double Click For Publishers
Google
Attn: Larry Page, CEO,
33654 P.O. Box 39
San Francisco, CA 94139

Essenture Incorporated
Brad Commins, Agent For Service and Officer or
Director
19349 Flavian Ave
Torrance, CA 90503

Federal Realty Investment Trust
Attn: Donald C. Wood, President – Chief
Executive Office
12626 E. Jefferson St.
Rockville, MD 20852

Hill Companies
Attn: Officer or Director
3271 Airflite Way
Long Beach, CA 90807

Intermedia Cable Communications
Attn: Ejaz M. Inamdar, Director
1018 New Nana Peth
Padamjee Path, Pune
India 41100-2000

Pacific Telemanagement Services
Attn: Christine Chen, Agent for Service, Justin T.
Keane, COO, or Other Officer or Director
2001 Crow Canyon Road, Suite 200
San Ramon, CA 94583

Peterson Communications Group
Attn: Greg Peterson, Agent for Service, or Other
Officer or Director
827 Arnold Dr # 140
Martinez, CA 94553

Pure Pages
Attn: Officer or Director
504 Iroquois Shore Road, Unit 11,
Oakville ON L6H 3K4 CANADA

Social Wi-Fi Marketing    Attn: Artur Racicki,
President or Other Officer or Director
Social WiFi, Inc.
180 Sansome Street
San Francisco, CA 94104

SWS Realty
Attn: Taghi Shoraka, President, or Other Officer or
Director
600 N. Brand Blvd.
Glendale, CA 91203

SWS Realty
Attn: Taghi Shoraka, President, or Other Officer or
Director
1125 East 17th St #N559
Santa Ana, CA 92701

TelePacific
Attn: Richard Jalkut, President
Attn: Office of General Counsel
515 S. Flower Street, 47th
Los Angeles, CA 90071

The Network Operations Company
Attn: Officer or Director
44 South Dixie Highway
Saint Augustine, FL 32084

Uniguest, Inc.
Attn: Joseph P. Morgan, Jr., Chief Executive, or
Other  Officer or Director
1035 Acorn Dr.
Nashville, TN 37210

Uniguest, Inc.
Attn: Joseph P. Morgan, Jr., Chief Executive, or
Other  Officer or Director
2926 Kraft Drive
Nashville, TN 37204

United Solution LLC
Attn: Officer or Director
3909 Westpoint Blvd., Suite F
Winston Salem, NC 27103

Wi-Fi Guys, LLC
Attn: Jay Lewis, Tom Sullivan, and Chris Swanson,
Officers and Directors, or Other Officer or Director
7265 Highway 1
Finland, MN 55603

AdRoll
Attn: Peter Krivkovich , CFO
972 Mission Street
San Francisco, California 94103

Amazon, Inc.
Attn: Jeff Blackburn, SVP - Corporate and Business
Development
Peter Krawiec, VP - Corporate Development
410 Terry Avenue North
Seattle, WA 98109

AOL Inc.
Attn: Alexis Gonzalez, Corporate Development
770 Broadway
New York, NY 10003

Apple Inc.
Attn: Brian Scelfo, Corporate Development
1 Infinite Loop
Cupertino, CA 95014

Boingo Wireless, Inc.
Attn: David Hagan, CEO
Peter Hovenier, CFO
10960 Wilshire Boulevard, 23rd Floor
Los Angeles, CA 90024

Criteo
Attn: Jean-Baptiste Rudelle, CEO
Benoit Fouilland, CFO
Byron Deeter, Board Member
387 Park Ave South 12th Floor
New York, NY 10016

Criteo
Attn: Jean-Baptiste Rudelle, CEO
Benoit Fouilland, CFO
Byron Deeter, Board Member
32 rue Blanche, Paris,
Ile-de-France 75009

Facebook, Inc.
Attn: David Wehner, CFO
Gary Johnson, Corporate Development
1 Hacker Way
Menlo Park, CA 94025

Dell Inc.
Attn: Alfonso Calderon, Corporate Development
2300 West Plano Parkway
Plano, TX 75075

Google Inc.
Attn: Maria Shim, Corporate Development
1600 Amphitheatre Parkway
Mountain View, CA 94043

Gogo Inc.
Attn: Norman Smagley, CFO
Varvara Alva, VP - Investor Relations, Treasurer
111 North Canal
Chicago, IL 60606

IBM Corporation
Attn: Cameron Potts, Corporate Development
1 New Orchard Road
Armonk, NY 10504

Hew-lett Packard (Aruba Networks)
Attn: Peter Cellarius (Aruba) , VP - Business &
Corporate Development
Andrew Leonard, Corporate Development - HP
1344 Crossman Avenue
Sunnyvale, CA 94089

Oracle Corporation
Attn: Douglas Kehring, Corporate Development
500 Oracle Parkway
Redwood City, CA 94065

Hew-lett Packard (Aruba Networks)
Attn: Peter Cellarius (Aruba) , VP - Business &
Corporate Development
Andrew Leonard, Corporate Development - HP
1501 Page Mill Road
Palo Alto, CA 94304

Sony Corporation
Attn: Yurika Kamitani, Senior General Manager
1-7-1 Konan Minato-ku
Tokyo 108-0075, Japan

Microsoft Corporation
Attn: Matthew Lapsen, Corporate Development
One Microsoft Way
Redmond, WA 98052

Twitter Inc.
Attn: Anthony Noto, CFO, Corporate Development
Rishi Garg, Former Head - Corporate Development
1355 Market Street, Suite 900
San Francisco, CA 94103

Sizmek
Attn: Neil Nguyen, CEO
Scott Ginsburg, Board Member
500 West 5th Street, Suite 900
Austin, TX 78701

Yelp Inc.
Attn: Jay Ganatra, Senior Manager - Corporate
Development
140 New Montgomery Street 9th Floor
San Francisco, CA 94105

TubeMogul, Inc.
Attn: Paul Joachim, CFO
1250 53rd Street, Suite 1
Emeryville, CA 94608

Charter Communications
Attn: David Housman, Director - New Business
Development
Charles Fisher. SVP - Corporate Finance
400 Atlantic Street
Stamford, CT 06901

Yahoo Inc.
Attn: Jacqueline Reses, Corporate Development
Steve Fan, VP - Corporate Development
Kerri Damm, Coverage of ad tech
701 First Avenue
Sunnyvale, CA 94089

Dish Network
Attn: Charlie Ergen, Chairman of the Board of Directors
9601 South Meridian Boulevard
Englewood, CO 80112

Cablevision Systems Corporation
Attn: Bret Richter, Corporate Development
1111 Stewart Avenue
Bethpage, NY 11714

Raycom Media
Attn: Paul H. McTear Jr., CFO
Pat LaPlatney, SVP
Melissa Thurber, SVP, CFO
Susana Schuler, SVP
201 Monroe Street RSA Tower, 20th Floor
Montgomery, AL 36104

Comcast Corporation
Attn: Alexander D. Evans, Executive VP - Global
Corporate Development and Strategy
Joseph McGinley, VP - Corporate Development
Comcast Center
1701 JFK Boulevard
Philadelphia, PA 19103

AT&T Inc.
Attn: Austin Summerford, Corporate Development
Martin Clifford, Director, Corporate Development
Mark Overton, Associate - Corporate Development
208 South Akard Street
Dallas, TX 75202

Optimum
Attn: Bret Richter, Corporate Development
1111 Stewart Avenue
Bethpage, NY 11714

DOCOMO interTouch
Attn: Charles Reed, CEO
89C, Science Park Drive #03-09/12 The Rutherford
Singapore Science Park I,
Singapore 118261


Time Warner Cable
Attn: Satish Adige, SVP - Mergers & Acquisitions
One Time Warner Center
New York, NY 10019

KDDI Corporation
Attn: Takashi Shigeno, GM - Global Strategy
Daichi Nozaki, President & COO
Garden Air Tower 10-10, Iidabashi 3-chome Chiyoda-ku
Tokyo 102-8460,  Japan


CenturyLink
Attn: R. Ewing, Corporate Development
Bryan M. Taylor, VP - Corporate Development
100 CenturyLink Drive
Monroe, LA 71203

NTT Communications
Attn: Hiromasa Takaoka, Senior Director
Daisuke Oshima, Corporate Development
Fumitake Matsuoka, Senior Manager - Corporate
Development
1-1-6 Uchisaiwai-cho Chiyoda-ku
Tokyo 100-8019, Japan


Frontier
Attn: Heath Simpson, Corporate Development
401 Merritt 7
Norwalk, CT 06851

SoftBank Group Corp.
Attn: Ruwin Perera, Corporate Development
1-9-1 Higashi-shimbashi Minato-ku
Tokyo 105-7303, Japan


Liberty Global
Attn: Ankur Prakash, Vice President
161 Hammersmith Road
London W6 8BS, United Kingdom

T-Mobile International AG
Attn: Peter Ewens, Corporate Development
Jeff Giard, Corporate Development
12920 South East 38th Street
Bellevue, WA 98006


Singtel Telecommunications Ltd.
Attn: Jennifer Lin, Manager, Corporate Development
31 Exeter Road #18-00 Comcentre
Singapore 239732, Singapore

Amphenol Corporation
Attn: Robert Stewart, VP - Market Development
Patrick Gillard, VP - Treasurer, Acquisitions, Risk
Management
358 Hall Avenue PO Box 5030
Wallingford, CT 06492


Sprint Corporation
Attn: Michael Schwartz, Corporate Development
6200 Sprint Parkway
Overland Park, KS 66251

Cisco Systems, Inc.
Attn: Kay Min, Director Corporate Development
170 West Tasman Drive
San Jose, CA 95134

Verizon Communications
Attn: Alexis Gonzalez, Corporate Development
1095 Avenue of the Americas
New York, NY 10036

Echo Star
Attn: Charlie Ergen, Chairman
100 Inverness Terrace East
Englewood, CO 80112

Belden Incorporated
Attn: Ross Rosenberg, Senior Vice President of
Strategy & Corporate Development
1 North Brentwood Boulevard 15th Floor
St. Louis, MO | 63105

Fujitsu Ltd.
Attn: Sugawara Michitaka, CEO
Horibe Tatsuo, CFO
Shiodome City Center 1-5-2 Higashi-Shimbashi Minato-ku
Tokyo 105-7123 Japan

CommScope Inc.
Attn: Patrick Manning, VP Corporate Development
1100 CommScope Place, SE
Hickory, NC 28602

Ruckus Wireless
Attn: Bart Burstein, SVP Operations & Business
Development
350 West Java Drive
Sunnyvale, CA 94089

Ericsson
Attn: Hans Vestberg, CEO
Jan Frykhammar, CFO
Hyacinth DeAlmeida, Corporate Development
Torshamnsgatan 21 Kista
Stockholm, Stockholm County 164 83
Sweden

Outfront Media
Attn: Andy Sriubas, EVP - Strategic Planning &
Development
405 Lexington Avenue 17th Floor
New York, NY 10174

Juniper Networks
Attn: Rami Rahim, CEO
Robyn Denholm, CFO
Domenic Perri, Corporate Development
1133 Innovation Way
Sunnyvale, CA 94089

Clear Channel Outdoor
Attn: Paul J. Meyer, CEO
99 Park Avenue, 2nd Floor
New York, NY 10016

Samsung Electronics Co. Ltd.
Attn: Kwon Oh-Hyun, CEO
Sang-Hoon Lee, CFO
129, Samsung-ro, Yeongtong-gu,
Suwon-si, Gyeonggi-do, South Korea

Altice
Attn: Burkhard Koep, Head of Business Development &
M&A
Cattenbroekerdijk 4 B
Woerden, Utrecht 3446 HA
Netherlands

Lamar Advertising
Attn: Keith A. Istre, CFO
5321 Corporate Boulevard
Baton Rouge, LA 70808

Rovi Corporation
Attn: Sean Matthews, EVP, Strategy and Corporate
Development
2830 De La Cruz Boulevard
Santa Clara, CA 95050

Communitiy Newspaper Holdings
Attn: Donna Barrett, President and CEO
Steve McPhaul, Sr. VP of Corporate Operations
445 Dexter Avenue, Suite 7000
Montgomery, AL 36104

Clearlake Capital
Attn: Behdad Eghbali, Head Partner
233 Wilshire Boulevard, Suite 800
Santa Monica, CA 90401

Cable One, Inc.
Attn: Matthew Armstrong, VP - Strategic Planning and
Finance
210 East Earll Drive
Phoenix, AZ 85012

OPENAIR Equity Partners
Attn: Lance LeMay, Managing Director
4520 Main Street Suite 1400
Kansas City, MO 64111

Ubiquiti Networks
Attn: John Sanford, Corporate Vice President
2580 Orchard Parkway
San Jose, CA 95131

Vector Capital
Attn: David Ramazetti, Managing Director
One Market Street Steuart Tower 23rd Floor
San Francisco, CA 94105

JAS Financial Services
Attn: James Skelton, Managing Member
1603 Orrington Avenue, Suite 600
Evanston , IL 60201

The Gores Group
Attn: Barrett Sprowl, Vice President
9800 Wilshire Boulevard
Los Angeles, CA 90212

# EXHIBIT "6"

RON BENDER (SBN 143364)
TODD M. ARNOLD (SBN 221868)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email: rb@lnbyb.com; tma@lnbyb.com

Attorneys for Chapter 11 Debtors & Debtors in Possession

UZZI O. RAANAN (SBN 162747)
ZEV SHECHTMAN (SBN 266280)
DANNING, GILL, DIAMOND & KOLLITZ, LLP
1900 Avenue of the Stars, 11th Floor
Los Angeles, California 90067
Telephone:  (310) 277-0077
Facsimile:  (310) 277-5735
Email:        uraanan@dgdk.com, zshechtman@dgdk.com

Attorneys for Official Committee of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>MediaShift, Inc.,<br><br>        Debtor and Debtor in Possession.<br>_____<br><br>In re:<br><br>Ad-Vantage Networks, Inc.,<br><br>        Debtor and Debtor in Possession.<br>_____<br>⊠ Affects Both Debtors<br><br>☐ Affects MediaShift, Inc.  Only<br><br>☐ Affects Ad-Vantage Networks, Inc. Only | Lead Case No.: 2:15-bk-25024-SK<br>(Jointly administered with:<br>Case No. 2:15-bk-25030-SK)<br><br>Chapter 11 Cases<br><br>**NOTICE OF BIDDING PROCEDURES,<br>AUCTION DATE, AND SALE HEARING** |

**PLEASE TAKE NOTICE** that on December 21, 2015, MediaShift, Inc. and Ad-Vantage Networks, Inc., chapter 11 debtors and debtors in possession (collectively the "Debtors") and the Official Committee of Unsecured Creditor (the "Committee") filed the Joint Motion For An Order (A) Approving Bidding Procedures For Sale Of Debtors' Assets; (B) Authorizing And Scheduling An Auction; (C) Scheduling Hearing For Approval Of The Sale Of Assets Free And Clear Of Liens And The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases To The Successful Bidder; (D) Approving Attorneys' Fee and Expense Reimbursement; (E) Approving Procedures And Setting Deadlines For The Assumption And Assignment Of Executory Contracts And Unexpired Leases, Including Cure Amounts Relating Thereto; (F) Approving Certain Deadlines And The Form, Manner And Sufficiency Of Notice; And (G) Granting Other Related Relief, Docket No. 140 (the "Procedures Motion").[1]

On December 30, 2015, the Bankruptcy Court entered an order (the "Procedures Order") granting the Procedures Motion and approving the bidding procedures attached hereto (the "Bidding Procedures") to be used in connection with a sale of substantially all of the Debtor's assets (the "Assets"). Pursuant to separate motion to be filed by the Debtors and the Committee by no later than January 6, 2016 (the "Sale Motion"), the Assets are being sold free and clear of all liens, claims, encumbrances and interests.

MediaShift Holdings, Inc. has submitted an offer, as the "Stalking Horse Bidder" to the Debtors to purchase the Assets on the terms set forth in that certain Asset Purchase Agreement dated December 15, 2015, between the Debtors and the Stalking Horse Bidder (the "Stalking Horse APA"), which is conditioned on Bankruptcy Court approval and is subject to higher or better offers. The Debtors and Committee determined that the offer of the Stalking Horse Bidder is presently the highest and best offer. The sale terms are set forth with more particularly in the Stalking Horse APA. The Stalking Horse bidder bid for the Asset is $11,767,000.00 ("Stalking Horse Bid").[2]

Other relevant terms of the Stalking Horse APA include the following: (a) the Assets will be sold free and clear of liens, claims, encumbrances and other interests; (b) in the event the Court approves a bid from another party that is $5,000,000.00 or greater than the Stalking Horse Bid, the Stalking Horse Bidder will be reimbursed reasonable attorneys' fees and expenses in an amount not to exceed $200,000 that the Stalking Horse Bidder incurred in connection with the transactions contemplated by the Stalking Horse APA (the "Expense Reimbursement"); (c) the Stalking Horse Bidder will assume certain enumerated liabilities as of the closing; and (d) certain executory contracts and unexpired leases will be assumed by the Debtors and assigned to the Stalking Horse Bidder.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings set forth in the Procedures Motion. The term "Assets" in this Notice shall have the same meaning as "Purchased Assets" as set forth in the Stalking Horse APA (defined herein). The Stalking Horse APA is attached to the Procedures Motion as Exhibit "B."

[2] The Stalking Horse Bid consists of: (1) a credit bid pursuant to Section 363(k) of the bankruptcy Code of Stalking Horse Bidder's allowed Prepetition Secured Claim, DIP Claim and Other Secured Claims, plus (2) cash in the amount of $700,000.

2

If offers are received by the Debtors and Committee from other Qualified Bidders in accordance with the Bidding Procedures for a price and on terms that are higher or better than the Stalking Horse APA, the Assets will be sold at the Auction. The Bidding Procedures afford the Debtors and Committee the opportunity to subject the Assets to competitive bidding while preserving the Stalking Horse Bid, thereby providing a floor price for the Assets.

The Debtors are seeking to sell substantially all of their assets under chapter 11 of the United States Bankruptcy Code. After the sale of the Assets, the Debtors will no longer operate. The Debtors and Committee believe the sale of the Assets is in the best interest of the Debtors' estates and will provide the highest and best value for the Assets.

### Bidding Procedures

A copy of the Bidding Procedures is attached hereto as **Exhibit 1**. The Bidding Procedures describe, *inter alia*, the terms of the bidding process, the requirements and deadlines for participation therein, required terms of any bids, and the time, location and conduct of the Auction. In the event of any inconsistency or conflict between this Notice, the Bidding Procedures and the Bidding Procedures Order, the Bidding Procedures Order shall control.

### The Auction

**PLEASE TAKE FURTHER NOTICE** that the Debtors and Committee are authorized to conduct the Auction in accordance with the Bidding Procedures to determine the highest and best bid with respect to the Assets. The Auction, if any, shall commence at **10:00 a.m. (prevailing Pacific Time) on January 25, 2016**, at Levene, Neale, Bender, Yoo & Brill L.L.P., 10250 Constellation Blvd., Suite 700, Los Angeles, CA 90067, or such other date or location as designated prior to the Auction.

### The Sale Hearing

**PLEASE TAKE FURTHER NOTICE** that the Bankruptcy Court has scheduled a hearing for **January 27, 2016, at 8:30 a.m. (prevailing Pacific Time)** (the "Sale Hearing") to consider either approval of the Stalking Horse APA in the absence of an Auction or approval of the successful bid and confirm the results at the Auction for the Assets, pursuant to the Sale Motion. The Sale Hearing may be adjourned in open court from time to time, without further notice. The Sale Hearing will be held before the Honorable Sandra L. Klein, United States Bankruptcy Court for the Central District of California, Edward R. Roybal Federal Building and Courthouse, 255 E. Temple Street, Suite 1582, Los Angeles, California 90012.

**PLEASE TAKE FURTHER NOTICE** that the Bidding Procedures attached hereto shall govern the bidding process and any Auction of the Assets. Any person that wishes to receive a copy of the Sale Motion (with all attachments), the Stalking Horse APA or the Procedures Order (with all attachments), can make such request in writing to Levene, Neale, Bender, Yoo & Brill, L.L.P., 10250 Constellation Blvd., Suite 1700, Los Angeles, California 90067, Attention: Todd M. Arnold, Fax 310-229-1244, Email tma@lnbyb.com.

### Objections

Any objection to any of the relief to be requested at the Sale Hearing must be in writing, state the basis of such objection with specificity, and shall be filed with the Court, and shall be

1  served on:  (i) counsel to the Debtors: Levene, Neale, Bender, Yoo & Brill, L.L.P., 10250
Constellation Blvd., Suite 1700, Los Angeles, California 90067, Attention: Todd M. Arnold,
2  Facsimile: (310) 229-1244;  (ii) ) counsel to the Official Committee of Unsecured Creditors:
Danning, Gill, Diamond & Kollitz, LLP, 1900 Avenue of the Stars, 11th Floor, Los Angeles,
3  CA 90067 (Attention: Uzzi O Raanan, Esq. and Zev Shechtman, Esq.);  (iii) the Office of the
United States Trustee, Office of the U.S. Trustee, Los Angeles, California 90012; and
4  (iv) counsel to the Stalking Horse Bidder: Drinker Bidder & Reath, LLP, 1177 Avenue of the
Americas, 41st Floor, New York, NY 10036-2714 (Attention: Michael P. Pompeo), so as to be
5  received by **January 13, 2016, at 11:59 p.m. (prevailing Pacific Time)**.

6  Dated:  January 4, 2016          **MEDIASHIFT, INC. AND**
7                                   **AD-VANTAGE NETWORKS, INC.**

8                                   By:___/s/ Todd M. Arnold_____
9                                          RON BENDER
                                           TODD M. ARNOLD
10                                  LEVENE, NEALE, BENDER, YOO
                                      & BRILL L.L.P.
11                                  Attorneys for Debtors and Debtors in Possession

12

13  Dated:  January 4, 2016          **OFFICIAL COMMITTEE OF**
14                                   **UNSECURED CREDITORS**

15                                  By:___/s/ Uzzi O. Raanan_____
16                                         UZZI O. RAANAN
                                    DANNING, GILL, DIAMOND & KOLLITZ, LLP
17                                  Attorneys for the Official Committee of
                                    Unsecured Creditors

4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "1"

RON BENDER (SBN 143364)
TODD M. ARNOLD (SBN 221868)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: rb@lnbyb.com; tma@lnbyb.com

Attorneys for Chapter 11 Debtors & Debtors in Possession

UZZI O. RAANAN (SBN 162747)
ZEV SHECHTMAN (SBN 266280)
DANNING, GILL, DIAMOND & KOLLITZ, LLP
1900 Avenue of the Stars, 11th Floor
Los Angeles, California 90067
Telephone: (310) 277-0077
Facsimile: (310) 277-5735
Email: uraanan@dgdk.com, zshechtman@dgdk.com

Attorneys for Official Committee of Unsecured Creditors

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>MediaShift, Inc.,<br><br>    Debtor and Debtor in Possession.<br>_____<br><br>In re:<br><br>Ad-Vantage Networks, Inc.,<br><br>    Debtor and Debtor in Possession.<br>_____<br>☒ Affects Both Debtors<br><br>☐ Affects MediaShift, Inc.  Only<br><br>☐ Affects Ad-Vantage Networks, Inc. Only | Lead Case No.: 2:15-bk-25024-SK<br>(Jointly administered with:<br>Case No. 2:15-bk-25030-SK)<br><br>Chapter 11 Cases<br><br>**BIDDING PROCEDURES** |

6

These sale and bidding procedures (the "***Bidding Procedures***") govern the procedures for the sale of substantially all of the assets (collectively, the "***Assets***") of MediaShift, Inc. and Ad-Vantage Networks, Inc. (collectively, the "***Debtors***") pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "***Bankruptcy Code***").

By motion (the "***Procedures Motion***")[3] dated December 21, 2015, the above-captioned debtors and debtors in possession (collectively, the "***Debtors***") and the Official Committee of Unsecured Creditors (the "***Committee***") sought, among other things, approval of the Bidding Procedures governing the process and procedures for the sale of the Assets.  On December 30, 2015, the United States Bankruptcy Court for the Central District of California (the "***Bankruptcy Court***"), entered an order approving these Bidding Procedures (the "***Bidding Procedures Order***" [Docket No. 153]).  Pursuant to the Bidding Procedures Order, the Bankruptcy Court has scheduled a hearing on **January 27, 2016, at 8:30 a.m. (prevailing Pacific Time),** to consider the sale (the "***Sale Hearing***").

## I.    Assets to Be Sold

The Debtors intend to sell substantially all of their assets including patents, software and related intellectual property, as described more fully in the Stalking Horse APA (as defined below).  Any Potential Bidder (as defined below) may obtain a detailed description of the Assets through the process described in Section II below.  The Stalking Horse APA includes the terms and conditions upon which the Debtors and the Committee expect the Assets to be sold.  Pursuant to section 363 of the Bankruptcy Code and in accordance with these Bidding Procedures, the Assets will be sold free and clear of all liens, claims, encumbrances, and interests.

## II.    Due Diligence

Until the Bid Deadline (as defined below), the Debtors and the Committee will afford to each interested party: (i) determined by the Debtors and the Committee to be reasonably likely, to make a Qualified Bid (defined below); and (ii) who delivers an executed confidentiality agreement in form and substance satisfactory to the Debtors and the Committee (each, a "***Potential Bidder***"), reasonable access, during normal business hours and subject to confidentiality requirements, to the books and records of the Debtors reasonably requested by any Potential Bidder, to the extent provision of such access or information is not prohibited by applicable law and relates to the Assets.  The Debtors will simultaneously distribute via their virtual data room in written form any additional diligence materials not previously provided to the Stalking Horse Bidder or any other Potential Bidder.  Except as provided by applicable law or Bankruptcy Court order, neither the Debtors nor their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Assets to any person or entity who is not a Potential Bidder and who does not comply with the requirements of these Bidding Procedures.

---

[3] Capitalized terms used, but not otherwise defined herein, shall have the meanings given to them in the Procedures Motion.

**III.    Determination of "Qualified Bidder" Status**

Any Potential Bidder desiring to participate in the bidding process must be deemed a "***Qualified Bidder***".  To be deemed a Qualified Bidder, a Potential Bidder must deliver to the Debtors and the Committee financial information evidencing the Potential Bidder's ability to close the transaction satisfactory to the Debtors and the Committee, in their sole discretion, or such other information as reasonably determined by the Debtors and the Committee to support the Potential Bidder's ability to close the transaction.

**IV.    Bid Deadline**

A Qualified Bidder that desires to make a bid shall deliver written and electronic copies of such bid to the Debtors' investment banker Houlihan Lokey Capital, Inc., Attn: Raj Dayalan / Jorge Villen, 10250 Constellation Blvd., 5th Floor, Los Angeles, CA 90067, T: 310.553.8871, F: 310.553.2173, E: RDayalan@HL.com, JVillen@HL.com, so as to be received by no later than **1:00 p.m. (prevailing Pacific Time) on or before January 21, 2016** (the "***Bid Deadline***").

**V.    Requirements of a "Qualified Bid"**

To be deemed a "***Qualified Bid***" that may be considered at the Auction (as defined below), a bid must:

    a.    be in writing;

    b.    be submitted by a Qualified Bidder;

    c.    provide that the purchase price shall be paid in full in cash upon closing;

    d.    provide for (i) a minimum cash purchase price that exceeds the Stalking Horse Bid  by at least $500,000;

    e.    be accompanied by a cash deposit of 5% of the Qualified Bid amount (such cash deposit will be applied to the ultimate purchase price);

    f.    confirm the Qualified Bidder's completion of all due diligence required by such Qualified Bidder in connection with the proposed transaction;

    g.    be irrevocable until the earlier of (i) the Qualified Bidder's bid being determined by the Debtors not to be a Qualified Bid, or (ii) another Qualified Bidder's bid for substantially all of the Assets being approved by the Bankruptcy Court;

    h.    be accompanied by a fully executed asset purchase agreement (the "***Modified APA***") and a version electronically marked to show reasonable changes against the Stalking Horse APA;

    i.    be, in the Debtors' and Committee's reasonable business judgment, on substantially the same or better terms as the Stalking Horse APA;

j.      identify all executory contracts or unexpired leases the Qualified Bidder seeks to have assigned to it;

k.      demonstrate the capacity to provide adequate assurance of future performance under all executory contracts and unexpired leases that are being assumed and assigned;

l.      contain no contingencies of any kind, including evidence that the Qualified Bidder has financial resources readily available sufficient to finance the purchase of the Assets and authorization;

m.      provide the that the Qualified Bidder is obligated to perform as the Reserve Bidder (as defined below) in the event the Qualified Bidder is not the Successful Bidder; and

n.      be accompanied by an affirmative statement from the Qualified Bidder that (i) it has and will continue to comply with these Bidding Procedures; (ii) its bid does not entitle such Qualified Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment or reimbursement; and (iii) it waives any substantial contribution administrative expense claims under section 503(b) of the Bankruptcy Code related to bidding for the Assets.

The Debtors and the Committee shall jointly make a determination regarding whether a bid is a Qualified Bid and shall notify all Qualified Bidders whether their bids have been determined to be Qualified Bids by no later than **4:00 p.m. (prevailing Pacific Time) on January 22, 2016**.  The Debtors and Committee reserve the right to reject any bid on any grounds.

## VI.    Stalking Horse Bidder

The Debtors have completed arm's length negotiations with **Mediashift Holdings, Inc.** (the "***Stalking Horse Bidder***") to serve as the stalking horse bidder.  As a result of those negotiations, the Stalking Horse Bidder has submitted an initial bid of $11,767,000[4] for the Assets (the "***Stalking Horse Bid***").  The Stalking Horse Bid, memorialized by an Asset Purchase Agreement by and between the Sellers and the Stalking Horse Bidder dated December 15, 2015 (the "***Stalking Horse APA***"), shall be subject to higher and better bids pursuant to the terms of these Bidding Procedures and applicable law.  For purposes of these Bidding Procedures and bidding at the Auction, the Stalking Horse Bidder is a Qualified Bidder and the Stalking Horse Bid is a Qualified Bid.

## VII.    Negotiation of Stalking Horse Breakup Fee

The Debtors have negotiated, and the Bankruptcy Court has approved, the reimbursement of the Stalking Horse Bidder for its reasonable out-of-pocket attorneys' fees and expenses incurred in connection with the transactions contemplated by the Stalking Horse APA

---

[4] The Stalking Horse Bid consists of (i) a credit bid pursuant to section 363(k) of the Bankruptcy Code of Stalking Horse Bidder's allowed Secured Pre-Petition Claim, DIP Claim and Other Secured Claims in an amount up to $11,067,000.00, plus (2) cash in the amount of $700,000.

up to a cap of $200,000 (the "***Expense Reimbursement***") in the event that the winning bid exceeds the Stalking Horse Bid by at least $5,000,000.00.

## VIII.  **Auction Process**

In the event that the Debtors and Committee receive more than one Qualified Bid, the Debtors will conduct an auction (the "***Auction***") for the Assets.  The Auction will take place on **January 25, 2016 at 10:00 a.m. (prevailing Pacific Time)** at Levene, Neale, Bender, Yoo & Brill L.L.P., 10250 Constellation Blvd., Suite 700, Los Angeles, CA 90067.

The Debtors and Committee will have the right to jointly enact detailed procedures for the conduct of the Auction at any time prior to the start of the Auction.  Any rules developed by the Debtors and Committee will provide that all bids in the Auction will be made and received in one room, on an open basis, and all other Qualified Bidders participating in the Auction will be entitled to be present for all bidding with the understanding that the true identity of each Qualified Bidder will be fully disclosed to all other Qualified Bidders participating in the Auction and that all material terms of each Qualified Bid submitted in response to the Baseline Bid or to any Subsequent Overbid (as defined below) made at the Auction will be fully disclosed to all other Qualified Bidders throughout the entire Auction.  All bids shall be placed on the record, which shall either be transcribed, videotaped, or recorded on an audio recording device.

Parties entitled to attend the Auction shall include the Debtors, the Stalking Horse Bidder, the Committee, the Qualified Bidders, the Debtors' prepetition secured lenders possessing liens in the Assets, and each of those respective parties' representatives.  The Stalking Horse Bidder and each Qualified Bidder shall appear at the Auction in person, or through a representative who provides appropriate evidence of such person's authority.  Only a Qualified Bidder that submitted a timely Qualified Bid and the Stalking Horse Bidder shall be entitled to make bids at the Auction.

Prior to the Auction, the Debtors will share with all Qualified Bidders the highest and best Qualified Bid received at the Bid Deadline (the "***Baseline Bid***").  Qualified Bidders will be permitted to revise, increase, and/or enhance their bid based upon the terms of the Baseline Bid at the Auction.  All Qualified Bidders will have the right to make additional modifications to the Modified APA or the Stalking Horse APA, as the case may be, at the Auction.

The Auction will be conducted in rounds and in any order the Debtors and Committee jointly determine.  At the end of every round, the highest and best bid or bids at that time for the Assets will be announced.  Each Qualified Bidder shall have the right to continue to improve its respective bid at the Auction.  The initial minimum overbid shall be the Baseline Bid plus $150,000 (the "***Initial Overbid***").  Thereafter, a Qualified Bidder may increase its Qualified Bid in any manner that it deems fit; provided, however, that each subsequent bid above the Initial Overbid (each, a "***Subsequent Overbid***") must have a purchase price that exceeds the purchase price of the previous highest bid by at least $100,000 of additional consideration.

The Initial Overbid and Subsequent Overbids must continue to meet each of the criteria of a Qualified Bid (other than the requirement that such bids be submitted by the Bid Deadline). The Debtors and Committee jointly reserve the right to approach any Qualified Bidder and seek clarification to bids at any time.

The Auction will continue until the Debtors and Committee jointly determine, subject to Bankruptcy Court approval, that they have received the highest and best offer for Assets (the "*Successful Bid*") and the next highest and best Qualified Bid for the Assets as the Auction (the "*Reserved Bid*"). The Qualified Bidder submitting the Successful Bid shall become the "*Successful Bidder*" and the Qualified Bidder submitting the Reserve Bid shall be the "*Reserve Bidder*."

The Debtors and Committee reserve the right, in their business judgment, to make one or more modifications and/or adjournments to the Auction to, among other things: (i) facilitate discussions between the Debtors and Committee, on the one hand, and individual Qualified Bidders, on the other hand; (ii) allow individual Qualified Bidders to consider how they wish to proceed; and (iii) give Qualified Bidders the opportunity to provide the Debtors and Committee with such additional evidence as the Debtors and Committee in their reasonable business judgment may require.

## IX.    The Sale Hearing

At the Sale Hearing, the Debtors and Committee will jointly seek entry of an order authorizing and approving the sale to the Successful Bidder. No later than **11:59 p.m. (prevailing Pacific Time) on January 13, 2016**, all objections to the relief requested at the Sale Hearing shall be filed and served in the manner prescribed in the motion to approve the sale of the Assets. The Sale Hearing may be adjourned or rescheduled from time to time. The Debtors and Committee shall provide notice of such adjournment or rescheduling to the following parties or their counsel: (i) the U.S. Trustee; (ii) the Stalking Horse Bidder; (iii) Qualified Bidders; (iv) all parties that have filed a timely objection to the sale; (v) all persons or entities known or reasonably believed to have asserted a lien in any of the Assets; and (vi) all parties that have requested notice in the Debtors' bankruptcy cases.

## X.    Failure to Consummate Purchase

Following the Sale Hearing, if the Successful Bidder fails to consummate the closing of the sale because of a breach or failure to perform on the part of such Successful Bidder, the Debtors will be authorized, but not required, to consummate the sale with Reserve Bidder without further order of the Bankruptcy Court. In such case, the defaulting Successful Bidder's deposit shall be forfeited to the Debtors. Additionally, the Debtors shall be entitled to seek all available damages from the defaulting Successful Bidder.

## XI.    Return of Deposit

The deposits of the Successful Bidder shall be applied to the Successful Bidder's obligations under the Successful Bid upon closing of the transactions contemplated thereby. If a Successful Bidder fails to close the transactions contemplated by the Successful Bidder then such Successful Bidder shall forfeit its deposit.

The deposit of the Reserve Bidder shall be returned to the Reserve Bidder upon the later of (i) the closing of the transaction to the Successful Bidder and (ii) thirty days after the Sale Hearing; provided, however, that if a Successful Bidder fails to close the transactions when and as provided in the Successful Bid, then the deposit of the Reserve Bidder shall be applied to the Reserve Bidder's obligations under the Reserve Bid upon closing of the transactions

contemplated thereby. If a Reserve Bidder fails to close the transactions contemplated by a Reserve Bid, then such Reserve Bidder shall forfeit its deposit.

All other deposits of Qualified Bidders who are not the Successful Bidder or the Reserve Bidder shall be returned within three business days after the conclusion of the Auction. The Debtors reserve all of their rights regarding any return of deposits, and the failure by the Debtors to timely return any deposits shall not serve as a claim for breach of any Qualified Bids or create any default in favor of any Qualified Bidders.

## XII.    Modification of Bidding Procedures

The Debtors and Committee may jointly amend any non-material terms of these Bidding Procedures, in their reasonable business judgment, at any time in any manner that will best promote the goals of the bidding process, including but not limited to extending or modifying any of the dates described herein.

## XIII.    Miscellaneous

Nothing in these Bidding Procedures shall prejudice a party's rights pursuant to section 363(k) of the Bankruptcy Code to credit bid at the Auction; provided, however, that any party exercising credit bid rights must comply with all other provisions of these Bidding Procedures, including but not limited to the requirements for submitting a Qualified Bid.

Dated: January 4, 2016            **MEDIASHIFT, INC. AND**
                                  **AD-VANTAGE NETWORKS, INC.**

                                  By:___*/s/ Todd M. Arnold*_____
                                         RON BENDER
                                         TODD M. ARNOLD
                                  LEVENE, NEALE, BENDER, YOO
                                     & BRILL L.L.P.
                                  Attorneys for Debtors and Debtors in Possession


Dated: January 4, 2016            **OFFICIAL COMMITTEE OF**
                                  **UNSECURED CREDITORS**

                                  By:___*/s/ Uzzi O. Raanan*_____
                                         UZZI O. RAANAN
                                  DANNING, GILL, DIAMOND & KOLLITZ, LLP
                                  Attorneys for the Official Committee of
                                  Unsecured Creditors

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
10250 Constellation Blvd., Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF BIDDING PROCEDURES, AUCTION DATE, AND SALE HEARING** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On January 4, 2016, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Todd M Arnold    tma@lnbyb.com
- Ron Bender    rb@lnbyb.com
- Stephen L Burton    steveburtonlaw@aol.com
- Cathrine M Castaldi    ccastaldi@brownrudnick.com
- Leslie A Cohen    leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;Brian@lesliecohenlaw.com
- Michael I Gottfried    mgottfried@lgbfirm.com,
  kalandy@lgbfirm.com;cboyias@lgbfirm.com;srichmond@lgbfirm.com;sdeiches@lgbfirm.com
- Lance N Jurich    ljurich@loeb.com, karnote@loeb.com;ladocket@loeb.com
- Dare Law    dare.law@usdoj.gov, ron.maroko@usdoj.gov
- Uzzi O Raanan    uor@dgdk.com, DanningGill@gmail.com;uraanan@ecf.inforuptcy.com
- Zev Shechtman    zshechtman@dgdk.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- George C Webster    George.Webster@dbr.com, jane.gorman@dbr.com
- Aleksandra Zimonjic    azimonjic@lgbfirm.com, cboyias@lgbfirm.com;sdeiches@lgbfirm.com

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On January 4, 2016, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on January 4, 2016, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                          **F 9013-3.1.PROOF.SERVICE**

**SERVED BY PERSONAL DELIVERY**

The Honorable Sandra Klein
U.S. Bankruptcy Court
255 E. Temple Street, Courtroom 1575,
Suite 1582
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 4, 2016 | Lourdes Cruz | /s/ Lourdes Cruz |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**

MediaShift, Inc.
Ad-Vantage Networks, Inc.
File No. 7652
**RSN, Debtor, OUST MML**
**Service by U.S. Mail or NEF if**
**marked with an ***

Debtor
MediaShift, Inc.
Ad-Vantage Networks, Inc.
600 N. Brand Blvd., Suite 230
Glendale, CA 91203

Dare Law
Office of the United States Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, CA 90017

Gayot, Inc.
c/o Stephen L. Burton, Esq. **NEF***
16133 Ventura Blvd., 7th Floor
Encino, CA 91436-2403

Kensel & Co., LLC
20062 SW Birch Street, #220
Newport Beach, CA 92660-1519

Committee Counsel
Uzzi O Raanan **NEF***
Danning Gill Diamond Kollitz
2029 Century Park East, Suite 300
Los Angeles, CA 90067

Counsel for Mediashift Holdings, Inc.
George C. Webster II **NEF***
Drinker Biddle & Reath LLP
1800 Century Park East, Ste. 1500
Los Angeles, CA 90067-1517

Counsel for Kirby Group
Leslie A. Cohen, Esq. **NEF***
LESLIE COHEN LAW, PC
506 Santa Monica Blvd., Suite 200
Santa Monica, CA 90401

Smith Micro Software, Inc.
c/o Loeb & Loeb LLLP
10100 Santa Monica Blvd.
Suite 2200
Los Angeles, CA 90067-4120

5 Net Solutions
22/2, Plot No 275-B
Sion West, Mumbai, Maharashtra
India 40002-2000

AFCO
DEPT LA 21315
Pasadena, CA 91185-1315

AFCO
PO Box 887200
Los Angeles, CA 90088-7200

AON Risk Insurance
PO Box 849832
Los Angeles, CA 90084-9832

Aaron Guerrero
5444 Sepulveda Blvd. #208
Sherman Oaks, CA 91411-4513

Access Media 3, Inc.
900 Commerce Dr, Ste 200
Oak Brook, IL 60523-8828

Ace Communications Group Rpr
5351 N M 37
Mesick, MI 49668-9705

Ad-Vantage Networks, Inc.
600 N Brand Bl #230
Glendale, CA 91203-4234

Adap.tv, Inc.
770 Broadway
New York, NY 10003-9522

Adap.tv, Inc.
c/o Peter Di Sciascio
Weinstock & OMalley Law
105 White Oak Lane
Old Bridge, NJ 08857-1975

Advanced Wireless Group, LLC
10460 NW 46th St
Miami, FL 33178-2239

Aires Law Firm
Attn Timothy Aires
6 Hughes, Suite 205
Irvine, CA 92618-2063

Ajay Pandya
c/20, Katsur Mahal
Sion Mumbai 400022

Alan David Morgan
11450 Calvert Ave Apt 6
North Hollywood, CA 91606-4151

Alina Ebrahimian
1160 Irving Ave #105
Glendale, CA 91201-3352

Alliance Data Services
3080 Kronprindsens Gole
Ste 200
Saint Thomas 00802-6509

Aloft Group
26 Parker St
Newburyport, MA 01950-4010

Alternative Business Accomodations
1650 Broadway Suite 501
New York, NY 10019-6833

Alvin Tim Wong
620 E Angeleno Ave #V
Burbank, CA 91501-3002

Amazon Web Services
PO Box 84023
Seattle, WA 98124-8423

Amplify Roundtables
22337 Pacific Coast Highway
Suite 488
Malibu, CA 90265-5030

Amplify Roundtables
22337 Pacific Coast Highway , Suite 488
Malibu, CA 90265-5030

Arete Advisors
8875 Research Drive
Irvine, CA 92618-4236

AudienceScience Inc
NACM Business Credit Services
910 S Spokane St Building A
Seattle WA 98134-1125

BSIM Consulting, Inc.
2455 Ridgebrook Place
Thousand Oaks, CA 91362-5315

Barry R Gosnell
8130 Boone Blvd
Vienna, VA 22182-2666

Bell Modular Systems, Inc.
7801 Noble Ave
Van Nuys, CA 91405-1141

Bingham McCutchen LLP
One Federal St
Boston, MA 02110-1726

Bingham McCutchen LLP
PO Box 3486
Boston, MA 02241-3486

Bird & Bird
15 Fetter Ln
London EC4A1JP

Bonisoft Athota
22574 Enadia Way
West Hilla, CA 91307-2328

Bonitasoft
51 Federal St. ,  Suite 305
San Francisco, CA 94107-4150

Bose Athota
22574 Enadia Way
West Hills, CA 91307-2328

Brad Commins Consulting Services
19349 Flavian Ave
Torrance, CA 90503-1337

Brian Russell
23852 PCH #263
Malibu, CA 90265

Broadridge
PO Box 416423
Boston, MA 02241-6423

Brown Rudnick, LLP
Ronald Rus
2211 Michelson Dr.
Irvine, CA 92612-1384

Business Wire, Inc.
Department 34182
PO Box 39000
San Francisco, CA 94139-0001

Business Wire, Inc.
PO Box 34182
San Francisco, CA 94134-0182

CMB Enterprises
2816 Jackson #4
San Francisco, CA 94115-1155

CPA Global Limited
2318 Mill Road, 12th Floor
Alexandria, VA 22314-6834

CT Corporation
PO Box 4349
Carol Stream, IL 60197-4349

Chad Kirby
6161 S Syracuse Way, Suite 320
Greenwood Village, CO 80111-4773

Chad Payne
310 Marguerite Unit B
Corona Del Mar, CA 92625-3074

Chad Payne
PO Box 12862
Newport Beach, CA 92658-5077

Charles F. Kirby Roth 401K
6161 S Syracuse Way, Suite 320
Greenwood Village, CO 80111-4773

Charles Kirby
6161 S Syracuse Way, Suite 320
Greenwood Village, CO 80111-4773

Cheaper Office Solutions
17014 S Vermont Ave Unit C
Gardena, CA 90247-5832

Chris Hartley
4005 The Strand
Manhattan Beach, CA 90266-3184

Christian Anderson
8501 Gracious Pine Ave
Las Vegas, NV 89143-4609

City of Newport Beach - Revenue Dept
PO Box 3080
Newport Beach, CA 92658-3080

Collins Barrow
1400 First Alberta Pl
777-8th Ave
Calgary, Alberta T2P 3R5

Commspeed Internet Services
7411 E Addis Ave.
Prescott Valley, AZ 86314-3240

Connery & Assoc
PO Box 982885
Park City, UT 84098-2885

Corbett Waddington
2564 Bluebonnet Dr
Richardson, TX 75082-2324

Corporate Service Company
PO Box 13397
Philadelphia, PA 19101-3397

Corporate Stock Transfer Inc.
3200 Cherry Creek Dr. South, Suite 430
Denver, CO 80209-3246

Counsel to U.S. TelePacific Corp.
J. Scott Bovitz
Bovitz & Spitzer
1100 Wilshire Boulevard, Suite 2403
Los Angeles, CA 90017-1961

Cox Padmore Skolnik & Shakarchy, LP
630 Third Ave, 19th Floor
New York, NY 10017-6735

Cricelli
712 Hawthorne St
Monterey, CA 93940-1102

Cruise Complete LLC
301 William Rd
Rochester MI 48307-1628

CyberCoders, Inc.
c/o Zide & O'Biecunas LLP
14545 Victory Blvd 404
Van Nuys CA 91411-4133

Cymphonix
Dept 2563 POB 122563
Dallas, TX 75312-2563

DKKD Staffing
3390 Auto Mall Dr Ste 200
Westlake Village, CA 91362-3657

Damon Flowers
835 Walton Ave
Bronx, NY 10451-2221

Danyelle Proano
1730 N Hill Ave
Pasadena, CA 91104-1425

Darin Ganitch
7800 Topanga Canyon Blvd #305
Canoga Park, CA 91304-5558

Dave Eastman
PO Box 4135
Park City, UT 84060-4135

Dave Grant
22391 Rosebriar
Mission Viejo, CA 92692-4615

David Eastman
PO Box 980670
Park City, UT 84098-0670

David Elkin
5244 Reseda Bl
Tarzana, CA 91356-4150

David Grant
22391 Rosebriar
Mission Viejo, CA 92692-4615

Debra Graybill
PO Box 490
Oakley, UT 84055-0490

Deep Blue Communications LLC
7 Century Hill Rd
Latham, NY 12110-2113

Deep Canyon Group
95 W 100 S #340
Logan, UT 84321-5815

Del Risk Inc. DBA TDC Risk
Management
1440 Arrowhead Drive
Maumee, OH 43537-4016

Delaware Secretary of State
Division of Corps. / Franchise Tax
PO Box 898
Dover, DE 19903-0898

Delaware State Treasury
820 Silver Lake Blvd., Suite 100
Dover, DE 19904-2464

DesertGate Internet
118 Bridge St.
Las Vegas, NM 87701-3489

Direct Video Entertainment
6615 Boynton Beach Blvd, 217
Boynton Beach, FL 33437-3526

Docomo Intertouch Pte Ltd
89C, Science Park Drive
#03-09/12 The Rutherford
Singapore Science Park I
Singapore,  118261

Don Larson
500 Ford Road
St. Louis Park, MN 55426-1062

Double Click For Publishers
Google
1600 Amphitheatre Parkway
Mountain View, CA 94043-1351

Dustin Perlberg
5935 Playa Vista Drive
Los Angeles, CA 90094-2130


EK Enterprises LLC
146 Tapestry
Irvine, CA 92603-0683

Eastward Capital Partners V, LP
432 Cherry St.
West Newton, MA 02465-2029

Eclipse Capital Partners LLC
c/o Corporation Service Co
Wilmington, DE 19808


Eclipse Capital Partners, LLC
c/o Eric E. Sagerman, Esq.
Winston & Strawn LLP
333 S. Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543

Elevation Fund
PO Box 3087
Greenwood Village, CO 80155-3087

Elevation Fund LLC
6161 S Syracuse Way, Suite 320
Greenwood Village, CO 80111-4773


Elevation Fund, LLC
5825 E. Irish Place
Centennial, CO 80112-6519

Empire Stock Transfer
1859 Whitney Mesa Dr.
Henderson, NV 89014-2069

Employment Development Dept
PO Box 989061
West Sacramento, CA 95798-9061


Employment Development Dept.
Bankruptcy Group MIC 92E
P.O. Box 826880
Sacramento, CA 94280-0001

Enginuiti, Inc.
8321 Old Courthouse Rd # 120
Vienna, VA 22182-3817

Eric Bauer
18 Falabella Dr.
Ladera Ranch, CA 92694-0970


Essenture Incorporated
19349 Flavian Ave
Torrance, CA 90503-1337

Fast Pay Partners, LLC
9300 Wilshire Blvd., Suite 500
Beverly Hills, CA 90212-3223

Federal Realty Investment Trust
1626 East Jefferson St
Rockville, MD 20852-4041


Fisk Investments LLC
4550 Cherry Creek Dr.
South Glendale, CO 80246

Franchise Tax Board
Bankruptcy Section, MS: A-340
P.O. Box 2952
Sacramento, CA 95812-2952

Franchise Tax Board
PO Box 942857
Sacramento, CA 94257-0001


GTT Communications Inc.
fka UNSi
7900 Tysons One Place Suite 1450
Mclean, VA 22102-5971

Gault Millau Inc
c/o Stephen L Burton Esq
16133 Ventura Blvd 7th Fl
Encino, CA 91436-2403

Gault Millau, Inc.
4311 Wilshire Blvd. STE 405
Los Angeles, CA 90010-3713


GenesisMedia, LLC
71 West 23rd St., Suite 903
New York, NY 10010-3508

Georgia Dept of Revenue Processing
PO Box 740239
Atlanta, GA 30374-0239

Glenn Lebowitz
1212 Suffield Dr.
McLean, VA 22101-2347


Global Results
2405 McCabe Way
Ste 210
Irvine, CA 92614-6224

Great American Group Corporate
Valuation
21860 Burbank Blvd., #300 South
Woodland Hills, CA 91367-6493

Greg Sowell Consulting
1413 Elkton Ct
College Station, TX 77845-9495

GrwoBiz Services
27831 Silverton Ct
Valencia, CA 91354-1490

Harrison Grant
22391 Rosebriar
Mission Viejo, CA 92692-4615

Hartford Fire Insurance Co.
Bankruptcy Unit NP3-R
Hartford Plaza
Hartford CT 06115

Health Nspire Solutions
4885 Monument St
Simi Valley, CA 93063-0451

Hein & Associates, LLP
100 Spectrum Center Drive, Suite 650
Irvine, CA 92618-4970

Home Town Cable
10486 SW Village Center Dr,
Port Saint Lucie, FL 34987-2186

Henry C. Bausley Jr
20221 Hemmingway St
Winnetka, CA 91306-2366

Hill Companies
3271 Airflite Way Long Beac
Long Beach, CA 90807-5321

Houlihan Lokey Howard & Zukin
10250 Constellation Blvd
Los Angeles, CA 90067-6200

Hotel Internet Services
4590 Ish Drive, Suite 120
Simi Valley, CA 93063-7683

Hotel Kiosks Inc.
4590 Ish Dr Ste 120
Simi Valley, CA 93063-7683

Ian Peters
17219 Tribune Ste
Granada Hills, CA 91344-4842

Howard M. Appel
2910 Edgewick Rd
Glendale, CA 91206-1315

Hunter Capital
PO Box 682500
1910 Prospector Ave.
Park City, UT 84060-7211

JMW Fund LLC
4 Richland Place
Pasadena, CA 91103-2837

Intermedia Cable Communications
1018 New Nana Peth
Padamjee Path, Pune
India,  41100-2000

INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY
OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

JPG Investments LLC
4 Richland Pl
Pasadena, CA 91103-2837

IpCapital Licensing Co, I, LLC
IpCapital Group
400 Cornerstone Dr, Ste 325
Williston, VT 05495-4046

JMG Exploration, Inc.
180 South Lake Ave 7th Fl
Pasadena, CA 91101-4760

James T. Bell
198 W Haviland Lane
Stamford, CT 06903-3334

JMW Fund, LLC
4 Richland Place
Pasadena, CA 91103-2837

JNK Services Inc.
5700 Cahuenga Bl
North Hollywood, CA 91601-2105

Jesus Cigarro
1649 Aspen Village Way
West Covina, CA 91791-3103

James A. Veldkamp
2324 S. Clayton Street
Denver, CO 80210-5418

James Callahan
3297 Old Highway 246
Santa Ynes, CA 93460

Jive Communication
Dept CH 19606
Palatine, IL 60055-9606

Jason Ruiz
16834 San Jose St
Granada Hills, CA 91344-6308

Jensen Capital Partners, LLC
Dean Jensen (Mg Ptr)
2711 N Sepulveda Blvd, #544
Manhattan Beach, CA 90266-2725

John R. Marco Jr.
3110 Vail Ave
Redondo Beach, CA 90278-1539

JetBlue Airways
27-01 Queens Plaza N
Long Island City, NY 11101-4021

Jim J. Rivas Sr.
10297 S. Powling Way
Littleton, CO 80126-4769

Karina Klever
1977 Erbes Rd
Thousand Oaks, CA 91362-1827

Joe Waimrin
2288 Mountain Oak Dr
Los Angeles, CA 90068-2534

John O. Moen & Christina A. Woolwin
Woolwine-Moen Group
3616 Harden Blvd., #335
Lakeland, FL 33803-5938

Kearney Holdings, LLC
6161 S Syracuse Way, Suite 320
Greenwood Village, CO 80111-4773

Joseph C. Prindle
1122 18th St Apt 211
Santa Monica, CA 90403-5621

Joshn Vu
7054 Jumilla Ave
Winnetka, CA 91306-3619

Kensel & Co
20062 SW Birch St Ste 220
Newport Beach, CA 92660-1519

Kayla Hale
7804 White Grass Ave
Las Vegas, NV 89131-4725

Kearney Holdings LLC
5825 E Irish Place
Centennial, CO 80112-6519

Kimberly Ho
1935 Montrobles Pl
San Marino, CA 91108-1650

Kearney Properties, LLC
6161 S Syracuse Way, Suite 320
Greenwood Village, CO 80111-4773

Kelsey Kirby
6161 S Syracuse Way, Suite 320
Greenwood Village, CO 80111-4773

Kirby Enterprises Fund LLC
6161 S Syracuse Way, Suite 320
Greenwood Village, CO 80111-4773

Kevin Potter
9704 Mill Run Dr
Great Falls, VA 22066-1815

Kharma Consulting
5401 J.F.K. Blvd.
North Little Rock, AR 72116-6740

Knobbe Martens Olson & Bear LLP
2040 Main St 14th Fl
Irvine, CA 92614-8214

Kirby Enterprise Capital Management,
LLC
6161 S Syracuse Way, Suite 320
Greenwood Village, CO 80111-4773

Kirby Enterprise Fund LLC
8525 Irish Place
Centennial, CO 80112

Law Offices of Aaron A. Grunfeld
1100 Glendon Ave, Suite 850
Los Angeles, CA 90024-3525

Kirvb Enterprise Management LLC
PO Box 3087
Greenwood Village, CO 80155-3087

Kitty Hang
1822-A E. Route 66
PMB #455
Glendora, CA 91740-3800

Link Technologies Inc 314-735-0270
MO
4853 Hillsboro House Springs Rd
House Springs, MO 63051-3011

LOS ANGELES COUNTY
TREASURER AND TAX COLLECT
PO BOX 54110
LOS ANGELES CA 90054-0110

Labor Commissioner St. of Cal.
605 W. Santa Ana Blvd
Rm 625, Bldg. 28
Santa Ana, CA 92701

Matt Yerington
PO Box 161
Bolinas, CA 94924-0161

Lawrence Cable Service
20705 S. Western Ave. , Suite 104
Torrance, CA 90501-1844

Linda Ebrahimian
14104 Summertime Lane
Culver City, CA 90230-4543

Mediashift Holdings, Inc.
4500 Cherry Creek Drive South
Suite 550
Denver, CO 80246-1518

Lotame Solutions Inc.
8850 Stanford Blvd, Ste 2000
Columbia, MD 21045-4726

Marshall Taggart
794 Miller Run
Atlanta, GA 30349-7916

Michael Spalter
24218 Wembley Ct.
Valencia, CA 91355-3501

McGladrey LLP
1185 Ave of the Americas
New York, NY 10036-2601

McGladrey LLP
5155 Paysphere Circle
Chicago, IL 60674-0051

MimoTech Software
5319 University Dr
Santa Barabra, CA 93111-1643

Mediashift Holdings, Inc.
4550 Cherry Creek Dr.
South Glendale, CO 80246

MegaPath
DEPT 0324
PO Box 120324
Dallas, TX 75312-0324

Mobilitie
2220 University Dr
Newport Beach, CA 92660-3319

Michael Spalter
24218 Wembley Ct.
Valencia, CA 91355-3501

Mikhail Koyfman
4319 Radford Ave. # 4
Studio City, CA 91604-2110

Moss Adama LLP
2030 Main St Ste 1400
Irvine, CA 92614-7222

Misikir Kebede
4848 St Elmo Dr Apt 4
Los Angeles, CA 90019-5565

Mobilite Investments III
660 Newpot Center Drive, Suite 200
Newport Beach, CA 92660-6403

National Registered Agents, Inc.
PO Box 4349
Carol Stream, IL 60197-4349

Molly Hughes
3265 Brookview Dr.
Marietta, GA 30068-3820

Mondo
11 East 26th St 21st Fl
New York, NY 10010-1413

Net Data Centers Inc
File 1483
1801 W Olympic Blvd
Pasadena, CA 91199-1843

Moss-Adams LLP
PO Box 748369
Los Angeles, CA 90074-8369

Moving Networks Forward LLC
70 Short St
Batesville, AR 72501-9121

Nevada Dept. of Taxation
4600 Kietzke Ln., Suite L-235
Reno, NV 89502-5049

NaviVision
PO Box 1274
Stanton, CA 90680-1274

Neohire Inc
1750 14th Street, Suite D
Santa Monica, CA 90404-4353

Notary and Ship
1146 N Central Ave
Glendale, CA 91202-2506

Netstorm LLC
111 Harrison Ave Ste LL-001
Oklahoma City, OK 73104-1819

Nevada Department of Taxation
Bankruptcy Section
555 E. Washington Ave., #1300
Las Vegas, NV 89101-1046

Openx Technologies
20 E Del Mar Bl
Pasadena, CA 91105-2523

New Wave Net Corp.
P.O. Box 5284
Bloomington, IL 61702-5284

Nite Media LLC
6161 S. Syracuse Way #320
Greenwood Village, CO 80111-4773

Oze Gomez
18209 Sierra Highway Unit 55
Canyon Country, CA 91351-4398

Office Demands, LLC
301 E Stevens Ave
Santa Ana, CA 92707-5717

OpenX Technologies
888 E Walnut St 2nd Fl
Pasadena, CA 91101-1897

Panasonic Avionics Corporation
26200 Enterprise Way
Lake Forest, CA 92630-8400


Outfront Media Inc.
405 LEXINGTON AVENUE
New York, NY 10174-0002

Ovation Networks, Inc.
222 3rd Ave Ste 276
Cedar Rapids, IA 52401-1541

Paul Wasserman
4 Elizabeth Ct
Briarcliff, NY 10510-2528


PR Newswire Association LLC
PO Box 5897
New York, NY 10087-5897

Pacific Telemanagement Services
2001 Crow Canyon Rd Ste 200
San Ramon, CA 94583-5388

Peterson Communicatios Group
827 Arnold Dr # 140
Martinez, CA 94553-6533


Parr Brown Gee & Loveless, PC
PO Box 11019
Salt Lake City, UT 84147-0019

Parsoco
888 N Alameda St Apt 225
Los Angeles, CA 90012-4291

PhoCusWright Inc
PO BOX 150414 , Dept: 106086
Hartford,, CT 06115-0414


Peacey Systems LLC
1007 North Federal Hwy, # 227
Fort Lauderdale, FL 33304-1422

Penguin Random House, LLC
1745 Broadway
New York, NY 10019-4343

Pioneer Capital an FSE Corp
7545 Irvine Center Drive Suite 200
Irvine, CA 92618-2933


Phil Usher
531 N Louise #204
Glendale, CA 91206-5524

Philip Andrew Usher
3149 N Naomi St
Burbank, CA 91504-1735

PublicEase Inc.
7668 El Camino Real, #104-284
Carlsbad, CA 92009-7932


Pillsbury Winthrop Shaw Pittman LLP
PO Box 601240
Charlotte, NC 28260-1240

Pinedale Operations
PO Box 3087
Greenwood Village, CO 80155-3087

Radix Collective
33 Paloma Ave #2
Venice, CA 90291-2436


Practic Inc
Attn Von Cameron
30741 Hilltop Wy
San Juan Capistrano, CA 92675-2046

Public Storage #21106
171 S Arroyo Pkwy
Pasadena, CA 91105-2019

Randall M. Gates
415 Auburn Lane
Sierra Madre, CA 91024-1107


Pure Pages
504 Iroquois Shore Road
Oakville, ON L6H 3K4
Canada

RG Nets
1000 E William St #204
Carson City, NV 89701-3117

Richard Silverberg
106 Peony
Irvine, CA 92618-1509


Radix Collective LLC
12132 Herbert St.
Los Angeles, CA 90066-5204

Randall M. Gates
333 Ohio St
Pasadena, CA 91106-4211

Rick Baran
14 Daystar
Irvine, CA 92612-3251

Ravindra Singh
11047 Ice Skate Place
San Diego, CA 92126-4852

Ravindra Wijesiriwardena
376 N Ivy Ave
Monrovia, CA 91016-2262

Robert Burg
15695 N. 83rd Way
Scottsdale, AZ 85260-1815

Richard Silverberg
516 Sunflower
Lake Forest, CA 92630-8451

Richland Fund, LLC
4 Richland Place
Pasadena, CA 91103-2837

Robert Van den Heuvel
18618 Celtic St
Nortilridge, CA 91326-2708

Rickea Dez'Janae Powell
8352 Fort Sedgwick Ave
Las Vegas, NV 89131-8193

River Bend Fund, LLC
6161 S Syracuse Way, Suite 320
Greenwood Village, CO 80111-4773

Royal Allen
1714 N. Mccadden p1., #3316
Los Angeles, CA 90028-4779

Robert Half Internation
2613 Camino Ramon
San Ramon, CA 94583-4289

Robert Hatcher
9512 Russell St
La Habra, CA 90631-2576

Sachin Shah
659 1 St, Apt 503
Hoboken, NJ 07030-8839

Ronald N. Vance & Associates, P.C.
1656 Reunion Ave. , Suite 250
South Jordan, UT 84095-4630

Row 44, LLC
4353 Park Terrace Dr.
Westlake Village, CA 91361-4638

San Gabriel Ftmd LLC
4 Richland Pl
Pasadenas CA 91103-2837

STE Holdings, LLC
845 Third Ave, 6th Floor
New York, NY 10022-6630

SWS Realty
600 N. Brand Blvd.
Glendale, CA 91203-4207

Shift CRM Inc.
155 Gordon Baker Rd, Ste 206
Toranto, ON M2H3N5

Sal De Anda
1323 Pasto Anaeapa
San Dimas, CA 91773-4129

Salesforce.com
PO Box 203141
Dallas, TX 75320-3141

Skeehan & Company
1 80 S. Lake Ave, 7th Floor
Pasadena, CA 91101-2649

Sanjeev Kuwadekar
18223 Charlton Ln.
Northridge, CA 91326-3617

Securities & Exchange Commission
LA Regional
444 S. Flower St., Ste 900
Los Angeles, CA 90071-2934

Snoopy Enterprise
2246 W 1 175 N
Layton, UT 84041-7412

Silicom Connectivity Solutions
6 Forest Ave
Paramus, NJ 07652-5245

Sixel Consulting Group, Inc.
497 Oakway Rd, Ste 220
Eugene, OR 97401-5603

CALIFORNIA STATE BOARD OF
EQUALIZATION
ACCOUNT REFERENCE GROUP MIC 29
P O BOX 942879
SACRAMENTO CA 94279-0029

Sklar Williams
8363 West Sunset Rd, Ste 300
Las Vegas, NV 89113-2095

Skyline Partners, International, LLC
1815 S Washington Street
Denver, CO 80210-3213

Suite Solutions
11132 Winners Cir # 207
Los Alamitos, CA 90720-2890

Sorbis
226 West 47th Street
7th Floor
New York, NY 10036-1413

Spencer Edwards, Inc.
PO Box 3087
Greenwood, CO 80155-3087

Telepacific
PO Box 509013
San Diego, CA 92150-9013

Stradling Yocca Carlson & Rauth
660 Newport Center Dr. Suite 1600
Newport Beach, CA 92660-6458

Strategic Business Communications
1979 Marcus Ave. , Suite 210
Lake Success, NY 11042-1022

The Chugh Firm Inc,
l5925 Carmenita Rd
Cerritos, CA 90703-2206

Susan Graziano Living Trust
Dtd. 2-24-05
6365 Spotted Fawn Run
Littleton, CO 80125-9039

Talent Merchants, Inc.
1155 S Grand Ave Ste 1802
Los Angeles, CA 90015-2274

Thinkcommerce Group LLC
c/o MetroGroup Inc Attn Lee
26 Broadway Suite 933
New York NY 10004-1722

TengoInternet
1717 W. 6th St. Suite 215
Austin, Texas 78703-4776

Thanut  Nik  Leckuthai
3208 Chico Ave
El Monte, CA 91733-1031

Transbeam Inc
8 W 38th St
New York, NY 10018-0165

The Hartford
PO Box 660916
Dallas, TX 75266-0916

The Network Operations Company
44 South Dixie Highway
Saint Augustine, FL 32084-0313

Travora Networks, Inc.
600 N. Brand Street, No. 230
Glendale, CA 91203-4234

Tim Wong
620 E Angeleno Ave #V
Burbank, CA 91501-3002

Tracy Norton
711 Royal Stewart Dr.
Placentia, CA 92870-1613

U.S. TelePacific Corp.
Attention: Mary Saunders
3300 N. Cimarron Road, Building 5
Las Vegas, Nevada 89129-8401

Travel Spike, LLC
2849 Paces Ferry Rd SE Ste 220
Atlanta, GA 30339-3769

Travel Spike, LLC
c/o PJ Puryear
Wyrick Robbins Yates & Ponton LLP
4101 Lake Boone Trail, Suite 300
Raleigh, NC 27607-7525

United Solution LLC
3909 Westpoint Blvd, Ste F
Winston Salem, NC 27103-6728

Typecraft
2040 E. Walnut Street
Pasadena, CA 91107-5804

Typecraft Inc
2040 E Walnut St
Pasadena, CA 91107-5804

VMR Technologies
27831 Silverton Crt
Valencia, CA 91354-1490

U S TELEPACIFIC CORP
OFFICE OF THE GENERAL COUNSEL
515 S FLOWER ST
47TH FLOOR
LOS ANGELES CA 90071-2208

Uniguest, Inc.
1035 Aeorn Dr.
Nashville, TN 37210-3801

West Hampton Special Situations
Fund, LLC
5825 Irish Place
Englewood, CO 80112-6519

United Solution Telecommunications
PO Box 848
Clemmons, NC 27012-0848

Vue Inc.
108 Riverwalk Rd.
Searcy, AR 72143-4888

Winthrop Couchot Professional
Corporatio
660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660-6427

Venkat Nimmagadda
23805 Kensington Ct.
West Hills, CA 91307-1263

Wi-Fi Guys, LLC
7265 Highway 1
Finland, MN 55603-4009

Zane Benefits
PO Box 684392
Park City, UT 84068-4392


West Hampton Special Situations Fund
LLC
6161 S Syracuse Way, Suite 320
Greenwood Village, CO 80111-4773

Word Express Transportation
2110 Artesia Blvd #803
Redondo Beach, CA 90278-3073

iab
116 East 27th Street , 7th Floor
New York, NY 10016-8942


Wisco America Company Limited
20062 Birch St. , Suite 300
Newport Beach, CA 92660-1520

Zide & O'Biecunas LLP
Thomas Zide
14545 Victory Blvd., #404
Van Nuys, CA 91411-4133

ipcapital Group, Inc.
426 Industrial Ave, Ste 150
Williston, VT 05495-4459


ZentLaw
1298 Kifer Rd , Ste 509
Sunnyvale, CA 94086-5321

inveshare
4501 North Point Pkwy #325
Alpharetta, CA 30022-6457

Internal Revenue Service
300 North Los Angeles Street
M/S 5022
Los Angeles, CA 90012


Wells Fargo Bank, N.A.
Business Direct Division
P.O. Box 29482
Phoenix, AZ 85038-8650

Internal Revenue Service
District Director
P.O. Box 2350 Room 5127
Los Angeles, CA 90053

Amazon Web Services (AWS)
Jeffrey P. Bezos, CEO, or Other Officer or Director
410 Terry Avenue North
Seattle, Washington 98109-5210

Hotel Internet Services (HIS)
Attn: Gary Patrick, President, or Other Officer or Director
4590 Ish Drive, Suite 120
Simi Valley, CA 93063-7683

Mobilitie Investments III, LLC,
Attn: Christos Karmis, President, or Other Officer or Director
2220 University Dr.
Newport Beach, CA 92660-3319

Ovation Networks, Inc.
Attn: Larry J. Selensky, President & CEO
222 3rd Ave., Suite 276
Cedar Rapids, IA 52401-1541

Panasonic Avionics Corporation
c/o agent CT corporation system
818 West Seventh St., Suite 930
Los Angeles, CA 90017

Alliance Data Services
Attn: Officer or Director
3080 Kronprindsens Gole, Suite 200
Saint Thomas 00802-0000

Eclipse Capital Partners LLC
Attn: Ronald Hoplamazian, President, or Other Officer or Director
234 Trianon Lane
Villanova, PA 19085

Amazon Web Services (AWS)
Jeffrey P. Bezos, CEO, or Other Officer or Director
PO Box 84023
Seattle, WA 98124-8423

JetBlue Airways
Attn: Robin Hayes, President and Chief Executive Officer, Martin St. George, SVP Commercial, or Other Officer or Director
27-01 Queens Plaza North
Long Island City, NY 11101-4021

Outfront Media Inc.
Attn: Jeremy J. Male, Chairman and CEO Pete Izzo, Andrew R. Simbas, Other Officer or Director, or Law Department
405 Lexington Avenue
New York, NY 10174-0002

Panasonic Avionics Corporation
Attn: Paul Margis, President and Chief Executive Officer, Gene Connelly, Senior Vice President, or Other Officer or Director
26200 Enterprise Way
Lake Forest, CA 92630-8400

Adap.tv, Inc.
Attn: Tim Armstrong, Chairman & CEO
770 Broadway
New York, NY 10003

Eclipse Capital Partners LLC
c/o Corporation Service Co
2711 Centerville Rd
Suite 400
Wilmington, DE 19808

Eclipse Capital Partners LLC
c/o Eric E. Sagerman, Esq.
Winston & Strawn LLP
333 S. Grand Avenue,
38th Floor
Los Angeles, CA 90071-1543

GenesisMedia, LLC
Attn: George Mani, Officer, or other Officer or
Director
71 West 23rd St., Suite 903
New York, NY 10010

Houlihan Lokey Howard & Zukin
Attn: Raj Dayalan, Manager
10250 Constellation Blvd
Los Angeles, CA 90067-6802

ipCapital Licensing Co. I, LLC
ipCapital Group
Attn: John Ciannamea,  Partner, John Cronin,
Managing Director, or Other Officer, Director, or
Manager
400 Cornerstone Dr., Suite 325
Williston, VT 05495

ipCapital Licensing Co. I, LLC
ipCapital Group
Attn: John Ciannamea,  Partner, John Cronin,
Managing Director, or Other Officer, Director, or
Manager
426 Industrial Ave, Ste 150
Williston, VT 05495-4459

Jensen Capital Partners, LLC
Dean Jensen, Managing Partner,
2711 N. Sepulveda Blvd. #544
Manhattan Beach, CA 90266

Practics Inc.
Attn: Von Cameron, Agent for Service, Officer, and
Director
30741 Hilltop Way
San Juan Capistrano, CA 92675

Public Storage #21106
Attn Counsel, Officer, or Director
171 S Arroyo Parkway
Pasadena, CA 91105

Skyline Partners, Intl., LLC
Attn: Dan O'Brien
1815 S Washington Street
Denver, CO 80210

5 Net Solutions
Attn: Anand Mehta,
Managing Director
22/2, Plot No 275-B
Sion West, Mumbai, Maharashtra
India, KY 40002-2000

Access Media 3, Inc.
Attn: Alan Rosenberg,
Chief Executive Officer, or Other Officer or
Director
900 Commerce Drive, Suite 200
Oak Brook, IL 60523

Advanced Wireless Group, LLC (aka Boingo Wireless,
Inc.)
Attn: David Hagan, Chairman and Chief Executive
Officer, H. Scott Phillips, President and CEO, or Other
Officer or Director
10460 NW 46th Street
Miami, FL 33178

Advanced Wireless Group, LLC (aka Boingo Wireless,
Inc.)
Attn: David Hagan, Chairman and Chief Executive
Officer, H. Scott Phillips, President and CEO, or Other
Officer or Director
10960 Wilshire Blvd, 23rd  Floor
Los Angeles, CA 90024

Deep Blue Communications, LLC
Attn: Brian Epstein
President and CEO, or Other Officer or Director
7 Century Hill Road
Latham, NY 12110

Direct Video Entertainment
Attn: Officer or Director
6615 Boynton Beach Blvd, 217
Boynton Beach, FL 33437

Docomo Intertouch Pte Ltd
Attn: Officer or Director
89 Science Park D
Singapore 118261

Intertouch Holdings LLC
Attn: Officer or Director
30851 Agoura Road, Suite 102
Agoura Hills, CA 91301

Intertouch Holdings LLC
c/o Corporation Service Co
2711 Centerville Rd., Suite 400
Wilmington, DE 19808

Double Click For Publishers
Google
Attn: Larry Page, CEO,
1600 Amphitheatre Parkway
Mountain View, CA 94043

Double Click For Publishers
Google
Attn: Larry Page, CEO,
33654 P.O. Box 39
San Francisco, CA 94139

Essenture Incorporated
Brad Commins, Agent For Service and Officer or
Director
19349 Flavian Ave
Torrance, CA 90503

Federal Realty Investment Trust
Attn: Donald C. Wood, President – Chief
Executive Office
12626 E. Jefferson St.
Rockville, MD 20852

Hill Companies
Attn: Officer or Director
3271 Airflite Way
Long Beach, CA 90807

Intermedia Cable Communications
Attn: Ejaz M. Inamdar, Director
1018 New Nana Peth
Padamjee Path, Pune
India 41100-2000

Pacific Telemanagement Services
Attn: Christine Chen, Agent for Service, Justin T.
Keane, COO, or Other Officer or Director
2001 Crow Canyon Road, Suite 200
San Ramon, CA 94583

Peterson Communications Group
Attn: Greg Peterson, Agent for Service, or Other
Officer or Director
827 Arnold Dr # 140
Martinez, CA 94553

Pure Pages
Attn: Officer or Director
504 Iroquois Shore Road, Unit 11,
Oakville ON L6H 3K4 CANADA

Social Wi-Fi Marketing    Attn: Artur Racicki,
President or Other Officer or Director
Social WiFi, Inc.
180 Sansome Street
San Francisco, CA 94104

SWS Realty
Attn: Taghi Shoraka, President, or Other Officer or
Director
600 N. Brand Blvd.
Glendale, CA 91203

SWS Realty
Attn: Taghi Shoraka, President, or Other Officer or
Director
1125 East 17th St #N559
Santa Ana, CA 92701

TelePacific
Attn: Richard Jalkut, President
Attn: Office of General Counsel
515 S. Flower Street, 47th
Los Angeles, CA 90071

The Network Operations Company
Attn: Officer or Director
44 South Dixie Highway
Saint Augustine, FL 32084

Uniguest, Inc.
Attn: Joseph P. Morgan, Jr., Chief Executive, or
Other  Officer or Director
1035 Acorn Dr.
Nashville, TN 37210

Uniguest, Inc.
Attn: Joseph P. Morgan, Jr., Chief Executive, or
Other  Officer or Director
2926 Kraft Drive
Nashville, TN 37204

United Solution LLC
Attn: Officer or Director
3909 Westpoint Blvd., Suite F
Winston Salem, NC 27103

Wi-Fi Guys, LLC
Attn: Jay Lewis, Tom Sullivan, and Chris Swanson,
Officers and Directors, or Other Officer or Director
7265 Highway 1
Finland, MN 55603

AdRoll
Attn: Peter Krivkovich , CFO
972 Mission Street
San Francisco, California 94103

Amazon, Inc.
Attn: Jeff Blackburn, SVP - Corporate and Business
Development
Peter Krawiec, VP - Corporate Development
410 Terry Avenue North
Seattle, WA 98109

AOL Inc.
Attn: Alexis Gonzalez, Corporate Development
770 Broadway
New York, NY 10003

Apple Inc.
Attn: Brian Scelfo, Corporate Development
1 Infinite Loop
Cupertino, CA 95014

Boingo Wireless, Inc.
Attn: David Hagan, CEO
Peter Hovenier, CFO
10960 Wilshire Boulevard, 23rd Floor
Los Angeles, CA 90024

Criteo
Attn: Jean-Baptiste Rudelle, CEO
Benoit Fouilland, CFO
Byron Deeter, Board Member
387 Park Ave South 12th Floor
New York, NY 10016

Criteo
Attn: Jean-Baptiste Rudelle, CEO
Benoit Fouilland, CFO
Byron Deeter, Board Member
32 rue Blanche, Paris,
Ile-de-France 75009

Facebook, Inc.
Attn: David Wehner, CFO
Gary Johnson, Corporate Development
1 Hacker Way
Menlo Park, CA 94025

Dell Inc.
Attn: Alfonso Calderon, Corporate Development
2300 West Plano Parkway
Plano, TX 75075

Google Inc.
Attn: Maria Shim, Corporate Development
1600 Amphitheatre Parkway
Mountain View, CA 94043

Gogo Inc.
Attn: Norman Smagley, CFO
Varvara Alva, VP - Investor Relations, Treasurer
111 North Canal
Chicago, IL 60606

IBM Corporation
Attn: Cameron Potts, Corporate Development
1 New Orchard Road
Armonk, NY 10504

Hew-lett Packard (Aruba Networks)
Attn: Peter Cellarius (Aruba) , VP - Business &
Corporate Development
Andrew Leonard, Corporate Development - HP
1344 Crossman Avenue
Sunnyvale, CA 94089

Oracle Corporation
Attn: Douglas Kehring, Corporate Development
500 Oracle Parkway
Redwood City, CA 94065

Hew-lett Packard (Aruba Networks)
Attn: Peter Cellarius (Aruba) , VP - Business &
Corporate Development
Andrew Leonard, Corporate Development - HP
1501 Page Mill Road
Palo Alto, CA 94304

Sony Corporation
Attn: Yurika Kamitani, Senior General Manager
1-7-1 Konan Minato-ku
Tokyo 108-0075, Japan

Microsoft Corporation
Attn: Matthew Lapsen, Corporate Development
One Microsoft Way
Redmond, WA 98052

Twitter Inc.
Attn: Anthony Noto, CFO, Corporate Development
Rishi Garg, Former Head - Corporate Development
1355 Market Street, Suite 900
San Francisco, CA 94103

Sizmek
Attn: Neil Nguyen, CEO
Scott Ginsburg, Board Member
500 West 5th Street, Suite 900
Austin, TX 78701

Yelp Inc.
Attn: Jay Ganatra, Senior Manager - Corporate
Development
140 New Montgomery Street 9th Floor
San Francisco, CA 94105

TubeMogul, Inc.
Attn: Paul Joachim, CFO
1250 53rd Street, Suite 1
Emeryville, CA 94608

Charter Communications
Attn: David Housman, Director - New Business
Development
Charles Fisher. SVP - Corporate Finance
400 Atlantic Street
Stamford, CT 06901

Yahoo Inc.
Attn: Jacqueline Reses, Corporate Development
Steve Fan, VP - Corporate Development
Kerri Damm, Coverage of ad tech
701 First Avenue
Sunnyvale, CA 94089

Dish Network
Attn: Charlie Ergen, Chairman of the Board of Directors
9601 South Meridian Boulevard
Englewood, CO 80112

Cablevision Systems Corporation
Attn: Bret Richter, Corporate Development
1111 Stewart Avenue
Bethpage, NY 11714

Raycom Media
Attn: Paul H. McTear Jr., CFO
Pat LaPlatney, SVP
Melissa Thurber, SVP, CFO
Susana Schuler, SVP
201 Monroe Street RSA Tower, 20th Floor
Montgomery, AL 36104

Comcast Corporation
Attn: Alexander D. Evans, Executive VP - Global
Corporate Development and Strategy
Joseph McGinley, VP - Corporate Development
Comcast Center
1701 JFK Boulevard
Philadelphia, PA 19103

AT&T Inc.
Attn: Austin Summerford, Corporate Development
Martin Clifford, Director, Corporate Development
Mark Overton, Associate - Corporate Development
208 South Akard Street
Dallas, TX 75202

Optimum
Attn: Bret Richter, Corporate Development
1111 Stewart Avenue
Bethpage, NY 11714

DOCOMO interTouch
Attn: Charles Reed, CEO
89C, Science Park Drive #03-09/12 The Rutherford
Singapore Science Park I,
Singapore 118261

Time Warner Cable
Attn: Satish Adige, SVP - Mergers & Acquisitions
One Time Warner Center
New York, NY 10019

KDDI Corporation
Attn: Takashi Shigeno, GM - Global Strategy
Daichi Nozaki, President & COO
Garden Air Tower 10-10, Iidabashi 3-chome Chiyoda-ku
Tokyo 102-8460,  Japan

CenturyLink
Attn: R. Ewing, Corporate Development
Bryan M. Taylor, VP - Corporate Development
100 CenturyLink Drive
Monroe, LA 71203

NTT Communications
Attn: Hiromasa Takaoka, Senior Director
Daisuke Oshima, Corporate Development
Fumitake Matsuoka, Senior Manager - Corporate Development
1-1-6 Uchisaiwai-cho Chiyoda-ku
Tokyo 100-8019, Japan

Frontier
Attn: Heath Simpson, Corporate Development
401 Merritt 7
Norwalk, CT 06851

SoftBank Group Corp.
Attn: Ruwin Perera, Corporate Development
1-9-1 Higashi-shimbashi Minato-ku
Tokyo 105-7303, Japan

Liberty Global
Attn: Ankur Prakash, Vice President
161 Hammersmith Road
London W6 8BS, United Kingdom

T-Mobile International AG
Attn: Peter Ewens, Corporate Development
Jeff Giard, Corporate Development
12920 South East 38th Street
Bellevue, WA 98006

Singtel Telecommunications Ltd.
Attn: Jennifer Lin, Manager, Corporate Development
31 Exeter Road #18-00 Comcentre
Singapore 239732, Singapore

Amphenol Corporation
Attn: Robert Stewart, VP - Market Development
Patrick Gillard, VP - Treasurer, Acquisitions, Risk Management
358 Hall Avenue PO Box 5030
Wallingford, CT 06492

Sprint Corporation
Attn: Michael Schwartz, Corporate Development
6200 Sprint Parkway
Overland Park, KS 66251

Cisco Systems, Inc.
Attn: Kay Min, Director Corporate Development
170 West Tasman Drive
San Jose, CA 95134

Verizon Communications
Attn: Alexis Gonzalez, Corporate Development
1095 Avenue of the Americas
New York, NY 10036

Echo Star
Attn: Charlie Ergen, Chairman
100 Inverness Terrace East
Englewood, CO 80112

Belden Incorporated
Attn: Ross Rosenberg, Senior Vice President of
Strategy & Corporate Development
1 North Brentwood Boulevard 15th Floor
St. Louis, MO | 63105

Fujitsu Ltd.
Attn: Sugawara Michitaka, CEO
Horibe Tatsuo, CFO
Shiodome City Center 1-5-2 Higashi-Shimbashi Minato-ku
Tokyo 105-7123 Japan

CommScope Inc.
Attn: Patrick Manning, VP Corporate Development
1100 CommScope Place, SE
Hickory, NC 28602

Ruckus Wireless
Attn: Bart Burstein, SVP Operations & Business
Development
350 West Java Drive
Sunnyvale, CA 94089

Ericsson
Attn: Hans Vestberg, CEO
Jan Frykhammar, CFO
Hyacinth DeAlmeida, Corporate Development
Torshamnsgatan 21 Kista
Stockholm, Stockholm County 164 83
Sweden

Outfront Media
Attn: Andy Sriubas, EVP - Strategic Planning &
Development
405 Lexington Avenue 17th Floor
New York, NY 10174

Juniper Networks
Attn: Rami Rahim, CEO
Robyn Denholm, CFO
Domenic Perri, Corporate Development
1133 Innovation Way
Sunnyvale, CA 94089

Clear Channel Outdoor
Attn: Paul J. Meyer, CEO
99 Park Avenue, 2nd Floor
New York, NY 10016

Samsung Electronics Co. Ltd.
Attn: Kwon Oh-Hyun, CEO
Sang-Hoon Lee, CFO
129, Samsung-ro, Yeongtong-gu,
Suwon-si, Gyeonggi-do, South Korea

Altice
Attn: Burkhard Koep, Head of Business Development &
M&A
Cattenbroekerdijk 4 B
Woerden, Utrecht 3446 HA
Netherlands

Lamar Advertising
Attn: Keith A. Istre, CFO
5321 Corporate Boulevard
Baton Rouge, LA 70808

Rovi Corporation
Attn: Sean Matthews, EVP, Strategy and Corporate
Development
2830 De La Cruz Boulevard
Santa Clara, CA 95050

Communitiy Newspaper Holdings
Attn: Donna Barrett, President and CEO
Steve McPhaul, Sr. VP of Corporate Operations
445 Dexter Avenue, Suite 7000
Montgomery, AL 36104

Clearlake Capital
Attn: Behdad Eghbali, Head Partner
233 Wilshire Boulevard, Suite 800
Santa Monica, CA 90401

Cable One, Inc.
Attn: Matthew Armstrong, VP - Strategic Planning and
Finance
210 East Earll Drive
Phoenix, AZ 85012

OPENAIR Equity Partners
Attn: Lance LeMay, Managing Director
4520 Main Street Suite 1400
Kansas City, MO 64111

Ubiquiti Networks
Attn: John Sanford, Corporate Vice President
2580 Orchard Parkway
San Jose, CA 95131

Vector Capital
Attn: David Ramazetti, Managing Director
One Market Street Steuart Tower 23rd Floor
San Francisco, CA 94105

JAS Financial Services
Attn: James Skelton, Managing Member
1603 Orrington Avenue, Suite 600
Evanston , IL 60201

The Gores Group
Attn: Barrett Sprowl, Vice President
9800 Wilshire Boulevard
Los Angeles, CA 90212

# EXHIBIT "7"

RON BENDER (SBN 143364)
TODD M. ARNOLD (SBN 221868)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: rb@lnbyb.com; tma@lnbyb.com

Attorneys for Chapter 11 Debtors & Debtors in Possession

UZZI O. RAANAN (SBN 162747)
ZEV SHECHTMAN (SBN 266280)
DANNING, GILL, DIAMOND & KOLLITZ, LLP
1900 Avenue of the Stars, 11th Floor
Los Angeles, California 90067
Telephone: (310) 277-0077
Facsimile: (310) 277-5735
Email:     uraanan@dgdk.com, zshechtman@dgdk.com

Attorneys for Official Committee of Unsecured Creditors

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>MediaShift, Inc.,<br><br>    Debtor and Debtor in Possession.<br>_____<br><br>In re:<br><br>Ad-Vantage Networks, Inc.,<br><br>    Debtor and Debtor in Possession.<br>_____<br><br>☒ Affects Both Debtors<br><br>☐ Affects MediaShift, Inc. Only<br><br>☐ Affects Ad-Vantage Networks, Inc. Only | Lead Case No.: 2:15-bk-25024-SK<br>(Jointly administered with:<br>Case No. 2:15-bk-25030-SK)<br><br>Chapter 11 Cases<br><br>**NOTICE OF AUCTION AND HEARING ON JOINT MOTION AUTHORIZING A SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS**<br><br>Hearing:<br>Date: January 27, 2016<br>Time: 8:30 a.m.<br>Place: Courtroom 1575<br>     255 East Temple Street<br>     Los Angeles, CA 90012 |

1

**ALL PARTIES IN INTEREST– PLEASE TAKE NOTICE OF THE FOLLOWING**:

MediaShift Holdings, Inc. and Ad-Vantage Networks, Inc., chapter 11 debtors and debtors in possession (collectively, the "Debtors") and the Official Committee of Unsecured Creditors (the "Committee") shall file a Joint Motion for an Order (A) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests; (B) Authorizing the Assumption and Assignment of Certain Executory Contracts; and (C) Granting Related Relief, by no later than January 6, 2016 (the "Sale Motion").

### Assets to Be Sold

The Debtors propose to sell substantially all of their assets (the "Assets") to MediaShift Holdings, Inc. (the "Stalking Horse Bidder") or to the party that submits the highest and best bid. The Debtors further propose to assume and assign certain executory contracts (the "Purchased Contracts") associated with the Assets.

### Sale Free and Clear of Liens, Claims, Encumbrances and Interests

Pursuant to section 363(b) and (f) of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and subject to any orders entered by the Court, the Debtors will seek authority to sell all rights, title, and interest in the Sale Assets to the Stalking Horse Bidder or the Qualified Bidder[1] submitting the highest and best Qualifying Bid in accordance with the Bidding Procedures, in either case, free and clear of any liens, claims, encumbrances, and interests, with all such liens, claims, encumbrances and interests attaching to the proceeds of such sale.

### Auction And Bidding Procedures

A.      **The Auction**

In the event the Debtors and Committee receive more than one Qualified Bid, the Debtors and Committee will conduct an auction (the "Auction") for all of the Assets on **January 25, 2016** commencing at **10:00 a.m. (prevailing Pacific Time**) at Levene, Neale, Bender, Yoo & Brill L.L.P., 10250 Constellation Blvd., Suite 700, Los Angeles, CA 90067. Only parties submitting Qualified Bids will be invited to participate in the Auction.

B.      **The Bidding Procedures**

The Bidding Procedures, which are available upon request by contacting the undersigned, set forth the process by which the Debtors and Committee seek to conduct the Auction. Participating bidders at the Auction will include the Stalking Horse Bidder and any potential purchaser that satisfies the requirements set forth in the Bidding Procedures.

---

[1] Unless otherwise defined herein, capitalized terms used herein have the meanings to be given to them in the Sale Motion and exhibits attached thereto.

**C.**     <u>The Sale Hearing</u>

      The Court will hold a hearing (the "Sale Hearing") on the Sale Motion on **January 27, 2016** at **8:30 a.m.** prevailing Pacific Time before the Honorable Judge Sandra L. Klein, United States Bankruptcy Court for the Central District of California, Edward R. Roybal Federal Building and Courthouse, 255 E. Temple Street, Suite 1582, Los Angeles, California 90012. At the Sale Hearing, the Debtors and Committee will seek approval of the proposed sale of the Sale Assets. Objections, if any, to the Sale Motion must be filed with the Court and served upon parties in interest so as to be received no later than **11:59 p.m.** (**prevailing Pacific Time**), **January 13, 2016.**

**D.**     <u>Assumption of Contracts and Leases</u>

      As part of the sale of substantially all of the Debtors' assets, the Debtors propose to assume and assign the Purchased Contracts. A list of the Purchased Contracts may be obtained from the Debtors.

      If you are a party to a Purchased Contract, you will receive a separate motion or notice, which will identify the contracts or leases to be assigned, the identity of the assignee, and the amount, if any, to be paid as a "cure amount" under section 365 of the Bankruptcy Code. Objections, if any, to the assumption and assignment of any Purchased Contracts, or to any proposed Cure Costs therein, must be filed with the Court and served upon parties in interest so as to be received on or before **January 13, 2016.**

**D.**     <u>Complete Copies</u>

      Complete copies of the Sale Motion and related documents may be obtained contacting counsel for the Debtors: Levene, Neale, Bender, Yoo & Brill L.L.P., Attn: Ron Bender, Esq. and Todd M. Arnold, Esq., 10250 Constellation Blvd., Suite 700, Los Angeles, CA 90067, Ph 310-229-1234, Fax 310-229-1234, Email rb@lnbyb.com, tma@lnbyb.com

Dated:  January 4, 2016       **MEDIASHIFT, INC. AND**
                                  **AD-VANTAGE NETWORKS, INC.**

                                  By:___*/s/ Todd M. Arnold*_____
                                    RON BENDER
                                    TODD M. ARNOLD
                          LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
                          Attorneys for Debtors and Debtors in Possession

Dated:  January 4, 2016       **OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

                                  By:___*/s/ Uzzi O. Raanan*_____
                                    UZZI O. RAANAN
                          DANNING, GILL, DIAMOND & KOLLITZ, LLP
                          Attorneys for the Official Committee of Unsecured Creditors

3

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
10250 Constellation Blvd., Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF AUCTION AND HEARING ON JOINT MOTION AUTHORIZING A SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On January 4, 2016, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Todd M Arnold    tma@lnbyb.com
- Ron Bender    rb@lnbyb.com
- Stephen L Burton    steveburtonlaw@aol.com
- Cathrine M Castaldi    ccastaldi@brownrudnick.com
- Leslie A Cohen    leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;Brian@lesliecohenlaw.com
- Michael I Gottfried    mgottfried@lgbfirm.com, kalandy@lgbfirm.com;cboyias@lgbfirm.com;srichmond@lgbfirm.com;sdeiches@lgbfirm.com
- Lance N Jurich    ljurich@loeb.com, karnote@loeb.com;ladocket@loeb.com
- Dare Law    dare.law@usdoj.gov, ron.maroko@usdoj.gov
- Uzzi O Raanan    uor@dgdk.com, DanningGill@gmail.com;uraanan@ecf.inforuptcy.com
- Zev Shechtman    zshechtman@dgdk.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- George C Webster    George.Webster@dbr.com, jane.gorman@dbr.com
- Aleksandra Zimonjic    azimonjic@lgbfirm.com, cboyias@lgbfirm.com;sdeiches@lgbfirm.com

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On January 4, 2016, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on January 4, 2016, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                     **F 9013-3.1.PROOF.SERVICE**

**SERVED BY PERSONAL DELIVERY**

The Honorable Sandra Klein
U.S. Bankruptcy Court
255 E. Temple Street, Courtroom 1575,
Suite 1582
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 4, 2016 | Lourdes Cruz | /s/ Lourdes Cruz |
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

MediaShift, Inc.
Ad-Vantage Networks, Inc.
File No. 7652
**RSN, Debtor, OUST MML**
**Service by U.S. Mail or NEF if**
**marked with an \***

Gayot, Inc.
c/o Stephen L. Burton, Esq. **NEF\***
16133 Ventura Blvd., 7th Floor
Encino, CA 91436-2403

Debtor
MediaShift, Inc.
Ad-Vantage Networks, Inc.
600 N. Brand Blvd., Suite 230
Glendale, CA 91203

Kensel & Co., LLC
20062 SW Birch Street, #220
Newport Beach, CA 92660-1519

Dare Law
Office of the United States Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, CA 90017

Committee Counsel
Uzzi O Raanan **NEF\***
Danning Gill Diamond Kollitz
2029 Century Park East, Suite 300
Los Angeles, CA 90067

Counsel for Mediashift Holdings, Inc.
George C. Webster II **NEF\***
Drinker Biddle & Reath LLP
1800 Century Park East, Ste. 1500
Los Angeles, CA 90067-1517

Counsel for Kirby Group
Leslie A. Cohen, Esq. **NEF\***
LESLIE COHEN LAW, PC
506 Santa Monica Blvd., Suite 200
Santa Monica, CA 90401

Smith Micro Software, Inc.
c/o Loeb & Loeb LLLP
10100 Santa Monica Blvd.
Suite 2200
Los Angeles, CA 90067-4120

5 Net Solutions
22/2, Plot No 275-B
Sion West, Mumbai, Maharashtra
India 40002-2000

AFCO
DEPT LA 21315
Pasadena, CA 91185-1315

AFCO
PO Box 887200
Los Angeles, CA 90088-7200

AON Risk Insurance
PO Box 849832
Los Angeles, CA 90084-9832

Aaron Guerrero
5444 Sepulveda Blvd. #208
Sherman Oaks, CA 91411-4513

Access Media 3, Inc.
900 Commerce Dr, Ste 200
Oak Brook, IL 60523-8828

Ace Communications Group Rpr
5351 N M 37
Mesick, MI 49668-9705

Ad-Vantage Networks, Inc.
600 N Brand Bl #230
Glendale, CA 91203-4234

Adap.tv, Inc.
770 Broadway
New York, NY 10003-9522

Adap.tv, Inc.
c/o Peter Di Sciascio
Weinstock & OMalley Law
105 White Oak Lane
Old Bridge, NJ 08857-1975

Advanced Wireless Group, LLC
10460 NW 46th St
Miami, FL 33178-2239

Aires Law Firm
Attn Timothy Aires
6 Hughes, Suite 205
Irvine, CA 92618-2063

Ajay Pandya
c/20, Katsur Mahal
Sion Mumbai 400022

Alan David Morgan
11450 Calvert Ave Apt 6
North Hollywood, CA 91606-4151

Alina Ebrahimian
1160 Irving Ave #105
Glendale, CA 91201-3352

Alliance Data Services
3080 Kronprindsens Gole
Ste 200
Saint Thomas 00802-6509

Aloft Group
26 Parker St
Newburyport, MA 01950-4010

Alternative Business Accomodations
1650 Broadway Suite 501
New York, NY 10019-6833

Alvin Tim Wong
620 E Angeleno Ave #V
Burbank, CA 91501-3002

Amazon Web Services
PO Box 84023
Seattle, WA 98124-8423

Amplify Roundtables
22337 Pacific Coast Highway
Suite 488
Malibu, CA 90265-5030

Amplify Roundtables
22337 Pacific Coast Highway , Suite 488
Malibu, CA 90265-5030

Arete Advisors
8875 Research Drive
Irvine, CA 92618-4236

AudienceScience Inc
NACM Business Credit Services
910 S Spokane St Building A
Seattle WA 98134-1125


BSIM Consulting, Inc.
2455 Ridgebrook Place
Thousand Oaks, CA 91362-5315

Barry R Gosnell
8130 Boone Blvd
Vienna, VA 22182-2666

Bell Modular Systems, Inc.
7801 Noble Ave
Van Nuys, CA 91405-1141


Bingham McCutchen LLP
One Federal St
Boston, MA 02110-1726

Bingham McCutchen LLP
PO Box 3486
Boston, MA 02241-3486

Bird & Bird
15 Fetter Ln
London EC4A1JP


Bonisoft Athota
22574 Enadia Way
West Hilla, CA 91307-2328

Bonitasoft
51 Federal St. ,  Suite 305
San Francisco, CA 94107-4150

Bose Athota
22574 Enadia Way
West Hills, CA 91307-2328


Brad Commins Consulting Services
19349 Flavian Ave
Torrance, CA 90503-1337

Brian Russell
23852 PCH #263
Malibu, CA 90265

Broadridge
PO Box 416423
Boston, MA 02241-6423


Brown Rudnick, LLP
Ronald Rus
2211 Michelson Dr.
Irvine, CA 92612-1384

Business Wire, Inc.
Department 34182
PO Box 39000
San Francisco, CA 94139-0001

Business Wire, Inc.
PO Box 34182
San Francisco, CA 94134-0182


CMB Enterprises
2816 Jackson #4
San Francisco, CA 94115-1155

CPA Global Limited
2318 Mill Road, 12th Floor
Alexandria, VA 22314-6834

CT Corporation
PO Box 4349
Carol Stream, IL 60197-4349


Chad Kirby
6161 S Syracuse Way, Suite 320
Greenwood Village, CO 80111-4773

Chad Payne
310 Marguerite Unit B
Corona Del Mar, CA 92625-3074

Chad Payne
PO Box 12862
Newport Beach, CA 92658-5077


Charles F. Kirby Roth 401K
6161 S Syracuse Way, Suite 320
Greenwood Village, CO 80111-4773

Charles Kirby
6161 S Syracuse Way, Suite 320
Greenwood Village, CO 80111-4773

Cheaper Office Solutions
17014 S Vermont Ave Unit C
Gardena, CA 90247-5832


Chris Hartley
4005 The Strand
Manhattan Beach, CA 90266-3184

Christian Anderson
8501 Gracious Pine Ave
Las Vegas, NV 89143-4609

City of Newport Beach - Revenue Dept
PO Box 3080
Newport Beach, CA 92658-3080

Collins Barrow
1400 First Alberta Pl
777-8th Ave
Calgary, Alberta T2P 3R5

Commspeed Internet Services
7411 E Addis Ave.
Prescott Valley, AZ 86314-3240

Connery & Assoc
PO Box 982885
Park City, UT 84098-2885

Corbett Waddington
2564 Bluebonnet Dr
Richardson, TX 75082-2324

Corporate Service Company
PO Box 13397
Philadelphia, PA 19101-3397

Corporate Stock Transfer Inc.
3200 Cherry Creek Dr. South, Suite 430
Denver, CO 80209-3246

Counsel to U.S. TelePacific Corp.
J. Scott Bovitz
Bovitz & Spitzer
1100 Wilshire Boulevard, Suite 2403
Los Angeles, CA 90017-1961

Cox Padmore Skolnik & Shakarchy, LP
630 Third Ave, 19th Floor
New York, NY 10017-6735

Cricelli
712 Hawthorne St
Monterey, CA 93940-1102

Cruise Complete LLC
301 William Rd
Rochester MI 48307-1628

CyberCoders, Inc.
c/o Zide & O'Biecunas LLP
14545 Victory Blvd 404
Van Nuys CA 91411-4133

Cymphonix
Dept 2563 POB 122563
Dallas, TX 75312-2563

DKKD Staffing
3390 Auto Mall Dr Ste 200
Westlake Village, CA 91362-3657

Damon Flowers
835 Walton Ave
Bronx, NY 10451-2221

Danyelle Proano
1730 N Hill Ave
Pasadena, CA 91104-1425

Darin Ganitch
7800 Topanga Canyon Blvd #305
Canoga Park, CA 91304-5558

Dave Eastman
PO Box 4135
Park City, UT 84060-4135

Dave Grant
22391 Rosebriar
Mission Viejo, CA 92692-4615

David Eastman
PO Box 980670
Park City, UT 84098-0670

David Elkin
5244 Reseda Bl
Tarzana, CA 91356-4150

David Grant
22391 Rosebriar
Mission Viejo, CA 92692-4615

Debra Graybill
PO Box 490
Oakley, UT 84055-0490

Deep Blue Communications LLC
7 Century Hill Rd
Latham, NY 12110-2113

Deep Canyon Group
95 W 100 S #340
Logan, UT 84321-5815

Del Risk Inc. DBA TDC Risk
Management
1440 Arrowhead Drive
Maumee, OH 43537-4016

Delaware Secretary of State
Division of Corps. / Franchise Tax
PO Box 898
Dover, DE 19903-0898

Delaware State Treasury
820 Silver Lake Blvd., Suite 100
Dover, DE 19904-2464

DesertGate Internet
118 Bridge St.
Las Vegas, NM 87701-3489

Direct Video Entertainment
6615 Boynton Beach Blvd, 217
Boynton Beach, FL 33437-3526

Docomo Intertouch Pte Ltd
89C, Science Park Drive
#03-09/12 The Rutherford
Singapore Science Park I
Singapore,  118261

Case 2:15-bk-25024-SK    Doc 158    Filed 01/04/16    Entered 01/04/16 16:37:30    Desc
Main Document    Page 9 of 25

Don Larson
500 Ford Road
St. Louis Park, MN 55426-1062

Double Click For Publishers
Google
1600 Amphitheatre Parkway
Mountain View, CA 94043-1351

Dustin Perlberg
5935 Playa Vista Drive
Los Angeles, CA 90094-2130

EK Enterprises LLC
146 Tapestry
Irvine, CA 92603-0683

Eastward Capital Partners V, LP
432 Cherry St.
West Newton, MA 02465-2029

Eclipse Capital Partners LLC
c/o Corporation Service Co
Wilmington, DE 19808

Eclipse Capital Partners, LLC
c/o Eric E. Sagerman, Esq.
Winston & Strawn LLP
333 S. Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543

Elevation Fund
PO Box 3087
Greenwood Village, CO 80155-3087

Elevation Fund LLC
6161 S Syracuse Way, Suite 320
Greenwood Village, CO 80111-4773

Elevation Fund, LLC
5825 E. Irish Place
Centennial, CO 80112-6519

Empire Stock Transfer
1859 Whitney Mesa Dr.
Henderson, NV 89014-2069

Employment Development Dept
PO Box 989061
West Sacramento, CA 95798-9061

Employment Development Dept.
Bankruptcy Group MIC 92E
P.O. Box 826880
Sacramento, CA 94280-0001

Enginuiti, Inc.
8321 Old Courthouse Rd # 120
Vienna, VA 22182-3817

Eric Bauer
18 Falabella Dr.
Ladera Ranch, CA 92694-0970

Essenture Incorporated
19349 Flavian Ave
Torrance, CA 90503-1337

Fast Pay Partners, LLC
9300 Wilshire Blvd., Suite 500
Beverly Hills, CA 90212-3223

Federal Realty Investment Trust
1626 East Jefferson St
Rockville, MD 20852-4041

Fisk Investments LLC
4550 Cherry Creek Dr.
South Glendale, CO 80246

Franchise Tax Board
Bankruptcy Section, MS: A-340
P.O. Box 2952
Sacramento, CA 95812-2952

Franchise Tax Board
PO Box 942857
Sacramento, CA 94257-0001

GTT Communications Inc.
fka UNSi
7900 Tysons One Place Suite 1450
Mclean, VA 22102-5971

Gault Millau Inc
c/o Stephen L Burton Esq
16133 Ventura Blvd 7th Fl
Encino, CA 91436-2403

Gault Millau, Inc.
4311 Wilshire Blvd. STE 405
Los Angeles, CA 90010-3713

GenesisMedia, LLC
71 West 23rd St., Suite 903
New York, NY 10010-3508

Georgia Dept of Revenue Processing
PO Box 740239
Atlanta, GA 30374-0239

Glenn Lebowitz
1212 Suffield Dr.
McLean, VA 22101-2347

Global Results
2405 McCabe Way
Ste 210
Irvine, CA 92614-6224

Great American Group Corporate
Valuation
21860 Burbank Blvd., #300 South
Woodland Hills, CA 91367-6493

Greg Sowell Consulting
1413 Elkton Ct
College Station, TX 77845-9495

GrwoBiz Services
27831 Silverton Ct
Valencia, CA 91354-1490

Harrison Grant
22391 Rosebriar
Mission Viejo, CA 92692-4615

Hartford Fire Insurance Co.
Bankruptcy Unit NP3-R
Hartford Plaza
Hartford CT 06115

Health Nspire Solutions
4885 Monument St
Simi Valley, CA 93063-0451

Hein & Associates, LLP
100 Spectrum Center Drive, Suite 650
Irvine, CA 92618-4970

Home Town Cable
10486 SW Village Center Dr,
Port Saint Lucie, FL 34987-2186

Henry C. Bausley Jr
20221 Hemmingway St
Winnetka, CA 91306-2366

Hill Companies
3271 Airflite Way Long Beac
Long Beach, CA 90807-5321

Houlihan Lokey Howard & Zukin
10250 Constellation Blvd
Los Angeles, CA 90067-6200

Hotel Internet Services
4590 Ish Drive, Suite 120
Simi Valley, CA 93063-7683

Hotel Kiosks Inc.
4590 Ish Dr Ste 120
Simi Valley, CA 93063-7683

Ian Peters
17219 Tribune Ste
Granada Hills, CA 91344-4842

Howard M. Appel
2910 Edgewick Rd
Glendale, CA 91206-1315

Hunter Capital
PO Box 682500
1910 Prospector Ave.
Park City, UT 84060-7211

JMW Fund LLC
4 Richland Place
Pasadena, CA 91103-2837

Intermedia Cable Communications
1018 New Nana Peth
Padamjee Path, Pune
India,  41100-2000

INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY
OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

JPG Investments LLC
4 Richland Pl
Pasadena, CA 91103-2837

IpCapital Licensing Co, I, LLC
IpCapital Group
400 Cornerstone Dr, Ste 325
Williston, VT 05495-4046

JMG Exploration, Inc.
180 South Lake Ave 7th Fl
Pasadena, CA 91101-4760

James T. Bell
198 W Haviland Lane
Stamford, CT 06903-3334

JMW Fund, LLC
4 Richland Place
Pasadena, CA 91103-2837

JNK Services Inc.
5700 Cahuenga Bl
North Hollywood, CA 91601-2105

Jesus Cigarro
1649 Aspen Village Way
West Covina, CA 91791-3103

James A. Veldkamp
2324 S. Clayton Street
Denver, CO 80210-5418

James Callahan
3297 Old Highway 246
Santa Ynes, CA 93460

Jive Communication
Dept CH 19606
Palatine, IL 60055-9606

Jason Ruiz
16834 San Jose St
Granada Hills, CA 91344-6308

Jensen Capital Partners, LLC
Dean Jensen (Mg Ptr)
2711 N Sepulveda Blvd, #544
Manhattan Beach, CA 90266-2725

John R. Marco Jr.
3110 Vail Ave
Redondo Beach, CA 90278-1539

JetBlue Airways
27-01 Queens Plaza N
Long Island City, NY 11101-4021

Jim J. Rivas Sr.
10297 S. Powling Way
Littleton, CO 80126-4769

Karina Klever
1977 Erbes Rd
Thousand Oaks, CA 91362-1827

Joe Waimrin
2288 Mountain Oak Dr
Los Angeles, CA 90068-2534

John O. Moen & Christina A. Woolwin
Woolwine-Moen Group
3616 Harden Blvd., #335
Lakeland, FL 33803-5938

Kearney Holdings, LLC
6161 S Syracuse Way, Suite 320
Greenwood Village, CO 80111-4773

Joseph C. Prindle
1122 18th St Apt 211
Santa Monica, CA 90403-5621

Joshn Vu
7054 Jumilla Ave
Winnetka, CA 91306-3619

Kensel & Co
20062 SW Birch St Ste 220
Newport Beach, CA 92660-1519

Kayla Hale
7804 White Grass Ave
Las Vegas, NV 89131-4725

Kearney Holdings LLC
5825 E Irish Place
Centennial, CO 80112-6519

Kimberly Ho
1935 Montrobles Pl
San Marino, CA 91108-1650

Kearney Properties, LLC
6161 S Syracuse Way, Suite 320
Greenwood Village, CO 80111-4773

Kelsey Kirby
6161 S Syracuse Way, Suite 320
Greenwood Village, CO 80111-4773

Kirby Enterprises Fund LLC
6161 S Syracuse Way, Suite 320
Greenwood Village, CO 80111-4773

Kevin Potter
9704 Mill Run Dr
Great Falls, VA 22066-1815

Kharma Consulting
5401 J.F.K. Blvd.
North Little Rock, AR 72116-6740

Knobbe Martens Olson & Bear LLP
2040 Main St 14th Fl
Irvine, CA 92614-8214

Kirby Enterprise Capital Management,
LLC
6161 S Syracuse Way, Suite 320
Greenwood Village, CO 80111-4773

Kirby Enterprise Fund LLC
8525 Irish Place
Centennial, CO 80112

Law Offices of Aaron A. Grunfeld
1100 Glendon Ave, Suite 850
Los Angeles, CA 90024-3525

Kirvb Enterprise Management LLC
PO Box 3087
Greenwood Village, CO 80155-3087

Kitty Hang
1822-A E. Route 66
PMB #455
Glendora, CA 91740-3800

Link Technologies Inc 314-735-0270
MO
4853 Hillsboro House Springs Rd
House Springs, MO 63051-3011

LOS ANGELES COUNTY
TREASURER AND TAX COLLECT
PO BOX 54110
LOS ANGELES CA 90054-0110

Labor Commissioner St. of Cal.
605 W. Santa Ana Blvd
Rm 625, Bldg. 28
Santa Ana, CA 92701

Matt Yerington
PO Box 161
Bolinas, CA 94924-0161

Lawrence Cable Service
20705 S. Western Ave. , Suite 104
Torrance, CA 90501-1844

Linda Ebrahimian
14104 Summertime Lane
Culver City, CA 90230-4543

Mediashift Holdings, Inc.
4500 Cherry Creek Drive South
Suite 550
Denver, CO 80246-1518

Lotame Solutions Inc.
8850 Stanford Blvd, Ste 2000
Columbia, MD 21045-4726

Marshall Taggart
794 Miller Run
Atlanta, GA 30349-7916

Michael Spalter
24218 Wembley Ct.
Valencia, CA 91355-3501

McGladrey LLP
1185 Ave of the Americas
New York, NY 10036-2601

McGladrey LLP
5155 Paysphere Circle
Chicago, IL 60674-0051

MimoTech Software
5319 University Dr
Santa Barabra, CA 93111-1643

Mediashift Holdings, Inc.
4550 Cherry Creek Dr.
South Glendale, CO 80246

MegaPath
DEPT 0324
PO Box 120324
Dallas, TX 75312-0324

Mobilitie
2220 University Dr
Newport Beach, CA 92660-3319

Michael Spalter
24218 Wembley Ct.
Valencia, CA 91355-3501

Mikhail Koyfman
4319 Radford Ave. # 4
Studio City, CA 91604-2110

Moss Adama LLP
2030 Main St Ste 1400
Irvine, CA 92614-7222

Misikir Kebede
4848 St Elmo Dr Apt 4
Los Angeles, CA 90019-5565

Mobilite Investments III
660 Newpot Center Drive, Suite 200
Newport Beach, CA 92660-6403

National Registered Agents, Inc.
PO Box 4349
Carol Stream, IL 60197-4349

Molly Hughes
3265 Brookview Dr.
Marietta, GA 30068-3820

Mondo
11 East 26th St 21st Fl
New York, NY 10010-1413

Net Data Centers Inc
File 1483
1801 W Olympic Blvd
Pasadena, CA 91199-1843

Moss-Adams LLP
PO Box 748369
Los Angeles, CA 90074-8369

Moving Networks Forward LLC
70 Short St
Batesville, AR 72501-9121

Nevada Dept. of Taxation
4600 Kietzke Ln., Suite L-235
Reno, NV 89502-5049

NaviVision
PO Box 1274
Stanton, CA 90680-1274

Neohire Inc
1750 14th Street, Suite D
Santa Monica, CA 90404-4353

Notary and Ship
1146 N Central Ave
Glendale, CA 91202-2506

Netstorm LLC
111 Harrison Ave Ste LL-001
Oklahoma City, OK 73104-1819

Nevada Department of Taxation
Bankruptcy Section
555 E. Washington Ave., #1300
Las Vegas, NV 89101-1046

Openx Technologies
20 E Del Mar Bl
Pasadena, CA 91105-2523

New Wave Net Corp.
P.O. Box 5284
Bloomington, IL 61702-5284

Nite Media LLC
6161 S. Syracuse Way #320
Greenwood Village, CO 80111-4773

Oze Gomez
18209 Sierra Highway Unit 55
Canyon Country, CA 91351-4398

Office Demands, LLC
301 E Stevens Ave
Santa Ana, CA 92707-5717

OpenX Technologies
888 E Walnut St 2nd Fl
Pasadena, CA 91101-1897

Panasonic Avionics Corporation
26200 Enterprise Way
Lake Forest, CA 92630-8400

Outfront Media Inc.
405 LEXINGTON AVENUE
New York, NY 10174-0002

Ovation Networks, Inc.
222 3rd Ave Ste 276
Cedar Rapids, IA 52401-1541

Paul Wasserman
4 Elizabeth Ct
Briarcliff, NY 10510-2528

PR Newswire Association LLC
PO Box 5897
New York, NY 10087-5897

Pacific Telemanagement Services
2001 Crow Canyon Rd Ste 200
San Ramon, CA 94583-5388

Peterson Communicatios Group
827 Arnold Dr # 140
Martinez, CA 94553-6533

Parr Brown Gee & Loveless, PC
PO Box 11019
Salt Lake City, UT 84147-0019

Parsoco
888 N Alameda St Apt 225
Los Angeles, CA 90012-4291

PhoCusWright Inc
PO BOX 150414 , Dept: 106086
Hartford,, CT 06115-0414

Peacey Systems LLC
1007 North Federal Hwy, # 227
Fort Lauderdale, FL 33304-1422

Penguin Random House, LLC
1745 Broadway
New York, NY 10019-4343

Pioneer Capital an FSE Corp
7545 Irvine Center Drive Suite 200
Irvine, CA 92618-2933

Phil Usher
531 N Louise #204
Glendale, CA 91206-5524

Philip Andrew Usher
3149 N Naomi St
Burbank, CA 91504-1735

PublicEase Inc.
7668 El Camino Real, #104-284
Carlsbad, CA 92009-7932

Pillsbury Winthrop Shaw Pittman LLP
PO Box 601240
Charlotte, NC 28260-1240

Pinedale Operations
PO Box 3087
Greenwood Village, CO 80155-3087

Radix Collective
33 Paloma Ave #2
Venice, CA 90291-2436

Practic Inc
Attn Von Cameron
30741 Hilltop Wy
San Juan Capistrano, CA 92675-2046

Public Storage #21106
171 S Arroyo Pkwy
Pasadena, CA 91105-2019

Randall M. Gates
415 Auburn Lane
Sierra Madre, CA 91024-1107

Pure Pages
504 Iroquois Shore Road
Oakville, ON L6H 3K4
Canada

RG Nets
1000 E William St #204
Carson City, NV 89701-3117

Richard Silverberg
106 Peony
Irvine, CA 92618-1509

Radix Collective LLC
12132 Herbert St.
Los Angeles, CA 90066-5204

Randall M. Gates
333 Ohio St
Pasadena, CA 91106-4211

Rick Baran
14 Daystar
Irvine, CA 92612-3251

Ravindra Singh
11047 Ice Skate Place
San Diego, CA 92126-4852

Ravindra Wijesiriwardena
376 N Ivy Ave
Monrovia, CA 91016-2262

Robert Burg
15695 N. 83rd Way
Scottsdale, AZ 85260-1815

Richard Silverberg
516 Sunflower
Lake Forest, CA 92630-8451

Richland Fund, LLC
4 Richland Place
Pasadena, CA 91103-2837

Robert Van den Heuvel
18618 Celtic St
Nortilridge, CA 91326-2708

Rickea Dez'Janae Powell
8352 Fort Sedgwick Ave
Las Vegas, NV 89131-8193

River Bend Fund, LLC
6161 S Syracuse Way, Suite 320
Greenwood Village, CO 80111-4773

Royal Allen
1714 N. Mccadden p1., #3316
Los Angeles, CA 90028-4779

Robert Half Internation
2613 Camino Ramon
San Ramon, CA 94583-4289

Robert Hatcher
9512 Russell St
La Habra, CA 90631-2576

Sachin Shah
659 1 St, Apt 503
Hoboken, NJ 07030-8839

Ronald N. Vance & Associates, P.C.
1656 Reunion Ave. , Suite 250
South Jordan, UT 84095-4630

Row 44, LLC
4353 Park Terrace Dr.
Westlake Village, CA 91361-4638

San Gabriel Ftmd LLC
4 Richland Pl
Pasadenas CA 91103-2837

STE Holdings, LLC
845 Third Ave, 6th Floor
New York, NY 10022-6630

SWS Realty
600 N. Brand Blvd.
Glendale, CA 91203-4207

Shift CRM Inc.
155 Gordon Baker Rd, Ste 206
Toranto, ON M2H3N5

Sal De Anda
1323 Pasto Anaeapa
San Dimas, CA 91773-4129

Salesforce.com
PO Box 203141
Dallas, TX 75320-3141

Skeehan & Company
1 80 S. Lake Ave, 7th Floor
Pasadena, CA 91101-2649

Sanjeev Kuwadekar
18223 Charlton Ln.
Northridge, CA 91326-3617

Securities & Exchange Commission
LA Regional
444 S. Flower St., Ste 900
Los Angeles, CA 90071-2934

Snoopy Enterprise
2246 W 1 175 N
Layton, UT 84041-7412

Silicom Connectivity Solutions
6 Forest Ave
Paramus, NJ 07652-5245

Sixel Consulting Group, Inc.
497 Oakway Rd, Ste 220
Eugene, OR 97401-5603

CALIFORNIA STATE BOARD OF
EQUALIZATION
ACCOUNT REFERENCE GROUP MIC 29
P O BOX 942879
SACRAMENTO CA 94279-0029

Sklar Williams
8363 West Sunset Rd, Ste 300
Las Vegas, NV 89113-2095

Skyline Partners, International, LLC
1815 S Washington Street
Denver, CO 80210-3213

Suite Solutions
11132 Winners Cir # 207
Los Alamitos, CA 90720-2890

Sorbis
226 West 47th Street
7th Floor
New York, NY 10036-1413

Spencer Edwards, Inc.
PO Box 3087
Greenwood, CO 80155-3087

Telepacific
PO Box 509013
San Diego, CA 92150-9013

Stradling Yocca Carlson & Rauth
660 Newport Center Dr. Suite 1600
Newport Beach, CA 92660-6458

Strategic Business Communications
1979 Marcus Ave. , Suite 210
Lake Success, NY 11042-1022

The Chugh Firm Inc,
l5925 Carmenita Rd
Cerritos, CA 90703-2206

Susan Graziano Living Trust
Dtd. 2-24-05
6365 Spotted Fawn Run
Littleton, CO 80125-9039

Talent Merchants, Inc.
1155 S Grand Ave Ste 1802
Los Angeles, CA 90015-2274

Thinkcommerce Group LLC
c/o MetroGroup Inc Attn Lee
26 Broadway Suite 933
New York NY 10004-1722

TengoInternet
1717 W. 6th St. Suite 215
Austin, Texas 78703-4776

Thanut  Nik  Leckuthai
3208 Chico Ave
El Monte, CA 91733-1031

Transbeam Inc
8 W 38th St
New York, NY 10018-0165

The Hartford
PO Box 660916
Dallas, TX 75266-0916

The Network Operations Company
44 South Dixie Highway
Saint Augustine, FL 32084-0313

Travora Networks, Inc.
600 N. Brand Street, No. 230
Glendale, CA 91203-4234

Tim Wong
620 E Angeleno Ave #V
Burbank, CA 91501-3002

Tracy Norton
711 Royal Stewart Dr.
Placentia, CA 92870-1613

U.S. TelePacific Corp.
Attention: Mary Saunders
3300 N. Cimarron Road, Building 5
Las Vegas, Nevada 89129-8401

Travel Spike, LLC
2849 Paces Ferry Rd SE Ste 220
Atlanta, GA 30339-3769

Travel Spike, LLC
c/o PJ Puryear
Wyrick Robbins Yates & Ponton LLP
4101 Lake Boone Trail, Suite 300
Raleigh, NC 27607-7525

United Solution LLC
3909 Westpoint Blvd, Ste F
Winston Salem, NC 27103-6728

Typecraft
2040 E. Walnut Street
Pasadena, CA 91107-5804

Typecraft Inc
2040 E Walnut St
Pasadena, CA 91107-5804

VMR Technologies
27831 Silverton Crt
Valencia, CA 91354-1490

U S TELEPACIFIC CORP
OFFICE OF THE GENERAL COUNSEL
515 S FLOWER ST
47TH FLOOR
LOS ANGELES CA 90071-2208

Uniguest, Inc.
1035 Aeorn Dr.
Nashville, TN 37210-3801

West Hampton Special Situations
Fund, LLC
5825 Irish Place
Englewood, CO 80112-6519

United Solution Telecommunications
PO Box 848
Clemmons, NC 27012-0848

Vue Inc.
108 Riverwalk Rd.
Searcy, AR 72143-4888

Winthrop Couchot Professional
Corporatio
660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660-6427

Venkat Nimmagadda
23805 Kensington Ct.
West Hills, CA 91307-1263

Wi-Fi Guys, LLC
7265 Highway 1
Finland, MN 55603-4009

Zane Benefits
PO Box 684392
Park City, UT 84068-4392

West Hampton Special Situations Fund
LLC
6161 S Syracuse Way, Suite 320
Greenwood Village, CO 80111-4773

Word Express Transportation
2110 Artesia Blvd #803
Redondo Beach, CA 90278-3073

iab
116 East 27th Street , 7th Floor
New York, NY 10016-8942

Wisco America Company Limited
20062 Birch St. , Suite 300
Newport Beach, CA 92660-1520

Zide & O'Biecunas LLP
Thomas Zide
14545 Victory Blvd., #404
Van Nuys, CA 91411-4133

ipcapital Group, Inc.
426 Industrial Ave, Ste 150
Williston, VT 05495-4459

ZentLaw
1298 Kifer Rd , Ste 509
Sunnyvale, CA 94086-5321

inveshare
4501 North Point Pkwy #325
Alpharetta, CA 30022-6457

Internal Revenue Service
300 North Los Angeles Street
M/S 5022
Los Angeles, CA 90012

Wells Fargo Bank, N.A.
Business Direct Division
P.O. Box 29482
Phoenix, AZ 85038-8650

Internal Revenue Service
District Director
P.O. Box 2350 Room 5127
Los Angeles, CA 90053

Amazon Web Services (AWS)
Jeffrey P. Bezos, CEO, or Other Officer or Director
410 Terry Avenue North
Seattle, Washington 98109-5210

Amazon Web Services (AWS)
Jeffrey P. Bezos, CEO, or Other Officer or Director
PO Box 84023
Seattle, WA 98124-8423

Hotel Internet Services (HIS)
Attn: Gary Patrick, President, or Other Officer or
Director
4590 Ish Drive, Suite 120
Simi Valley, CA 93063-7683

JetBlue Airways
Attn: Robin Hayes, President and Chief Executive
Officer, Martin St. George, SVP Commercial, or
Other Officer or Director
27-01 Queens Plaza North
Long Island City, NY 11101-4021

Mobilitie Investments III, LLC,
Attn: Christos Karmis, President, or Other Officer
or Director
2220 University Dr.
Newport Beach, CA 92660-3319

Outfront Media Inc.
Attn: Jeremy J. Male, Chairman and CEO Pete
Izzo, Andrew R. Simbas, Other Officer or Director,
or Law Department
405 Lexington Avenue
New York, NY 10174-0002

Panasonic Avionics Corporation
Attn: Paul Margis, President and Chief Executive
Officer, Gene Connelly, Senior Vice President, or
Other Officer or Director
26200 Enterprise Way
Lake Forest, CA 92630-8400

Ovation Networks, Inc.
Attn: Larry J. Selensky, President & CEO
222 3rd Ave., Suite 276
Cedar Rapids, IA 52401-1541

Panasonic Avionics Corporation
c/o agent CT corporation system
818 West Seventh St., Suite 930
Los Angeles, CA 90017

Adap.tv, Inc.
Attn: Tim Armstrong, Chairman & CEO
770 Broadway
New York, NY 10003

Alliance Data Services
Attn: Officer or Director
3080 Kronprindsens Gole, Suite 200
Saint Thomas 00802-0000

Eclipse Capital Partners LLC
c/o Corporation Service Co
2711 Centerville Rd
Suite 400
Wilmington, DE 19808

Eclipse Capital Partners LLC
Attn: Ronald Hoplamazian, President, or Other
Officer or Director
234 Trianon Lane
Villanova, PA 19085

Eclipse Capital Partners LLC
c/o Eric E. Sagerman, Esq.
Winston & Strawn LLP
333 S. Grand Avenue,
38th Floor
Los Angeles, CA 90071-1543

GenesisMedia, LLC
Attn: George Mani, Officer, or other Officer or
Director
71 West 23rd St., Suite 903
New York, NY 10010

Houlihan Lokey Howard & Zukin
Attn: Raj Dayalan, Manager
10250 Constellation Blvd
Los Angeles, CA 90067-6802

ipCapital Licensing Co. I, LLC
ipCapital Group
Attn: John Ciannamea,  Partner, John Cronin,
Managing Director, or Other Officer, Director, or
Manager
400 Cornerstone Dr., Suite 325
Williston, VT 05495

ipCapital Licensing Co. I, LLC
ipCapital Group
Attn: John Ciannamea,  Partner, John Cronin,
Managing Director, or Other Officer, Director, or
Manager
426 Industrial Ave, Ste 150
Williston, VT 05495-4459

Jensen Capital Partners, LLC
Dean Jensen, Managing Partner,
2711 N. Sepulveda Blvd. #544
Manhattan Beach, CA 90266

Practics Inc.
Attn: Von Cameron, Agent for Service, Officer, and
Director
30741 Hilltop Way
San Juan Capistrano, CA 92675

Public Storage #21106
Attn Counsel, Officer, or Director
171 S Arroyo Parkway
Pasadena, CA 91105

Skyline Partners, Intl., LLC
Attn: Dan O'Brien
1815 S Washington Street
Denver, CO 80210

5 Net Solutions
Attn: Anand Mehta,
Managing Director
22/2, Plot No 275-B
Sion West, Mumbai, Maharashtra
India, KY 40002-2000

Access Media 3, Inc.
Attn: Alan Rosenberg,
Chief Executive Officer, or Other Officer or
Director
900 Commerce Drive, Suite 200
Oak Brook, IL 60523

Advanced Wireless Group, LLC (aka Boingo Wireless,
Inc.)
Attn: David Hagan, Chairman and Chief Executive
Officer, H. Scott Phillips, President and CEO, or Other
Officer or Director
10460 NW 46th Street
Miami, FL 33178

Advanced Wireless Group, LLC (aka Boingo Wireless,
Inc.)
Attn: David Hagan, Chairman and Chief Executive
Officer, H. Scott Phillips, President and CEO, or Other
Officer or Director
10960 Wilshire Blvd, 23rd  Floor
Los Angeles, CA 90024

Deep Blue Communications, LLC
Attn: Brian Epstein
President and CEO, or Other Officer or Director
7 Century Hill Road
Latham, NY 12110

Direct Video Entertainment
Attn: Officer or Director
6615 Boynton Beach Blvd, 217
Boynton Beach, FL 33437

Docomo Intertouch Pte Ltd
Attn: Officer or Director
89 Science Park D
Singapore 118261

Intertouch Holdings LLC
Attn: Officer or Director
30851 Agoura Road, Suite 102
Agoura Hills, CA 91301

Intertouch Holdings LLC
c/o Corporation Service Co
2711 Centerville Rd., Suite 400
Wilmington, DE 19808

Double Click For Publishers
Google
Attn: Larry Page, CEO,
1600 Amphitheatre Parkway
Mountain View, CA 94043

Double Click For Publishers
Google
Attn: Larry Page, CEO,
33654 P.O. Box 39
San Francisco, CA 94139

Essenture Incorporated
Brad Commins, Agent For Service and Officer or
Director
19349 Flavian Ave
Torrance, CA 90503

Federal Realty Investment Trust
Attn: Donald C. Wood, President – Chief
Executive Office
12626 E. Jefferson St.
Rockville, MD 20852

Hill Companies
Attn: Officer or Director
3271 Airflite Way
Long Beach, CA 90807

Intermedia Cable Communications
Attn: Ejaz M. Inamdar, Director
1018 New Nana Peth
Padamjee Path, Pune
India 41100-2000

Pacific Telemanagement Services
Attn: Christine Chen, Agent for Service, Justin T.
Keane, COO, or Other Officer or Director
2001 Crow Canyon Road, Suite 200
San Ramon, CA 94583

Peterson Communications Group
Attn: Greg Peterson, Agent for Service, or Other
Officer or Director
827 Arnold Dr # 140
Martinez, CA 94553

Pure Pages
Attn: Officer or Director
504 Iroquois Shore Road, Unit 11,
Oakville ON L6H 3K4 CANADA

Social Wi-Fi Marketing    Attn: Artur Racicki,
President or Other Officer or Director
Social WiFi, Inc.
180 Sansome Street
San Francisco, CA 94104

SWS Realty
Attn: Taghi Shoraka, President, or Other Officer or
Director
600 N. Brand Blvd.
Glendale, CA 91203

SWS Realty
Attn: Taghi Shoraka, President, or Other Officer or
Director
1125 East 17th St #N559
Santa Ana, CA 92701

TelePacific
Attn: Richard Jalkut, President
Attn: Office of General Counsel
515 S. Flower Street, 47th
Los Angeles, CA 90071

The Network Operations Company
Attn: Officer or Director
44 South Dixie Highway
Saint Augustine, FL 32084

Uniguest, Inc.
Attn: Joseph P. Morgan, Jr., Chief Executive, or
Other  Officer or Director
1035 Acorn Dr.
Nashville, TN 37210

Uniguest, Inc.
Attn: Joseph P. Morgan, Jr., Chief Executive, or
Other  Officer or Director
2926 Kraft Drive
Nashville, TN 37204

United Solution LLC
Attn: Officer or Director
3909 Westpoint Blvd., Suite F
Winston Salem, NC 27103

Wi-Fi Guys, LLC
Attn: Jay Lewis, Tom Sullivan, and Chris Swanson,
Officers and Directors, or Other Officer or Director
7265 Highway 1
Finland, MN 55603

AdRoll
Attn: Peter Krivkovich , CFO
972 Mission Street
San Francisco, California 94103

Amazon, Inc.
Attn: Jeff Blackburn, SVP - Corporate and Business
Development
Peter Krawiec, VP - Corporate Development
410 Terry Avenue North
Seattle, WA 98109

AOL Inc.
Attn: Alexis Gonzalez, Corporate Development
770 Broadway
New York, NY 10003

Apple Inc.
Attn: Brian Scelfo, Corporate Development
1 Infinite Loop
Cupertino, CA 95014

Boingo Wireless, Inc.
Attn: David Hagan, CEO
Peter Hovenier, CFO
10960 Wilshire Boulevard, 23rd Floor
Los Angeles, CA 90024

Criteo
Attn: Jean-Baptiste Rudelle, CEO
Benoit Fouilland, CFO
Byron Deeter, Board Member
387 Park Ave South 12th Floor
New York, NY 10016

Criteo
Attn: Jean-Baptiste Rudelle, CEO
Benoit Fouilland, CFO
Byron Deeter, Board Member
32 rue Blanche, Paris,
Ile-de-France 75009

Facebook, Inc.
Attn: David Wehner, CFO
Gary Johnson, Corporate Development
1 Hacker Way
Menlo Park, CA 94025

Dell Inc.
Attn: Alfonso Calderon, Corporate Development
2300 West Plano Parkway
Plano, TX 75075

Google Inc.
Attn: Maria Shim, Corporate Development
1600 Amphitheatre Parkway
Mountain View, CA 94043

Gogo Inc.
Attn: Norman Smagley, CFO
Varvara Alva, VP - Investor Relations, Treasurer
111 North Canal
Chicago, IL 60606

IBM Corporation
Attn: Cameron Potts, Corporate Development
1 New Orchard Road
Armonk, NY 10504

Hew-lett Packard (Aruba Networks)
Attn: Peter Cellarius (Aruba) , VP - Business &
Corporate Development
Andrew Leonard, Corporate Development - HP
1344 Crossman Avenue
Sunnyvale, CA 94089

Oracle Corporation
Attn: Douglas Kehring, Corporate Development
500 Oracle Parkway
Redwood City, CA 94065

Hew-lett Packard (Aruba Networks)
Attn: Peter Cellarius (Aruba) , VP - Business &
Corporate Development
Andrew Leonard, Corporate Development - HP
1501 Page Mill Road
Palo Alto, CA 94304

Sony Corporation
Attn: Yurika Kamitani, Senior General Manager
1-7-1 Konan Minato-ku
Tokyo 108-0075, Japan

Microsoft Corporation
Attn: Matthew Lapsen, Corporate Development
One Microsoft Way
Redmond, WA 98052

Twitter Inc.
Attn: Anthony Noto, CFO, Corporate Development
Rishi Garg, Former Head - Corporate Development
1355 Market Street, Suite 900
San Francisco, CA 94103

Sizmek
Attn: Neil Nguyen, CEO
Scott Ginsburg, Board Member
500 West 5th Street, Suite 900
Austin, TX 78701

Yelp Inc.
Attn: Jay Ganatra, Senior Manager - Corporate
Development
140 New Montgomery Street 9th Floor
San Francisco, CA 94105

TubeMogul, Inc.
Attn: Paul Joachim, CFO
1250 53rd Street, Suite 1
Emeryville, CA 94608

Charter Communications
Attn: David Housman, Director - New Business
Development
Charles Fisher. SVP - Corporate Finance
400 Atlantic Street
Stamford, CT 06901

Yahoo Inc.
Attn: Jacqueline Reses, Corporate Development
Steve Fan, VP - Corporate Development
Kerri Damm, Coverage of ad tech
701 First Avenue
Sunnyvale, CA 94089

Dish Network
Attn: Charlie Ergen, Chairman of the Board of Directors
9601 South Meridian Boulevard
Englewood, CO 80112

Cablevision Systems Corporation
Attn: Bret Richter, Corporate Development
1111 Stewart Avenue
Bethpage, NY 11714

Raycom Media
Attn: Paul H. McTear Jr., CFO
Pat LaPlatney, SVP
Melissa Thurber, SVP, CFO
Susana Schuler, SVP
201 Monroe Street RSA Tower, 20th Floor
Montgomery, AL 36104

Comcast Corporation
Attn: Alexander D. Evans, Executive VP - Global
Corporate Development and Strategy
Joseph McGinley, VP - Corporate Development
Comcast Center
1701 JFK Boulevard
Philadelphia, PA 19103

AT&T Inc.
Attn: Austin Summerford, Corporate Development
Martin Clifford, Director, Corporate Development
Mark Overton, Associate - Corporate Development
208 South Akard Street
Dallas, TX 75202

Case 2:15-bk-25024-SK    Doc 158    Filed 01/04/16    Entered 01/04/16 16:37:30    Desc
Main Document    Page 23 of 25

Optimum
Attn: Bret Richter, Corporate Development
1111 Stewart Avenue
Bethpage, NY 11714

DOCOMO interTouch
Attn: Charles Reed, CEO
89C, Science Park Drive #03-09/12 The Rutherford
Singapore Science Park I,
Singapore 118261

Time Warner Cable
Attn: Satish Adige, SVP - Mergers & Acquisitions
One Time Warner Center
New York, NY 10019

KDDI Corporation
Attn: Takashi Shigeno, GM - Global Strategy
Daichi Nozaki, President & COO
Garden Air Tower 10-10, Iidabashi 3-chome Chiyoda-ku
Tokyo 102-8460,  Japan

CenturyLink
Attn: R. Ewing, Corporate Development
Bryan M. Taylor, VP - Corporate Development
100 CenturyLink Drive
Monroe, LA 71203

NTT Communications
Attn: Hiromasa Takaoka, Senior Director
Daisuke Oshima, Corporate Development
Fumitake Matsuoka, Senior Manager - Corporate Development
1-1-6 Uchisaiwai-cho Chiyoda-ku
Tokyo 100-8019, Japan

Frontier
Attn: Heath Simpson, Corporate Development
401 Merritt 7
Norwalk, CT 06851

SoftBank Group Corp.
Attn: Ruwin Perera, Corporate Development
1-9-1 Higashi-shimbashi Minato-ku
Tokyo 105-7303, Japan

Liberty Global
Attn: Ankur Prakash, Vice President
161 Hammersmith Road
London W6 8BS, United Kingdom

T-Mobile International AG
Attn: Peter Ewens, Corporate Development
Jeff Giard, Corporate Development
12920 South East 38th Street
Bellevue, WA 98006

Singtel Telecommunications Ltd.
Attn: Jennifer Lin, Manager, Corporate Development
31 Exeter Road #18-00 Comcentre
Singapore 239732, Singapore

Amphenol Corporation
Attn: Robert Stewart, VP - Market Development
Patrick Gillard, VP - Treasurer, Acquisitions, Risk Management
358 Hall Avenue PO Box 5030
Wallingford, CT 06492

Sprint Corporation
Attn: Michael Schwartz, Corporate Development
6200 Sprint Parkway
Overland Park, KS 66251

Cisco Systems, Inc.
Attn: Kay Min, Director Corporate Development
170 West Tasman Drive
San Jose, CA 95134

Verizon Communications
Attn: Alexis Gonzalez, Corporate Development
1095 Avenue of the Americas
New York, NY 10036

Echo Star
Attn: Charlie Ergen, Chairman
100 Inverness Terrace East
Englewood, CO 80112

Belden Incorporated
Attn: Ross Rosenberg, Senior Vice President of
Strategy & Corporate Development
1 North Brentwood Boulevard 15th Floor
St. Louis, MO | 63105

Fujitsu Ltd.
Attn: Sugawara Michitaka, CEO
Horibe Tatsuo, CFO
Shiodome City Center 1-5-2 Higashi-Shimbashi Minato-ku
Tokyo 105-7123 Japan

CommScope Inc.
Attn: Patrick Manning, VP Corporate Development
1100 CommScope Place, SE
Hickory, NC 28602

Ruckus Wireless
Attn: Bart Burstein, SVP Operations & Business
Development
350 West Java Drive
Sunnyvale, CA 94089

Ericsson
Attn: Hans Vestberg, CEO
Jan Frykhammar, CFO
Hyacinth DeAlmeida, Corporate Development
Torshamnsgatan 21 Kista
Stockholm, Stockholm County 164 83
Sweden

Outfront Media
Attn: Andy Sriubas, EVP - Strategic Planning &
Development
405 Lexington Avenue 17th Floor
New York, NY 10174

Juniper Networks
Attn: Rami Rahim, CEO
Robyn Denholm, CFO
Domenic Perri, Corporate Development
1133 Innovation Way
Sunnyvale, CA 94089

Clear Channel Outdoor
Attn: Paul J. Meyer, CEO
99 Park Avenue, 2nd Floor
New York, NY 10016

Samsung Electronics Co. Ltd.
Attn: Kwon Oh-Hyun, CEO
Sang-Hoon Lee, CFO
129, Samsung-ro, Yeongtong-gu,
Suwon-si, Gyeonggi-do, South Korea

Altice
Attn: Burkhard Koep, Head of Business Development &
M&A
Cattenbroekerdijk 4 B
Woerden, Utrecht 3446 HA
Netherlands

Lamar Advertising
Attn: Keith A. Istre, CFO
5321 Corporate Boulevard
Baton Rouge, LA 70808

Rovi Corporation
Attn: Sean Matthews, EVP, Strategy and Corporate
Development
2830 De La Cruz Boulevard
Santa Clara, CA 95050

Communitiy Newspaper Holdings
Attn: Donna Barrett, President and CEO
Steve McPhaul, Sr. VP of Corporate Operations
445 Dexter Avenue, Suite 7000
Montgomery, AL 36104

Clearlake Capital
Attn: Behdad Eghbali, Head Partner
233 Wilshire Boulevard, Suite 800
Santa Monica, CA 90401

Cable One, Inc.
Attn: Matthew Armstrong, VP - Strategic Planning and
Finance
210 East Earll Drive
Phoenix, AZ 85012

OPENAIR Equity Partners
Attn: Lance LeMay, Managing Director
4520 Main Street Suite 1400
Kansas City, MO 64111

Ubiquiti Networks
Attn: John Sanford, Corporate Vice President
2580 Orchard Parkway
San Jose, CA 95131

Vector Capital
Attn: David Ramazetti, Managing Director
One Market Street Steuart Tower 23rd Floor
San Francisco, CA 94105

JAS Financial Services
Attn: James Skelton, Managing Member
1603 Orrington Avenue, Suite 600
Evanston , IL 60201

The Gores Group
Attn: Barrett Sprowl, Vice President
9800 Wilshire Boulevard
Los Angeles, CA 90212

# EXHIBIT "8"

| | Company | Contact Name | Role | Mailing Address |
|---|---|---|---|---|
| **Prospective Buyers List** | | | | |
| **Strategic Buyers** | | | | |
| **Internet / Technology** | | | | |
| 1. | AdRoll | Peter Krivkovich | CFO | 972 Mission Street San Francisco, California 94103 |
| 2. | Amazon, Inc. | Jeff Blackburn Peter Krawiec | SVP - Corporate and Business Development VP - Corporate Development | 410 Terry Avenue North Seattle, WA 98109 |
| 3. | AOL Inc. | Alexis Gonzalez | Corporate Development | 770 Broadway New York, NY 10003 |
| 4. | Apple Inc. | Brian Scelfo | Corporate Development | 1 Infinite Loop Cupertino, CA 95014 |
| 5. | Boingo Wireless, Inc. | David Hagan Peter Hovenier | CEO CFO | 10960 Wilshire Boulevard, 23rd Floor Los Angeles, CA 90024 |
| 6. | Criteo | Jean-Baptiste Rudelle Benoit Fouilland Byron Deeter | CEO CFO Board Member | **France:** 32 rue Blanche, Paris, Ile-de-France 75009 **USA:** 387 Park Ave South 12th Floor New York, NY 10016 |
| 7. | Dell Inc. | Alfonso Calderon | Corporate Development | 2300 West Plano Parkway Plano, TX 75075 |
| 8. | Facebook, Inc. | David Wehner Gary Johnson | CFO Corporate Development | 1 Hacker Way Menlo Park, CA 94025 |
| 9. | Gogo Inc. | Norman Smagley Varvara Alva | CFO VP - Investor Relations, Treasurer | 111 North Canal Chicago, IL 60606 |
| 10. | Google Inc. | Maria Shim | Corporate Development | 1600 Amphitheatre Parkway Mountain View, CA 94043 |
| 11. | Hew-lett Packard (Aruba Networks) | Peter Cellarius (Aruba) Andrew Leonard | VP - Business & Corporate Development Corporate Development - HP | **Aruba:** 1344 Crossman Avenue, Sunnyvale, CA 94089 **HP:** 1501 Page Mill Road, Palo Alto, CA 94304 |
| 12. | IBM Corporation | Cameron Potts | Corporate Development | 1 New Orchard Road Armonk, NY 10504 |
| 13. | Microsoft Corporation | Matthew Lapsen | Corporate Development | One Microsoft Way Redmond, WA 98052 |
| 14. | Oracle Corporation | Douglas Kehring | Corporate Development | 500 Oracle Parkway Redwood City, CA 94065 |
| 15. | Sizmek | Neil Nguyen Scott Ginsburg | CEO Board Member | 500 West 5th Street, Suite 900 Austin, TX 78701 |
| 16. | Sony Corporation | Yurika Kamitani | Senior General Manager | 1-7-1 Konan Minato-ku Tokyo 108-0075, Japan |
| 17. | TubeMogul, Inc. | Paul Joachim | CFO | 1250 53rd Street, Suite 1 Emeryville, CA 94608 |
| 18. | Twitter Inc. | Anthony Noto Rishi Garg | CFO, Corporate Development Former Head - Corporate Development | 1355 Market Street, Suite 900 San Francisco, CA 94103 |
| 19. | Yahoo Inc. | Jacqueline Reses Steve Fan Kerri Damm | Corporate Development VP - Corporate Development Coverage of ad tech | 701 First Avenue Sunnyvale, CA 94089 |
| 20. | Yelp Inc. | Jay Ganatra | Senior Manager - Corporate Development | 140 New Montgomery Street 9th Floor San Francisco, CA 94105 |

| | Company | Contact Name | Role | Mailing Address |
|---|---|---|---|---|
| **Prospective Buyers List** | | | | |
| **MSO** | | | | |
| 21. | Cablevision Systems Corporation | Bret Richter | Corporate Development | 1111 Stewart Avenue<br>Bethpage, NY 11714 |
| 22. | Charter Communications | David Housman<br>Charles Fisher | Director - New Business Development<br>SVP - Corporate Finance | 400 Atlantic Street<br>Stamford, CT 06901 |
| 23. | Comcast Corporation | Alexander D. Evans<br>Joseph McGinley | Executive VP - Global Corporate Development and Strategy<br>VP - Corporate Development | Comcast Center<br>1701 JFK Boulevard<br>Philadelphia, PA 19103 |
| 24. | Dish Network | Charlie Ergen | Chairman of the Board of Directors | 9601 South Meridian Boulevard<br>Englewood, CO 80112 |
| 25. | Optimum | Bret Richter | Corporate Development | 1111 Stewart Avenue<br>Bethpage, NY 11714 |
| 26. | Raycom Media | Paul H. McTear Jr.<br>Pat LaPlatney<br>Melissa Thurber<br>Susana Schuler | CFO<br>SVP<br>SVP, CFO<br>SVP | 201 Monroe Street RSA Tower, 20th Floor<br>Montgomery, AL 36104 |
| 27. | Time Warner Cable | Satish Adige | SVP - Mergers & Acquisitions | One Time Warner Center<br>New York, NY 10019 |
| **Telco** | | | | |
| 28. | AT&T Inc. | Austin Summerford<br>Martin Clifford<br>Mark Overton | Corporate Development<br>Director, Corporate Development<br>Associate - Corporate Development | 208 South Akard Street<br>Dallas, TX 75202 |
| 29. | CenturyLink | R. Ewing<br>Bryan M. Taylor | Corporate Development<br>VP - Corporate Development | 100 CenturyLink Drive<br>Monroe, LA 71203 |
| 30. | DOCOMO interTouch | Charles Reed | CEO | 89C, Science Park Drive #03-09/12 The Rutherford<br>Singapore Science Park I, Singapore 118261 |
| 31. | Frontier | Heath Simpson | Corporate Development | 401 Merritt 7<br>Norwalk, CT 06851 |
| 32. | KDDI Corporation | Takashi Shigeno<br>Daichi Nozaki | GM - Global Strategy<br>President & COO | Garden Air Tower 10-10, Iidabashi 3-chome Chiyoda-ku<br>Tokyo 102-8460,  Japan |
| 33. | Liberty Global | Ankur Prakash | Vice President | 161 Hammersmith Road<br>London W6 8BS, United Kingdom |
| 34. | NTT Communications | Hiromasa Takaoka<br>Daisuke Oshima<br>Fumitake Matsuoka | Senior Director<br>Corporate Development<br>Senior Manager - Corporate Development | 1-1-6 Uchisaiwai-cho Chiyoda-ku<br>Tokyo 100-8019, Japan |
| 35. | Singtel Telecommunications Ltd. | Jennifer Lin | Manager, Corporate Development | 31 Exeter Road #18-00 Comcentre<br>Singapore 239732, Singapore |
| 36. | SoftBank Group Corp. | Ruwin Perera | Corporate Development | 1-9-1 Higashi-shimbashi Minato-ku<br>Tokyo 105-7303, Japan |
| 37. | Sprint Corporation | Michael Schwartz | Corporate Development | 6200 Sprint Parkway<br>Overland Park, KS 66251 |
| 38. | T-Mobile International AG | Peter Ewens<br>Jeff Giard | Corporate Development<br>Corporate Development | 12920 South East 38th Street<br>Bellevue, WA 98006 |
| 39. | Verizon Communications | Alexis Gonzalez | Corporate Development | 1095 Avenue of the Americas<br>New York, NY 10036 |

| Company | Contact Name | Role | Mailing Address |
|---|---|---|---|
| **Prospective Buyers List** | | | |
| **Communications & Networking Equipment** | | | |
| 40.   Amphenol Corporation | Robert Stewart | VP - Market Development | 358 Hall Avenue PO Box 5030 |
| | Patrick Gillard | VP - Treasurer, Acquisitions, Risk Management | Wallingford, CT 06492 |
| 41.   Belden Incorporated | Ross Rosenberg | Senior Vice President of Strategy & Corporate Development | 1 North Brentwood Boulevard 15th Floor |
| | | | St. Louis, MO \| 63105 |
| 42.   Cisco Systems, Inc. | Kay Min | Director Corporate Development | 170 West Tasman Drive |
| | | | San Jose, CA 95134 |
| 43.   CommScope Inc. | Patrick Manning | VP Corporate Development | 1100 CommScope Place, SE |
| | | | Hickory, NC 28602 |
| 44.   Echo Star | Charlie Ergen | Chairman | 100 Inverness Terrace East |
| | | | Englewood, CO 80112 |
| 45.   Ericsson | Hans Vestberg | CEO | Torshamnsgatan 21 Kista |
| | Jan Frykhammar | CFO | Stockholm, Stockholm County 164 83 |
| | Hyacinth DeAlmeida | Corporate Development | Sweden |
| 46.   Fujitsu Ltd. | Sugawara Michitaka | CEO | Shiodome City Center 1-5-2 Higashi-Shimbashi Minato-ku |
| | Horibe Tatsuo | CFO | Tokyo 105-7123 Japan |
| 47.   Juniper Networks | Rami Rahim | CEO | 1133 Innovation Way |
| | Robyn Denholm | CFO | Sunnyvale, CA 94089 |
| | Domenic Perri | Corporate Development | |
| 48.   Ruckus Wireless | Bart Burstein | SVP Operations & Business Development | 350 West Java Drive |
| | | | Sunnyvale, CA 94089 |
| 49.   Samsung Electronics Co. Ltd. | Kwon Oh-Hyun | CEO | 129, Samsung-ro, Yeongtong-gu, |
| | Sang-Hoon Lee | CFO | Suwon-si, Gyeonggi-do, South Korea |
| **Advertising Services** | | | |
| 50.   Outfront Media | Andy Sriubas | EVP - Strategic Planning & Development | 405 Lexington Avenue 17th Floor |
| | | | New York, NY 10174 |
| 51.   Lamar Advertising | Keith A. Istre | CFO | 5321 Corporate Boulevard |
| | | | Baton Rouge, LA 70808 |
| 52.   Clear Channel Outdoor | Paul J. Meyer | CEO | 99 Park Avenue, 2nd Floor |
| | | | New York, NY 10016 |
| **Other** | | | |
| 53.   Communitiy Newspaper Holdings | Donna Barrett | President and CEO | 445 Dexter Avenue, Suite 7000 |
| | Steve McPhaul | Sr. VP of Corporate Operations | Montgomery, AL 36104 |

| Company | Contact Name | Role | Mailing Address |
|---|---|---|---|
| **Prospective Buyers List** | | | |
| **Live or Unresponsive Names** | | | |
| 54. Altice | Burkhard Koep | Head of Business Development & M&A | Cattenbroekerdijk 4 B<br>Woerden, Utrecht 3446 HA<br>Netherlands |
| 55. Cable One, Inc. | Matthew Armstrong | VP - Strategic Planning and Finance | 210 East Earll Drive<br>Phoenix, AZ 85012 |
| 56. Rovi Corporation | Sean Matthews | EVP, Strategy and Corporate Development | 2830 De La Cruz Boulevard<br>Santa Clara, CA 95050 |
| 57. Ubiquiti Networks | John Sanford | Corporate Vice President | 2580 Orchard Parkway<br>San Jose, CA 95131 |
| **Financial Buyers** | | | |
| 1. Clearlake Capital | Behdad Eghbali | Head Partner | 233 Wilshire Boulevard, Suite 800<br>Santa Monica, CA 90401 |
| 2. JAS Financial Services | James Skelton | Managing Member | 1603 Orrington Avenue, Suite 600<br>Evanston , IL 60201 |
| 3. OPENAIR Equity Partners | Lance LeMay | Managing Director | 4520 Main Street Suite 1400<br>Kansas City, MO 64111 |
| 4. The Gores Group | Barrett Sprowl | Vice President | 9800 Wilshire Boulevard<br>Los Angeles, CA 90212 |
| 5. Vector Capital | David Ramazetti | Managing Director | One Market Street Steuart Tower 23rd Floor<br>San Francisco, CA 94105 |

EXHIBIT "9"

1  MICHAEL I. GOTTFRIED (State Bar No. 146689)
   mgottfried@lgbfirm.com
2  ALEKSANDRA ZIMONJIC (State Bar No. 210252)
   azimonjic@lgbfirm.com
3  LANDAU GOTTFRIED & BERGER LLP
   1801 Century Park East, Suite 700
4  Los Angeles, California 90067
   Telephone: (310) 557-0050
5  Facsimile: (310) 557-0056

6  Attorneys for Plaintiff Kensel & Co., LLC

7

8                    UNITED STATES BANKRUPTCY COURT

9                     CENTRAL DISTRICT OF CALIFORNIA

10                        LOS ANGELES DIVISION

11

12 | In re:                        | Lead Case No. 2:15-bk-25024-SK
                                    | (Jointly administered with:
13 | MediaShift, Inc.,             | Case No. 2:15-bk-25030-SK)

14 |       Debtor and Debtor in Possession. | Chapter 11

15

16                                  | ADV. NO. _____

17 | KENSEL & CO., LLC,            |
                                    | **COMPLAINT FOR DECLARATORY AND**
18 |        Plaintiff,             | **INJUNCTIVE RELIEF; EXHIBITS**
         vs.
19 | MEDIASHIFT, INC.,             |

20 |        Defendant.             |

21

22

23

24

25

26

27

28

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Plaintiff Kensel & Co., LLC ("Kensel LLC") alleges:

## REQUIRED PLEADING DISCLOSURE

1.    In accordance with the requirements of Local Bankruptcy Rule 7008-1, Kensel LLC hereby alleges that the claims for relief in this Complaint constitute core proceedings under 28 U.S.C. § 157(b) because the outcome of those claims could impact property of the above captioned bankruptcy estate and assets available for distribution to creditors.  Regardless of the core or non-core nature of the claims for relief asserted herein, Kensel LLC consents to the entry of final orders and judgment by the Bankruptcy Court to the maximum extent permitted by applicable law.  Defendant is hereby notified that Federal Rule of Bankruptcy Procedure 7008(a) requires each defendant to plead whether the claims for relief alleged against such defendant are core or non-core and, if non-core, whether consent is given to the entry of final orders and judgment by the Bankruptcy Court.

## JURISDICTION AND VENUE

2.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 because the claims for relief in this Complaint arise in or are related to *In re Mediashift, Inc.*, the above-captioned bankruptcy case pending in this Court.

3.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409 because the bankruptcy case is pending in this district and division.  Pursuant to 28 U.S.C. § 1391, venue is also appropriate in this district and division because a substantial part of the events, acts or omissions giving rise to the claims asserted in this Complaint took place within this district.

## THE PARTIES

4.    Kensel LLC is a limited liability company organized and existing under the laws of the State of California with its principal place of business in the County of Orange, State of California.  Brendon Kensel ("Kensel") was the managing member of Kensel LLC at all relevant times.

5.    Defendant MediaShift, Inc. is chapter 11 debtor and debtor in possession (the "Debtor") in the above-captioned bankruptcy case.

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1

# GENERAL ALLEGATIONS

*Formation of MediaShift, Inc. and creation of MediaShift assets*

6.      Kensel LLC, then known as Kensel Ventures LLC, acquired the domain name *MediaShift.com* from Randy Taylor ("Taylor") on February 28, 2006. **Exhibit 1** is a copy of the Domain Purchase Agreement (the "DPA") between Kensel Ventures LLC and Taylor.

7.      Kensel LLC used the *MediaShift* name to form MediaShift, Inc., a Delaware corporation (the "Original MediaShift"). Formed on March 10, 2006, Original MediaShift served as a platform for the acquisition of digital marketing and advertising technology firms and it was 99% owned by Kensel LLC.

8.      On May 30, 2006, Kensel and Taylor amended the DPA to assign the agreement to the newly formed entity, Original MediaShift, and change the consideration to $10,000 or equivalent stock. **Exhibit 2** is a copy of the amended DPA.

9.      Kensel and Taylor amended the DPA once again on December 14, 2006, to extend the term of the agreement.  **Exhibit 3** is a copy of the second amended DPA.

10.      On March 13, 2006, Original MediaShift filed a trademark application with the United States Patent and Trademark Office ("USPTO") for the *MediaShift* name.  A copy of the USPTO Notice of Allowance of that application is attached as **Exhibit 4**.

11.      On July 28, 2006, Original MediaShift filed (i) a Community Trademark application for the United Kingdom and the European Union countries with the Office for Harmonization in the Internal Market ("OHIM"), and (ii) a trademark application with the Canadian Intellectual Property Office ("CIPO") for the *MediaShift* name. **Exhibit 5** is a copy of the Notification of Acceptance of the OHIM application. **Exhibit 6** is a copy a copy of the Notice of Allowance of the CIPO application.

12.      In July, 2006, Original MediaShift engaged a design firm to create a logo, an icon, business cards, letterhead, and a PowerPoint template for the *MediaShift* name (together, the "MediaShift Visual Assets"); the design was completed in September, 2006.

2

13. On January 16, 2007, Kensel and Taylor amended the DPA for a third time to change consideration for the purchase of the *MediaShift* domain name to 33,333 shares of common stock of Original MediaShift. **Exhibit 7** is a copy of the third amended DPA.

14. On December 31, 2008, Kensel LLC caused Original MediaShift to dissolve. Upon dissolution, all of Original MediaShift assets reverted back to Kensel LLC, as its sole owner.

### Kensel and Kensel LLC's involvement with the Debtor

15. In 2010, Kensel became an advisor to Ad-Vantage Networks, Inc. ("Ad-Vantage").

16. The Debtor, then known as JMG Exploration, Inc. ("JMGE"), acquired Ad-Vantage on August 31, 2012.

17. Kensel became the president of Ad-Vantage on January 1, 2013; the president of JMGE on February 1, 2013; and the president of Travora Networks, another wholly owned subsidiary of JMGE, on February 6, 2013.

### The renaming of JMGE Exploration, Inc. to MediaShift, Inc.

18. In January 2013, Kensel, David Grant, the Chief Executive Officer of JMGE, and David Eastman the Chief Financial Officer of JMGE, began exploring a name change for JMGE to better match the company's advertising technology business.

19. On January 16, 2013, Kensel proposed *MediaShift* as a possible name to Grant and Eastman, noting that it was a domain name that Kensel's company, Kensel LLC, already owned. A copy of Kensel's email proposal to Grant and Eastman is attached as **Exhibit 8.** A few days later, Kensel and Grant met to discuss renaming JMGE to MediaShift name and using the MediaShift Visual Assets related to the name.

20. On January 22, 2013, Grant confirmed to Kensel that JMGE was interested in acquiring the name: "I believe we have support from the management team for renaming JMGE to MediaShift. Let's discuss what it would take before I socialize it with all." A copy of Grant's email to Kensel is attached as **Exhibit 9.**

21. On or about January 24, 2013, Kensel and Grant met in connection with JMGE's name transition and the anticipated transfer of the related assets - *MediaShift.com* domain name

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

and 8 related domain names (the "MS Domain Names"), trademarks, copyrights, and the
MediaShift Visual Assets (together, "MediaShift Assets"). Kensel and Grant discussed the
consideration for the MediaShift Assets and agreed that, in addition to compensating Kensel LLC
for the assets, JMGE would also issue $10,000 of JMGE common stock to Taylor, in keeping with
the spirit of the original domain name acquisition agreement between Taylor and Kensel LLC.
Kensel and Grant discussed a possibility of JMGE paying an amount equivalent to Kensel's 6-
month salary (worth $105,000, based on Kensel's base compensation at the time) in exchange for
the MediaShift Assets.

22.   At Grant's request, Kensel emailed the MediaShift logo and icon assets to Jim
Callahan, JMGE's Director of Marketing, in the week of January 28, 2013.

23.   On January 31, 2013, JMGE filed a trademark application with the USPTO for a
word mark and character mark for the MediaShift name. Kensel provided his personal assistance
and the materials from the Original MediaShift USPTO application to JMGE's counsel, which
expedited the process significantly.

24.   On February 7, 2013 Brad Commins, Director of Information Technology at
JMGE, requested from Kensel the password for Original MediaShift's account with the domain
registrar, GoDaddy. The password was necessary to obtain access to the MS Domain Names.  A
copy of Commins's email to Kensel is attached as **Exhibit 10.**

25.   Kensel provided the password for the Original MediaShift's GoDaddy account to
Commins on February 9, 2013.  A copy of the email chain between Kensel and Mike Spalter,
JMGE's Chief Operating Officer, confirming that Commins had obtained access to the Original
MediaShift GoDaddy account is attached as **Exhibit 11.**

26.   On February 11, 2013, JMGE announced a pending name change to MediaShift,
and the formal name announcement was issued March 4, 2013.  Copies of the two press releases
are attached as **Exhibits 12** and **13.**

27.    On February 14, 2013, Jim Callahan, JMGE's Director of Marketing, sent an email
to the company's employees with new MediaShift email signature line. A copy of that email is
attached as **Exhibit 14.**

4

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

28. Also on February 14, 2013, Kensel emailed the MediaShift PowerPoint template to the JMGE management team. A copy of Kensel's email is attached as **Exhibit 15.** This completed Kensel LLC's delivery of the MediaShift Assets to JMGE, as contemplated by the January 2013 agreement between Kensel LLC and JMGE.

29. On May 29, 2013, MediaShift issued 3,000 shares (in the approximate value of $10,000) to Taylor, in accordance with the January 2013 agreement between JMGE and Kensel LLC. A copy of MediaShift's investment letter to Taylor and related email correspondence is included as **Exhibit 16.**

30. A few months later, JMGE decided to transition its two subsidiaries (Ad-Vantage and Travora Media, Inc.) to the MediaShift name, Kensel prepared a name transition document and organized a meeting with JMGE's marketing team on October 21, 2013 to present the name transition strategy. Copies of the meeting invitation and the meeting presentation document are attached as **Exhibit 17.**

31. On November 21, 2013, MediaShift, filed a Community Trademark application for the United Kingdom and the European Union countries with OHIM for the MediaShift name. Kensel provided the materials from the Original MediaShift OHIM application, including Kensel LLC's opposition to a claim filed by an unrelated third party, Shift Design Lda. Kensel's assistance and the availability of the Original MediaShift OHIM materials expedited the application submission process.

32. On November 22, 2013, MediaShift, also with Kensel's assistance, filed a trademark application with CIPO for the MediaShift name. In preparing the CIPO application, MediaShift used the materials from the Original MediaShift CIPO application. Kensel's assistance and the availability of the Original MediaShift CIPO materials expedited the application submission process.

33. On March 18, 2014, Kensel discovered that he was locked out of MediaShift's GoDaddy account and requested that he be granted continued access. A copy of Kensel's email to Commins regarding denial of access is attached as **Exhibit 18.** MediaShift failed to provide the updated password to Kensel.

5

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

34.   On multiple occasions during March 2014, Kensel reminded Grant that the agreement between JMG and Kensel LLC has not been finalized yet.  In response, Grant suggested that, instead of the previously contemplated compensation (*i.e.*, the 6-month severance pay), JMGE provide a $100,000 fee, payable in the form of a convertible promissory note.  At Grant's direction, Chad Payne, MediaShift's counsel, drafted a bill of sale (the "Bill of Sale") for the MediaShift Assets, which reflected the new consideration. Grant informed Kensel that the Bill of Sale needed MediaShift's board approval because Kensel was an officer of the company.

35.   On March 25, 2014, Grant confirmed to Kensel that he sent the Bill of Sale to the board for consideration and wrote to Kensel: "I need to hear from the board on pricing but anything you can show on the value it took to get it would be helpful."  A copy of email correspondence between Kensel and Grant is included in **Exhibit 19.**

36.   On March 27, 2014, at Grant's direction, MediaShift's corporate counsel Chad Payne revised the Bill of Sale by adding two provisions in which Kensel LLC (i) represented and warranted that it owned the MediaShift Assets, free and clear of any encumbrances, and (ii) agreed to indemnify MediaShift for any third party claims relating to the assets. The revised draft Bill of Sale provided that purchase price for the MediaShift Assets was $100,000, payable in the form of a convertible promissory note from MediaShift.  A copy of the Bill of Sale is included in **Exhibit 20.**

37.   Between March 27, 2014 and July 31, 2014, Kensel's last day of employment with MediaShift, Kensel made repeated demands to both Grant and Rick Baran, his successor, for payment of the agreed-upon consideration.

38.   Between Kensel's departure from MediaShift on July 31, 2014 and MediaShift's bankruptcy on September 30, 2015, Kensel made numerous requests to MediaShift for payment for the MediaShift Assets.  One such request is reflected in Kensel's May 22, 2015 letter to Grant. A copy of that letter is attached as **Exhibit 21.**

39.   On May 24, 2015, Grant responded to the May 22, 2015 letter, stating that Kensel's recollection of events was not correct. **Exhibit 22** is a copy of Grant's reply.

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

6

1    40.   MediaShift refused to sign the Bill of Sale or provide any consideration to Kensel

2    in exchange for the MediaShift Assets. Kensel and Grant have been negotiating the terms of the

3    agreement between Kensel LLC and JMGE for many months. Even though they might have

4    agreed upon some of the terms and Kensel LLC delivered the MediaShift Assets to JMGE, Kensel

5    LLC and JMGE never reached a final agreement on a material term - the price of the MediaShift

6    Assets.  Accordingly, no binding oral or written contract has been formed between them.

7    41.   MediaShift did not list Kensel LLC as a creditor on its bankruptcy schedules,

8    confirming its belief that it had no pre-petition agreement with Kensel LLC, and in turn, owed no

9    contractual debt to Kensel LLC.

10    **FIRST CLAIM FOR RELIEF**

11    **[Declaratory Relief Under 11 U.S.C. §§ 105 and 541 and 28 U.S.C. § 2201]**

12    42.   Kensel LLC realleges and incorporates herein by reference the allegations of

13    paragraphs 1 - 41 above.

14    43.   An actual and genuine controversy exists as to Kensel LLC's rights and interests in

15    the MediaShift Assets.

16    44.   Kensel LLC contends that (i) it is the sole owner of the MediaShift Assets, (ii) it

17    holds exclusive right, title and interest in those assets; and (iii) its ownership, right, title and

18    interest in the MediaShift Assets is free and clear of any and all other claims of ownership by

19    MediaShift, Ad-Vantage, or any other parties.

20    45.   Kensel LLC further contends that MediaShift disputes its contentions set forth in

21    this claim for relief and MediaShift claims ownership and other rights in the MediaShift Assets.

22    46.   Pursuant to 11 U.S.C. §§ 105 and 541 and 28 U.S.C. § 2201, the Plaintiff is entitled

23    to a judicial determination and a declaratory judgment that (a) Kensel LLC is the sole owner of

24    and holds exclusive right, title and interest in the MediaShift Assets, and Kensel LLC is the only

25    party authorized by law to exercise such rights.

26

27

28

7

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## SECOND CLAIM FOR RELIEF

### [Permanent Injunction Under 11 U.S.C. § 105(a)]

47.   Kensel LLC realleges and incorporates herein by reference the allegations of paragraphs 1- 41 above.

48.   MediaShift continues to exercise control and possession of the MediaShift Assets although such assets belong to Kensel LLC.

49.   Pursuant to 11 U.S.C. § 105(a), the Bankruptcy Court should issue a permanent injunction ordering MediaShift to return the MediaShift Assets to Kensel LLC and restraining MediaShift from asserting any right, title or interest in the MediaShift Assetts or interfering in any way with the MediaShift Assets.

**WHEREFORE, Kensel LLC prays:**

1.   On the First Claim for Relief, for a declaratory judgment determining that:

   a.   Kensel LLC is the sole owner of and holds exclusive right, title and interest in the MediaShift Assets and such ownership and right, title and interest is free and clear of any and all other claims of ownership by MediaShift; and

   b.   Kensel LLC is the only party authorized by law to exercise right, title and interest in the MediaShift Assets.

2.   On the Second Claim for Relief, for a permanent injunction

   a.   mandating that MediaShift return, release, relinquish, assign and transfer back to Kensel LLC all the right, title or interest in the MediaShift Assets; and

   b.   restraining MediaShift from asserting any right, title or interest in the MediaShift Assetts or interfering in any way with the MediaShift Assets.

8

3.      On each Claim for Relief:

   a.      for costs incurred herein; and

   b.      for such other and further relief as the Court deems just and proper.

Dated: November 25, 2015

LANDAU GOTTFRIED & BERGER LLP

By: _____
   Aleksandra Zimonjic
   Attorneys for Plaintiff Kensel & Co., LLC

EXHIBIT 1

## DOMAIN NAME PURCHASE AGREEMENT

THIS AGREEMENT (this "**Agreement**") is made this __28__ day of February, 2006 (the "**Effective Date**") by and among Randy Taylor, an individual ("**Seller**") and Kensel Ventures, LLC ("**Buyer**").

WHEREAS, Seller has registered the Internet Domain Name "MediaShift.com" (the "**Domain Name**") as a domain name with a registrar (the "**Registrar**") that is an accredited registrar of The Internet Corporation for Assigned Names and Numbers ("**ICANN**");

WHEREAS, Seller is willing to transfer the Domain Name, as well as trademark rights relating thereto, to Buyer;

NOW, THEREFORE, in consideration of the premises and the mutual agreements set forth in this Agreement, and for other good and valuable consideration, receipt of which is hereby acknowledged, Buyer and Seller agree as follows:

**1.** **Purchase and Sale of Domain Name Rights.** Pursuant to the terms and conditions hereof, Buyer hereby agrees to purchase, and Seller hereby agrees to sell and transfer all of Seller's right, title and interest in the Domain Name and all of Seller's trademark and other rights therein or pertaining thereto which it now owns or may hereafter acquire in all jurisdictions in the world, if any, to Buyer, free and clear of all liens, claims or encumbrances of any nature whatsoever. On the Effective Date, Buyer and Seller agree to effect the transfer of the Domain Name by carrying out the applicable transfer procedures required by the Registrar. In addition, Seller agrees to execute all documents and to take such additional actions as may be reasonably requested by Buyer to effect the transfer of the Domain Name and to vest in Buyer good and marketable title in and all rights to use and register the Domain Name, and all of Seller's trademark rights relating thereto, including all goodwill associated therewith.

**2.** **Payment.** Upon the consummation of a "Transaction" (as defined below), Buyer agrees to issue to Seller a number of shares of common stock of the "Acquiror" (as defined below) equal to 0.25% of the outstanding shares of the Acquiror as of the date of consummation of the Transaction, after giving effect to any shares of capital stock issued in connection with the Transaction (the "**Shares**"). The Shares will, when issued, be duly authorized, validly issued, fully paid and nonassessable and shall be issued free and clear of any liens, claims or encumbrances of any nature whatsoever. Notwithstanding the foregoing, in the event that the Transaction is not consummated within one hundred eighty (180) days from the Effective Date, then Seller shall have the option of rescinding the transactions contemplated under this Agreement, by delivering written notice to the Buyer within one hundred eighty-five (185) days from the Effective Date stating that it elects to exercise its right to rescind, and upon receipt of such notice, the Buyer shall immediately transfer all of its rights in the Domain Name and any other rights it obtained pursuant to Section 1 above, back to the Seller and upon such transfer, the Buyer shall have no obligation to pay any consideration to the Seller. For purposes of the foregoing, (i) a "**Transaction**" shall mean the acquisition, by merger, stock purchase, asset purchase or otherwise, by an Acquiror of an online

DOCSOC/1154026v1/100150-0000

EXHIBIT 1
10

advertising company and (ii) an **"Acquiror"** shall mean Buyer or an entity formed by or on behalf of Buyer.

**3. No Challenge.** Seller shall make no further use of the Domain Name as of the Effective Date, nor shall Seller challenge, interfere, solicit, encourage or assist others to challenge or otherwise interfere with Buyer's interest, right or use of the Domain Name. Seller will not itself, or enable or allow another to, take any action or refrain from any action or otherwise support any claim that may detrimentally affect the registrability, validity of or commercial value associated with the Domain Name, including the goodwill associated therewith. Seller will not challenge or oppose Buyer's registration of the Domain Name as a Domain Name, service mark or trademark in the United States or anywhere else in the world and will execute any document reasonably requested by Buyer to assist it in obtaining any such registration.

**4. Representations and Warranties.** Seller represents, warrants and covenants as follows:

a. Seller shall deliver under this Agreement free and clear right, title and interest in and to the Domain Name.

b. Seller is the owner of and has all right, title and interest in and to the Domain Name, free and clear of any liens, claims or encumbrances of any nature whatsoever.

c. Seller has not used, and will not make or use, any fraud, misrepresentation, and false or otherwise inaccurate statement in the process of registration or maintenance of the registration of the Domain Name or in connection with the transaction underlying this Agreement.

d. No fees are owing to the registrar of the Domain Name or to any other government agency or other entity or party with regard to the registration or maintenance of the Domain Name. Seller warrants that, other than as may be warranted under the terms of this Agreement, all registration fees to the registrar of the Domain Name are current and shall remain so until final transfer of the Domain Name under this Agreement.

e. Seller has not licensed or otherwise allowed or enabled the use of the Domain Name to any other person or entity, or granted any right with respect to the Domain Name to any other person or entity, that may, in any manner, restrict, impede or adversely effect the consummation of the transaction underlying this Agreement.

f. The execution and performance of the transaction contemplated under this Agreement does not infringe upon any rule of law or the proprietary or other rights or interest of any third party, including, without limitation, trademark, trade-name, privacy or other rights, and shall not cause any harm, damage, expense or otherwise adverse effect upon or to Buyer.

g. Seller is not seeking, and has not sought to use or sell the Domain Name for any unlawful purpose, including, but not limited to, unfair competition.

h. Seller, and Seller's activities, does not constitute an infringement under the U.S. Anti-Cybersquatting Act of 1999, as amended from time to time.

i. Seller has all legal authority, authorizations and capacity to enter into this Agreement and a transaction for the transfer of the Domain Name and to assume the rights and

DOCSOC/1154026v1/100150-0000

2

EXHIBIT 1
11

obligations arising hereby and acknowledges that this Agreement is a legal, valid and binding obligation of Seller enforceable against it in accordance with its terms;

       j.     Seller is not currently engaged in any dispute with any other party concerning the Domain Name or any confusingly similar service marks, trademarks or Domain Name.

       k.     Seller is not aware of any claim that the past or current use by Seller of the Domain Name constituted or constitutes an infringement or violation of any trademark or other proprietary right of any third party.

       l.     Seller has not registered the Domain Name with any other registration service functionally similar to ICANN in any country other than the United States.

       m.     Seller is an "Accredited Investor", as that term is defined under Rule 501 of Regulation D promulgated under Section 4(2) of the Securities Act of 1933, as amended (the "**Securities Act**").

       n.     The Seller has such knowledge and experience in financial, tax and business matters so as to enable the undersigned to utilize the information made available to the undersigned in connection with his receipt of the Shares to evaluate the merits and risks of an investment in the Acquiror and to make an informed investment decision with respect thereto.

       o.     The Seller will not sell or otherwise transfer any Shares without registration under the Securities Act or applicable state or foreign securities laws or an exemption therefrom unless the Seller provides, at the Seller's expense, an opinion of counsel in form satisfactory to the Company to the effect that registration under the Securities Act and such laws is not required and the sale or transfer of such securities would not cause the Company's initial distribution of securities to violate any such laws. The Shares have not been registered under the Securities Act or under the securities laws of any other jurisdiction. The Seller is acquiring the Shares for the Seller's own account, for investment and not with a view to resale or distribution except in compliance with the Securities Act. The Seller has not offered or sold any portion of the Shares being acquired nor does the Seller have any present intention of selling, distributing or otherwise disposing of any portion of the Shares, which may be a violation of the Securities Act, unless (i) a registration statement has been filed and declared effective by the Securities and Exchange Commission covering such Shares to be resold or otherwise distributed; or (ii) the passage of a fixed or determinable period of time that makes such resale or distribution exempt from registration and is pursuant to Rule 144 promulgated under the Securities Act or upon the occurrence or nonoccurrence of any predetermined event or circumstance in violation of the Securities Act. The Seller is aware that there is currently no market for the Shares or the Common Stock.

     5.    **Legends of Certificates**. The stock certificate issued to represent Shares shall bear the following (or substantially equivalent) legend on the face or reverse side thereof.

"THIS SECURITY HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR THE SECURITIES LAWS OF ANY STATE AND IS BEING OFFERED AND SOLD IN RELIANCE ON EXEMPTIONS FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT AND SUCH LAWS. THESE SECURITIES MAY NOT BE SOLD, TRANSFERRED OR ASSIGNED UNLESS THEY HAVE BEEN

DOCSOC/1154026v1/100150-0000

3

EXHIBIT 1
12

REGISTERED UNDER THE SECURITIES ACT OR UNLESS AN OPINION OF
COUNSEL IN FORM SATISFACTORY TO THE COMPANY IS FURNISHED TO
THE COMPANY TO THE EFFECT THAT REGISTRATION UNDER THE
SECURITIES ACT AND SUCH LAWS IS NOT REQUIRED AND THE SALE OR
TRANSFER OF SUCH SECURITIES WOULD NOT CAUSE THE COMPANY'S
INITIAL DISTRIBUTION OF SECURITIES TO VIOLATE ANY SUCH LAWS."

5.    **Representations and Warranties of Buyer.** Buyer hereby represents to Seller as
follows:

a.    Buyer has all the resources necessary to complete the transaction
contemplated herein and has the authority to commit such resources for the purpose of this
transaction; and

b.    Buyer has not and will not make any fraudulent or false statements or
misrepresentations in connection with the transaction underlying this Agreement.

6.    **Mutual Covenants.** Buyer and Seller agree to provide true and accurate information
about themselves and any other information required with regard to the transaction contemplated by
this Agreement. Neither Buyer nor Seller shall use or submit any inaccurate or false information or
otherwise impersonate any person or entity or user name or alias that they are not authorized to use.

7.    **Indemnification.** Seller acknowledges and understands the meaning and legal
consequences of the representations and warranties made by Seller herein, and that Buyer is relying
on such representations and warranties in making the determination to enter into this Agreement.
Seller hereby agrees to indemnify and hold harmless Buyer and each employee and agent thereof
from and against any and all loss, damage or liability due to or arising out of a breach of any
representation or warranty of Seller contained in this Agreement.

8.    **Further Actions.** Buyer and Seller shall execute and deliver any and all documents
deemed necessary to further the goals contemplated by this Agreement, including, without limitation,
all instruments of transfer and confirmation and take such other action as may reasonably be deemed
necessary or desirable in order to effectuate and confirm the transfer to Buyer of registration of the
Domain Name.

9.    **General.**

(i)    The rights and obligations under this Agreement may not be assigned or
transferred by Seller without the express written consent of Buyer. Without limiting the foregoing,
Buyer may assign this Agreement to an Acquiror. This Agreement shall be binding on all successors
and assigns of the parties hereto, as permitted by this Agreement.

(ii)    Any provision of this Agreement which is illegal, invalid or unenforceable
shall be ineffective to the extent of such illegality, invalidity or unenforceability, without affecting in
any way the remaining provisions hereof.

(iii)    This Agreement is the result of arms'-length negotiations between the parties
hereto and no provision hereof or thereof, because of any ambiguity found to be contained herein,
therein or otherwise, shall be construed against a party by reason of the fact that such party or its

DOCSOC/1154026v1/100150-0000

4

EXHIBIT 1
13

legal counsel was the draftsman of that provision. Unless otherwise indicated elsewhere in this Agreement, (i) the term "or" shall not be exclusive; (ii) the term "including" shall mean "including, but not limited to," and (iii) the terms "herein," "hereof," "hereto," "hereunder" and other terms similar to such terms shall refer to this Agreement as a whole and not merely to the specific section, subsection, paragraph or clause where such terms may appear. The section, subsection and any paragraph headings contained herein are for purposes of convenience only and are not intended to define or limit or affect, and shall not be considered in connection with, the interpretation of any of the terms or provisions of this Agreement.

(iv) This Agreement constitutes the complete and exclusive agreement between the parties regarding the subject matter hereof, and any and all previous representations, discussions and writings are merged and superseded by this Agreement. This Agreement may be modified only by a written document signed by all the parties hereto.

(v) This Agreement will be governed by and construed according to the laws of the State of California, as such laws are applied to agreements entered into and to be performed entirely within California between California residents. Any controversy or claim arising out of or relating to this Agreement, the breach thereof, or the transactions contemplated hereby, shall be settled by arbitration in Orange County, California, in accordance with the then prevailing Commercial Arbitration Rules of the American Arbitration Association and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction. The prevailing party in any legal action brought hereunder shall be entitled to recover its reasonable attorneys' fees from the other party.

(vi) This Agreement may be executed in separate counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

**[Signatures Appear on Next Page]**

EXHIBIT 1
14

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the Effective Date by their duly authorized representatives.

"Seller"

_____ 2/28/06

Randy Taylor

2800 Riachuelo
San Clemente, CA 92673

"Buyer"

KENSEL VENTURES LLC

By: _____ 3/6/06

Name:  Brendon Kensel
Title:   President

DOCSOC/1154026v1/100150-0000

6

EXHIBIT 1
15

EXHIBIT 2

## ASSIGNMENT OF AND AMENDMENT TO

## DOMAIN NAME PURCHASE AGREEMENT

THIS ASSIGNMENT OF AND AMENDMENT TO DOMAIN NAME PURCHASE AGREEMENT (this "**Amendment**") is entered into as of the *30* day of May, 2006, by and between Randy Taylor, an individual ("**Seller**") and Kensel Ventures, LLC ("**Buyer**"), in order to (i) amend that certain Domain Name Purchase Agreement entered into by and between the Seller and the Buyer on February 28, 2006 (the "**Original Agreement**") and (ii) assign all right title and interest in and to Buyer's rights and obligations under the Original Agreement to MediaShift, Inc., a Delaware corporation and a wholly-owned subsidiary of Buyer ("**MediaShift**"). All capitalized terms not defined herein shall have the meanings ascribed to them in the Original Agreement.

## W I T N E S S E T H:

In consideration of the mutual covenants and obligations herein set forth, the parties hereto agree as follows:

**1.** **Amendments.** Section 2 of the Original Agreement shall be amended and restated in its entirety to read as follows (changes reflected in *bold italics*):

"2.    Payment.  Upon the consummation of a "Transaction" (as defined below), Buyer agrees to issue to Seller a number of shares of common stock of the "Acquiror" (as defined below) with a value equal to $10,000, *as calculated using the same per share valuation as the value per share of common stock in the Transaction, including any financing consummated in connection with the Transaction* (the "Shares"). The Shares will, when issued, be duly authorized, validly issued, fully paid and nonassessable and shall be issued free and clear of any liens, claims or encumbrances of any nature whatsoever. Notwithstanding the foregoing, in the event that the Transaction is not consummated *on or before December 31, 2006*, then Seller shall have the option of rescinding the transactions contemplated under this Agreement, by delivering written notice to the Buyer within *five days following such date* stating that it elects to exercise its right to rescind, and upon receipt of such notice, the Buyer shall immediately transfer all of its rights in the Domain Name and any other rights it obtained pursuant to Section 1 above, back to the Seller and upon such transfer, the Buyer shall have no obligation to pay any consideration to the Seller. For purposes of the foregoing, (i) a "Transaction" shall mean the acquisition, by merger, stock purchase, asset purchase or otherwise, by an Acquiror of an online advertising company and (ii) an "Acquiror" shall mean Buyer or an entity formed by or on behalf of Buyer."

**2.** **Assignment.** Buyer hereby transfers and assigns to MediaShift and MediaShift hereby assumes all of Buyer's rights and obligations under the Original Agreement.

**3.** **Effect of Amendment.** Except as set forth in this Amendment, the Original Agreement shall remain in full force and effect.

DOCSOC/1171758v1/100150-0000

EXHIBIT 2
16

IN WITNESS WHEREOF, the parties have duly executed this Amendment as of the day and year first above written.

"Seller"

Randy Taylor

2800 Riachuelo
San Clemente, CA 92673

"Buyer"

KENSEL VENTURES LLC

By: _____

Name:  Brendon Kensel
Title:    President

"MediaShift"

MEDIASHIFT, INC.

By: _____

Name:  Brendon Kensel
Title:    President

2

EXHIBIT 2
17

EXHIBIT 3

**SECOND AMENDMENT TO**

**DOMAIN NAME PURCHASE AGREEMENT**

THIS SECOND AMENDMENT TO DOMAIN NAME PURCHASE AGREEMENT (this "**Amendment**") is entered into as of the 14th day of December, 2006, by and between Randy Taylor, an individual ("**Seller**") and MediaShift, Inc., a Delaware corporation ("**Buyer**"), in order to (i) amend that certain Domain Name Purchase Agreement entered into by and between the Seller and the Kensel Ventures, LLC on February 28, 2006, as amended and assigned by Kensel Ventures, LLC to Buyer on May 30, 2006 (the "**Original Agreement**"). All capitalized terms not defined herein shall have the meanings ascribed to them in the Original Agreement.

W I T N E S S E T H:

In consideration of the mutual covenants and obligations herein set forth, the parties hereto agree as follows:

1.    **Amendments.**  Section 2 of the Original Agreement shall be amended and restated in its entirety to read as follows:

"2.    Payment.  As payment for Seller's right, title and interest in the Domain Name and all of Seller's trademark and other rights therein or pertaining thereto, on or before January 31, 2007, the Buyer agrees to issue to Seller common stock of Buyer with a value equal to $10,000 (the "**Shares**").  The Shares will, when issued, be duly authorized, validly issued, fully paid and nonassessable and shall be issued free and clear of any liens, claims or encumbrances of any nature whatsoever."

2.    **Effect of Amendment.**  Except as set forth in this Amendment, the Original Agreement shall remain in full force and effect.

DOCSOC/1201827v1/100150-0000

EXHIBIT 3
18

**IN WITNESS WHEREOF**, the parties have duly executed this Amendment as of the day and year first above written.

"Seller"

Randy Taylor

2800 Riachuelo
San Clemente, CA 92673

"Buyer"

MEDIASHIFT, INC.

By:

Name: Brendon Kensel
Title: Chief Executive Officer

EXHIBIT 4

U.S. Patent and Trademark Office (USPTO)

# NOTICE OF ALLOWANCE

NOTE: If any data on this notice is incorrect, please fax a request for correction
to the Intent to Use Unit at 571-273-9550.  Please include the serial number of your
application on ALL correspondence with the USPTO.

**ISSUE DATE:** Jun 5, 2007

MONIQUE M. HEYNINCK
STRADLING YOCCA CARLSON & RAUTH
660 NEWPORT CENTER DRIVE, SUITE 1600
NEWPORT BEACH, CA 92660

R E C E I V E D

JUN 0 8 2007

Stradling Yocca Carlson & Rauth

## ** IMPORTANT INFORMATION:  6 MONTH DEADLINE **

You filed the trademark application identified below based upon a bona fide intention to
use the mark in commerce.  You must use the mark in commerce and file a Statement of Use
(a.k.a. Allegation of Use) before the USPTO will register the mark.  You have SIX (6) MONTHS
from the ISSUE DATE of this Notice of Allowance (NOA) to file either a Statement of Use, or if
you are not yet using the mark in commerce, a Request for Extension of Time to File a Statement
of Use ("Extension Request").  If you file an extension request, you must continue to file a new
request every six months until the Statement of Use is filed.  Applicant may file a total of
five (5) extension requests.  FAILURE TO FILE A REQUIRED DOCUMENT DURING THE APPROPRIATE
TIME PERIOD WILL RESULT IN THE <u>ABANDONMENT</u> OF YOUR APPLICATION.

Please note that both the "Statement of Use" and "Extension Request" have many legal requirements
including fees.  Therefore, we encourage use of the USPTO forms, available online at
<u>http://www.uspto.gov/teas/index.html</u> (under "File a PRE-registration form"), to avoid the
possible omission of important information.  Please note that the Trademark Electronic
Application System (TEAS) provides line-by-line help instructions for completing the Extension
Request or Statement of Use forms online.  If you do not have access to the Internet, you may
call 1-800-786-9199 to request the printed form(s).

### The following information should be reviewed for accuracy:

SERIAL NUMBER: 78/836095
MARK:           MEDIASHIFT (STANDARD CHARACTER MARK)

OWNER:          MediaShift, Inc.
                421 Orchid Avenue
                Corona del Mar, CALIFORNIA  92625

This application has the following bases, but not necessarily for all listed goods/services:
    Section 1(a): NO        Section 1(b): YES      Section 44(e): NO

### GOODS/SERVICES BY INTERNATIONAL CLASS

035—Advertising and business services, namely, arranging for the promotion of the goods
    and services of others by means of a global computer network and other computer online
    services providers; promoting the goods and services of others by providing links to

TMFR9B (3/2005)          ADDITIONAL INFORMATION MAY BE PRESENT IN THE USPTO RECORDS

EXHIBIT 4
20

the websites of others; promoting the goods and services of others by providing a web
site at which users can link to information pertaining to the goods and services
offered by advertisers; dissemination of advertising matter; dissemination of
advertising for others via the Internet
FIRST USE DATE: NONE; USE IN COMMERCE DATE: NONE

042-Computer services, namely, designing, implementing and maintaining web sites for
others
FIRST USE DATE: NONE; USE IN COMMERCE DATE: NONE

ALL OF THE GOODS/SERVICES IN EACH CLASS ARE LISTED

DOCKETED

JUN 1 1 2007

TMFRF2 (REV 9/2003)     ADDITIONAL INFORMATION MAY BE PRESENT IN THE USPTO RECORDS.

EXHIBIT 4
21

EXHIBIT 5

STRADLING YOCCA CARLSON & RAUTH

A PROFESSIONAL CORPORATION

ATTORNEYS AT LAW

660 NEWPORT CENTER DRIVE, SUITE 1600

NEWPORT BEACH, CA 92660-6422

TELEPHONE (949) 725-4000

FACSIMILE (949) 725-4100

**LAURA NICHOLSON**
DIRECT DIAL: (949) 725-4043
LNICHOLSON@SYCR.COM

ORANGE COUNTY
(949) 725-4000
SAN DIEGO
(858) 720-2150
SAN FRANCISCO
(415) 283-2240
SANTA BARBARA
(805) 564-0065
SANTA MONICA
(310) 434-2788

January 23, 2007

Mr. Brendon Kensel
Kensel Ventures
421 Orchid Avenue
Corona Del Mar, CA  92625

*Client/Matter No.:  100150-0001/EU*

Re:     Community Trademark Application No. 005228002
        Mark:  MEDIASHIFT
        <u>Subject: Notice of Publication</u>

Dear Brendon:

Enclosed please find a copy of the Notification of Acceptance for Publication we received from the Office for Harmonization in the Internal Market (OHIM) in connection with the above-identified trademark application.

The mark appeared in the Community Trade Marks Bulletin No. 001/2007 on January 8, 2007, for opposition purposes.  If no opposition is filed within three months, the application may be allowed for registration.

Thank you for allowing us to assist you in connection with this matter.  Should you have any questions, please do not hesitate to contact me.

Sincerely yours,

STRADLING YOCCA CARLSON & RAUTH

*Laura F. Nicholson*

Laura F. Nicholson, Paralegal

Enclosure

cc:     Philip Koehler, Esq. (w/o enclosure)

DOCSOC/1207013v1/100150-0001

EXHIBIT 5
22

**210** 005228002

**220** 28/07/2006

**442** 08/01/2007

**541** MEDIASHIFT

**731** MediaShift, Inc.
421 Orchid Avenue
Corona Del Mar California 92625
US

**740** URQUHART-DYKES & LORD LLP
30 Welbeck Street
London W1G 8ER
GB

**270** EN FR

**511**

EN-35- Advertising and business services, namely, arranging for the
promotion of the goods and services of others by means of a global
computer network and other computer online services providers;
promoting the goods and services of others by providing links to the
web sites of others; promoting the goods and services of others by
providing a web site at which users can link to information pertaining to
the goods and services offered by advertisers; dissemination of
advertising matter; dissemination of advertising for others via the
Internet.

EN-42- Designing, implementing and maintaining web sites for others.

**300** US 13/03/2006 78/836,095

EXHIBIT 5
23

EXHIBIT 6



**Office de la propriété intellectuelle du Canada**

Un organisme d'Industrie Canada

50, rue Victoria
Place du Portage I
Gatineau (Québec) K1A 0C9

**Canadian Intellectual Property Office**

An Agency of Industry Canada

50 Victoria Street
Place du Portage I
Gatineau, Quebec K1A 0C9



| Date |
|---|
| 09 nov/Nov 2007 |
| Votre référence - Your reference |
| 78583-32 PDL:mjp |
| Numéro de dossier - File number |
| 1310975 |

SMART & BIGGAR
SUITE 900, 55 METCALFE STREET
P.O. BOX 2999, STATION D
OTTAWA
ONTARIO K1P 5Y6

COPY

Propriétaire - Owner
MediaShift, Inc.

Marque de commerce - Trade-mark
MEDIASHIFT

### AVIS D'ADMISSION

Avis est donné par la présente que ladite demande d'enregistrement de la marque de commerce a été admise.

**De plus, veuillez noter que pour procéder à l'enregistrement, vous devez maintenant satisfaire aux exigences suivantes:**

Des frais d'enregistrement de 200,00$ doivent être versés le ou avant le 28 juillet 2009.

En conformité du paragraphe 40(2) de la *Loi sur les marques de commerce*, une DÉCLARATION indiquant que le requérant a commencé à utiliser la marque de commerce au Canada en liaison avec les marchandises et/ou services mentionnés dans la demande doit être fournie le ou avant le 28 juillet 2009 à défaut de quoi la demande sera réputée abandonnée en vertu du paragraphe 40(3) de la Loi. Lors de la préparation de la déclaration d'emploi, veuillez s.v.p. vous référer à l'énoncé de marchandises/services qui figure sur la dernière feuille de vérification que vous avez reçue.

### NOTICE OF ALLOWANCE

You are hereby given notice that the subject application for registration of a trade-mark has been allowed.

**Furthermore, please note that in order to proceed to registration, the following is now required:**

A registration fee of $200.00 must be filed on or before July 28, 2009.

Pursuant to sub-section 40(2) of the *Trade-marks Act*, a DECLARATION of use of the Trade-mark in Canada in association with the wares and/or services specified in the application must be filed on or before July 28, 2009 failing which the application shall be deemed abandoned pursuant to sub-section 40(3) of the Act. When preparing your declaration of use, please refer to the statement of wares/services appearing on the latest Proof Sheet that you have received.

Registraire des marques de commerce
Registrar of Trade-marks

Contact:  Section des déclarations et enregistrements/
Declaration/Registration Section
819-953-1154



*http://opic.gc.ca · http://cipo.gc.ca*



EXHIBIT 6
24

EXHIBIT 7

## THIRD AMENDMENT TO

## DOMAIN NAME PURCHASE AGREEMENT

THIS THIRD AMENDMENT TO DOMAIN NAME PURCHASE AGREEMENT (this "**Amendment**") is entered into as of the 16 day of January, 2007, by and between Randy Taylor, an individual ("**Seller**") and MediaShift, Inc., a Delaware corporation ("**Buyer**"), in order to (i) amend that certain Domain Name Purchase Agreement entered into by and between the Seller and the Kensel Ventures, LLC on February 28, 2006, as amended and assigned by Kensel Ventures, LLC to Buyer on May 30, 2006 and as further amended on December 14, 2006 (the "**Original Agreement**"). All capitalized terms not defined herein shall have the meanings ascribed to them in the Original Agreement.

### W I T N E S S E T H:

In consideration of the mutual covenants and obligations herein set forth, the parties hereto agree as follows:

1.    **Amendments.** Section 2 of the Original Agreement shall be amended and restated in its entirety to read as follows:

"2.    Payment. As payment for Seller's right, title and interest in the Domain Name and all of Seller's trademark and other rights therein or pertaining thereto, on or before January 31, 2007, the Buyer agrees to issue to Seller 33,333 shares of common stock of Buyer (the "**Shares**"). The Shares will, when issued, be duly authorized, validly issued, fully paid and nonassessable and shall be issued free and clear of any liens, claims or encumbrances of any nature whatsoever."

2.    **Effect of Amendment.**    Except as set forth in this Amendment, the Original Agreement shall remain in full force and effect.

1/16/07

EXHIBIT 7
25

**IN WITNESS WHEREOF**, the parties have duly executed this Amendment as of the day and year first above written.

"Seller"

_____
Randy Taylor

2800 Riachuelo
San Clemente, CA 92673

"Buyer"

MEDIASHIFT, INC.

By: _____

Name: Brendon Kensel
Title: President

2

EXHIBIT 7
26

EXHIBIT 8

## Brendon Kensel

| | |
|---|---|
| **From:** | Brendon Kensel <brendon.kensel@advn.com> |
| **Sent:** | Wednesday, January 16, 2013 7:57 PM |
| **To:** | David Eastman |
| **Cc:** | David Grant |
| **Subject:** | RE: Parent Company Name |
| **Attachments:** | MediaShift Logo.bmp |

Dave

One possibility for a parent name is MediaShift. This is a URL I already own. This was the name I used for a roll-up effort in 2007 (see attached logo). By coincidence this name may also be appropriate for the disruptive business model we are pursuing. With this name the ideal trading symbol would be MSFT, but I don't think Microsoft is prepared to relinquish this yet. Alternatives may include: MEDI, MSHF, MESF, MEFT.

The two subsidiaries would follow:

AdVantage Networks – The AdVantage Networks Monetization Platform (AMP) enables operators of Internet networks to monetize their audiences.

Travora – The largest 'On the Go' ad network that enables advertisers to engage relevant audiences through unparalleled customer segmentation, rich data profiles, and across multiple devices.

We would then synthesis the above for the parent company description… MediaShift is a digital advertising technology company that offers advertisers access to the fastest growing audience platform focused on the travel, hospitality, foodservice and collegiate segments. Through its wholly-owned subsidiary AdVantage Networks, the company enables operators of Internet networks to monetize their audiences through patented technology. Through its wholly-owned subsidiary Travora, advertisers can access relevant 'On the Go' audiences with unparalleled customer segmentation using rich data profiles, and across multiple devices.

We still need to develop the core communication pillars, but the above is the framework.

Brendon

---

**From:** David Eastman [mailto:DEastman@ADVN.com]
**Sent:** Wednesday, January 16, 2013 4:45 AM
**To:** Brendon Kensel
**Cc:** David Grant
**Subject:** RE: Parent Company Name

We can discuss with counsel, it's probably feasible if we do it in the next week. The 14A is still under review by the SEC, meaning we haven't sent it out for shareholder approval yet. The name of the parent was set in the Merger Agreement, though I believe that's not binding. The name can be changed by the Board (which still has to approve the final 14A before it's filed) plus a plurality of the votes cast at a special meeting, which in essence consists of Dave and Sanjeev sitting in the same office.

I believe that Ad-Vantage is still the primary name that we're selling, and that it would be useful to get the ADVN ticker and have our company known as Ad-Vantage. Travora will be an ad network, which is a useful tool to monetize our

1

EXHIBIT 8
27

technology and accelerate its acceptance, but the Ad-Vantage technology is still the primary differentiator, and what
we'll ultimately sell – the ad network will be a commodity product on steroids due to its association with the technology.
We can discuss further tomorrow. What name did you have in mind for the parent?

---

**From:** Brendon Kensel
**Sent:** Tuesday, January 15, 2013 8:52 PM
**To:** David Eastman
**Cc:** David Grant
**Subject:** Parent Company Name

Dave

Do we have the ability to change the name of the parent company (the public entity)? I recommend we consider this as
to avoid confusion with the subsidiary 'AdVantage Networks'. We will need to segment the parent and the sub for IR and
other reasons, particularly since we will have two subs (which wasn't part of the original plan). The alternative is to
change the name of the 'AdVantage' sub, but I think we are starting to build some small amount of equity in the
network world. Travora Networks would be the other sub. If this is a possibility what is our timing to do this?

Brendon

_____

Brendon Kensel, President
AdVantage Networks

[o] (949) 250-9011
[m] (949) 300-7828
[e] brendon.kensel@advn.com



EXHIBIT 8
28

EXHIBIT 9

**Brendon Kensel**

| | |
|---|---|
| **From:** | David Grant <David.Grant@ADVN.com> |
| **Sent:** | Tuesday, January 22, 2013 4:45 PM |
| **To:** | Brendon Kensel |
| **Subject:** | MediaShift |

Brendon,

I believe we have support from the management team for renaming JMGE to MediaShift.  Let's discuss what it would take before I socialize it with all.

Thanks,



**David Grant**
**Chief Executive Officer**
**Office:** 818.649.5711
**Email:** david.grant@advn.com

NOTICE - This message and any attached files may contain information that is confidential and/or subject of legal privilege intended only for use by the intended recipient. If you are not the intended recipient or the person responsible for delivering the message to the intended recipient, be advised that you have received this message in error and that any dissemination, copying or use of this message or attachment is strictly forbidden, as is the disclosure of the information therein. If you have received this message in error please notify the sender immediately and delete the message.

EXHIBIT 10

## Brendon Kensel

| | |
|---|---|
| **From:** | Brad Commins <Brad.Commins@BCCServices.net> |
| **Sent:** | Thursday, February 07, 2013 12:00 PM |
| **To:** | Brendon Kensel |
| **Cc:** | Linda Ebrahimian; Jim Callahan |
| **Subject:** | RE: mediashift.com domain |

Brendon,

Please send me the details required to access the registrar with whom the domain is registered and we will address renewals and email setup.

Thanks,

Brad

---

**From:** Jim Callahan [mailto:JCallahan@ADVN.com]
**Sent:** Thursday, February 7, 2013 11:09 AM
**To:** Brad Commins; Brendon Kensel
**Cc:** Linda Ebrahimian
**Subject:** mediashift.com domain

Hi Brad,

I assume the mediashift.com domain is under your purview now.

The domain is set to expire in 23 days. Can you please renew it, once we are clear of the press release (dropping 2. 11) by at least a week. I don't want to renew any earlier just in cause there is any weird site disruption during the renewal process.

Thanks,
Jim

-----------------------------------



**Jim Callahan**
Director of Product Management and Marketing

O: 818.649.5723
M: 805.456.9147
E: jcallahan@advn.com

Follow us!

  

NOTICE - This message and any attached files may contain information that is confidential and/or subject of legal privilege intended only for use by the intended recipient. If you are not the intended recipient or the person responsible for delivering the message to the intended recipient, be advised that you have received this message in error and that any dissemination, copying or use of this message or attachment is strictly forbidden, as is the disclosure of the information therein. If you have received this message in error please notify the sender immediately and delete the message.

1

EXHIBIT 10
30

EXHIBIT 11

**Brendon Kensel**

| | |
|---|---|
| **From:** | Mike Spalter <Mike.Spalter@advn.com> |
| **Sent:** | Saturday, February 09, 2013 12:15 PM |
| **To:** | Brendon Kensel |
| **Cc:** | Brad Commins |
| **Subject:** | RE: MediaShift Email Addresses |

Perfect!  Thanks.

_____

**Mike Spalter**
Chief Operating Officer

O: 818.649.5735
M: 661.618.0002
Email: mike.spalter@advn.com

NOTICE - This message and any attached files may contain information that is confidential and/or subject of legal privilege intended only for use by the intended recipient. If you are not the intended recipient or the person responsible for delivering the message to the intended recipient, be advised that you have received this message in error and that any dissemination, copying or use of this message or attachment is strictly forbidden, as is the disclosure of the information therein. If you have received this message in error please notify the sender immediately and delete the message.

**From:** Brendon Kensel
**Sent:** Saturday, February 09, 2013 11:56 AM
**To:** Mike Spalter
**Cc:** Brad Commins
**Subject:** Re: MediaShift Email Addresses

I have set Brad up as an admin and have sent two invitations.

Brendon

_____

Brendon Kensel, President
AdVantage Networks

[o] (949) 250-9011
[m] (949) 300-7828
[e] brendon.kensel@advn.com

Sent from my iPhone

On Feb 9, 2013, at 11:30 AM, "Mike Spalter" <Mike.Spalter@advn.com> wrote:

> Hi Brendon, I'd like Brad to be delegated Admin rights to the Go Daddy account.
> Can you facilitate or Richard?
>
> Thanks,
>
> _____

**Mike Spalter**
Chief Operating Officer

O: 818.649.5735
M: 661.618.0002
Email: mike.spalter@advn.com

NOTICE - This message and any attached files may contain information that is confidential and/or subject of legal
privilege intended only for use by the intended recipient. If you are not the intended recipient or the person
responsible for delivering the message to the intended recipient, be advised that you have received this message
in error and that any dissemination, copying or use of this message or attachment is strictly forbidden, as is the
disclosure of the information therein. If you have received this message in error please notify the sender
immediately and delete the message.

---

**From:** Brendon Kensel
**Sent:** Saturday, February 09, 2013 9:53 AM
**To:** Aaron Guerrero; Mike Spalter
**Cc:** Brad Commins; Richard Silverberg
**Subject:** RE: MediaShift Email Addresses

Team – Please meet Rich Silverberg. Rich is the designer of the MediaShift site and is hosting it for us.
Please provide Rich the MX information for the email ASAP so he can plug it in today. Thanks.

Brendon

---

**From:** Brendon Kensel [mailto:brendon.kensel@advn.com]
**Sent:** Friday, February 08, 2013 6:47 PM
**To:** Aaron Guerrero; Mike Spalter
**Cc:** Brad Commins
**Subject:** RE: MediaShift Email Addresses

It looks like Brad accepted the invitation and I just confirmed access to the GoDaddy dash for
MediaShift. The DNS is currently pointing to our dev host for the site so please don't change this, but the
email can be set. Thanks.

Brendon

---

**From:** Aaron Guerrero [mailto:Aaron.Guerrero@advn.com]
**Sent:** Friday, February 08, 2013 6:03 PM
**To:** Brendon Kensel; Mike Spalter
**Cc:** Brad Commins
**Subject:** RE: MediaShift Email Addresses

I took a look at this, but am a little stuck without having access to the DNS management portal.

The virtual Exchange server address we have set up through Office 365 is: pod51018.outlook.com.

However without knowing what was originally set up in the MX record, it's hard for me to say if that's
where the advn.com domain record resides.

I presume we'll be wanting to add mediashift.com to our existing Office 365 domain environment? If so,
we will need to be able to access the DNS host (GoDaddy, from what I understand) and initiate
confirmation of domain ownership before that domain can be fully added into the equation on the
Exchange end.

With regard to forwarding, a forwarding DNS record can be created for the domain, but specific linkage between the mediashift and advn accounts would need to be configured at the account level. That is to say, we either need to set up specific mediashift accounts and then forward them to the advn accounts, or set those mediashift accounts up as aliases for the existing advn accounts. Let me know if there is something else I can do to help.

Thanks,

Aaron

---

**From:** Brendon Kensel
**Sent:** Friday, February 08, 2013 5:47 PM
**To:** Mike Spalter; Aaron Guerrero
**Cc:** Brad Commins
**Subject:** RE: MediaShift Email Addresses

Team – Please forward the mx information for the mediashift email to me directly and I will add to the Godaddy account. I have added Brad as an admin, but I haven't received the confirmation. The MediaShift website will go live on Sunday evening so we need to have the email addresses up by that time. I am available all weekend for questions. My cell is (949) 300-7828. Thanks.

Brendon

---

**From:** Brendon Kensel [mailto:brendon.kensel@advn.com]
**Sent:** Friday, February 08, 2013 1:37 PM
**To:** Mike Spalter; Aaron Guerrero
**Cc:** Brad Commins
**Subject:** RE: MediaShift Email Addresses

Please add one additional forwarding email address: investors@mediashift.com (forward to Dave Eastman's MediaShift email address). Thanks.

Brendon

---

**From:** Mike Spalter [mailto:Mike.Spalter@advn.com]
**Sent:** Thursday, February 07, 2013 11:53 PM
**To:** Aaron Guerrero
**Cc:** Brad Commins; Brendon Kensel
**Subject:** RE: MediaShift Email Addresses

Aaron just getting you in the loop on new mail accounts.

_____

**Mike Spalter**
Chief Operating Officer

O: 818.649.5735
M: 661.618.0002
Email: mike.spalter@advn.com

NOTICE - This message and any attached files may contain information that is confidential and/or subject of legal privilege intended only for use by the intended recipient. If you are not the intended recipient or the person responsible for delivering the message to the intended recipient, be advised that you have received this message

in error and that any dissemination, copying or use of this message or attachment is strictly forbidden, as is the
disclosure of the information therein. If you have received this message in error please notify the sender
immediately and delete the message.

---

**From:** Brendon Kensel
**Sent:** Thursday, February 07, 2013 8:06 PM
**To:** Mike Spalter; Brad Commins
**Subject:** MediaShift Email Addresses

Mike & Brad

Could you please set up the following MediaShift email addresses on Exchange:

David Grant
Sanjeev Kuwadekar
Mike Spalter
Brendon Kensel
Dave Eastman

Email addresses that I would like to set-up, but simply forward, follow:

contact@mediashift.com (forward to danyelle@advn.com)
privacy@mediashift.com (forward to Linda.Ebrahimian@advn.com)
marketing@mediashift.com (forward to jcallahan@advn.com)
advertisers@mediashift.com (forward to tim@travora.com)
publishers@mediashift.com (forward to drew@travora.com)
networks@mediashift.com (forward to Joe JWaimrin@ADVN.com)

BTW…I have sent Brad an invitation (via GoDaddy) to join the MediaShift account as an administrator.

Thanks.

Brendon

_____

Brendon Kensel, President
AdVantage Networks

[o] (949) 250-9011
[m] (949) 300-7828
[e] brendon.kensel@advn.com

EXHIBIT 12



## PARENT CO. OF DIGITAL ADVERTISING TECH PROVIDER ADVANTAGE NETWORKS ACQUIRES TRAVORA MEDIA

*Both will Operate as Subsidiaries Under Parent Company, MediaShift, Creating one of the Largest On-the-Go Audience Platforms*

**Glendale, Calif. – Feb. 11, 2013** – JMG Exploration, Inc. (OTCBB: JMGE), soon to be renamed MediaShift, Inc., has completed its second acquisition in the digital advertising space by acquiring Travora Media, a leading travel ad network. MediaShift will be leveraging the ad technology of AdVantage Networks, a wholly-owned subsidiary, to enhance Travora's offerings with more robust tech-based solutions for advertisers and publishers. An initial focus will be on enhancing data profiles to allow for deeper audience segmentation and richer data insights. With over 30 million unique visitors per month, Travora and AdVantage Networks will offer advertisers one of the largest audience platforms targeting on-the-go consumers.

AdVantage Networks enables operators of private Internet networks to monetize their audiences through one of the fastest growing distributed ad technology platforms in the world. AdVantage Networks expects to deploy its technology through hotels and airports across North America and other key global destinations in 2013. "Demand for private Internet networks among major enterprise, such as hotels and airports, is exploding. People want wireless access everywhere, especially when traveling, which is a financial burden for network owners. Through Travora and AdVantage we are allowing brands access to this desirable audience while providing a revenue opportunity for network owners," said David Grant, CEO of MediaShift.

The acquisition of Travora is expected to accelerate MediaShift's growth strategy by adding an established publishing network, advertiser and agency relationships, and an experienced ad sales and ad operations team. Travora represents over 300 established travel brands across desktop, tablet, and mobile platforms, including *Fodor's*, *Viator*, and *Vayama*. Travora achieved revenues of approximately $13.0 million in 2011. "We're building the largest last-mile ad platform with a massive install base. By leveraging the technology and infrastructure of Travora and AdVantage, we intend to drive higher performance and data insights for advertisers, publishers, and Internet network providers," commented Brendon Kensel, President of MediaShift.

Advertisers, publishers, and Internet network providers benefit from MediaShift's technologies and relationships through AdVantage Networks and Travora. The company expects significant benefits to include:

Advertisers:
- IAB "viewable" impression standard available across network
- Access to travelers across all points in the travel lifecycle – from trip planning and booking, to the airport, in-room, and on-the-go

EXHIBIT 12
35



- Highly segmented rich data profiles for unprecedented audience segmentation to better identify intent
- Drive performance across mobile, tablets, and desktop environments
- Data insights into publisher performance

Publishers:
- Focused publisher monetization through dedicated teams and differentiated technology
- New opportunities to distribute content to a scaled travel audience
- Sharing of audience insights based on user interests

Internet Network Providers:
- Monetize private Internet network whether Wi-Fi or wired
- Innovative products such as web and mobile landing pages for premium ad inventory
- Behavioral insights from rich-data profiles

To learn more visit: www.mediashift.com.

### 

**About MediaShift**
MediaShift is a digital advertising technology company that monetizes private Internet networks while offering advertisers access to one of the fastest growing audience platforms targeting on-the-go consumers. Through AdVantage Networks, a wholly-owned subsidiary, patented technology enables operators of private Internet networks to monetize their audiences through the fastest growing distributed ad technology platform in the world. Through Travora, another wholly-owned subsidiary, advertisers can access one of the largest travel ad networks and leverage rich data profiles for exceptional audience segmentation, across multiple devices, while gaining unmatched data insights.

**Media Contacts:**
Nicole Jordan
nicole@radixcollective.com
(310) 988-9157

EXHIBIT 12
36

# EXHIBIT 13



**JMG EXPLORATION SHAREHOLDERS APPROVE NAME CHANGE TO MEDIASHIFT, INCREASE IN
AUTHORIZED SHARES, AND 1 FOR 2 REVERSE SPLIT**

*Ad Technology Company Operates AdVantage Networks and Travora as Subsidiaries*

**Glendale, Calif. – March 4, 2013** – JMG Exploration, Inc. (OTCBB: JMGE), doing business as
MediaShift, a leading digital advertising technology company that monetizes private Internet
networks while offering advertisers access to a rapidly growing audience platform targeting on-the-
go consumers, announced that at a special meeting of stockholders held today at its corporate
headquarters in Glendale, California, stockholders approved:

- Changing the company's name to MediaShift, Inc. in order to more accurately reflect the
  company's focus on advertising technologies;
- Increasing the authorized number of shares of the company's common stock from
  25,000,000 to 100,000,000, and
- Implementing a reverse stock split of the company's common stock of one share for every
  two (1-for-2) shares outstanding.

These actions, along with a new trading symbol for the common stock to be announced, will become
effective upon regulatory approvals and filings.

"These shareholder actions confirm the Company's transition to a leader in next generation digital
advertising", said David Grant, CEO of MediaShift.

David Eastman, MediaShift's CFO, added "we'd also like to remind our shareholders that the
expiration date of our common stock warrants previously scheduled to expire in January, 2013 was
extended to February 28, 2014, as disclosed in a Form 8-k filed with the SEC on November 28, 2012.
All other terms of the warrants were unchanged".

AdVantage Networks, a wholly-owned subsidiary, enables operators of private Internet networks to
monetize their audiences through one of the fastest growing distributed ad technology platforms in
the world. AdVantage Networks expects to deploy its technology through hotels and airports across
North America and other key global destinations in 2013.

MediaShift recently acquired Travora, a leading travel ad network, and is leveraging the ad
technology of AdVantage Networks to enhance Travora's offerings with more robust tech-based
solutions for advertisers and publishers. With over 30 million unique visitors per month, Travora and
AdVantage Networks will offer advertisers one of the largest audience platforms targeting on-the-go
consumers.

To learn more visit: www.mediashift.com.

### ###

EXHIBIT 13
37



**About MediaShift**

MediaShift is a digital advertising technology company that monetizes private Internet networks while offering advertisers access to one of the fastest growing audience platforms targeting on-the-go consumers. Through AdVantage Networks, a wholly-owned subsidiary, patented technology enables operators of private Internet networks to monetize their audiences through one of the fastest growing distributed ad technology platforms in the world. Through Travora, another wholly-owned subsidiary, advertisers can access a leading global travel ad network and leverage rich data profiles for exceptional audience segmentation, across multiple devices, while gaining unmatched data insights.

**Media Contacts:**
Nicole Jordan
nicole@radixcollective.com
(310) 988-9157

EXHIBIT 13
38

EXHIBIT 14

**Brendon Kensel**

---

| | |
|---|---|
| **From:** | Jim Callahan |
| **Sent:** | Thursday, February 14, 2013 5:55 AM |
| **To:** | Brendon Kensel |
| **Subject:** | Re: New email signatures - Please start using immediately |

I may have misunderstood Aaron when we spoke yesterday.  If so, I'll ask him to create alias's for the group when he gets in.

Thx,
Jim

Sent from my iPhone

On Feb 14, 2013, at 5:27 AM, "Brendon Kensel" <Brendon.Kensel@mediashift.com> wrote:

> Jim
>
> Did op's set up those email addresses for Travora? Right now they are based on a first name standard. Thanks.
>
> Brendon
>
> Sent from my iPad
>
> On Feb 14, 2013, at 12:53 AM, "Jim Callahan" <JCallahan@ADVN.com> wrote:
>
>> Hi everyone,
>>
>> Please adopt the new email signatures for your respective subsidiary below.
>>
>> - MediaShift will be used by Dave G, Dave E, Brendon, Mike, and Sanjeev
>>
>> - We should all be using the same email format of firstname.lastname@
>>
>> - Travora employees should be using their @Travora.com email address (not @Travoramedia)
>>
>> Please remember to copy over your specific name and contact numbers.  If you do not have an office phone number, use your main office #.
>>
>> If anyone has any issues or questions with formatting or obtaining the proper email address, please contact Linda Ebrahimian for assistance.
>>
>> Thanks and enjoy ; )
>> - Jim

<BB3D1D6A-0E0C-49C6-
B96A-3F6A6DCB06A6.png>

**Brendon Kensel**
President
[p] 212.389.2610   [m] 203.520.1352 [f] 212.267.0746
[e] Brendon@MediaShift.com

CONFIDENTIALITY NOTICE: The information in this email may be confidential and/or privileged. This email is intended to be reviewed by only the individual or organization named above. If you are not the intended recipient or an authorized representative of the intended recipient, you are hereby notified that any review, dissemination or copying of this email and its attachments, if any, or the information contained herein is prohibited. If you have received this email in error, please immediately notify the sender by return email and delete this email from your system.

<0C38124A-41C3-4B19-
BC59-63590875B19B.png>

**Tim Springstead**
VP, Sales
[p] 212.389.2610   [m] 203.520.1352 [f] 212.267.0746
[e] tim.Springstead@travora.com
<530CBCED-ED5A-413A-873A-331437DB60C1.png><2DFD5230-5A7C-4804-9F0B-
333859506296.png><7E4F4D64-6655-4281-8ABA-
D66AAC90DC67.png>   a MediaShift company

CONFIDENTIALITY NOTICE: The information in this email may be confidential and/or privileged. This email is intended to be reviewed by only the individual or organization named above. If you are not the intended recipient or an authorized representative of the intended recipient, you are hereby notified that any review, dissemination or copying of this email and its attachments, if any, or the information contained herein is prohibited. If you have received this email in error, please immediately notify the sender by return email and delete this email from your system.

<0FB55C05-94BE-47E0-
B4D5-03B8FB77CAB5.png>

**Linda Ebrahimian**
Marketing Manager
[p] 818.649.5710   [m] 818.555.1334 [f] 818.649.5709
[e] Linda.ebrahimian@advn.com
<AF92D38C-C823-4D0B-A8AF-DD37A2E0F284.png><36BA9149-
DAA2-4BE0-A2FE-581113CA903C.png><C0F1BAA9-3F63-40FC-
A6EA-3B25971311B1.png>   a MediaShift company

CONFIDENTIALITY NOTICE: The information in this email may be confidential and/or privileged. This email is intended to be reviewed by only the individual or organization named above. If you are not the intended recipient or an authorized representative of the intended recipient, you are hereby notified that any review, dissemination or copying of this email and its attachments, if any, or the information contained herein is prohibited. If you have received this email in error, please immediately notify the sender by return email and delete this email from your system.

# EXHIBIT 15

## Brendon Kensel

| | |
|---|---|
| **From:** | Brendon Kensel |
| **Sent:** | Thursday, February 14, 2013 1:11 PM |
| **To:** | David Grant (david.grant@mediashift.com); Dave Eastman (david.eastman@mediashift.com); Mike Spalter (mike.spalter@mediashift.com); Sanjeev Kuwadekar (sanjeev.kuwadekar@mediashift.com) |
| **Subject:** | MediaShift PPT Template |
| **Attachments:** | #MediaShift Template #2.ppt |

Team – Attached is the PPT template for MediaShift.

Brendon



**Brendon Kensel**
President
[p] 949.250.9011 [m] 949.300.7828
[e] brendon.kensel@mediashift.com

CONFIDENTIALITY NOTICE: The information in this email may be confidential and/or privileged. This email is intended to be reviewed by only the individual or organization named above. If you are not the intended recipient or an authorized representative of the intended recipient, you are hereby notified that any review, dissemination or copying of this email and its attachments, if any, or the information contained herein is prohibited. If you have received this email in error, please immediately notify the sender by return email.

EXHIBIT 16

# INVESTMENT LETTER

May 29, 2013

Randy Taylor
2800 Riachuelo
San Clemente  CA 92673

Ladies and Gentlemen:

      1.    (a)    The undersigned ("Subscriber") represents that he is acquiring three thousand (3,000) shares (the "Shares") of Common Stock of MediaShift, Inc., a Nevada corporation (the "Company") for investment and not with a view to the sale or distribution of any part thereof, and that the undersigned has no present intent of selling or otherwise distributing the same.

      (b)    The Company has advised the Subscriber that the Shares have not been registered under the Securities Act of 1933 (the "Act"), as the offering of the Shares is to be effected pursuant to an exemption from the registration provisions of the Act, and similar exemptions under applicable state securities laws, and, in this connection, the Company is relying in part on the representations of the undersigned set forth herein.

      (c)    The undersigned has a pre-existing business or personal relationship with Brendon Kensel, an officer and director of the Company.

      (d)    Upon receipt of the Shares, the undersigned shall have received all consideration to which he is owed in connection with the purchase of the MediaShift.com domain name under the terms of that certain Domain Name Purchase Agreement entered into between MediaShift, Inc., a Delaware corporation (formerly, Kensel Ventures, LLC) on February 28, 2006, as amended on May 30, 2006 and on December 14, 2006.

      2.    (a)    The undersigned recognizes that the Shares are unregistered and must be held indefinitely unless they are subsequently registered under the Act or an exemption from such registration is available, and further recognizes that the Company is under no obligation to register the Shares.

      (b)    The undersigned understands and agrees that, in addition to any other restrictive legend which may be imposed on the certificate, the certificate evidencing the Shares will bear the following legend:

**THE SECURITIES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933; THEY HAVE BEEN ACQUIRED BY THE HOLDER FOR INVESTMENT AND MAY NOT BE PLEDGED, HYPOTHECATED, SOLD, TRANSFERRED OR OTHERWISE DISPOSED OF EXCEPT**

EXHIBIT 16
42

**AS MAY BE AUTHORIZED UNDER THE SECURITIES ACT OF
1933, AND THE RULES AND REGULATIONS PROMULGATED
THEREUNDER.**


_____

Randy Taylor

2

EXHIBIT 16
43

## Brendon Kensel

| | |
|---|---|
| **From:** | Brendon Kensel |
| **Sent:** | Wednesday, June 26, 2013 10:08 AM |
| **To:** | Randy Taylor; David Eastman |
| **Cc:** | Skaist, Mark L.; Rick Baran (rick.baran@mediashift.com) |
| **Subject:** | RE: MediaShift Shares - Investment Agreement |

Thanks Randy. I am copying Rick Baran, the company's new CFO.

Brendon



**Brendon Kensel**
President
[p] 949.250.9011  [m] 949.300.7828
[e] brendon.kensel@mediashift.com

CONFIDENTIALITY NOTICE: The information in this email may be confidential and/or privileged. This email is intended to be reviewed by only the individual or organization named above. If you are not the intended recipient or an authorized representative of the intended recipient, you are hereby notified that any review, dissemination or copying of this email and its attachments, if any, or the information contained herein is prohibited. If you have received this email in error, please immediately notify the sender by return email.

**From:** Randy Taylor [mailto:randy@taylordigital.com]
**Sent:** Wednesday, June 26, 2013 12:39 PM
**To:** David Eastman
**Cc:** Brendon Kensel; Skaist, Mark L.
**Subject:** Re: MediaShift Shares - Investment Agreement

Dave,

Please find the signed investment letter attached with this email.

**Randy Taylor** - President/CEO | 949-391-3333 x 701
www.taylordigital.com | Google+ | Facebook | LinkedIn
Translating Business Objectives Into Digital Solutions

On Wed, May 29, 2013 at 2:40 PM, David Eastman <David.Eastman@mediashift.com> wrote:

Dear Mr. Taylor:

Please see the attached investment letter. Per your previous correspondence with MediaShift, there is no representation required on your part as to your level of sophistication as an investor.

Please sign and return this letter. When you have done so, the Company will issue you a certificate for 3,000 shares of its common stock.

Thank you,

Dave Eastman



**David Eastman**

Chief Financial Officer

[p] 818.649.5733

[f]  818.649.5709

[e] David.Eastman@MediaShift.com

CONFIDENTIALITY NOTICE: The information in this email may be confidential and/or privileged. This email is intended to be reviewed by only the individual or organization named above. If you are not the intended recipient or an authorized representative of the intended recipient, you are hereby notified that any review, dissemination or copying of this email and its attachments, if any, or the information contained herein is prohibited. If you have received this email in error, please immediately notify the sender by return email.

EXHIBIT 17

## Brendon Kensel

_____

| | |
|---|---|
| **Subject:** | Copy: Changes for Brand Pivot |
| **Location:** | ADVN - Main Conference Room &/or Conference Dial-in Number: (712) 432-1500 - Access Code: 817725# |
| | |
| **Start:** | Mon 10/21/2013 11:30 AM |
| **End:** | Mon 10/21/2013 12:00 PM |
| | |
| **Recurrence:** | (none) |
| | |
| **Meeting Status:** | Not yet responded |
| | |
| **Organizer:** | Linda Ebrahimian |
| **Required Attendees:** | Karina Klever; Brendon Kensel |
| **Optional Attendees:** | Mike Spalter; Chad Payne (chad.payne@mediashift.com); Ali Kellerman |

Conference Dial-in Number: (712) 432-1500
Participant Access Code: 817725#





**MediaShift**
Brand Transition for AdVantage & Travora

October 2013

EXHIBIT 17
47

**MediaShift**™

# Brand Consolidation Objectives

- Consolidate the AdVantage and Travora brand names into MediaShift.

- Adopt a transitional brand strategy to bridge AdVantage and Travora to MediaShift without any loss of equity or momentum.

- Retire former AdVantage and Travora brands after transitional period ensuring adequate time to communicate to employees, customers, press, analysts, and other appropriate constituents.

CONFIDENTIAL

2

EXHIBIT 17
48



# AdVantage Brand

▪ Established in early 2010, but used in earnest in the market starting in November 2012.

▪ Has gone through one logo revision (early 2012).



**Current Logo**

**Original Logo**

CONFIDENTIAL

3

EXHIBIT 17
49



# Travora Brand Today

- Established as Travel Ad Network (TAN) in December 2003.

- Rebranded as Travora Media in September 2011.

- Following the acquisition by MediaShift the logo color was updated.



**Current Travora Logo**



**Original Travora Logo**

CONFIDENTIAL

4

EXHIBIT 17
50

![mediaShift™ logo]

# Current Positioning

**AdVantage Networks** enables operators of WiFi networks to monetize their audiences through the fastest growing distributed ad technology platform in the world.

**Travora** provides advertisers access a leading global travel ad platform that leverages rich data profiles for exceptional audience segmentation, across multiple devices, while gaining unmatched data insights.

CONFIDENTIAL

5

EXHIBIT 17
51



# Draft Consolidated Positioning

◼ MediaShift is a **next-generation digital ad tech company** that monetizes private WiFi networks and web publishing sites, while offering advertisers access to one of the fastest growing audience platforms targeting on-the-go consumers.

◼ MediaShift's targeting technology leverages **proprietary first-party data** and enables advertisers to reach highly targeted customer segments to maximize results.

◼ MediaShift has built the **first ad platform for WiFi environments** at airports, hotels, transit settings, restaurants, and other locations where consumers regularly connect to hotspots via their PC's, tablets, and smartphones.

6

CONFIDENTIAL

EXHIBIT 17
52



# Competitive Differentiation



CONFIDENTIAL

EXHIBIT 17
53

![MediaShift logo]

8

# Productize the Former Brand Names

- MediaShift's AdVantage Monetization Platform (AMP)

- MediaShift's Travora publisher network

CONFIDENTIAL

EXHIBIT 17
54

**mediaShift™**

# Brand Consolidation Plan

■ **Pre-Announcement** – Now through Nov. 18

– Prepare plan
– Communicate to employees and investors

■ **Phase I** – Kick-off Nov. 19 using the PhoCusWright Conference
as the launch platform

– PR announcement & communication to appropriate constituents
– Update sales collateral
– Change email and email signature lines
– Update b-cards
– Update web logos with modifier

9

CONFIDENTIAL

EXHIBIT 17
55



# Brand Consolidation Plan

■ **Phase II** – Early Q1 2014 complete transition

  – Consolidate web sites
  – Complete any remaining email address change-over
  – Tidy up social network sites

10

CONFIDENTIAL

EXHIBIT 17
56

EXHIBIT "3: "

## Brendon Kensel

---

**From:** Brendon Kensel
**Sent:** Tuesday, March 18, 2014 5:03 PM
**To:** Brad Commins (brad.commins@mediashift.com)
**Subject:** GoDaddy

Brad

I tried to log into the MediaShift GoDaddy account and the PW has changed. Please forward the updated PW. Thanks.

Brendon



**Brendon Kensel**
President
[p] 949.250.9011 [m] 949.300.7828
[e] brendon.kensel@mediashift.com

CONFIDENTIALITY NOTICE: The information in this email may be confidential and/or privileged. This email is intended to be reviewed by only the individual or organization
named above. If you are not the intended recipient or an authorized representative of the intended recipient, you are hereby notified that any review, dissemination or copying
of this email and its attachments, if any, or the information contained herein is prohibited. If you have received this email in error, please immediately notify the sender by
return email.

GZ J KDKV "3; "

## Brendon Kensel

| | |
|---|---|
| **From:** | Chad Payne |
| **Sent:** | Thursday, March 27, 2014 5:06 PM |
| **To:** | David Grant; Brendon Kensel |
| **Subject:** | RE: For Review & Board Approval |
| **Attachments:** | MediaShift Bill of Sale - Kensel & Co - 03.27.14.docx; MediaShift Bill of Sale - Kensel & Co - 03.27.14 (redline).docx |

Dave & Brendon – Attached is an updated Bill of Sale for the MediaShift assets.

Per Dave's note below, I added an entire section of reps and warranties for MediaShift (Section 4) in order to demonstrate Kensel & Co.'s ownership and title to the Purchased Assets.  I also added language providing for Kensel & Co.'s indemnification of MediaShift (Section 5) for any and all claims by third parties relating to these assets (up to the value of the purchase price).

Let me know if you guys have any further questions or if I can otherwise assist.

Chad

**From:** David Grant
**Sent:** Tuesday, March 25, 2014 9:58 AM
**To:** Brendon Kensel
**Cc:** Chad Payne
**Subject:** RE: For Review & Board Approval

Brendon,

Per our discussion, I need to hear from the board on pricing but anything you can show on the value it took to get it would be helpful.  As I recall you purchased some or all of this from a partner so we would want to mitigate any claim he/she might have with a bill of sale.  I think it would be also helpful for the board if we included evidence that you and subsequently MediaShift via the USPTO perfected the name and asset.  That way you can rep/warrant ownership prior to the sale and your right to sale this asset.

With respect to the purchase agreement and the timing, I think the board is going to request that we put something in regarding indemnifications and reps that you the MediaShift asset free and clear prior to the sale and if a claim in made and the company loses this asset because it was not held in title or in name than the value of the purchase is adjusted.

I am just trying to anticipate the boards questions in advance and demonstrate the value.  Let get this together and I will present it to the board ASAP so they can review the pricing and material.

Thanks,



**David Grant**
Chief Executive Officer
[p] 949.298.4500
[e] David.Grant@MediaShift.com

1

EXHIBIT 19
58

CONFIDENTIALITY NOTICE: The information in this email may be confidential and/or privileged. This email is intended to be reviewed by only the individual or organization named above. If you are not the intended recipient or an authorized representative of the intended recipient, you are hereby notified that any review, dissemination or copying of this email and its attachments, if any, or the information contained herein is prohibited. If you have received this email in error, please immediately notify the sender by return email.

**From:** Brendon Kensel
**Sent:** Saturday, March 22, 2014 11:41 AM
**To:** David Grant
**Cc:** Chad Payne
**Subject:** For Review & Board Approval

Dave

Attached is a bill of sale Chad (copied) drafted for the MediaShift domain names, trademarks, copyrights, and all creative assets that Kensel & Co. is selling to MediaShift. You had indicated that since this involves an officer of the company we needed to get board approval. Since it appears there will be a board meeting in the next couple of days I would like to get this approved. Please review and call me or Chad with questions. Thanks.

Brendon



**Brendon Kensel**
President
[p] 949.250.9011 [m] 949.300.7828
[e] brendon.kensel@mediashift.com

CONFIDENTIALITY NOTICE: The information in this email may be confidential and/or privileged. This email is intended to be reviewed by only the individual or organization named above. If you are not the intended recipient or an authorized representative of the intended recipient, you are hereby notified that any review, dissemination or copying of this email and its attachments, if any, or the information contained herein is prohibited. If you have received this email in error, please immediately notify the sender by return email.

GZJ IDK V "42"

# BILL OF SALE

## March __, 2014

This Bill of Sale (this "***Agreement***") is entered into by and among Kensel & Co., LLC, a California limited liability company (with affiliates, "***Seller***"), and MediaShift, Inc., a Nevada corporation (with affiliates, "***Buyer***").

## WITNESSETH:

WHEREAS, Seller wishes to sell, convey, transfer and deliver to Buyer the assets listed on Schedule I hereto (the "***Purchased Assets***");

NOW, THEREFORE, pursuant to the terms and conditions of this Agreement, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Buyer agree as follows:

1.      For a purchase price of One Hundred Thousand Dollars ($100,000.00) in the form of a Convertible Promissory Note described in Section 2 below, Seller hereby sells, transfers, conveys, assigns and delivers to Buyer, its successors and assigns, to have and to hold forever, all of Seller's right, title and interest in, to and under all of the Purchased Assets, and Buyer agrees to buy all of Seller's right, title and interest in, to and under all of the Purchased Assets.

2.      In lieu of receiving cash for the consideration described in Section 1 hereto, Seller agrees to execute and receive from Buyer a convertible promissory note (the "***Convertible Promissory Note***") in the amount of One Hundred Thousand Dollars ($100,000.00) which may be automatically converted into a class of equity securities of the Buyer in accordance with the terms of the Convertible Promissory Note agreements on Schedules II, III and IV attached hereto.

3.      Seller has not sold, conveyed, assigned, transferred or delivered to any other person or entity the Purchased Assets contemplated by this Agreement.

4.      Seller hereby represents and warrants to the Buyer as follows as of the date hereof that Seller has and shall convey to Buyer good, valid, transferable and marketable title to, or valid leasehold interests in, all of the Purchased Assets, free and clear of all Encumbrances (as hereinafter defined) other than Permitted Encumbrances (as hereinafter defined).  In the event "***Encumbrance***" means any lien, pledge, hypothecation, charge, mortgage, security interest, encumbrance, claim, infringement, interference, option, right of first refusal, preemptive right, community property interest or restriction of any nature affecting property, real or personal, tangible or intangible, including any restriction on the voting of any security, any restriction on the transfer of any security or other asset, any restriction on the receipt of any income derived from any asset, any restriction on the use of any asset, any restriction on the possession, exercise or transfer of any other attribute of ownership of any asset, any lease in the nature thereof and any filing of or agreement to give any financing statement under the Uniform Commercial Code (or equivalent statute of any jurisdiction). "***Permitted Encumbrance***" means (i) liens for current taxes and assessments not yet past due, (ii) mechanics', workmen's, repairmen's, warehousemen's and carriers' liens arising in the ordinary course of business and (iii) any such matters of record, Encumbrances and other imperfections of title that do not, individually or in the aggregate, materially impair the continued ownership, use and

EXHIBIT 20
60

operation of the assets to which they relate in the conduct of the Business as currently conducted. In the event a claim is made

5.    Seller will hold harmless, defend and indemnify Buyer and its officers, owners and representatives from any and all claims, actions, proceedings, damages, liabilities, costs and expenses (including but not limited to reasonable attorneys' fees) brought by any third party arising out of any breach of Seller's representations or warranties, provided, however, that Seller's liability for its indemnification obligations shall not exceed the purchase price paid to Seller under Section 1 and 2 of this Agreement.

6.    At any time or from time to time hereafter, Seller shall, at the reasonable request of Buyer, take all action as may be reasonably necessary to put Buyer in actual possession and operating control of the Purchased Assets, and shall execute, acknowledge and deliver such further instruments of conveyance, power of attorney, sale, transfer and assignment, and take such other commercially reasonable action as Buyer may reasonably request in order to more effectively sell, convey, assign, transfer and deliver to Buyer all of the Purchased Assets and to assist Buyer in exercising rights with respect thereto.

7.    In the event of Buyer's default on the Convertible Promissory Note, the parties hereby agree that all rights, title and interest in, to and under all of the Purchased Assets shall automatically transfer back to the Seller as of the date of default, irrespective of the filing status, registration status, and/or any other rights or title Buyer may have in any of the Purchased Assets. In such event, Buyer agrees to take all action as may be reasonably necessary to put Seller in actual possession and operating control of the Purchased Assets, and shall execute, acknowledge and deliver such further instruments of conveyance, power of attorney, sale, transfer and assignment, and take such other commercially reasonable action as Seller may reasonably request in order to more effectively transfer back, and deliver to, Seller all of the Purchased Assets and to assist Seller in exercising rights with respect thereto.

8.    Except with respect to the Purchased Assets, Buyer does not hereby acquire or agree to acquire any additional assets of Seller or to assume or agree to become liable for or successor to any liabilities or obligations whatsoever, liquidated or unliquidated, known or unknown, contingent or otherwise, whether of Seller, any affiliate of Seller, any predecessor thereof, or any other person or entity, in connection with any such additional assets. No other statement in or provision of this Agreement, and no other statement, written or oral, action or failure to act, includes or constitutes any such assumption or agreement, and any statement to the contrary by any person is unauthorized and hereby disclaimed.

9.    Buyer does not hereby assume or agree to become liable for or successor to any liabilities or obligations whatsoever, liquidated or unliquidated, known or unknown, contingent or otherwise, whether of Seller, any affiliate of Seller or any predecessor thereof in connection with the Purchased Assets, other than liabilities that (i) are to be performed after the date of this Agreement (the "*Agreement Date*") and (ii) do not arise as a consequence of any breach of default on or prior to the Agreement Date. No other statement in or provision of this Agreement, and no other statement, written or oral, action or failure to act, includes or constitutes any such assumption or agreement, and any statement to the contrary by any person is unauthorized and hereby disclaimed.

2

EXHIBIT 20
61

10.     No terms, conditions, understandings, or agreements purporting to modify or vary the terms of this document shall be binding unless hereafter made in writing and signed by both parties hereto.

11.     THIS BILL OF SALE, INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE, WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OR CHOICE OF LAW OR ANY OTHER LAW THAT WOULD MAKE THE LAWS OF ANY OTHER JURISDICTION OTHER THAN THE STATE OF DELAWARE APPLICABLE HERETO.

12.     Any term or provision of this Agreement that is invalid or unenforceable in any jurisdiction will, as to that jurisdiction, be ineffective to the extent of such invalidity or unenforceability without rendering invalid or unenforceable the remaining terms and provisions of this Agreement or affecting the validity or enforceability of any of the terms or provisions of this Agreement in any other jurisdiction.  If any provision of this Agreement is so broad as to be unenforceable, the provision is to be interpreted to be only so broad as is enforceable.

13.     This Agreement may be executed in multiple counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same agreement.

14.     This Agreement shall be binding upon and inure solely to the benefit of the parties hereto and their respective successors (whether by operation of law or otherwise) and permitted assigns.

*[Remainder of page intentionally left blank; signature page follows]*

3

EXHIBIT 20
62

IN WITNESS WHEREOF, the parties hereto have caused this Bill of Sale to be duly executed as of the date first set forth above.

**BUYER**

**MEDIASHIFT, INC.**

By: _____

Name: **Dave Grant**

Title: **CEO**

**SELLER**

**KENSEL & CO.**

By: _____

Name: **Brendon Kensel**

Title: **Managing Partner**

*[Signature Page to Bill of Sale]*

EXHIBIT 20
63

## Schedule I

### Assets

All of Seller's right, title and interest in, to and under the MediaShift properties, including, but not limited to, all intellectual property, domains, trademarks, creative assets, and all related research, documentation and goodwill relating thereto.  The Purchased Assets include the following:

### DOMAINS

| Domain Name | Expires | Status |
|---|---|---|
| MEDIASHIFT.BIZ | 4/2/18 | Active - Locked |
| MEDIASHIFT.CO | 4/3/18 | Active - Locked |
| MEDIASHIFT.CO.UK | 3/7/18 | Active - Locked |
| MEDIASHIFT.COM | 3/1/18 | Active - Locked |
| MEDIASHIFT.ME | 4/4/18 | Active - Locked |
| MEDIASHIFT.MOBI | 3/1/18 | Active - Locked |
| MEDIASHIFT.NET | 5/22/15 | Active - Locked |
| MEDIASHIFT.TV | 3/1/18 | Active - Locked |
| MEDIASHIFT.US | 4/3/18 | Active - Locked |

### TRADEMARKS & COPYRIGHTS

All of the previous trademark filings and copyrights for the Purchased Assets and all supporting research and documentation for such filings.

### CREATIVE ASSETS

All of the creative assets relating to the Purchased Assets, including, without limitation, the following:

- MediaShift Logo
- MediaShift Icon
- MediaShift Brand Style Guide
- MediaShift Business Card Template
- MediaShift Letterhead and Envelope Template
- MediaShift Powerpoint Template

EXHIBIT 20
64

## Schedule II

**MEDIASHIFT, INC.**
**CONVERTIBLE PROMISSORY NOTE AND WARRANT**
**SUBSCRIPTION AGREEMENT**

[Signed Agreement Attached]

6

EXHIBIT 20
65

**Schedule III**

**MEDIASHIFT, INC.**
**8% CONVERTIBLE PROMISSORY NOTE**
**_____, 2014**

[Signed Agreement Attached]

7

EXHIBIT 20
66

## Schedule IV

### MEDIASHIFT, INC.
### WARRANT TO PURCHASE EQUITY SECURITIES

[Signed Agreement Attached]

8

EXHIBIT 20
67

EXHIBIT 21



May 22, 2015

<u>Via Email</u>

David Grant
Chairman and Chief Executive Officer
MediaShift, Inc.
22391 Rosebriar
Mission Viejo, CA 92692

*Re: Payment for Transfer of MediaShift Assets*

Dear David:

In February 2013, Kensel & Co., LLC ("Kensel & Co") transferred the MediaShift name, URL's, trademarks, logo and icon, and other assets to JMG Exploration, Inc., now operating as MediaShift, Inc. (collectively, the "Company"). This transfer occurred in good faith after you and I had agreed that in consideration for this asset transfer the Company would execute an amendment to my offer letter to add a six (6) month severance agreement (the "Amendment"). The value of a six (6) month severance agreement factoring in base compensation only would have been $105,000, and this does not include any other forms of compensations. On March 12, 2013 the Company publically announced its name change to MediaShift.

By March 2014, the Amendment had not been effectuated by the Company, and in lieu of the Amendment, you proposed and I subsequently agreed that we would execute a simple bill of sale governing a transaction that would represent a similar value to the Amendment – the delivery of the MediaShift assets in exchange for a fee. In late March 2014, upon your direction, the Company's corporate counsel drafted and emailed to both you and I a bill of sale for the MediaShift assets. This agreement would have converted $100,000 in cash value into the convertible notes the company was offering at the time.

It is now 27 months past the original transfer date of these MediaShift assets that was made in good faith. As these assets have not been paid for, an enforceable obligation on the part of the Company, Kensel & Co is hereby asserting its' right, title and interest in, to and under the MediaShift properties, including, but not limited to, all intellectual property, domains, trademarks, creative assets, and all related research, documentation and goodwill relating thereto, all of which were conferred upon the Company and upon which the Company is generating revenue. The assets include the following:

<u>DOMAINS</u>

| Domain Name |
| --- |
| MEDIASHIFT.BIZ |
| MEDIASHIFT.CO |
| MEDIASHIFT.CO.UK |

# Kensel & Co.

| Domain Name |
|---|
| MEDIASHIFT.COM |
| MEDIASHIFT.ME |
| MEDIASHIFT.MOBI |
| MEDIASHIFT.NET |
| MEDIASHIFT.TV |
| MEDIASHIFT.US |

## TRADEMARKS & COPYRIGHTS

All of the previous trademark filings and copyrights for the assets and all supporting research and documentation for such filings.

## CREATIVE ASSETS

All of the creative assets relating to MediaShift, including, without limitation, the following:

- MediaShift Logo
- MediaShift Icon
- MediaShift Brand Style Guide
- MediaShift Business Card Template
- MediaShift Letterhead and Envelope Template
- MediaShift PowerPoint Template

Accordingly, Kensel & Co. is hereby demanding immediate payment in satisfaction of the total outstanding balance of the original agreed upon value of these assets in the amount of $105,000. While we sincerely hope that litigation can be avoided, Kensel & Co. must insist that you observe your obligations and we are prepared to file suit if it does not receive full payment in settlement of these amounts by June 5, 2015.  If Kensel & Co. is forced to litigate this dispute, it will be seeking the full amount stated herein, plus interest on the balance outstanding, plus attorney's fees and costs of suit, along with any punitive damages that may be available. You are urged make full payment immediately to avoid the unnecessary hassle and cost of litigation.

Regards,

Brendon Kensel
Managing Partner

EXHIBIT "44"

## Brendon Kensel

| | |
|---|---|
| **From:** | David Grant <David.Grant@mediashift.com> |
| **Sent:** | Sunday, May 24, 2015 11:29 AM |
| **To:** | Brendon Kensel; Rick Baran |
| **Cc:** | glebowitz2@gmail.com; Mark Skaist |
| **Subject:** | Fwd: MediaShift Assets & Secured Notes Held by Lebowitz Investors |
| **Attachments:** | Kensel & Co - Letter to MediaShift, Inc. re MediaShift Assets 05.22.15.pdf; Glenn Lebowitz - Letter to MediaShift, Inc. re Subordinated Secured Convertible Notes 05.22.15.pdf |
| | |
| **Importance:** | High |

Brendon,

I am passing along you complaint to our CEO.  Your recollection regarding the MediaShift name and URL asset is not correct and far from an accurate portral of this situation, however this is not for me to decide.  Please direct any further correspondance to our CEO.

Glenn, with respect to your note I believe you have one of the most secured investment instruments in the company and MediaShift has every intention of getting all creditors paid.  I think there are other circumstances regarding your situation as it relates to this lending event and other investor commitments which I am hopeful would be in your favor.

Regards,

Dave
(o) 949-298-4500

Sent from my mobile. Please excuse any tYpOs.

CONFIDENTIALITY NOTICE: The information in this email may be confidential and/or privileged. This email is intended to be reviewed by only the individual or organization named above. If you are not the intended recipient or an authorized representative of the intended recipient, you are hereby notified that any review, dissemination or copying of this email and its attachments, if any, or the information contained herein is prohibited. If you have received this email in error, please immediately notify the sender by return email.

------ Original message------
**From:** Brendon Kensel
**Date:** Sun, May 24, 2015 10:20 AM
**To:** David Grant;
**Cc:** 'Mark Skaist (mskaist@sycr.com)';Glenn Lebowitz (glebowitz2@gmail.com);
**Subject:**MediaShift Assets & Secured Notes Held by Lebowitz Investors

Dave

Attached are two letters following-up on our phone conversation from this past Thursday. One letter is from me regarding the consideration owed to Kensel & Co for the MediaShift assets. The other letter is from Glenn Lebowitz regarding the existing or pending default by MediaShift of the subordinated secured convertible notes held by his investment group. Your prompt attention to these two matters is appreciated.

Brendon

_____

Brendon Kensel, Managing Partner
Kensel & Co.

[o] (949) 250-9011
[m] (949) 300-7828
[e] brendon@kenselandco.com



2

EXHIBIT 22
71

FORM B104  (08/07)                                                                          2007 USBC, Central District of California

<table>
<tr>
<td colspan="2"><b>ADVERSARY PROCEEDING COVER SHEET</b><br>(Instructions on Page 2)</td>
<td><b>ADVERSARY PROCEEDING NUMBER</b><br>(Court Use Only)</td>
</tr>
</table>

| PLAINTIFFS<br>Kensel & Co., LLC | DEFENDANTS<br>MediaShift, Inc. |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>LANDAU GOTTFRIED & BERGER LLP<br>1801 Century Park East, Suite 700<br>Los Angeles, California 90067 | ATTORNEYS (If Known)<br>LEVENE, NEALE, BENDER, YOO & BRILL L.L.P. |

<table>
<tr>
<td><b>PARTY</b> (Check One Box Only)<br>☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☑ Creditor   ☐ Other<br>☐ Trustee</td>
<td><b>PARTY</b> (Check One Box Only)<br>☑ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor   ☐ Other<br>☐ Trustee</td>
</tr>
</table>

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
1. Declaratory Relief Under 11 U.S.C. §§ 105 and 541 and 28 U.S.C. § 2201
2. Permanent Injunction Under 11 U.S.C. § 105(a)

<table>
<tr>
<td colspan="2" align="center"><b>NATURE OF SUIT</b><br>(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)</td>
</tr>
</table>

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - § 363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☑ 72-Injunctive relief – other  [2]

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☑ 91-Declaratory judgment  [1]

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ N/A |

Other Relief Sought

FORM B104 (08/07), page 2                                                    2007 USBC, Central District of California

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | |
| --- | --- |
| NAME OF DEBTOR<br>MediaShift, Inc. | BANKRUPTCY CASE NO.<br>2:15-bk-25024 |

| DISTRICT IN WHICH CASE IS PENDING<br>CENTRAL DISTRICT OF CALIFORNIA | DIVISIONAL OFFICE<br>Los Angeles | NAME OF JUDGE<br>Sandra R. Klein |
| --- | --- | --- |

| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| --- | --- | --- |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |

| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
| --- | --- | --- |

SIGNATURE OF ATTORNEY (OR PLAINTIFF)

| DATE<br>11/25/15 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Aleksandra Zimonjic |
| --- | --- |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not presented by an attorney, the plaintiff must sign.

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| MICHAEL I. GOTTFRIED (State Bar No. 146689)<br>mgottfried@lgbfirm.com<br>ALEKSANDRA ZIMONJIC (State Bar No. 210252)<br>azimonjic@lgbfirm.com<br>LANDAU GOTTFRIED & BERGER LLP<br>1801 Century Park East, Suite 700<br>Los Angeles, California 90067<br>Telephone: (310) 557-0050<br>Facsimile: (310) 557-0056 | |

*Attorney for Plaintiff* Kensel & Co., LLC

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| In re:<br><br>MediaShift, Inc.,<br><br><br><br>Debtor(s). | CASE NO.: 2:15-bk-25024-SK<br><br>CHAPTER: 11<br><br>ADVERSARY NUMBER: |
|---|---|
| KENSEL & CO., LLC,<br><br><br><br>Plaintiff(s)<br><br>Versus<br><br>MEDIASHIFT, INC.,<br><br><br><br>Defendant(s) | **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** |

TO THE DEFENDANT: A Complaint has been filed by the Plaintiff against you. If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint. You must also serve a copy of your written response on the party shown in the upper left-hand corner of this page. The deadline to file and serve a written response is _____. If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

A status conference in the adversary proceeding commenced by the Complaint has been set for:

| Hearing Date: _____ | Place: |
|---|---|
| Time: _____ | ☐ 255 East Temple Street, Los Angeles, CA 90012 |
| Courtroom: _____ | ☐ 3420 Twelfth Street, Riverside, CA 92501 |
| | ☐ 411 West Fourth Street, Santa Ana, CA 92701 |
| | ☐ 1415 State Street, Santa Barbara, CA 93101 |
| | ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367 |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2012*                                        Page 1                          **F 7004-1.SUMMONS.ADV.PROC**

**You must comply with LBR 7016-1, which requires you to file a joint status report and to appear at a status conference.** All parties must read and comply with the rule, even if you are representing yourself. You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference. A court-approved joint status report form is available on the court's website (LBR form F 7016-1.STATUS.REPORT) with an attachment for additional parties if necessary (LBR form F 7016-1.STATUS.REPORT.ATTACH). If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference. **The court may fine you or impose other sanctions if you do not file a status report. The court may also fine you or impose other sanctions if you fail to appear at a status conference.**

KATHLEEN J. CAMPBELL
CLERK OF COURT

Date of Issuance of Summons and Notice of Status Conference in Adversary Proceeding: _____

By: _____
    Deputy Clerk

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2012      Page 2      **F 7004-1.SUMMONS.ADV.PROC**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:


A true and correct copy of the foregoing document entitled: **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____      _____
  *Date*                    *Printed Name*                                      *Signature*


This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

# EXHIBIT "10"

## Todd M. Arnold

**Subject:**                    IZ #Whup lqdwlrq

**From:** Brendon Kensel
**Sent:** Sunday, July 27, 2014 1:00 PM
**To:** Rick Baran
**Cc:** David Grant
**Subject:** RE: Termination

Rick

I respectfully disagree with you. The email I wrote accurately represents your communications to me and my prior discussions with Dave regarding the MediaShift assets. As noted below, my last day will be this Thursday, July 31 and I will work with the team to ensure a smooth transition.

Brendon

**From:** Rick Baran
**Sent:** Sunday, July 27, 2014 12:43 PM
**To:** Brendon Kensel
**Cc:** David Grant
**Subject:** Re: Termination

Appreciate how you wish this to play out, but respectfully it's not your call.    Much of your email below is factually incorrect.  The company will be in touch as soon as practicable.

Rick Baran

On Jul 27, 2014, at 1:09 PM, "Brendon Kensel" <Brendon.Kensel@mediashift.com> wrote:

Rick

I believe this is straight forward.

1) The board would like to terminate my employment with the company as you communicated to me on Friday. This Thursday, July 31 will be my last day. As I expressed to you when we met I will work with the team to make this a smooth transition. I have spoken to each of the MediaShift management team members and I will be connecting with each this week to handoff active items.

2) The board requested that I give back to the company a majority (I believe you indicated 55%) of the stock I earned as an advisor to the company and vested options that I earned as an employee. I declined.

3) I transferred the MediaShift name, URL's trademarks, logo's and other assets in late Jan. 2013/early Feb. 2013 in good faith in exchange for a six month severance added to my offer letter as discussed with Dave G. at the time. Dave indicated that this would not be an issue since the investors had already committed to him they would add this benefit for all of the executive management team members. This never happened. To remedy this Dave and I then discussed a simple bill of sale in March 2013. This agreement would have converted any cash value into the convertible notes the company was offering at the time. This agreement has not been executed. We are now 18 months past the original transfer that I made in good faith. As you mentioned, in

last week's BOD meeting the board discussed transferring the MediaShift name and related assets back to me and using an alternative name. This is an acceptable solution and I am happy to assist with a smooth brand transition. We need to resolve this before my last day with the company.

Thanks.

Brendon

---

**From:** Rick Baran
**Sent:** Sunday, July 27, 2014 8:11 AM
**To:** Brendon Kensel
**Cc:** David Grant
**Subject:** Re: Termination

Confused on both counts.  I will call you.   Any determination of mediashift name a board decision, and no vote has occurred on to date.

Rick Baran

On Jul 25, 2014, at 6:33 PM, "Brendon Kensel" <Brendon.Kensel@mediashift.com> wrote:

Rick

Thanks letting me know today the board would like to terminate my employment. Let's make my last day the end of this month, July 31. I will work with the team to ensure a smooth transition.

Also, let's wrap up the outstanding item of the MediaShift assets. The BOD's idea to transfer the assets back to back to me works well. I can also help next week to initiate the brand migration. AdVantage Networks is likely an easy choice since the company  already owns the trademark and the related URL's.

Enjoy your weekend.

Brendon

<image001.png>

**Brendon Kensel**
President
[p] 949.250.9011 [m] 949.300.7828
[e] brendon.kensel@mediashift.com

CONFIDENTIALITY NOTICE: The information in this email may be confidential and/or privileged. This email is intended to be reviewed by only the individual or organization named above. If you are not the intended recipient or an authorized representative of the intended recipient, you are hereby notified that any review, dissemination or copying of this email and its attachments, if any, or the information contained herein is prohibited. If you have received this email in error, please immediately notify the sender by return email.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
10250 Constellation Blvd., Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled (*specify*): **DEBTORS' AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION FOR AN ORDER (A) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS; AND (C) GRANTING RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION IN SUPPORT THEREOF** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On January 6, 2016, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Todd M Arnold    tma@lnbyb.com
- Ron Bender    rb@lnbyb.com
- Stephen L Burton    steveburtonlaw@aol.com
- Cathrine M Castaldi    ccastaldi@brownrudnick.com
- Leslie A Cohen    leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;Brian@lesliecohenlaw.com
- Michael I Gottfried    mgottfried@lgbfirm.com,
  kalandy@lgbfirm.com;cboyias@lgbfirm.com;srichmond@lgbfirm.com;sdeiches@lgbfirm.com
- Lance N Jurich    ljurich@loeb.com, karnote@loeb.com;ladocket@loeb.com
- Dare Law    dare.law@usdoj.gov, ron.maroko@usdoj.gov
- Uzzi O Raanan    uor@dgdk.com, DanningGill@gmail.com;uraanan@ecf.inforuptcy.com
- Zev Shechtman    zshechtman@dgdk.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- George C Webster    George.Webster@dbr.com, jane.gorman@dbr.com
- Aleksandra Zimonjic    azimonjic@lgbfirm.com, cboyias@lgbfirm.com;sdeiches@lgbfirm.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On January 6, 2016, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on January 6, 2016, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-3.1.PROOF.SERVICE**

**<u>SERVED BY PERSONAL DELIVERY</u>**

The Honorable Sandra Klein
U.S. Bankruptcy Court
255 E. Temple Street, Courtroom 1575,
Suite 1582
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 6, 2016 | Lourdes Cruz | /s/ Lourdes Cruz |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.